**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MICKEL ERICK LEWIS JR., et al., | Case No.: 1:21-cv-00378-DAD-BAK (SKO) |
| Plaintiffs, | ORDER GRANTING MOTION TO COMPEL PRODUCTION |
| v. | |
| KERN COUNTY, et al., | (Doc. 25) |
| Defendants. | |

Plaintiffs filed a motion to compel Defendant Kern County to produce Defendant Deputy Ayala's withheld personnel records. (Doc. 25.) The parties concurrently filed a joint statement regarding Plaintiffs' motion to compel on January 26, 2022. (Doc. 24.) For the reasons set forth below, Plaintiffs' motion to compel is **GRANTED**.

**I.     Relevant Background**

On March 9, 2021, Plaintiffs initiated this action by filing a complaint against Kern County and Deputy Ayala. (Doc. 1.) Plaintiffs filed a first amended complaint on March 19, 2021. (Doc. 6.) Defendants filed their answer on April 9, 2021. (Doc. 9.)

On June 21, 2021, the Court approved the parties' stipulated protective order. (Doc. 14.) On December 1, 2021, the Court entered an order consolidating this case to another case that was filed in this Court, Case No. 1:21-cv-01352-DAD-JLT, which was closed upon consolidation. (See Doc. 17.) The parties filed an amended stipulated protective order, in which the parties of the consolidated

1

matter (21-1352), were seeking to join the existing protective order.  (Doc. 27.)  The Court denied without prejudice the amended stipulated protective order.  (Doc. 28.)  The parties renewed their request on February 16, 2022.  (Doc. 30.)  On the same day, the Court approved the parties' amended stipulated protective order.  (Doc. 31.)

This case arises from an incident between Deputy Ayala and the decedent, Mickel Lewis, Sr. that occurred on October 2, 2020, in Mojave, California.  (Doc. 24 at 4.)[1]  On that morning, Kern County Sheriff's personnel were occupying an undercover vehicle conducting surveillance on Lewis, at a hotel where Lewis was staying.  (Id.)  Deputy Ayala had obtained information from a confidential informant involved with the Lewis matter that Lewis had weapons on his person on that date.  (Id.)  Later that evening, the confidential informant informed Deputy Ayala that Lewis was threatening the informant at the hotel.  (Id.)  Deputy Ayala patrolled the area looking for Lewis; when he saw a vehicle matching the description of Lewis's vehicle, Deputy Ayala performed a traffic stop.  (Id. at 4-5.)  Lewis was on probation at the time, thereby subjecting him to a search for weapons at any time.  (Id. at 5.)

Deputy Ayala asked Lewis to step out of the vehicle and performed a pat down search for weapons, and none were found.  (Doc. 24 at 5.)  Given that the informant had provided credible information that Lewis had weapons on his person, Deputy Ayala planned to search Lewis's vehicle.  (Id.)  Before doing so, Deputy Ayala escorted Lewis to the rear of the Deputy's vehicle and informed him he was being detained pending a probation search of the vehicle.  (Id.)  Deputy Ayala told Lewis to place his hands on his head.  (Id.)  Lewis initially complied, then turned to face Deputy Ayala and lunged at him.  (Id.)  Lewis then ran across the street and laid on the ground behind a parked semi-truck.  (Id.)  Deputy Ayala believed Lewis would return to his vehicle and flee if the Deputy chased after him, so Deputy Ayala took the keys from Lewis's vehicle and informed Lewis that he was under arrest.  (Id.)  Lewis returned to his vehicle and charged at Deputy Ayala forcing him to retreat.  (Id.)  Lewis went to the driver's side door of the Lewis vehicle and began to dig under the driver's seat.  (Id.)  Deputy Ayala drew his sidearm, and Lewis stepped out of the vehicle with his right hand behind

---

[1] The summary of the incident is based on Defendant's introductory statement; Plaintiffs dispute Defendants' version of the facts, but do not provide a version of their own.  (See Doc. 24 at 3-5.)

his back. (Id.) Lewis stated, "you're going to have to kill me" and "you're going to die," then sprinted towards Deputy Ayala. (Id.) Deputy Ayala retreated, but when he saw Lewis bring his arm forward from behind his back, he believed Lewis was going to shoot him. Deputy Ayala fired his weapon five times, fatally wounding Lewis.

Defendants have produced a number of documents in response to Plaintiffs' requests. (Doc. 24 at 6.) Plaintiffs requested the training records of Deputy Ayala, which the defense produced. (Id.) Plaintiffs also requested use of force investigations regarding Deputy Ayala. Deputy Ayala had two use of force investigations which the defense also produced. (Id.) Plaintiffs requested Deputy Ayala's personnel file with which Defendants complied by producing 151 pages of the personnel file on September 27, 2021. (Id.) The privilege log attached to Defendants' responses to Plaintiffs' request for production of documents shows that 65 pages were withheld. (Id.; Alexander Decl. Exh. 3.) The withheld documents pertain to Deputy Ayala's conduct and are summarized as follows:

- Bates 00665-00667: A written reprimand dated June 20, 2017, regarding maintenance of a Kern County Sheriff's Office vehicle;
- Bates 00837-00877: Adverse Comment AC2020-0099, dated November 24, 2020 (after the Lewis incident), concerning a citizen complaint regarding report writing, specifically not completing a transfer of custody form when transferring children from one party to another;
- Bates 00878-00887: Adverse Comment AC2019-0105, dated August 29, 2019, concerning a department initiated complaint regarding report writing, specifically not properly documenting an incident of a found juvenile, not sustained;
- Bates 00888-00891: Field Complaint FC2018-0081, dated July 14, 2018, concerning a citizen's complaint regarding Deputy Ayala's driving, not sustained;
- Bates 00892-00894: Field Complaint FC2018-0062, dated April 26, 2018, concerning a citizen's complaint regarding Deputy Ayala's driving, not sustained.

(Doc. 24 at 6-7.)

The parties assert that they have met and conferred in compliance with Local Rule 251(b) prior to the filing of the joint statement. (Doc. 24 at 3.) On November 5, 2021, Plaintiffs sent a letter to

Defendants in response to Defendants' privilege log and withholding of documents from Deputy Ayala's personnel file. (Id.; Alexander Decl. Exh. 4.) On November 12, 2021, Defendants responded, stating they did not believe the records need to be produced. (Doc. 24 at 3; Alexander Decl. Exh. 5.)

Plaintiffs seek to compel production of records from Deputy Ayala's personnel file that were withheld. (Doc. 25.) On January 26, 2022, the parties filed a joint statement regarding Plaintiffs' motion to compel. (Doc. 24.)

## II.     Legal Standards

### A.     Scope of Discovery

Under the Federal Rules, "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection" when "a party fails to produce documents or fails to respond that inspection will be permitted — or fails to permit inspection — as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B).

The scope and limitations of discovery are set forth by the Federal Rules of Civil Procedure and Evidence. Fed. R. Civ. P. 26(b) states:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action." Fed. R. Evid. 401. Relevancy to a subject matter is interpreted "broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

### B.     Requests for Production of Documents

A party may request documents "in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1). A request is adequate if it describes items with "reasonable particularity;" specifies a reasonable time, place, and manner for the inspection; and specifies the form or forms in

4

which electronically stored information can be produced. Fed. R. Civ. P. 34(b). Thus, a request is sufficiently clear if it "places the party upon 'reasonable notice of what is called for and what is not.'" *Kidwiler v. Progressive Paloverde Ins. Co.*, 192 F.R.D. 193, 202 (N.D. W. Va. 2000) (quoting *Parsons v. Jefferson-Pilot Corp.*, 141 F.R.D. 408, 412 (M.D.N.C. 1992)); *see also* Schwarzer, Tashima & Wagstaffe, *California Practice Guide: Federal Civil Procedure Before Trial* (Rev. #1 2011) Discovery, para. 11:1886 ("the apparent test is whether a respondent of average intelligence would know what items to produce").

The responding party must respond in writing and is obligated to produce all specified relevant and non-privileged documents, tangible things, or electronically stored information in its "possession, custody, or control" on the date specified. Fed. R. Civ. P. 34(a). Actual possession, custody or control is not required. "A party may be ordered to produce a document in the possession of a non-party entity if that party has a legal right to obtain the document or has control over the entity who is in possession of the document." *Soto v. City of Concord*, 162 F.R.D. 603, 620 (N.D. Cal. 1995). Such documents include documents under the control of the party's attorney. *Meeks v. Parson*, , 2009 WL 3303718 (E.D. Cal. Sept. 18, 2009) (involving a subpoena to the CDCR); *Axler v. Scientific Ecology Group, Inc.*, 196 F.R.D. 210, 212 (D. Mass. 2000) (a "party must produce otherwise discoverable documents that are in his attorneys' possession, custody or control").

In the alternative, a party may set forth its objection to a request, including the reasons. Fed. R. Civ. P. 34(b)(2)(A)-(B). When a party resists discovery, that party "has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Oakes v. Halvorsen Marine Ltd.*, 189 F.R.D 281, 283 (C.D. Cal. 1998) (citing *Nestle Food Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 104 (D.N.J. 1990)). Boilerplate objections to a request for a production are not sufficient. *Burlington Northern & Santa Fe Ry. v. United States Dist. Court*, 408 F.3d 1142, 1149 (9th Cir. 2005).

If "a party fails to produce documents or fails to respond that inspection will be permitted — or fails to permit inspection — as requested under Rule 34," the propounding party may make a motion to compel production of the documents. Fed. R. Civ. P. 37(a)(3)(B)(iv). Further, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."

Fed. R. Civ. P. 37(a)(4). "The moving party bears the burden of demonstrating 'actual and substantial prejudice' from the denial of discovery." *Hasan v. Johnson*, 2012 WL 569370 at *2 (E.D. Cal. Apr. 9, 2012) (citing *Hallet v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)).

### III. Discussion

Plaintiffs' motion to compel seeks Deputy Ayala's personnel and internal affairs records that were withheld from production. (See Doc. 24.) Defendants contend that the documents are not relevant, and Deputy Ayala's privacy interest should outweigh production. (Id. at 13.) Plaintiffs assert that Defendants improperly designated Deputy Ayala's personnel and internal affairs records as privileged in response to Plaintiffs' document requests. (Doc. 24 at 8.)

"Federal common law recognizes a qualified privilege for official information. (Citation Omitted). Government personnel files are considered official information." *Sanchez v. City of Santa Ana,* 936 F.2d 1027, 1033 (9th Cir.1990). In determining the level of protection that should be afforded by this privilege, courts conduct a case by case balancing analysis, in which the interests of the party seeking discovery are weighed against the interests of the governmental entity asserting the privilege. *Kelly v. City of San Jose,* 114 F.R.D. at 660; *Miller v. Pancucci*, 141 F.R.D. 292, 300 (C.D. Cal. 1992); *Hampton v. City of San Diego*, 147 F.R.D. 227, 230-31 (S.D. Cal. 1993).

This balancing test has been moderately pre-weighted in favor of disclosure. *Kelly*, 114 F.R.D. at 662. "Such pre-weighting is consistent with the well-established notion that because privileges operate in derogation of the truth finding process the law places the burden of proving all the elements essential to invoking any privilege on the party seeking its benefits." *Id*. The pre-weighting is also consistent with the related idea that privileges generally are to be narrowly construed and that doubts about their applicability are to be resolved in favor of disclosure. *Id*. The court in *Kelly* emphasized that in many situations what would pose the threat to law enforcement interests is disclosure to the public generally, not simply to an individual litigant and/or her lawyer. *Id*. Courts routinely enter tightly crafted protective orders under which only a single litigant, sometimes only that litigant's lawyer, has access to the sensitive information, and the weight of some of the law enforcement interests may be reduced. *Id*.

Before the Court will engage in this balancing of interests, the party asserting the privilege—here, the defendant Kern County—must properly invoke the privilege by making a "substantial threshold showing." *Id.* at 669.  To fulfill the threshold requirement, the party asserting the privilege must submit a declaration or affidavit from a responsible official with personal knowledge of the matters to be attested to in the affidavit.  *Id.*  The affidavit must include: "(1) an affirmation that the agency generated or collected the material in issue and has maintained its confidentiality; (2) a statement that the official has personally reviewed the material in question; (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer; (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interests, and (5) a projection of how much harm would be done to the threatened interests if disclosure were made."  *Id.* at 670; *see also Chism v. County of San Bernardino,* 159 F.R.D. 531, 533 (C.D.Cal.1994); *Hampton v. City of San Diego,* 147 F.R.D. at 230-31; *Miller v. Pancucci,* 141 F.R.D. at 301.

If the court concludes that a defendant's submissions are not sufficient to meet the threshold burden, it will order disclosure of the documents at issue.  If a defendant meets the threshold requirements, the court will order an *in camera* review of the material and balance each party's interests.  *Kelly*, 114 F.R.D. at 671; *Chism,* 159 F.R.D. at 533-34; *Hampton,* 147 F.R.D. at 231; *Miller,* 141 F.R.D. at 301.

Here, Defendants have asserted objections to the production of these documents based on the federal official information privilege, California Government Code Section 3300 et seq., California Penal Code Sections 832.7 and 832.8, and California Evidence Code Section 1040 et seq.  (Doc. 24 at 13; Alexander Decl. Exh. 2.).  The party resisting discovery "must *specifically* describe how disclosure of the requested documents in that particular case . . . would be harmful."  *Chism,* 159 F.R.D. at 535 (emphasis added) (citing *Miller,* 141 F.R.D. at 300-01).

Here, Defendants have failed to meet their threshold burden because they have not satisfied elements three, four, and five of the *Kelly* test.  Defendants do not specifically describe how the disclosure of the withheld documents from Ayala's personnel file would be harmful by disclosure of

7

the material to Plaintiffs and/or their lawyer. As such, Defendants' failed to meet the third element of the threshold test for invoking the official information privilege. Defendants also failed to meet the fourth requirement of the threshold test because they fail to address how disclosure, under a carefully crafted protective order, would create a substantial risk of harm to significant government interests. The use of a carefully drafted protective order, under which only Plaintiffs and their lawyer have access to the material, substantially reduces the confidentiality interests asserted by Defendants. *See Kelly,* 114 F.R.D. at 662, 666, 671; *see also Chism,* 159 F.R.D. at 535 (endorsing use of protective order to keep internal use-of-force tactics secret); *Hampton,* 147 F.R.D. at 231 (endorsing use of protective order to protect privacy interests of police officers); *Miller,* 141 F.R.D. at 301 (encouraging the use of well tailored protective orders in discovery of police files). The Court entered an amended stipulated protective order on February 16, 2022, which specifically states that "CONFIDENTIAL Information shall be disclosed only to the parties to this stipulation, their experts, consultants, and counsel." (Doc. 31 at 6.) Defendants fail to show that disclosure subject to this protective order would create a substantial risk of harm to significant governmental or privacy interests.

Finally, Defendants have failed to give a projection of how much harm would be done to the threatened interests if disclosure occurred as set forth in the fifth element of the threshold test. As such, Defendants have not met their burden for invoking the official information privilege regarding the documents from Deputy Ayala's personnel record that were withheld from production.

Defendants contend that the documents that were withheld are not relevant because they concern conduct by Deputy Ayala related to maintenance of a vehicle, report writing, and driving. (Doc. 24 at 13.) Personnel files, including records of training, conduct, performance, and evaluation of officer-defendants in excessive force cases have been held to be relevant. *Hampton,* 147 F.R.D. at 229. Such information "may be relevant on the issues of credibility, notice to the employer, ratification by the employer and motive of the officers . . . as well as on the issue of punitive damages, in that the information may lead to evidence of a continuing course of conduct reflecting malicious intent." *Id.*

Plaintiffs assert that the withheld personnel file and complaints pertaining to Deputy Ayala are relevant to Plaintiffs' claims for excessive force, substantive due process, negligence, and *Monell*

claims for inadequate training and ratification. (Doc. 24 at 12.) Plaintiffs allege that the withheld documents contain information regarding Deputy Ayala's ethics, decision-making abilities, and work and safety habits, and the department's handling and knowledge of complaints against Deputy Ayala. (Id.) The withheld documents include a written reprimand regarding the maintenance of a Kern County Sherriff's Office vehicle; a citizen complaint regarding report writing, specifically not completing a transfer of custody form when transferring children from one party to another; a department initiated complaint regarding report writing, specifically not properly documenting an incident of a found juvenile, which was not sustained; and two separate citizen's complaints regarding Deputy Ayala's driving, which were not sustained. (Doc. 24 at 6-7.) Each of these types of documents may be relevant to the issues involved in Plaintiffs' claims because such documents may reveal Deputy Ayala's patterns of behavior, as well as the County's response to such behavior. Accordingly, the Court finds that the withheld personnel files of Deputy Ayala are relevant to Plaintiffs' claims.

Defendants also ask that the Court conduct an *in camera* review of the withheld documents, to determine their relevance to this litigation. (Doc. 24 at 4, 15.) However, Defendants must first satisfy their threshold burden—which they have failed to do. *See Flanagan v. Benicia Unified Sch. Dist.*, No. CIV S-07-0333 LKK GGH, 2008 U.S. Dist. LEXIS 39386, at *12-13 (E.D. Cal. May 14, 2008) ("[I]n camera review is not to be used as a substitute for a party's obligation to justify its withholding of documents." (internal quotations and citation omitted)). It is only if a defendant meets the threshold requirements that the court will order an *in camera* review of the material. *See Kelly*, 114 F.R.D. at 671. Thus, the Court finds that Defendants have failed to meet the requirements for the Court to order an *in camera* review.

Based on the foregoing, this Court grants Plaintiffs' request to compel discovery of Deputy Ayala's withheld personnel records, subject to the approved amended protective order.

**IV.     Conclusion and Order**

Based upon the foregoing, the Court **ORDERS** that Plaintiffs' motion to compel (Doc. 25) is **GRANTED**.

IT IS SO ORDERED.

Dated:   **February 16, 2022**                        /s/ *Sheila K. Oberto*
                                                                  UNITED STATES MAGISTRATE JUDGE