James D. Weakley, Esq.     Bar No. 082853
Brande L. Gustafson, Esq.  Bar No. 267130
**WEAKLEY & ARENDT**
A Professional Corporation
5200 N. Palm Avenue, Suite 211
Fresno, California 93704
Telephone: (559) 221-5256
Facsimile: (559) 221-5262
Jim@walaw-fresno.com
Brande@walaw-fresno.com

Attorneys for Defendant Deputy Jason Ayala

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICKEL ERICK LEWIS JR., individually and as successor-in-interest to MICKEL E. LEWIS, SR., ORIONA LEWIS; and BRIONA LEWIS, individually and as successor-in-interest,<br><br>Plaintiff,<br><br>vs.<br><br>KERN COUNTY, Deputy JASON AYALA, and DOES 1-20, inclusive,<br><br>Defendant. | Case No. 1:21-CV-00378-KES-CDB<br>*Consolidated with Case No. 1:21−CV−01352−DAD−JLT*<br><br>**DEFENDANT DEPUTY JASON AYALA'S MOTIONS IN LIMINE** |
| R.L., M.L., and H.L., minors, by and through guardian *ad litem* Roberta Haro, individually and as successors in interest to Michel Lewis Sr., deceased; A.W., a minor, by and through her guardian *ad litem* Alisha White, individually and as a successor in interest to Michel Lewis Sr., deceased; ALISHA WHITE, individually and as a successor in interest to Mickel Lewis Sr.,<br><br>Plaintiffs,<br>vs.<br><br>COUNTY OF KERN; JASON AYALA; and DOES 1-10, inclusive,<br><br>Defendants. | |

–1–

On February 6, 2025, the parties met and conferred by phone to see if any of the motions in limine could be resolved without needing to pursue a motion. At that time, counsel for Plaintiffs represented that there were some motions in limine that they could not agree to and some they may be able to agree to in part, as long as defense counsel does not open the door to the introduction of that evidence. Defense counsel followed up by email on February 10, 2025 and February 11, 2025, with counsel for Plaintiffs regarding which motions in limine they could stipulate to and which motions Defendants would have to present to the court.

Plaintiffs represented that they do not intend to call John C. Hiserodt to testify, as long as the parties work together to subpoena the medical examiner (or a substitute) for trial testimony and, if necessary, have the autopsy report admitted into evidence. Plaintiffs did not indicate whether they would agree to any other of the motions in limine proposed by the defendants.

As a result of these meet and confer efforts, Defendant Deputy Jason Ayala ("Deputy Ayala") hereby moves this Court, in limine, to instruct the parties and counsel as follows:

1. To exclude evidence and argument that a lesser amount of force would have controlled the Decedent.

2. To exclude evidence of character, other bad acts or personnel actions relating to Jason Ayala.

3. To preclude evidence of indemnification of Deputy Ayala by his employer and vicarious liability of County of Kern on Plaintiffs' civil rights claims.

4. To exclude testimony of Plaintiffs' biomechanical engineer expert John Gardiner

## I.

## MEMORANDUM OF POINTS AND AUTHORITIES

"A party may use a motion in limine to exclude inadmissible or prejudicial evidence before it is actually introduced at trial. '[A] motion in limine is an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings.' A motion in limine allows the parties to resolve evidentiary disputes before trial and avoids potentially prejudicial evidence being presented in front of the jury." *Saenz v. Reeves*, No. 1:09-CV-00057-BAM PC, 2013 WL 2481733, at *1 (E.D. Cal. June 10, 2013) (citations omitted).

1. **MOTION TO EXCLUDE EVIDENCE AND ARGUMENT THAT A LESSER AMOUNT OF FORCE WOULD HAVE CONTROLLED THE DECEDENT**

Plaintiffs must establish that Deputy Ayala used excessive force. The question is whether the actions Deputy Ayala took were lawful, not whether he could have acted in some manner the Plaintiff deems more reasonable. *Gramenos v. Jewel Companies, Inc.*, 797 F.2d 432, 442 (7th Cir. 1986) ("the Constitution does not require the police to follow the best recommended practices."); *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994) (police need not "avail themselves of the least intrusive means of responding to an exigent situation.") Further, peace officers have no obligation to negotiate with an assaultive suspect. *Reynolds v. County of San Diego*, 84 F.3d 1162, 1170 (9th Cir. 1996) (officer's failure to call for backup, to talk to the suspect in calm tones and to refrain from approaching suspect irrelevant to reasonableness of force).

While the availability of alternative force options may be a factor in determining the reasonableness of the force used under the totality of the circumstances, "police officers need not employ the least intrusive degree of force possible during an arrest, they must at least consider less intrusive methods, and the presence of feasible alternatives is a relevant consideration in an excessive force analysis. *Bryan v. MacPherson*, 630 F.3d 805, 831 n. 15 (9th Cir.2010)." *Kanda v. Longo*, 2012 WL 1893565 at *1 (9th Cir. 2012). The mere availability of alternatives, however, does not render the forceful action taken unreasonable. *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir.1994); *see also Napouk v. Las Vegas Metro. Police Dep't*, 123 F.4th 906, 919 (9th Cir. 2024) ("Officers "need not avail themselves of the least intrusive means of responding to an exigent situation," [citation omitted] and we decline to create a rule by which officers have a duty to indefinitely retreat when faced with an immediate threat."); *Wilkinson v. Torres*, 610 F.3d 546, 551 (9th Cir. 2010). Afterall, a police officer is not obligated to start with a lesser forceful response and, only when that fails, graduate to a more forceful response. Rather, the officer is obligated to use the degree of force that is reasonable to the totality of the circumstances. *Graham v. Connor,* 490 U.S. 386, 396 (1989).

Evidence or arguments as to other actions that Deputy Ayala could have taken or that they would have ended with a different result are speculative and irrelevant to the determination of whether the actions of Deputy Ayala were reasonable and should be precluded. Plaintiffs' expert should be

precluded from testifying that Deputy Ayala's use of lethal force under the circumstances confronting him was excessive or unreasonable or that a lesser amount of force could have controlled Lewis and should instead be limited to responding to hypothetical situations posed to him of what reasonably well-trained officers are taught regarding when they may use force.

    **2.**     **MOTION TO EXCLUDE EVIDNECE OF CHARACTER, OTHER BAD ACTS OR PERSONNEL ACTIONS RELATING TO DEPUTY JASON AYALA**

Deputy Ayala moves this Court in limine to preclude Plaintiffs from presenting evidence included in his personnel records. This includes, but is not limited to, information of a personal nature as well as information concerning any disciplinary actions or complaints levied against Deputy Ayala. California Penal Code section 832.7 provides for the confidentiality of peace officer personnel records. This includes personnel records defined under Penal Code section 832.8, and records maintained pursuant to Penal Code section 832.5.

Penal Code section 832.8 defines personnel records as:

> [A]ny file maintained under that individual's name by his or her employing agency and containing records relating to any of the following:
> (1) Personal data, including marital status, family members, educational and employment history, home addresses, or similar information.
> (2) Medical history.
> (3) Election of employee benefits.
> (4) Employee advancement, appraisal, or discipline.
> (5) Complaints, or investigations of complaints, concerning an event or transaction in which he or she participated, or which he or she perceived, and pertaining to the manner in which he or she performed his or her duties.
> (6) Any other information the disclosure of which would constitute an unwarranted invasion of personal privacy.

Cal. Penal Code § 832.8(a).

Although federal courts are not bound by state statutes or privileges, federal common law recognizes an "official information" privilege that embraces records or information compiled for law enforcement purposes not otherwise available to the public pursuant to 5 U.S.C. § 552. *Jackson v. County of Sacramento*, 175 F.R.D. 653, 655 (E.D. Cal. 1997). As a matter of comity, the federal court should attempt to ascertain what interests inspire relevant state doctrine and should take into account the views of state authorities and the importance of those interests. *Kelly v. City of San Jose*,

114 F.R.D. 653, 656 (N.D. Cal. 1987). Federal courts should give some weight to privacy rights that are protected by state constitutions or state statutes. *Id.*

Furthermore, only relevant evidence is admissible. Fed. R. Evid. Rule 402. Evidence is not relevant unless it tends to prove or disprove a fact of consequence. Fed. R. Evid. Rule 401. Evidence of other citizen complaints or internal affairs investigations would be irrelevant since they do not prove Deputy Ayala's actions were unreasonable under the totality of the circumstances. Moreover, such "character evidence" is not admissible to prove conduct of a defendant (Fed. R. Evid. Rule 404); and admission of any such evidence would be unduly prejudicial and subject to exclusion. Fed. R. Evid. Rule 403.

Deputy Ayala anticipates that Plaintiffs, Plaintiffs' counsel, Plaintiffs' witnesses, and/or their experts may testify regarding Internal Affairs Investigation IA2015-0007 and field complaint FC2018-0028, both of which were determined to be unfounded. Deputy Ayala also anticipates that Plaintiffs, Plaintiffs' counsel, Plaintiffs' witnesses, and/or their experts may testify regarding the following additional matters involving Deputy Ayala:

- A written reprimand dated June 20, 2017, regarding maintenance of a Kern County Sheriff's Office vehicle;
- Adverse Comment AC2020-0099, dated November 24, 2020 (after the Lewis incident), concerning a citizen complaint regarding report writing, specifically not completing a transfer of custody form when transferring children from one party to another;
- Adverse Comment AC2019-0105, dated August 29, 2019, concerning a department-initiated complaint regarding report writing, specifically not properly documenting an incident of a found juvenile, not sustained;
- Field Complaint FC2018-0081, dated July 14, 2018, concerning a citizen's complaint regarding Deputy Ayala's driving, not sustained; and
- Field Complaint FC2018-0062, dated April 26, 2018, concerning a citizen's complaint regarding Deputy Ayala's driving, not sustained.

Defendants submit that such questioning amounts to questions about prior "bad acts" and creates substantial danger that it may unfairly inflame the passions or emotions of the jury. Fed. R.

Evid. Rules 401, 402, 403 & 404(b).

    A.    <u>Exclude improper character evidence</u>

Rule 404, subdivision (a) of the Federal Rules of Evidence prohibits the introduction of evidence of the character of the civil defendant to prove an act in conformity with that character trait. Fed. R. Evid. 404(a)(1); *United States v. Lynch*, 437 F.3d 902, 913-915 (9th Cir. 2006). Likewise, evidence of other crimes, wrongs or acts is inadmissible "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1); *United States v. Curtin*, 489 F.3d 935, 944, (9th Cir. 2007).

Exceptions to this rule excluding character evidence exist, although none are applicable in the instant case. For example, Rule 405(b) of the Federal Rules of Evidence allows character evidence when character itself is at issue, which is not the case here. Rule 608 of the Federal Rules of Evidence allows character evidence for purposes of impeachment, however, Deputy Ayala's past actions do not relate to his character for truthfulness, so this exception would not apply.

Another exception is Rule 404(b)(2) of the Federal Rules of Evidence, which allows crimes, wrongs or other acts to prove something other than character such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. However, Plaintiffs bear a heavy burden in demonstrating character evidence is being used other than to prove an act in conformity therewith. In order to survive this motion in limine, Plaintiffs would be required to clearly articulate the specific purpose for which such evidence is offered and that such evidence is relevant to one or more issues in the case. *Curtin*, 489 F.3d at 957-958; *United States v. Arambula-Ruiz*, 987 F.2d 599, 602-603, (9th Cir. 1993). Plaintiffs would be required to "articulate precisely the evidential hypothesis by which a fact of consequence may be inferred from the other acts evidence." *United States v. Mehrmanesh*, 689 F.2d 822, 830 (9th Cir. 1982). Courts are required to ensure that the purpose for which the evidence is offered is more than just a sham for using it as proof of character. *See, e.g., United States v. Merriweather*, 78 F.3d 1070, 1074-1079 (6th Cir. 1996) (emphasizing the need for a cautious analysis of evidence of uncharged misconduct).

Even if Plaintiffs were to clear these hurdles and articulate an admissible reason beyond showing that Deputy Ayala acted in conformity with the alleged character trait, the court would need

to analyze the evidence of prior "bad acts" pursuant to Rule 403 of the Federal Rules of Evidence and determine that its probative value outweighs its prejudicial effect. *Arambula-Ruiz*, 987 F.2d at 602. In *Huddleston v. United States*, 485 U.S. 681, 688 (1988), the Court stated that the decision to admit evidence under Rule 404(b) depends on "whether the danger of unfair prejudice [substantially] outweighs the probative value of the evidence in view of the availability of other means of proof and other factors appropriate for making decisions of this kind under Rule 403." Thus, the Court has recognized that exclusion is mandated if the probative value of the bad act, in proving the permissible, not-for-character purpose, is substantially outweighed by the risk that the jury would misuse the evidence as proof of bad character.

   B. <u>Exclude irrelevant and prejudicial allegations of misconduct</u>

  Deputy Ayala also anticipates that Plaintiffs, their counsel, and through them any witness or expert witness will present evidence, testimony, or argument concerning unfounded allegations of excessive force against Deputy Ayala and other allegations against Deputy Ayala relating to his driving and maintenance of a patrol vehicle and report writing issues (specifically not properly documenting an incident of a found juvenile and not completing a Transfer of Custody Form when transferring children from one party to another), most of which occurred prior to the incident involving Mickel Lewis, Sr. Such information is not only irrelevant to the issues in this case, but also constitutes improper character evidence and would be highly prejudicial to Deputy Ayala. Fed. R. Evid. Rules 401, 402, 403 & 404(b). These allegations are subject to protective order (Doc. Nos. 14 & 31) and are being referred to only in general terms without going into specifics or providing evidence which would be required to be filed under seal. If, however, the Court requires additional information or evidence relating to the specifics of the allegations, it can be provided under seal for the Court's consideration.

  Only relevant evidence is admissible. Fed. R. Evid. Rule 402. Evidence is not relevant unless it tends to prove or disprove a fact of consequence. Fed. R. Evid. Rule 401. The fact that Deputy Ayala was involved in issues relating to report writing, driving and maintenance of a patrol vehicle,

and unfounded claims of excessive force[1] does not tend to prove or disprove the reasonableness of Deputy Ayala's actions in attempting to detain and arrest, and/or his use of lethal force against Mr. Lewis.  In addition to this evidence having no relevance to the matters involved in this case, it would also cause confusion to the jury and unduly consume court time, as Deputy Ayala would have to explain how the allegations are distinct from this case, as well as the results of those allegations.  Fed. R. Evid. 403.

As a result, Deputy Ayala respectfully requests the Court instruct Plaintiffs and their attorneys (and through them, each of their witnesses and experts) not to mention, or in any other manner convey to the jury anything concerning the unfounded allegations of excessive force against Deputy Ayala and other allegations against Deputy Ayala relating to his driving and maintenance of a patrol vehicle, and report writing issues (specifically allegations of not properly documenting an incident of a found juvenile and not completing a Transfer of Custody Form when transferring children from one party to another).

**3.    MOTION TO PRECLUDE EVIDENCE OF INDEMNIFICATION OF DEPUTY AYALA BY HIS EMPLOYER AND VICARIOUS LIABILITY OF COUNTY OF KERN**

Deputy Ayala seeks an order precluding Plaintiffs, their counsel and through them any witnesses from soliciting testimony, or presenting evidence, regarding Deputy Ayala's indemnification for damages by Defendant County of Kern.  Introduction of any such evidence would be prejudicial to Deputy Ayala's right to a fair trial.

The Ninth Circuit has held that informing the jury in a 42 U.S.C. § 1983 civil rights claim that a police officer may be indemnified for damages by the employing public entity is reversible error requiring a new trial on the measure of damages.  *Larez v. Holcomb*, 16 F.3d 1513, 1518-1521 (9th Cir. 1994).  Here, as in *Larez*, any mention or reference to the County of Kern paying any damages awarded against Defendant Deputy Ayala would be unduly prejudicial, and amount to denial of a fair trial on the issue of damages.  Moreover, courts have granted motions in limine excluding evidence of indemnification by government entities.  *See, e.g., Flowers v. Johnson,* No. 115CV01778JLTPC,

---

[1] Neither of the two unfounded excessive force claims involved occurred during an attempt to detain or arrest, nor did they result in death or serious bodily injury.

2018 WL 3636994, at *3 (E.D. Cal., July 30, 2018), *Ioane v. Spjute*, 2016 WL 4524752 *9 (E.D. Cal. 2016); *Quinn v. Fresno County Sheriff*, 2013 WL 12309356 *1 (E.D. Cal. 2013). Accordingly, Plaintiffs' counsel, and their witnesses, should be instructed not to comment on or suggest that any damages awarded against Defendant Deputy Ayala may be paid by the County of Kern.

For similar reasons, Defendant Deputy Ayala also seeks an order precluding Plaintiffs, their counsel and through them any witnesses from soliciting testimony, or presenting evidence, regarding the County of Kern being vicariously liable for the acts of its employee, defendant Deputy Ayala, with regard to Plaintiffs' civil rights claims. This is because it is well-established that "a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. Department of Social Servs.*, 436 U.S. 691 (1978). Introduction of such evidence would significantly prejudice Deputy Ayala as it would advise the jury that a "deep pocket" is available to compensate the Plaintiffs for their civil rights claims which could improperly influence the jury's decision and amount to denial of a fair trial on the issue of damages. Fed. R. Evid. 403. Accordingly, Plaintiffs' counsel, and their witnesses, should additionally be instructed not to comment on or suggest that the County of Kern is vicariously liable for the actions of defendant Deputy Ayala with regard to their civil rights claims.

**4. MOTION TO EXCLUDE TESTIMONY OF PLAINTIFFS' BIOMECHANICAL ENGINEER EXPERT JOHN GARDINER**

Mr. Gardiner is a biomechanical engineer who Plaintiffs have retained to perform a biomechanical reconstruction analysis of this officer involved shooting. *See*, Declaration of James D. Weakley ("Weakley Decl."), Exh. B, p. 1. He was provided with deposition transcripts, medical records, including the Kern County Coroner autopsy report, witness interviews, photographs and videos. Weakley Decl., Exh. B, Appendix C.

Mr. Gardiner's opinions are:

1. The gunshot wounds sustained by Mr. Lewis were the result of bullet entries to the back, chest, and top of the right shoulder.

2. The totality of the gunshot wounds sustained by Mr. Lewis are not consistent with Deputy Ayala's description that Mr. Lewis was running towards the deputy and facing the deputy

while all shots were fired.

3. The downward trajectory of wounds 1, 2, and 3 (as defined by the Kern County Autopsy Report) are consistent with occurring while Mr. Lewis was falling forwards towards Deputy Ayala.

4. The gunshot wounds that entered the back of Mr. Lewis (wounds 4 and 5 on the Kern County Autopsy Report) are consistent with occurring as his back was facing Deputy Ayala as Mr. Lewis was exiting the parked vehicle while rotating [counter]clockwise.

Weakley Decl., Exh. B, p. 14.

His opinions are based upon his review of the Kern County Coroner's findings of five entry wounds. Weakley Decl., Exh. A, pp. 25:8-12, 31:1-14. He admits that he is not a forensic pathologist and cannot offer opinions on gunshot entrance or exit wounds. *Id.*, at pp. 24:22-25:7. Overall, Mr. Gardiner's opinions are not based upon sufficient data, plus he lacks sufficient qualifications and foundation to make them. In addition, his opinions add nothing that the trier of fact would not understand without his testimony.

Under Rule 702 of the Federal Rules of Evidence, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise," provided "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a).

The gatekeeping obligation of the court to admit only expert testimony that is both reliable and relevant is critical, especially considering the aura of authority experts often exude, which can lead juries to give more weight to their testimony. *Krause v. Cnty. of Mohave*, 459 F. Supp. 3d 1258, 1263 (D. Ariz. 2020). Expert opinions based on unsubstantiated generalizations or opinions not derived by the scientific method must be excluded. The proponent of expert testimony bears the burden of showing that the proposed testimony is admissible under Rule 702. When a party fails to carry this burden, their expert's opinions are not admissible. *Krause*, 459 F. Supp. 3d at 1264.

Expert testimony must help the trier of fact to understand the evidence or determine a fact at issue. Forensic ballistics and bullet trajectory analysis is a highly technical area, subject to peer-reviewed research, and some degree of standardization. Ballistics testimony requires specialized

expertise. *Krause*, 459 F. Supp. 3d at 1265–66.

Ballistic analysis is squarely within the province of expert testimony and not a layperson's knowledge. The expertise in the field requires more than the ability to examine photographs of wound path rods, as Mr. Gardiner has done. *Krause*, 459 F. Supp. 3d at 1266. Mr. Gardiner's experience and credentials in biomechanical engineering do not qualify him to opine on the highly technical area of bullet path reconstruction or ballistics. Weakley Decl., Exh. B, Appendix A (Curriculum Vitae). Nor does he appear to have any specialized knowledge or training relating to bullet trajectory analysis or ballistics. *Id.*

Just reading a coroner's report does not transform Mr. Gardiner into an expert on bullet trajectory analysis. He made no measurements or calculations to support his conclusions. Weakley Decl., Exh. A, pp. 19:14-20:11, 47:8-22, 59:13-23, 60:6-61:3. His investigation is entirely devoid of scientific analysis for which he is unqualified to conduct. *See*, *Krause*, 459 F. Supp. 3d, at 1266. In fact, there is no analysis from Mr. Gardiner to explain how he came to his conclusions. When an expert fails to do so, or bases opinions on subjective belief or unsupported speculation, his testimony should be excluded. *Id.*, at 1267.

Mr. Gardiner's first opinion is not an opinion of his, but is from merely reading from the autopsy report. *See,* Weakley Decl., Exh. A, p. 23:20-24 & Exh. B, p. 14. As he admits, he is not qualified to give an opinion on whether a gunshot wound is an entry or exit wound. Weakley Decl., Exh. A, pp. 24:22-25:7.

Mr. Gardiner's second opinion requires trajectory analysis, which Mr. Gardiner is not qualified to do and makes a credibility determination, which Mr. Gardiner is not allowed to do. Weakley Decl., Exh. B, p. 14. The jury decides a witness' credibility. An expert witness is not permitted to testify specifically to a witness' credibility or to testify in such a manner as to improperly buttress a witness' credibility. *United States v. Candoli*, 870 F.2d 496, 506 (9th Cir. 1989). Such opinions do not aid the trier of fact in making a decision, but, instead, attempt to substitute an expert's judgment for that of the jury's. *Krause*, 459 F. Supp. 3d at 1264. Weighing the credibility of witnesses and resolving factual matters is not outside the common ability or knowledge of a layperson; it is a role assigned solely to a layperson as a juror. *Quinn v. Fresno Cnty. Sheriff*, No. 1:10-CV-01617 LJO,

2012 WL 2995477, at *3 (E.D. Cal. July 23, 2012).

Mr. Gardiner's third opinion requires trajectory analysis, which Mr. Gardiner is not qualified to do and makes a credibility determination, which Mr. Gardiner is not allowed to do. Weakley Decl., Exh. B, p. 14.

Finally, Mr. Gardiner's fourth opinion requires trajectory analysis, which Mr. Gardiner is not qualified to do and does not aid the jury, as any lay person would understand that a gunshot entry wound to a person's back means the person's back was facing the shooter. Weakley Decl., Exh. B, p. 14.

For the reasons addressed herein, Defendants request the Court exclude the opinion testimony of Mr. Gardiner.

## II.

## JOINDER IN OTHER DEFENSE MOTIONS IN LIMINE

Defendant Deputy Jason Ayala hereby joins in and incorporates by reference all of the motions in limine filed by Defendant County of Kern.

Dated: February 11, 2025

                                                        WEAKLEY & ARENDT
                                                        A Professional Corporation

By: */s/ James D. Weakley*
      James D. Weakley
      Brande L. Gustafson
      Attorneys for Defendant Deputy Jason Ayala