1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9                FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   MICKEL ERICK LEWIS JR., et al.,              No.  1:21-cv-00378-KES-CDB

12              Plaintiffs,

13         v.                                      FINAL PRETRIAL ORDER

14   KERN COUNTY et al.,

15              Defendants.

16

17

18

19

20          On January 13, 2025, the Court conducted a final pretrial conference.  Dale Galipo, Britt

21   Karp, Toni Jaramilla, Bernard Alexander, and Renee Masongsong appeared via Zoom as counsel

22   for plaintiffs; Scott Fontes, Kimberly Marshall, and Andrew Hamilton appeared via Zoom as

23   counsel for defendants.  This matter is set for a jury trial on March 11, 2025, at 8:30 a.m. in

24   Courtroom 6.  On January 23, 2025, the Court issued a tentative pretrial order.  New counsel for

25   defendant Jason Ayala substituted in the following day, January 24, 2025.  Defendant Ayala

26   subsequently filed objections to the tentative pretrial order and plaintiffs filed a response to

27   Ayala's objections.  Both Ayala and plaintiffs seek to supplement the pretrial order.  Having

28   considered the parties' pretrial statement and views, Ayala's objections, and plaintiffs' response,

                                                 1

1    the Court issues this final pretrial order.[1]

2        This is a civil rights and state tort action brought in connection with the fatal officer-

3    involved shooting of plaintiffs' father, Mickel E. Lewis Sr. on October 2, 2020.  This action is set

4    for trial on plaintiffs' claims for: (1) violations of 42 U.S.C. § 1983, including unlawful detention

5    and arrest and excessive force; (2) Fourteenth Amendment substantive due process, interference

6    with familial relationship; (3) false arrest/false imprisonment; (4) battery; (5) negligence; and (6)

7    violation of the Bane Act, Cal. Civ. Code § 52.1.

8    I.    JURISDICTION/VENUE

9        Jurisdiction is predicated on 28 U.S.C. §§ 1331 and 1343.  This Court has supplemental

10   jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).  Venue is proper

11   pursuant to 28 U.S.C. § 1391(b) because defendants reside in this district and all incidents,

12   events, and occurrences giving rise to this action occurred in this district.  Jurisdiction and venue

13   are not contested.

14   II.    JURY

15       The parties have requested a jury trial.  The jury will consist of eight jurors.

16   III.    UNDISPUTED FACTS

17       1.    Mickel Lewis, Sr. is the decedent.

18       2.    County of Kern was and is a municipal corporation existing under the laws of the

19           State of California.

20       3.    The Kern County Sheriff's Office was and is a subdivision of the County of Kern.

21       4.    Jason Ayala was a deputy sheriff with the Kern County Sheriff's Department on

22           October 2, 2020, at the time of the incident at issue in this case.

23       5.    On October 2, 2020, at approximately 9.00 pm in the City of Mojave, Jason Ayala

24           initiated a traffic stop of Decedent near the corner of "K" Street and Mono Street,

25           behind the Denny's restaurant and Wienerschnitzel.

26

---

27   [1]  No party has identified any prejudice relating to defendant Ayala and plaintiffs' requests to
     supplement the tentative pretrial order.  Accordingly, this final pretrial order includes the
28   additions requested by those parties.

6.    At the time of this incident, Jason Ayala was acting under color of state law and in the course and scope of his employment with the County of Kern.

7.    Plaintiffs R.L., M.L., H.L., A.W., Mickel Erick Lewis, Jr., Oriona Lewis, and Briona Lewis are the children of Decedent.

8.    Plaintiff Alisha White is the wife of Decedent.

9.    Decedent died as a result of the injuries from the gunshots.

IV.    DISPUTED FACTUAL ISSUES

1.    Whether Defendant Jason Ayala had reasonable suspicion or probable cause to stop Decedent's vehicle.

2.    Whether Decedent posed a threat of serious bodily injury or death to Defendant Ayala, and whether Decedent was unarmed and was complying with Defendant Ayala's instructions when he was shot.

3.    Whether Defendant Ayala issued a warning prior to using deadly force, and, if not, whether it was feasible to do so under the circumstances prior to using deadly force.

4.    Whether Defendant Ayala used reasonable force under the circumstances, and whether there were reasonable alternatives to the use of deadly force.

5.    Whether Defendant Ayala was negligent in his tactics.

6.    The amount and allocation of any damages.

Plaintiffs identify the following disputed factual issues:

1.    Jason Ayala followed and stopped Decedent's vehicle in the absence of reasonable suspicion or probable cause.

2.    While Decedent was standing in the open car door of his vehicle with his back facing Jason Ayala, Jason Ayala issued a command that Decedent turn and walk toward the rear of Decedent's vehicle where Jason Ayala was standing well over a car-length away. In response to Jason Ayala's command, Decedent began to turn in the direction of Jason Ayala. However, before Decedent was fully turned, without provocation and despite Decedent being unarmed with his hands up in

3

1                surrender, Jason Ayala shot Decedent six times: three times in the back; once in

2                the side, and two bullets entering the front of Decedent's torso.

3      3.     At no time did this unarmed Decedent pose a threat of serious bodily injury or

4                death to Jason Ayala or to any other individual, including at the time of the

5                shooting, as Decedent was unarmed, was complying with directions issued by

6                Jason Ayala and was in a position of surrender.

7      4.     Officers are trained to give a verbal warning before shooting, when feasible.

8      5.     Jason Ayala failed to issue a warning that deadly force was going to be used before

9                shooting Decedent.

10     6.     Jason Ayala did not see a gun on Decedent's person or in his hands prior to

11               shooting him.

12     7.     Prior to shooting Decedent, Jason Ayala searched Decedent's person.

13     8.     Decedent was struck by six gunshots.

14     9.     Defendant Jason Ayala's shooting violated standard police officer training.

15    10.    It would have been feasible for Jason Ayala to issue a warning that deadly force

16               was going to be used before shooting Decedent.

17    11.    Jason Ayala used excessive and unreasonable deadly force against Decedent.

18    12.    There were reasonable options other than using the deadly weapon; it was feasible

19               to use a warning that deadly force will be used; and the officer was negligent in his

20               tactics.

21    Plaintiffs Mickel Erick Lewis, Jr., Oriona Lewis, and Briona Lewis identify the following

22    additional disputed factual issue:

23    13.    In the aftermath of the shooting death of their father, and while Plaintiffs and other

24               grieving family members visited the site of the shooting to grieve, place flowers

25               and tokens of love to commemorate Decedent's life, Defendants engaged in acts of

26               intimidation and harassment against Plaintiffs, by (a) having multiple officers in

27               multiple vehicles circle and congregate adjacent to the memorial; (b) by lining up

28               in a show of force and callously laughing, yelling and glaring at Plaintiffs and

family members, in a show of visible presence, while Plaintiffs mourned; (c)
engaging in hide-and-seek maneuvers and making repeated vehicle passes by the
memorial; (d) threatening witnesses not to communicate or cooperate with
Plaintiffs Mickel Erick Lewis, Jr., Oriona Lewis, and Briona Lewis or their
counsel in collecting video evidence or statements from adjacent business
establishments; and (e) following Plaintiffs and Decedent's loved ones home from
the memorial.

14.     Defendants authored and published a false narrative of the incident to the general
public, with the objective of persuading and misleading the public and potential
jurors that Decedent somehow provoked this incident, and that Ayala was justified
in using deadly force against the Decedent, all of which is based on false and
fabricated facts.

Defendants identify the following disputed factual issues:

1.     Whether Jason Ayala properly conducted a traffic stop of the Decedent;

2.     Whether Jason Ayala used reasonable force when Decedent's actions caused Jason
Ayala to believe he was in danger of immediate serious physical harm or death;

3.     Whether Jason Ayala used unreasonable and/or excessive force in violation of the
Fourth and/or Fourteenth Amendments to the United States Constitution;

4.     Whether Jason Ayala committed a battery upon Decedent's person;

5.     Whether Jason Ayala violated Decedent's rights under the Bane Civil Rights Act,
Cal. Civ. Code Section 52.1;

6.     Whether Plaintiffs are entitled to damages, and if so, the amount of said damages;

7.     Whether Plaintiffs are entitled to attorney's fees and costs;

8.     Whether Defendants are entitled to immunities, privileges, and/or offsets provided
by California Tort Claims Act of the California Government Code (Government
Code § 810 et seq.); California Government Code including, without limitation,
§§ 820.8, 815; 815(b); 815.2; 818; 820.2; 820.4; 820.8; 956.4, and Penal Code
§§ 834, 834a, 835, 835a and 836;

5

9.     Whether Jason Ayala is immune from liability under the doctrine of qualified immunity;

10.     Whether no more force was used on Decedent's person than was necessary to effect detention, overcome any resistance thereto, prevent escape there from, and prevent injury to the officers and the public;

11.     Whether Defendant Jason Ayala honestly and reasonably believed that the Decedent was about to inflict harm upon him and that the use of force, if any, was done reasonably and in self defense;

12.     Whether Jason Ayala acted without malice and with a good faith belief in the propriety of his conduct;

13.     Whether Jason Ayala's conduct at all times material herein was privileged and/or justified under applicable state and federal law;

14.     Whether the Decedent was negligent and contributed to and was a proximate cause of Plaintiff's alleged injuries and damages, if any, or was the sole cause thereof;

15.     Whether Defendants should be awarded their costs of suit incurred herein; and

16.     Whether Defendants are entitled to attorney's fees.

V.     <u>DISPUTED EVIDENTIARY ISSUES/MOTIONS IN LIMINE</u>

The purpose of a motion in limine is to establish in advance of the trial that certain evidence should or should not be admitted at trial. The Court will grant a motion in limine precluding use of evidence only if the moving party establishes that the evidence clearly is not admissible for any valid purpose.  The Court does not encourage the filing of motions in limine unless they are addressed to issues that can realistically be resolved by the Court prior to trial and without dependence on other evidence which will be introduced by the parties at trial.

In advance of filing any motion in limine, the parties shall meet and confer to determine whether they can resolve any disputes and avoid filing motions in limine.  The parties shall exhaust efforts to resolve such evidentiary disputes prior to filing a motion in limine and shall include in any such motion a certification concerning their meet and confer efforts.

6

The parties anticipate filing the motions in limine identified below:

Plaintiffs' Motions in Limine

1. To exclude information unknown to Defendant Jason Ayala at the time of the shooting under FRE 401, 402, and 403.

2. To exclude evidence of Decedent's criminal history.

3. To exclude evidence of Decedent's drug and alcohol use.

4. To exclude any post-shooting findings by any agency.

5. To exclude any evidence or argument that Decedent had a gun in his vehicle during this incident, including video evidence of individuals discarding the gun.

Defendants' Motions in Limine

1. To exclude evidence argument that a lesser amount of force would have controlled the Decedent.

2. To exclude evidence of character, other bad acts or personnel actions relating to Jason Ayala.

3. To exclude evidence of Plaintiffs' later contact by Kern County Sheriff Deputies.

4. To exclude graphic and inflammatory photographs of the Decedent.

5. To exclude evidence of an unrelated investigation of the Kern County Sheriff's Office by the Department of Justice and subsequent consent decree in BCV-20102971.

6. To exclude evidence of the wealth or poverty of the County, including the existence of any excess insurance to cover any damages awarded.

7. To exclude any testimony from John Hiserodt, M.D.

8. To exclude evidence of indemnification of Deputy Ayala by his employer and vicarious liability of County of Kern.

9. To exclude testimony of John Gardiner, Ph.D.

Any motion in limine shall be filed no later than **February 11, 2025**. The motion must clearly identify the nature of the evidence that the moving party seeks to have admitted or seeks to prohibit the other side from offering at trial. Any Opposition to a motion in limine shall be

7

1    filed no later than **February 25, 2025**.  After reviewing the motions and any opposition briefs, the

2    Court will notify the parties if a reply brief is necessary.  As such, parties shall not file any reply

3    briefs without court approval.  The Court will also notify the parties if it will hear argument on

4    any motions in limine prior to the first day of trial.

5    VI.    SPECIAL FACTUAL INFORMATION

6           None listed.

7    VII.    RELIEF SOUGHT

8           1.    Plaintiffs seek (1) survival damages, including Decedent's pre-death pain and

9                 suffering, loss of life; (2) wrongful death damages, including for funeral and burial

10                expenses, loss of financial support, and the loss of Decedent's loss of care,

11                protection, guidance, advice, training, nurturing, love, society companionship;

12                (3) punitive damages; and (4) attorneys' fees under 42 U.S.C. § 1988 and state

13                law, including a multiplier under Cal. Civil Code Section 52.

14           2.    Defendants seek dismissal of this case, costs, and attorneys' fees under 42 U.S.C.

15                § 1988 and 42 U.S.C. § 1927, Federal Rule of Civil Procedure 54, Local Rules 292

16                and 293, and all other applicable statutes and rules.

17    VIII.    POINTS OF LAW

18           The claims and defenses arise under both federal and state law.

19           1.    The elements of, standards for, and burden of proof in a claim of unlawful

20                detention and arrest in violation of the Fourth Amendment.

21           2.    The elements of, standards for, and burden of proof in a claim of excessive force in

22                violation of the Fourth Amendment.

23           3.    The elements of, standards for, and burden of proof in a claim of interference with

24                familial relationship in violation of the Fourteenth Amendment.

25           4.    The elements of, standards for, and burden of proof in a claim of false arrest/false

26                imprisonment.

27           5.    The elements of, standards for, and burden of proof in a claim for battery.

28           6.    The elements of, standards for, and burden of proof in a claim for negligence.

8

7.    The elements of, standards for, and burden of proof in a claim for violation of the Bane Act, Cal. Civ. Code § 52.1.

8.    The elements of, standards for, and burden of proof for the affirmative defense of state immunity.

9.    The elements of, standards for, and burden of proof for the affirmative defense of qualified immunity.

10.    The elements of, standards for, and burden of proof for the affirmative defense of contributory negligence.

11.    The elements of, standards for, and burden of proof for the affirmative defense of failure to mitigate damages.

12.    The elements of, standards for, and burden of proof for the affirmative defense of self-defense.

13.    The elements of, standards for, and burden of proof for the affirmative defense of assumption of the risk.

14.    The elements of, standards for, and burden of proof for the affirmative defense of immunity under California Penal Code § 196.

Plaintiffs R.L., M.L., and H.L., A.W., and Alisha White, Mickel Erick Lewis, Jr., Oriona Lewis, and Briona Lewis bring state and federal causes of action for: (1) violations of 42 U.S.C. § 1983, including unlawful detention and arrest and excessive force; (2) Fourteenth Amendment substantive due process, interference with familial relationship; (3) false arrest/false imprisonment; (4) battery; (5) negligence; and (6) violation of the Tom Bane Civil Rights Act. It is disputed as to whether there was a violation of the Decedent's and Plaintiffs' civil and constitutional rights under federal and state law. Defendants dispute liability and damages.

The affirmative defenses Defendants intend to raise at trial are: (1) State immunity under California Government Code §§ 815, 815.2, 815.3, 818, 818.2, 818.4, 818.8, 820(b), 820.2, 820.4, 820.6, 820.8, 821, 822.2, and 823, and Penal Code §§ 834, 834a, 835, 835a, and 836; (2) qualified immunity for Officer Ayala; (3) Plaintiffs', decedent's, and others' contributory negligence; (4) Plaintiffs' failure to mitigate their damages; (5) self-defense; (6) assumption of

1  risk by the decedent; and (7) immunity under California Penal Code § 196.

2  **ANY CAUSES OF ACTION OR AFFIRMATIVE DEFENSES NOT EXPLICITLY**

3  **ASSERTED IN THE PRETRIAL ORDER UNDER POINTS OF LAW AT THE TIME IT**

4  **BECOMES FINAL ARE DISMISSED AND DEEMED WAIVED.**

5  Trial briefs addressing the points of law implicated by these remaining claims shall be

6  filed with this Court no later than **February 25, 2025**, in accordance with Local Rule 285.

7  IX.    ABANDONED ISSUES

8  1.    Plaintiffs are no longer pursuing their claims for *Monell* liability, violation of the

9  Ralph Civil Rights Act, and intentional infliction of emotional distress.

10  2.    Plaintiffs are also no longer pursuing their claim regarding failure to provide

11  medical care to Decedent as alleged in their fifth cause of action for negligence, or

12  anywhere else in their complaint.

13  X.    WITNESSES

14  The parties have submitted a joint list of witnesses.  The witnesses shall be those listed in

15  **Attachment A**.

16  A.    **The Court does not allow undisclosed witnesses to be called for any purpose,**

17  **including impeachment or rebuttal, unless they meet the following criteria:**

18  (1)    The party offering the witness demonstrates that the witness is for the

19  purpose of rebutting evidence that could not be reasonably anticipated at

20  the pretrial conference, or

21  (2)    The witness was discovered after the pretrial conference and the proffering

22  party makes the showing required in paragraph B, below.

23  B.    Upon the post pretrial discovery of any witness a party wishes to present at trial,

24  the party shall promptly inform the Court and opposing parties of the existence of

25  the unlisted witnesses so the Court may consider whether the witnesses shall be

26  permitted to testify at trial.  The witnesses will not be permitted unless:

27  (1)    The witness could not reasonably have been discovered prior to the

28  discovery cutoff;

(2)    The Court and opposing parties were promptly notified upon discovery of the witness;

(3)    If time permitted, the party proffered the witness for deposition; and

(4)    If time did not permit, a reasonable summary of the witness's testimony was provided to opposing parties.

## XI.    EXHIBITS, SCHEDULES, AND SUMMARIES

Plaintiffs' exhibits are listed in **Attachment B**. Defendants' exhibits are listed in **Attachment C**.[2]

No exhibit shall be marked or entered into evidence under multiple exhibit numbers, and the parties are hereby directed to meet and confer for the purpose of designating joint exhibits. All exhibits must be pre-marked as discussed below. At trial, joint exhibits shall be identified as JX and listed numerically, e.g., JX-1, JX-2. To the extent the parties also have separate exhibits, Plaintiffs' exhibits shall be listed numerically and Defendants' exhibits shall be listed alphabetically. All exhibits must be pre-marked.

The parties must prepare four (4) separate exhibit binders for use by the Court at trial, with a side tab identifying each exhibit in accordance with the specifications above. Each binder shall have an identification label on the front and spine. The parties must exchange exhibits no later than **28 days before trial**. Any objections to exhibits shall be filed no later than **February 25, 2025**. The final exhibits are due to the Court by **March 6, 2025**. In making any objection, the party is to set forth the grounds for the objection. As to each exhibit which is not objected to, it shall be marked and received into evidence and will require no further foundation.

**The Court does not allow the use of undisclosed exhibits for any purpose, <u>including impeachment or rebuttal</u>, unless they meet the following criteria:**

A.    The Court will not admit exhibits other than those identified on the exhibit lists

---

[2] The parties' exhibits as listed in Attachments B and C are not all separately identified as required. (For example, each video referenced in Attachment B, at "21" and Attachment C, at "a", should be listed as a separate exhibit for trial, with a separate exhibit number). In marking exhibits for trial, the parties shall identify each exhibit separately and shall include a reasonable description on their exhibit list (e.g., date, Bates-stamp number, description, and/or page length) as to the identified exhibit.

referenced above unless:

    (1)    The party proffering the exhibit demonstrates that the exhibit is for the purpose of rebutting evidence that could not have been reasonably anticipated, or

    (2)    The exhibit was discovered after the issuance of this order and the proffering party makes the showing required in paragraph B, below.

B.    Upon the discovery of exhibits after the discovery cutoff, a party shall promptly inform the Court and opposing parties of the existence of such exhibits so that the Court may consider their admissibility at trial. The exhibits will not be received unless the proffering party demonstrates:

    (1)    The exhibits could not reasonably have been discovered earlier;

    (2)    The Court and the opposing parties were promptly informed of their existence;

    (3)    The proffering party forwarded a copy of the exhibits (if physically possible) to the opposing party. If the exhibits may not be copied the proffering party must show that it has made the exhibits reasonably available for inspection by the opposing parties

## XII.    DISCOVERY DOCUMENTS

*Plaintiffs may use the following discovery documents at trial:*

1.    Defendant Kern County's Responses to Plaintiff Mickel Erick Lewis, Jr.'s Request for Production of Documents, Set One.

2.    Defendant County of Kern's Responses to Plaintiffs R.L., M.L. and H.L.'s Special Interrogatories, Set One.

3.    Defendant County of Kern's Responses to Plaintiffs R.L., M.L. and H.L.'s Request for Production of Documents, Set One.

4.    Deposition of Defendant Deputy Ayala.

5.    Deposition of Nicholas Montoya.

6.    Deposition of Jeremy Terletter.

1    7.    Deposition of Officer Jose Castellanos.

2    8.    Deposition of Marlyn Komenenus.

3    9.    Deposition of Destiny Salcedo.

4    10.    Deposition of Jessica Salcedo.

5    11.    Deposition of Leticia Castillo.

6    12.    Deposition of Frank Sheridan, M.D.

7    13.    Deposition of Clarence Chapman.

8    14.    Deposition of Michael Levine, M.D.

9    15.    Deposition of Parris Ward.

10    16.    Deposition of Michael Kuzel, P.E.

11    17.    Deposition of Rocky Edwards.

12    <u>Defendants may use the following discovery documents at trial:</u>

13    1.    Plaintiff Briona Lewis Responses to County of Kern's RPD – Set 1.

14    2.    Plaintiff Oriona Lewis Responses to County of Kern's RPD – Set 1.

15    3.    Plaintiff Mickel Erik Lewis, Jr. Responses to County of Kern's RPD – Set 1.

16    4.    Plaintiff H.L. Responses to County of Kern's RPD – Set 1.

17    5.    Plaintiff M.L. Responses to County of Kern's RPD – Set 1.

18    6.    Plaintiff A.W. Responses to County of Kern's RPD – Set 1.

19    7.    Plaintiff R.L. Responses to County of Kern's RPD – Set 1.

20    8.    Plaintiff Alisha White Responses to County of Kern's RPD – Set 1.

21    9.    Plaintiff Briona Lewis Responses to County of Kern's Interrogatories – Set 1.

22    10.    Plaintiff Oriona Lewis Responses to County of Kern's Interrogatories – Set 1.

23    11.    Plaintiff Mickel Erick Lewis, Jr. Responses to County of Kern's Interrogatories –

24    Set 1.

25    12.    Plaintiff H.L. Responses to County of Kern's Interrogatories – Set 1.

26    13.    Plaintiff M.L. Responses to County of Kern's Interrogatories – Set 1.

27    14.    Plaintiff A.W. Responses to County of Kern's Interrogatories – Set 1.

28    15.    Plaintiff R.L. Responses to County of Kern's Interrogatories – Set 1.

16. Plaintiff Alisha White Responses to County of Kern's Interrogatories – Set 1.

17. Plaintiff H.L. Responses to County of Kern's Request for Admissions – Set 1.

18. Plaintiff M.L. Responses to County of Kern's Request for Admissions – Set 1.

19. Plaintiff A.W. Responses to County of Kern's Request for Admissions – Set 1.

20. Plaintiff R.L. Responses to County of Kern's Request for Admissions – Set 1.

21. Plaintiff Alisha White County of Kern's Responses to Request for Admissions – Set 1.

22. Plaintiff Briona Lewis Responses to Jason Ayala's Interrogatories – Set 1.

23. Plaintiff Oriona Lewis Responses to Jason Ayala's Interrogatories – Set 1.

24. Plaintiff Mickel Erick Lewis, Jr. Responses to Jason Ayala's Interrogatories – Set 1.

25. Plaintiff H.L. Responses to Jason Ayala's Interrogatories – Set 1.

26. Plaintiff M.L. Responses to Jason Ayala's Interrogatories – Set 1.

27. Plaintiff A.W. Responses to Jason Ayala's Interrogatories – Set 1.

28. Plaintiff R.L. Responses to Jason Ayala's Interrogatories – Set 1.

29. Plaintiff Alisha White Responses to Jason Ayala's Interrogatories – Set 1.

30. Deposition transcript of Roberta Haro

31. Video Deposition of Roberta Haro

32. Deposition transcript of Mickel Erick Lewis, Jr.

33. Video Deposition of Mickel Erick Lewis, Jr.

34. Deposition transcript of Oriona Lewis

35. Video Deposition of Oriona Lewis

36. Deposition transcript of Briona Lewis

37. Video Deposition of Briona Lewis

38. Deposition transcript of Alisha White

39. Video Deposition of Alisha White

40. Deposition transcript of Alana White

41. Video Deposition of Alana White

14

42. Deposition transcript of Marlyn Komenenus

43. Video Deposition of Marlyn Komenenus

44. Deposition transcript of Destiny Salcedo

45. Video Deposition of Destiny Salcedo

46. Deposition transcript of Jessica Salcedo

47. Video Deposition of Jessica Salcedo

48. Deposition transcript of CHP Officer Jose Castellanos

49. Video Deposition of CHP Officer Jose Castellanos

50. Deposition transcript of Nicholas Montoya

51. Video Deposition of Nicholas Montoya

52. Deposition transcript of Jeremy Terletter

53. Video Deposition of Jeremy Terletter

54. Deposition transcript of Scott DeFoe

55. Video Deposition of Scott DeFoe

56. Deposition transcript of John Gardiner, Ph.D.

57. Video Deposition of John Gardiner, Ph.D.

58. Deposition transcript of Clarence Chapman

59. Deposition transcript of Rocky Edwards

60. Deposition transcript of Michael Kuzel, P.E.

61. Deposition transcript of Michael Levine, M.D.

62. Deposition transcript of Frank Sheridan, M.D.

63. Deposition transcript of Deputy Jason Ayala

64. Video deposition of Deputy Jason Ayala

65. Deposition transcript of Eugene Carpenter, Jr., M.D.

66. Deposition transcript of Paris Ward, J.D.

**NO DISCOVERY DOCUMENT, OTHER THAN THOSE LISTED IN THIS SECTION OF THE FINAL PRETRIAL ORDER, MAY BE ADMITTED UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO**

1    **PREVENT "MANIFEST INJUSTICE."** Fed. R. Civ. P. 16(e); Local Rule 281(b)(12).

2        Counsel must lodge the sealed original copy of any deposition transcript to be used at trial

3    with the Clerk of the Court no later than **14 days before trial**.

4    XIII.    FURTHER DISCOVERY OR MOTIONS

5        None.

6    XIV.    STIPULATIONS

7        None.

8    XV.    AMENDMENTS/DISMISSALS

9        None.

10    XVI.    SETTLEMENT

11        The Parties attended a mandatory settlement conference on May 19, 2023.  (Doc. 57.)  A

12    further settlement conference is not requested.

13        The parties believe they have exhausted attempts to settle this case, and the Court will not

14    require any further formal settlement conference at this time.

15    XVII.    JOINT STATEMENT OF THE CASE

16        The Parties do not believe that any part of this action can be or should be presented based

17    upon an Agreed Statement of Facts.  However, the parties will attempt to reach an agreement

18    regarding an acceptable Neutral Statement to be read to the jury pool.  The parties shall file by

19    **March 6, 2025**, a proposed Neutral Statement for this purpose.

20    XVIII. SEPARATE TRIAL OF ISSUES

21        Plaintiffs do not seek a separate trial of any issues.  Defendants request that the amount of

22    punitive damages, if any, should be bifurcated from the issue of liability and damages.  Plaintiffs

23    agree to bifurcate the amount of punitive damages and contend that the predicate question of

24    entitlement to punitive damages be presented in the same phase as liability and damages.

25        Accordingly, there will be no separate trial of issues in this action.  The Court will

26    bifurcate the trial with respect to the amount of punitive damages, if necessary.  Should a jury

27    find punitive liability in the first phase of the trial, the trial will proceed to a second phase which

28    will consist of any evidence and argument with respect to the appropriate amount of punitive

damages.  The parties may not present evidence regarding the amount of punitive damages until the second phase of the trial.

XIX.  IMPARTIAL EXPERTS/LIMITATION OF EXPERTS

None.

XX.  ATTORNEYS' FEES

Plaintiffs intend to seek attorneys' fees following the jury's verdict pursuant to California Civil Code § 52.1(i) and 42 U.S.C. § 1988.

Defendants seek to recover of costs and attorneys' fees under 42 U.S.C § 1988 and 42 U.S.C § 1927, Federal Rule of Civil Procedure 54, and Local Rules 292 and 293.

XXI.  TRIAL PROTECTIVE ORDER AND REDACTION OF TRIAL EXHIBITS

The Parties do not believe a trial protective order is needed.  Pursuant to the Court's policy, at the end of the trial the Court will return all exhibits to the proffering party to be retained during the pendency of any appeals.

XXII.  MISCELLANEOUS

On January 22, 2025, defendants filed a substitution of attorney substituting James D. Weakley, of Weakly & Arendt, as counsel for defendant Ayala.  (Doc. 77.)  Defendants state that the substitution of counsel for defendant Ayala was "due to circumstances beyond the control of Defendants."  (Doc. 76.)

Deputy Ayala anticipates filing a motion pursuant to Rule 50(a) of the Federal Rules of Civil Procedure at the conclusion of Plaintiffs' case.

XXIII.  ESTIMATED TIME OF TRIAL/TRIAL DATE

Jury trial is set for **March 11, 2025, at 8:30 a.m. in Courtroom 6** before the undersigned. Trial is anticipated to last 6–8 days.  A trial confirmation hearing is set for **March 3, 2025, at 1:30 p.m. in Courtroom 6**.

XXIV.  PROPOSED JURY *VOIR DIRE* AND PROPOSED JURY INSTRUCTIONS

1.  Proposed Jury Voir Dire

The parties shall file any proposed jury voir dire by **March 4, 2025**.  Plaintiffs and defendants collectively will be limited to thirty minutes of jury voir dire for each side, unless they

17

show good cause for additional time.  Counsel for plaintiffs shall confer in advance of trial and shall allocate their 30 minutes of voir dire time amongst plaintiffs' counsel.  Counsel for defendants shall likewise confer in advance of trial and shall allocate their 30 minutes of voir dire time amongst defense counsel.

2.     Proposed Jury Instructions and Proposed Verdict Form

a.   The Court directs the parties to meet and confer, if possible, to generate a joint set of jury instructions and a joint verdict form.  The parties shall file by **February 25, 2025** any such joint set of instructions, identified as "Joint Proposed Jury Instructions," and any agreed upon verdict form, identified as a "Joint Proposed Verdict Form."  If the parties cannot agree upon certain specific jury instructions and/or the verdict form, they shall file such specific proposed disputed jury instructions and a proposed verdict form as provided in Local Rule 163 by **February 25, 2025**.

b.   The parties shall indicate on any proposed jury instructions or proposed verdict form the party submitting the proposed instructions or verdict form (i.e., Joint, Plaintiffs', or Defendants').

c.   The parties shall also include on all proposed jury instructions the following:

   i.   The number of the proposed instruction in sequence.

   ii.   A brief title for the instruction describing the subject matter.

   iii.   The complete text of the instruction.

   iv.   The legal authority supporting the instruction.

   v.   The parties shall, by italics or underlining, designate any modification from statutory or case authority, or any pattern or form instruction, or any other source of pattern instructions.

   vi.   The parties must specifically state the modification made to the original form instruction and the legal authority supporting the modification.

   vii.   All blanks in form instructions should be completed and all brackets removed.

18

d.  Ninth Circuit Model Jury Instructions shall be used where the subject of the instruction is covered by the model instructions, including for all standard instructions.  State model jury instructions, such as BAJI or CACI instructions, shall be used where applicable as to state law claims.  The parties shall designate, by italics or underlining, any proposed modification of instructions from any pattern instruction, such as the Ninth Circuit Model Civil Jury Instructions or other pattern instructions, or from statutory or case authority.  The parties must specifically state the modification made to the standard instruction and the legal authority supporting the proposed modification.  All instructions shall be short, concise, understandable, and neutral and accurate statements of the law.  Argumentative instructions will not be given and must not be submitted.

e.  The parties shall e-mail two copies of their proposed jury instructions to vgonzales@caed.uscourts.gov no later than **February 25, 2025**.  One set shall indicate the party proposing the instruction, with each instruction numbered, and shall cite supporting authority.  The other set shall be an exact copy of the first set but shall be a "clean" copy that does not contain the identification of the offering party, the instruction number, supporting authority, or any reference to the Court's disposition of the proposed instruction.

3.  Objections to Proposed Jury Instructions

The parties must file any objections to proposed jury instructions by **March 4, 2025**.  Each objection shall identify the challenged instruction and shall provide a concise explanation of the basis for the objection along with citation of authority.  When applicable, the objecting party shall submit an alternative proposed instruction on the issue or identify which of his or her own proposed instructions covers the subject.

XXV.  TRIAL BRIEFS

As noted above, trial briefs are due by **February 25, 2025**.  Trial briefs shall contain the information required by Local Rule 285.

XXVI. <u>USE OF ELECTRONIC EQUIPMENT IN COURTROOM</u>

Any party wishing to receive an overview or tutorial of the Court's electronic equipment must contact the Courtroom Deputy Victoria Gonzales at (559) 499-5676 or vgonzales@caed.uscourts.gov at least three (3) weeks before the start of trial to schedule a tutorial session at a time convenient to the Court's information technology staff. The parties shall coordinate so all who are interested may attend the IT conference as the Court will hold only one conference per case. The parties and counsel shall confer and advise the courtroom deputy of the date and time that has been agreed upon. Counsel will not be provided any training on the day of or during the trial. The electronic equipment and resources available for this trial may differ from the equipment and resources available in other courtrooms and may even differ from the equipment and resources available in this courtroom at another time. It is the responsibility of the parties to familiarize themselves with the equipment and resources available for use in this trial prior to the commencement of trial. If any party is unfamiliar with the equipment and resources available for use in this trial, that party may be ordered to proceed without the aid of such equipment and resources and/or may be sanctioned for any fees, costs, or expenses associated with any delay.

XXVIII. <u>COMPLIANCE WITH PRETRIAL ORDER</u>

Strict compliance with this pretrial order and its requirements is mandatory. The Court will enforce the requirements of this pretrial order, and counsel and parties are subject to sanctions for failure to comply fully with this order and its requirements. The Court ADMONISHES the parties and counsel to obey the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders. Failure to do so will make the parties and/or counsel subject to sanctions.

IT IS SO ORDERED.

Dated:   February 14, 2025

UNITED STATES DISTRICT JUDGE

20

**ATTACHMENT A: Witnesses**

|  | Individual | Fact / Expert |
|---|---|---|
| 1. | R.L. (Plaintiff) | Fact |
| 2. | M.L. (Plaintiff) | Fact |
| 3. | H.L. (Plaintiff) | Fact |
| 4. | A.W. (Plaintiff) | Fact |
| 5. | Mickel Erick Lewis, Jr. (Plaintiff) | Fact |
| 6. | Oriona Lewis (Plaintiff) | Fact |
| 7. | Briona Lewis (Plaintiff) | Fact |
| 8. | Alisha White (Plaintiff) | Fact |
| 9. | Jason Ayala (Defendant) | Fact |
| 10. | Marlyn Komnenus (Decedent's girlfriend) | Fact |
| 11. | Destiny Salcedo | Fact |
| 12. | Jessica Salcedo | Fact |
| 13. | Rodie Turner (Decedent's first wife and the mother of Plaintiffs Michel Erick Lewis, Jr., Oriona Lewis, and Briona Lewis) | Fact |
| 14. | Leticia Castillo (Plaintiff Briona Lewis' co-worker) | Fact |
| 15. | Bonnie Adamson (Plaintiff Briona Lewis' co-worker) | Fact |
| 16. | John Gardiner, Ph.D., P.E. (Plaintiffs' expert) | Expert |
| 17. | Scott A. DeFoe (Plaintiffs' expert) | Expert |
| 18. | Morgan Scott (Paramedic) | Fact |
| 19. | Cheyenne Caudillo (Paramedic) | Fact |
| 20. | Brooke Hood (Deputy Coroner) | Fact |
| 21. | Eugene Carpenter, Jr., M.D., Kern County Sheriff's Office, Coroner Section | Fact |
| 22. | John C. Hiserodt, M.D., Ph.D., FCAP | Fact |
| 23. | Nicholas Montoya | Fact |
| 24. | Jeremy Terletter | Fact |
| 25. | Jose Castellanos | Fact |

| 26. | Passion Perkins | Fact |
|---|---|---|
| 27. | Iman Mareachly | Fact |
| 28. | Leticia Castillo | Fact |
| 29. | Frank Sheridan, M.D. | Expert |
| 30. | Michael Levine, M.D. | Expert |
| 31. | Clarence Chapman | Expert |
| 32. | Paris Ward, J.D. | Expert |
| 33. | Michael Kuzel, P.E. | Expert |
| 34. | Rocky Edwards | Expert |
| 35. | Heather Heider | Expert |
| 36. | Ayako Chan-Hosokawa | Expert |

1

**ATTACHMENT B: Plaintiffs' Exhibits[3]**

2

| Ex. | Description |
|---|---|
| 1. | Denny's Video (19400300) |
| 2. | Transcript of Video (COK 01201-1206) |
| 3. | Video - Lewis. K and Mono OIS, Montoya.mp4 (1:54) |
| 4. | Video, Channel 15_20201002211000.avi. (9:59) |
| 5. | Transcript of Audio-Recorded Interview of Jason Ayala (COK 01366-1426) |
| 6. | Audio-Recorded Interview of Jason Ayala, (38:40) |
| 7. | Stipulated Judgment, Case No. BCV-20-102971 |
| 8. | Photographs of Scene, (KCSO 00270-328) |
| 9. | Photographs of Vehicle at Scene, (KCSO 00329-355) |
| 10. | Photographs of KCSO Deputy Sheriff Jason Ayala, (KCSO 00370-389) |
| 11. | Dispatch Audio-Recording, 2020-00137643-All Traffic, (1:15:26) |
| 12. | Dispatch Audio-Recording, 2020-00141469, (3:48) |
| 13. | Wienerschnitzel Surveillance Videos |
| 14. | Relevant Portions of the Autopsy Report |
| 15. | Autopsy Photographs |
| 16. | Photographs of Plaintiffs with Decedent / Family Photographs |
| 17. | Cards between Decedent and Plaintiffs |
| 18. | Photographs of Jason Ayala's weapon |
| 19. | Funeral and Burial Expenses |
| 20. | Photographs and Video of Kern County Officers |
| 21. | Additional Video from Scene of Incident |

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

26
27
28

---

[3] Plaintiffs' exhibits as listed in Attachment B are not all separately identified as required. (For example, each video referenced above at "21" should be listed as a separate exhibit for trial, with a separate exhibit number). In marking exhibits for trial, plaintiffs shall identify each exhibit separately and shall include a reasonable description on their exhibit list (e.g., date, Bates-stamp number, description, and/or page length) as to the identified exhibit.

**ATTACHMENT C: Defendants' Exhibits[4]**

| Ex. | Description |
|---|---|
| a. | All video capturing the incident, including that from Dennys, Wienerschnitzel and Montoya |
| b. | KCSO Call for Services Detail Report |
| c. | KCSO Incident Report No. 2020-00141469 and all supplemental Reports |
| d. | Audio recordings of all radio traffic concerning the incident |
| e. | All photographs taken as part of the KCSO investigation of the incident |
| f. | All recorded statements and interviews taken from witnesses to the incident, including audio and transcripts |
| g. | Text messages to and from Ayala immediately before the incident |
| h. | Diagrams, maps and overhead aerial views of the incident scene |
| i. | Kern County Coroner's records and reports pertaining to the death of Lewis |
| j. | NMS laboratory records relating to toxicological testing of Lewis specimens |
| k. | Audio interview of Jason Ayala on 10/07/2020 |
| l. | Transcript of interview of Jason Ayala on 10/07/2020 (Bates 01366-01426) |
| m. | Audio interview of Jessica Salcedo on 10/03/2020 |
| n. | Transcript of Jessica Salcedo interview (Bates 01346-01365) |
| o. | Audio interview of Destiny Salcedo on 10/03/2020 |
| p. | Transcript of Destiny Salcedo interview (Bates 01321-01345) |
| q. | Audio interview of Jeremy Terletter on 10/02/2020 |
| r. | Transcript of interview with Jeremy Terletter (Bates 01289-01320) |
| s. | Audio/video interview of Marlyn Komnenus on 10/02/2020 |

---

[4] Defendants' exhibits as listed in Attachment C are not all separately identified as required. (For example, each video referenced above at "a" should be listed as a separate exhibit for trial, with a separate exhibit number). In marking exhibits for trial, defendants shall identify each exhibit separately and shall include a reasonable description on their exhibit list (e.g., date, Bates-stamp number, description, and/or page length) as to the identified exhibit.

| t. | Transcript of interview with Marlyn Komnenus (Bates 01263-01288) |
|---|---|
| u. | Audio interview with Nicholas Montoya on 10/02/2020 |
| v. | Transcript of interview with Nicholas Montoya (Bates 01207-01231) |
| w. | Transcript of cellphone video taken by Nicholas Montoya (Bates 01201-01206) |
| x. | Mojave OIS final video |
| y. | All graphics from the expert report of Rocky L. Edwards and Heather Heider (10 graphics) |
| z. | All graphics from the expert report of Paris Ward (13 graphics) |
| aa. | California Police Officer Standards and Training ("POST") Basic Learning Domain #1 – Leadership, Professionalism and Ethics |
| bb. | California POST Basic Learning Domain #2 – Criminal Justice System |
| cc. | California POST Basic Learning Domain #3 – Policing in the Community |
| dd. | California POST Basic Learning Domain #3 – Policing in the Community |
| ee. | California POST Basic Learning Domain #19 – Vehicle Operations |
| ff. | California POST Basic Learning Domain #20 – Use of Force |
| gg. | California POST Basic Learning Domain #21 – Patrol Techniques |
| hh. | California POST Basic Learning Domain #22 – Vehicle Pullovers |
| ii. | California POST Basic Learning Domain #23 – Crimes in Progress |
| jj. | California POST Basic Learning Domain #33 – Arrest and Control |
| kk. | California POST Basic Learning Domain #35 – Firearms/Chemical Agents |