1  James D. Weakley, Esq.      Bar No. 082853
   Brande L. Gustafson, Esq.   Bar No. 267130
2  **WEAKLEY & ARENDT**
   A Professional Corporation
3  5200 N. Palm Avenue, Suite 211
   Fresno, California 93704
4  Telephone:  (559) 221-5256
   Facsimile:  (559) 221-5262
5  Jim@walaw-fresno.com
   Brande@walaw-fresno.com
6
   Attorneys for Defendant, Deputy Jason Ayala
7
                    **UNITED STATES DISTRICT COURT**
8
              **FOR THE EASTERN DISTRICT OF CALIFORNIA**
9

10 | MICKEL ERICK LEWIS JR., individually  | Case No. 1:21-CV-00378-KES-CDB
   | and as successor-in-interest to MICKEL E. | *Consolidated with Case No.*
11 | LEWIS, SR., ORIONA LEWIS; and | *1:21−CV−01352−DAD−JLT*
   | BRIONA LEWIS, individually and as |
12 | successor-in-interest, | **DEFENDANTS' JOINT TRIAL BRIEF**

13                    Plaintiff,

14             vs.

15 KERN COUNTY, Deputy JASON AYALA,
   and DOES 1-20, inclusive,              Judge: Hon. District Judge Kirk E. Sherriff
16
                    Defendant.
17
   R.L., M.L., and H.L., minors, by and through
18 guardian *ad litem* Roberta Haro, individually
   and as successors in interest to Michel Lewis
19 Sr., deceased; A.W., a minor, by and through
   her guardian *ad litem* Alisha White,
20 individually and as a successor in interest to
   Michel Lewis Sr., deceased; ALISHA
21 WHITE, individually and as a successor in
   interest to Mickel Lewis Sr.,
22
                    Plaintiffs,
23             vs.
24
   COUNTY OF KERN; JASON AYALA; and
25 DOES 1-10, inclusive,
                    Defendants.
26

27 / / /

28 / / /

1  Defendants County of Kern ("County")—erroneously sued as Kern County—and

2  Deputy Jason Ayala ("Deputy Ayala") respectfully presents the following trial brief.

3  **I.**

4  **FACTUAL BACKGROUND**

5  This case arises from the shooting of Decedent, Mikel Lewis, Sr. ("Lewis"), by County

6  of Kern Sheriff's Deputy Jason Ayala ("Deputy Ayala") on October 2, 2020, in Mojave, CA. In

7  mid-September, Deputy Ayala received information from a confidential informant that Lewis

8  was selling methamphetamine in the Mojave area. Deputy Ayala was informed that Lewis was

9  armed with a handgun and another rifle or shotgun with a scope. Deputy Ayala was also given a

10  description of Lewis' vehicle and told that Lewis was staying in a hotel in Mojave. Deputy

11  Ayala ran a criminal records check on Lewis and learned that Lewis was on felony probation,

12  and subject to searches. Deputy Ayala began looking for Lewis.

13  On October 2, 2020, Deputy Ayala received a text message from the informant advising

14  that Lewis had forced his way into her hotel room and threatened her and her children. The

15  informant stated that Lewis was armed with a handgun. Deputy Ayala drove to Mojave to

16  search for Lewis. He saw Lewis driving a dark colored SUV. Deputy Ayala conducted a traffic

17  stop to conduct a probation search of his vehicle in an attempt to locate a firearm.

18  The whole incident from the time Deputy Ayala pulled over Lewis' dark colored SUV to

19  the time he fired his weapon lasted all of two and a half minutes. For the first two minutes of the

20  encounter, everything seemed relatively calm as Lewis accompanied Deputy Ayala to his patrol

21  vehicle where he performed a pat-down search of Lewis. It was not until the last thirty seconds

22  when Deputy Ayala informed Lewis he would be conducting a probation search of his SUV,

23  that things escalated with Lewis initially lunging at Deputy Ayala with fists clenched and then

24  running around Deputy Ayala's patrol vehicle, past his own SUV, to hide behind a big rig

25  loaded with hay parked across the street from Ayala's SUV.

26  Instead of pursuing Lewis, Deputy Ayala was able to remove the keys from Lewis' SUV

27  and told Lewis that he had the keys. However, after being told by Deputy Ayala that he had the

28  keys, Lewis ran back into his SUV and appeared to be searching under the driver's seat. He then

came out of the SUV and Deputy Ayala heard him say something to the effect of, "You're going to have to kill me. You're going to die." He then charged at Deputy Ayala, who could not see Lewis' right hand. That's when Deputy Ayala fired five shots at Lewis.

## II.

## ADMISSIONS & STIPULATIONS

The parties have not entered into any stipulations not already identified in the Pretrial Order (Doc. No. 89), nor has any party made an admission not already set out in the Pretrial Order. Consequently, County is only in this case as Deputy Ayala's employer and is vicariously liable to the extent the jury finds for the Plaintiffs on the state law claims.

## III.

## LEGAL ANALYSIS

A.    **Fourth Amendment – Unlawful Arrest/False Imprisonment**

"An arrest without probable cause violates the Fourth Amendment and gives rise to a claim for damages under § 1983." *Harper v. City of Los Angeles*, 533 F.3d 1010, 1022 (9th Cir. 2008). "Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that [a criminal] offense has been or is being committed by the person being arrested." *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1023 (9th Cir. 2009) (citations omitted).

Deputy Ayala knew that Lewis was on felony probation, was selling methamphetamine, and was in possession of two firearms – one handgun and one shotgun/rifle type gun, possibly in his SUV, and that Lewis had pushed his way into the confidential informants' room and threatened her and her kids. Deputy Ayala confirmed that Lewis was on probation and was subject to search terms.

A lawful detention requires only that an officer have a reasonable suspicion that there is a violation of the law taking place and the person they are about to detain is connected with the activity. *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). When detaining a person an officer is allowed to take whatever investigative actions reasonable under the circumstances, but is not required to use the least intrusive means available. *United States v. Sokolow*, 490 U.S. 1, 11

(1989).  During a lawful detention, officers are "authorized to take such steps as [are] reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop." *United States v. $109,179 In U.S. Currency*, 228 F.3d 1080, 1084 (9th Cir. 2000).

Based on the information Deputy Ayala had received from the confidential informant, he had reasonable suspicion that Lewis was in possession of a firearm, which was against the terms of his probation.  This was the stated purpose behind Deputy Ayala initiating a traffic stop for Lewis so he could perform a probation search of Lewis' SUV for that firearm.

Going beyond a detention to a warrantless arrest, requires probable cause under the Fourth Amendment. *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007). "Probable cause exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested" or alternatively "when 'under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the defendant] had committed a crime.' " *Id*.

Once Deputy Ayala informed Lewis he would conduct the probation search and Lewis lunged at Deputy Ayala and then ran, both delayed and obstructed Deputy Ayala's investigation while Deputy Ayala was clearly engaged in the performance of his duties, thus meeting the elements for a violation of Penal Code section 148(a)(1) and probable cause for arrest.

**B.    Fourth Amendment – Excessive Force**

Under the Fourth Amendment, a police officer may use such force that is objectively reasonable under the totality of the circumstances. *Graham v. Connor*, 490 U.S. 386, 397 (1989). An unreasonable seizure occurs when a law enforcement officer uses excessive force in making a lawful arrest.  Factors to consider in determining whether an officer used excessive force are the severity of the crime at issue, whether the plaintiff posed a reasonable threat to the safety of the officer or others, and whether the plaintiff was actively resisting detention or attempting to escape. *Blanford v. Sacramento County*, 406 F.3d 1110, 1115 (9th Cir. 2005).  An officer need not avail himself of the least intrusive means of responding to a situation; he need only act within a range of conduct that is reasonable.  *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994).

1     In analyzing a Fourth Amendment excessive force claim, the facts underlying an excessive

2   force claim are considered from the perspective of a reasonable officer on the scene, without

3   regard to the arresting officer's subjective motivation for using force.  *See Baker v. County of San*

4   *Diego*, No. 09-CV-1194 BEN (WMc), 2012 WL 1903899, *2 (S.D. Cal. May 24, 2012); *Tatum*

5   *v. City and County of San Francisco*, 441 F.3d 1090, 1095 (9th Cir. 2006). "The reasonableness

6   inquiry is objective, evaluating 'whether the officers' actions are 'objectively reasonable' in light

7   of the facts and circumstances confronting them, without regard to their underlying intent or

8   motivation.'" *Huff v. City of Burbank*, 632 F.3d 539, 549 (9th Cir. 2011).  The reasonableness of

9   the use of force is not judged "from the perspective of the person seized or of a court reviewing

10  the situation with 20/20 hindsight." *Bryan v. MacPherson*, 630 F.3d 805, 817 (9th Cir. 2010).

11     Furthermore, the Ninth Circuit has found that an officer can bring in outside evidence of

12  a plaintiff's previous conduct to support what the officer perceived just prior to the use of force

13  in dispute.  *Boyd v. City and County of San Francisco*, 576 F.3d 938, 944 (9th Cir. 2009).  Lewis'

14  prior criminal history and the confidential informant's statements to Deputy Ayala, make

15  Plaintiffs' assertions that Lewis was trying to surrender less probable than, and tends to support,

16  Deputy Ayala's belief that Lewis was armed with a handgun at the time he shot based on

17  observations of Lewis going back into his SUV, appearing to search under the driver's seat only

18  to get out and charge at him while saying something to the effect of "You're going to have to kill

19  me. You're going to die."

20     Additionally, an officer need not avail himself of the least intrusive means of responding

21  to a situation; he need only act within a range of conduct that is reasonable.  *Forrester v. City of*

22  *San Diego*, 25 F.3d 804, 807 (9th Cir.1994) (police officers "are not required to use the least

23  intrusive degree of force possible" as long as the force actually used was reasonable); *see Luchtel*

24  *v. Hagemann*, 623 F.3d 975, 982 (9th Cir.2010);  *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir.

25  1994).  In other words, Deputy Ayala was not limited to less than lethal force (TASER, pepper

26  spray, etc.) when he reasonably believed Lewis was himself reaching for and charging at him

27  with a lethal weapon such as a firearm. "To be sure, the Fourth Amendment does not necessarily

28  'require[ ] officers to delay their fire until a suspect turns his weapon on them,' and '[i]f the person

1   is armed—or reasonably suspected of being armed—a furtive movement, harrowing gesture, or

2   serious verbal threat might create an immediate threat.' " *Peck v. Montoya*, 51 F.4th 877, 888 (9th

3   Cir. 2022), *citing George*, 736 F.3d at 838.

4        Furthermore, "[w]hile California state law does factor pre-shooting conduct into whether

5   an officer acts 'reasonably when using deadly force,' [cite] '[t]he Fourth Amendment is narrower

6   and places less emphasis on pre[-]shooting conduct." *Hart v. City of Redwood City*, 99 F.4th 543,

7   554 (9th Cir. 2024). "[O]ne cannot 'establish a Fourth Amendment violation based merely on bad

8   tactics that result in a deadly confrontation that could have been avoided.'" *Id*.

9   **C.   Fourteenth Amendment – Interference with Familial Relationship**

10       The substantive component of the Fourteenth Amendment's due process clause "forbids

11  the government from depriving a person of life, liberty, or property in such a way that 'shocks the

12  conscience' or 'interferes with rights implicit in the concept of ordered liberty.' " *Nunez v. City*

13  *of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998), *quoting United States v. Salerno*, 481 U.S. 739

14  (1987). It also provides parents and children a liberty interest in each other's "companionship and

15  society." *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010). "Only

16  official conduct that 'shocks the conscience' is cognizable as a due process violation. *Sinclair v.*

17  *City of Seattle*, 61 F.4th 674, 680 (9th Cir. 2023), *quoting Porter v. Osborn*, 546 F.3d 1131, 1137

18  (9th Cir. 2008).  This is a "more demanding standard than the 'reasonableness' test that governs

19  excessive-force claims under the Fourth Amendment." *Peck v. Montoya*, 51 F.4th 877, 893 (9th

20  Cir. 2022).

21       Liability turns on whether under the circumstance before Deputy Ayala "actual

22  deliberation" was practical. *Moreland v. Las Vegas Meto. Police Dep't*, 159 F.3d 365, 372, (9th

23  Cir. 1998). A deliberate-indifference standard is applied "when officials had 'ample time to

24  correct their obviously [wrongful conduct],' such as in Eighth Amendment prisoner-treatment

25  cases or in wrongful-detention cases." *Peck v. Montoya,* 51 F.4th 877, 893 (9th Cir. 2022), *citing*

26  *Porter v. Osborn*, 546 F.3d 1131, 1139 (9th Cir. 2008). "On the other hand, if the defendants had

27  to make a 'snap judgment because of an escalating situation,' then their conduct does not shock

28  the conscience unless they 'act[ed] with a *purpose to harm* unrelated to legitimate law

enforcement objectives.' " *Peck*, 51 F.4th at 893, *quoting Hayes v. Cnty. of San Diego*, 736 F.3d 1223, 123 (9th Cir. 2013) (emphasis added). The purpose-to-harm standard also applies "when officials were required to make 'repeated split-second decisions' about how best to respond to a risk, such as during a high-speed car chase or when confronting a threatening, armed suspect." *Peck*, 51 F.4th at 893. It can apply even where "the officer may have helped to create an emergency situation by his own excessive actions." *Peck*, 51 F.4th at 894.

During the last 30 seconds of Deputy Ayala's encounter with Lewis, there was constant escalation through the multiple shifts and changes in the dynamic between Lewis and Deputy Ayala.  It started with Lewis first lunging at Deputy Ayala with fists clenched, then turned to a foot pursuit with Lewis running around Deputy Ayala's patrol vehicle and to the back of big rig loaded with hay and Deputy Ayala removing the keys from Lewis' SUV while informing Lewis he had his keys, only for Lewis to run back to the SUV, get inside and appear to search under his seat for something before getting out of the SUV, turning toward Deputy Ayala while saying something to the effect of, "You're going to have to kill me. You're going to die." and finally charging at Deputy Ayala.  During this short period of time Deputy Ayala was forced to make repeated split-second decisions of how to respond to Lewis' conduct, especially within those last couple seconds when Lewis got into the SUV rummaged under his seat, then got out and charged at him after saying something to the effect of "You're going to have to kill me. You're going to die."

"A government actor has a purpose to harm when his intent is 'to inflict force beyond that which is require by a legitimate law enforcement objective.' " *Calonge v. City of San Jose*, No. 22-16495, 2024 WL 2874226, at *2 (9th Cir. June 7, 2024) (citation omitted).  "Legitimate law enforcement objectives include 'arrest, self-defense, or the defense of others.' The inquiry is subjective: The officer's intent must be to inflict unjustified force." *Calonge v. City of San Jose*, No. 22-16495, 2024 WL 2874226, at *2 (9th Cir. June 7, 2024) (citations omitted).  Deputy Ayala was clearly defending himself within those last couple of seconds with Lewis.

Plaintiffs also appear to assert a Fourteenth Amendment interference with familial relationship arising from the actions of unnamed deputies allegedly using intimidation tactics

1    while the Plaintiffs were mourning Lewis.  However, Plaintiffs have abandoned their federal

2    municipal liability (*Monell*) claims against County and no other individual defendants have been

3    named in addition to Deputy Ayala.  It is well-established that "a municipality cannot be held

4    liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held

5    liable under § 1983 on a respondeat superior theory."  *Monell v. Department of Social Servs.*, 436

6    U.S. 691 (1978).  Moreover, Plaintiffs' failed to name and serve any potential the Doe defendants

7    within 120 days after their complaints were filed, nor are any Kern County Sheriff's Deputies,

8    other than Deputy Ayala, identified as witnesses in the Final Pretrial Order. See Fed. R. Civ. P.

9    4(m); *Coley v. Baca*, No. CV 09–08595, 2011 WL 651457, at *2-*3 (C.D. Cal. Jan. 11, 2011)

10   *report and recommendation adopted,* No. CV 09–08595, 2011 WL 641686 (C.D. Cal. Feb. 11,

11   2011).

12   **D.    Federal Claim Defense – Qualified Immunity**

13          As to the Federal claims, qualified immunity protects Section 1983 defendants "from

14   liability for civil damages insofar as their conduct does not violate clearly established statutory or

15   constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457

16   U.S. 800, 818 (1982). The threshold questions which any court must consider in ruling upon the

17   defense of qualified immunity are: (1) has the plaintiff alleged or shown a violation of a

18   constitutional right, and (2) is the right at issue "clearly established" at the time of the defendant's

19   alleged misconduct? *Pearson v. Callahan*, 555 U.S. 223, 241 (2009); *see also Saucier v. Katz*,

20   533 U.S. 194, 201 (2001).

21          The first question of whether there were violations of constitutional rights is discussed

22   above. Only if the court finds distinct constitutional rights were violated does the court then have

23   to determine whether those rights were clearly established at the time of the defendant's alleged

24   misconduct. "In determining whether a right was 'clearly established,' the court considers

25   whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he

26   confronted." *Garcia v. County of Merced*, 639 F.3d 1206, 1208 (9th Cir. 2011). The Court must

27   answer this question in light of the clearly established law and the information possessed by the

28   officer.  *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1442-43 (9th Cir. 1991); *Anderson v. Creighton*,

483 U.S. 635, 641 (1987). "Qualified immunity gives [police officers] breathing room to make reasonable but mistaken judgements," and "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).  Qualified immunity may apply regardless of whether the officer makes a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

"[A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014). "In other words, 'existing precedent must have placed the statutory or constitutional question' confronted by the official 'beyond debate.'" *Id*. Existing precedent is determined by looking to the state of the law at the time of the subject incident to determine whether the officer had fair notice that his/her conduct was unlawful. *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).

<u>Fourth Amendment (Unlawful Arrest/Excessive Force)</u>

The "general excessive force standard cannot always, alone, provide fair notice to every reasonable law enforcement officer that his or her conduct is unconstitutional." *Mattos v. Agarano*, 661 F.3d 433, 442 (9th Cir. 2011) (en banc). Here, the clearly established right is a citizen's right "to be free from excessive use of force under the facts and circumstances presented in this case." *Brown v. City of Golden Valley*, 574 F.3d 491, 499 (8th Cir. 2009).  "Use of excessive force is an area of the law 'in which the result depends very much on the facts of each case,' and thus police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018).

The Court must answer this question in light of the clearly established law and the information possessed by each separate law enforcement officer. *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1442-43 (9th Cir. 1991); *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). The existing precedent must have placed the constitutional question beyond debate. *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2083 (2011). "[I]f officers of reasonable competence could disagree on the issue, immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

/ / /

1    Deference should be given to the judgment of reasonable officers on the scene, not "the

2    person seized or . . . a court reviewing the situation with 20/20 hindsight." *Vilar v. County of Yolo*,

3    No. 2:12-CV-01472-KJN, 2013 WL 6422936, at *8 (E.D. Cal. Dec. 9, 2013). In other words,

4    "[q]ualified immunity gives [police officers] breathing room to make reasonable but mistaken

5    judgements," and "protects 'all but the plainly incompetent or those who knowingly violate the

6    law.'" *Ashcroft*, 131 S.Ct. at 2085.

7    If the Court determines that the law was clearly established, it must then determine

8    whether, based on the circumstances of the case, any law enforcement officer made a reasonable

9    mistake regarding what the law required given the circumstance he confronted. *Saucier*, 121 S.Ct.

10    at 205; *Brosseau*, 543 U.S. at 198; *see also Blankenhorn v. City of Orange*, 485 F.3d 463, 471

11    (9th Cir. 2007). "Therefore, regardless of whether the constitutional violation occurred, [the

12    deputies] should prevail if . . . [they] could have reasonably believed that [their] particular conduct

13    was lawful." *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991). "[T]he test is not

14    whether [the deputies] attempted all other available methods of responding to a situation, but

15    whether [they] reasonably could believe [their] conduct was lawful under the circumstances

16    confronting [them]." *Neal-Lomax v. Las Vegas Metropolitan Police Dept.*, 574 F.Supp.2d 1170,

17    1188 (D. Nev. 2008). If a law enforcement officer could reasonably have believed that his actions

18    were legal in light of clearly established law and the information he possessed at the time, then

19    his conduct falls within the protective sanctuary of qualified immunity. *Hunter v. Bryant*, 502

20    U.S. 224, 227 (1991).

21    The U.S. Supreme Court clarified the defense in November 2015. In *Mullenix v. Luna*,

22    136 S.Ct. 305, 308 (2015) it was held that qualified immunity should apply unless "the violative

23    nature of *particular* conduct is clearly established," noting that "[s]uch specificity is especially

24    important in the Fourth Amendment context." (*quoting Reichle v. Howards,* 566 U.S. 658, 132

25    S.Ct. 2088, 2093) (emphasis in original).)

26    The case that closest resembles this case is *Cruz v. City of Anaheim*, where a confidential

27    informant told the police that Cruz was a gang member who sold methamphetamine, carried a

28    gun, had a past felony conviction, and said that "he was not going back to prison." 765 F.3d 1076,

1077–78 (9th Cir. 2014). Multiple police officers pulled Cruz over for a broken taillight. *Id.* at 1078. The officers surrounded him, and Cruz tried to escape by backing his SUV into a marked patrol car. *Id*. The officers exited their vehicles with their guns lowered and ordered Cruz to get on the ground. *Id*. According to the officers, Cruz exited his car, ignored their commands, and reached for the waistband of his pants, prompting all five officers to open fire. *Id*. But some facts in the record undermined that account. A bystander on the other side of Cruz's vehicle witnessed the shooting but was unable to see if Cruz in fact reached toward his waistband because Cruz's car blocked his view. *Id*. The officers fired twenty shots in about two to three seconds, killing Cruz. *Id*. His body was found "tangled in his seat belt and hanging from it." *Id.* The officers did not find a weapon on him but recovered a loaded gun from the passenger seat. *Id.*

The court in *Cruz* found that "It would be unquestionably reasonable for police to shoot a suspect in Cruz's position if he reaches for a gun in his waistband, or even if he reaches there for some other reason. Given Cruz's dangerous and erratic behavior up to that point, the police would doubtless be justified in responding to such a threatening gesture by opening fire. Conversely, if the suspect doesn't reach for his waistband or make some similar threatening gesture, it would clearly be unreasonable for the officers to shoot him after he stopped his vehicle and opened the door. At that point, the suspect no longer poses an immediate threat to the police or the public, so deadly force is not justified." *Cruz*, 765 F.3d at 1078-79.

Considering the information available to Deputy Ayala at the time, that Lewis had a handgun in his SUV, Lewis' comments to Deputy Ayala of "You're going to have to kill me. You're going to die," just after appearing to search for something under his seat and moments before charging at Deputy Ayala, makes it reasonable for Deputy Ayala to respond in self-defense.  It was definitely reasonable that in those couple of seconds that Deputy Ayala had to determine whether Lewis had a weapon in his hand as Lewis was charging at him, that he might make a mistake as to the fact of whether or not Lewis had a gun in his hand.

<u>Fourteenth Amendment (Interference with Familial Relationship)</u>

Cases that would inform an analysis of whether a right was clearly established under the Fourth Amendment "do not clearly establish the contours of the Fourteenth Amendment

1   substantive due process rights at hand," despite the similarities between the standards for the

2   Fourth Amendment and Fourteenth Amendments in excessive force cases. *Nicholson v. City of*

3   *Los Angeles*, 935 F.3d 685, 696 & n. 5 (9th Cir. 2019). Here, that would require case law clearly

4   establishing that a shooting in these circumstances constitutes a purpose to harm unrelated to a

5   legitimate law enforcement objective to Plaintiffs. *Nicholson v. City of Los Angeles*, 935 F.3d

6   685, 695-696 (9th Cir. 2019). "Because no binding circuit or Supreme Court precedent has

7   established a substantive due process violation under comparable circumstances, the Fourteenth

8   Amendment right at issue lacked 'contours . . . sufficiently definite' to place the issue 'beyond

9   debate.' " *Id.,* at 696.

10  Deputy Ayala requests the Court's assistance in drafting appropriate special

11  interrogatories to submit to the jury to assist the Court in ruling on his Qualified Immunity defense

12  as to both the Fourth Amendment and Fourteenth Amendment claims.

13  **E.    State Law – Battery**

14  Plaintiffs' battery claim is governed by California state law. In a battery action against a

15  peace officer the plaintiff "must prove unreasonable force as an element of the tort." *Edson v.*

16  *City of Anaheim*, 63 Cal.App.4th 1269, 1272 (1998). "A police officer in California may use

17  reasonable force to make an arrest, prevent escape or overcome resistance and need not desist in

18  the face of resistance." *Id*. at 1273; California Penal Code § 835(a).

19
20      [Peace officers] act under color of law to protect the public interest.
        They are charged with acting affirmatively and using force as part
        of their duties, because "the right to make an arrest or investigatory
21      stop necessarily carries with it the right to use some degree of
        physical coercion or threat thereof to effect it."
22

23  *Edson*, 63 Cal.App.4th at 1273; *Robinson v. Adams*, No. 1:08-CV-01380-AWI-BA, 2015 WL

24  3706388, at *2-*3 (E.D. Cal. June 12, 2015) (Court denied plaintiff's request to remand battery

25  claim after jury found no excessive force, concluding that the defendants were entitled to

26  judgment on the corresponding civil battery claims).

27  Furthermore, "A peace officer who makes or attempts to make an arrest need not retreat

28  or desist from his efforts by reason of the resistance or threatened resistance of the person being

1  arrested; nor shall such officer be deemed an aggressor or lose his right to self-defense by the use

2  of reasonable force to effect the arrest or to prevent escape or to overcome resistance." California

3  Penal Code § 835a.

4  **F.    State Law – Negligence**

5       "[I]n order to prove facts sufficient to support a finding of negligence, a plaintiff must

6  show that [the] defendant had a duty to use due care, that he breached that duty, and that the

7  breach was the proximate or legal cause of the resulting injury." *Hayes v. County of San Diego*,

8  57 Cal.4th 622, 629 (2013). However, the California Supreme Court has recognized that "[a]s

9  long as an officer's conduct falls within the range of conduct that is reasonable under the

10  circumstances, there is no requirement that he or she choose the 'most reasonable' action or the

11  conduct that is the least likely to cause harm and at the same time the most likely to result in the

12  successful apprehension of a violent suspect, in order to avoid liability for negligence." *Brown v.*

13  *Ransweiler*, 171 Cal.App.4th 516, 537-538 (2009); *Hayes*, 57 Cal.4th at 632. Often this means

14  preshooting conduct becomes part of the analysis where "the applicable question in a state law

15  negligence claim for an officer-involved shooting is not whether the preshooting conduct is itself

16  negligent; it is whether the preshooting conduct renders the shooting *itself* negligent." *A.G.1 v.*

17  *City of Fresno*, No. 1:16-CV-1914-JLT-SAB, 2023 WL 3168510, at *3 (E.D. Cal. Apr. 28, 2023).

18       Otherwise, Plaintiffs' pleadings indicated that their state law negligence claim was against

19  County for negligent failure to train/supervise, failure to ensure an adequate number of well-

20  trained employees, and negligent handling of evidence and witnesses.  The Final Pretrial Order,

21  however, does not appear to include these negligence claims, meaning they have been waived.

22  "Claims, issues, defenses, or theories of damages not included in the pretrial order are waived

23  even if they appeared in the complaint . . . ." *Duhn Oil Tool, Inc. v. Cooper Cameron Corp.*, 818

24  F. Supp. 2d 1193, 1207 (E.D. Cal. 2011), *on reconsideration in part*, 2012 WL 13040409 (E.D.

25  Cal. May 7, 2012) (*citing Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 475 (2007)); see

26  also Fed. R. Civ. P. 16(e).

27       For there to be direct liability against County on Plaintiffs' negligence claim, as opposed

28  to vicarious liability, additional elements are required, namely a statute declaring liability for a

1  public entity, otherwise there can be no liability. Government Code §§ 815, 820; *Williams v.*

2  *Horvath,* 16 Cal.3d 834, 838 (1976); *Colome v. State Athletic Commission of California*, 47

3  Cal.App.4th 1444, 1454 (1996); *Zuniga v. Housing Authority of the City of Los Angeles*, 41

4  Cal.App.4th 82, 96 (1995).

5          County is a public entity under Government Code, §811.2 and Evidence Code §200. In

6  California sovereign immunity is the rule, with public entity liability limited to exceptions

7  specifically set forth by statute.  A public entity is not liable for an injury, "(e)xcept as otherwise

8  provided by statute."  Gov. Code § 815(a).  As such, the liability of a public entity must be based

9  on a specific statute declaring it to be liable, or at least creating some specific duty of care.

10  *Eastburn v. Regional Fire Protection Authority,* 31 Cal.4th 1175, 1183 (2003). The courts have

11  concluded that a common law negligence cause of action against public entities cannot be

12  maintained against a public entity because no statute provides for direct liability.  *Munoz v. City*

13  *of Union City,* 120 Cal.App.4th 1077, 1112-1115 (2004).  Because this element is nowhere to be

14  found in the final pretrial conference order, Plaintiffs have waived any claim for direct negligent

15  liability against County and thus are limited to vicarious liability *See generally,* Softketeers, Inc.

16  v. Regal W. Corp., No. 819CV00519JWHJDEX, 2022 WL 17968835, at *8 (C.D. Cal. Dec. 22,

17  2022).

18  **G.      State Law – Civil Code § 52.1 (Bane Act)**

19          The Bane Act "provides that a person may bring a cause of action 'in his or her own name

20  and on his or her own behalf' against anyone who 'interferes by threats, intimidation or coercion,'

21  with the exercise or enjoyment of any constitutional or statutory right." *Bay Area Rapid Transit*

22  *Dist. v. Superior Court* (1995) 38 Cal.App.4th 141, 144, *quoting* Cal. Civ.Code § 52.1. Bane Act

23  claims are routinely alleged in Section 1983 claims and the question as to the Bane Act's

24  requirement that interference with rights must be accomplished by threats, intimidation or

25  coercion "has been the source of much debate and confusion" and endeavored to provide clarity.

26  *Cornell v. City & Cnty of San Francisco*, 17 Cal.App.5th 766, 801 (2017).

27          The *Cornell* court agreed "that the use of excessive force can be enough to satisfy the

28  'threat, intimidation or coercion' element of Section 52.1." *Id*. at 799. *Cornell* also makes clear,

however, that the Bane Act imposes an additional requirement beyond a finding of a constitutional violation: "[p]roperly read, the statutory phrase threat, intimidation or coercion' serves as an aggravator justifying the conclusion that the underlying violation of rights is sufficiently egregious to warrant enhanced statutory remedies, beyond tort relief." *Id*. at 800. Accordingly, *Cornell* held that "the egregiousness required by Section 52.1 is tested by whether the circumstances indicate the arresting officer had a specific intent to violate the arrestee's right to freedom from unreasonable seizure." *Id*. at 801. In so holding, Cornell adopted the specific intent standard established in *Screws v. United States*, 325 U.S. 91 (1945), for assessing criminal violations of federal civil rights.  *Id*. at 801-803.

In applying these principles, the Ninth Circuit concluded in *Reese v. Cty of Sacramento*, 888 F.3d 1030 (9th Cir. 2018) that "a mere intention to use force that the jury ultimately finds unreasonable—that is, general criminal intent—is insufficient." *United States v. Reese*, 2 F.3d 870, 885 (9th Cir. 1993). Rather, the jury must find that the defendants "intended not only the force, but its *unreasonableness,* its character as 'more than necessary under the circumstances.' " *Id.* (emphasis added). But it is not necessary for the defendants to have been 'thinking in constitutional or legal terms at the time of the incidents, because a reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights.' *Id.*; *Reese*, 888 F.3d at 1045. Plaintiff must also show "the defendant's specific intent to violate the plaintiff's constitutional rights." *Luna v. Cnty. of Riverside*, No. EDCV210467JGBSPX, 2023 WL 7803386, at *14 (C.D. Cal. Oct. 20, 2023), *quoting Rodriguez v. County of L.A.*, 891 F.3d 776, 802 (9th Cir. 2018).

## H.    State Law – Defenses and Immunities

The affirmative defenses Defendants intend to raise at trial are: (1) State immunity under California Government Code §§ 815, 815.2, 815.3, 818, 818.2, 818.4, 818.8, 820(b), 820.2, 820.4, 820.6, 820.8, 821, 822.2, and 823, and Penal Code §§ 196, 834, 834a, 835, 835a, and 836; (2) qualified immunity for Officer Ayala; (3) Plaintiffs', decedent's, and others' contributory negligence; (4) Plaintiffs' failure to mitigate their damages; (5) self-defense; and (6) assumption of risk by the decedent.

1    Under California Government Code section 815 "[a] public entity is not liable for an

2    injury, whether such injury arises out of an act or omission of the public entity or a public

3    employee or any other person" except as established by statue and any liability established for a

4    public entity is subject to any immunity provided by statute and any defenses that would be

5    available to the public entity if it were a private person. Cal. Govt. Code § 815(a) & (b). "Except

6    as otherwise provided by statute, a public entity is not liable for an injury resulting from an act

7    or omission of an employee of the public entity where the employee is immune from liability."

8    Cal. Gov. Code § 815.2(b).  Similarly, the liability of Deputy Ayala is subject to any defenses

9    that would be available to him if he were a private person.  Cal. Govt. Code § 820(b).

10    One such defense available to Deputy Ayala is self-defense. A "defendant is not liable if

11    that defendant reasonably believed, in view of all the circumstances of the case, that the plaintiff

12    was going to harm him or her and the defendant used only the amount of force reasonably

13    necessary to protect himself or herself." *J.J. v. M.F.*, 223 Cal.App.4th 968, 976 (2014). "The

14    right to use force against another has long been limited by the condition that the force be no more

15    than ' "that which reasonably appears necessary, in view of all the circumstances of the case, to

16    prevent the impending injury." ' When the amount of force used is justifiable under the

17    circumstances, it is not willful and the actor may escape liability for intentionally injurious

18    conduct that is otherwise actionable. But if force is applied in excess of that which is justified,

19    the actor remains subject to liability for the damages resulting from the excessive use of force. .

20    . . When an alleged act of self-defense or defense of property is at issue, the question of what

21    force was reasonable and justified is peculiarly one for determination by the trier of fact."

22    *Calvillo-Silva v. Home Grocery*, 19 Cal.4th 714, 730–731 (1998), *overruled in part on other*

23    *grounds*. "The right of self-defense is not limited by actualities. The correct rule … [is]:

24    'Generally . . . , the force that one may use in self-defense is that which reasonably appears

25    necessary, in view of all the circumstances of the case, to prevent the impending injury.' In

26    emphasizing that the law of self-defense is a law of necessity courts should never lose sight of

27    the fact that the necessity may be either real or apparent." *Vaughn v. Jonas*, 31 Cal.2d 586, 599–

28    600 (1948), internal citations omitted.

1    Other defenses and immunities available to Deputy Ayala include Penal Code sections

2    196 ("Homicide is justifiable when committed by peace officers and those acting by their

3    command in their aid and assistance, under either of the following circumstances: (b) When the

4    homicide results from a peace officer's use of force that is in compliance with Section 835a."),

5    835a ("(b) Any peace officer who has reasonable cause to believe that the person to be arrested

6    has committed a public offense may use objectively reasonable force to effect the arrest, to

7    prevent escape, or to overcome resistance. (c)(1) Notwithstanding subdivision (b), a peace

8    officer is justified in using deadly force upon another person only when the officer reasonably

9    believes, based on the totality of the circumstances, that such force is necessary for either of the

10   following reasons: (A) To defend against an imminent threat of death or serious bodily injury to

11   the officer or to another person. . . . (d) A peace officer who makes or attempts to make an arrest

12   need not retreat or desist from their efforts by reason of the resistance or threatened resistance of

13   the person being arrested. A peace officer shall not be deemed an aggressor or lose the right to

14   self-defense by the use of objectively reasonable force in compliance with subdivisions (b) and

15   (c) to effect the arrest or to prevent escape or to overcome resistance. For the purposes of this

16   subdivision, "retreat" does not mean tactical repositioning or other deescalation tactics."), 836

17   (a peace officer may without a warrant "arrest a person whenever any of the following

18   circumstances occur: (1) The officer has probable cause to believe that the person to be arrested

19   has committed a public offense in the officer's presence. (2) The person arrested has committed

20   a felony, although not in the officer's presence. (3) The officer has probable cause to believe that

21   the person to be arrested has committed a felony, whether or not a felony, in fact, has been

22   committed.").

23       Additionally, under Penal Code § 834a, Lewis knew or should have known that Deputy

24   Ayala was arresting him, based on Deputy Ayala telling him he was under arrest, it was then the

25   duty of Lewis to refrain from using force or any weapon to resist such arrest.

26       If, after a review of the evidence, the jury determines that Lewis' death was the result of

27   his own actions or omissions or the actions or omissions of others besides Deputy Ayala, then

28   Deputy Ayala cannot be held liable for the acts and omissions of others. California Government

Defendants' Joint Trial Brief

1    Code § 820.8 ("Except as otherwise provided by statute, a public employee is not liable for an

2    injury caused by the act or omission of another person. Nothing in this section exonerates a

3    public employee from liability for injury proximately caused by his own negligent or wrongful

4    act or omission.")

5    **H.**    **Damages**

6         Plaintiffs seek survival damages, including Lewis' pre-death pain and suffering and loss

7    of life, however, they have not identified any witnesses to support the pre-death pain and

8    suffering. Plaintiffs also seek wrongful death damages, including for funeral and burial expenses,

9    loss of financial support, and the loss of Decedent's loss of care, protection, guidance, advice,

10   training, nurturing, love, society companionship.  The only exhibits identified in the Final Pretrial

11   Order supporting Plaintiffs' economic damages are the funeral and burial expenses.  No pay stubs

12   or any other documents were identified as exhibits in the Final Pretrial Order to support Plaintiffs'

13   claim for loss of financial support.

14   **I.**    **Punitive Damages**

15        Punitive damages are recoverable in section 1983 cases "when defendant's conduct is

16   shown to be motivated by evil motive or intent, or when it involves reckless or callous

17   indifference to the federally protected rights of others."  *Smith v. Wade*, 461 U.S. 30, 56 (1983).

18   Punitive damages also may be awarded to address "malicious, wanton, or oppressive acts or

19   omissions."  *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005).

20        Punitive damages, however, are only available against individuals and not public entities,

21   as California Government Code bars punitive damage awards against public entities. *See City of*

22   *Glendale v. Superior Court* (2002) 95 Cal.App.4th 1266, 1271; Cal. Govt. Code § 818

23   ("Notwithstanding any other provision of law, a public entity is not liable for damages awarded

24   under Section 3294 of the Civil Code or other damages imposed primarily for the sake of

25   example and by way of punishing the defendant.").  Additionally, a municipality is immune from

26   punitive damages under 42 U.S.C. § 1983.  *City of Newport v. Fact Concerts, Inc*., 453 U.S. 247,

27   271 (1981).

28   / / /

1    Dated: February 25, 2025                    WEAKLEY & ARENDT
                                                 A Professional Corporation
2

3                                      By:   _/s/ Brande L. Gustafson_
                                             James D. Weakley
4                                            Brande L. Gustafson
                                             Attorneys for Defendant,
5                                            Deputy Jason Ayala

6                                            MARGO A. RAISON, COUNTY COUNSEL

7                                      By:   _/s/ Andrew C. Hamilton_
8                                            Marshall S. Fontes, Chief Deputy
                                             Andrew C. Hamilton, Deputy
9                                            Kimberly L. Marshall, Deputy
                                             Attorneys for Defendant County of Kern,
10                                           ("erroneously sued as Kern County")

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendants' Joint Trial Brief