James D. Weakley, Esq.       Bar No. 082853
Brande L. Gustafson, Esq.    Bar No. 267130
**WEAKLEY & ARENDT**
A Professional Corporation
5200 N. Palm Avenue, Suite 211
Fresno, California 93704
Telephone: (559) 221-5256
Facsimile: (559) 221-5262
Jim@walaw-fresno.com
Brande@walaw-fresno.com

Attorneys for Defendant Deputy Jason Ayala

## UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICKEL ERICK LEWIS JR., individually and as successor-in-interest to MICKEL E. LEWIS, SR., ORIONA LEWIS; and BRIONA LEWIS, individually and as successor-in-interest,<br><br>Plaintiff,<br><br>vs.<br><br>KERN COUNTY, Deputy JASON AYALA, and DOES 1-20, inclusive,<br><br>Defendant. | Case No. 1:21-CV-00378-KES-CDB<br>*Consolidated with Case No.*<br>*1:21−CV−01352−DAD−JLT*<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTIONS IN LIMINE** |
| R.L., M.L., and H.L., minors, by and through guardian *ad litem* Roberta Haro, individually and as successors in interest to Michel Lewis Sr., deceased; A.W., a minor, by and through her guardian *ad litem* Alisha White, individually and as a successor in interest to Michel Lewis Sr., deceased; ALISHA WHITE, individually and as a successor in interest to Mickel Lewis Sr.,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF KERN; JASON AYALA; and DOES 1-10, inclusive,<br><br>Defendants. | |

This lawsuit involves the shooting of Decedent, Mikel Lewis, Sr., by County of Kern Sheriff's Deputy Jason Ayala on October 2, 2020, in Mojave, CA. In mid-September Deputy Ayala received

information from a confidential informant that Lewis was selling methamphetamine in the Mojave area. Deputy Ayala was informed that Lewis was armed with a handgun and another rifle or shotgun with a scope. Deputy Ayala was also given a description of Lewis' vehicle and told that Lewis was staying in a hotel in Mojave. Deputy Ayala ran a criminal records check on Lewis and learned that Lewis was on probation, and subject to searches. Deputy Ayala began looking for Lewis.

On October 2, 2020, Deputy Ayala received a text message from the informant advising that Lewis had forced his way into her hotel room and threatened her and her children. The informant stated that Lewis was armed with a handgun. Deputy Ayala drove to Mojave to search for Lewis. He saw Lewis driving a dark colored SUV. Deputy Ayala conducted a traffic stop to conduct a probation search of his vehicle in an attempt to locate a firearm. That began the events that ended with the shooting of Lewis.

Deputy Ayala opposes Plaintiffs' motions in limine as follows:

1. To exclude information unknown to Defendants at the time of the incident.
2. To exclude evidence of the findings of any agency.
3. To exclude or limit the testimony of Defendants' expert witness Michael J. Kuzel.

## I.

## INFORMATION NOT KNOWN TO DEPUTY AYALA

Under Federal Rules of Evidence 401 and 402, relevant admissible evidence includes evidence having "any tendency to make a fact more or less probable" so long as "the fact is of consequence in determining the action." In addressing an excessive force case under the Fourth Amendment, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Ruvalcaba v. City of Los Angeles*, 64 F.3d 1323, 1328 (9th Cir. 1995).

Under the totality of the circumstances, officers are permitted to testify about the facts and circumstances known to the officers during their confrontation with the individual requiring the use of force. *Id*, 1328.

One of the key questions for the jury to decide was what weight to give Deputy Ayala's testimony. "[W]here what the officer perceived just prior to the use of force is in dispute, evidence

that may support one version of events over another is relevant and admissible." See, *Tan Lam v. City of Los Banos*, 976 F.3d 986, 1006 (9th Cir. 2020). "Evidence helpful in evaluating the credibility of a witness is of consequence to the determination of the action." *United States v. Hankey*, 203 F.3d 1160, 1171 (9th Cir. 2000).

### 1. **DRUG AND ALCOHOL EVIDENCE**

Deputy Ayala was told by the informant that Lewis selling methamphetamine in the Mojave. When Deputy Ayala encountered Lewis, Deputy Ayala described him as acting like he was under the influence of methamphetamine. *See* Declaration of James D. Weakley ("Weakley Decl."), Exh. A. Lewis had very rigid movements and was talking very fast. *Id.* He was not acting normal. *Id.*

A toxicology screen was performed as part of the coroner's investigation. Lewis had a methamphetamine level of 360 ng/mL and an amphetamine level of 67 mg/dL. Defendants have retained a forensic toxicologist who opines that the methamphetamine level being much higher than the amphetamine level suggests relatively recent use. Weakley Decl., Exh. B, p. 3. He also opines that the behaviors of Lewis described by witnesses are consistent with impaired judgement. *Id.* A methamphetamine level of 360 ng/mL will likely result in impaired judgement. *Id.*

Lewis having used methamphetamine recently before the incident is relevant to the credibility of the informant and Deputy Ayala. Lewis' methamphetamine use and the paraphernalia found in his vehicle is relevant on the credibility of the informant who told Deputy Ayala that Lewis was selling methamphetamine in Mojave. It also supports that Deputy Ayala was accurate in his assessment of Lewis before the need to use deadly force andit explains Lewis' bizarre behavior.

The cases cited by Plaintiffs are distinguishable. The court in *Est. of Diaz v. City of Anaheim*, 840 F.3d 592, 600 (9th Cir. 2016) found that the toxicology evidence was not relevant to § 1983 liability, as the officer did not know or suspect that the decedent was under the influence of drugs at the time of the incident. Deputy Ayala, however, testified that he suspected Lewis was under the influence of drugs at the time of the incident. Weakley Decl., Exh. A.

The court in *Watson v. City of San Jose (San Jose Police Dep't)*, 765 F. App'x 248, 251 (9th Cir. 2019), on the other hand, did not consider whether allowing drug use was relevant to the credibility of the officer or to explain behavior of the plaintiff. It also did not involve an officer who

was provided information about the plaintiff selling drugs. In fact, *Watson* supports allowing Deputy Ayala to testify about his observations because it held that, "[t]he trial court's decision to allow officer testimony as to observations at the time of the incident and the training and experience which informed their reactions to those observations did not 'lie[ ] beyond the pale of reasonable justification under the circumstances' and was not an abuse of discretion." *Id.*

Deputy Ayala is entitled to testify about the facts and circumstances known to him during his confrontation with Lewis. He should also be entitled to testify about his training and experience which informed his reactions to his observations. In the event that either Deputy Ayala or the informant's credibility is questioned, evidence of Lewis' methamphetamine use and the paraphernalia found in his vehicle is relevant on their credibility. In addition, Lewis' use of methamphetamine is relevant to explain his behavior just before the shooting.

### 2. **DECEDANT'S CRIMINAL HISTORY**

As Plaintiffs point out, Deputy Ayala was aware that Lewis was on probation. He was also aware that Lewis was selling methamphetamine in the Mojave area and was armed. *See* Weakley Decl., Exhs. A & D. As stated above, the facts known to Ayala are relevant. If Plaintiffs raise questions about the credibility of those facts, Lewis' criminal history becomes relevant.

In addition, Lewis' criminal history is relevant in addressing Plaintiffs' damages claims. In particular, Plaintiffs seek loss of financial support as well as loss of care, protection, guidance, advice, training, nurturing, love, society, and companionship. Many employers take criminal records into consideration when hiring or employing individuals, thus Lewis' criminal history is relevant to address Plaintiffs' claim for loss of earning capacity. Additionally, the amount time that Lewis spent in jail or in the courts defending against such criminal allegations is relevant to the amount of time Lewis was free to even pursue gainful legal employment. Similarly, the time Lewis spent in jail away from his wife and children also impacts Lewis' ability to provide care, protection, guidance, advice, training, nurturing, love, society, or companionship. Plaintiffs have failed to demonstrate any unfair prejudice from the admission of evidence of Lewis' criminal history in response to evidence presented by Plaintiffs as to any loss of financial support from Lewis or any loss of care, protection, guidance, advice, training, nurturing, love, society, and companionship.

As a result, Lewis' criminal history should not be excluded.

**3.    THE GUN**

In the case of *Cruz v. City of Anaheim*, 765 F.3d 1076 (9th Cir. 2014), based upon information from a confidential informant, officers were told that Cruz sold methamphetamine and was armed with a gun. *Id.*, at 1077. Cruz was located and pulled over by officers. *Id.*, at 1078. The officers stated that as he was emerging from his vehicle he reached for the waistband of his pants. *Id.* Fearing that he was going to shoot them they shot him. *Id.* Cruz died from the gunshots. *Id.* When he was searched, no gun was found on him. *Id.* However, a loaded gun was later found on the passenger seat of his vehicle. *Id.* The Ninth Circuit held,

> . . . there's circumstantial evidence that could give a reasonable jury pause. Most obvious is the fact that Cruz didn't have a gun on him, so why would he have reached for his waistband? Cruz probably saw that he was surrounded by officers with guns drawn. In that circumstance, it would have been foolish—but not wholly implausible—for him to have tried to fast-draw his weapon in an attempt to shoot his way out. But for him to make such a gesture when *no* gun is there makes no sense whatsoever. A jury may doubt that Cruz did this. Of course, a jury could reach the opposite conclusion. It might believe that Cruz *thought* he had the gun there, or maybe he had a death wish, or perhaps his pants were falling down at the worst possible moment. But the jury could also reasonably conclude that the officers lied.

*Cruz*, 765 F.3d at 1079–80.

In footnote 3, the court stated,

> In the usual case, we review the record 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.' *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *Wilkinson v. Torres,* 610 F.3d 546, 551 (9th Cir.2010) (explaining that "the critical inquiry is what [the officer] perceived"). So the fact that Cruz did not have a gun on him normally wouldn't factor into the reasonableness analysis because the officers couldn't know what was (or wasn't) underneath Cruz's waistband. But, because the officers killed Cruz, we must examine whether the officers' accounts are "consistent with other known facts." *Scott,* 39 F.3d at 915. One of those facts is that no gun was found on Cruz (though a gun was found—with the safety on—on the car's passenger seat).

*Cruz*, 765 F.3d at 1079 n.3.

///

Like the officers in *Cruz,* before his encounter with Lewis, Deputy Ayala also had information that Lewis was selling methamphetamine and was armed with a handgun. In September 2020, Deputy Ayala had been informed by a confidential informant that Lewis was selling narcotics in Mojave and that he was armed with a handgun and some kind of rifle or shotgun. On October 2, 2020, Deputy Ayala was told by the informant that Lewis had a handgun when he showed up at the hotel where the informant was staying and threatened her and her kids.

When Deputy Ayala made the traffic stop, there is no dispute that Lewis had a handgun in his SUV. During the confrontation between Deputy Ayala and Lewis, Deputy Ayala was able to remove the keys from Lewis' SUV and told Lewis that he had the keys. However, after being told by Deputy Ayala that he had the keys, Lewis ran back into his SUV and appeared to be searching under the driver's seat. He then came out of the SUV and Deputy Ayala heard him say something to the effect of, "You're going to have to kill me. You're going to die." He then charged at Deputy Ayala. Deputy Ayala could not see Lewis right hand. That's when Deputy Ayala fired five shots at Lewis.

Like *Cruz*, the fact that Lewis had a handgun in his SUV is relevant to explaining Lewis' behavior of getting back into the SUV, searching under the driver's seat, even though he knew the keys were gone. It supports Deputy Ayala's credibility that he saw Lewis searching under the driver's seat. *See, Boyd v. City & Cnty. of San Francisco*, 576 F.3d 938, 944 (9th Cir. 2009). "In a case such as this, where what the officer perceived just prior to the use of force is in dispute, evidence that may support one version of events over another is relevant and admissible. *See Graham,* 490 U.S. at 399 n. 12, 109 S.Ct. 1865 (indicating that a factfinder may consider outside evidence "in assessing the credibility of an officer's account of the circumstances that prompted the use of force")." *Id.*

In addition, evidence of the gun is relevant on the issues of integrity and bias of Lewis' girlfriend, Marlyn Komenenus. Ms. Komenenus and her two daughters were in Lewis' SUV at the time of the shooting. Ms. Komenenus testified that when she got into Lewis' SUV she saw the handgun. She claims that she did not want her daughters to see it, so she took it and hid it. After the shooting, rather than give this important piece of evidence to the investigating law enforcement officer she disposed of it in dead grass near the scene of the shooting. Weakley Decl., Exh. E.

///

Ms. Komenenus was interviewed shortly after the shooting. When asked, she denied knowing whether there was anything illegal in the car or that the detective should know about. Weakley Decl., Exh. F. Considering Ms. Komenenus was in the car at the time of the shooting, she is an important witness of the events leading up to the shooting and the shooting itself. In addition to lying to law enforcement her conduct shows bias against law enforcement.

### 4. TOXICOLOGY REPORT AND STATEMENTS BY CONFIDENTIAL INFORMANT

The toxicology report does not come into evidence. However, as addressed above, Lewis' intoxication level is relevant on the issues of explaining Lewis' behavior as well as the credibility of Deputy Ayala and the confidential informant.

Statements from the confidential informant are relevant on the issue of the facts known to Deputy Ayala at the time of the incident.

## II.
## FINDINGS OF AGENCIES

Deputy Ayala does not oppose Plaintiffs' motion in limine to exclude evidence, testimony, or argument relating to the District Attorney's conclusions regarding Deputy Ayala's use of deadly force or the County of Kern findings relating to Deputy Ayala's use of deadly force. However, should Plaintiffs attempt to elicit testimony or argue that Deputy Ayala committed a crime or violated policy, or assert that Deputy Ayala acted contrary to his law enforcement training, then Deputy Ayala should be allowed to introduce the District Attorney's conclusions and/or County of Kern's findings relating to Deputy Ayala's use of deadly force.

## III.
## MICHAEL J. KUZEL

Michael J. Kuzel is a human factors expert. "Human factors refers to a body of knowledge about human limitations, human abilities, and other human characteristics, such as behavior and motivation, that shall be considered in product design." 49 C.F.R. § Pt. 229, App. F. Human factors is an applied field of study that examines human abilities, limitations, behaviors, and processes. *See, In re Toyota Motor Corp. Prods. Liab. Litig.*, 978 F. Supp. 2d 1053, 1071 (C.D. Cal. 2013).

///

Michael J. Kuzel will not offer opinions on what is or is not reasonable on police practices or procedures. His opinions will be limited to human perception/reaction time and human perception/reaction under stress. He was questioned about these areas during his deposition. *See* Weakley Decl., Exh. C.

Contrary to Plaintiffs' assertion, Mr. Kuzel is adequately qualified to provide opinions with regard to human perception/reaction time and human perception/reaction under stress, including with regard to police officer use of force, including officer involved shooting. *See* Weakley Decl., Exh. C, pp. 8:6-12:14, 13:25-14:16; *see also*, Doc. No. 86, Plaintiffs' Motion in Limine No. 3, Exh. 1, Appendix 2. Mr. Kuzel has a bachelor's degree in Bioengineering from Arizona State University, a master's degree in Industrial Engineering from Arizona State University (with an emphasis in Human Factors Industrial Engineering), a second master's degree in Applied Psychology, again, from Arizona State University (with an emphasis in Human Factors Sensation of Perception). Weakley Decl., Exh. C, pp. 10:20-11:06. He has even investigated and evaluated Police Officer Use of Force events as a reconstruction, injury biomechanics and human factors expert, including completing a 40 hour Force Science Analyst course offered by Force Science, Ltd. *See* Doc. No. 86, Plaintiffs' Motion in Limine No. 3, Exh. 1, Appendix 2.

Otherwise, Plaintiffs do not provide much of an analysis to dispute the reliability of the reasoning or methodology underlying Mr. Kuzel's opinions, other than to take issue with Mr. Kuzel relying on Deputy Ayala's own statements and testimony that he believed Lewis had a gun in his hand when he exited the car the second time. Afterall, Deputy Ayala did pull Lewis over for the stated purpose of searching his car for the handgun referenced by the confidential informant. To say that it is was unsubstantiated, unreliable, or not logically connected to the facts of the case for Mr. Kuzel to consider the possibility that based on the information Deputy Ayala received from his confidential informant that there was a gun in Lewis' car or that Lewis might arm himself with that gun is to ignore the facts that Deputy Ayala had available to him during the incident.

/ / /

/ / /

/ / /

Consequently, Plaintiffs' concerns relating to Mr. Kuzel goes more to the weight of his opinions, rather than the admissibility of them.

Dated: February 25, 2025

                                        WEAKLEY & ARENDT
                                        A Professional Corporation

                              By:  */s/ James D. Weakley*
                                        James D. Weakley
                                        Brande L. Gustafson
                                        Attorneys for Defendant Deputy Jason Ayala

                                        MARGO A. RAISON, COUNTY COUNSEL

                              By:  */s/ Marshall S. Fontes*
                                        Marshall S. Fontes, Chief Deputy
                                        Andrew C. Hamilton, Deputy
                                        Kimberly L. Marshall, Deputy
                                        Attorneys for Defendant County of Kern,
                                        ("erroneously sued as Kern County")

Defendants' Opposition to Plaintiffs' Motions in Limine