**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Renee V. Masongsong, Esq. (SBN 281819)
rvalentine@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Telephone: (818) 347-3333
Facsimile: (818) 347-4118

Attorneys for Plaintiffs
R.L., M.L., and H.L., minors, by and through guardian *ad litem* Roberta Haro;
A.W., a minor, by and through guardian *ad litem* Alisha White, ALISHA WHITE

**TONI JARAMILLA, A Professional Law Corp.**
Toni J. Jaramilla, Esq. (SBN 174625)
Toni@tjjlaw.com
1900 Avenue of the Stars, Suite 900
Los Angeles, California 90067
T: (310) 551-3020 | F: (310) 551-3019

**ALEXANDER MORRISON + FEHR LLP**
J. Bernard Alexander, III (State Bar No. 128307)
balexander@amfllp.com
Britt L. Karp (State Bar No. 278623)
bkarp@amfllp.com
1900 Avenue of the Stars, Suite 900
Los Angeles, California 90067
T: (310) 394-0888 | F: (310) 394-0811

Attorneys for Plaintiffs
MICKEL ERICK LEWIS JR, ORIONA LEWIS
and BRIONA LEWIS

-1-
PLAINTIFFS' TRIAL BRIEF

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MICKEL ERICK LEWIS JR, individually and as successor-in-interest to MICKEL E. LEWIS SR., ORIONA LEWIS, individually and as successor-in-interest; and BRIONA LEWIS, individually and as successor-in-interest,<br><br>　　　　　　　Plaintiffs,<br>　vs.<br>KERN COUNTY, Deputy JASON AYALA, and Does 1–20, inclusive,<br><br>　　　　　　　Defendants. | Case No: 1:21−CV−00378−KES-CDB<br>Hon. District Judge Kirk E. Sherriff<br><br>**PLAINTIFFS' TRIAL BRIEF**<br><br>Trial Date:　March 11, 2025<br>Time:　　　8:30 a.m.<br>Dept.:　　　Courtroom 6<br><br>Consolidated with Case No. 1:21−CV−01352−DAD−JLT |
| R.L., M.L., and H.L., minors, by and through guardian *ad litem* Roberta Haro, individually and as successors in interest to Michel Lewis Sr., deceased; A.W., a minor, by and through her guardian *ad litem* Alisha White, individually and as a successor in interest to Michel Lewis Sr., deceased; ALISHA WHITE, individually and as a successor in interest to Mickel Lewis Sr.,<br><br>　　　　　　　Plaintiffs,<br>　vs.<br><br>COUNTY OF KERN; JASON AYALA; and DOES 1-10, inclusive,<br><br>　　　　　　　Defendants. | |

I.	**Statement of Facts.**

This civil rights and state tort action arises from the use of deadly force by Kern County Sheriff Department Deputy Jason Ayala against Mickel Lewis, Sr. ("Decedent") on October 2, 2020. Specifically, on October 2, 2020, at approximately 9.00 pm in the City of Mojave, Deputy Jason Ayala initiated a traffic stop of Decedent near the corner of "K" Street and Mono Street, behind the Denny's restaurant and Wienerschnitzel. Deputy Ayala asserts that he received information from an informant that the Decedent was in possession of a firearm. However, when Deputy Ayala followed and stopped the Decedent, he had not seen a firearm in his possession, and he otherwise had no other reasonable suspicion or probable cause to initiate the traffic stop.

During the traffic stop, the Decedent, and Deputy Ayala engaged in a conversation. At some point, the Decedent moved away from his vehicle with Deputy Ayala and returned to his car. While Decedent was standing in the open car door of his vehicle with his back facing Deputy Ayala, Deputy Ayala issued a command that Decedent turn and walk toward the rear of Decedent's vehicle where Ayala was standing well over a car-length away. In response to Ayala's command, Decedent began to turn in the direction of Ayala. However, before Decedent was fully turned, without provocation and despite Decedent being unarmed with his hands up in surrender, Ayala shot Decedent six times: three times in the back; once in the side, and two bullets entering the front of Decedent's torso, killing Mr. Lewis.

At no time did this unarmed Decedent pose a threat of serious bodily injury or death to Jason Ayala or to any other individual, including at the time of the shooting, as Decedent was unarmed, was complying with directions issued by Ayala and was in a position of surrender. Prior to shooting Decedent, Ayala searched Decedent's person and found that he was unarmed.

Ayala failed to issue a warning that deadly force was going to be used before shooting Decedent.

In the aftermath of the shooting death of their father, and while Plaintiffs and other grieving family members visited the site of the shooting to grieve, place flowers and tokens of love to commemorate Decedent's life, County Deputies engaged in acts of intimidation and harassment against Plaintiffs, by (a) having multiple officers in multiple vehicles circle and congregate adjacent to the memorial; (b) by lining up in a show of force and callously laughing, yelling and glaring at Plaintiffs and family members, in a show of visible presence, while Plaintiffs mourned; (c) engaging in hide-and-seek maneuvers and making repeated vehicle passes by the memorial; (d) threatening witnesses not to communicate or cooperate with Plaintiffs or their counsel in collecting video evidence or statements from adjacent business establishments; and (e) following Plaintiffs and Decedent's loved ones home from the memorial.

**II.    Summary of Points of Law.**

Based on an informal stipulation between the Parties, Plaintiffs maintain the following claims:

1. Fourth Amendment—Excessive Force (42 U.S.C. § 1983), against Defendant Ayala;
2. Fourteenth Amendment—Substantive Due Process/Interference with Familial Relationship (42 U.S.C. § 1983), against Defendants Ayala and Kern County;
3. Battery (Wrongful Death and Survival), against Defendants Ayala and Kern County;
4. Negligence (Wrongful Death and Survival), against Defendants Ayala and Kern County; and
5. Bane Act (Cal. Civ. Code § 52.1), against Defendants Ayala and Kern County.

Defendants have asserted affirmative defenses of qualified immunity against Plaintiffs' § 1983 claim and immunity under California law against Plaintiff's state

1  law claims. [*See* Dkt. 89 at 8-10.]

2      A. <u>Fourth Amendment—Excessive Force</u>

3      "Fourth Amendment claims of excessive force are analyzed under an
4  objective reasonableness standard." *Espinosa v. City & Cnty. of San Francisco*, 598
5  F.3d 528, 537 (9th Cir. 2010). When evaluating a claim of excessive force, the
6  inquiry is whether the officers' actions are "objectively reasonable" in light of the
7  facts and circumstances confronting them. *Glenn v. Washington Cnty.*, 673 F.3d
8  864, 871 (9th Cir. 2011) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)).
9  Reasonableness "must be judged from the perspective of a reasonable officer on the
10 scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.
11 Accordingly, facts of which officers were unaware "are irrelevant to the
12 reasonableness analysis." *Tabares v. City of Huntington Beach*, 988 F.3d 1119,
13 1123 n.4 (9th Cir. 2021); *see Glenn*, 673 F.3d at 873 n.8 ("We cannot consider
14 evidence of which the officers were unaware—the prohibition against evaluating
15 officers' actions 'with the 20/20 vision of hindsight' cuts both ways."). "[The
16 reasonableness] inquiry requires a careful balancing of the nature and quality of the
17 intrusion on the individual's Fourth Amendment interests against the countervailing
18 governmental interest at stake." *Glenn*, 673 F.3d at 871 (quoting *Graham*, 490 U.S.
19 at 396). "[T]he amount of force applied" must be balanced "against the need for that
20 force." *Bryan v. McPherson*, 630 F.3d 805, 823-24 (9th Cir. 2010) (cleaned up).
21 "[A]ll force—lethal and non-lethal—must be justified by the need for the specific
22 level of force employed." *Id.* at 825.

23     "The intrusiveness of a seizure by means of deadly force is unmatched,"
24 *Graham*, 490 U.S. at 397, "because, once deceased, an individual can no longer
25 stand trial to have his guilt and punishment determined." *Estate of Aguirre v.*
26 *County of Riverside*, 29 F.4th 624, 628 (9th Cir. 2022) (cleaned up) (citing
27 *Tennessee v. Garner*, 471 U.S. 1, 9 (1985)). Government interest factors to balance
28 against the type of force used include "(1) the severity of the crime at issue,

(2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. Additional factors to consider are (4) "whether proper warnings were given" that force would be used if the suspect did not comply, (5) "the availability of less intrusive" options to effectuate arrest, and (6) "whether the suspect has exhibited signs of mental illness." *Vos v. City of Newport Beach*, 892 F.3d 1024, 1033-34 & n.9 (9th Cir. 2018); *see S.R. Nehad v. Browder*, 929 F.3d 1125, 1137-38 (9th Cir. 2019).

"[Ninth Circuit] precedent has long made clear that the suspect's possession of a weapon at some point in the incident does not provide an officer with carte blanche to use deadly force." *Lam v. City of Los Banos*, 976 F.3d 986, 1001 (9th Cir. 2020). An officer's "desire to resolve quickly a potentially dangerous situation" does not, on its own, justify the use of deadly force. *Deorle*, 272 F.3d at 1281. Additionally, "law enforcement officials may not kill suspects who do not pose an immediate threat to their safety or to the safety of others simply because they are armed." *Harris v. Roderick*, 126 F.3d 1189, 1204 (9th Cir. 1997). Thus, deadly force is justified only if the shooting officer reasonably "perceived an immediate threat of death or serious physical injury at the time he shot." *Gonzalez v. City of Anaheim*, 747 F.3d 789, 794 (9th Cir. 2014) (en banc).

Here, the totality of the circumstances does not support the contention that Mr. Lewis posed an immediate threat of death or serious bodily injury at the time that Ayala used lethal force, striking him with six gunshots, including three to the back, and killing him. Ayala indisputably did not see a gun on Decedent's person or in his hands prior to shooting him. Further, prior to shooting Decedent, Ayala searched Decedent's person and confirmed there was no gun on him. At no time did this unarmed Decedent pose a threat of serious bodily injury or death to Ayala or to any other individual, including at the time of the shooting, as Decedent was unarmed, was complying with directions issued by Jason Ayala and was in a position of

surrender. Officers are trained to give a verbal warning before shooting, when feasible, yet Ayala failed to issue a warning that deadly force was going to be used before shooting Decedent and doing so would have been feasible.  Further, there were reasonable options other than using a deadly weapon.

### B. Fourteenth Amendment—Substantive Due Process/Interference with Familial Relationship Against Deputy Ayala

The standard for whether official action amounts to a due process violation under the Fourteenth Amendment is whether the conduct "shocks the conscience." *Hayes v. County of San Diego*, 736 F.3d 1223, 1230 (9th Cir. 2013). "Where actual deliberation is practical" before an officer uses force, only a showing of "deliberate indifference" is required. *Id.* The deliberate indifference standard applies where officers have the opportunity to evaluate the potential threat posed by a suspect, *see Willis v. City of Fresno*, 520 F. App'x 590, 592 (9th Cir. 2013); *Kaur v. City of Lodi*, 263 F. Supp. 3d 947, 972 (E.D. Cal. 2017) (deliberate indifference standard applied to suspect who at time of shooting "was neither dangerous nor currently in flight"); *Kosakoff v. City of San Diego*, 2010 WL 1759455, at *11-12 (S.D. Cal. Apr. 29, 2010), or where officers use force following a standoff during which there is time to create and implement a tactical plan, *Ewolski v. City of Brunswick*, 287 F.3d 492, 511 (6th Cir. 2002); *Alford v. Humboldt Cnty.*, 785 F. Supp. 2d 867, 881 (N.D. Cal. 2011). Conversely, in situations "that escalate so quickly that the officer must make a snap judgment" and there is no time to deliberate, a plaintiff must show that the officer acted "with a purpose to harm unrelated to legitimate law enforcement objectives." *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008). The "snap judgment" to use deadly force must be a reaction to an *unforeseen* escalation by the subject. *See Hayes*, 736 F.3d at 1130 (officer's decision to use deadly force was "sudden" and a "snap judgment based on the unexpected appearance of a knife in [decedent's] hand").

1  Here, the use of deadly force was not in response to an unforeseen escalation
2  by the Decedent, considering that at the time of the shooting, the Decedent was
3  unarmed, complying with directions issued by Jason Ayala and was in a position of
4  surrender, so the "deliberate indifference" standard applies. Under these
5  circumstances, the use of deadly force amounted to deliberate indifference.

      C.  <u>Fourteenth Amendment—Substantive Due Process/Interference with Familial Relationship Against Defendant Kern County</u>

8  Plaintiffs Mickel Erick Lewis, Jr., Oriona Lewis and Briona Lewis also allege
9  a claim for substantive due process violation against additional Kern County Deputy
10 Sheriffs for their conduct against Plaintiffs after the shooting of their father.
11 Specifically, while Plaintiffs and other grieving family members visited the site of
12 the shooting to grieve, place flowers and tokens of love to commemorate their
13 father's life, Sheriff Deputies engaged in acts of intimidation and harassment against
14 Plaintiffs by circling and congregating adjacent to the memorial and lining up in a
15 show of force and callously laughing, yelling and glaring at Plaintiffs and family
16 members, in a show of visible presence, while Plaintiffs mourned.  These facts give
17 rise to, and are alleged as part of, Plaintiffs' second cause of action for violation of
18 their substantive due process rights protected by the Fourteenth Amendment.

19 Parents and children possess a constitutionally protected liberty interest in
20 companionship and society with each other, *Smith v. City of Fontana*, 818 F.2d
21 1411, 1418 (9th Cir. 1987), *overruled on other grounds by Hodgers-Durgin v. de la*
22 *Vina, 199 F.3d 1037* (9th Cir. 1999) (en banc), and they have a substantive due
23 process right to a familial relationship free from unwarranted state interference. *Scott*
24 *v. Smith*, 109 F.4th 1215, 1228 (9th Cir. 2024); *Hardwick v. County of Orange*, 980
25 F.3d 733, 740–41 & n.9 (9th Cir. 2020).  This liberty interest is rooted in the
26 Fourteenth Amendment, which states in relevant part that "[n]o State shall . . .
27 deprive any person of life, liberty, or property, without due process of law." U.S.
28 Const. amend. XIV, § 1. A substantive due process claim may arise when the state

interferes with the parent-child relationship "for purposes of oppression." *See City of Fontana*, 818 F.2d at 1419-20 ("whether a particular interference with a liberty interest constitutes a substantive or a procedural due process violation depends on whether the interference was 'for purposes of oppression,' rather than for the purpose of furthering legitimate state interests" (citation omitted)) (*quoting Daniels v. Williams*, 474 U.S. 327, 331 (1986)). A substantive due process claim of impermissible interference with familial association arises when a state official harms a parent or child in a manner that shocks the conscience. *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008). A state official's conduct may shock the conscience if (1) the official acted with a "purpose to harm" the victim for reasons unrelated to legitimate law enforcement objectives; or (2) the official acted with "deliberate indifference" to the victim. *Scott* 109 F.4th at 1228.

The Deputy Sheriffs' later contact with Plaintiffs shocks the conscience and was, at a minimum, done with deliberate indifference to the Plaintiffs' rights. However, there is compelling evidence to support a finding that the conduct was undertaken with a purpose to harm Plaintiffs in an effort to discourage them from speaking out against Deputy Ayala's use of excessive force against their father.

D. <u>Battery</u>

Under California law, a battery claim arising out of excessive force by a peace officer is evaluated by way of traditional Fourth Amendment analysis under *Graham*. *See Munoz v. City of Union City*, 120 Cal. App. 4th 1077 (2004), *disapproved of on other grounds by Hayes v. Cnty. of San Diego*, 57 Cal.4th 622, 639 & n.1 (2013). Additionally, pursuant to Penal Code section 835a, "a peace officer is justified in using deadly force only when the officer reasonably believes, based on the totality of the circumstances, that such force is necessary . . . [t]o defend an imminent threat of death or serious bodily injury." Cal. Pen. Code § 835a(c). "A threat of death or serious bodily injury is "imminent" when, based on the totality of the circumstances, a reasonable officer in the same situation would

believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or another person." *Id.* § 835a(e)(2). For the reasons explained above, and because the circumstances at the time deadly force was used did not indicate the Decedent had the "present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury" to Ayala, this standard is satisfied in this case.

### E. Negligence

"California negligence law regarding the use of deadly force overall is broader than federal Fourth Amendment law." *Tabares v. City of Huntington Beach*, 988 F.3d 1119, 1125 (9th Cir. 2021) (citing *Villegas ex rel. C.V. v. City of Anaheim*, 828 F.3d 1252, 1257 n.6 (9th Cir. 2016)) (internal quotation marks omitted). While California law generally considers federal Fourth Amendment factors when assessing an officer's tactical conduct at the time of the challenged use of force, California negligence also encompasses tactics and decisions leading up to that use of force. *Id.* at 1125, 1126. "Under California law, the officer's pre-shooting decisions can render his behavior unreasonable under the totality of the circumstances, even if his use of [] force at the moment . . . might be reasonable in isolation." *Id.* at 1125.

As explained above, even under the narrower Fourth Amendment standard, Ayala's use of deadly force against the Decedent was unreasonable. Consideration of Ayala's tactics and decisions prior to his use of deadly force renders the force further unreasonable, given the availability of less intrusive options to effectuate arrest and de-escalate the situation, the evidence that the Decedent was, in fact, seeking to flee the interaction, that Deputy Ayala failed to issue a warning, and failed to call for back-up if he truly believed the Decedent posed a threat to him.

### F. Bane Act

The Bane Act "provides a cause of action for violations of a plaintiff's state or federal civil rights committed by 'threats, intimidation, or coercion,'" *Reese v. Cnty.*

*of Sacramento*, 888 F.3d 1030, 1040 (9th Cir. 2018) (citation omitted), which need not be independent from the "coercion" inherent in the underlying civil rights violation itself. *B.B. v. Cnty. of Los Angeles*, 25 Cal. App. 5th 115, 129-33 (2018), *rev'd on other grounds by B.B. v. Cnty. of Los Angeles*, 10 Cal. 5th 1 (2020). Thus, beyond showing a civil rights violation, a plaintiff must only show the defendant acted with specific intent to violate a decedent's civil rights. *See B.B. v. Cnty. of Los Angeles*, 25 Cal. App. 5th 115, 129-33 (2018), *rev'd on other grounds*, 10 Cal. 5th 1 (2020); *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1040 (9th Cir. 2018). A "reckless disregard for a person's constitutional rights is evidence of specific intent to deprive that person of those rights." *Reese*, 888 F.3d at 1045. Given Ayala's reckless conduct in this case, this standard is satisfied here.

### G. Qualified Immunity

Qualified immunity does not apply where an official's conduct "violate[s] clearly established . . . constitutional rights of which a reasonable person would have known." *White v. Pauly*, 580 U.S. 73, 78-79 (2017). The touchstone of the "clearly established" inquiry is whether "officers [had] fair notice of the illegality of their conduct" at the time. *Orn v. City of Tacoma*, 949 F.3d 1167, 1178 (9th Cir. 2020) (citing *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018)); *see Brosseau v. Haugen*, 543 U.S. 194, 198 (2004); *Hope v. Pelzer*, 536 U.S. 730, 739-40 (2002). Although this ordinarily requires "cases relevant to the situation [officers] confronted," *Brosseau*, 543 U.S. at 200, it does "not require a case directly on point," *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011); *see Hope*, 536 U.S. at 740 (qualified immunity should be denied even "despite notable factual distinctions between the precedents relied on and the [instant case], so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights").

Here, the facts viewed in the light most favorable to Plaintiffs sufficiently align this case with previous cases in which officers' use of deadly force was found to be excessive, including *Vos v. City of Newport Beach*, 892 F.3d 1024 (9th Cir.

2018), *Glenn v. Washington County*, 673 F.3d 864 (9th Cir. 2011), and *Zion v. County of Orange*, 874 F.3d 1072 (9th Cir. 2017).

H. <u>Statutory Immunity</u>

"Immunity is reserved for those '*basic policy decisions* [which have] been [expressly] committed to coordinate branches of government, and as to which judicial inference would thus be 'unseemly.'" *Gillan v. City of San Marino*, 147 Cal.App.4th 1033, 1051 (2007) (quoting *Johnson v. State of California*, 69 Cal. 2d 782, 293 (1968)). A police officer's decision to detain or arrest a suspect is "not a basic policy decision, but only an operational decision by the police purporting to apply the law." *Id.* California law denies immunity to police officers who use excessive force in arresting a suspect. *See Nelson v. City of Davis*, 685 F.3d 867, 875 (9th Cir. 2012); *Robinson v. Solano Cnty.*, 278 F.3d 1007, 1016 (9th Cir. 2002); *Blankenhorn v. City of Orange*, 485 F.3d 463, 487 (9th Cir. 2007); *Scruggs v. Haynes*, 252 Cal.App.2d 256, 264 (1967). Because Plaintiffs' claim arises out of Ayala's use of force during a detention/arrest, which was not a policy decision, Ayala is not entitled to immunity under section 820.2. Because Ayala is not immune under California law, the County of Kern also is not immune under Government Code section 815.2.

Penal Code § 835a provides that "peace officers are privileged under state law to use reasonable force effect the arrest, to prevent escape or to overcome resistance." The operative language is clear: The privilege applies only to the use of "reasonable" force," not to "unreasonable" force. *See also Hernandez v. City of Pomona*, 46 Cal.4th 501 (2009) (same). A peace officer is never privileged to use excessive force. *See Scruggs*, 252 Cal.App.2d at 267-68.

///

///

///

| | | |
|---|---|---|
| Dated: February 25, 2025 | | LAW OFFICES OF DALE K. GALIPO |
| | By: | */s/ Dale K. Galipo* |
| | | Dale K. Galipo |
| | | Renee V. Masongsong |
| | | Attorneys for Plaintiffs |
| Date: February 25, 2025 | | ALEXANDER MORRISON + FEHR LLP |
| | | TONI JARAMILLA, A Professional Law Corp. |
| | | s/J. Bernard Alexander, III |
| | | J. Bernard Alexander, III |
| | | Toni Jaramilla |
| | | Britt L. Karp |
| | | Counsel for Plaintiffs MICKEL ERICK LEWIS JR, ORIONA LEWIS and BRIONA LEWIS |