| | |
|---|---|
| James D. Weakley, Esq.   Bar No. 082853 | |
| Brande L. Gustafson, Esq.   Bar No. 267130 | |
| **WEAKLEY & ARENDT** | |
| A Professional Corporation | |
| 5200 N. Palm Avenue, Suite 211 | |
| Fresno, California 93704 | |
| Telephone: (559) 221-5256 | |
| Facsimile: (559) 221-5262 | |
| Jim@walaw-fresno.com | |
| Brande@walaw-fresno.com | |

Attorneys for Defendant, Deputy Jason Ayala

# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICKEL ERICK LEWIS JR., individually and as successor-in-interest to MICKEL E. LEWIS, SR., ORIONA LEWIS; and BRIONA LEWIS, individually and as successor-in-interest,<br><br>                Plaintiff,<br><br>    vs.<br><br>KERN COUNTY, Deputy JASON AYALA, and DOES 1-20, inclusive,<br><br>                Defendant. | Case No. 1:21-CV-00378-KES-CDB<br>*Consolidated with Case No.*<br>*1:21−CV−01352−DAD−JLT*<br><br>**DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW**<br><br>Judge: Hon. District Judge Kirk E. Sherriff |
| R.L., M.L., and H.L., minors, by and through guardian *ad litem* Roberta Haro, individually and as successors in interest to Michel Lewis Sr., deceased; A.W., a minor, by and through her guardian *ad litem* Alisha White, individually and as a successor in interest to Michel Lewis Sr., deceased; ALISHA WHITE, individually and as a successor in interest to Mickel Lewis Sr.,<br><br>                Plaintiffs,<br>    vs.<br><br>COUNTY OF KERN; JASON AYALA; and DOES 1-10, inclusive,<br>                Defendants. | |

///

1
Defendants' Motion for Judgement as a Matter of Law

Defendants County of Kern ("County")—erroneously sued as Kern County—and Deputy Jason Ayala ("Deputy Ayala") hereby move this Court for judgement in their favor pursuant to Rule 50 of the Federal Rules of Civil Procedure.

## I.

## AUTHORITY FOR MOTION

Rule 50(a)(1) of the Federal Rules of Civil Procedure provides that,

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>   (A) resolve the issue against the party; and
>   (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Here, plaintiff has been fully heard on all issues and failed to provide the jury with a legally sufficient evidentiary basis to find in their favor and the Court should resolve all issues against them.

## II.

## PLAINTIFFS' FEDERAL CLAIMS AGAINST DEPUTY AYALA

**A. Plaintiffs Have Presented Insufficient Evidence to Support a Fourth Amendment Claim for Excessive Force Against Deputy Ayala**

Under the Fourth Amendment, a police officer may use such force that is objectively reasonable under the totality of the circumstances. *Graham v. Connor*, 490 U.S. 386, 397 (1989). An unreasonable seizure occurs when a law enforcement officer uses excessive force in making a lawful arrest. Factors to consider in determining whether an officer used excessive force are the severity of the crime at issue, whether the plaintiff posed a reasonable threat to the safety of the officer or others, and whether the plaintiff was actively resisting detention or attempting to escape. *Blanford v. Sacramento County*, 406 F.3d 1110, 1115 (9th Cir. 2005). An officer need not avail himself of the least intrusive means of responding to a situation; he need only act within a range of conduct that is reasonable. *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994).

/ / /

1    In analyzing a Fourth Amendment excessive force claim, the facts underlying an excessive force claim are considered from the perspective of a reasonable officer on the scene, without regard to the arresting officer's subjective motivation for using force. *See Baker v. County of San Diego*, No. 09-CV-1194 BEN (WMc), 2012 WL 1903899, *2 (S.D. Cal. May 24, 2012); *Tatum v. City and County of San Francisco*, 441 F.3d 1090, 1095 (9th Cir. 2006). "The reasonableness inquiry is objective, evaluating 'whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Huff v. City of Burbank*, 632 F.3d 539, 549 (9th Cir. 2011). The reasonableness of the use of force is not judged "from the perspective of the person seized or of a court reviewing the situation with 20/20 hindsight." *Bryan v. MacPherson*, 630 F.3d 805, 817 (9th Cir. 2010).

Additionally, an officer need not avail himself of the least intrusive means of responding to a situation; he need only act within a range of conduct that is reasonable. *Forrester v. City of San Diego*, 25 F.3d 804, 807 (9th Cir.1994) (police officers "are not required to use the least intrusive degree of force possible" as long as the force actually used was reasonable); *see Luchtel v. Hagemann*, 623 F.3d 975, 982 (9th Cir.2010); *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994). In other words, Deputy Ayala was not limited to less than lethal force (TASER, pepper spray, etc.) when he reasonably believed Lewis was himself reaching for and charging at him with a lethal weapon such as a firearm. "To be sure, the Fourth Amendment does not necessarily 'require[ ] officers to delay their fire until a suspect turns his weapon on them,' and '[i]f the person is armed—or reasonably suspected of being armed—a furtive movement, harrowing gesture, or serious verbal threat might create an immediate threat.' " *Peck v. Montoya*, 51 F.4th 877, 888 (9th Cir. 2022), *citing George*, 736 F.3d at 838.

Furthermore, "[w]hile California state law does factor pre-shooting conduct into whether an officer acts 'reasonably when using deadly force,' [cite] '[t]he Fourth Amendment is narrower and places less emphasis on pre[-]shooting conduct." *Hart v. City of Redwood City*, 99 F.4th 543, 554 (9th Cir. 2024). "[O]ne cannot 'establish a Fourth Amendment violation based merely on bad tactics that result in a deadly confrontation that could have been avoided.'" *Id*.

1  **B.    Plaintiffs Have Presented Insufficient Evidence to Support a Fourteenth Amendment Claim for Interference with Familial Relationship Against Deputy Ayala**

The substantive component of the Fourteenth Amendment's due process clause "forbids the government from depriving a person of life, liberty, or property in such a way that 'shocks the conscience' or 'interferes with rights implicit in the concept of ordered liberty.' " *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998), *quoting United States v. Salerno*, 481 U.S. 739 (1987). It also provides parents and children a liberty interest in each other's "companionship and society." *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010). "Only official conduct that 'shocks the conscience' is cognizable as a due process violation. *Sinclair v. City of Seattle*, 61 F.4th 674, 680 (9th Cir. 2023), *quoting Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008). This is a "more demanding standard than the 'reasonableness' test that governs excessive-force claims under the Fourth Amendment. *Peck v. Montoya*, 51 F.4th 877, 893 (9th Cir. 2022).

Liability turns on whether under the circumstance before Deputy Ayala "actual deliberation" was practical. *Moreland v. Las Vegas Meto. Police Dep't*, 159 F.3d 365, 372, (9th Cir. 1998). A deliberate-indifference standard is applied "when officials had 'ample time to correct their obviously [wrongful conduct],' such as in Eighth Amendment prisoner-treatment cases or in wrongful-detention cases." *Peck v. Montoya,* 51 F.4th 877, 893 (9th Cir. 2022), *citing Porter v. Osborn*, 546 F.3d 1131, 1139 (9th Cir. 2008). "On the other hand, if the defendants had to make a 'snap judgment because of an escalating situation,' then their conduct does not shock the conscience unless they 'act[ed] with a *purpose to harm* unrelated to legitimate law enforcement objectives.' " *Peck*, 51 F.4th at 893, *quoting Hayes v. Cnty. of San Diego*, 736 F.3d 1223, 123 (9th Cir. 2013) (emphasis added). The purpose-to-harm standard also applies "when officials were required to make 'repeated split-second decisions' about how best to respond to a risk, such as during a high-speed car chase or when confronting a threatening, armed suspect." *Peck*, 51 F.4th at 893. It can apply even where "the officer may have helped to create an emergency situation by his own excessive actions." *Peck*, 51 F.4th at 894.

During the last 30 seconds of Deputy Ayala's encounter with Lewis, there was constant escalation through the multiple shifts and changes in the dynamic between Lewis and Deputy Ayala as was seen in Defense Exhibit E a surveillance video from Wienerschnitzel. It started with Lewis first lunging at Deputy Ayala with fists clenched, then turned to a foot pursuit with Lewis running around Deputy Ayala's patrol vehicle and to the back of big rig loaded with hay and Deputy Ayala removing the keys from Lewis' SUV, only for Lewis to run back to the SUV, get inside and appear to Deputy Ayala that Lewis was searching under his seat for something before getting out of the SUV, turning toward and finally charging at Deputy Ayala. During this short period of time Deputy Ayala was forced to make repeated split-second decisions of how to respond to Lewis' conduct, especially within those last couple seconds when Lewis got into the SUV appeared to rummage under his seat, then got out and charged at him.

"A government actor has a purpose to harm when his intent is 'to inflict force beyond that which is require by a legitimate law enforcement objective.' " *Calonge v. City of San Jose*, No. 22-16495, 2024 WL 2874226, at *2 (9th Cir. June 7, 2024) (citation omitted). "Legitimate law enforcement objectives include 'arrest, self-defense, or the defense of others.' The inquiry is subjective: The officer's intent must be to inflict unjustified force." *Calonge v. City of San Jose*, No. 22-16495, 2024 WL 2874226, at *2 (9th Cir. June 7, 2024) (citations omitted). Deputy Ayala was clearly defending himself within those last couple of seconds with Lewis. Plaintiffs have failed to present any evidence that Deputy Ayala had sufficient time to deliberate that the deliberate indifference standard should apply or that Deputy Ayala had an intent to inflict force beyond that required to protect himself.

**C.    Qualified Immunity Protects Deputy Ayala from Liability on Plaintiffs' Federal Claims**

As to Plaintiffs' Federal claims, qualified immunity protects Section 1983 defendants "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The threshold questions which any court must consider in

ruling upon the defense of qualified immunity are: (1) has the plaintiff alleged or shown a violation of a constitutional right, and (2) is the right at issue "clearly established" at the time of the defendant's alleged misconduct? *Pearson v. Callahan*, 555 U.S. 223, 241 (2009); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001).

The first question of whether there were violations of constitutional rights is discussed above. Only if the court finds distinct constitutional rights were violated does the court then have to determine whether those rights were clearly established at the time of the defendant's alleged misconduct. "In determining whether a right was 'clearly established,' the court considers whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Garcia v. County of Merced*, 639 F.3d 1206, 1208 (9th Cir. 2011). The Court must answer this question in light of the clearly established law and the information possessed by the officer. *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1442-43 (9th Cir. 1991); *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity gives [police officers] breathing room to make reasonable but mistaken judgements," and "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). Qualified immunity may apply regardless of whether the officer makes a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

"[A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014). "In other words, 'existing precedent must have placed the statutory or constitutional question' confronted by the official 'beyond debate.'" *Id*. Existing precedent is determined by looking to the state of the law at the time of the subject incident to determine whether the officer had fair notice that his/her conduct was unlawful. *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).

<u>Fourth Amendment (Unlawful Arrest/Excessive Force)</u>

The "general excessive force standard cannot always, alone, provide fair notice to every reasonable law enforcement officer that his or her conduct is unconstitutional." *Mattos v.*

*Agarano*, 661 F.3d 433, 442 (9th Cir. 2011) (en banc). Here, the clearly established right is a citizen's right "to be free from excessive use of force under the facts and circumstances presented in this case." *Brown v. City of Golden Valley*, 574 F.3d 491, 499 (8th Cir. 2009). "Use of excessive force is an area of the law 'in which the result depends very much on the facts of each case,' and thus police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018).

The Court must answer this question in light of the clearly established law and the information possessed by each separate law enforcement officer. *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1442-43 (9th Cir. 1991); *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). The existing precedent must have placed the constitutional question beyond debate. *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2083 (2011). "[I]f officers of reasonable competence could disagree on the issue, immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Deference should be given to the judgment of reasonable officers on the scene, not "the person seized or . . . a court reviewing the situation with 20/20 hindsight." *Vilar v. County of Yolo*, No. 2:12-CV-01472-KJN, 2013 WL 6422936, at *8 (E.D. Cal. Dec. 9, 2013). In other words, "[q]ualified immunity gives [police officers] breathing room to make reasonable but mistaken judgements," and "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft*, 131 S.Ct. at 2085.

If the Court determines that the law was clearly established, it must then determine whether, based on the circumstances of the case, any law enforcement officer made a reasonable mistake regarding what the law required given the circumstance he confronted. *Saucier*, 121 S.Ct. at 205; *Brosseau*, 543 U.S. at 198; *see also Blankenhorn v. City of Orange*, 485 F.3d 463, 471 (9th Cir. 2007). "Therefore, regardless of whether the constitutional violation occurred, [the deputies] should prevail if . . . [they] could have reasonably believed that [their] particular conduct was lawful." *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991). "[T]he test is not whether [the deputies] attempted all other available methods of responding to a situation, but whether [they] reasonably could believe [their] conduct was lawful under the circumstances

1  confronting [them]." *Neal-Lomax v. Las Vegas Metropolitan Police Dept.*, 574 F.Supp.2d 1170, 1188 (D. Nev. 2008). If a law enforcement officer could reasonably have believed that his actions were legal in light of clearly established law and the information he possessed at the time, then his conduct falls within the protective sanctuary of qualified immunity. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

The U.S. Supreme Court clarified the defense in November 2015. In *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015) it was held that qualified immunity should apply unless "the violative nature of *particular* conduct is clearly established," noting that "[s]uch specificity is especially important in the Fourth Amendment context." (*quoting Reichle v. Howards,* 566 U.S. 658, 132 S.Ct. 2088, 2093) (emphasis in original).)

The case that closest resembles this case is *Cruz v. City of Anaheim*, where a confidential informant told the police that Cruz was a gang member who sold methamphetamine, carried a gun, had a past felony conviction, and said that "he was not going back to prison." 765 F.3d 1076, 1077–78 (9th Cir. 2014). Multiple police officers pulled Cruz over for a broken taillight. *Id.* at 1078. The officers surrounded him, and Cruz tried to escape by backing his SUV into a marked patrol car. *Id*. The officers exited their vehicles with their guns lowered and ordered Cruz to get on the ground. *Id.* According to the officers, Cruz exited his car, ignored their commands, and reached for the waistband of his pants, prompting all five officers to open fire. *Id*. But some facts in the record undermined that account. A bystander on the other side of Cruz's vehicle witnessed the shooting but was unable to see if Cruz in fact reached toward his waistband because Cruz's car blocked his view. *Id*. The officers fired twenty shots in about two to three seconds, killing Cruz. *Id*. His body was found "tangled in his seat belt and hanging from it." *Id.* The officers did not find a weapon on him but recovered a loaded gun from the passenger seat. *Id.*

The court in *Cruz* found that "It would be unquestionably reasonable for police to shoot a suspect in Cruz's position if he reaches for a gun in his waistband, or even if he reaches there for some other reason. Given Cruz's dangerous and erratic behavior up to that point, the police would doubtless be justified in responding to such a threatening gesture by opening fire.

Conversely, if the suspect doesn't reach for his waistband or make some similar threatening gesture, it would clearly be unreasonable for the officers to shoot him after he stopped his vehicle and opened the door. At that point, the suspect no longer poses an immediate threat to the police or the public, so deadly force is not justified." *Cruz*, 765 F.3d at 1078-79.

Considering the information available to Deputy Ayala at the time, that Lewis had a firearm in his SUV and appearing to search for something under his seat and moments before charging at Deputy Ayala, makes it reasonable for Deputy Ayala to respond in self-defense. It was definitely reasonable that in those couple of seconds that Deputy Ayala had to determine whether Lewis had a weapon in his hand as Lewis was charging at him, that he might make a mistake as to the fact of whether or not Lewis had a gun in his hand. Consequently, qualified immunity is an appropriate basis for judgment as a matter of law in favor of Deputy Ayala.

<u>Fourteenth Amendment (Interference with Familial Relationship)</u>

Cases that would inform an analysis of whether a right was clearly established under the Fourth Amendment "do not clearly establish the contours of the Fourteenth Amendment substantive due process rights at hand," despite the similarities between the standards for the Fourth Amendment and Fourteenth Amendments in excessive force cases. *Nicholson v. City of Los Angeles*, 935 F.3d 685, 696 & n. 5 (9th Cir. 2019). Here, that would require case law clearly establishing that a shooting in these circumstances constitutes a purpose to harm unrelated to a legitimate law enforcement objective to Plaintiffs. *Nicholson v. City of Los Angeles*, 935 F.3d 685, 695-696 (9th Cir. 2019). "Because no binding circuit or Supreme Court precedent has established a substantive due process violation under comparable circumstances, the Fourteenth Amendment right at issue lacked 'contours . . . sufficiently definite' to place the issue 'beyond debate.' " *Id.,* at 696.

/ / /

/ / /

/ / /

/ / /

## III.

## PLAINTIFFS' STATE LAW CLAIMS AGAINST DEPUTY AYALA & COUNTY

### A. Plaintiffs Have Presented Insufficient Evidence to Support a State Law Claim for Battery Against Deputy Ayala

Plaintiffs' battery claim is governed by California state law. In a battery action against a peace officer the plaintiff "must prove unreasonable force as an element of the tort." *Edson v. City of Anaheim*, 63 Cal.App.4th 1269, 1272 (1998). "A police officer in California may use reasonable force to make an arrest, prevent escape or overcome resistance and need not desist in the face of resistance." *Id*. at 1273; California Penal Code § 835(a).

> [Peace officers] act under color of law to protect the public interest. They are charged with acting affirmatively and using force as part of their duties, because "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."

*Edson*, 63 Cal.App.4th at 1273; *Robinson v. Adams*, No. 1:08-CV-01380-AWI-BA, 2015 WL 3706388, at *2-*3 (E.D. Cal. June 12, 2015) (Court denied plaintiff's request to remand battery claim after jury found no excessive force, concluding that the defendants were entitled to judgment on the corresponding civil battery claims).

Furthermore, "A peace officer who makes or attempts to make an arrest need not retreat or desist from his efforts by reason of the resistance or threatened resistance of the person being arrested; nor shall such officer be deemed an aggressor or lose his right to self-defense by the use of reasonable force to effect the arrest or to prevent escape or to overcome resistance." California Penal Code § 835a.

### B. Plaintiffs Have Presented Insufficient Evidence to Support a State Law Claim for Negligence Against Deputy Ayala or County

"[I]n order to prove facts sufficient to support a finding of negligence, a plaintiff must show that [the] defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury." *Hayes v. County of San Diego*,

57 Cal.4th 622, 629 (2013). However, the California Supreme Court has recognized that "[a]s long as an officer's conduct falls within the range of conduct that is reasonable under the circumstances, there is no requirement that he or she choose the 'most reasonable' action or the conduct that is the least likely to cause harm and at the same time the most likely to result in the successful apprehension of a violent suspect, in order to avoid liability for negligence." *Brown v. Ransweiler*, 171 Cal.App.4th 516, 537-538 (2009); *Hayes*, 57 Cal.4th at 632. Often this means preshooting conduct becomes part of the analysis where "the applicable question in a state law negligence claim for an officer-involved shooting is not whether the preshooting conduct is itself negligent; it is whether the preshooting conduct renders the shooting *itself* negligent." *A.G.1 v. City of Fresno*, No. 1:16-CV-1914-JLT-SAB, 2023 WL 3168510, at *3 (E.D. Cal. Apr. 28, 2023). The evidence presented by Plaintiffs does not establish preshooting conduct that would make the shooting by Deputy Ayala itself negligent.

Otherwise, Plaintiffs' pleadings indicated that their state law negligence claim was against County for negligent failure to train/supervise, failure to ensure an adequate number of well-trained employees, and negligent handling of evidence and witnesses. The Final Pretrial Order, however, does not appear to include these negligence claims, meaning they have been waived. "Claims, issues, defenses, or theories of damages not included in the pretrial order are waived even if they appeared in the complaint . . . ." *Duhn Oil Tool, Inc. v. Cooper Cameron Corp.*, 818 F. Supp. 2d 1193, 1207 (E.D. Cal. 2011), *on reconsideration in part*, 2012 WL 13040409 (E.D. Cal. May 7, 2012) (*citing Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 475 (2007)); see also Fed. R. Civ. P. 16(e).

For there to be direct liability against County on Plaintiffs' negligence claim, as opposed to vicarious liability, additional elements are required, namely a statute declaring liability for a public entity, otherwise there can be no liability. Government Code §§ 815, 820; *Williams v. Horvath,* 16 Cal.3d 834, 838 (1976); *Colome v. State Athletic Commission of California*, 47 Cal.App.4th 1444, 1454 (1996); *Zuniga v. Housing Authority of the City of Los Angeles*, 41 Cal.App.4th 82, 96 (1995).

County is a public entity under Government Code, §811.2 and Evidence Code §200. In California sovereign immunity is the rule, with public entity liability limited to exceptions specifically set forth by statute. A public entity is not liable for an injury, "(e)xcept as otherwise provided by statute." Gov. Code § 815(a). As such, the liability of a public entity must be based on a specific statute declaring it to be liable, or at least creating some specific duty of care. *Eastburn v. Regional Fire Protection Authority,* 31 Cal.4th 1175, 1183 (2003). The courts have concluded that a common law negligence cause of action against public entities cannot be maintained against a public entity because no statute provides for direct liability. *Munoz v. City of Union City,* 120 Cal.App.4th 1077, 1112-1115 (2004). Because this element is nowhere to be found in the final pretrial conference order, Plaintiffs have waived any claim for direct negligent liability against County and thus are limited to vicarious liability. *See generally,* Softketeers, Inc. v. Regal W. Corp., No. 819CV00519JWHJDEX, 2022 WL 17968835, at *8 (C.D. Cal. Dec. 22, 2022). However, Plaintiffs have presented no evidence supporting any such direct claims against County, nor have they presented sufficient evidence to support negligence claim against Deputy Ayala.

**C.   Plaintiffs Have Presented Insufficient Evidence to Support a State Law Claim for a Violation of Civil Code § 52.1 (Bane Act) Against Deputy Ayala**

The Bane Act "provides that a person may bring a cause of action 'in his or her own name and on his or her own behalf' against anyone who 'interferes by threats, intimidation or coercion,' with the exercise or enjoyment of any constitutional or statutory right." *Bay Area Rapid Transit Dist. v. Superior Court* (1995) 38 Cal.App.4th 141, 144, *quoting* Cal. Civ.Code § 52.1. Bane Act claims are routinely alleged in Section 1983 claims and the question as to the Bane Act's requirement that interference with rights must be accomplished by threats, intimidation or coercion "has been the source of much debate and confusion" and endeavored to provide clarity. *Cornell v. City & Cnty of San Francisco*, 17 Cal.App.5th 766, 801 (2017).

The *Cornell* court agreed "that the use of excessive force can be enough to satisfy the 'threat, intimidation or coercion' element of Section 52.1." *Id*. at 799. *Cornell* also makes clear,

1  however, that the Bane Act imposes an additional requirement beyond a finding of a constitutional
2  violation: "[p]roperly read, the statutory phrase threat, intimidation or coercion' serves as an
3  aggravator justifying the conclusion that the underlying violation of rights is sufficiently
4  egregious to warrant enhanced statutory remedies, beyond tort relief." *Id*. at 800. Accordingly,
5  *Cornell* held that "the egregiousness required by Section 52.1 is tested by whether the
6  circumstances indicate the arresting officer had a specific intent to violate the arrestee's right to
7  freedom from unreasonable seizure." *Id*. at 801. In so holding, Cornell adopted the specific intent
8  standard established in *Screws v. United States*, 325 U.S. 91 (1945), for assessing criminal
9  violations of federal civil rights. *Id*. at 801-803.

10  In applying these principles, the Ninth Circuit concluded in *Reese v. Cty of Sacramento*,
11  888 F.3d 1030 (9th Cir. 2018) that "a mere intention to use force that the jury ultimately finds
12  unreasonable—that is, general criminal intent—is insufficient." *United States v. Reese*, 2 F.3d
13  870, 885 (9th Cir. 1993). Rather, the jury must find that the defendants "intended not only the
14  force, but its *unreasonableness,* its character as 'more than necessary under the circumstances.' "
15  *Id.* (emphasis added). But it is not necessary for the defendants to have been 'thinking in
16  constitutional or legal terms at the time of the incidents, because a reckless disregard for a person's
17  constitutional rights is evidence of a specific intent to deprive that person of those rights.' *Id.*;
18  *Reese*, 888 F.3d at 1045. Plaintiff must also show "the defendant's specific intent to violate the
19  plaintiff's constitutional rights." *Luna v. Cnty. of Riverside*, No. EDCV210467JGBSPX, 2023 WL
20  7803386, at *14 (C.D. Cal. Oct. 20, 2023), *quoting Rodriguez v. County of L.A.*, 891 F.3d 776,
21  802 (9th Cir. 2018).

22  Plaintiffs have presented no evidence that Deputy Ayala acted with the specific intent to
23  violate Lewis' constitutional right to be free from excessive force, making judgment as a matter
24  of law appropriate for this claim.

25  **D.     Various State Law Defenses and Immunities Protect Deputy Ayala From Liability**

26  One defense available to Deputy Ayala is self-defense. A "defendant is not liable if that
27  defendant reasonably believed, in view of all the circumstances of the case, that the plaintiff was
28

going to harm him or her and the defendant used only the amount of force reasonably necessary to protect himself or herself." *J.J. v. M.F.*, 223 Cal.App.4th 968, 976 (2014). "The right to use force against another has long been limited by the condition that the force be no more than ' "that which reasonably appears necessary, in view of all the circumstances of the case, to prevent the impending injury." ' When the amount of force used is justifiable under the circumstances, it is not willful and the actor may escape liability for intentionally injurious conduct that is otherwise actionable. But if force is applied in excess of that which is justified, the actor remains subject to liability for the damages resulting from the excessive use of force. . . . When an alleged act of self-defense or defense of property is at issue, the question of what force was reasonable and justified is peculiarly one for determination by the trier of fact." *Calvillo-Silva v. Home Grocery*, 19 Cal.4th 714, 730–731 (1998), *overruled in part on other grounds*. "The right of self-defense is not limited by actualities. The correct rule … [is]: 'Generally . . . , the force that one may use in self-defense is that which reasonably appears necessary, in view of all the circumstances of the case, to prevent the impending injury.' In emphasizing that the law of self-defense is a law of necessity courts should never lose sight of the fact that the necessity may be either real or apparent." *Vaughn v. Jonas*, 31 Cal.2d 586, 599–600 (1948), internal citations omitted.

During the last 30 seconds of Deputy Ayala's encounter with Lewis, there was constant escalation through the multiple shifts and changes in the dynamic between Lewis and Deputy Ayala as was seen in Defense Exhibit E a surveillance video from Wienerschnitzel. It started with Lewis first lunging at Deputy Ayala with fists clenched, then turned to a foot pursuit with Lewis running around Deputy Ayala's patrol vehicle and to the back of big rig loaded with hay and Deputy Ayala removing the keys from Lewis' SUV, only for Lewis to run back to the SUV, get inside and appear to Deputy Ayala that Lewis was searching under his seat for something before getting out of the SUV, turning toward Deputy Ayala and charging at Deputy Ayala. It reasonably appeared necessary for Deputy Ayala to defend himself within those last couple of seconds with Lewis based on all the evidence that has been presented.

///

Other defenses and immunities applicable to Deputy Ayala include Penal Code sections 196 ("Homicide is justifiable when committed by peace officers and those acting by their command in their aid and assistance, under either of the following circumstances: (b) When the homicide results from a peace officer's use of force that is in compliance with Section 835a."), 835a ("(b) Any peace officer who has reasonable cause to believe that the person to be arrested has committed a public offense may use objectively reasonable force to effect the arrest, to prevent escape, or to overcome resistance. (c)(1) Notwithstanding subdivision (b), a peace officer is justified in using deadly force upon another person only when the officer reasonably believes, based on the totality of the circumstances, that such force is necessary for either of the following reasons: (A) To defend against an imminent threat of death or serious bodily injury to the officer or to another person. . . . (d) A peace officer who makes or attempts to make an arrest need not retreat or desist from their efforts by reason of the resistance or threatened resistance of the person being arrested. A peace officer shall not be deemed an aggressor or lose the right to self-defense by the use of objectively reasonable force in compliance with subdivisions (b) and (c) to effect the arrest or to prevent escape or to overcome resistance. For the purposes of this subdivision, "retreat" does not mean tactical repositioning or other deescalation tactics.")

As with self-defense, Deputy Ayala is entitled to the protection of Penal Code section 196 and 835a for his use of deadly force because the evidence shows that Deputy Ayala reasonably believed based on the totality of the circumstances before him (information that Lewis was in possession of a firearm, Lewis' behavior of yelling "fuck you" in response to being told his car would be searched, lunging at and then running from Deputy Ayala, and then getting back into his SUV appearing to rummage under the seat, only to get out the SUV and then charge at Deputy Ayala) that deadly force was necessary to defend himself from an imminent threat of death by what he believed was an armed subject.

## IV.

## **CONCLUSION**

Since Plaintiffs have produced insufficient evidence for a reasonable jury to find that a

constitutional violation occurred or to support Plaintiffs' state law claims, judgment as a matter of law, in favor of Deputy Ayala and County is appropriate.

If the Court finds that there has been sufficient evidence for a reasonable jury to find a constitutional violation, there has been no evidence that a reasonable officer, confronted with similar circumstances to those before Deputy Ayala, would have believed his actions were unlawful. As such, qualified immunity as to Deputy Ayala is applicable and he requests this Court enter judgment in his favor.

Dated: March 13, 2025

WEAKLEY & ARENDT
A Professional Corporation

By: */s/ Brande L. Gustafson*
James D. Weakley
Brande L. Gustafson
Attorneys for Defendant,
Deputy Jason Ayala

MARGO A. RAISON, COUNTY COUNSEL

By: */s/ Andrew C. Hamilton*
Marshall S. Fontes, Chief Deputy
Andrew C. Hamilton, Deputy
Kimberly L. Marshall, Deputy
Attorneys for Defendant County of Kern,
("erroneously sued as Kern County")