LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Renee V. Masongsong, Esq. (SBN 281819)
rvalentine@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Telephone: (818) 347-3333
Facsimile: (818) 347-4118

Attorneys for Plaintiffs
R.L., M.L., H.L., and A.W.

TONI JARAMILLA, A Professional Law Corp.
Toni J. Jaramilla, Esq. (SBN 174625)
Toni@tjjlaw.com
1900 Avenue of the Stars, Suite 900
Los Angeles, California 90067
T: (310) 551-3020 | F: (310) 551-3019

ALEXANDER MORRISON + FEHR LLP
J. Bernard Alexander, III (State Bar No. 128307)
balexander@amfllp.com
Britt L. Karp (State Bar No. 278623)
bkarp@amfllp.com
1900 Avenue of the Stars, Suite 900
Los Angeles, California 90067
T: (310) 394-0888 | F: (310) 394-0811

Attorneys for Plaintiffs
MICKEL ERICK LEWIS JR, ORIONA LEWIS and BRIONA LEWIS

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICKEL ERICK LEWIS JR, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> COUNTY OF KERN and JASON AYALA, <br><br> Defendants. | Case No: 1:21−CV−00378−KES−CDB <br><br> Assigned to: <br> Hon. District Judge Kirk E. Sherriff <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW (RULE 50a)** |
| R.L., et al., <br><br> Plaintiffs, <br><br> vs. <br><br> COUNTY OF KERN and JASON AYALA, <br><br> Defendants. | |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES..................................................................................iii

MEMORANDUM OF POINTS AND AUTHORITIES....................................1

I.      INTRODUCTION...............................................................................1

II.     LEGAL STANDARD .........................................................................2

III.    ARGUMENT .....................................................................................3

     A.     The Shooting was Excessive under the Fourth Amendment.................3

     B.     Deputy Ayala is Liable on Plaintiffs' Fourteenth Amendment
           Claim ...............................................................................................6

     C.     Deputy Ayala is Not Entitled to Qualified Immunity...........................7

           1.     Disputed Issues of Fact Preclude Granting Qualified
                 Immunity..........................................................................7

           2.     Decedent's Constitutional Right to be Free from Excessive
                 Force Under Plaintiffs' Facts was Clearly Established ...............8

           3.     Deputy Ayala's Failure to Warn Weighs Against Granting
                 Qualified Immunity ..........................................................11

           4.     A Case with Identical Facts is Not Required for this Court
                 to Deny Qualified Immunity..............................................12

           5.     Deputy Ayala's Police Training Weighs Against Granting
                 Qualified Immunity ..........................................................13

     D.     Defendants Ayala and the County of Kern Are Liable on
           Plaintiffs' State Law Claims ............................................................13

     E.     No State Law Defenses or Immunities Protect Defendants from
           Liability ..........................................................................................15

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*A.K.H. v. City of Tustin,*
    837 F.3d 1005 (9th Cir. 2016)................................................................12

*Adams v. Speers,*
    473 F.3d 989 (9th Cir. 2007) ...............................................................11

*Anderson v. Creighton,*
    483 U.S. 635 (1987) .............................................................................16

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) ...............................................................................3

*Ashcroft v. al-Kidd,*
    563 U.S. 731 (2011) .............................................................................14

*Blankenhorn v. City of Orange,*
    485 F.3d 463 (9th Cir. 2007)................................................................20

*Bowles v. City of San Jose,*
    Case No. 19-cv-01027-NC ....................................................................15

*Brosseau v. Haugen,*
    543 U.S. 194 (2004) ........................................................................11, 16

*Bryan v. McPherson,*
    630 F.3d 805 (9th Cir. 2010)..............................................................4, 6

*Clark v. Wilson,*
    625 F.3d 686 (10th Cir. 2010).............................................................17

*Collender v. City of Brea,*
    605 F. App'x 624 (9th Cir. 2015).........................................................13

*Cornell v. City and County of San Francisco,*
    17 Cal. App. 5th 766 (2017).................................................................19

*County of Sacramento v. Lewis,*
    523 U.S. 833 (1998) ...............................................................................8

*Cruz v. City of Anaheim,*
    765 F.3d 1076 (9th Cir. 2014) .............................................................13

*Curnow v. Ridgecrest Police,*
    952 F.2d 321 (9th Cir. 1991) ...............................................................13

*Deorle v. Rutherford,*
    272 F.3d 1272 (9th Cir. 2001)...................................................6, 15, 16

*Drummond v. City of Anaheim,*
    343 F.3d 1052 (2003) .......................................................................2, 17

*Edson v. City of Anaheim,*
    63 Cal. App. 4th 1269 (1998)..............................................................18

*Espinosa v. City & Cnty. of San Francisco,*
    598 F.3d 528 (9th Cir. 2010)..........................................................4, 5, 9

*Estate of Lopez by & through Lopez v. Gelhaus,*
    871 F.3d 998 (9th Cir. 2017)................................................................12

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW

*Estate of Lopez v. Gelhaus*,
    149 F. Supp. 3d 1154 (N.D. Cal. 2016) .........................................12

*Estate of Najera Aguirre v. Cnty. of Riverside*,
    29 F.4th 624 (9th Cir. 2022)..........................................................11

*Forrett v. Richardson*,
    112 F.3d 416 (9th Cir. 1997) .........................................................15

*Gantt v. City of Los Angeles*,
    717 F.3d 702 (9th Cir. 2013).............................................................8

*Garcia v. City of Merced*,
    637 F. Supp.2d 731 (E.D. Cal. 2008) ............................................20

*George v. Morris*,
    736 F.3d 829 (9th Cir. 2013) .........................................................13

*Glenn v. Washington Cnty.*,
    673 F.3d 864 (9th Cir. 2011)...................................................4, 13

*Gonzalez v. City of Anaheim*,
    747 F.3d 789 (9th Cir. 2014)....................................................6, 14

*Graham v. Connor*,
    490 U.S. 386 (1989)..............................................................4, 5, 18

*Gravelet-Blondin v. Shelton*,
    728 F.3d 1086 (9th Cir. 2013) ......................................................16

*Harris v. Roderick*,
    126 F.3d 1189 (9th Cir. 1997)..................................................passim

*Hayes v. County of San Diego*,
    736 F.3d 1223 (9th Cir. 2013)....................................................8, 18

*Headwaters v. County of Humboldt*,
    240 F.3d 1185 (9th Cir. 2000).........................................................6

*Hope v. Pelzer*,
    536 U.S. 730 (2002) ......................................................................16

*Jacquez v. City of San Jose*,
    Case No. 16-cv-05330-NC ............................................................15

*Johnson v. Jones*,
    515 U.S. 304 (1995) ........................................................................9

*Josephs v. Pac. Bell*,
    443 F.3d 1050 (9th Cir. 2006)..........................................................3

*K.H. Through Murphy v. Morgan*,
    914 F.2d 846 (7th Cir. 1990).........................................................11

*Knapps v. City of Oakland*,
    2009 WL 2390262 (N.D. Cal. 2009)..............................................20

*Knox v. Southwest Airlines*,
    124 F.3d 1103 (9th Cir. 1997).........................................................9

*Krechman v. Cty. of Riverside*,
    723 F.3d 1104 (9th Cir. 2013).........................................................3

*LaLonde v. Cnty. of Riverside,*
    204 F.3d 947 (9th Cir. 2000)..............................................................................3

*Longoria v. Pinal County,*
    873 F.3d 699 (9th Cir. 2017)............................................................................12

*Marks v. Clarke,*
    102 F.3d 1012 (9th Cir. 1996)...........................................................................9

*Mattos v. Agarano,*
    661 F.3d 433 (9th Cir. 2011)............................................................................16

*Munoz v. City of Union City,*
    120 Cal. App. 4th 1077 (2004)..........................................................................18

*Nelson v. City of Davis,*
    685 F.3d 867 (9th Cir. 2012)..............................................................................6

*Nicholson v. City of Los Angeles,*
    935 F.3d 685 (9th Cir. 2019)..............................................................................7

*Pierce v. Multnomah County,*
    76 F.3d 1032 (9th Cir. 1996)..............................................................................9

*Porter v. Osborn,*
    546 F.3d 1131 (9th Cir. 2008)........................................................................7, 8

*Price v. County of San Diego,*
    990 F. Supp. 1230 (S.D. Cal.1998)...................................................................21

*Reese v. County of Sacramento,*
    888 F.3d 1030 (9th Cir. 2018)..........................................................................19

*Reeves v. Sanderson Plumbing Prods., Inc.,*
    530 U.S. 133 (2000)...........................................................................................3

*Rivas-Villegas v. Cortesluna,*
    595 U.S. 1 (2021) ............................................................................................11

*Robinson v. Solano Cnty.,*
    278 F.3d 1007 (9th Cir. 2002)..........................................................................20

*S.T. v. City of Ceres,*
    327 F. Supp. 3d 1261 (E.D. Cal. 2018) ...........................................................13

*Santos v. Gates,*
    287 F.3d 846 (9th Cir. 2002)..............................................................................9

*Scott v. Harris,*
    550 U.S. 372 (2007) .....................................................................................6, 15

*Sharp v. County of Orange,*
    871 F.3d 901 (9th Cir. 2017)............................................................................20

*Smith v. City of Hemet,*
    394 F.3d 689 (2005) ...........................................................................................5

*Tatum v. City & County of San Francisco,*
    441 F.3d 1090 (9th Cir. 2006)............................................................................8

*Tennessee v. Garner,*
    471 U.S. 1 (1985) ...................................................................................5, 11, 14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Torres v. City of Madera*,
      648 F.3d 1119 (9th Cir. 2011) ........................................................ 5

*United States v. Lanier*,
      520 U.S. 259 (1997) ..................................................................... 11

*United States v. Reese*,
      2 F.3d 870 (9th Cir. 1993) ............................................................ 19

*Warren v. Marcus*,
      78 F. Supp. 3d 1228 (N.D. Cal. 2015) ......................................... 20

*Wilkinson v. Torres*,
      610 F.3d 546 (9th Cir. 2010) ......................................................... 7

*Wilson v. City of Des Moines*,
      160 F. Supp. 2d 1038 (S.D. Iowa 2001) ...................................... 12

## <u>Statutes</u>

California Government Code Section 815.2 ......................................... 19

California Government Code Section 845.8 ......................................... 21

## <u>Rules</u>

Federal Rules of Civil Procedure, Rule 50 .......................................... 3

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This civil rights and state tort action arises from the use of deadly force by Kern County Sheriff Department Deputy Jason Ayala against Mickel Lewis, Sr. ("Decedent") on October 2, 2020.  On March 14, 2025, Defendants moved for judgment as a matter of law under Federal Rules of Civil Procedure, Rule 50(a)(1).  This Court should deny Defendants' Motion for Judgment as a Matter of Law ("Motion") because the evidence presented, when viewed in the light most favorable to Plaintiffs, is sufficient to allow a reasonable jury to find in Plaintiffs' favor on their claims under federal and state law.  Viewing the facts in the light most favorable to Plaintiffs, Decedent's hands were visible when Deputy Ayala shot him five times, including two shots to Decedent's back, without any commands or warnings.  Deputy Ayala is not entitled to qualified immunity because, at the time of the incident, the law was clearly established that using deadly force against an unarmed person would violate that person's constitutional rights. Qualified immunity does not apply to Plaintiffs' state law claims, and the state law defenses and immunities cited by Defendants do not preclude Plaintiffs' state law claims.

The overwhelming evidence in this case is that Decedent's hands were visible at the time of the shooting.  At trial, Deputy Ayala gave three main reasons for shooting.  First, Deputy Ayala testified that Decedent made a "deep reach" with both hands under the seat, causing Deputy Ayala to believe that Decedent was reaching for a gun.  However, Jessica Salcedo testified that Decedent was not reaching under the seat, and no other witness—inside or outside of Decedent's car—saw Decedent reaching under the seat.  Rather, Ms. Salcedo testified that both of Decedent's hands were toward the ignition.  Likewise, the truck driver directly across the street never described the decedent making any such reaching motion.

Second, Deputy Alaya testified at trial that just before the Decedent exited the vehicle, he threatened Deputy Ayala's life by stating something to the effect of,

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW

"You're going to have to f---ing kill me" and "You're gonna die."  However, Ms. Salcedo testified that Decedent never made either of these statements, and defendant have called not witnesses to corroborate such a claim.  Certainly no occupants of the car testified at deposition that Decedent ever made these statements.

Third, Deputy Ayala testified at trial that he shot Decedent because Decedent approached Deputy Ayala with his right hand behind his back, at his waist.  However, Ms. Salcedo testified that both of Decedent's hands were by his side, and she could see both of his hands.  Additionally, during trial, the jury heard testimony read from portions of the deposition transcripts of Jeremy Terletter and Nicolas Montoya, both of whom testified that both of Decedent's hands were in outstretched in front of him, in the direction of Deputy Ayala.  Deputy Ayala admitted that if he could see both of Decedent's hands with nothing in them, it would be inappropriate to shoot Decedent, based on his police training.  No witness, other than Deputy Ayala, has ever testified that either of Decedent's hands were ever behind his back.  Deputy Ayala also admitted that Decedent never reached for his (Deputy Ayala's) gun.

For these reasons, the reasons set forth below, and for all other reasons anticipated to be raised during the oral argument in front of this Court on March 18, 2025, this Court should deny Defendants' Motion.

## II.    LEGAL STANDARD

Judgment as a matter of law should be granted sparingly.  *Drummond v. City of Anaheim*, 343 F.3d 1052, 1056 (2003).  When deciding whether to grant a Rule 50(a) motion, the "evidence must be viewed in the light most favorable to the nonmoving party." *LaLonde v. Cnty. of Riverside*, 204 F.3d 947, 959 (9th Cir. 2000); *Josephs v. Pac. Bell*, 443 F.3d 1050, 1062 (9th Cir. 2006).  "The court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *see also Krechman v. Cty. of Riverside*, 723

F.3d 1104, 1109-10 (9th Cir. 2013).  A motion for judgment as a matter of law may only be granted if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue," Fed. R. Civ. P. 50(a),—that is, "if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  Conversely, "[i]f reasonable minds could differ as to the import of the evidence, . . . a verdict should not be directed."  *Id.* at 250-51.

### III.    ARGUMENT

### A. The Shooting was Excessive under the Fourth Amendment

Plaintiffs have presented sufficient evidence to support a Fourth Amendment violation against Deputy Ayala.  This includes evidence, as set forth above, that Decedent's hands were visible, and Decedent was visibly unarmed, when Deputy Ayala shot Decedent five times, including two shots to the back, without giving Decedent any commands or a verbal warning that Deputy Ayala was prepared to use deadly force, when Decedent had made no verbal threats and never reached for Deputy Ayala's gun and never reached for a gun in his vehicle.

Fourth Amendment claims of excessive force are analyzed under an objective reasonableness standard."  *Espinosa v. City & Cnty. of San Francisco*, 598 F.3d 528, 537 (9th Cir. 2010).  When evaluating a claim of excessive force, the inquiry is whether the deputies' actions are "objectively reasonable" in light of the facts and circumstances confronting them.  *Glenn v. Washington Cnty.*, 673 F.3d 864, 871 (9th Cir. 2011) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)).  "This inquiry requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interest at stake."  *Id.*  (quoting *Graham*, 490 U.S. at 396).  The Court must "balance the amount of force applied against the need for that force."  *Bryan v. McPherson*, 630 F.3d 805, 823-24 (9th Cir. 2010) (cleaned up).  "Certain principles are clearly established . . . that implement the fundamental rules regarding the use of deadly

-3-

force." *Harris v. Roderick*, 126 F.3d 1189, 1201 (9th Cir. 1997). Because the shots fired by Deputy Ayala constitute the greatest possible amount of force, they require the highest justification. "The intrusiveness of a seizure by means of deadly force is unmatched. The suspect's fundamental interest in his own life need not be elaborated upon. The use of deadly force also frustrates the interest of the individual, and of society, in judicial determination of guilt and punishment." *Tennessee v. Garner*, 471 U.S. 1, 9 (1985). "Law enforcement deputies may not shoot to kill unless, at a minimum, the suspect presents an immediate threat to the officer or others or is fleeing and his escape will result in serious threat of injury to persons." *Harris*, 126 F.3d at 1201.

Governmental interests to balance against the type of force used include the following factors identified in *Graham*: "(1) the severity of the crime; (2) whether the suspect posed an immediate threat to the deputies' or public's safety; and (3) whether the suspect was resisting arrest or attempting to escape." *Espinosa*, 598 F.3d at 537. The inquiry is "highly fact-intensive" and involves "no *per se* rules." *Torres v. City of Madera*, 648 F.3d 1119, 1124 (9th Cir. 2011). Courts do "recognize that 'police officers are often forced to make split-second judgments . . .'" *Id.* at 1124 (quoting *Graham*, 490 U.S. at 397). "Not all errors in perception or judgment, however, are reasonable," and while courts "do not judge the reasonableness of an officer's actions 'with the 20/20 vision of hindsight,' nor does the Constitution forgive an officer's every mistake." *Id.* (quoting *Graham*, 490 U.S. at 396).

Other significant factors to consider are the availability of alternative methods to effectuate an arrest or overcome resistance and whether the officer gave a warning that deadly force would be used. *Smith v. City of Hemet*, 394 F.3d 689, 701 (2005) (en banc); *Gonzalez v. City of Anaheim*, 747 F.3d 789, 797 (9th Cir. 2014) (holding jury could find officer had failed to warn suspect, and while "[t]he absence of a warning does not necessarily mean that [the] use of deadly force was

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW

1 unreasonable [,] . . . . [a] rational jury may find . . . a warning was practicable and

2 the failure to give one might weigh against reasonableness") (citing *Scott v. Harris*,

3 550 U.S. 372, 383 (2007)); *Nelson v. City of Davis*, 685 F.3d 867, 882 (9th Cir.

4 2012); *Deorle v. Rutherford*, 272 F.3d 1272, 1283-84 (9th Cir. 2001); *Harris*, 126

5 F.3d at 1201 ("whenever practicable, a warning must be given before deadly force is

6 employed"); *Bryan,* 630 F.3d at 831; *Headwaters v. County of Humboldt*, 240 F.3d

7 1185, 1204 (9th Cir. 2000) ("[P]olice are 'required to consider what other tactics if

8 any were available to effect the arrest.'").  Here, it is undisputed that Deputy Ayala

9 did not give Decedent a verbal warning or any commands

10       Under the facts of this case, the most important *Graham* factor is whether

11 Decedent posed an immediate threat of death or serious bodily injury to any person

12 at the time of the shooting.  *Bryan*, 630 F.3d at 826.  A potential threat or fear of

13 future harm does not rise to the level of an immediate threat.  "A simple statement

14 by an officer that he fears for his safety or the safety of others is not enough; there

15 must be objective factors to justify such a concern." *Deorle*, 272 F.3d at 1281.  An

16 officer's "desire to resolve quickly a potentially dangerous situation" does not, on its

17 own, justify the use of deadly force.  *Id.*  As set forth above, Plaintiffs presented

18 sufficient evidence to the jury at trial to support a finding that Decedent posed no

19 immediate threat of death or serious bodily injury to any person at the time of the

20 shooting.  It is undisputed that Decedent was unarmed at the time of the shooting.

21 Plaintiffs presented evidence that Decedent's hands were visible at the time of the

22 shooting.  Relevant portions of the transcripts of the depositions of witnesses

23 Terletter and Montoya were read to the jury.  The jury heard testimony by Terletter

24 and Montoya that Decedent had both of his arms outstretched at the time of the

25 shooting, such that it would have been clear to Deputy Ayala that Decedent's hands

26 were visibly empty.  Plaintiffs presented testimony by witness Jessica Salcedo that

27 Decedent never reached under the seat of the vehicle for a gun and never threatened

28 to kill Deputy Ayala.  The medical examiner testified at trial that two of the

1  gunshots struck Decedent in the back, which indicates that Decedent was facing

2  away from Deputy Ayala at the time of at least two of the shots.  This evidence is

3  sufficient to deny Defendants' instant Motion and allow the jury to consider the

4  case.

5  **B. Deputy Ayala is Liable on Plaintiffs' Fourteenth Amendment Claim**

6      The Fourteenth Amendment is violated when official conduct "shocks the

7  conscience." *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010).  When officers

8  have time to deliberate, "then an officer's 'deliberate indifference' may suffice to

9  shock the conscience." *Id*. (citing *Porter v. Osborn*, 546 F.3d 1131, 1136-37 (9th

10  Cir. 2008)); *Nicholson v. City of Los Angeles*, 935 F.3d 685, 692 (9th Cir. 2019)

11  (holding that deliberation may be practical even without an extended timeline of

12  events).  "Deliberate indifference is the conscious or reckless disregard of the

13  consequences of one's acts or omissions." *Gantt v. City of Los Angeles*, 717 F.3d

14  702, 708 (9th Cir. 2013); *Tatum v. City & County of San Francisco*, 441 F.3d 1090,

15  1099 (9th Cir. 2006).  The Ninth Circuit has indicated that a standard higher than

16  "deliberate indifference" should apply only in situations "that escalate so quickly that

17  the officer must make a snap judgment." *Porter*, 546 F.3d at 1137-40.  In *Hayes v.

18  County of San Diego*, 736 F.3d 1223 (9th Cir. 2013), the Ninth Circuit held,

19  consistent with *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998), that the

20  "snap judgment" to use deadly force must be a reaction to an *unforeseen* escalation

21  by the subject.  736 F.3d at 1230.

22      Although Plaintiffs contend that the "deliberate indifference" standard applies

23  to this case, Deputy Ayala's shooting violated the Fourteenth Amendment no matter

24  which standard is applied.  Under either standard, it "shocks the conscience" to shoot

25  an unarmed person five times without giving a verbal warning that deadly force will

26  be used, where that person's hands are visible and empty, the person made no verbal

27  threats, the person never reached for a weapon, and the person was turned away from

28  the officer during at least two of the shots.

1    **C. Deputy Ayala is Not Entitled to Qualified Immunity**

2    The cases below clearly established Decedent's constitutional right to be free

3    from excessive force under Plaintiffs' version of the facts prior to this incident. This

4    Court should also deny Deputy Ayala's request for qualified immunity because

5    Defendants dispute Plaintiffs' version of the facts, and it is well settled that qualified

6    immunity cannot be granted where there are triable issues of fact. *See, e.g., Johnson*

7    *v. Jones*, 515 U.S. 304, 313 (1995). Additionally, this Court can consider Deputy

8    Ayala's training as one reason to deny him qualified immunity. Qualified immunity

9    does not apply to Plaintiffs' state law claims.

10    **1. Disputed Issues of Fact Preclude Granting Qualified Immunity**

11    The disputed issues of material fact in this case preclude granting qualified

12    immunity. *See, e.g.*, *Espinosa*, 598 F.3d at 532; *Santos v. Gates*, 287 F.3d 846, 855

13    n.12 (9th Cir. 2002) (declining to decide the qualified immunity issue "because

14    whether the officers may be said to have made a 'reasonable mistake' of fact or law

15    may depend on the jury's resolution of disputed facts and the inferences it draws

16    therefrom"); *Knox v. Southwest Airlines*, 124 F.3d 1103, 1109 (9th Cir. 1997);

17    *Marks v. Clarke*, 102 F.3d 1012, 1026 (9th Cir. 1996), as amended on denial of

18    reh'g (Feb. 26, 1997) (Defendants "are not entitled to summary judgment on the

19    basis of qualified immunity if a genuine dispute of material fact exists") (citing

20    *Pierce v. Multnomah County*, 76 F.3d 1032, 1038 (9th Cir. 1996)). On Plaintiffs'

21    facts, both of Decedent's hands were visible at the time of the shooting, Decedent

22    was visibly unarmed, Decedent never made any verbal threats, Decedent was not

23    reaching under the seat of his car, and Decedent was facing away from Deputy

24    Ayala at the time of at least two of Deputy Ayala's shots. Plaintiffs have presented

25    sufficient evidence to support these facts. Defendants dispute these facts, claiming:

26    that Decedent had his right hand behind his back (which is disputed by testimony by

27    witnesses Jeremy Terletter and Nicholas Montoya that Decedent had both of his

28    arms outstretched toward Deputy Ayala); that Decedent threatened to kill Deputy

Ayala (whereas no witness other than Deputy Ayala testified at deposition or trial that they heard any threats by Decedent); that Decedent reached under the passenger seat (which is contradicted by Ms. Salcedo's testimony that Decedent was reaching toward the ignition); and that Decedent was never facing away from Deputy Ayala (which is contradicted by the physical evidence at autopsy. Based on these disputed facts alone, this Court should deny Defendants' instant Motion and allow the jury to resolve these facts.

## 2. Decedent's Constitutional Right to be Free from Excessive Force Under Plaintiffs' Facts was Clearly Established

In determining which cases "clearly establish" Decedent's right to be free from excessive force in this case, this Court must accept Plaintiffs' facts as true. On Plaintiffs' facts, both of Decedent's hands were visible, he was visibly unarmed, he never reached under the seat for a weapon, he never threatened to harm anyone, and he was facing away from Deputy Ayala at the time of at least two of the shots. It is undisputed that Decedent was unarmed during this incident and undisputed that Deputy Ayala did not give Decedent a verbal warning that deadly force would be used prior to shooting.

Viewing the facts in the light most favorable to Plaintiffs, this case falls within the "obvious" as being a constitutional violation. *Estate of Najera Aguirre v. Cnty. of Riverside*, 29 F.4th 624, 629 (9th Cir. 2022) ("no 'body of relevant case law' is necessary in an 'obvious case' like this one") (citing *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 6 (2021)); *Adams v. Speers*, 473 F.3d 989, 994 (9th Cir. 2007) (denying qualified immunity where suspect's nondangerousness and officer's failure to warn before shooting placed the case squarely "within the obvious"); *Brosseau v. Haugen*, 543 U.S. 194, 197–99 (2004) (reaffirming the rule of *Tennessee v. Garner*, 471 U.S. 1, 11 (1985) and explaining that it provides sufficient "fair warning" of a constitutional violation in "obvious" cases); *Harris*, 126 F.3d at 1204 ("a general constitutional rule already identified in the decisional law may apply

1  with obvious clarity to the specific conduct in question.") (quoting *United States v.*
2  *Lanier*, 520 U.S. 259, 271 (1997)); *K.H. Through Murphy v. Morgan*, 914 F.2d 846
3  (7th Cir. 1990) ("The easiest cases don't even arise.").

4      Courts have repeatedly held that officers are not entitled to qualified
5  immunity in cases where suspects did not have weapons on their persons, brandish
6  weapons, or threaten to use them—even if the officer believed the suspect was
7  armed.  *See, e.g.*, *Estate of Lopez v. Gelhaus*, 149 F. Supp. 3d 1154, 1160 (N.D. Cal.
8  2016), *aff'd and remanded sub nom. Estate of Lopez by & through Lopez v.*
9  *Gelhaus*, 871 F.3d 998 (9th Cir. 2017) (holding that it was clearly established that
10  an officer would know that deadly force was unreasonable where the suspect
11  appears to have a weapon such as a replica gun but officers have no reports of the
12  suspect using the weapon and the suspect made no threats or sudden moves); *A.K.H.*
13  *v. City of Tustin*, 837 F.3d 1005 (9th Cir. 2016) (holding that an officer who shot a
14  suspect was not entitled to qualified immunity when "[the officer] never saw a gun"
15  and "could provide no basis for his belief that [the suspect] was armed"); *Wilson v.*
16  *City of Des Moines,* 160 F. Supp. 2d 1038, 1040 (S.D. Iowa 2001) (finding that the
17  defendants were not entitled to qualified immunity where they shot an unarmed man
18  running across the field because "they thought they saw a firearm").

19      Even assuming that it was reasonable for Deputy Ayala to believe that
20  Decedent potentially had a gun hidden behind his back in his right hand, the Ninth
21  Circuit has repeatedly emphasized that the fact that a suspect is armed with a deadly
22  weapon does not render an officer's use of deadly force *per se* reasonable under the
23  Fourth Amendment. *See, e.g.*, *Longoria v. Pinal County*, 873 F.3d 699, 706-07 (9th
24  Cir. 2017) (dispute of fact regarding whether suspect assumed a threatening "shooter's
25  stance" in interaction with officers precluded summary judgment); *George v. Morris*,
26  736 F.3d 829, 838-39 (9th Cir. 2013) (holding that a reasonable jury could find a
27  constitutional violation where it was disputed whether the suspect ever raised his gun);
28  *Glenn v. Washington Cnty.*, 673 F.3d 864, 872-73 (9th Cir. (2011) (holding that a

totality of the circumstances analysis does not end in a determination that the suspect was armed with a deadly weapon.); *Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991) (finding that the defendants were not entitled to qualified immunity where, in one witness' version of the shooting, "Curnow did not point the gun at the officers and apparently was not facing them when they shot him the first time"); *S.T. v. City of Ceres*, 327 F. Supp. 3d 1261, 1277 (E.D. Cal. 2018) ("A reasonable jury could infer from the fact that he was shot in the back that the Decedent was facing away from the officers at the time that they fired and therefore did not pose an imminent threat to officer safety."); *Collender v. City of Brea*, 605 F. App'x 624, 628-29 (9th Cir. 2015) (holding that a jury could find the unarmed suspect posed no immediate threat when he ran toward an officer with his arms outstretched and then lowered his left arm towards his left front pocket, at which point an officer shot and killed him).

Defendants rely on dicta in *Cruz v. City of Anaheim*, 765 F.3d 1076 (9th Cir. 2014), to argue that it would be "unquestionably reasonable for police to shoot a suspect in [the decedent's] position if he reaches for a gun in his waistband, or even if he reaches there for some other reason." *Id*. at 1078. This type of dicta cannot be used to established the law for qualified immunity purposes. *See Ashcroft v. al-Kidd*, 563 U.S. 731 at 741–42 (2011) (finding dicta to fall short of clearly establishing the law). Regardless, *Cruz* is distinguishable. There, officers knew the suspect was armed, had a felony firearm conviction, and was a gang member. A confidential informant also warned the suspect said he "was not going back to prison." During a traffic stop, he attempted to flee, backed into a patrol car, then exited and allegedly reached for his waistband. *Id*. at 1077–78. Here, none of those factors were in play. Decedent did not have a weapon on his person, did not brandish a weapon, did not reach for a weapon, did not reach for his waistband, and did not make any verbal threats. Rather, both of Decedent's hands were visible and empty at the time of the shooting, and Decedent was turned away from Deputy Ayala during at least two of the shots.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW

1    **3.  Deputy Ayala's Failure to Warn Weighs Against Granting Qualified**
2    **Immunity**

3    This Court should also deny Deputy Ayala's request for qualified immunity
4    because Deputy Ayala's failure to give Decedent a verbal warning that deadly force
5    would be used before shooting violated clearly established law. *Garner*'s broad
6    contours of deadly force principles were well established at the time of this incident,
7    including the notion that deadly force may be used only after a warning has been
8    given, if it is feasible to do so. *Garner*, 490 U.S. at 397; *see also Gonzalez v. City of*
9    *Anaheim*, 747 F.3d 789, 797 (9th Cir. 2014) (holding that that a jury could find the
10   officer had failed to warn the suspect, and that while "[t]he absence of a warning
11   does not necessarily mean that [the officer's] use of deadly force was unreasonable
12   [,] . . . . [a] rational jury may find . . . [that] a warning was practicable and the failure
13   to give one might weigh against reasonableness.") (citing *Scott*, 550 U.S. at 383);
14   *Deorle*, 272 F.3d at 1283–84; *Harris*, 126 F.3d at 1201 ("whenever practicable, a
15   warning must be given before deadly force is employed."); *Forrett v. Richardson*,
16   112 F.3d 416, 420 (9th Cir. 1997).[1]

> To the extent earlier precedent does not clearly establish the need to warn
> (if feasible) in circumstances perfectly matching with those here, it is
> still acceptable to hold [the defendant officers] to this standard because
> factual flexibility is built in.  The rule is warn *if feasible*. By its nature,
> this general rule can rightly be applied to most uses of deadly force,
> because it accounts for on-the-ground challenges officers may encounter
> in legally novel scenarios. Moreover, no unusual circumstances existed
> here to override this default expectation.

*Jacquez v. City of San Jose*, Case No. 16-cv-05330-NC, Doc. No. 84 at pp. 12:20-28
(denying qualified immunity); *see also Bowles v. City of San Jose*, Case No. 19-cv-

---

[1] Even though *Forrett* ultimately found no constitutional violation, it put the defendant officers on notice that warnings, or lack thereof, factor into the reasonableness of the use of deadly force. *See Hope*, 536 U.S. at 743 (finding "[t]he reasoning, though not the holding" of a case put reasonable officers on notice).

01027-NC, Doc. No. 53 at pp. 10:24-11:4, 14:26-15:1 (denying qualified immunity and holding that it was clearly established at the time of the shooting that an officer should give a warning before using deadly force, and that whether it was feasible to give a warning before shooting is for the jury to decide). In this case, a reasonable jury could easily find that it was feasible for Deputy Ayala to give Decedent a verbal warning that deadly force would be used prior to shooting him.

### 4. A Case with Identical Facts is Not Required for this Court to Deny Qualified Immunity

Finally, the United States Supreme Court "has firmly rejected the notion that 'an official action is protected by qualified immunity unless the very action in question has previously been held unlawful.'" *Brosseau*, 543 U.S. at 205 (2004) (Stevens, J., dissenting) ("The Court's search for relevant case law applying the *Garner* standard to materially similar facts is both unnecessary and ill advised) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The Ninth Circuit has likewise acknowledged that qualified immunity may be denied in novel circumstances. *See, e.g., Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1093 (9th Cir. 2013) ("We are particularly mindful of this principle in the context of Fourth Amendment cases, where the constitutional standard—reasonableness—is always a very fact-specific inquiry."); *Mattos v. Agarano*, 661 F.3d 433, 442 (9th Cir. 2011); *Hope v. Pelzer*, 536 U.S. 730, 754 (2002). "Otherwise, officers would escape responsibility for the most egregious forms of conduct simply because there was no case on all fours prohibiting that particular manifestation of unconstitutional conduct." *Deorle v. Rutherford*, 272 F.3d 1272, 1286 (2001) ("When the defendant's conduct is so patently violative of the constitutional right that reasonable officials would know without guidance from the courts that the action was unconstitutional, closely analogous pre-existing case law is not required to show that the law is clearly established."); *see also Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010) ("We do not engage in 'a scavenger hunt

1   for prior cases with precisely the same facts' but examine 'whether the law put
2   officials on fair notice that the described conduct was unconstitutional.'").

3   **5.  Deputy Ayala's Police Training Weighs Against Granting Qualified**
4       **Immunity**

5       This Court should also deny Deputy Ayala's request for qualified immunity
6   because it is well established that a violation of officer training weighs against
7   granting qualified immunity. *See Drummond v. City of Anaheim*, 343 F.3d 1052,
8   1062 (9th Cir. 2004) ("training materials are relevant not only to whether the force
9   employed in this case was objectively unreasonable . . . but also to whether
10  reasonable officers would have been on *notice* that the force employed was
11  objectively unreasonable."). Officers' training, internal polices, and Peace Officer
12  Standards and Training are important factors to consider in the context of qualified
13  immunity.  An officer who makes a conscious decision to violate basic training
14  guidelines, designed to safeguard the subject, should not be heard subsequently to
15  claim to have made a reasonable mistake or to have reasonably believed his or her
16  decision to be lawful. Here, Deputy Ayala violated basic police training on the use
17  of deadly force when he shot Decedent when there was no immediate threat of death
18  or serious bodily injury without giving Decedent a verbal warning that deadly force
19  would be used before shooting.

20  **D. Defendants Ayala and the County of Kern Are Liable on Plaintiffs' State**
21     **Law Claims**

22      Plaintiffs are also entitled to a jury trial on their state law claims for battery
23  and negligence for the same reasons discussed in connection with his constitutional
24  claim for excessive force. Under California law, battery and negligence claims
25  arising out of excessive force by a peace officer are evaluated by way of traditional
26  Fourth Amendment analysis under *Graham*, *supra*. *See Munoz v. City of Union City*,
27  120 Cal. App. 4th 1077, 1121 n.6 (2004) ("Federal civil rights claims of excessive
28  force are the federal counterpart to state battery and wrongful death claims; in both,

the plaintiff must prove the unreasonableness of the officer's conduct. Accordingly, federal cases are instructive."); *see also Hayes*, 736 F.3d at 1232; *Edson v. City of Anaheim*, 63 Cal. App. 4th 1269, 1274 (1998). As set forth in detail above, the facts bearing on the reasonableness of the shooting are disputed, making the question whether the shooting was excessive and unreasonable a question of fact for the jury. On Plaintiffs' facts, the shooting was unreasonable under state law because Decedent posed no immediate threat of death or serious bodily injury to Deputy Ayala or any other person at the time of the shooting, when Decedent was unarmed, both of his hands were visible and empty, and Decedent made no verbal threats.

With respect to Plaintiffs' negligence claim, the California Supreme Court has clarified that in police shooting cases, the negligence analysis is even broader than a typical Fourth Amendment analysis because state law specifically considers negligent "pre-shooting" tactics as part of the "totality of the circumstances" evaluation. *Hayes v. County of San Diego*, 57 Cal. 4th 622, 639 (2013) (an officer's tactical conduct and decisions preceding the use of deadly force are relevant considerations in determining whether the use of deadly force gives rise to negligence liability, which "can arise, for example, if the tactical conduct and decisions show, as part of the totality of circumstances, that the use of deadly force was unreasonable"). Here, Deputy Ayala engaged in negligent tactics, and the jury heard evidence of these negligent tactics during the trial, including from Plaintiffs' police practices expert, Scott DeFoe.

Plaintiffs are also entitled to a jury trial on their Bane Act claim, which arises from Deputy Ayala's excessive shooting. The Ninth Circuit in interpreting *Cornell v. City and County of San Francisco*, 17 Cal. App. 5th 766, 798 (2017) stated, "it is not necessary for the defendants to have been 'thinking in constitutional *or legal terms* at the time of the incident[], because a reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights.'" *Reese v. County of Sacramento*, 888 F.3d 1030 (9th Cir. 2018) (quoting *United States v.*

-14-

1    *Reese*, 2 F.3d 870 (9th Cir. 1993). As discussed in detail above, Deputy Ayala's

2    shooting demonstrated a reckless disregard for Decedent's safety and his

3    constitutional right to be free from excessive force.

4       Defendant County of Kern is vicariously liable for Deputy Ayala's conduct on

5    all of Plaintiffs' state law claims. Cal. Gov. Code 815.2(a) ("A public entity is liable

6    for injury proximately caused by an act or omission of an employee of the public

7    entity within the scope of his employment if the act or omission would, apart from

8    this section, have given rise to a cause of action against that employee or his personal

9    representative.").  The Parties have agreed that Deputy Ayala was acting within the

10   course and scope of his employment at the time of the shooting.

11   **E. No State Law Defenses or Immunities Protect Defendants from Liability**

12       Qualified immunity does not apply to Plaintiff's state law claims, and the

13   state law provisions cited by Defendants do not confer immunity on peace officers

14   for discretionary acts involving the unreasonable use of force. *See, e.g.*, *Sharp v.*

15   *County of Orange*, 871 F.3d 901, 920–21 (9th Cir. 2017) (§821.6 "is limited to

16   malicious-prosecution claims"); *Blankenhorn v. City of Orange*, 485 F.3d 463 (9th

17   Cir. 2007) (denying immunity under California law where the arrestee's claims

18   arose from excessive force and were not based on acts taking place during an

19   investigation); *Robinson v. Solano Cnty.*, 278 F.3d 1007, 1016 (9th Cir. 2002);

20   *Warren v. Marcus*, 78 F. Supp. 3d 1228, 1249 (N.D. Cal. 2015) ("Defendant's

21   conduct at issue in this case—alleged excessive force and unlawful seizure—is 'not

22   the sort of conduct to which section 821.6 immunity has been held to apply.'")

23   (citing *Blankenhorn*, 485 F.3d at 488); *Knapps v. City of Oakland*, 2009 WL

24   2390262 (N.D. Cal. 2009); *Garcia v. City of Merced*, 637 F. Supp.2d 731 (E.D. Cal.

25   2008) (declining to grant immunity under California's discretionary immunity

26   statute where arrestee alleged the force was unreasonable); *Price v. County of San*

27   *Diego*, 990 F. Supp. 1230 (S.D. Cal.1998) (California statute does not confer

28   immunity upon peace officer for discretionary acts if officer uses unreasonable

1  force). Cal. Gov. Code §845.8 (immunity clearly limited to damages caused by "a

2  person resisting arrest," not caused by an officer).

3      Defendants' reference to California Penal Code §835 is unavailing. Police

4  training and standards instruct that deadly force can only be used based on an

5  objectively reasonably belief that the person has the present ability, opportunity, and

6  apparent intent to immediately cause death or serious bodily injury to the peace

7  officer or another person.  Cal. Penal Code §835(a).  An imminent harm is not

8  merely a fear of future harm, no matter how great the fear and no matter how great

9  the likelihood of the harm, but is one that from appearances must be instantly

10 confronted and addressed.  *Id*.  Plaintiffs have presented sufficient evidence for the

11 jury to determine that Decedent did not have the present ability, opportunity, and

12 apparent intent to immediately cause death or serious bodily injury to Deputy Ayala

13 or anyone else.  At the time of the shooting, Decedent was unarmed with both of his

14 hands visible and empty.

15

16 Respectfully submitted,

17 DATED: March 17, 2025          LAW OFFICES OF DALE K. GALIPO

18                               By:  *s/ Renee V. Masongsong*
19                                    Dale K. Galipo
                                      Renee V. Masongsong
20                                    Attorneys for Plaintiffs R.L., M.L., H.L., and A.W.

21

22 DATED: March 17, 2025          ALEXANDER MORRISON + FEHR LLP

                                 TONI JARAMILLA, A PROFESSIONAL LAW CORP.
23

24                               By:  *s/ J. Bernard Alexander, III*
                                      J. Bernard Alexander, III
25                                    Toni Jaramilla
                                      Britt L. Karp
26                                    Attorneys for Plaintiffs Mickel Erick Lewis, Jr.,
                                      Oriona Lewis and Briona Lewis
27

28

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW