MARGO A. RAISON, COUNTY COUNSEL
Kimberly L. Marshall, Deputy (SBN 186838)
Andrew C. Hamilton, Deputy (SBN 299877)
Kern County Administrative Center
1115 Truxtun Avenue, Fourth Floor
Bakersfield, CA 93301
Telephone: (661) 868-3800
Facsimile: (661) 868-3805
ahamilton@kerncounty.com
marshallkim@kercounty.com

Attorneys for Defendant County of Kern

James D. Weakley, Esq. (SBN 082853)
Brande L. Gustafson, Esq. (SBN 267130)
**WEAKLEY & ARENDT**
A Professional Corporation
5200 N. Palm Avenue, Suite 211
Fresno, California 93704
Telephone:  (559) 221-5256
Facsimile:  (559) 221-5262
Jim@walaw-fresno.com
Brande@walaw-fresno.com

Attorneys for Defendant, Deputy Jason Ayala

## UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

MICKEL ERICK LEWIS JR., individually and as successor-in-interest to MICKEL E. LEWIS, SR., ORIONA LEWIS; and BRIONA LEWIS, individually and as successor-in-interest,

Plaintiff,

vs.

KERN COUNTY, Deputy JASON AYALA, and DOES 1-20, inclusive,

Defendant.

---

R.L., M.L., and H.L., minors, by and through guardian *ad litem* Roberta Haro, individually and as successors in interest to Michel Lewis Sr., deceased; A.W., a minor, by and through her guardian *ad litem* Alisha White, individually and as a successor in interest to Michel Lewis Sr., deceased; ALISHA WHITE, individually and as a successor in interest to Mickel Lewis Sr.,

Plaintiffs,

vs.

COUNTY OF KERN; JASON AYALA; and DOES 1-10, inclusive,

Defendants.

Case No. 1:21-CV-00378-KES-CDB
*Consolidated with Case No. 1:21-CV-01352-DAD-JLT*

**DEFENDANTS COUNTY OF KERN AND JASON AYALA'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW (Fed.R.Civ.P. 50(b))**

*Filed concurrently with:*
*Defendants Motion for a New Trial.*

Judge: Hon. District Judge Kirk E. Sherriff
Courtroom: 6
Date: June 16, 2025
Time: 1:30 p.m.

1

<u>**NOTICE OF RENEWED MOTION AND RENEWED MOTION FOR JUDGMENT AS A**</u>

2

<u>**MATTER OF LAW**</u>

3    **NOTICE IS HEREBY GIVEN** that on June 16, 2025, at 1:30 p.m., or as soon thereafter as

4  the matter may be heard by Judge Kirk E. Sherriff, in Courtroom 6, of the above entitled Court,

5  located at the Federal District Court located at 2500 Tulare Street, Fresno, CA 93721, Defendants

6  County of Kern and Jason Ayala will, and hereby do, renew their motion for judgment as a matter of

7  law on the grounds stated herein. In that alternative, should this motion be denied in whole or in part,

8  Defendants request the Court grant the concurrently filed motion for a new trial.

9    This motion is based upon this notice, the attached memorandum of points and authorities,

10  the Declaration of Andrew C. Hamilton, the court file in this matter, and oral argument. The steps

11  taken to meet and confer are as set forth in the Declaration of Andrew C. Hamilton.

12  Dated: April 18, 2025                                Respectfully Submitted,

13                                                            MARGO A. RAISON, COUNTY COUNSEL

14                                                            By: /s/ Andrew C. Hamilton
                                                               Kimberly L. Marshall, Deputy
15                                                            Andrew C. Hamilton, Deputy
                                                               Attorneys for County of Kern
16

17                                                            WEAKLEY & ARENDT, APC

18                                                            By: /s/ Brande L. Gustafson
                                                               James D. Weakley, Esq.
19                                                            Brande L. Gustafson, Esq.
                                                               Attorneys for Jason Ayala
20

21

22

23

24

25

26

27

28

Defendants' Renewed Motion for Judgment as a Matter of Law

# **TABLE OF CONTENTS**

NOTICE OF RENEWED MOTION AND RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW ..............................................................................................................ii

TABLE OF AUTHORITIES ....................................................................................................iv

RENEWED MOTION AS A MATTER OF LAW ....................................................................1

I.      INTRODUCTION ........................................................................................................1

II.     STATEMENT OF FACTS ............................................................................................2

    A.      Procedural Posture ...............................................................................................2

    B.      The Relevant Facts at Trial .................................................................................2

III.    LEGAL STANDARD ON RENEWED MOTION FOR JUDGMENT ..................................7

IV.     ARGUMENT IN SUPPORT OF THE RULE 50(b) MOTION ...........................................8

    A.      Plaintiffs Have Presented Insufficient Evidence to Support a Fourth Amendment Claim for Excessive Force Against Deputy Ayala ............................................... 8

    B.      Deputy Ayala Is Entitled to Qualified Immunity................................................. 10

    C.      Plaintiffs Have Presented Insufficient Evidence to Support a State Law Claim for Battery Against Deputy Ayala ........................................................................ 14

    D.      Plaintiffs Have Presented Insufficient Evidence to Support a State Law Claim for Negligence Against Deputy Ayala.................................................................... 15

    E.      Plaintiffs Failed to Establish a Bane Act Claim................................................. 15

    F.      Various State Law Defenses and Immunities Protect Deputy Ayala From Liability....... 17

V.      CONCLUSION.......................................................................................................... 19

Defendants' Renewed Motion for Judgment as a Matter of Law

# TABLE OF AUTHORITIES

**Cases**

*A.G.1 v. City of Fresno*, No. 1:16-CV-1914-JLT-SAB, 2023 WL 3168510 (E.D. Cal. Apr. 28, 2023) .................................................................................................................................... 15

*Anderson v. Creighton*, 483 U.S. 635 (1987) ................................................................. 11

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) ................................................................. 11, 12

*Baker v. County of San Diego*, No. 09-CV-1194 BEN (WMc), 2012 WL 1903899 (S.D. Cal. May 24, 2012) ................................................................................................................................ 9

*Bay Area Rapid Transit Dist. v. Superior Court*, 38 Cal.App.4th 141 (1995) .................................. 15

*Blanford v. Sacramento County*, 406 F.3d 1110 (9th Cir. 2005) ..................................................... 9

*Blankenhorn v. City of Orange*, 485 F.3d 463 (9th Cir. 2007) ...................................................... 12

*Brosseau v. Haugen*, 543 U.S. 194 (2004) .............................................................................. 11, 12

*Brown v. City of Golden Valley*, 574 F.3d 491 (8th Cir. 2009) ...................................................... 11

*Brown v. Ransweiler*, 171 Cal.App.4th 516 (2009) .................................................................... 15

*Bryan v. MacPherson*, 630 F.3d 805 (9th Cir. 2010) .................................................................... 9

*Calvillo-Silva v. Home Grocery*, 19 Cal.4th 714 (1998) ............................................................... 17

*Cornell v. City & Cnty of San Francisco*, 17 Cal.App.5th 766 (2017) ............................................ 16

*Cruz v. City of Anaheim*, 765 F.3d 1076 (9th Cir. 2014) ..................................................... 1, 7, 13

*Edson v. City of Anaheim*, 63 Cal.App.4th 1269 (1998) ................................................................ 14

*Est. of Aguirre v. Cnty. of Riverside*, No. 23-55718, 2025 WL 758959 (9th Cir. Mar. 11, 2025) ...... 8

*Forrester v. City of San Diego*, 25 F.3d 804 (9th Cir.1994) ......................................................... 9

*Fuller v. M.G. Jewelry*, 950 F.2d 1437 (9th Cir. 1991) ............................................................... 11

*Garcia v. County of Merced*, 639 F.3d 1206 (9th Cir. 2011) ....................................................... 11

*Graham v. Connor*, 490 U.S. 386 (1989) ................................................................................... 9

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ............................................................................... 10

*Hart v. City of Redwood City*, 99 F.4th 543 (9th Cir. 2024) ........................................................ 10

*Hayes v. County of San Diego*, 57 Cal.4th 622 (2013) ................................................................ 15

*Huff v. City of Burbank*, 632 F.3d 539 (9th Cir. 2011) ................................................................ 9

*Hunter v. Bryant*, 502 U.S. 224 (1991) ..................................................................................... 12

Defendants' Renewed Motion for Judgment as a Matter of Law

*J.J. v. M.F.*, 223 Cal.App.4th 968 (2014) ..........................................................................17

*Jones v. Kmart Corp.*, 17 Cal. 4th 329 (1998)....................................................................16

*Kisela v. Hughes*, 138 S. Ct. 1148 (2018) ...........................................................................11

*Lal v. California*, 746 F.3d 1112 (9th Cir. 2014)................................................................13

*Lea v. Steinbronn*, 671 F. App'x 488 (9th Cir. 2016) ........................................................12

*Luchtel v. Hagemann*, 623 F.3d 975 (9th Cir.2010) .............................................................9

*Luna v. Cnty. of Riverside*, No. EDCV210467JGBSPX, 2023 WL 7803386 (C.D. Cal. Oct. 20, 2023)....................................................................................................................................16

*Mattos v. Agarano*, 661 F.3d 433 (9th Cir. 2011)..............................................................11

*Mullenix v. Luna*, 136 S.Ct. 305 (2015).............................................................................12

*Neal-Lomax v. Las Vegas Metropolitan Police Dept.*, 574 F.Supp.2d 1170 (D. Nev. 2008)............12

*Pearson v. Callahan*, 555 U.S. 223 (2009)....................................................................10, 11

*Peck v. Montoya*, 51 F.4th 877 (9th Cir. 2022)...................................................................10

*Plumhoff v. Rickard*, 134 S. Ct. 2012 (2014)......................................................................11

*Reese v. Cty of Sacramento*, 888 F.3d 1030 (9th Cir. 2018)..............................................16

*Robinson v. Adams*, No. 1:08-CV-01380-AWI-BA, 2015 WL 3706388 (E.D. Cal. June 12, 2015) 14

*Rodriguez v. County of L.A.*, 891 F.3d 776 (9th Cir. 2018)................................................16

*Romero v. Kitsap County*, 931 F.2d 624 (9th Cir. 1991) ....................................................12

*Saucier v. Katz*, 533 U.S. 194 (2001) ...........................................................................10, 12

*Scott v. Henrich*, 39 F.3d 912 (9th Cir. 1994)......................................................................9

*Screws v. United States*, 325 U.S. 91 (1945) ......................................................................16

*Tatum v. City and County of San Francisco*, 441 F.3d 1090 (9th Cir. 2006).......................9

*Vaughn v. Jonas*, 31 Cal.2d 586 (1948)..............................................................................17

*Vilar v. County of Yolo*, No. 2:12-CV-01472-KJN, 2013 WL 6422936 (E.D. Cal. Dec. 9, 2013) ...12

**Statutes**

California Civil Code § 52.1.............................................................................................20, 21

California Penal Code § 196 .................................................................................................23

California Penal Code § 835 .................................................................................................19

Defendants' Renewed Motion for Judgment as a Matter of Law

California Penal Code § 835a ................................................................................................23

**Rules**

Federal Rule of Civil Procedure 50(a) ..........................................................................1, 2, 8

Defendants' Renewed Motion for Judgment as a Matter of Law

**RENEWED MOTION AS A MATTER OF LAW**

**I.    INTRODUCTION**

This civil rights action is brought in connection with the fatal officer-involved shooting of plaintiffs' father[1], Mickel E. Lewis, Sr. ("Lewis Sr.") on October 2, 2020. The matter proceeded to trial on March 11, 2025. On March 14, 2025, after the conclusion of plaintiffs' case-in-chief, Defendants County of Kern and Deputy Jason Ayala moved for judgment as a matter of law, pursuant to Federal Rule of Civil Procedure 50(a).). ECF No. 135. On March 18, 2025, the district court denied the motion. Later, the jury returned a verdict for plaintiffs. ECF No. 153. Judgment was entered in favor of plaintiffs on March 21, 2025. ECF No. 154. Defendants now move for renewed judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b).). Defendants' motion should be granted for several reasons.

First, Plaintiffs presented insufficient evidence to support a Fourth Amendment claim for excessive force against Deputy Ayala. Before the incident in question, Deputy Ayala received specific information from a confidential informant that decedent was on probation *and had "firearms*." R.T., at pp. 164:15-166:7. When Deputy Ayala thereafter conducted a traffic stop, decedent fled the scene and ran back to his vehicle, where his hands (and, most importantly, his motives and intentions) were obscured. Deputy Ayala further testified that the decedent stated, during this tense encounter, "*You're going to die*" and/or *"I'm going to kill you*," at the specific point in time when the decedent was half in the car and half getting out. R.T., at pp. 91:7-13; 124:12-24. Confronted with this unpredictably dangerous, split-second situation, Ayala had every reason to believe that decedent was armed with a firearm and was going to kill him. Accordingly, Deputy Ayala's use of deadly force was objectively reasonable under the totality of the circumstances.

Second, the district court should have granted qualified immunity to Deputy Ayala. There was insufficient evidence of an underlying constitutional violation. But more importantly, under *Cruz v. City of Anaheim*, 765 F.3d 1076, 1077-78 (9th Cir. 2014),2014), it was not clearly established that Deputy Ayala committed a constitutional violation under these circumstances. At a minimum, this

---

[1] Alisha White was dismissed as a named plaintiff from the case after plaintiffs rested their case. Reporters Transcript ("R.T."), at pp. 583:9-10, 595:16-596:1.

was a situation of reasonable mistake, and as noted in the concurrently filed motion for new trial, the district court prevented defendants from providing special interrogatories to the jury which would have allowed the court to make an informed determination about the application of qualified immunity.

Third, Plaintiffs presented insufficient evidence to support a battery claim against Deputy Ayala. Fourth, Plaintiffs presented insufficient evidence to support a negligence claim against Deputy Ayala. Fifth, Plaintiffs failed to establish a Bane Act claim against Deputy Ayala. Lastly, various state law defenses and immunities should have shielded Deputy Ayala from liability.

## II.    STATEMENT OF FACTS

### A.    Procedural Posture

Between March 11 and 19, 2025, the seven Plaintiffs and Defendants County of Kern and Jason Ayala engaged in a five-day jury trial. After Plaintiffs closed their case-in-chief, Defendants filed a motion for judgment as a matter of law under Fed. R. Civ. P. 50(a),), which was denied. ECF No. 135; R.T., at p. 745:10-24. The jury found against the County of Kern and Jason Ayala on all counts and awarded damages to Plaintiffs. On March 21, 2025, the Court entered judgment against Defendants based on the verdict. Defendants County of Kern and Jason Ayala now renew their motion for judgment as a matter of law under Fed. R. Civ. P. 50(b) on the grounds stated herein. In the alternative, should this motion be denied in whole or in part, Defendants request the Court grant the concurrently filed motion for a new trial and/or motion for remittitur.

### B.    The Relevant Facts at Trial

On October 20, 2020, around 9:00 p.m., Deputy Ayala conducted a probation stop of Mickel Lewis, Sr. R.T., at p. 56:14-15. At the time of the traffic stop, Deputy Ayala knew that Lewis was on probation. R.T., at pp. 65:6-11, 76:5-7, 164:18-165:2, 204:11-13, 209:16-19, 270:19-24. Deputy Ayala was informed that Lewis had a gun by a vetted informant. R.T., at pp. 69:11-13, 160:16-161:7, 165:16-166:7. After conducting a probation stop, Deputy Ayala instructed Lewis to exit his vehicle and submit to a search of his person, and Lewis complied. R.T., at pp. 65:10-11, 69:11-22, 75:22-76:7, 76:16-77:3. After Deputy Ayala searched Lewis, Deputy Ayala knew Lewis did not have a weapon on his person, meaning, based on Deputy Ayala's information that Lewis had a firearm, that

1   the firearm was still in Lewis's vehicle. R.T., at pp. 77:2-78:2, 174:2-19, 201:16-17, 210:1-10. Deputy

2   Ayala believed Lewis was intoxicated, likely on methamphetamine based on his experience and the

3   way Lewis was acting.[2] R.T., at pp. 189:15-190:6, 218:1-4. Deputy Ayala then informed Lewis that

4   he was going to search his vehicle. R.T., at pp. 78:3-10. In response, Lewis yelled something to the

5   effect of "fuck no!", lunged at Ayala, and ran. R.T., at pp. 78:25-79:5, 174:12-19, 175:5-176:13,

6   252:8-19. Both police practices experts agree that this was a crime. R.T., at pp. 533:14-19, 795:2-8.

7   Knowing that Lewis was on probation and based upon the information that Lewis had a gun, Deputy

8   Ayala would have reasonably believed that Lewis was desperate not to go back to prison. This

9   information is undisputed.

10      It is undisputed that Lewis ran behind a semi-truck trailer parked across the street. R.T., at pp.

11  80:17-81:2. To attempt to prevent Lewis from circling back to his vehicle and fleeing, Deputy Ayala

12  removed the keys from Lewis's vehicle. R.T., at pp. 81:20-82:9, 253:18-23. Ayala testified that he

13  yelled at Lewis that he had removed the keys. R.T., at p. 82:24-83:4. Jessica Salcedo, the only

14  passenger from Lewis's vehicle to testify, testified simply that she did not hear anything and did not

15  know whether or not Deputy Ayala yelled those things. R.T., at pp. 254:1-254:9, 264:2-264:4.

16      The uncontroverted evidence establishes that after Lewis returned to his vehicle, he did not

17  close his door as if he were preparing to leave the scene. R.T., at pp. 186:4-16, 191:3-19, 254:10-18,

18  263:5-13, 269:19-21. Deputy Ayala would have reasonably interpreted this fact alone to mean Lewis

19  returned to his vehicle with a motive other than to leave the scene, but to obtain his firearm. When

20  Lewis returned to his vehicle, Deputy Ayala moved towards the back of Lewis's vehicle. R.T., at pp.

21  88:23-89:2.

22      When Lewis entered his vehicle, Deputy Ayala testified he drew his service weapon and held

23  it in a 'low ready' position pointed down at the ground. R.T., at p.194:12-20. Both police practices

24  experts testified that it was a proper police procedure for Ayala to draw his service weapon in a low-

25  ready position at that time. R.T., at pp. 504:14-16, 541:22-542:2, 802:2-11.

26      Deputy Ayala testified that he could not see Lewis's hands or right arm, but it appeared to

27

28  [2] The Court excluded Defendants' toxicology expert that would have confirmed Lewis was high on methamphetamine and corroborated Ayala's testimony. ECF No. 134.

1  him that Lewis was leaning forward as if he were reaching under his seat. R.T., at p. 88:4-18. The

2  only other witness to this was Jessica Salcedo, who, in fact, did not testify that Lewis did not reach

3  under his seat. During the entire incident she was sitting in the passenger seat directly behind the

4  driver. R.T., at pp. 245:13-20. She testified that she leaned over to see what Lewis was doing. R.T.,

5  at pp. 255:9-13. She recalls seeing Lewis reach in the ignition area with *one* hand, but specifically

6  does not recall which hand. R.T., at pp. 254:14-255:6. She testifies that she was only able to see

7  Lewis's upper body, appearing to her to look for a key. R.T., at pp. 254:16-254:18. In fact, because

8  Salcedo was leaning over she did not have a clear view of his lower body and could not even see

9  whether his bottom was sitting in the seat. R.T., at pp. 255:21-256:1. Salcedo never had a clear view

10 of Lewis the entire time he was in the vehicle, and never had any view of his lower body, and there

11 is no unambiguous evidence to contradict what Deputy Ayala observed from his perspective outside

12 of the vehicle. In sum, Salcedo could and did not testify as to what Lewis was doing with his other

13 hand below where she could not see, and her testimony does not contradict Deputy Ayala's, who had

14 a different view. Deputy Ayala testifies that Lewis was inside his SUV for approximately 1-2 seconds.

15 R.T., at pp. 86:15-87:7, 90:4-10, 114:23-25, 115:14-16, 122:15-22. Salcedo testified that Lewis was

16 in the vehicle long enough to reach for the ignition. R.T., at pp. 254:14-256:1.

17     Deputy Ayala testified that Lewis said something to the effect of "I'm going to kill you" or

18 "you're going to have to kill me" as he was exiting the vehicle. R.T., at pp. 90:14-91:9, 124:12-24.

19 Salcedo testified that while Lewis was inside the vehicle, he did not say anything to the effect of "I'm

20 going to kill you" or "you're going to have to kill me." R.T., at p. 256:2-10. However, on cross-

21 examination, Salcedo admitted to not knowing whether or not Lewis yelled, "I'm going to kill you."

22 R.T., at pp. 264:5-7. Salcedo changed her testimony again on redirect.[3]

23     The uncontroverted video evidence establishes that the incident occurred in an extremely short

24 period of time. Video footage shown to the jury establishes that after Lewis returned to his vehicle

25

26 [3] Plaintiffs' police practices expert testified that there was nothing in the record to support that Lewis
   made threats towards Deputy Ayala, incorrectly leading the jury to believe no threats were made.

27 However, when Defendants tried to impeach Plaintiffs' expert with a contradictory statement from
   Destiny Salcedo, who was also in the vehicle, the Court sustained Plaintiffs' objection on hearsay.

28 R.T., at pp. 522:2-529:18.

(2:58) the shooting was completely over within five seconds (3:03).[4] R.T., at pp. 186:4-189:14; Defense Exhibit E. This period of time includes the time it took for Lewis (1) to get seated in his car, (2) attempt to either start the vehicle or search under the seat (depending on which testimony is to be believed), (3) exit the vehicle, (4) move towards Deputy Ayala and (4) Deputy Ayala to complete all five shots. R.T., at pp. 85:19-25, 86:13-87:7, 87:25-89:16, 90:8-17, 91:17-94:7, 96:5-97:24, 122:12-126:6, 128:2-21, 129:2-21, 134:22-135:3, 186:4-16, 191:3-193:23, 254:10-256:1, 256:21-257:2, 263:5-13, 269:10-21. Although the video itself is not clear as to the time of each step due to the parties being on the far side of the vehicle, the uncontroverted video evidence establishes a timeline that is far quicker than that proffered by Defendants. Deputy Ayala testifies that Lewis was inside his SUV for around 1 to 2 seconds. R.T., at pp. 86:15-87:7, 90:4-10, 114:23-25, 115:14-16, 122:15-22. Jessica Salcedo testified that Lewis was in the vehicle long enough to reach for the ignition. R.T., at pp. 254:14-256:1. Deputy Ayala described the time between Lewis exiting the vehicle and Deputy Ayala firing the first shot as "immediate." R.T., at pp. 92:18-94:7. No other witness offered timing of events that remotely corresponds to the video evidence and is therefore credible.

The testimony of third-party witnesses establishes that Lewis charged at Deputy Ayala from a close distance at the time Deputy Ayala fired his service weapon. R.T., at pp. 471:14-472:8, 477:20-478:5, 719:8-720:24, 721:8-22. Deputy Ayala was standing in the street just southeast of the rear bumper of Lewis' vehicle at the time he exited the vehicle. R.T., at pp. 85:12-23, 87:5-14, 88:19-89:2, 122:3-124:1, 125:17-23, 477:8-13. The testimony of Terletter, who was sitting in the cab of his semi-truck directly across the street testified that at one point Lewis was so close that his hands were past Deputy Ayala's gun. R.T., at pp. 473:24-474:8, 478:24-479:2. Lewis was athletic and 6' 6" tall. R.T., at pp. 284:6-15. In contrast, Deputy Ayala was 5' 10" tall and 190 lbs. R.T., at p. 122:5-8.

As Lewis turned left while exiting the driver's door, it was physically impossible that Lewis' right hand was visible to Deputy Ayala from his location near the rear bumper on the driver's side of the vehicle. That movement required the right hand to pass behind Lewis, unless he exited the vehicle

---

[4] When there is video evidence that controverts one party's version of events, a court cannot disregard that video evidence, particularly where there is no evidence that the video was improperly altered. *Scott v. Harris*, 550 U.S. 372, 380–81 (2007) ("The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.").

with both arms outstretched before him—something no witness testified to and is implausible. Deputy Ayala testified that as Lewis began charging at him, they were face-to-face; he did not see a gun in Lewis's hand because he was not looking at his hand anymore.[5] R.T., at pp. 94:19-95:18. Deputy Ayala never testified that Lewis had his right hand behind him for all five shots. *Id.* Deputy Ayala testified that he pulled his gun close to his body and was running backwards while firing his weapon. R.T., at pp. 116:6-20.

Deputy Ayala fired five shots at Lewis, killing him. R.T., at p. 61:11-12, 117:2-4. Deputy Ayala testified that he stopped shooting after Lewis "went to the ground." R.T., at p. 96:12-17.[6] Deputy Ayala does not recall that Lewis' back turned towards him during the shooting. R.T., at pp. 97:22-98:15.

Dr. Carpenter and Dr. Sheridan's uncontroverted testimony, in conjunction with testimony from third-party witnesses, excludes the possibility that Deputy Ayala could have perceived that he was shooting Lewis in the back at the time he pulled the trigger. R.T., at pp. 422:9-423:4, 425:17-22, 429:8-24, 433:6-434:4, 437:11-439:1, 443:1-8, 443:17-21, 447:3-450:12, 452:25-454:5, 461:3-24, 462:1-17, 463:13-25, 464:11-14, 470:10-12, 652:21-655:1, 656:10-16, 658:23-659:8, 661:7-662:20, 665:11-670:10, 671:14-673:10, 714:1-4. Rather, Dr. Sheridan testified that based on the trajectory of the gunshot wounds, it was most likely that Lewis was charging at Deputy Ayala. R.T., at pp. 652:21-655:1, 658:23-659:8, 661:7-662:20, 665:11-668:25, 669:1-670:10, 671:14-673:10. Jessica Salcedo testified that Lewis was merely standing by his door with his arms by his side. R.T., at pp. 258:9-258:21, 269:10-269:12. But, Salcedo's testimony is incompatible with the physical evidence that the shots to Lewis's chest had a downward trajectory. No witness testified that Lewis was standing and bending over or that Ayala was standing over Lewis.

Indeed, the photographic evidence establishes that Lewis was moving quickly in the direction of Deputy Ayala, as Lewis's final resting place was far from his door. R.T., at pp. 71:11-24, 73:6-

---

[5] The excluded testimony of Defendants' human factors expert would have supported this.

[6] Plaintiffs' attorney, despite having video and audio from Ayala's deposition establishing that the transcript of Deputy Ayala's deposition was incorrect, knowingly and falsely attempted to mischaracterize Deputy Ayala's deposition testimony. Plaintiffs read Deputy Ayala's deposition transcript that stated Ayala only stopped shooting after Lewis "turned around," but in the audio of the deposition Deputy Ayala stated "went to the ground." R.T., at pp. 96:5-97:21.

Defendants' Renewed Motion for Judgment as a Matter of Law

74:8, 87:15-24, 123:4-124:1, 129:22-133:21, 150:9-25, 153:17-154:19; Plaintiffs' Exhibit 5-2, 5-6, 5-11, 5-34. The video footage shows Deputy Ayala quickly backpedaling away from Lewis as he emerges from behind Lewis's SUV. R.T., at pp. 176:14-177:3, 178:4-189:14; Defense Exhibit E.

Plaintiffs' police practices expert Scott DeFoe testified that Ayala had to wait to see a gun in Lewis's hand before shooting, even if Lewis was charging at him from a close distance. R.T., at pp. 515:19-516:3, 516:17-24, 541:12-21. This testimony to the lay jury was simply false and contradicted all actual authority on the matter. *See, e.g., Cruz v. City of Anaheim*, 765 F.3d 1076, 1078–79 (9th Cir. 2014):2014):

> It would be unquestionably reasonable for police to shoot a suspect in Cruz's position if he reaches for a gun in his waistband, *or even if he reaches there for some other reason*. Given Cruz's dangerous and erratic behavior up to that point, the police would doubtless be justified in responding to such a threatening gesture by opening fire. Conversely, if the suspect doesn't reach for his waistband or make some similar threatening gesture, it would clearly be unreasonable for the officers to shoot him after he stopped his vehicle and opened the door. At that point, the suspect no longer poses an immediate threat to the police or the public, so deadly force is not justified.

(Emphasis added). Defendants' police practices expert Clarance Chapman testified, in accordance with *Cruz* and other authority, that Deputy Ayala did not actually need to see a gun before firing. R.T., at pp. 803:17-804:9. In fact, Chapman testified, correctly, that there is no policy or training that requires an officer to actually see a gun and that had Lewis had a gun and had Deputy Ayala waited to see the gun, Deputy Ayala would likely have been killed. R.T., at pp. 808:24-810:2.

Furthermore, the evidence and common sense establishes that due to Lewis' fast movement and close proximity to Deputy Ayala, Deputy Ayala did not have time to assess the situation or re-holster his service weapon and draw out a less-lethal option such as a TASER, oleoresin spray, or his baton. R.T., at pp. 118:2-120:2. No reasonable juror could have accepted Scott DeFoe's testimony that those were reasonable options. Indeed, Chapman testified that there was no time to utilize any of those alternative, less lethal options and that given the circumstances, each of those options would have been inappropriate. R.T., at pp. 804:10-808:12.

## III.    LEGAL STANDARD ON RENEWED MOTION FOR JUDGMENT

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
> (A)    resolve the issue against the party; and

1       (B)   grant a motion for judgment as a matter of law against the party on a
2       claim or defense that, under the controlling law, can be maintained or defeated only
      with a favorable finding on that issue.

3 Fed. R. Civ. P. 50(a)(1). Here, Defendants made a motion under Rule 50(a), which the Court denied.

4 Defendants therefore bring their motion under Rule 50(b):

5     If the court does not grant a motion for judgment as a matter of law made under Rule
    50(a), the court is considered to have submitted the action to the jury subject to the
6     court's later deciding the legal questions raised by the motion. No later than 28 days
    after the entry of judgment—or if the motion addresses a jury issue not decided by a
7     verdict, no later than 28 days after the jury was discharged—the movant may file a
    renewed motion for judgment as a matter of law and may include an alternative or
8     joint request for a new trial under Rule 59. In ruling on the renewed motion, the court
    may:
9         (1)   allow judgment on the verdict, if the jury returned a verdict;
        (2)   order a new trial; or
10         (3)   direct the entry of judgment as a matter of law.

11 Fed. R. Civ. P. 50(b).

12      "If the court grants a renewed motion for judgment as a matter of law, it must also

13 conditionally rule on any motion for a new trial by determining whether a new trial should be granted

14 if the judgment is later vacated or reversed. The court must state the grounds for conditionally

15 granting or denying the motion for a new trial." Fed. R. Civ. P. 50(c)(1). "Conditionally granting the

16 motion for a new trial does not affect the judgment's finality; if the judgment is reversed, the new

17 trial must proceed unless the appellate court orders otherwise. If the motion for a new trial is

18 conditionally denied, the appellee may assert error in that denial; if the judgment is reversed, the case

19 must proceed as the appellate court orders." Fed. R. Civ. P. 50(c)(2). If the Court denies this motion

20 for judgment as a matter of law in whole or in part, Defendants request the Court grant their

21 concurrently filed motion for a new trial. On a Rule 50(b) motion, a court " 'draw[s] all reasonable

22 inferences in' the nonmoving party's favor, and [it] 'must disregard all evidence favorable to the

23 moving party that the jury is not required to believe.' " *Est. of Aguirre v. Cnty. of Riverside*, No. 23-

24 55718, 2025 WL 758959, at *3 (9th Cir. Mar. 11, 2025).

25 **IV.**     <u>**ARGUMENT IN SUPPORT OF THE RULE 50(b) MOTION**</u>

26     **A.**     **Plaintiffs Have Presented Insufficient Evidence to Support a Fourth**

27           **Amendment Claim for Excessive Force Against Deputy Ayala**

28      Under the Fourth Amendment, a police officer may use such force that is objectively

reasonable under the totality of the circumstances. *Graham v. Connor*, 490 U.S. 386, 397 (1989). An unreasonable seizure occurs when a law enforcement officer uses excessive force in making a lawful arrest. Factors to consider in determining whether an officer used excessive force are the severity of the crime at issue, whether the plaintiff posed a reasonable threat to the safety of the officer or others, and whether the plaintiff was resisting detention or attempting to escape. *Blanford v. Sacramento County*, 406 F.3d 1110, 1115 (9th Cir. 2005). An officer need not avail himself of the least intrusive means of responding to a situation; he need only act within a range of conduct that is reasonable. *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994).

In analyzing a Fourth Amendment excessive force claim, the facts underlying an excessive force claim are considered from the perspective of a reasonable officer on the scene, without regard to the arresting officer's subjective motivation for using force. *See Baker v. County of San Diego*, No. 09-CV-1194 BEN (WMc), 2012 WL 1903899, *2 (S.D. Cal. May 24, 2012); *Tatum v. City and County of San Francisco*, 441 F.3d 1090, 1095 (9th Cir. 2006). "The reasonableness inquiry is objective, evaluating 'whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.' " *Huff v. City of Burbank*, 632 F.3d 539, 549 (9th Cir. 2011). The reasonableness of the use of force is not judged "from the perspective of the person seized or of a court reviewing the situation with 20/20 hindsight." *Bryan v. MacPherson*, 630 F.3d 805, 817 (9th Cir. 2010).

Additionally, an officer need not avail himself of the least intrusive means of responding to a situation; he need only act within a range of conduct that is reasonable. *Forrester v. City of San Diego*, 25 F.3d 804, 807 (9th Cir.1994) (police officers "are not required to use the least intrusive degree of force possible" as long as the force used was reasonable); *see Luchtel v. Hagemann*, 623 F.3d 975, 982 (9th Cir.2010); *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994). In other words, Deputy Ayala was not limited to less than lethal force (TASER, pepper spray, etc.) when he reasonably believed Lewis was himself reaching for and charging at him with a lethal weapon such as a firearm. "To be sure, the Fourth Amendment does not necessarily 'require[ ] officers to delay their fire until a suspect turns his weapon on them,' and '[i]f the person is armed—or reasonably suspected of being armed— a furtive movement, harrowing gesture, or serious verbal threat might create an immediate threat.' "

1  *Peck v. Montoya*, 51 F.4th 877, 888 (9th Cir. 2022), *citing George*, 736 F.3d at 838.

2  Furthermore, "[w]hile California state law does factor pre-shooting conduct into whether an

3  officer acts 'reasonably when using deadly force,' [cite] '[t]he Fourth Amendment is narrower and

4  places less emphasis on pre[-]shooting conduct." *Hart v. City of Redwood City*, 99 F.4th 543, 554

5  (9th Cir. 2024). "[O]ne cannot 'establish a Fourth Amendment violation based merely on bad tactics

6  that result in a deadly confrontation that could have been avoided.' " *Id*.

7  The evidence established that Deputy Ayala received specific information from a confidential

8  informant that decedent was on probation and had "firearms." R.T., at pp. 164:15-166:7. When

9  Deputy Ayala thereafter conducted a traffic stop, Lewis fled the scene[7] and ran back to his vehicle,

10  where his hands (and, most importantly, his motives and intentions) were obscured. Deputy Ayala

11  testified that the decedent stated, during this tense encounter, "*You're going to die*" and/or "*I'm going*

12  *to kill you*," at the specific point in time when the decedent was half in the car and half getting out.

13  R.T., at pp. 91:7-13, 124:12-24. Under the totality of the circumstances, this was a case in which

14  force was objectively reasonable. Therefore, Defendants' renewed motion should be granted.

15  **B.    Deputy Ayala Is Entitled to Qualified Immunity**

16  As to Plaintiffs' federal claims, qualified immunity protects Section 1983 defendants "from

17  liability for civil damages insofar as their conduct does not violate clearly established statutory or

18  constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457

19  U.S. 800, 818 (1982). The threshold questions which any court must consider in ruling on the defense

20  of qualified immunity are: (1) has the plaintiff alleged or shown a violation of a constitutional right,

21  and (2) is the right at issue "clearly established" at the time of the defendant's alleged misconduct?

22  *Pearson v. Callahan*, 555 U.S. 223, 241 (2009); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001).

23  The first question of whether there were violations of constitutional rights is discussed above.

24  Only if the court finds distinct constitutional rights were violated (and no evidence supports an

25  underlying violation) does the court then have to determine whether those rights were clearly

26  established at the time of the defendant's alleged misconduct. "In determining whether a right was

27  _____

28  [7] "Evidence of flight is generally admissible as evidence of consciousness of guilt and of guilt itself." *United States v. Harris*, 792 F.2d 866, 869 (9th Cir. 1986).

–10–

'clearly established,' the court considers whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Garcia v. County of Merced*, 639 F.3d 1206, 1208 (9th Cir. 2011). The Court must answer this question in light of the clearly established law and the information possessed by the officer. *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1442-43 (9th Cir. 1991); *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity gives [police officers] breathing room to make reasonable but mistaken judgements," and "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). Qualified immunity may apply regardless of whether the officer makes a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

"[A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014). "In other words, 'existing precedent must have placed the statutory or constitutional question' confronted by the official 'beyond debate.'" *Id*. Existing precedent is determined by looking to the state of the law at the time of the subject incident to determine whether the officer had fair notice that his/her conduct was unlawful. *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).

The "general excessive force standard cannot always, alone, provide fair notice to every reasonable law enforcement officer that his or her conduct is unconstitutional." *Mattos v. Agarano*, 661 F.3d 433, 442 (9th Cir. 2011) (en banc). Here, the clearly established right is a citizen's right "to be free from excessive use of force under the facts and circumstances presented in this case." *Brown v. City of Golden Valley*, 574 F.3d 491, 499 (8th Cir. 2009). "Use of excessive force is an area of the law 'in which the result depends very much on the facts of each case,' and thus police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018).

The Court must answer this question in light of the clearly established law and the information possessed by each separate law enforcement officer. *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1442-43 (9th Cir. 1991); *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

–11–

Defendants' Renewed Motion for Judgment as a Matter of Law

1    Deference should be given to the judgment of reasonable officers on the scene, not "the person

2    seized or . . . a court reviewing the situation with 20/20 hindsight." *Vilar v. County of Yolo*, No. 2:12-

3    CV-01472-KJN, 2013 WL 6422936, at *8 (E.D. Cal. Dec. 9, 2013). In other words, "[q]ualified

4    immunity gives [police officers] breathing room to make reasonable but mistaken judgements," and

5    "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft*, 131

6    S.Ct. at 2085. Even if, in hindsight, a deputy's conduct is the result of a good faith overreaction, he

7    or she may still be entitled to qualified immunity. *See Lea v. Steinbronn*, 671 F. App'x 488, 489 (9th

8    Cir. 2016) (even if force is overreaction, officer still entitled to qualified immunity).

9    If the Court determines that the law was clearly established, it must then determine whether,

10    based on the circumstances of the case, any law enforcement officer made a reasonable mistake about

11    what the law required given the circumstance he confronted. *Saucier*, 121 S.Ct. at 205; *Brosseau*, 543

12    U.S. at 198; *see also Blankenhorn v. City of Orange*, 485 F.3d 463, 471 (9th Cir. 2007). "Therefore,

13    regardless of whether the constitutional violation occurred, [the deputies] should prevail if . . . [they]

14    could have reasonably believed that [their] particular conduct was lawful." *Romero v. Kitsap County*,

15    931 F.2d 624, 627 (9th Cir. 1991). "[T]he test is not whether [the deputies] attempted all other

16    available methods of responding to a situation, but whether [they] reasonably could believe [their]

17    conduct was lawful under the circumstances confronting [them]." *Neal-Lomax v. Las Vegas

18    Metropolitan Police Dept.*, 574 F.Supp.2d 1170, 1188 (D. Nev. 2008). If a law enforcement officer

19    could reasonably have believed that his actions were legal in light of clearly established law and the

20    information he possessed at the time, then his conduct falls within the protective sanctuary of

21    qualified immunity. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

22    The U.S. Supreme Court clarified the defense in November 2015. In *Mullenix v. Luna*, 136

23    S.Ct. 305, 308 (2015) it was held that qualified immunity should apply unless "the violative nature

24    of *particular* conduct is clearly established," noting that "[s]uch specificity is especially important in

25    the Fourth Amendment context." (*quoting Reichle v. Howards,* 566 U.S. 658, 132 S.Ct. 2088, 2093)

26    (emphasis in original).)

27    The case that closest resembles this case is *Cruz v. City of Anaheim*, where a confidential

28    informant told the police that Cruz was a gang member who sold methamphetamine, carried a gun,

–12–

1  had a past felony conviction, and said that "he was not going back to prison." 765 F.3d 1076, 1077–

2  78 (9th Cir. 2014). Multiple police officers pulled Cruz over for a broken taillight. *Id.* at 1078. The

3  officers surrounded him, and Cruz tried to escape by backing his SUV into a marked patrol car. *Id*.

4  The officers exited their vehicles with their guns lowered and ordered Cruz to get on the ground. *Id*.

5  According to the officers, Cruz exited his car, ignored their commands, and reached for the waistband

6  of his pants, prompting all five officers to open fire. *Id*. But some facts in the record undermined that

7  account. A bystander on the other side of Cruz's vehicle witnessed the shooting but was unable to

8  see if Cruz in fact reached toward his waistband because Cruz's car blocked his view. *Id*. The officers

9  fired twenty shots in about two to three seconds, killing Cruz. *Id*. His body was found "tangled in his

10  seat belt and hanging from it." *Id*. The officers did not find a weapon on him but recovered a loaded

11  gun from the passenger seat. *Id*.

12      The court in *Cruz* found that "It would be unquestionably reasonable for police to shoot a

13  suspect in Cruz's position if he reaches for a gun in his waistband, or even if he reaches there for

14  some other reason. Given Cruz's dangerous and erratic behavior up to that point, the police would

15  doubtless be justified in responding to such a threatening gesture by opening fire. Conversely, if the

16  suspect doesn't reach for his waistband or make some similar threatening gesture, it would clearly be

17  unreasonable for the officers to shoot him after he stopped his vehicle and opened the door. At that

18  point, the suspect no longer poses an immediate threat to the police or the public, so deadly force is

19  not justified." *Cruz*, 765 F.3d at 1078-79. Similarly, the Ninth Circuit in *Lal v. California*, 746 F.3d

20  1112, 1117 (9th Cir. 2014) held qualified immunity was appropriate when "Lal was holding a

21  football-sized rock over his head when he continued to advance toward Officers Newman and

22  Otterby, who shot him when he was about a yard away. In light of Lal's prior actions—the high speed

23  chase, hitting himself with a stone, throwing rocks at the officers—the officers reasonably believed

24  that Lal would heave the rock at them."

25      Considering the information available to Deputy Ayala at the time, qualified immunity should

26  have applied here, just as in *Cruz*. Prior to the encounter, Deputy Ayala had been informed that Lewis

27  had a gun, and Lewis ran to his truck and appeared to search for something under his seat moments

28  before charging at Deputy Ayala. R.T., at pp. 69:11-13, 88:4-18, 160:16-161:7, 165:16-166:7. Lewis

also told Deputy Ayala that he was "going to die" or that he was "going to kill him." R.T., at pp. 91:7-13; 124:12-24. As a result, it was objectively reasonable for Deputy Ayala to respond in self-defense. In the few, tense seconds that Deputy Ayala had to determine whether Lewis had a weapon (as Lewis was charging at him), it was objectively reasonable for the officer to have committed a mistake of fact as to whether or not Lewis truly had a gun in his hand. Given Lewis' unpredictable and uncooperative behavior, the only way for Deputy Ayala to have known for sure was to risk his life and potentially die before he could have known that he *might have been* incorrect. This was not a circumstance of constitutional liability. Rather, Deputy Ayala should have been afforded qualified immunity.

## C. Plaintiffs Have Presented Insufficient Evidence to Support a State Law Claim for Battery Against Deputy Ayala

To prove a battery claim against a peace officer, a plaintiff "must prove unreasonable force as an element of the tort." *Edson v. City of Anaheim*, 63 Cal.App.4th 1269, 1272 (1998). "A police officer in California may use reasonable force to make an arrest, prevent escape or overcome resistance and need not desist in the face of resistance." *Id*. at 1273; Cal. Pen. Code § 835(a).

> [Peace officers] act under color of law to protect the public interest. They are charged with acting affirmatively and using force as part of their duties, because "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."

*Edson*, 63 Cal.App.4th at 1273; *Robinson v. Adams*, No. 1:08-CV-01380-AWI-BA, 2015 WL 3706388, at *2-*3 (E.D. Cal. June 12, 2015) (Court denied plaintiff's request to remand battery claim after jury found no excessive force, concluding that the defendants were entitled to judgment on the corresponding civil battery claims).

Prior to the encounter, Deputy Ayala had been informed that Lewis had a gun, and Lewis ran to his truck and appeared to search for something under his seat moments before charging at Deputy Ayala. R.T., at pp. 69:11-13, 88:4-18, 160:16-161:7, 165:16-166:7. Lewis also told Deputy Ayala that he was "going to die" or that he was "going to kill him." R.T., at pp. 91:7-13; 124:12-24. As a result, it was objectively reasonable for Deputy Ayala to respond in self-defense. In the few, tense seconds that Deputy Ayala had to determine whether Lewis had a weapon (as Lewis was charging at

–14–

Defendants' Renewed Motion for Judgment as a Matter of Law

1  him), it was objectively reasonable for the officer to have committed a mistake of fact as to whether

2  or not Lewis truly had a gun in his hand. Given Lewis' unpredictable and uncooperative behavior,

3  the only way for Deputy Ayala to have known for sure was to risk his life and potentially die before

4  he could have known that he might have been incorrect. Consequently the force used by Deputy

5  Ayala was not unreasonable under the circumstances and judgment as a matter of law is appropriate

6  for this claim.

7     **D.**  **Plaintiffs Have Presented Insufficient Evidence to Support a State Law Claim**

8        **for Negligence Against Deputy Ayala**

9      "[I]n order to prove facts sufficient to support a finding of negligence, a plaintiff must show

10 that [the] defendant had a duty to use due care, that he breached that duty, and that the breach was

11 the proximate or legal cause of the resulting injury." *Hayes v. County of San Diego*, 57 Cal.4th 622,

12 629 (2013). But, the California Supreme Court has recognized that "[a]s long as an officer's conduct

13 falls within the range of conduct that is reasonable under the circumstances, there is no requirement

14 that he or she choose the 'most reasonable' action or the conduct that is the least likely to cause harm

15 and at the same time the most likely to result in the successful apprehension of a violent suspect, in

16 order to avoid liability for negligence." *Brown v. Ransweiler*, 171 Cal.App.4th 516, 537-538 (2009);

17 *Hayes*, 57 Cal.4th at 632. Often this means preshooting conduct becomes part of the analysis where

18 "the applicable question in a state law negligence claim for an officer-involved shooting is not

19 whether the preshooting conduct is itself negligent; it is whether the preshooting conduct renders the

20 shooting *itself* negligent." *A.G.1 v. City of Fresno*, No. 1:16-CV-1914-JLT-SAB, 2023 WL 3168510,

21 at *3 (E.D. Cal. Apr. 28, 2023). The evidence presented by Plaintiffs does not establish preshooting

22 conduct that would make the shooting by Deputy Ayala itself negligent.

23    **E.**  **Plaintiffs Failed to Establish a Bane Act Claim**

24     The Bane Act "provides that a person may bring a cause of action 'in his or her own name

25 and on his or her own behalf' against anyone who 'interferes by threats, intimidation or coercion,'

26 with the exercise or enjoyment of any constitutional or statutory right." *Bay Area Rapid Transit Dist.*

27 *v. Superior Court*, 38 Cal.App.4th 141, 144 (1995), *quoting* Cal. Civ. Code § 52.1. Bane Act claims

28 are routinely alleged in Section 1983 claims and the question about the Bane Act's requirement that

1    interference with rights must be accomplished by threats, intimidation or coercion "has been the

2    source of much debate and confusion" and endeavored to provide clarity. *Cornell v. City & Cnty of*

3    *San Francisco*, 17 Cal.App.5th 766, 801 (2017). The Bane Act is not violated simply when

4    constitutional rights are violated. "[S]ection 52.1 does require an attempted or completed act of

5    interference with a legal right, accompanied by a form of coercion." *Jones v. Kmart Corp.*, 17 Cal.

6    4th 329, 334 (1998).

7    　　　The *Cornell* court agreed "that the use of excessive force can be enough to satisfy the 'threat,

8    intimidation or coercion' element of Section 52.1." *Id*. at 799. *Cornell* also makes clear, however,

9    that the Bane Act imposes an additional requirement beyond a finding of a constitutional violation:

10   "[p]roperly read, the statutory phrase 'threat, intimidation or coercion' serves as an aggravator

11   justifying the conclusion that the underlying violation of rights is sufficiently egregious to warrant

12   enhanced statutory remedies, beyond tort relief." *Id*. at 800. *Cornell* thus held that "the egregiousness

13   required by Section 52.1 is tested by whether the circumstances indicate the arresting officer had a

14   specific intent to violate the arrestee's right to freedom from unreasonable seizure." *Id*. at 801. In so

15   holding, Cornell adopted the specific intent standard established in *Screws v. United States*, 325 U.S.

16   91 (1945), for assessing criminal violations of federal civil rights. *Id*. at 801-803.

17   　　　In applying these principles, the Ninth Circuit concluded in *Reese v. Cty of Sacramento*, 888

18   F.3d 1030 (9th Cir. 2018) that "a mere intention to use force that the jury ultimately finds

19   unreasonable—that is, general criminal intent—is insufficient." Rather, the jury must find that the

20   defendants "intended not only the force, but its *unreasonableness,* its character as 'more than

21   necessary under the circumstances.' " *Id.* (emphasis added). But the defendants need not have been

22   'thinking in constitutional or legal terms at the time of the incidents, because a reckless disregard for

23   a person's constitutional rights is evidence of a specific intent to deprive that person of those rights.'

24   *Id.*; *Reese*, 888 F.3d at 1045. Plaintiff must also show "the defendant's specific intent to violate the

25   plaintiff's constitutional rights." *Luna v. Cnty. of Riverside*, No. EDCV210467JGBSPX, 2023 WL

26   7803386, at *14 (C.D. Cal. Oct. 20, 2023), *quoting Rodriguez v. County of L.A.*, 891 F.3d 776, 802

27   (9th Cir. 2018).

28   　　　Plaintiffs have presented no evidence that Deputy Ayala engaged Lewis with the specific

–16–

Defendants' Renewed Motion for Judgment as a Matter of Law

1   intent to violate Lewis' constitutional right to be free from excessive force. Rather, at closing

2   argument, Plaintiffs' own counsel argued that Ayala's excessive force was the result of an

3   "*overreaction*" rather than a specific intent to violate Lewis's right to be free from excessive force

4   through the use of violence. R.T., at pp. 898:1-7, 911:14-16, 972:8-11, 973:2-6. If an overreaction is

5   sufficient to violate the Bane Act, then the first and second elements of Jury Instruction 16 are

6   rendered meaningless. The jury's verdict on this claim—and Plaintiffs' Counsel's misleading

7   arguments during closing—were erroneous and prejudicial. Judgment as a matter of law is

8   appropriate for this claim.

9        **F.**    **Various State Law Defenses and Immunities Protect Deputy Ayala From**

10              **Liability.**

11        Deputy Ayala acted in self-defense, and thus no liability exists. A "defendant is not liable if

12   that defendant reasonably believed, in view of all the circumstances of the case, that the plaintiff was

13   going to harm him or her and the defendant used only the amount of force reasonably necessary to

14   protect himself or herself." *J.J. v. M.F.*, 223 Cal.App.4th 968, 976 (2014). "The right to use force

15   against another has long been limited by the condition that the force be no more than ' "that which

16   reasonably appears necessary, in view of all the circumstances of the case, to prevent the impending

17   injury." ' When the amount of force used is justifiable under the circumstances, it is not willful and

18   the actor may escape liability for intentionally injurious conduct that is otherwise actionable. But if

19   force is applied in excess of that which is justified, the actor remains subject to liability for the

20   damages resulting from the excessive use of force. . . . When an alleged act of self-defense or defense

21   of property is at issue, the question of what force was reasonable and justified is peculiarly one for

22   determination by the trier of fact." *Calvillo-Silva v. Home Grocery*, 19 Cal.4th 714, 730–731 (1998),

23   *overruled in part on other grounds*. "The right of self-defense is not limited by actualities. The correct

24   rule … [is]: 'Generally . . . , the force that one may use in self-defense is that which reasonably

25   appears necessary, in view of all the circumstances of the case, to prevent the impending injury.' In

26   emphasizing that the law of self-defense is a law of necessity courts should never lose sight of the

27   fact that the necessity may be either real or apparent." *Vaughn v. Jonas*, 31 Cal.2d 586, 599–600

28   (1948), internal citations omitted.

1    During the last 30 seconds of Deputy Ayala's encounter with Lewis, there was constant

2    escalation through the multiple shifts and changes in the dynamic between Lewis and Deputy Ayala

3    as was seen in Defense Exhibit E, a surveillance video from Wienerschnitzel. It started with Lewis

4    first lunging at Deputy Ayala with fists clenched, then turned to a foot pursuit with Lewis running

5    around Deputy Ayala's patrol vehicle and to the back of big rig loaded with hay and Deputy Ayala

6    removing the keys from Lewis' SUV, only for Lewis to run back to the SUV, get inside without

7    closing the door and appear to Deputy Ayala that Lewis was searching under his seat for something

8    before getting out of the SUV, turning toward Deputy Ayala and charging at Deputy Ayala. It

9    reasonably appeared necessary for Deputy Ayala to defend himself within those last couple of

10   seconds with Lewis based on all the evidence presented.

11   Other defenses and immunities applicable to Deputy Ayala include Penal Code sections 196

12   ("Homicide is justifiable when committed by peace officers and those acting by their command in

13   their aid and assistance, under either of the following circumstances: (b) When the homicide results

14   from a peace officer's use of force that is in compliance with Section 835a."), 835a ("(b) Any peace

15   officer who has reasonable cause to believe that the person to be arrested has committed a public

16   offense may use objectively reasonable force to effect the arrest, to prevent escape, or to overcome

17   resistance. (c)(1) Notwithstanding subdivision (b), a peace officer is justified in using deadly force

18   upon another person only when the officer reasonably believes, based on the totality of the

19   circumstances, that such force is necessary for either of the following reasons: (A) To defend against

20   an imminent threat of death or serious bodily injury to the officer or to another person. . . . (d) A

21   peace officer who makes or attempts to make an arrest need not retreat or desist from their efforts by

22   reason of the resistance or threatened resistance of the person being arrested. A peace officer shall

23   not be deemed an aggressor or lose the right to self-defense by the use of objectively reasonable force

24   in compliance with subdivisions (b) and (c) to effect the arrest or to prevent escape or to overcome

25   resistance. For the purposes of this subdivision, 'retreat' does not mean tactical repositioning or other

26   deescalation tactics.")

27   As with self-defense, Deputy Ayala is entitled to the protection of Penal Code section 196 and

28   835a for his use of deadly force because the evidence shows that Deputy Ayala reasonably believed

–18–

Defendants' Renewed Motion for Judgment as a Matter of Law

1   based on the totality of the circumstances before him (information that Lewis was in possession of a

2   firearm, Lewis' behavior of yelling "fuck no" in response to being told his car would be searched,

3   lunging at and then running from Deputy Ayala, and then getting back into his SUV appearing to

4   Deputy Ayala to be rummaging under the seat, only to get out the SUV and then charge at Deputy

5   Ayala) that deadly force was necessary to defend himself from an imminent threat of death by what

6   he believed was an armed subject.

7   **V.      <u>CONCLUSION</u>**

8        For all these reasons, Defendants County of Kern and Deputy Jason Ayala request that the

9   Court grant judgment as a matter of law in favor of Defendants. In the alternative, Defendants request

10  that the Court grant their concurrently filed Motion for a New Trial.

11

12  Dated: April 18, 2025                    Respectfully Submitted,

13                                           MARGO A. RAISON, COUNTY COUNSEL

14                                           By:<u>/s/ Andrew C. Hamilton          </u>
                                                 Kimberly L. Marshall, Deputy
15                                               Andrew C. Hamilton, Deputy
                                                 Attorneys for County of Kern
16

17                                           WEAKLEY & ARENDT, APC

18                                           By: <u>/s/ Brande L. Gustafson          </u>
                                                 James D. Weakley, Esq.
19                                               Brande L. Gustafson, Esq.
                                                 Attorneys for Jason Ayala
20

21

22

23

24

25

26

27

28

Defendants' Renewed Motion for Judgment as a Matter of Law