1  LAW OFFICES OF DALE K. GALIPO
2  Dale K. Galipo, Esq. (SBN 144074)
   dalekgalipo@yahoo.com
3  Renee V. Masongsong, Esq. (SBN 281819)
   rvalentine@galipolaw.com
4  21800 Burbank Boulevard, Suite 310
   Woodland Hills, CA 91367
5  Telephone:    (818) 347-3333
   Facsimile:    (818) 347-4118
6
   Attorneys for Plaintiffs,
7  R.L., M.L., H.L., and A.W.

8              UNITED STATES DISTRICT COURT
9         FOR THE EASTERN DISTRICT OF CALIFORNIA

10 | MICKEL ERICK LEWIS JR, et al.,          | Case No: 1:21−CV−00378−KES-CDB
11 |              Plaintiffs,                 | Assigned to:
   |                                          | Hon. District Judge Kirk E. Sherriff
12 |       vs.                                |
13 | COUNTY OF KERN and JASON                 | **PLAINTIFFS' NOTICE OF MOTION
   | AYALA,                                   | AND MOTION FOR ATTORNEYS'
14 |                                          | FEES**
   |              Defendants.                 | *Filed concurrently with supporting
15 |_____| declarations and exhibits*
16 | R.L., et al.,                            |
   |              Plaintiffs,                 | Date: June 16, 2025
17 |                                          | Time: 1:30 p.m.
   |       vs.                                | Dept: 6
18 |                                          |
19 | COUNTY OF KERN and JASON                 |
   | AYALA,                                   |
20 |              Defendants.                 |

21
22
23
24
25
26
27
28
                                          1:21−CV−00378−KES-CDB
         PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

**TO THE HONORABLE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on June 16, 2025, at 1:30 p.m. or as soon thereafter as is practicable for this Honorable Court, Plaintiffs will and hereby do move this Court for an Order awarding reasonable attorneys' fees and costs pursuant to 42 U.S.C. Section 1988, Federal Rule of Civil Procedure 54(d), California Civil Code § 52 *et seq.* and Local Rule 54 in the enhanced lodestar amount of **$3,850,737.** In addition to requesting compensation for their time spent in litigating this case and bringing it to trial, Plaintiffs are also requesting compensation for their counsel's time necessarily spent in drafting this motion and the anticipated reply brief, as well as compensation for their time spent opposing Defendants' post-trial motions and any appeal, and appearing at any related hearings. This Motion is based on grounds that the Plaintiffs were the prevailing party at trial on their Fourth Amendment civil rights claim and on their Bane Act claim and are entitled to statutory attorneys' fees as a matter of law.

**Statement of Meet and Confer Compliance**: This motion is made following email correspondence between counsel for the parties, indicating that Plaintiffs intended to file a motion requesting attorneys' fees.

This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the concurrently filed declarations, the attached exhibits, the pleadings on file herein, and such other oral and documentary evidence as may be presented at the time of the hearing.

Respectfully submitted,

DATED: April 25, 2025                    LAW OFFICES OF DALE K. GALIPO

                                         By:    _____*s/ Renee V. Masongsong*_____
                                                Dale K. Galipo
                                                Renee V. Masongsong
                                                Attorneys for Plaintiffs R.L., M.L., H.L, and A.W.

1    DATED: April 25, 2025              ALEXANDER MORRISON + FEHR LLP

2                                       TONI JARAMILLA, APLC

3                          By:     _____*s/ J. Bernard Alexander, III*_____
                                   J. Bernard Alexander, III
4                                  Toni Jaramilla
                                   Attorneys for Plaintiffs Mickel Erick Lewis, Jr.,
5                                  Oriona Lewis and Briona Lewis

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

# <u>TABLE OF CONTENTS</u>

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................... 1

I. INTRODUCTION .............................................................................................................. 1

II. PLAINTIFFS ARE ENTITLED TO FEES UNDER BOTH § 1983 AND
CALIFORNIA LAW ........................................................................................................ 2

    A.    Plaintiffs Are the Prevailing Party Entitled to Attorneys' Fees Under
42 U.S.C. § 1988. ................................................................................................ 2

    B.    Legislative History of 42 U.S.C. § 1988. ........................................................... 2

    C.    The Supreme Court's Standard in *Hensley v. Eckerhart*. .............................. 3

    D.    Plaintiffs Are the Prevailing Party ..................................................................... 4

III. PLAINTIFFS' "LODESTAR" IS APPROPRIATE AND REASONABLE ................. 6

    A.    Counsels' Hours Are Reasonable given the Time and Labor Required
and Preclusion from Other Employment. ........................................................... 6

    B.    Skill Necessary to Perform Proper Legal Services given the
Complexity and Undesirability of the Case, and Risk of Non-
Payment. ............................................................................................................. 9

    C.    Counsel's Hourly Rates Are Reasonable Considering the Customary
Fee, Contingency Basis, Experience and Reputation, and Awards in
Similar Cases. ................................................................................................... 10

        i.    Hourly Rate for Dale K. Galipo ....................................................... 13

        ii.    Hourly Rate for Associates at Law Offices of Dale K. Galipo .......... 15

        iii.    Hourly Rate for J. Bernard Alexander, III ........................................ 16

        iv.    Hourly Rate for Toni Jaramilla ......................................................... 17

    D.    Plaintiffs' Counsel Are Entitled to Fees and Costs for Litigating the
Instant Motion .................................................................................................. 17

IV.    A 2.0 LODESTAR ENHANCEMENT IS APPROPRIATE ..................................... 18

V.    CONCLUSION ......................................................................................................... 22

# <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Amaral v. Cintas Corp. No. 2,*
    163 Cal. App. 4th 1157 (Cal. Ct. App. 2008)...................................................... 20

*Arizona v. ASARCO LLC,*
    773 F.3d 1050 (9th Cir. 2014) .............................................................................. 3

*Ballen v. City of Redmond,*
    466 F.3d 736 (9th Cir. 2006) ................................................................................ 6

*Barjon v. Dalton,*
    132 F.3d 496 (9th Cir. 1997) .............................................................................. 11

*Beaty v. BET Holdings, Inc.,*
    222 F.3d 607 (9th Cir. 2000) ................................................................................ 7

*Bell v. Farmers Ins. Exch.,*
    No. A101246, 2004 WL 1281818 (Cal. Ct. App. June 9, 2004).......................... 22

*Bender v. Cty. of Los Angeles,*
    217 Cal. App. 4th 968 (2013) ....................................................................... 21, 22

*Blum v. Stenson,*
    465 U.S. 886 (1984) ......................................................................... 5, 10, 12

*Bouman v. Block,*
    940 F.2d 1211 (9th Cir. 1991) .............................................................................. 3

*Brewster v. Dukakis,*
    786 F.2d 16 (1st Cir. 1986) .................................................................................. 4

*Burlington v. Dague,*
    505 U.S. 557 (1992) ............................................................................................. 6

*Camacho v. Bridgeport Financial, Inc.,*
    523 F.3d 973 (9th Cir. 2018) .............................................................................. 12

*Chavez v. City of Los Angeles,*
    47 Cal. 4th 970 (2010)........................................................................................... 5

*Chavez v. Netflix, Inc.,*
    162 Cal. App. 4th 43 (Cal. Ct. App. 2008)......................................................... 22

*City of Riverside v. Rivera,*
    477 U.S. 561 (1986) ...................................................................................... 4, 12

*Clark v. City of Los Angeles,*
    803 F.2d 987 (9th Cir. 1986) .............................................................................. 18

*Colgan v. Leatherman Tool Grp., Inc.,*
    No. B196650, 2007 WL 4532916 (Cal. Ct. App. Dec. 27, 2007)........................ 22

*Collins v. Chandler Unified Sch. Dist.,*
    644 F.2d 759 (9th Cir. 1981) ................................................................................ 3

*Craig v. Cnty. of Orange,*
    No. SACV1700491CJCKESX, 2019 WL 12378994 (C.D. Cal. Sept. 5, 2019) 11, 15

*Crommie v. PUC,*
    840 F. Supp. 719 (N.D. Cal. 1994)..................................................................... 22

*Dang v. Cross,*
    422 F.3d 800 (9th Cir. 2005) ........................................................................ 10, 11

*Davis v. City & County of San Francisco,*
    976 F.2d 1536 (9th Cir. 1992) .............................................................................. 4

*Davis v. Prison Health Svcs.,*
    No. C 09–2629, 2012 WL 4462520 (N.D. Cal. Sept. 25, 2012) ............................ 2

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

*Dennis v. Chang,*
    611 F.2d 1302 (9th Cir. 1980) ............................................................... 3

*Donastorg v. City of Ontario,*
    No. EDCV18992JGBSPX, 2021 WL 6103545 (C.D. Cal. Sept. 23, 2021) ....... 14, 15

*Fair Housing of Marin v. Combs,*
    285 F.3d 899 (9th Cir. 2002) ................................................................... 5

*Farrar v. Hobby,*
    506 U.S. 103 (1992) ............................................................................... 6

*Fish v. St. Cloud State Univ.,*
    295 F.3d 849 (8th Cir. 2002) ................................................................. 12

*French v. City of Los Angeles,*
    No. EDCV2000416JGBSPX, 2022 WL 2189649 (C.D. Cal. May 10, 2022) ........ 14

*Garcia v. Los Angeles Cnty. Sheriff's Dep't,*
    No. CV 09-8943 MMM (SHX), 2015 WL 13646906 (C.D. Cal. Sept. 14, 2015)... 12

*Gates v. Deukmjian,*
    987 F.2d 1392 (9th Cir. 1992) ................................................... 4, 11, 12, 14

*Glass v. Pfeffer,*
    849 F.2d 1261 (10th Cir. 1988) .............................................................. 18

*Graham v. Daimler Chrysler Corp.,*
    34 Cal. 4th 553 (2004) .......................................................................... 20

*Gregory v. Oliver,*
    2003 WL 1860270 (N.D. Ill. Apr. 9, 2003) ................................................ 9

*Guam Society of Obstetricians & Gynecologists v. Ada,*
    100 F.3d 691 (9th Cir. 1996) ................................................................... 4

*Hall v. Cole,*
    412 U.S. 1 (1973) .................................................................................. 3

*Harris v. Marhoefer,*
    24 F.3d 16 (9th Cir. 1994) .................................................................... 19

*Hensley v. Eckerhart,*
    461 U.S. 424 (1983) ......................................................................... 3, 4, 5

*Hernandez v. George,*
    793 F.2d 264 (10th Cir. 1986) .............................................................. 18

*Hernandez v. Kalinowski,*
    146 F.3d 196 (3rd Cir. 1998) ................................................................ 18

*Herrington v. Cty. Of Sonoma,*
    883 F.2d 739 (9th Cir. 1989) .................................................................. 2

*Hiken v. Dep't of Def.,*
    836 F.3d 1037 (9th Cir. 2016) .............................................................. 12

*Horsford v. Bd. Of Trustees of Cal. State Univ.,*
    132 Cal. App. 4th 359 (2005) .................................................................. 8

*Horsford v. Bd. of Trustees of Cal. State Univ.,*
    132 Cal. App. 4th 359 (Cal. Ct. App. 2005) ......................................... 20, 21

*In re Immune Response Sec. Litig.,*
    497 F.Supp.2d 1166 (S.D. Cal. 2007) .................................................... 19

*Jordan v. Multnomah Cnty.,*
    815 F.2d 1258 (9th Cir. 1987) ................................................................ 7

*Kerr v. Screen Extras Guild, Inc.,*
    526 F.2d 67 (9th Cir. 1975) .................................................................... 6

*Ketchum v. Moses*,
  24 Cal. 4th 1122 (2001) ..........................................................7, 19, 20, 22

*Leuzinger v. Cnty. of Lake*,
  No. C 06-00398-SBA, 2009 WL 839056 (N.D. Cal. Mar. 30, 2009) .................... 22

*Lund v. Affleck*,
  587 F.2d 75 (1st Cir.1978) .......................................................................... 18

*Maldonado v. Club Fresh*,
  No. C055954, 2009 WL 3246450 (Cal. Ct. App. Oct. 9, 2009) ........................... 22

*Mangold v. PUC*,
  67 F.3d 1470 (9th Cir. 1995) ....................................................................... 22

*McCown v. City of Fontana*,
  565 F.3d 1097 (9th Cir. 2009) ..................................................................... 23

*McGrath v. County of Nevada*,
  67 F.3d 248 (9th Cir. 1995) ........................................................................... 6

*McKibben v. McMahon*,
  2019 WL 1109683 (C.D. Cal. Feb. 28, 2019) ................................................ 12

*Mendez v. County of San Bernardino*,
  540 F.3d 1109 (9th Cir. 2009) ....................................................................... 3

*Missouri v. Jenkins by Agyei*,
  491 U.S. 274 (1989) .................................................................................. 13

*Moore v. James H. Matthews & Co.*,
  682 F.2d 830 (9th Cir. 1982) ......................................................................... 7

*Morales v. City of San Rafael*,
  96 F.3d 359 (9th Cir. 1996) ......................................................................... 23

*Moreno v. City of Sacramento*,
  534 F.3d 1106 (9th Cir. 2008) .................................................................. 8, 13

*National Ass'n of Corder v. Gates*,
  688 F. Supp. 1418 (C.D. Cal. 1988) ................................................................ 4

*Odima v. Westin Tucson Hotel*,
  53 F.3d 1484 (9th Cir. 1995) ......................................................................... 4

*Orr v. Brame*,
  727 F. App'x 265 (9th Cir. 2018) ................................................................. 23

*Parker v. Vulcan Materials Co. Long Term Disability Plan*,
  No. EDCV 07–1512 ABC (OPx), 2012 WL 843623 (C.D. Cal. Feb. 16, 2012) ..... 13

*Peak-Las Positas Partners v. Bollag*,
  171 Cal. App. 4th 101 (2009) ......................................................................... 7

*Pellegrino v. Robert Half Int'l, Inc.*,
  182 Cal. App. 4th 278 (Cal. Ct. App. 2010) .................................................... 22

*Pennsylvania v. Delaware Valley Citizens' Counsel for Clean Air*,
  483 U.S. 711 (1987) .................................................................................. 13

*Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guarantee Assn.*,
  163 Cal. App. 4th 550 (Cal. Ct. App. 2008) ...................................................... 8

*Prison Legal News v. Schwarzenegger*,
  608 F.3d 446 (9th Cir. 2010) ....................................................................... 10

*Ramon v. County of Santa Clara*,
  173 Cal. App. 4th 915 (Cal. Ct. App. 2009) ...................................................... 7

*Roberts v. City of Honolulu*,
  938 F.3d 1020 (2019) ................................................................................. 13

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

*Rodriguez v. Cty. of Los Angeles*,
    96 F. Supp. 3d 1012 (C.D. Cal. 2014) ............................................................. 20, 21

*Schwarz v. Secretary of Health & Human Servs.*,
    73 F.3d 895 (9th Cir. 1995) ................................................................................. 5

*Serrano v. Priest*,
    20 Cal. 3d 25 (1977) .......................................................................................... 21

*Serrano v. Unruh*,
    32 Cal. 3d 621 (1982) .................................................................................. 4, 10

*Sethy v. Alameda County Water Dist.*,
    602 F.2d 894 (9th Cir. 1979) ............................................................................... 3

*Texas Teachers v. Garland School Dist.*,
    489 U.S. 782 (1989) ............................................................................................ 5

*Trevino v. Gates*,
    99 F.3d 911 (9th Cir. 1996) ............................................................................... 11

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
    896 F.2d 403 (9th Cir. 1990) .................................................................... 7, 11, 12

*Uphold our Heritage v. Town of Woodside*,
    No. A120749, 2008 WL 4868816 (Cal. Ct. App. Nov. 12, 2008) ...................... 22

*Ustrak v. Fairman*,
    851 F.2d 983 (7th Cir. 1988) ............................................................................... 4

*Valenzuela v. City of Anaheim*,
    No. SACV1700278CJCDFMX, 2023 WL 2249178 (C.D. Cal. Feb. 23, 2023) ...... 15

*Vo v. Las Virgenes Municipal Utility Dist.*,
    79 Cal. App. 4th 440 (2000) ................................................................................ 7

*W. Century 102, Ltd. v. City Of Inglewood*,
    No. B164350, 2004 WL 886384 (Cal. Ct. App. Apr. 27, 2004) ........................ 22

*Welch v. Metro. Life Ins. Co.*,
    480 F.3d 942 (9th Cir. 2007) ............................................................................. 11

*Wershba v. Apple Computer, Inc.*,
    91 Cal. App. 4th 224 (Cal. Ct. App. 2001) ....................................................... 22

*Wiersta v. Heffernan*,
    789 F.2d 968 (1st Cir. 1986) ............................................................................... 9

*Wilson v. Union Pacific R. Co.*,
    56 F.3d 1226 (10th Cir. 1995) ............................................................................. 9

*Zeigler v. Cnty. of San Luis Obispo*,
    No. CV179295MWFAFMX, 2023 WL 3432238 (C.D. Cal. Mar. 1, 2023) ........... 14

*Zelaya v. City of Los Angeles*,
    No. 2:20-CV-08382-ODW (MAAX), 2024 WL 3183882 (C.D. Cal. June 25, 2024)
    ................................................................................................................... 15

### Statutes

42 U.S.C. § 1988 ......................................................................................................... 2

California Civil Code § 52.1 ................................................................................... 5, 19

### Other Authorities

S. Rep. No. 94-1011 (1976) ...................................................................................... 12

### Other

1976 U.S. Code Cong. & Ad. News 5908 .............................................................. 2, 12

Legislative History of Section 1988, S. Rep. No. 94-1011, 94th Cong. 2d Session ....... 2, 12

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.     INTRODUCTION

On March 19, 2025, the jury in this matter reached a verdict against Defendants Jason Ayala and the County of Kern by and through the Kern County Sheriff's Department and in favor of Plaintiffs Mickel Erick Lewis, Jr., Oriona Lewis, Briona Lewis, R.L., M.L., H.L., and A.W, on Plaintiffs' Fourth Amendment claim for excessive force and state law claims for negligence, battery and violation of the Bane Act brought on behalf of their father, Mickel Lewis, Sr. The jury awarded Plaintiffs damages totaling $30.5 million. As the prevailing party, Plaintiffs now request attorneys' fees pursuant to 42 U.S.C. § 1988 and California Civil Code § 52.1(i), § 52(a), in the amount of $**3,850,738**.  Plaintiffs also request that this Court apply a 2.0 multiplier to the attorneys' fees pursuant to California Civil Code § 52.1 and § 52(a).  The attorney fee award is justified by the significant verdict in Plaintiffs' favor, Plaintiffs' counsels' skill and experience in the civil rights field, the difficulties and complexities of this case, and the risk assumed by Plaintiffs' counsel.  Plaintiffs litigated this case for over four years, with diligence and dedication to vindicating Mr. Lewis's constitutional rights, ultimately culminating in a tremendously favorable result for Plaintiffs.  Police misconduct lawsuits such as the instant matter advance the significant public benefit of deterring abuse by law enforcement officers who would otherwise operate free of any meaningful restraints. The instant case exemplifies that, but for competent willing counsel, police misconduct would have gone without consequences. For these reasons and those set forth in detail below and in the accompanying declarations, Plaintiffs' counsels are highly deserving of the full amount of the attorneys' fees requested herein.

## II.    PLAINTIFFS ARE ENTITLED TO FEES UNDER BOTH § 1983 AND CALIFORNIA LAW

### A.  Plaintiffs Are the Prevailing Party Entitled to Attorneys' Fees Under 42 U.S.C. § 1988.

Plaintiffs prevailed on their claims under the Fourth Amendment and California Civil Code § 52.1, as the jury issued a verdict in their favor and awarded Plaintiffs $30.5 million dollars in damages. Dkt. 153. They are therefore entitled to prevailing party fees and expenses under 42 U.S.C. § 1988(b). *See Davis v. Prison Health Svcs.*, No. C 09–2629, 2012 WL 4462520 at *8 (N.D. Cal. Sept. 25, 2012) (citing *Herrington v. Cty. Of Sonoma*, 883 F.2d 739, 743 (9th Cir. 1989)).

### B.  Legislative History of 42 U.S.C. § 1988.

The Civil Rights Attorney's Fees Awards Act of 1976, codified as 42 U.S.C. § 1988, was enacted to encourage competent counsel to undertake and enforce civil rights cases by assuring them that if they were successful in vindicating federally protected rights, they would be paid in the same manner as "is traditional with attorneys compensated by feepaying clients," even when the results obtained are entirely non-pecuniary or solely of nominal pecuniary value.  *See* Legislative History of Section 1988, S. Rep. No. 94-1011, 94th Cong. 2d Session, reprinted in 1976 U.S. Code Cong. & Ad. News 5908.  Section 1988 clearly provides that "[i]n any action or proceeding to enforce a provision of section[] . . . 1983 . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee."

Congress has recognized that "civil rights laws depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain."  *Id.* at 5910.  "[T]he citizen who must sue to enforce the law has little or no money with which to hire a lawyer," thus, "citizens must have the opportunity to recover what it costs them to vindicate these rights in court."  *Id.* Given this purpose, courts have long established that a court's discretion to deny attorney's fees to a successful

civil rights litigant "is very narrow and . . . fee awards should be the rule rather than the exception." *Mendez v. County of San Bernardino*, 540 F.3d 1109, 1126 (9th Cir. 2009), *overruled on other grounds by Arizona v. ASARCO LLC*, 773 F.3d 1050 (9th Cir. 2014); *see also Sethy v. Alameda County Water Dist.*, 602 F.2d 894, 897 (9th Cir. 1979) ("Congress plainly intended that successful Plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.").

The application for attorneys' fees "must be liberally construed to achieve Congress' purpose to encourage compliance with and enforcement of the civil rights laws." *Collins v. Chandler Unified Sch. Dist.*, 644 F.2d 759, 764 (9th Cir. 1981) (citation omitted). Justice Brennan opined that "[n]ot to award counsel fees in cases such as this would be tantamount to repealing the Act itself by frustrating its basic purpose." *Hall v. Cole*, 412 U.S. 1, 13 (1973). The difficulty for citizens to stand up to the police is great, especially considering the disparity in funding. *See id.* "An award in these circumstances serves the purposes of the Act for two reasons: (1) the award encourages the legal services organization to expend its limited resources in litigation aimed at enforcing the civil rights statutes; and (2) the award encourages potential defendants to comply with civil rights statutes." *Dennis v. Chang*, 611 F.2d 1302, 1306 (9th Cir. 1980).

### C. The Supreme Court's Standard in *Hensley v. Eckerhart*.

In *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983), the Supreme Court held that the purpose of 42 U.S.C. § 1988 is to ensure effective access to the judicial process for persons with civil rights grievances. Courts have repeatedly held that attorneys in civil rights suits are entitled to recover their full fees and costs if they achieve meaningful and substantial relief, even if they do not prevail on every theory or against every party. *Bouman v. Block*, 940 F.2d 1211, 1237 (9th Cir. 1991). "Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." *Hensley*, 461 U.S. at 435. Otherwise, attorneys would be discouraged from taking on high risk cases such as this one. *Id.*; *see also Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1499

(9th Cir. 1995); *Serrano v. Unruh*, 32 Cal. 3d 621 (1982); *Guam Society of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691, 700 (9th Cir. 1996) (Plaintiff cannot be faulted for their thoroughness in pleading related claims).

A full fee is one that encourages the vindication of constitutional and statutory rights through recovery of all time spent on the case, calculated at private market rates. It must ensure that attorneys are paid for all the time they devote to the litigation. It is not limited by the number of causes of action on which relief is awarded, or the amount of damages recovered. *See City of Riverside v. Rivera*, 477 U.S. 561 (1986). Parsing discrete issues according to their relative importance or outcome is disfavored because doing so would require the trial court to make mini-determinations of prevailing party status on each dispute. *See Brewster v. Dukakis*, 786 F.2d 16, 18 (1st Cir. 1986). Once a plaintiff has been determined to be the prevailing party, he is entitled to all reasonable time spent:

> Where 'the plaintiff's claims of relief . . . involve a common core of facts or [are] based on related legal theories,' so that 'much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis, . . . the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.'

*Ustrak v. Fairman*, 851 F.2d 983, 988 (7th Cir. 1988) (quoting *Hensley*, 461 U.S. at 435 (1983)). Once the party claiming fees presents evidence supporting the claimed rate, the burden shifts to the party opposing fees to present equally specific countervailing evidence. *See Gates v. Deukmjian*, 987 F.2d 1392, 1405 (9th Cir. 1992); *Davis v. City & County of San Francisco*, 976 F.2d 1536, 1546 (9th Cir. 1992), modified on other grounds (9th Cir. 1993) 984 F.2d 345; *National Ass'n of Corder v. Gates*, 688 F. Supp. 1418, 1422 (C.D. Cal. 1988), aff'd in part and rev'd in part 947 F2d 374 (9th Cir. 1991); *see also Fair Housing of Marin v. Combs*, 285 F.3d 899, 908 (9th Cir. 2002); *Schwarz v. Secretary of Health & Human Servs.*, 73 F.3d 895, 908 (9th Cir. 1995).

### D. Plaintiffs Are the Prevailing Party

Plaintiffs are the prevailing party in this litigation, and judgment was entered in Plaintiffs' favor on their claims under the Fourth Amendment and California Civil Code §

52.1. The jury awarded Plaintiffs a total of $30.5 million in damages.   Under 42 U.S.C. § 1988 and California Civil Code § 52.1(i), civil rights plaintiffs who have prevailed on some significant issue in their litigation are entitled to an award of fees. *See*, *e.g.*, *Hensley*, 461 U.S. at 433; *Chavez v. City of Los Angeles*, 47 Cal. 4th 970, 989 (2010) (citing *Hensley* and indicating that California law was "consistent" with it). Once the fee entitlement threshold has been crossed, the prevailing plaintiff's fee award is based upon the lodestar method. "[T]he number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified." *Hensley*, 461 U.S. at 435. The appropriate rate is the "market rate," which is demonstrated by the moving party submitting "satisfactory evidence in addition to the attorney's own affidavit that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984). Such a rate "is normally deemed to be reasonable, and is referred for convenience as the prevailing market rate." *Id*.

The Supreme Court in *Texas Teachers v. Garland School Dist.*, 489 U.S. 782, 792 (1989) expressly held that *Hensley* sets forth the appropriate test for determining a plaintiff's prevailing party status. In determining whether a plaintiff has succeeded on any significant issue in litigation, the *Garland* Court looked at whether the relief on the merits of plaintiff's claim changes the legal relationship between plaintiff and defendant. Applying this test, the Court in *Farrar v. Hobby,* 506 U.S. 103, 114 (1992), held that a money judgment in favor of the plaintiff for any amount modified the defendant's behavior in a way that benefits the plaintiff by forcing the defendant to pay an amount that would otherwise not be paid.  In the foregoing respects, federal and California law are parallel. Ordinarily, where a case has gone to trial and plaintiff has prevailed, the only significant distinction between the standards for an award of fees under federal or state law is the

1  availability of a multiplier. *Compare Burlington v. Dague*, 505 U.S. 557, 567 (1992)

2  (generally no fee enhancements), *with Ketchum v. Moses*, 24 Cal.4th 1122, 1133 (2001)

3  (fee enhancements available where the contingent fee market would support it).

4  **III.    PLAINTIFFS' "LODESTAR" IS APPROPRIATE AND REASONABLE**

5      "In the Ninth Circuit, the method of determining the permissible amount of

6  attorneys' fees under § 1988 is the 'lodestar' method." *Ballen v. City of Redmond*, 466

7  F.3d 736, 746 (9th Cir. 2006). The lodestar method multiples the number of hours the

8  prevailing party reasonably expended on litigation by a reasonable hourly rate. *Id.*

9  (quoting *McGrath v. County of Nevada*, 67 F.3d 248, 252 (9th Cir. 1995)) (quotations

10  omitted). After computation, courts then assess whether it is necessary to adjust the

11  lodestar figure on the basis of the twelve *Kerr* factors. *Id.* (citations omitted).  These

12  twelve factors are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

18  *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975). "[T]here is a strong

19  presumption" that the lodestar calculation "is a reasonable fee." *United Steelworkers of*

20  *Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 405 (9th Cir. 1990) (citing *Jordan v.*

21  *Multnomah Cnty.*, 815 F.2d 1258, 1262 (9th Cir. 1987)).

22      **A. Counsels' Hours Are Reasonable given the Time and Labor Required and**

23      **Preclusion from Other Employment.**

24      The total number of hours for which Plaintiffs' counsel request compensation, to be

25  reflected in their declarations and billing logs, is reasonable. Under California law, every

26  hour reasonably spent on the case is compensable. "Absent circumstances rendering the

27  award unjust, an attorney fee award should ordinarily include compensation for *all* the

28

hours *reasonably spent*, including those relating solely to the fee." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1133 (2001) (emphasis in original); *see also Beaty v. BET Holdings, Inc.*, 222 F.3d 607, 612 (9th Cir. 2000) (Attorneys who take FEHA cases "ordinarily . . . can anticipate receiving full compensation for every hour spent litigating a claim." (internal quotations omitted)).  Hours are reasonable if "at the time rendered, [they] would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest in the pursuit of a successful recovery . . . ." *Moore v. James H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982) (internal quotations omitted); *see also Ramon v. County of Santa Clara*, 173 Cal. App. 4th 915, 925 (Cal. Ct. App. 2009).

In making that determination, courts must look at "the entire course of the litigation, including pretrial matters, settlement negotiations, discovery, litigation tactics, and the trial itself . . . ." *Vo v. Las Virgenes Municipal Utility Dist.*, 79 Cal. App. 4th 440, 447 (2000); *see also Peak-Las Positas Partners v. Bollag*, 171 Cal. App. 4th 101, 114 (2009) (fees reasonable because of complexity of issues, results obtained, and defendants' aggressive litigation). As the courts have recognized, civil rights lawyers working without payment from their clients have little to gain from "inflating their fees," as the payoff is too uncertain. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). Accordingly, they should be fully compensated for taking the steps that they reasonably believe are necessary to *win* the case: "By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Id.*

Counsels' sworn declarations and attached time records filed concurrently herewith document the attorney and legal assistant hours reasonably spent in the successful prosecution of this action. *See* Galipo Decl., Ex. 1; Masongsong Decl., Ex. 1; Lee Decl., Ex. 1; Laurel Decl., Ex. 1; Anderson Decl., Ex. 1; Alexander Decl., Ex. 1; Jaramilla Decl., Ex. 1. These time records are *prima facie* evidence that counsels' hours were reasonable. *See Horsford v. Bd. Of Trustees of Cal. State Univ.*, 132 Cal. App. 4th 359, 396 (2005) ("[T]he verified time statements of the attorneys, as officers of the court, are entitled to

credence in the absence of a clear indication the records are erroneous."). Plaintiffs' attorneys also have exercised billing judgment in several ways. Attorney hours that were duplicative, unnecessary, or administrative in nature were either not entered by attorneys during the initial timekeeping process or were reduced during the review of the billing records done for this Motion.

The burden shifts to Defendants to prove that any specific time is unreasonable and "to point to the specific items challenged, with a sufficient argument and citations to the evidence." *Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guarantee Assn.*, 163 Cal. App. 4th 550, 564 (Cal. Ct. App. 2008). Defendants cannot meet that burden. To the contrary, the hours for which Plaintiffs' counsel request compensation were reasonably necessary for the prosecution of Plaintiffs' claims for approximately five years. Plaintiffs' counsel had an obligation to be diligent and thorough. Excessive force cases are extremely difficult given the inherent bias in favor of the police, especially in a case such as this where there was damaging evidence. *Gregory v. Oliver*, 2003 WL 1860270, at *2 (N.D. Ill. Apr. 9, 2003); *Wiersta v. Heffernan*, 789 F.2d 968, 972 (1st Cir. 1986); *Wilson v. Union Pacific R. Co.*, 56 F.3d 1226, 1231 (10th Cir. 1995); *Estate of Diaz v. City of Anaheim*, 840 F.3d 592 (9th Cir. 2016).

Defendants' position was that the case had little value, as was reflected in their arguments to the jury and their settlement posture. Thus, Plaintiffs' counsel correctly anticipated that the case would have to be tried and took the steps to do so successfully. That came at a heavy burden and with great risk. First, Plaintiffs bore the burden of proof and persuasion. This required obtaining and meticulously analyzing all the relevant documents and testimony, and extensive preparation for trial. Approximately twenty depositions were conducted in this case. Second, Plaintiffs' counsel retained a large time and economic commitment for this case. Mr. Galipo compensated the attorneys and staff at the Law Offices of Dale K. Galipo throughout the approximate five years that Mr. Galipo's office litigated this case, and incurred costs, including expert retention fees, without any interim payments from the Plaintiffs or guarantee of success at trial. Plaintiffs'

1  counsel Mr. Alexander and Ms. Jaramilla also incurred advanced litigation costs and other

2  expenses. Plaintiffs' counsels' close examination, organization, and analysis of the video

3  recordings, audio recordings, photographs, reports, and transcripts proved worthwhile for

4  the successful result for Plaintiffs.

5     **B.  Skill Necessary to Perform Proper Legal Services given the Complexity**

6        **and Undesirability of the Case, and Risk of Non-Payment.**

7        In general, successfully litigating police misconduct cases requires extensive

8  experience and skill and an understanding of issues that are unique to civil rights victims

9  as compared to general civil practice. Even experienced civil rights attorneys have

10 difficulty overcoming the built-in bias favoring the police. The favorable trial result in this

11 case was the product of a tremendous amount of hard work and skill on the part of

12 Plaintiffs' counsel in preparing and presenting this case at trial. This is especially true in

13 light of the particular difficulty presented in this case, including evidence and/or

14 allegations that the decedent, Mickel Lewis, Sr., reportedly had a gun, was under the

15 influence of methamphetamine, and charged at the officer at the time of the shooting.

16 Despite all of this negative evidence, Plaintiffs' counsel achieved a successful result.

17       At Plaintiffs' counsel's first review of this case, they were aware of the difficulty,

18 risk, and expense in taking this case on a contingency basis. Nevertheless, Mr. Galipo, Mr.

19 Alexander, and Ms. Jaramilla, took on this case. Despite the difficult evidence Plaintiffs'

20 counsel ultimately won a favorable verdict for Plaintiffs—a testament that truly difficult

21 cases such as this require truly dedicated and highly skilled representation. To succeed,

22 Plaintiffs' counsel had to conduct numerous depositions, review numerous discovery

23 materials, retain, pay and consult with multiple experts, and spend almost two weeks away

24 from the office at trial. Defendants vigorously defended this case. From the outset,

25 Defendants contended that the shooting by Defendant Jason Ayala was reasonable, and

26 that Mr. Lewis was under the influence and posed a threat to Deputy Ayala. Defendants'

27 trial arguments showed that they believed they should receive a defense verdict. Thus,

28 Plaintiffs' counsel had to litigate well enough to win. "[A party] cannot litigate tenaciously

1  and then be heard to complain about the time necessarily spent by the plaintiff in
2  response." *Serrano v. Unruh*, 32 Cal. 3d 621, 633 (1982).

3    **C. Counsel's Hourly Rates Are Reasonable Considering the Customary Fee,**
4       **Contingency Basis, Experience and Reputation, and Awards in Similar**
5       **Cases.**

6    Generally, the prevailing market rates in the relevant community in the forum
7  where the district court sits govern the reasonable hourly rate for computing the lodestar
8  amount. *See Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005) (quoting *Blum*, 465 U.S. at
9  895); *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010). However,
10 market rates outside of the district in which this court sits are permitted if there is proof
11 that "Sacramento firms could not successfully have provided the expert representation
12 required to effectively represent litigants in this matter." *Gates*, 987 F.2d at 1405
13 (concluding that the district court did not abuse its discretion in awarding fees at San
14 Francisco rates despite the forum being in Sacramento because "Sacramento attorneys with
15 adequate expertise were unavailable."). "[P]laintiffs must only prove the unavailability of
16 counsel within the local forum in order to justify the use of outside counsel." *Barjon v.*
17 *Dalton*, 132 F.3d 496, 501 (9th Cir. 1997) (cleaned up). Additionally, "*Gates* allows proof
18 of either unwillingness *or* inability due to lack of experience, expertise, or specialization."
19 *Barjon*, 132 F.3d at 501 (emphasis in original).

20   Here, Plaintiffs seek hourly rates consistent with the Los Angeles rather than the
21 Fresno legal community. This is because "[w]hen  it comes to police excessive force cases,
22 Mr. Galipo [Plaintiffs' lead trial counsel] is without question at the top of his field[,]"
23 *Craig v. Cnty. of Orange*, No. SACV1700491CJCKESX, 2019 WL 12378994, at *2 (C.D.
24 Cal. Sept. 5, 2019), and there are very few attorneys with experience in the field of civil
25 rights police misconduct in the Eastern District or the Fresno community and none with
26 comparable skills and expertise to Mr. Galipo who could have successfully won this case.
27 (*See* "Ex. 13" to Galipo Decl. (Haddad Decl.) ¶ 21; "Ex. 14" to Galipo Decl. (Merin Decl.)
28 at ¶ 46). Recently, on April 21, 2025, in the Eastern District case *Hurtado v. State of*

*California*, Case No. 2:19-cv-02343-DAD-AC, Judge Dale Drozd granted Plaintiffs' counsel, including Mr. Galipo, hourly rates consistent with the Los Angeles rather than Sacramento legal community. ("Ex. 7" to Galipo Decl. at pages 6-8). In this case, as set forth in the Declaration of Mickel Lewis filed concurrently herewith, the Plaintiffs were unable to find competent local counsel to represent them in this difficult excessive force case. (*See also* "Ex. 14" to Galipo Decl. (Merin Decl.) at ¶ 46).

Within the relevant community, the Court should take into account the "experience, skill and reputation of the [requesting] attorney." *Dang*, 422 F.3d at 813; *see Trevino v. Gates*, 99 F.3d 911, 924 (9th Cir. 1996); *see also Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 947 (9th Cir. 2007). "Affidavits of the plaintiffs' attorney . . . and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am.*, 896 F.2d at 407. "[C]ourts can also use survey data to evaluate the reasonableness of attorneys' rates." *Garcia v. Los Angeles Cnty. Sheriff's Dep't*, No. CV 09-8943 MMM (SHX), 2015 WL 13646906, at *16 (C.D. Cal. Sept. 14, 2015) (citing *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 852 (8th Cir. 2002)); *McKibben v. McMahon*, 2019 WL 1109683, at *14 (C.D. Cal. Feb. 28, 2019)). Once the party claiming fees presents evidence supporting the claimed rate, the burden shifts to the party opposing fees to present equally specific countervailing evidence. *Gates*, 987 F.2d at 1405 (9th Cir. 1992). Congress expressly recognized that fees in federal civil rights cases should be comparable to those in complex federal civil litigation. *See City of Riverside v. Rivera*, 477 U.S. 561, 575-76 (1986) ("Congress made clear that it 'intended that the amount of fees awarded under [§ 1988] be governed by the same standards which prevail in other types of equally complex Federal litigation.'" (citing S. Rep. No. 94-1011, at 6 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5908, 5913)).

In determining what constitutes a reasonable fee in civil rights litigation, courts should consider the hourly rates that similarly skilled and experienced attorneys in private practice charge their paying clients. *Blum v. Stevenson*, 465 U.S. 886, 895 (1984); *see* Legislative History of Section 1988, S. Rep. No. 94-1011, 94th Cong. 2d Session,

reprinted in 1976 U.S. Code Cong. & Ad. News 5908. Market rates may be established by declarations regarding prevailing fees and fee awards in other cases. *United Steelworkers v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). In this instance, counsel's requested hourly rates are fully supported by the declarations of Plaintiffs' counsel, Dale Galipo, J. Bernard Alexander, III, Toni Jaramilla, and Renee V. Masongsong, as well as the supporting declarations of knowledgeable civil rights law practitioners Carol Sobel, Michael Hadaad, Mark Merin, Dan Stormer, Jim DeSimone, Brian Dunn and Wendy Musell.

Moreover, the Ninth Circuit has repeatedly held that "in determining the prevailing market rate a district court abuses its discretion to the extent it relies on cases decided years before the attorneys actually rendered their services." *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 981 (9th Cir. 2018); *Hiken v. Dep't of Def.*, 836 F.3d 1037, 1045 (9th Cir. 2016) (reversing because "the court simply re-invoked the 2015 rates and added a $30 enhancement, without discussion of why the 2015 rates are an appropriate anchor or why an increase in $30 is reasonable"); *Moreno*, 534 F.3d at 1115 ("If the lodestar leads to an hourly rate that is higher than past practice, the court must award that rate . . . ."); *Roberts v. City of Honolulu*, 938 F.3d 1020, 1024-25 (2019) ("Examining prior fee awards to Holcomb and Beck in the district was not an acceptable substitute for considering the declarations submitted by Holcomb, and explaining why those declarations did or did not establish the prevailing hourly rate in the district."). Courts also appropriately recognize that rates, and inflation, increase over time. *Parker v. Vulcan Materials Co. Long Term Disability Plan*, No. EDCV 07–1512 ABC (OPx), 2012 WL 843623, *7 (C.D. Cal. Feb. 16, 2012) (approving as reasonable an approximate 10 percent increase between 2011 rates and 2012 rates and because "[i]t is common practice for attorneys to periodically increase their rates for various reasons, such as to account for expertise gained over time, or to keep up with the increasing cost of maintaining a practice").

Additionally, the Supreme Court in *Missouri v. Jenkins by Agyei*, 491 U.S. 274

(1989), recognized that compensation received several years after an attorney renders his or her services "is not equivalent to the same dollar amount received promptly as the legal services are performed, as would normally be the case with private billings." *Id.* at 283. Accordingly, "an appropriate adjustment for delay in payment—whether by the application of current rather than historic hourly rates or otherwise—is within the contemplation of [§ 1988]." *Id.* at 284; *see also Pennsylvania v. Delaware Valley Citizens' Counsel for Clean Air*, 483 U.S. 711, 716 (1987) ("In seeing fees for prevailing counsel, the courts have regularly recognized delay factor, either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value.").

Thus, the Ninth Circuit "recognize[s] that district courts have discretion to compensate prevailing parties for any delay in the receipt of fees by awarding fees at current rather than historic rates in order to adjust for inflation and loss of the use of funds." *Gates*, 987 F.2d at 1406. The prevailing practice is to award the current requested rate for all work performed. *See e.g.*, *Zeigler v. Cnty. of San Luis Obispo*, No. CV179295MWFAFMX, 2023 WL 3432238, at *5 (C.D. Cal. Mar. 1, 2023) (awarding requested rates commensurate with current practice experience for work that commenced years prior); *French v. City of Los Angeles*, No. EDCV2000416JGBSPX, 2022 WL 2189649, at *1, 17-19 (C.D. Cal. May 10, 2022) (same); *Donastorg v. City of Ontario*, No. EDCV18992JGBSPX, 2021 WL 6103545, at *1, 8-9 (C.D. Cal. Sept. 23, 2021) (same).

### i.  Hourly Rate for Dale K. Galipo

With 36 years of experience, the majority of which was spent litigating civil rights cases, Mr. Galipo's requested hourly rate of $1,400 is well-within the reasonable range of billing rates for civil rights attorneys in Los Angeles with comparable skill and experience. Mr. Galipo graduated with a B.B.A. from the University of Michigan in 1981. (Galipo Decl. ¶ 3). He attended law school at UCLA from 1981 to 1984. (*Id.*). Since 1991, he has managed his own law firm specializing in major personal injury and wrongful death cases and criminal defense. His practice grew to specialize in serious police excessive force resulting in serious injury and death. (*Id.* ¶ 4).

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

In 2012, Mr. Galipo received the Defender of the Constitution Award from the Inland Empire Chamber of the Federal Bar Association. (*Id.* ¶ 5). In approximately the last six years, Mr. Galipo prevailed in approximately thirty jury trials. Nearly all of the jury trials were civil rights cases. (*Id.* ¶ 18). In approximately the last thirteen years, Mr. Galipo has had approximately sixteen published opinions in civil rights cases, and has argued numerous appellate cases before the Ninth Circuit. (*Id.* ¶ 16). In 2019, Mr. Galipo was elected to the American College of Trial Lawyers. (*Id.* ¶ 9). He was also elected to the Inner Circle of Advocates, which is limited to one hundred members nationwide, representing some of the top plaintiff's attorneys in the country. (*Id.* ¶ 8). Further in 2019, Mr. Galipo was chosen by UCLA School of Law to give the Irving H. Green Memorial Lecture to students and faculty. (*Id.* ¶ 10). Past attorneys who have been honored with this recognition include Johnnie Cochran, Jr. (*Id.*). Mr. Galipo has also been invited to speak to the law students at UC Irvine and UCLA on several occasions. (*Id.* ¶ 14). In 2020, Mr. Galipo was recognized as both CAALA Trial Lawyer of the Year and CAOC Consumer Attorney of the Year.  (*Id.* ¶ 11, 12).

Courts within the Central District of California have consistently recognized Mr. Galipo as one of the top civil rights attorneys in the area of police misconduct in Los Angeles. *See, e.g., Zelaya v. City of Los Angeles*, No. 2:20-CV-08382-ODW (MAAX), 2024 WL 3183882, at *3 (C.D. Cal. June 25, 2024) ("The Court agrees that Mr. Galipo is unquestionably at the top of his field and finds Mr. Galipo's requested rate [of $1,300] is appropriate given his 'experience, skill, and reputation.'"); *Valenzuela v. City of Anaheim*, No. SACV1700278CJCDFMX, 2023 WL 2249178, at *3 (C.D. Cal. Feb. 23, 2023) ("The Court found that a $1,200 hourly rate, although high, was reasonable for Mr. Galipo's work over the past three years, pointing to Mr. Galipo's strong reputation with the legal community, his continued consistent record of success with over $85 million in recovery in civil rights cases since 2019, and multiple courts that awarded him $1,100 hourly rates as early as 2020."); *Craig v. Cnty. of Orange*, Case No. SACV 17-00491-CJC (KESx), Dkt. 280, at 5-6 (awarding Mr. Galipo an hourly rate of $1,200 because "[w]hen  it comes to

police excessive force cases, Mr. Galipo continues to be without question at the top of his field."); *Donastorg v. City of Ontario*, Case No. EDCV 18-992 JGB (SPx), 2021 WL 6103545, at *8 (C.D. Cal. Sept. 23, 2021) ("The Court agrees with the courts that have recognized that, when it comes to police excessive force cases in Los Angeles, Mr. Galipo is without question at the top of his field.") (cleaned up). Mr. Galipo is considered to be one of the top civil rights attorneys in the state and country. (Masongsong Decl. ¶ 9). He has gone to trial and won more cases against the police for excessive force than any attorney in the country. (*Id.*). Accordingly, Mr. Galipo's requested hourly rate of **$1,400** is reasonable for an attorney with his experience, skill, expertise, and reputation. (Galipo Decl. ¶ 28; *see* Ex. 13 to Galipo Decl. (Haddad Decl.) at ¶¶ 22-23; Ex. 14 to Galipo Decl. (Merin Decl.) ¶ 46).

### ii. Hourly Rate for Associates at Law Offices of Dale K. Galipo

Ms. Masongsong received her Juris Doctorate degree from Pepperdine School of Law in 2011 and was admitted to the California Bar the same year. (Masongsong Decl. ¶¶ 7, 8). In April 2013, Ms. Masongsong joined the Law Offices of Dale K. Galipo, where she currently works as a senior associate attorney. (*Id.* ¶ 9). Since joining Mr. Galipo's firm, she has worked almost exclusively on 42 U.S.C § 1983 civil rights cases involving police excessive force. (*Id.*). Ms. Masongsong was the senior associate attorney at Mr. Galipo's office assigned to this case and was responsible for the case's day-to-day management and trial preparation between November 2023 and the present. (*Id.* ¶ 15). Over the past ten years as a civil rights attorney, Ms. Masongsong has managed numerous civil rights cases that resulted in multi-million-dollar verdicts and settlements. (*Id.* ¶ 14). In February 2024, Ms. Masongsong was awarded an hourly rate of $800 for work performed in 2022 and 2023. (Ex. 5 to Masongsong Decl. at p. 7 (*French* Order)). Taking into account Ms. Masongsong's additional experience gained since that time, Ms. Masongsong's requested hourly rate of **$850** is a reasonable rate for an attorney with her experience, skill, and expertise. (Galipo Decl. ¶ 32; Ex. 6 to Masongsong Decl. (Sobel Decl.) at ¶ 52).

Prior to Ms. Masongsong handling this case, Ranhee Lee was the associate at Mr. Galipo's office assigned to this case and was responsible for the case's day-to-day management. Ms. Lee received her Juris Doctorate from University of Southern California Gould School of Law in 2018 and was admitted to the California Bar in May 2020. (Lee Decl. at ¶ 8). Ms. Lee worked for the Law Offices of Dale K. Galipo between June 2020 and October 2023, where she worked exclusively on civil rights cases. (*Id*. at ¶ 9). Ms. Lee managed and litigated this case between December 2020 and October 2023, during which time she handled numerous depositions and all discovery matters, law and motion, and client contact. (*Id*.). Accordingly, the requested hourly rate of **$500** for Ms. Lee is a reasonable rate for attorneys with her experience, skill, and expertise. (*See generally* Lee Decl.; Galipo Decl. at ¶ 33).

### iii. Hourly Rate for J. Bernard Alexander, III

Mr. Alexander is the founding partner of Alexander Morrison + Fehr LLP with over 35+ years of litigation experience. (Alexander Decl. at ¶ 3, 4),, Mr. Alexander has been recognized as one of the best plaintiff employment trial attorneys in the State of California and the United States, having tried over 75 cases to verdict, having received numerous multi-million dollar verdicts in both federal and state courts (Alexander Decl. at ¶ 13), and professional recognition from the legal community, including 2022 CAALA Trial Lawyer of the Year, 2025 Southwestern University School of Law, Alumnus of the Year, 2024 San Francisco Trial Lawyer of the Year, 2023 Langston Trial Lawyer of the Year, and is currently recognized as one of the Top 10 SuperLawyers in Southern California. (Alexander Decl. at ¶ 12),  Based on his trial skills and his dedication to trying civil rights matters (both employment and non-employment), Mr. Alexander has been welcomed as a fellow into ABOTA (2013), American College of Trial Lawyers (2021), and the College of Labor & Employment Lawyers (2020). (*Id*. at ¶ 12).

Invariably, both state and federal Judges have commented favorably on trial Alexander's trial expertise and his handling of cases in their courtrooms. (*Id*. at ¶¶ 16-23). Mr. Alexander's current hourly rate of **$1,250** is well within, if not below, the range

1  charged by comparable civil rights attorneys with his level experience and success. (*See*
2  Declarations of Stormer, DeSimone, and Mussell).

3  **iv. Hourly Rate for Toni Jaramilla**

4  Ms. Jaramilla is a civil rights attorney, who has been practicing employment law
5  almost exclusively for over 30 years, and handling police excessive force cases for the past
6  five years.  (Jaramilla Declaration, ¶¶ 3, 4). Ms. Jaramilla has represented plaintiffs in
7  police excessive force cases with substantial success, achieving multi-million settlements.
8  (*Id*. ¶¶ 8-10). She has received numerous honors and professional recognition, including
9  Top 50 Women Lawyers Southern California Super Lawyers (2024), Top 100 Lawyer for
10 southern California Super Lawyers (2024), Leading Lawyers in Employment and Civil
11 Right Law, Best Lawyers (2024, 2021, 2022), and is a Fellow of the College of Labor and
12 Employment Lawyers; a small sampling of the professional recognition she has achieved.
13 (*Id*., ¶16). She has also held numerous leadership positions in the legal community, not the
14 least of which is past Chair of the California Employment Lawyers Association (CELA),
15 and past Chair of the California State Bar's Labor & Employment Law Section. (*Id*. ¶18,
16 19). Ms. Jaramilla's current hourly rate of **$1,125**, is well within, if not below, the range
17 charged by comparable civil attorneys with her level of experience and success. (*See*
18 Declarations of Dan Stormer, Jim DeSimone, Brian Dunn, and Wendy Musell).

19 **D.  Plaintiffs' Counsel Are Entitled to Fees and Costs for Litigating the**
20 **Instant Motion**

21 In addition to the attorneys' fees derived from legal work performed in preparing and
22 litigating a case, Plaintiffs' counsels are entitled to attorneys' fees for their time spent
23 establishing their right to attorneys' fees in the amount requested, and on all work
24 anticipated in opposing any further post-trial motion filed by Defendants.  *See Clark v. City*
25 *of Los Angeles*, 803 F.2d 987, 992 (9th Cir. 1986) ("We, like every other court that has
26 considered the question, have held that the time spent in establishing entitlement to an
27 amount of fees awardable under section 1988 is compensable."); *see also Hernandez v.*
28 *Kalinowski*, 146 F.3d 196, 199 (3rd Cir. 1998); *Glass v. Pfeffer*, 849 F.2d 1261, 1266 (10th

17

1    Cir. 1988); *Hernandez v. George*, 793 F.2d 264, 269 (10th Cir. 1986); *Lund v. Affleck*, 587

2    F.2d 75, 77 (1st Cir.1978) ("It would be inconsistent with the purpose of the Fees Act to

3    dilute a fees award by refusing to compensate the attorney for the time reasonably spent in

4    establishing and negotiating his rightful claim to the fee.").

5        Plaintiffs' counsel are also entitled to recover the reasonable litigation expenses

6    incurred over the course of litigation. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994)

7    (attorneys should recover reasonable out-of-pocket expenses of the type ordinarily billed to

8    paying clients). The expenses for which Plaintiffs seek reimbursement are detailed in

9    counsels' supporting declarations. Alexander Decl. ¶¶ 30-34 ($6,805.10); Jaramilla Decl. ¶

10   50, 51 ($4,646.32). As explained in the supporting declarations, these unreimbursed

11   expenses were necessary to the litigation and of the sort normally billed to hourly-paying

12   clients and are thus fully reimbursable. *See, e.g.*, *In re Immune Response Sec. Litig.*, 497

13   F.Supp.2d 1166, 1177-78 (S.D. Cal. 2007).

14       Plaintiffs' counsel will supplement and amend this instant Motion to include their

15   hours spent on the anticipated reply brief, preparation for and appearance at the related

16   hearing, and in opposing the post-trial motions filed by Defendants.

17   **IV.    A 2.0 LODESTAR ENHANCEMENT IS APPROPRIATE**

18       The application of a 2.0 lodestar enhancement is justified in this case by the great

19   risk counsel took that after hundreds of hours and many thousands of dollars, they would

20   end up with no compensation for their work.  Such risk commands a significant multiplier.

21   In this case, Plaintiffs prevailed on their Bane Act claim, which supports the granting of a

22   multiplier under state law. California Civil Code section 52(a) provides for damages up to

23   three times actual damages on the violations of certain civil code sections. The Bane Act

24   refers to section 52. (*See* Civ. Code, § 52.1(b), indicating that damages may be recovered

25   under both subsections (a) and (b) of Section 52. "The purpose of a fee enhancement, or

26   so-called multiplier, for contingent risk is to bring the financial incentives for attorneys

27   enforcing important . . . [rights] into line with incentives they have to undertake claims for

28   which they are paid on a fee-for-services basis . . . [.]" *Ketchum v. Moses*, 24 Cal. 4th

18                                                                    2:19-cv-02343-DAD-AC

1122, 1132 (2001). "In effect, the court determines, retrospectively, whether the litigation involved a contingent risk or required extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the fair market rate for such services." *Graham v. Daimler Chrysler Corp.*, 34 Cal. 4th 553, 579 (2004). "[An enhancement] is intended to approximate market-level compensation for such services, which typically includes a premium for the risk of nonpayment or the delay in payment of attorney fees." *Ketchum*, 24 Cal.4th at 1138.

Risk enhancements reflect the attorney's risk of receiving no payment at all. *See Graham*, 34 Cal. 4th at 583-84. That financial risk commands a premium in the legal marketplace for attorneys whose compensation is wholly dependent upon achieving success for their clients. *See Ketchum*, 24 Cal. 4th at 1132, 1138; *see also Horsford v. Bd. of Trustees of Cal. State Univ.*, 132 Cal. App. 4th 359, 394-95 (Cal. Ct. App. 2005). Indeed, the risk of litigating the case and receiving no compensation if the case is lost is often the most significant lodestar enhancement factor. *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1217 (Cal. Ct. App. 2008). Unless risk is compensated, the purpose of the statute will not be fulfilled. *Ketchum*, 24 Cal. 4th at 1132-33 ("A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases." Here, Plaintiff's requested multiplier is justified based on the great risk Plaintiff's counsel assumed in litigating this case on a contingency basis, the difficulty of the case, and based on counsels' demonstrated skill. Counsel invested several hours of work without any interim payments from Plaintiff and also risked costs paid out of pocket since the inception of this case in 2018. Many more hours and expenses promise to be put at risk based on an anticipated appeal.

In *Rodriguez v. Cty. of Los Angeles*, 96 F. Supp. 3d 1012, 1026 (C.D. Cal. 2014), aff'd, 891 F.3d 776 (9th Cir. 2018), Judge Conseulo B. Marshall applied a 2.0 multiplier to the attorneys' fees, resulting in over $5 million in attorneys' fees payable to the Plaintiff's

attorneys. The Ninth Circuit affirmed Judge Marshall's decision, approving that her decision was "based . . . on the substantial financial risk that appellees' counsel assumed in investing $3.4 million of attorney time in a contingency case; the difficulty of representing prisoners with the Men's Central Jail's highest security classifications, in an excessive force action against high-ranking jail officials, all the while facing "aggressive opposition" from appellants; and the opportunity costs the years-long litigation in this case required. The court expressly noted that it had considered the burden to California's taxpayers that the fee award would represent, and found that the award was justified given the factors described above and the importance of civil rights suits in protecting the public against abuses at the hands of "large or politically powerful defendants." *Rodriguez*, 96 F. Supp. at 1026. Refusing a multiplier in a civil rights case based only on the source of the fee would 'effectively immunize large or politically powerful defendants' engaging in conduct that harms the public. *Id.* (citing *Horsford*, 132 Cal. App. 4th at 399-401); *Serrano v. Priest*, 20 Cal. 3d 25, 49 (1977) ("The experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong.").

Additionally, in *Bender v. Cty. of Los Angeles*, 217 Cal. App. 4th 968, 988 (2013), following a jury verdict for plaintiff Bender, including on the Bane Act claim, the Superior Court applied a 1.2 multiplier and awarded $989,258 in attorneys' fees. *Id.* at 976. Affirming the multiplier and the attorney fee award, the Court of appeals explained, that the case required both:

> Proof both of excessive force claims and of liability on a statutory cause of action authorizing recovery of legal fees . . . , [that] counsel put both their time and their purse at risk, investing capital to pay trial expenses; that the time invested limited trial counsel's availability for other cases; that counsel achieved a trial victory "against the united testimony of three deputy sheriffs, and over a vigorous defense"; and that their prosecution of the case was "tenacious, skillful and effective." The court acknowledged payment of the legal fees by the taxpayers counted against a high multiplier, but "every excessive force case in which a plaintiff prevails encourages better supervision within our police

1   agencies and thus reinforces the constitutional protections to which citizens are
    entitled.

2   *Bender*, at 988.

3       In light of the special difficulties presented in this case, the hard-fought litigation,

4   and the public interest served by obtaining a verdict that brought justice to Plaintiffs for the

5   Defendants' behavior, a multiplier of 2.0 is appropriate here.

6       Many cases have awarded multipliers of 1.5 to 2.0 in civil rights and public interest

7   litigation.  *See*, *e.g.*, *L.D. v. City of Los Angeles*, order attached as "Ex. 2" to Masongsong

8   Decl.; *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 (Cal. Ct. App. 2008) (2.5

9   multiplier); *Crommie v. PUC*, 840 F. Supp. 719, 726 (N.D. Cal. 1994) (2.0 multiplier

10  regarding age discrimination actions), *aff'd sub nom Mangold v. PUC*, 67 F.3d 1470 (9th

11  Cir. 1995); *Uphold our Heritage v. Town of Woodside*, No. A120749, 2008 WL 4868816

12  (Cal. Ct. App. Nov. 12, 2008) (multiplier of 2.0 under § 1021.5); *Leuzinger v. Cnty. of*

13  *Lake*, No. C 06-00398-SBA, 2009 WL 839056 (N.D. Cal. Mar. 30, 2009) (multiplier of 2.0

14  in FEHA case); *Colgan v. Leatherman Tool Grp., Inc.*, No. B196650, 2007 WL 4532916

15  (Cal. Ct. App. Dec. 27, 2007) (multipliers of 2.0 and 1.5 for trial and appellate work in

16  consumer class action); *Ketchum v. Moses*, 24 Cal. 4th 1122 (2001) (multiplier of 2.0 in

17  anti-SLAPP motion); *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 255 (Cal.

18  Ct. App. 2001) (multiplier of 1.42, recognizing multipliers as high as 4.0); *Bell v. Farmers*

19  *Ins. Exch.*, No. A101246, 2004 WL 1281818 (Cal. Ct. App. June 9, 2004) (1.833 multiplier

20  in overtime class action); *Pellegrino v. Robert Half Int'l, Inc.*, 182 Cal. App. 4th 278 (Cal.

21  Ct. App. 2010) (multiplier of 1.75 in wage and hour case); *W. Century 102, Ltd. v. City Of*

22  *Inglewood*, No. B164350, 2004 WL 886384 (Cal. Ct. App. Apr. 27, 2004) (multiplier of

23  1.75 in inverse condemnation case); *Maldonado v. Club Fresh*, No. C055954, 2009 WL

24  3246450 (Cal. Ct. App. Oct. 9, 2009) (1.5 multiplier in disability discrimination case);

25  *Zelaya*, *supra*, at *12 (finding that an enhanced award would be justified, although counsel

26  did not seek a fee multiplier in that case).

27      It is well-established that excessive force cases inure "a public benefit of deterring

28

unconstitutional conduct by law enforcement officials." *Orr v. Brame*, 727 F. App'x 265, 269 (9th Cir. 2018) (holding that the district court abused its discretion where it reduced an attorney fee award and disregarded a long line of case law that fee awards have deterrent effects); citing *McCown v. City of Fontana*, 565 F.3d 1097, 1105 (9th Cir. 2009); *Morales v. City of San Rafael*, 96 F.3d 359, 364 (9th Cir. 1996). Nevertheless, these cases are extremely difficult to win and require plaintiff's lawyers to take significant risks. In the legal marketplace, law firms simply do not commit thousands of hours of uncompensated time to such a highly risky case without the expectation that, if they are successful, they will be compensated for their risk with a fee that is significantly greater than if they had been paid hourly rates, win or lose. Thus, a multiplier is appropriate.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court award attorneys' fees in the amount of **$3,850,737**.  Plaintiffs also request that the Court award attorneys' fees for work performed in the litigation of the instant motion for attorney fees, including drafting the related reply and attending hearing on the motion for attorneys' fees, and for work performed on any post-trial motions filed by Defendants. The table below summarize the fees requested, including the name of each biller, years of practice if an attorney, the hourly rate, hours claimed, and the total for that biller.  If the person is not an attorney, then the qualifying position of the biller is listed.

| Attorney/Biller | Yrs. Practice | Rate | Hours | Total |
|---|---|---|---|---|
| **Law Offices of Dale K. Galipo** | | | | |
| Dale K. Galipo | 36 | $1,400 | 394.15 | $551,810 |
| Renee V. Masongsong | 14 | $850 | 134.4 | $114,240 |
| Ranhee Lee | 5 | $500 | 265.5 | $132,750 |
| Santiago Laurel | Leg. Assist. | $220 | 8.2 | $1,804 |
| Stefany Anderson | Leg. Assist. | $220 | 11.6 | $2,552 |

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

| Alexander Morrison + Fehr | | | | |
|---|---|---|---|---|
| Bernard Alexander, III | 38 | $1,250 | 406 | $507,500 |
| Britt L. Karp | 14 | $750 | 168.2 | $126,150 |
| Natalie Khoury | 4 | $525 | 5.2 | $2,730 |
| Gustin Ham | Paralegal | $275 | 64.3 | $17,862.50 |
| Alicia Billalobos | Paralegal | $250 | 31.2 | $7,800 |
| Toni J. Jaramilla | | | | |
| Toni Jaramilla | 30 | $1,125 | 409.04 | $460,170 |
| Subtotal: | | | 1,897.79 | $1,925,368.5 |
| 2.0 Multiplier: | | | | $1,925,368.5 |
| TOTAL: | | | | **$3,850,737** |

DATED: April 25, 2025                LAW OFFICES OF DALE K. GALIPO

By: _____s/ Renee V. Masongsong_____
                            Dale K. Galipo
                            Renee V. Masongsong
                            Attorneys for Plaintiffs R.L., M.L., H.L,
                            and A.W.

DATED: April 25, 2025            ALEXANDER MORRISON + FEHR LLP

                            TONI JARAMILLA, APLC

By: _____s/ J. Bernard Alexander, III_____
                            J. Bernard Alexander, III
                            Toni Jaramilla
                            Attorneys for Plaintiffs Mickel Erick Lewis, Jr.,
                            Oriona Lewis and Briona Lewis