# EXHIBIT 6

Case 5:20-cv-00416-JGB-SP   Document 185-1   Filed 01/18/24   Page 1 of 22   Page ID
#:4004
Case 1:21-cv-00378-KES-CDB   Document 174-6   Filed 04/25/25   Page 2 of 23

## DECLARATION OF CAROL A. SOBEL

I, CAROL A. SOBEL, declare:

1.      I am an attorney admitted to practice before the Supreme Court of California and the United States District Court for the Central District of California, among other federal courts.  I have personal knowledge of the facts herein and, if called to testify to those facts, could and would do so competently.

2.      I graduated from law school and was admitted to practice in 1978. Following 20 years with the ACLU Foundation of Southern California, I entered private practice in April of 1997.  My practice primarily involves complex civil rights litigation, focusing on the rights of homeless persons, First Amendment rights and police practices.  Exhibit A is my resumé.

3.      I received many awards for my legal work over the years.  In 2008, I was named a California Lawyer of the Year (CLAY) for civil rights by California Lawyer Magazine.  That same year, I was also named as one of the Top 75 Women Litigators in California by the Daily Journal Corporation.  In 2007, I received an Angel Award from California Lawyer Magazine for pro bono work and was also named by the Daily Journal as one of the Top 100 Most Influential Lawyers in California.  In 2013 and again in 2014, I was named one of the top 50 women lawyers in Los Angeles.  I am named as a Superlawyer in the area of First Amendment or civil rights litigation consistently for more than a decade. Additional recognition of my legal work is set out in my attached resumé.

4.      For the six years prior to 1997, I was a Senior Staff Counsel in the legal department of the ACLU Foundation of Southern California.  During that time, I was responsible for preparing many of the fee motions in cases where the ACLU represented the prevailing party.  Because the ACLU does not bill clients on an hourly basis for its services, I was required to obtain information to establish

1

reasonable market rates for the ACLU lawyers. It was my practice to obtain current billing rates for lawyers of comparable skill and experience at several firms throughout the City. I did this on an annual basis, contacting partners familiar with the ACLU lawyers in question so that they could assess the comparable skill levels of attorneys at their firms to establish ACLU billing rates. At the time that I consulted these individuals, I was aware that the partners had been personally involved in pro bono litigation with the ACLU and worked directly with the ACLU lawyers for whom I sought to establish market billing rates, so they were able to assess the skill and experience of the ACLU lawyers.

5.       As a sole practitioner, I assess a reasonable market rate by comparison to lawyers of comparable skill and experience at other firms in the Los Angeles area, as I did when I was at the ACLU. Since entering private practice, I continue to survey firms each year to obtain relevant information for rates. As part of my survey, I obtain information concerning rates for attorneys in larger law firms engaged in complex litigation, as well as smaller boutique civil rights law firms.

6.       I also review fee applications and awards in other cases than my own. Specifically, I regularly review fee applications submitted by, and awards to, private attorneys practicing civil rights law, as well as court awards to the ACLU, Disability Rights Legal Center ("DRLC"), Public Counsel, Western Center on Law and Poverty ("WCLP"), and other public interest groups in Los Angeles. Because many cases brought by public interest groups are co-counseled by attorneys at private commercial firms, I see those billing rates as well.

7.       When I become aware of a case where statutory fees are sought, I obtain fee applications and any resulting awards from on-line public records for the courts, as well as from legal research databases such as LEXIS and Westlaw. Included in my review of fee applications and awards are those by, and awards to, large firms engaged in complex litigation to assess customary billing rates for these

firms. Many of these commercial firms also serve as pro bono counsel on occasion. I estimate that I review around 100 or more fee motions, supporting declarations and fee awards annually and have done so for more than 30 years.

8.      I do not charge to provide a fee declaration, although I do suggest that, if successful, the attorneys in private civil rights practices donate to a non-profit legal organization. I believe I am extremely qualified to provide declarations for the civil rights bar and the non-profit legal community because of my work at the ACLU and in private practice, my adjunct teaching at Loyola Law School for the past 16 years, and my role in organizing legal representation for large-scale legal actions. For example, at the request of the ACLU of Georgia, I organized the initial representation of nearly 1,000 Mariel Cubans in immigration hearings after they were transferred to federal prisons in Southern California following their uprising at the Atlanta Federal Penitentiary in the late 1980s. Ultimately, the USC Criminal Law Clinic took over responsibility; however, in the initial rounds of hearings, I recruited dozens of law students from UCLA, Loyola and USC and supervised them in representing the Mariel Cubans at administrative hearings. I also organized attorneys and students to represent about 5,000 high- school students in Southern California charged as truants after they walked out of school to protest the proposed Sensenbrenner immigration bill in Congress in 2005. Through all of this work, I am familiar with a significant portion of civil rights and public interest law students and lawyers in Los Angeles and am able to assess their skill, experience and reputation based on my professional interactions with them.

9.      In addition, unlike most other attorneys providing "expert" evidence of market rates, I have extensive experience in a broad range of civil rights litigation, including, among other areas, employment law, First Amendment Church/State law, free speech and assembly, anti-SLAPP litigation, homelessness litigation, excessive force, false arrest and class actions. As my resumé

Case 5:20-cv-00416-JGB-SP   Document 185-1   Filed 01/18/24   Page 4 of 22   Page ID
#:4007
Case 1:21-cv-00378-KES-CDB   Document 174-6   Filed 04/25/25   Page 5 of 23

demonstrates, I successfully brought landmark cases in these and other civil rights subject areas, including a state-wide class-action on behalf of women's health-care providers in California against the anti-abortion group Operation Rescue. *National Abortion Federation, et al. v. Operation Rescue, et. al.*, 8 F.3d 680 (9th Cir. 1993). Many of these cases required novel approaches to the issues and became models for attorneys challenging similar issues around the country.

10.     For example, in *Jones v. City of Los Angeles*,  2014 U.S. App. LEXIS 6640 (9th Cir. Apr. 10, 2014), (subsequent citation on vacatur upon settlement omitted), first filed in 2003, the groundwork was laid for *Martin v. City of Boise,* 920 F.3d 584 (9th Cir. 2019).  When *Jones* was filed, I faced three cases in the Ninth Circuit and one at the California Supreme Court, as well as multiple lawsuits across the country, all unsuccessful in striking policies criminalizing homelessness and replicating *Pottinger v. City of Miami*, 720 F. Supp. 955 (S.D. Fla. 1989), *aff'd*.  40 F.3d 1155 (11th Cir. 1994).  In *National Abortion Federation*, the district court dismissed the action pursuant to *Bray v. Alexandria Clinic,* 506 U.S. 263 (1993), holding the first two clauses of the Ku Klux Klan Act, 42 U.S.C.S. § 1985 did not state a claim for relief.  The Circuit reversed and remanded, finding the district court erred in denying Plaintiffs' move to amend to add a claim under 42 U.S.C.S. § 1985(3), the "hindrance" clause. 8 F.3d at 685-87.

11.     My declarations in support of fee applications for civil rights and public interest attorneys have been cited repeatedly by courts as evidence of reasonable market rates. In September 2023, my declaration was cited with approval for both rates and methodology in an award of attorney fees in *Mickail Myles v. County of San Diego*, Case No. 3:15-cv-01985-JAH-BLM (S.D. Cal. 2023). [Doc. 484, p.7]. The motion in *Myles* was filed in late 2022 in San Diego. Earlier in 2023, my declaration was cited with approval in *Valenzuela v. City of Anaheim*, Case No. SACV 17-00278-CJC (DFMx) (C.D. Cal. 2023) [Dkt. 462],

and the companion case of *Craig v. City of Anaheim,* SACV 17-02094-CJC (DFMx) (C.D. Cal. 2023) [Dkt. 280], on behalf of the Galipo law firm.  My declaration was also cited with approval in and *D. R., a minor v. Redondo Beach Unified School District*, Case No. 21-56033 (9th Cir. Aug. 2023).  In *Nadarajah v. Holder*, 569 F.3d 906, 912-914 (9th Cir. 2009), the Ninth Circuit referenced my declaration with approval in support of attorney's fees for the ACLU under the Equal Access to Justice Act ("EAJA").  In *Torrance Unified School District v. Magee*, 2008 U.S. Dist. LEXIS 95074 (C.D. Cal. 2008), granting IDEA fees pursuant to 20 U.S.C. §1415(i)(3)(c), the Court cited my declaration as persuasive evidence of market rates.  In *Atkins v. Miller*, CV 01-01574 DDP (C.D. Cal. 2007), Judge Pregerson cited my declaration and that of Barry Litt to support the requested rates.  *Id.* at pp. 8-9 and n.4.  Additional cases in which my declaration was cited favorably include, among others, *Charlebois v. Angels Baseball LP*, SACV 10-0853 DOC (C.D. Cal. May 30, 2012); *Orantes-Hernandez v. Holder*, 713 F. Supp. 2d 29,963-64 (C.D. Cal. 2010); *Hiken v. DOD*, 2013 U.S. Dist. LEXIS 118165 (N.D. Cal. Jan. 14, 2013), *Hiken v. DOD*, 836 F.3d 1037 (9th Cir. 2016); *Vasquez v. Rackauckas*, 2011 U.S. Dist. LEXIS 83696 (C.D. Cal. 2011); *Rauda v. City of Los Angeles*, 2010 U.S. Dist. LEXIS 138837 (C.D. Cal. 2010); *Jochimsen v. County of Los Angeles*, *supra*; *Dugan v. County of Los Angeles,* cv-11-08145 CAS (C.D. Cal. Mar. 3, 2014); *Flores v. City of Westminster*, SA-CV-11-0278 DOC (C.D. Cal. Oct. 23, 2014); *Xue Lu v. United States*, 2014 U.S. Dist. LEXIS 77789 (C.D. Cal. May 23, 2014); *Wagafe v. Trump*, Case 2:17-cv-00094-RAJ [Doc. 223] (W.D. Wash. 02/27/19); *Webb v. Officer J. Ackerman*, 13-cv-01992 PLA (C.D. Cal. Jan. 4, 2018) [Doc. 180, p.5]; and  *Carrillo v. Schneider Logistics,* awarding fees in Circuit Case No. 12-55042 (9th Cir. Apr. 2014), following the affirmance of a preliminary injunction (*See* 501 Fed. Appx. 713, 2012 U.S. App. LEXIS 26601 (9th Cir. Dec. 28, 2012); and *Gomez-Sanchez v. Barr, sub nom*

Case 5:20-cv-00416-JGB-SP    Document 185-1    Filed 01/18/24    Page 6 of 22    Page ID
#:4009
Case 1:21-cv-00378-KES-CDB    Document 174-6    Filed 04/25/25    Page 7 of 23

*Gomez-Sanchez v. Sessions,* 892 F.3d 985 (9th Cir. 2018), awarding EAJA fees to the ACLU.  In *Jochimsen*, a unanimous court held I was qualified as an expert on market rates.

12.    I litigated statutory fee issues at the appellate level in several cases, including *Tipton-Whittingham v. City of Los Angeles*, 34 Cal. 4th 604 (2004), the companion case to *Graham v. Daimler-Chrysler*, 34 Cal. 4th 533 (2004), affirming continued vitality of the "catalyst" fee doctrine in California and affirming nearly $2 million in fees in a multi-plaintiff sexual discrimination/harassment lawsuit on behalf of female employees of the Los Angeles Police Department.  I was also counsel in *Jones v. City of Los Angeles*, 555 Fed. Appx. 659 (9th Cir. 2014), establishing entitlement to fees as a "prevailing party" based on the Circuit's necessary approval of a settlement that was conditioned on vacatur of the panel decision.

13.    I provide training on attorney fees best practices for civil rights and public interest firms, including the Legal Aid Foundation of Los Angeles and the ACLU.  I also have done CLEs on attorney fees for the National Lawyers Guild and the National Police Accountability Project.

14.    In addition, I have considerable experience reviewing and analyzing billing records in my own cases and in cases for which I provide a supporting declaration on the reasonableness of rates or hours.  Many of these cases involve multiple attorneys and law offices.  In my own cases, I am usually the attorney who conducts a review of all of the fee records and exercises billing judgment to eliminate any impermissible hours.  This includes, among other issues, eliminating clerical tasks, unnecessarily duplicative items, improperly billed items and vague items.  For example, in the *Tipton-Whittingham* case cited above, it was my responsibility to review the fee records covering six years of hours for attorneys from three firms: the ACLU,

Case 5:20-cv-00416-JGB-SP   Document 185-1   Filed 01/18/24   Page 7 of 22   Page ID
#:4010
Case 1:21-cv-00378-KES-CDB   Document 174-6   Filed 04/25/25   Page 8 of 23

the Western Regional Office of the NAACP Legal Defense Fund, and Litt & Associates.  The unadorned lodestar in *Tipton* was approximately $1,900,000.

15.   In *Multi-Ethnic Immigrant Worker Network v. City of Los Angeles*, involving a police assault on a lawful demonstration in MacArthur Park on May Day, 2007, I performed a billing judgment on the fee records for all attorneys and support staff in the case.   Because the case was a hybrid class action, with both 300 individual plaintiffs and a residual class of several thousand persons, the legal team was sizable.  The fee approved in the case was $3,713,000.

16.   In all the fee declarations I prepare, I apply my understanding of the decision in *Blum v. Stenson*, 465 U.S. 886 (1984), that "rates charged in private representations may afford relevant comparisons." *Id.* at 895 fn. 11.  I understand this to mean that fees for civil rights lawyers should approximate the rates charged by attorneys of comparable skill, experience and reputation in the relevant legal market, who are engaged in similarly complex litigation, regardless of whether the attorneys work for a non-profit, represent individuals on contingency, serve as in-house counsel, or charge a minimal rate with the possibility of receiving a market rate award if successful. *See Nadarajah,* 569 F.3d at 910.

17.   I apply several additional principles to assess market rates.  First, when available, I look at rates awarded to the attorneys in previous cases because I understand such awards are viewed as strong evidence of reasonable market rates. *See Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1111 (9th Cir. 2014); *U.S. v. $28,000 in U.S. Currency*, 802 F.3d 1100, 1106 (9th Cir. 2015); *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 976 (9th Cir. 2008). Past decisions where "a lawyer charges a particular hourly rate, and gets it, is evidence bearing on what the market rate is, because the lawyer and his clients are part of the market." *Carson v. Billings Police Dept.*, 470 F.3d 889, 892 (9th Cir. 2008).

18.   Next, I look to billing rates by attorneys engaged in similarly complex

litigation as an approved method of setting market rates for civil rights attorneys who do not bill on an hourly basis. *See Blum*, 465 U.S. at 895; *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (approving use of declarations of other attorneys regarding prevailing rates in the relevant market and rates in other cases). I understand the market rate comparison "extends to all attorneys in the relevant community engaged in equally complex Federal litigation, no matter the subject matter." *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010) (internal quotation omitted).

19.    When the specific rate evidence identified in the preceding paragraph is available, I usually do not rely on surveys because, in my opinion, they do not meet the standards for the lodestar analysis. In my experience, fee surveys report market rates in sweeping categories with no identification of the comparable skill, experience and reputation of the individual attorneys included in the survey and often no indication of the relevant legal market. *See, e.g., Shirrod v. Director, Office of Workers' Compensation Programs*, 809 F.3d 1082, 1089 (9th Cir. 2015) (reversing where the lower court relied on a national survey rather than local rates).

20.    I do not apply rates billed by and paid to opposing counsel who are usually salaried, contract government attorneys, or retained insurance defense lawyers as they generally charge rates well below market and are paid win or lose, so they do not share the risk of fee-shifting statutes and other contingent fees. *See e.g., Shapiro v. Paradise Valley Unified School Dist.*, 374 F.3d 857, 866 (9th Cir. 2004) (government lawyers and retained defense attorneys generally bill at lower rates, so they do not reflect the same legal market).

21.    Finally, I apply the rule that the relative "simplicity" or "complexity" of a case is reflected in the hours, not the lodestar rate. *See Van Skike v Director, Office of Workers' Compensation Programs,* 557 F.3d 1041, 1046 (9th Cir. 2009).

22.    The most important factors in determining reasonable market rates are

8

Case 5:20-cv-00416-JGB-SP   Document 185-1   Filed 01/18/24   Page 9 of 22   Page ID
#:4012
Case 1:21-cv-00378-KES-CDB   Document 174-6   Filed 04/25/25   Page 10 of 23

skill and experience.  The size of the firm is not a determinative factor.  In *Davis v. City & County of San Francisco*, 976 F.2d 1536, modified on other grounds, 984 F.2d 345 (9th Cir. 1993), the Court upheld rates for sole practitioners and non-profit law firm staff at those charged by "corporate attorneys of equal caliber." *Id.* at 1545; *see also Auer v. Robbins*, 519 U.S. 452 (1997) (market rates for comparably skilled attorneys not reduced based on firm size).

23.     I estimate that I review nearly 100 fee motions, fee awards, and supporting declarations in a year.   I subscribe to several websites that report legal news.  When I learn of a case where fees were awarded, I obtain copies of the relevant documents from public sources, including Court websites and PACER.  If I am preparing a declaration for a specific jurisdiction, I search for recent fee awards for comparably skilled and experienced attorneys in that legal market.

24.     To support my opinion on the reasonableness of the fees sought by this motion, I attach fee awards and declarations in cases in the Los Angeles legal market. Each is a true and correct copy of the document available in the Court's files.  Some are now several years old, so they do not reflect current rates. In *Hiken v. DOD*, the court noted that "market rates in effect more than two years *before* the work was performed" are not current lodestar rates. 802 F.3d at 1107 (9th Cir. 2016) (emphasis in original).  To adjust for rates more than two years old, I apply a minimum of a 3.1 percent increase, which was the average legal services component increase in the Consumer Price Index for Los Angeles before the pandemic.  *See*  http://www.bis.gov/news.release/cpi.102.htm  (Table2.Consumer Price Index for All Urban Consumers (CPI-U): U.S. city average by detailed expenditure category).  For the last two years, I use a slightly higher increase of five percent to reflect higher inflation.  Even that increase is below what I observed for increases in the Los Angeles legal market at firms doing complex litigation.

25.     In my experience, billing rates in Los Angeles at large commercial

Case 5:20-cv-00416-JGB-SP    Document 185-1    Filed 01/18/24    Page 10 of 22    Page ID
#:2013
Case 1:21-cv-00378-KES-CDB    Document 174-6    Filed 04/25/25    Page 11 of 23

firms increase annually at more than the cost-of-living rate based on both increased experience and rises in base rates.  For example, in *Charlebois v. Angels Baseball, LP*, 2012 U.S. Dist. LEXIS 91069, cv 10-0853 DOC (C.D. Cal. May 30, 2012), the Court rejected the defense's argument that the rate then sought by attorney V. James DeSimone should be limited to what was approved in prior years.  "[C]ourts routinely recognize that fee rates increase over time based on a variety of factors." 2012 U.S. Dist. LEXIS 91069, *24.  In *Parker v. Vulcan Materials Co. Long Term Disability Plan*, No. EDCV 07-1512 ABC (OPx), 2012 WL 843623, *7 (C.D. Cal. Feb. 16, 2012), the Court approved an increase of 10 percent in one year, noting "[i]t is common practice for attorneys to periodically increase their rates for various reasons, such as to account for expertise gained over time, or to keep up with the increasing cost of maintaining a practice."

26.    My rate for 2024 is $1300 an hour.  I have not filed a contested fee motion in several years other than to seek Court approval of the fees in class-action settlements, or to settle non-class cases.   The last such application I filed applied a 2022 rate of $1,150 an hour in *Shawn Carroll, et al. v. County of Orange, et al.*, Case No. 8:19-cv-00614 DOC-DFM (C.D. Cal.), a class-action challenging Orange County's regulations for determining eligibility to qualify for General Relief.

27.    In May 2019, I used the rate of $1050 an hour for the fees in *Mitchell v. City of Los Angeles*, Case No. 2:16-cv-01750-SJO-JPR (C.D. Cal.) and for a lodestar cross-check in a class action, *Chua v. City of Los Angeles*, Case 2:16-cv-00237-JAK-GJS (C.D. Cal.).  Prior to 2019, I resolved attorney fees in several cases at rates of $900 and $975 an hour.  My last court-awarded fee in a contested motion was $875 in 2014 in *CPR for Skid Row v. City of Los Angeles*, 779 F.3d 1098 (9th Cir. 2015).

28.    I understand fees are sought at the following 2024 rates in this action:

| Personnel | Role | Admission | Rate |
|---|---|---|---|
| Dale Galipo | Attorney | 1988 | $ 1400.00 |
| John Fattahi | Attorney | 2006 | $ 975.00 |
| Renee V. Masongsong | Attorney | 2011 | $ 800.00 |
| Eric Valenzuela | Attorney | 2012 | $ 800.00 |

**DALE GALIPO**

29.     Mr. Galipo seeks a rate of $1400 an hour for 2024.  I know Mr. Galipo personally and am familiar with his skill, experience, and reputation.  Based on my discussions with other civil rights attorneys in California, I am of the belief that many highly skilled civil rights lawyers share my view that Mr. Galipo is exceptionally experienced and skilled and one of the premier trial attorneys in the nation.  I am aware that he was recently awarded $1200 an hour in two cases in early 2023 by Judge Carney based on 2022 rates.  I provided a supporting fee declaration in these cases and understand that the fees were based on 2022 rates because these were the rates provided to opposing counsel in earlier attempts to resolve the fees without a motion. I attach several recent decisions awarding attorney fees in the Central District to support the reasonableness of this rate.

30.     Attached at Exhibit B is an excerpt from the Wolters Kluwer 2023 Real Rate Report ("Report") information for the Los Angeles legal market.  The 2023 Report is the most recent version available and is based on data collected in 2022 through early 2023.  For partners across all practice areas in Los Angeles with 21 or more years of experience, the third quartile ($Q_3$) rate was just under $1200 an hour—in other words, 75% of rates were below it, and 25% of rates were above it.  Ex. B at 31.  In my opinion, Mr. Galipo's rate would be above the third quartile based on both his years of experience – nearly double the minimum 21 years of

Case 5:20-cv-00416-JGB-SP   Document 185-1   Filed 01/18/24   Page 12 of 22   Page ID
#:2015
Case 1:21-cv-00378-KES-CDB   Document 174-6   Filed 04/25/25   Page 13 of 23

experience in this category – and his exceptional skill and reputation. The rates in the Report are consistent with the approved rates below for attorneys in the Los Angeles legal market.  The "Trend Analysis – Mean" data also reveals that between 2021 to 2023, the mean billing rate for all Los Angeles litigation partners rose by approximately 17.3%. *Id.* at 16.

31.     Attached at Exhibit C is an excerpt from the 2022 Real Rate Report ("2022 Report").  The 2022 Report reflects that the median rate for litigation partners in Los Angeles was $725, and the third quartile rate was $1045.  Ex. C at 16.  When these rates are compared to their corresponding rates in the 2023 Report of $840 and $1159, Ex. B at 16, we see dramatic one-year rate increases of 15.9% and 10.9% from Q2 2022 to Q2 2023.

32.     Attached at Exhibit D is the Order for fees in *Trendsettah USA Inc., et al. v. Swisher Int'l Inc.*, Case No. 8:14-cv-01664-JVS (DFMx) (C.D. Cal. Nov. 17, 2023), 2023 U.S. Dist. LEXIS 215670.  Trendsettah requested fees for Gaw|Poe partners Randolph Gaw ("Gaw") and Mark Poe ("Poe") at $1222 each and $1000 for associates Victor Meng, Samuel Song, and Flora Vigo. *Id.* at 37.  Plaintiffs supported the reasonableness of the requested rates with a declaration from Gerald Knapton. *Id.*; Ex. E. Mr. Knapton argued that the 2022 rates of $1045 for partners and $855 for associates in the third quartile in Los Angeles in the 2022 Real Rate Report should be increased by 17 percent for 2023 rates based on the increase at opposing counsel Gibson Dunn in the past year. *Id.*  Judge Selna applied the reasoning of a prior fee order and rejected Knapton's comparison between the firms, and applied the 2022 Real Rate Report for general litigation in Los Angeles, awarding $1045 to Messrs. Gaw and Poe and $855 to Meng, Song and Vigo.  I reviewed the biography of each attorney on the firm's website.  On that basis, I believe Messrs. Gaw and Poe are 2002 law school graduates, with 21 years of experience in 2023.  On an annual basis, the differential is about $10 an hour for

each year of additional experience Mr. Galipo has.  With respect to Trendsettah's appellate counsel at Goldstein & Russell, Judge Selna found that the comparison to rate increases at Gibson Dunn was apt despite the firms' size differences, and awarded the requested rates of $2180 for Thomas Goldstein, $1520 for Kevin Russell, and $1080 for Daniel Woofter and Charles Davis.  *Id.* at 23-25.

33.     Attached at Exhibit F is the Declaration of Michael Strub filed in 2023 in support of a motion for attorney fees in *Nelson v. Phoebe Bridgers*, LASC Case No. 21STCV35635, an anti-SLAPP case.  Mr. Strub averred that he is a partner at Greenberg & Gross, a 1990 law graduate, and has a 2022 billing rate of $1095 an hour.  Ex. F ¶¶ 1, 23.   His declaration also provides the rates for Mssrs. Greenberg and Gross, both listed as 1988 law graduates, at a 2022 rate of $1400 an hour, the same rate requested for Mr. Galipo in 2024.  *Id.* ¶ 23.  Notably, from 2021 to 2022, Mr. Greenberg's rate increased from $1200 to $1400.  *Id.*

34.     Attached at Exhibit G is the Declaration of Luke Brooks filed in support of a motion for fees on a lodestar cross-check in a class-action lawsuit, *Fleming v. Impax Laboratories, Inc.*, Case No. 4:16-cv-06557 HSG (C.D. Cal. 2022).  Mr. Brooks is an attorney with Robbins, Geller, Rudman & Dowd, LLP. Exhibit A to Mr. Brooks' declaration sets out rates for the firm's attorneys, including Darren Robbins at the 2022 rate of $1325 an hour. The rates were confirmed by the Court in a lodestar cross-check as final approval of a class action [Doc. 133, p.15].  I reviewed Mr. Robbins' listing on the firm's website and, on that basis, conclude that he is a 1993 law graduate.  Mr. Robbins' 2022 rate is only $75 or approximately five percent below the 2024 rate requested for Mr. Galipo, who has significantly more experience in 2024 than Mr. Robbins had in 2022.

35.     Attached at Exhibit H is the order awarding fees in *Garcia v. Seltzer-Dorene Management Co., Inc.*, LASC Case BC 699421 (2021), at 2021 rates for attorneys at Shegerian & Associates, an employment law firm.   The Court's

tentative ruling, setting out the rates, is incorporated in the Notice of Ruling. The approved rates for all counsel are listed in Table C. Ex. H at p.13. The Court approved the 2021 rate of $1300 an hour for Mr. Shegerian. Based on my review of the firm's website, I believe he was admitted in 1990.

36.    Attached at Exhibit I is the 2023 Order in Los Angeles Superior Court awarding fees in *Contreras v. Kelly Pipe Co.*, Case No. 21STCV17933, 2023 Cal. Super. LEXIS 64818, to attorneys at Shegerian & Associates in an employment discrimination case. The four top-billing attorneys in *Contreras* and the rates approved were Carney Shegerian at $1350 an hour; Anthony Nguyen at $1100 an hour; (3) Mahru Madjidi at $900 an hour; and Bryan Kirsh at $825 an hour. *Id.,* pp. 20, 28. The Court's decision notes the experience of each: Carney Shegerian – over 30 years; Anthony Nguyen – almost 15 years; Mahru Madjidi – 10 years; and Bryan Kirsh – 6 years. *Id.* at p.20.

37.    Attached at Exhibit J is the Declaration of Eric Rowen of Greenberg Traurig in support of a motion for fees in *Simons v. Superior Court ("Simons I")*, LASC Case No. 19STCP01994. The motion sought fees at historical rates for 2018 and 2019 in a complex business matter. The lower Court's award was upheld on appeal in an unpublished decision available at 2022 Cal. App. Unpub. LEXIS 1854. In his declaration, Mr. Rowen avers that he is a 1982 law graduate. Ex. J, p. 7.

38.    After the ruling by the appellate court, Greenberg Traurig filed a motion for additional attorney fees for the appeal ("*Simons II")*. Mr. Rowen filed a declaration, setting out the firm's rates for 2020 and 2021. A true and correct copy of the second Rowen declaration is at Exhibit K. Mr. Rowen's 2021 rate was $1380, $20 an hour below the 2024 rate requested for Mr. Galipo. *Id.* at p.9.

39.    Attached at Exhibit L is the Order approving fees for attorneys at Gibson, Dunn & Crutcher in *Isaacs v. USC Keck School of Medicine*, Case NO. 2:19-CV-08000-DSF-RAO (C.D. Cal. 2020), an anti-SLAPP case. The Court

Case 5:20-cv-00416-JGB-SP    Document 185-1    Filed 01/18/24    Page 15 of 22    Page ID
#:4018
Case 1:21-cv-00378-KES-CDB    Document 174-6    Filed 04/25/25    Page 16 of 23

noted that Gibson Dunn's rates were on the "higher side" but, nonetheless, found them to be reasonable rates for the Los Angeles legal market. *Id.* at p. 3. Because the Court's order did not set out the specific rates approved, I attach at Exhibit M the Declaration of James Fogelman in support of the motion for fees.

40.    Mr. Fogelman averred that he is a partner at Gibson Dunn & Crutcher and a 1992 law graduate. The firm's time records are at Exhibit A to his declaration. His 2020 hourly rate was $1265, about 10 percent below the 2024 rate Mr. Galipo requests with nearly a decade more experience. Ex. M ¶ 2. This reflects an annual increase of 2.5 percent. As discussed in Judge Selna's fee order in *Trendsettah USA Inc., et al. v. Swisher Int'l Inc.*, Case No. 8:14-cv-01664-JVS (DFMx) (C.D. Cal. 2023), and Exhibit E, the Knapton Declaration filed in that case, partners' rates at Gibson Dunn increased about 17 percent from 2022 to 2023. *See* Ex. D, p.22; Ex. E ¶ 68.[1]

41.    In *Benjamin Woodhouse, et al. v. The United States Government*, 2:22-cv-00079 RGK (C.D. Cal. 2022), the Court found the 2022 rates of $1440 and $1310 an hour reasonable in the Los Angeles legal market for Kirstin Linsley and Austin Schwing, both attorneys at Gibson Dunn. Ex. N, p. 3. I reviewed the biography of each on the firm's website and, on that basis, believe that Ms. Linsley is a 1988 law graduate and Mr. Schwing is a 2000 law graduate.

42.    In *Herring Networks v. Rachel Maddow*, Case No. 19-cv-1713 BAS-

---

[1] Although the filings by the parties redacted the billing rate information, including rates charged and annual increases, the Court's Order included the information and cited to the underlying declarations, particularly of Trendsettah's expert Gerald Knapton. The customary billing rates are available in other public filings for both the plaintiffs' and defendants' counsel in *Trendsettah*, so it is not clear why redaction would be approved in this case.

Case 5:20-cv-00416-JGB-SP   Document 185-1   Filed 01/18/24   Page 16 of 22   Page ID
#:2019
Case 1:21-cv-00378-KES-CDB   Document 174-6   Filed 04/25/25   Page 17 of 23

AHG (S.D. Cal. 2020), Gibson Dunn submitted the declaration of Scott Edelman, listing the firm's customary billing rates in the Los Angeles legal market. A true and correct copy of the Edelman Declaration is attached at Exhibit O. Mr. Edelman averred that the 2020 rate for Theodore Boutrous was $1525 an hour and that his 2020 rate was $1395 an hour. Ex. O, ¶ 18. I reviewed the firm's website and believe Mr. Boutrous graduated in 1987 and Mr. Edelman in 1984.

43.     The *Herring Networks* case was an anti-SLAPP lawsuit before the Southern District of California. The Court reduced the requested Los Angeles rates to reflect lower market rates in San Diego, approving a 2020 rate for Mr. Boutrous at $1150 and $1050 as the 2020 rate for Mr. Edelman. Exhibit P.

44.     The attorney fee award to Gibson Dunn for 2022 rates, attached as Exhibit R, also supports the reasonableness of the rate of $1400 an hour for Dale Galipo. In her declaration filed in support of the fee request, Anne Champion averred that her customary billing rate for 2020 was $1295 and that it increased nearly 10 percent to $1430 an hour for 2021. A true and correct copy of the Champion Declaration is attached at Exhibit Q, ¶ 6. Ms. Champion averred she is a 2005 law school graduate. *Id.*, ¶ 3. She has less than half the experience of Mr. Galipo and her 2021 rate was slightly higher than the 2024 rate requested by Mr. Galipo.

45.     Attached at Exhibit S is an excerpt from the fee application by Munger, Tolles & Olson ("MTO") in the PG&E Bankruptcy proceedings in Northern California, *In re PG&E CORPORATION*, Bankruptcy Case No. 19-30088-DM (N.D. Cal.). Although MTO sought a blended rate of over $1000 an hour for the most experienced attorneys, the motion provided the customary rates for all billers at the firm in all cases, not just bankruptcy. *Id.* p. 16. The 2020 rates included $1400 an hour for Donald Verrilli, listed as a 1983 admittee; $1400 an hour for Henry Weissmann, a 1987 admittee; $1320 an hour for Michael Doyen, a 1982

Case 5:20-cv-00416-JGB-SP   Document 185-1   Filed 01/18/24   Page 17 of 22   Page ID
#:4029
Case 1:21-cv-00378-KES-CDB   Document 174-6   Filed 04/25/25   Page 18 of 23

admittee; and $1400 an hour Luis Li, a 1991 admittee.  Ex. S.

**JOHN FATTAHI**

    46.    I know Mr. Fattahi personally and am familiar with his skill, experience and reputation.  I met him when he was preparing for his first appellate argument, soon after completing his clerkship.  Based on my discussions with other civil rights attorneys in California, I am of the belief that many highly skilled civil rights lawyers share my view that he is exceptionally experienced and skilled.

    47.    In *Trendsettah*, the Court approved $1045 an hour for Mssrs. Gaw and Poe at Gaw|Poe, applying the 2022 Real Rate Report third quartile for litigation partners in Los Angeles.  Ex. D, p. 23.  In 2024, Mr. Fattahi has nearly the same years of experience as Mssrs. Gaw and Poe, both 2002 law graduates. Ex. D, p. 23. Using the 2023 Report, with nearly 18 years of experience, Mr. Fattahi's requested rate is below $1102, which represents the third quartile for partners in Los Angeles with fewer than 21 years of experience.  Ex. C, p. 30.

    48.    In *Contreras v. Kelly Pipe Co.*, Case No. 21STCV17933, 2023 Cal. Super. LEXIS 64818, the Court approved the 2023 rate of $1100 an hour for Anthony Nguyen. Ex. I, pp. 20, 28.  The Court's decision noted that Mr. Nguyen had almost 15 years of experience.  Based on my review of Mr. Nguyen's information on the firm's website, I understand he is a 2008 law graduate.  With three years more experience, Mr. Fattahi seeks a 2024 rate that is eleven percent lower than Mr. Nguyen's 2023 rate.  In *Garcia*, with 13 years of experience, Mr. Nguyen was awarded fees at the 2021 rate of $900 an hour.  Ex. I, p. 11 (Table C). With five years more experience, Mr. Fattahi seeks a 2024 rate only eight percent above the 2021 rate approved for Mr. Nguyen.

    49.    As discussed above, Greenberg Traurig filed a motion for attorney fees for the appeal in *Simons*. Eric Rowen filed a declaration in support of the

motion, setting out the firm's rates for 2020 and 2021.  Ex. K.  He averred that the 2021 rate for Matthew Gershman, a 2007 admittee, was $935 an hour, just slightly below the 2024 rate of $975 requested for Mr. Fattahi.  Ex. K, p. 9 ¶ 37.  In 2021, Mr. Gershman had four years less experience than Mr. Fattahi has now.

50.     In *Isaacs v. USC Keck School*, the approved 2020 rate for Shannon Mader at Gibson Dunn was $915 an hour.  Exs. L-M.  Based on my review of the firm's website, Mr. Mader is a 2004 law graduate.  In 2020, he had one year less experience than Mr. Fattahi has now.  Applying a modest increase of five percent a year, the equivalent rate for an attorney with 16 years of experience at Gibson Dunn—one year less than Mr. Fattahi has—would be at least $1100 an hour.

51.     In the "MTO" fee application in the PG&E Bankruptcy Court proceedings in the Northern District of California, discussed in paragraph 45, above, MTO partner Bradley Schneider of the Los Angeles office attested that the rates set forth in his Exhibit D were the customary billing rates for all complex business litigation by the firm and were used nationally.  Ex. S, p. 11, 13-23.  Among the attorneys for whom fees were sought were Jeffrey Wu, listed as a 2007 admittee with a 2020 rate of $920 an hour; Kimberly Chi, listed as a 2006 admittee with a 2020 rate of $920 an hour; and Matthew MacDonald, listed as a 2008 admittee with a 2020 rate of $950 an hour.  In 2020, Mr. Wu had 13 years of experience, Ms. Chi had 14 years of experience, and Mr. MacDonald had 12 years of experience.  The MTO 2020 rates are just slightly below the 2024 rate requested by Mr. Fattahi, who has three to five more years of experience than each of the listed MTO attorneys.

**ERIC VALENZUELA and RENEE V. MASONGSONG**

52.     The rate of $800 an hour for Eric Valenzuela, a 2012 admittee, and Renee V. Masongsong, a 2011 admittee, is well within the range of market rates

Case 5:20-cv-00416-JGB-SP   Document 185-1   Filed 01/18/24   Page 19 of 22   Page ID
#:4022
Case 1:21-cv-00378-KES-CDB   Document 174-6   Filed 04/25/25   Page 20 of 23

for similarly experienced and skilled attorneys.  Matthew Gershman, an attorney at Greenberg Traurig, was awarded consistently higher rates several years ago in *Simons I and II*.  In *Simons I*, the court approved the 2019 rate of $890 an hour for Matthew Gershman, a 2007 law graduate then with 12 years of experience.  Ex. J, p.7.  In *Simons II,* Mr. Gershman's 2021 rate was $935 an hour.  Ex. K, p.9.

53.   The MT&O 2020 rates also support Mr. Valenzuela's and Ms. Masongsong's 2024 rate of $800 an hour.  In the *PG&E* bankruptcy case, the rate for Nicholas Fram and Zachary Briers, both listed as 2012 admittees, then with eight years of experience, was $860.  MT&O also included $860 an hour for Jennifer C. Broder, listed as a 2011 admittee; $895 an hour for Erin J. Cox, listed as a 2009 admittee; and $920 an hour for Jeremy Lawrence, identified as a 2010 law graduate then with 10 years of experience.  Ex. S, p. 3 (Exhibit D).  Even the 2020 rates of $780 an hour for Andre Brewster and $820 an hour for Graham Cole, both identified as fifth-year associates at MTO, were within $20 on either side of the rate now requested for Mr. Valenzuela and Ms. Masongsong.  Ex. S, p. 6.

54.   The 2024 rate of $800 an hour is also low when compared to the 2021 customary billing rates for Robbins, Geller, a relatively small firm based in San Diego and focusing on class-action litigation.  In *Fleming*, the rate for Angel P. Lau was $760 an hour.  Ex. G, p. 8.  I located Mr. Lau on the California State Bar and determined that he now works for Governor Newsom's administration.  He is listed as a 2012 admittee.  In 2021, Angel Lau had nine years of experience.

55.   In *Isaacs*, Gibson Dunn was awarded fees for Katarzyna Ryzewska.  I reviewed Ms. Ryzewska's information on the firm's website and believe that she is a 2013 law graduate with seven years' experience in 2020, the year of the *Isaacs* award.  I reviewed the entries in Exhibit A to the Fogelman declaration and concluded that her 2020 rate was $815 an hour, slightly above the 2024 rate sought

Case 5:20-cv-00416-JGB-SP   Document 185-1   Filed 01/18/24   Page 20 of 22   Page ID
#:4023
Case 1:21-cv-00378-KES-CDB   Document 174-6   Filed 04/25/25   Page 21 of 23

for Mr. Valenzuela and Ms. Masongsong, each of whom has approximately twice the years of experience Ms. Ryzewska had in 2020.  Ex. L; Ex. M, p. 5.

56.    The 2020 rate for Gibson Dunn associate Meredith Simons, a 2017 law graduate, was $740 an hour. Ex. Q, p. 17.  Her 2021 rate was $845 an hour, increasing to $960 an hour in 2022.  Ex. Q, pp. 43, 48.

57.    The chart below sets out the rates referenced in my declaration.

| Ex. | Attorney | Graduation | Award | Experience | Rate |
|-----|----------|------------|-------|------------|------|
| D | Randolph Gaw | 2002 | 2022 | 20 | $1,045.00 |
| D | Mark Poe | 2002 | 2022 | 20 | $1,045.00 |
| F | Michael Strub | 1990 | 2022 | 32 | $1,095.00 |
| F | Alan Greenberg | 1988 | 2022 | 34 | $1,400.00 |
| F | Wayne Gross | 1988 | 2022 | 34 | $1,400.00 |
| G | Darren Robbins | 1993 | 2021 | 29 | $1,325.00 |
| G | Angel Lau | 2012 | 2021 | 9 | $  760.00 |
| H | Carney Shegerian | 1990 | 2021 | 31 | $1,300.00 |
| H | Anthony Nguyen | 2008 | 2021 | 13 | $  900.00 |
| I | Carney Shegerian | 1990 | 2023 | 33 | $1,350.00 |
| I | Anthony Nguyen | 2008 | 2023 | 15 | $1,100.00 |
| I | Mahru Madjidi | 2013 | 2023 | 10 | $  900.00 |
| I | Bryan Kirsh | 2017 | 2023 | 6 | $  825.00 |
| J | Matthew Gershman | 2007 | 2019 | 12 | $  890.00 |
| K | Eric Rowen | 1982 | 2021 | 39 | $1,380.00 |
| K | Matthew Gershman | 2007 | 2021 | 14 | $  935.00 |
| M | James Fogelman | 1992 | 2020 | 28 | $1,265.00 |
| M | Shannon Mader | 2004 | 2020 | 16 | $  915.00 |
| M | Katarzyna Ryzewska | 2013 | 2020 | 7 | $  815.00 |

Case 5:20-cv-00416-JGB-SP   Document 185-1   Filed 01/18/24   Page 21 of 22   Page ID
#:4024
Case 1:21-cv-00378-KES-CDB   Document 174-6   Filed 04/25/25   Page 22 of 23

| N | Kirstin Linsey | 1988 | 2022 | 34 | $1,440.00 |
|---|---|---|---|---|---|
| N | Austin Schwing | 2000 | 2022 | 22 | $1,310.00 |
| O | Theodore Boutrous | 1987 | 2020 | 33 | $1,525.00 |
| O | Scott Edelman | 1984 | 2020 | 36 | $1,395.00 |
| Q | Anne Champion | 2005 | 2020 | 15 | $1,295.00 |
| Q | Anne Champion | 2005 | 2021 | 16 | $1,430.00 |
| Q | Meredith Simons | 2017 | 2020 | 3 | $   740.00 |
| Q | Meredith Simons | 2017 | 2021 | 4 | $   845.00 |
| Q | Meredith Simons | 2017 | 2022 | 5 | $   960.00 |
| S | Donald Verilli | 1983 | 2020 | 37 | $1,400.00 |
| S | Michael Doyen | 1982 | 2020 | 38 | $1,320.00 |
| S | Henry Weissmann | 1987 | 2020 | 33 | $1,400.00 |
| S | Luis Li | 1991 | 2020 | 29 | $1,400.00 |
| S | Matthew MacDonald | 2008 | 2020 | 12 | $   950.00 |
| S | Jeffrey Wu | 2007 | 2020 | 13 | $   920.00 |
| S | Kimberly Chi | 2006 | 2020 | 14 | $   920.00 |
| S | Jeremy Lawrence | 2010 | 2020 | 10 | $   920.00 |
| S | Zachary Briers | 2012 | 2020 | 8 | $   860.00 |
| S | Jennifer Broder | 2011 | 2020 | 9 | $   860.00 |
| S | Erin Cox | 2009 | 2020 | 11 | $   895.00 |
| S | Nicholas Fram | 2012 | 2020 | 8 | $   860.00 |
| S | Andre Brewster | 2015 | 2020 | 5 | $   780.00 |
| S | Graham Cole | 2015 | 2020 | 5 | $   820.00 |

58.     Based on the foregoing, I believe the rates sought by this motion are reasonable for comparably skilled and experienced attorneys in Los Angeles.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 18th day of January, 2024 at Los Angeles, California.

*Carol Sobel*

CAROL A. SOBEL