LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Renee V. Masongsong, Esq. (SBN 281819)
rvalentine@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Telephone:  (818) 347-3333
Facsimile:   (818) 347-4118

Attorneys for Plaintiffs
R.L., M.L., and H.L., minors, by and through guardian *ad litem* Roberta Haro;

A.W., a minor, by and through guardian *ad litem* Alisha White, ALISHA WHITE

**TONI JARAMILLA, A Professional Law Corp.**
Toni J. Jaramilla, Esq. (SBN 174625)
Toni@tjjlaw.com
1900 Avenue of the Stars, Suite 900
Los Angeles, California 90067
T: (310) 551-3020 | F: (310) 551-3019

**ALEXANDER MORRISON + FEHR LLP**
J. Bernard Alexander, III (SBN 128307)
balexander@amfllp.com
Britt L. Karp (State Bar No. 278623)
bkarp@amfllp.com
1900 Avenue of the Stars, Suite 900
Los Angeles, California 90067
T: (310) 394-0888 | F: (310) 394-0811

Attorneys for Plaintiffs
MICKEL ERICK LEWIS JR, ORIONA LEWIS
and BRIONA LEWIS

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

MICKEL ERICK LEWIS JR,
individually and as successor-in-interest
to MICKEL E. LEWIS SR., ORIONA
LEWIS, individually and as successor-
in-interest; and BRIONA LEWIS,
individually and as successor-in-interest,

                    Plaintiffs,

          vs.

KERN COUNTY, Deputy JASON
AYALA, and Does 1–20, inclusive,

                    Defendants.

---

R.L., M.L., and H.L., minors, by and
through guardian *ad litem* Roberta Haro,
individually and as successors in interest
to Michel Lewis Sr., deceased; A.W., a
minor, by and through her guardian *ad
litem* Alisha White, individually and as a
successor in interest to Mickel Lewis Sr.,
deceased; ALISHA WHITE,
individually and as a successor in
interest to Mickel Lewis Sr.,

                    Plaintiffs,

          vs.

COUNTY OF KERN; JASON AYALA;
and DOES 1-10, inclusive,

                    Defendants.

---

# <u>DECLARATION OF TONI JARAMILLA</u>

I, Toni Jaramilla, declare as follows:

1.      I am an attorney at law licensed to practice before all courts in the State of California and the founder of Toni Jaramilla, a Professional Law Corporation.  I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would testify competently thereto.

2.      I submit this Declaration in support of Plaintiffs' Motion for Statutory Attorneys' Fees and Costs.

3.      I have been admitted to practice law in the State of California since December 1994.  I have been practicing civil rights employment law almost exclusively for over 30 years, and for the past five years police excessive force cases.   I am admitted by the California Supreme Court, the Ninth Circuit Court of Appeals, and the United States District Court for the Central, Eastern and Southern Districts of California.  In 1996, I opened my own law practice in Los Angeles, Toni Jaramilla, APLC.

4.      Currently, my civil right practice consists of 80% plaintiff employment law litigation and 20% police excessive force cases.  In almost 100% of my cases, my firm's work is done on a contingency basis, consistent with the practice of a substantial majority of plaintiff civil rights and employment attorneys. I represent victims of police abuse and civil rights violations under the Bane Act and federal §1983 claims, as well as California workers under the protections of the Fair Employment and Housing Act (FEHA) and the Labor Code for claims of discrimination, harassment, retaliation and wrongful termination as well as unpaid wages.

5.      I, along with my co-counsel, J. Bernard Alexander, III represent Mickel Lewis, Jr., Briona Lewis, and Oriona Lewis, the three oldest children of decedent, Mickel Lewis, Sr.  Our clients are represented on a contingency fee basis in which we bear great economic risk by taking the case.  Through years of

experience, I recognize that both civil rights and employment law cases are labor intensive and require that I spend extensive amounts of time investigating and working up a case both before and during litigation to properly prepare it for trial. Extensive attorney time must be spent on each case to give it the best chance of success, not just for the sake of our clients, but also to avoid potential financial disaster in taking on a contingency case.

6.      Many of my clients are low wage earners or unemployed.  As such, they have no financial ability to retain a lawyer, but for the attorney's fees provisions of 42 U.S.C. § 1988(b).  the Bane Act, and the FEHA in which an award of attorneys' fees is for the benefit for the prevailing plaintiff at the end of the case where a jury or arbitration verdict is rendered in the plaintiff's favor.

### *Litigation Skills and Experience*

7.      Throughout my over 30 years of practice, I have litigated hundreds of cases in both state and federal court, as well as in arbitration. I have achieved jury verdicts, arbitration awards, and settlements in six figures to near or over $1 million to $4.75 million for individual cases and $7 million collectively for a multi-plaintiff case of five.   I often take on difficult cases against powerful defendants which are often rejected by other attorneys because of significant legal hurdles in the case, the great financial risks involved, and inability of the clients to pay on an hourly basis.

8.      In 2024, I achieved a $1.2 million judgement on behalf of my client in a sexual harassment case against a sitting immigration judge with the Department of Justice.  *Escoto v. Merrick Garland, Attorney General of the United States, Department of Justice* (2:23-cv-03340-FMO-E).

9.      In 2023, after three years of litigation in U.S. District Court, Central, I achieved the largest settlement for a single plaintiff, non-lethal excessive force case for that year in the amount of $4.75 Million.  *Chrisopher Bailey v. County of Los Angeles* (2:21-cv-05017-FLA (KSx).

Declaration of Toni J. Jaramilla in Support of Plaintiffs' Motion for
Statutory Attorneys' Fees and Costs

10.    In 2023, I represented three Black teenage boys against a retail chain for racial profiling and false imprisonment, which also involved civil rights violations by Los Angeles County Sheriff deputies. After years of litigation, I, along with my co-counsel, Bernard Alexander, achieved a $2 million (collective) confidential settlement after defeating a Motion for Summary Judgement.

11.    In 2018, I prevailed in a jury trial in a very challenging discrimination and retaliation case against the Los Angeles Unified School District on behalf of its General Counsel. The jury awarded $210,833 in damages, an excellent outcome for a plaintiff who continued to be employed with the school district in this "failure to promote" case.    *Melendez v. LAUSD BC635349.*

12.    The high settlements, jury verdicts and arbitration awards that I am able to obtain for many of my clients are a product of not only the dedication and many hours I devote to my cases, but also my legal skills and my ability to attract exceptional cases to my firm because of my reputation in the legal community.  In fact, clients are consistently referred to me not just by colleagues and community leaders, but also by opposing counsels and judges from state and federal courts.

13.    I have received unsolicited media coverage in several of my cases in which I represented police abuse victims and employees in harassment and discrimination cases.   In addition to having my cases featured on the news, I have been interviewed and quoted regarding my opinion on civil rights and employment law cases.

14.    When I was a new lawyer, I successfully appealed and argued two employment law cases before the California Court of Appeal: *Bellardine v. Apple One Employment Services* (C.A. 2nd, B127234, June 15, 1999 (prevailed in opposing Apple One's motion to compel arbitration against employee, Bellardine) and *Carrillo v. U.C. Regents* (UCLA), 1997 W.L. 913107 (successfully argued that Carrillo, a sexual harassment victim, did not fail to exhaust internal administrative

3

remedies with the UC Regents.  I also prevailed in overturning a sanctions award against Carrillo).

### *Recognition in the Community*

15.     In 2020, I was one of three civil rights leaders invited to a private meeting with Los Angeles Chief of Police, Michel Moore and Los Angeles County Sheriff, Alex Villanueva on the issues of police abuse towards protestors during the civil unrest following George Floyd's murder.  I have written numerous articles on employment law and police reform in legal publications.

16.     I have received numerous awards and forms of professional recognition over the years, as follows:

- Top 50 Women Lawyers, Southern California Super Lawyers (2024)

- Top 100 Lawyers Overall, Southern California Super Lawyers (2024)

- Leading Lawyers in Employment and Civil Rights Law, Best Lawyers (2024, 2021, 2022)

- Fellow of The College of Labor and Employment Lawyers (2021)

- Distinguished Advocate of the Year, Philippine American Bar Association (2021)

- Top Labor and Employment Lawyers, Los Angeles Daily Journal (2024, 2023, 2022, 2021, 2020, 2019, 2018, 2017)

- Southern California Super Lawyers, Los Angeles Magazine and Law & Politics, Employment Litigation (2024 and yearly since 2005)

- Best Lawyers in America, Los Angeles Times (2024 and yearly since 2006)

- Women Leaders in the Law, Los Angeles Times (2014)

- Top Women Lawyers, Los Angeles Magazine (2011-2013)

4

- Women Making a Difference Award, Los Angeles Business Journal (2013)

- CELA's Joe Posner Attorney of the Year Award (2010)

- Southern California, "Rising Star", Los Angeles Magazine (2004)

- Daily Journal, Front Page Profile *Bar President is Feisty Advocate*" (10/26/98)

### *First Female/Filipina in Leadership Positions*

17.     I have held numerous leadership positions in the legal profession, many of them being the first female or Filipina American to hold that leadership position.

18.     I am a past Chair of the California State Bar's Labor & Employment Law Section, one of the largest sections of the California State Bar (now the California Lawyers Association).   The Board of Governors of the State Bar appointed me as an Executive Member of the Labor & Employment Law Section in 1998.  I was one of the youngest attorneys ever appointed as an Executive Board Member, a position that is highly competitive and coveted and requires a demonstration of achievement and success as an employment and labor lawyer. As a new member of the Labor & Employment Law Section Board, I spearheaded a grant program that provides funding to bar organizations for educational and outreach programs to law students and lawyers in the area of employment law. That grant program continues to this day, decades later.  I was also instrumental in its annual employment law conferences that takes place each year which provides outstanding and advanced educational programs in the area of employment and labor law.

5

19.     I am a past Chair of the California Employment Lawyers Association (CELA), California's largest and strongest employee rights advocate group comprised of lawyers (2011-2013). As Chair, I was often quoted in the news media for commentary and opinions on significant employment law cases and developments. I have been a CELA Board member from 2006 to 2018. I remain an active member of CELA, including serving as past Chair and member of CELA's Diversity Outreach Committee which establishes scholarships and fellowships to encourage women and those of multi-cultural backgrounds to practice employment law.

20.     I am currently on the Board of the National Employment Lawyers Association (NELA), an elected position.

21.     I am the immediate past Chair and current member of the California Lawyers Association, Diversity Inclusion and Outreach Committee (DIOr). I helped draft and present the CLA's current Model Diversity Policy which was unanimously approved and adopted by its Board of Directors in 2019.

22.     I am the co-founder of the Foundation for Advocacy Inclusion and Resources (FAIR) in which our mission is to increase cultural diversity in the plaintiff employment law bar.

23.     I am currently Chair of the CELA- Civil Rights Department Liaison Committee in which we meet with the Director of the California Civil Rights Department to discuss programs or improvements needed in the Department or at the legislative level to strengthen protection for California workers against harassment and discrimination.

### *Recognized Speaker, Featured in Documentaries*

24.     I am a frequent and recognized speaker for California statewide, local, and national bar organizations that provide MCLE credit, as well as for community groups and radio shows, including the Consumer Attorneys Association of

California (CAALA), California's largest organization of plaintiffs' attorneys who practice civil rights, personal injury, and employment law as well a CELA, the largest plaintiff side employment law organization in the nation.

25.    In March, 2025, I was a featured speaker at the Union Women: Stronger Together Conference for Women's History Month.

26.    Each year since 2014, I have been an instructor on trial skills and a presenter (2018) on the topic of implicit bias in the courtroom at the yearly CELA Trial College, founded by my co-counsel, Bernard Alexander.    The CELA Trial College provides students with civil trial training, including an opportunity to conduct a mock trial before a mock jury, and has graduated over 350 attorneys since its inception in 2014.

27.    I have also been a guest lecturer at UC Irvine School of Law on Civil Procedure.

28.    Throughout my legal career, I have often been quoted or featured in print media.  In the *Daily Journal's* supplemental December 2018 issue, I was one of five featured experts in the *Daily Journal's* "Labor and Employment Roundtable Series" in which employment law experts discussed the year's top employment law issues, including an update on legislation spurred by the "Me Too" movement and the California Supreme Court's ruling in *Dynamex.*

29.    On July 23, 2020, the Los Angeles Daily Journal featured me on the front page regarding Non-Disclosure Agreements covering race bias claims. I was quoted extensively and provided my insight on Sente Bill 1300 which I, and other attorneys, helped author, lobby and testify on at the Capitol and SB 820 which prohibits Non-Disclosure Agreements on settlements of sexual harassment and sex discrimination claims.

30.    On September 18, 2018, my law firm was featured in the *Los Angeles Daily Journal* in its small firm profile article entitled, "Dynamic Trio: Toni

Jaramilla, APLC chooses plaintiffs whose cases may lead to changes in employment law." Our firm takes pride in taking on very difficult cases in which we help clients who were discriminated and retaliated against, while striving to make positive changes in the workplace and strengthen protections for California workers at the legislative level and in case law.

31. Very early in my career, the *Los Angeles Daily Journal* profiled me on its front page (October 6, 1998) entitled "Bar President is Feisty Advocate" and featured me again on September 9, 2002 for my successes in my employment cases and my dedication as a community leader.

32. I was one of a select few U.S. employment law attorneys invited to speak before delegates of the Human Rights Commission of Korea during its efforts to expand Korea's own anti-discrimination laws.

33. In 2013, I was nominated for the "Women Making a Difference" Award by the LA Business Journal. I was invited to be a special guest and speaker on March 8, 2019 for International Women's Day for the United Nations, Long Beach chapter.

34. I have been featured in various documentaries involving police brutality and sexual harassment, including an upcoming documentary in a case against a large apparel company in which I represented 5 women, sexually harassed by its now-ousted, CEO.

### Testified at the State Capitol to Strengthen Law in California

35. As part of CELA's Legislative Committee, in 2019, I, along with my client in a sexual harassment FEHA case, testified at the state Capitol in support of AB 9, which would extend the statute of limitations from 1 year to 3 years, in which a charging party could file a complaint with the Department of Fair Employment and Housing. This legislation was signed into law by Governor Gavin Newsom, effective 2020.

36.     I continued to be involved in working with California senators and assemblypersons on legislation inspired by the "Me Too" movement as well as laws that will bring workplace equality for women and people of color.  With CELA and civil rights allies and leaders, I was instrumental in helping draft legislation that have been signed into law by Governor Jerry Brown this past September, 2018, including SB 820 (banning secret settlements in sexual harassment cases), SB 1300 (clarifying the "pervasive" and "severe" standard in harassment cases, rendering releases of FEHA claims void if procured as a condition of employment, bonus, or raise, rendering non-disparagement provisions void if made as a condition of employment, and strengthening anti-harassment training).  I have been working on these and other legislation in an effort to strengthen laws to protect California workers.

37.     Recently, the ACLU consulted with me on legislation regarding the confidentiality of police officers' misconduct and whether complaints of misconduct or allegations of excessive force can remain confidential in a settlement agreement related to the officer's employment.

### *Hourly Rate of $1,125 for Jaramilla*

38.     I am seeking the hourly rate of $1,125.00.  My hourly rate has increased through the years.  For instance, in 2014, about 11 years ago, the Honorable Lourdes G. Baird (Ret.) affirmed my hourly rate at the time of $650.00 in the matter of *American Apparel, Inc. v. Ferguson* (JAMS Arbitration Reference No. 1220042480).  Prior to that, in 2011, Judge Zaven Sinanian of the Los Angeles Superior Court confirmed an hourly rate for me at $550.00/hour in the case of *Fredericks, et.al. v. Verizon Services Corporation et.al.* (BC 426734) when I was only a 17-year attorney.

39.    In 2022, the Honorable R. Gary Klausner confirmed an hourly rate of $800 in *Rios et. al. v. City of Los Angeles Case* No.: 2:21-cv-05341-RGK-MAA in which we prevailed on the Bane Act.

40.    In 2024, I and co-counsel Wendy Musell represented the plaintiff in *Claudia Escoto v. Department of Justice* Case 2:23-cv-03340-FMO-E, a federal sexual harassment and discrimination case against the federal Department of Justice.  The Honorable Fernando Olguin entered judgement in favor of my client for $1.2 million dollars in damages, injunctive relief and attorneys' fees and costs. This case was a rarity in that it addressed egregious violations of civil rights by a sitting judge.  Our requested attorneys' fee award in that case was calculated based on an hourly rate of $1,025.00.

41.    Given my level of experience, I am very familiar with the economics of legal practice, especially as it relates to litigation of employment discrimination cases and other civil rights litigation. The availability of current hourly rates directly influences the decisions my firm makes about whether to take or decline cases.

42.     If current hourly rates were unavailable in all or a majority of cases, we would not be able to maintain our contingent fee practice in civil rights cases; it would simply be financially impossible to do so.

43.    The Lewis case was taken on a contingency basis.  Neither my firm nor Mr. Alexander's firm have been paid for our legal services.  With the exception of a few limited matters, e.g., pre-litigation consultation, negotiation of severance, my firm has a contingency-based practice.  I set my rates in all matters (contingent and hourly) to be comparable with those of private defense firms that litigate complex matters in our areas of expertise.

44.     Further supporting the hourly rates that I and my co-counsels are seeking,  attached as **Exhibit "1"** to my declaration is a true and correct copy of the declaration of CELA Chair, Barbara Cowen, who made a California Public Records Act Request to the Los Angeles Department of Water and Power for the contract it entered with the City of Los Angeles with the law firm Munger, Tolles, and Olsen to provide services to defend the City and/or the DWP in legal actions arising out of the fires in Los Angeles.  That contract between the City of Los Angeles/DWP and the Munger Tolles firm is attached to Ms. Cowen's declaration. It reveals the current hourly rates of the associates and partners of the Munger Tolles firm.

45.     As you can see on the last page of Exhibit 1, the hourly rates of just  a seventh (7th) year attorney at the Munger Tolles firm, make an hourly rate of $1,180.  I am a reputable, 30- year attorney, only seeking an hourly rate of $1,125.00.

### *Summary of the Work Performed as Trial Counsel*

46.     The Lewis children retained me based on my reputation as a civil rights and litigation attorney in the Los Angeles community.  Along with my co-counsel, Bernard Alexander, I served as co-trial counsel with Dale Galipo in this matter.

47.     I handled this case from the first telephone call with Mickel Lewis Jr., Briona (through her mother as she was a minor at the time), and Oriona Lewis when they were looking for an attorney to represent them in the wrongful death action on behalf of their father.  I worked with each of them closely.  I am "Of Counsel" to the Alexander Morrison + Fehr firm and co-counseled J. Bernard Alexander, III at the onset.  I worked with Mr. Alexander and his associate, Britt

11

Karp.  The case involved extensive fact gathering, including visiting the scene of the incident, drafting and preparing the complaint, reviewing initial disclosures, helping draft the Joint Rule 26(f) report, drafting, reviewing and revising our discovery requests, preparing Plaintiffs for their testimony, assisting in the expert witness disclosures, researching possible expert witnesses to retain, searching for witnesses, preparing third party witnesses, contacting business establishments for videos and witnesses, reviewing videos and other documents produced for use in trial.

48.     Attached as **Exhibit "2"** to this declaration is a true and correct copy of the redacted billing records of Toni Jaramilla, APLC.  The billing statement reflects charges for the work I performed.  As reflected in the billing records, I billed 409.39  hours during the pendency of this matter as of today's date. I did not duplicate work that was already done and did not fully bill for every single minute that I performed services.   For instance, my clients had my cell phone number, and they were not billed for a majority of the time spent responding to their text messages or the phone calls we had. I also did not charge for every e-mail or every time I discussed and strategized on the case with co-counsel.  Thus, Exhibit A to this declaration represents only those hours for which I am requesting compensation, after the exercise of billing judgement.  The hours generated in this matter are reasonable as all of my time was billed in preparing an efficient, effective trial.

49.     Because of the enormous amount of work and risks I took to represent the Lewis children, I was forced to reject various new matters which I would have otherwise accepted.

### *Costs and Expenses*

50.     My firm is located in Southern California.  The Lewis children could not find local counsel in Kern County or in the Mojave area (See Mickel Lewis, Jr.

declaration).  It this instance, it was reasonable and necessary for the family of Mickel Lewis, Sr. to retain us in the Los Angeles area, based on mine and Bernard Alexander's trial experience and proven success.

51.    Because my office in Southern California, the following out-of-town expenses were necessarily incurred in order for me to act as co-counsel in trying this matter. Courts routinely allow non-local counsel to recover out-of-town travel costs for trial. *See Genesis Merch. Partners, LP v. Nery's USA, Inc*., (S.D. Cal. Dec. 6, 2013) 2013 WL 12094825 at *10 (applying California Civil Procedure Code 1033.5); *see generally Thon v. Thompson* (1994) 29 Cal. App. 4th 1546, 1548 (deposition travel reimbursements allowed for attorneys not in the same jurisdiction as the presiding court).

52.    Flight expenses were incurred to attend trial which totaled: $1,810.95.

| Date | Description | Expense |
|---|---|---|
| March 10, 2025 | United Flight to Fresno | $ 209.49 |
| March 14-March 17, 2025 | United Flight- Round Trip (Fresno to LAX; LAX to Fresno for weekend break) | $1,217.97 |
| March 20, 2025 | United Flight -Fresno to LAX | $ 383.49 |
| | **TOTAL** | **$1,810.95** |

53.    Due to my office being located in Los Angeles, Fresno Hotel expenses were incurred, which totaled $2,835.37.  These expenses were necessarily incurred so that I can act as co-trial counsel in this case.  The hotel expenses incurred are as follows:

| Date | Description | Expenses |
|---|---|---|
| March 10-14, 2025 | Hotel Room – Trial | $1,562.95 |

| March 17-20, 2025 | Hotel Room – Trial | $1,272.42 |
| | **TOTAL** | **$2,835.37** |

### *2.0 Multiplier is Appropriate*

50.    Prevailing on the Bane Act allows the court to award a multiplier in this case. As Plaintiffs' counsel, we seek a multiplier of 2.0.  This multiplier recognizes the exceptional risks involved in prosecuting this case, in which very significant costs and fees were at risk during the pendency of this case. The skill, expertise, and experience exhibited by me, and Bernard Alexander and his firm, and Dale Galipo and his firm, collectively warrant the application of a multiplier in this case.

51.    Cases against public entities are fraught with minefields.  In this case, damages were sought on behalf of seven children of the decedent, an African American man and a felon, shot by a police officer during a traffic stop.  Fresno also had a conservative jury pool.

52.    Simply put, few people believed that Plaintiffs would prevail in this excessive force case.

53.    In agreeing to accept a case on contingency, plaintiffs' counsel must contemplate the prospect of carrying the expenses through final resolution, with no guarantee that expenses will be recouped.  Many contingent cases are lost, resulting in no fee to the plaintiff's attorney.  Other cases settle for amounts that result in a contingency fee far below the actual fees expended by plaintiffs' counsel.  If the plaintiff's counsel can only hope to recover the actual time spent, even when a case goes all the way to trial after years of litigation and the plaintiff prevails, the risks in taking such cases would so greatly outweigh any potential "upside" that small firms like mine simply could not afford to accept such cases. Contingency cases against large, well-funded government entities are risky but typically have the benefit of a decision-maker who performs a cost-benefit analysis.  In this case, Defendants apparently ignored such an analysis and forced

14

1   Plaintiffs to try the case.

2      54.    In fact, based on evidence presented by Plaintiffs' trial team, the jury

3   found multiple civil-rights violations, finding that Defendant Jason Ayala, while

4   acting in the course and scope of his employment with the Kern County Sheriff's

5   Department, used excessive force against the decedent Mickel Lewis, Sr., under

6   the Fourth Amendment, violated the Bane Act, committed a battery on Mr. Lewis,

7   and was negligent, resulting in a jury verdict of $30.5 million.

8      55.    The outcome of this difficult public entity case reflects the exceptional

9   legal skill brought to bear by the coordinated efforts of Plaintiffs' respective legal

10  teams in this civil rights case.   In this case, Plaintiffs' counsel achieved great

11  success, persuading the jury to award each of the seven children of the decedent

12  $3.4 million, and to award pre-death pain and suffering of $1,000,000 and Loss of

13  Life damages of $5,000,000, for a total of $30.5 million.

14     56.    When Plaintiff's counsel takes the substantial risk involved in

15  representing a family in a police excessive force wrongful death lawsuit, Plaintiff's

16  counsel should be rewarded not only for the legal acumen, but also for the

17  substantial effort risk taken and persistence necessary in order to stay the course in

18  seeking justice.  That principle is demonstrated by the adversity Plaintiffs' counsel

19  overcame in prevailing over the efforts of Kern County and Deputy Jason Ayala in

20  this case.

21

22     I declare under the laws of the State of California that the foregoing is true

23  and correct.  Signed on April 24, 2025 at Los Angeles, California.

24

25  _Toni J. Jaramilla_
    _____

26  Toni Jaramilla

27

28

# EXHIBIT 1

## <u>DECLARATION OF BARBARA E. COWAN</u>

I, Barbara E. Cowan, declare as follows:

1. I am an attorney licensed to practice law in the State of California.  I am over the age of eighteen, and make this declaration based on my own personal knowledge.  If called, I would competently testify to the matters stated herein.

2. I am the current Chair of the California Employment Lawyers Association ("CELA").  CELA is a statewide organization of more than 1,300 attorneys who represent workers in employment and civil rights litigation.  My term runs from December 1, 2023 to December 1, 2025.  I am also the Chair of one of its subcommittees, the Committee on the Elimination of Bias in the Judiciary.

3. On February 21, 2025, CELA made a California Public Records Act Request to the Los Angeles Department of Water and Power for the following records: "The contract entered into by the City of Los Angeles and/or the Department of Water and Power with the firm of Munger, Tolles, and Olson to provide services to defend the City and/or the DWP in legal actions arising out of the fires in Los Angeles." A true and correct copy of this Request is attached as **Exhibit A.**

4. On March 3, 2025, the Los Angeles Department of Water and Power responded stating that "LADWP is in possession of responsive records and intends to disclose all non-exempt records."  A true and correct copy of this response is attached as **Exhibit B**.

5. On April 1, 2025, the Los Angeles Department of Water and Power provided its official response stating that it had completed its search for records, and the records were available for review.  A true and correct copy of this letter is attached as **Exhibit C**.  I responded, and requested that the responsive records be sent to me electronically via email.

1

2      6.     On April 11, 2025, the Los Angeles Department of Water and Power responded,

3 and provided the requested records to me electronically as a courtesy.  A true and correct copy of

4 this transmission email is attached as **Exhibit D**.

5

6      7.     The records produced by the Los Angeles Department of Water and Power

7 pursuant to CELA's California Public Records Act Request consisted of a forty-four (44) page

8 "Agreement for Professional Legal Services Between The City of Los Angeles and Munger,

9 Tolles & Olson LLP."  A true and correct copy of the document produced by the Los Angeles

10 Department of Water and Power is attached hereto as **Exhibit E**.  The last page of the agreement,

11 titled "Exhibit B" sets forth the hourly rates for outside counsel that the City has agreed to pay

12 for 2025 and 2026.

13

14     I declare, under penalty of perjury under the laws of the State of California and the

15 United States of America that the foregoing is true and correct.  Signed this 11th day of April,

16 2025 at Rancho Cucamonga, California.

17

18

19 Barbara E. Cowan, Esq.

20

21

22

23

24

25

26

27

28

DECLARATION OF BARBARA E. COWAN

# EXHIBIT A



**CALIFORNIA PUBLIC RECORDS ACT**
**RECORDS REQUEST FORM**

**Requestor Information:**

**Name:** Barbara Cowan

**Organization/Affiliation:** California Employment Lawyers Association

**Address:** 20812 Ventura Blvd., Suite 230  Woodland Hills, CA 91364

**Daytime Phone Number:** (818) 703-0587

**Fax Number (if available):** (818) 703-0591

**Email Address (if available):** chair@cela.org

**Request Information:**

**Today's Date:** February 20, 2025

**Records Requested (Please describe in detail):**
The contract entered into by the City of Los Angeles and/or the Department of Water and Power with the firm of Munger, Tolles, and Olson to provide services to defend the City and/or the DWP in legal actions arising out of the fires in Los Angeles.  This contract was entered into on or about February 13, 2025, and this CPRA request seeks the contract itself, including specifically the hourly rates which the City of Los Angeles and/or the DWP will pay to Munger, Tolles, and Olson for the legal services rendered.

**Dates involved in requested documentation:** January 1, 2025 to the present

**Record Number/Name (e.g., provide Contract, Case, or Board Resolution number,**

**Report name or Record title if available):** _____
Contract between the City of Los Angeles and/or the Department of Water and Power

and Munger, Tolles, and Olson LLP

---

*The information requested, while not required, will assist in our response to your CPRA request.*
CPRA Request Form, revised 8/2022

<u>General Information</u>

<u>Requests:</u>
- Requests may be submitted by regular mail, electronic mail, or facsimile to:

  Los Angeles Department of Water and Power
  CPRA Clearinghouse
  Corporate Strategy and Communications Division
  P. O. Box 51111, Room 1520
  Los Angeles, CA 90051-5700

  Email: CPRA@ladwp.com
  FAX: (213) 367-0532
  CPRA Hotline: (213) 367-4440

- Requestors are encouraged to provide a detailed written description of the records being requested. Clear and specific descriptions make it easier to determine if responsive records are in the possession of the LADWP.

- Requestors are encouraged to check LADWP.com before submitting a CPRA request, as the records sought may be posted at the LADWP Internet site.

<u>Responses:</u>
- Allow up to ten calendar days to receive a response to your request. A typical response letter may state that records are available for review, that additional time is required to search for records, or that no responsive records were found.

- Responsive records may be viewed at LADWP's downtown Los Angeles headquarters by scheduling a review session. Details regarding how to schedule a review session are included in the response letter.

- Some records are exempt from disclosure under the Public Records Act and other legal reasons may prevent records from being disclosed to the public.

<u>Fees and Payments:</u>
- There is no fee for the records review session. However, there are fees associated with duplication of records.

  o The duplication fee is $0.10 per page for standard-sized documents (8 ½" x 11" or 8 ½" x 14" inch white paper with black ink) and $0.25 per page for large-sized documents (11" x 17" inch white paper with black ink.)

  o Additional costs may apply for postage (e.g., first class U.S. Mail or expedited delivery), photographs, color reproductions, over-sized drawings, or special programming associated with electronic records.

- All payments are due at the time copies of records are requested. Checks should be made payable in U.S. funds to the *Los Angeles Department of Water and Power.*

  o For in-person payments, either cash or check is accepted.

  o For mail-in payments, requestors are encouraged to send checks (not cash) in order to ensure payments, reach the CPRA Clearinghouse.

## California Public Records Act Request

**Brandi Cowan** <brandi@wpa.law>                                    Fri, Feb 21, 2025 at 12:17 PM
To: CPRA@ladwp.com, CELA Chair <chair@cela.org>

Dear LADWP:

Attached please find a California Public Records Act Request.

Many thanks,
Barbara

--
Barbara E. Cowan, Esq.
Workplace Advocates, LLC
9431 Haven Avenue, Suite 100
Rancho Cucamonga, CA 91730
Telephone: (909) 983-4102

**CPRA to LADWP.pdf**
175K

# EXHIBIT B

**LA DWP Los Angeles Department of Water & Power**

BUILDING A STRONGER L.A.

Karen Bass, Mayor

Board of Commissioners
Richard Katz, President
George S. McGraw, Vice President
Nurit D. Katz
Mia Lehrer
Wilma J. Pinder
Chante L. Mitchell, Secretary

Janisse Quiñones, Chief Executive Officer and Chief Engineer

March 3, 2025

Barbara Cowan
California Employment Lawyers Association
20812 Ventura Blvd., Suite 230
Woodland Hills, CA 91364

Dear Ms. Cowan:

Subject:   California Public Records Act Request No. R25-165 – Contract entered into by the City of Los Angeles and/or the Department of Water and Power with the firm of Munger, Tolles, and Olson to provide services to defend the City and/or the DWP in legal actions arising out of the fires in Los Angeles including specifically the hourly rates which the City of Los Angeles and/or the DWP will pay to Munger, Tolles, and Olson for the legal services rendered, as detailed in the request.

This letter is in response to your California Public Records Act (CPRA) Request received on February 21, 2025, seeking records from the Los Angeles Department of Water and Power (LADWP) on the above subject.

We write to inform you that the LADWP is in possession of responsive records and intends to disclose all non-exempt records. LADWP currently estimates that it will begin to produce responsive records in four weeks, but that date could change.

If you have any questions regarding your records requests, you may reach the CPRA Clearinghouse at cpra@ladwp.com or (213) 367-4440.

Sincerely,

CPRA Clearinghouse

Brandi Cowan <brandi@wpa.law>

## LADWP Response Letter - CA Public Records Act Request No. R25-165 Barbara E. Cowan, Esq./ California Employment Lawyers Association

**CPRA Shared Mailbox** <CPRA@ladwp.com>                          Mon, Mar 3, 2025 at 5:55 PM
To: "chair@cela.org" <chair@cela.org>, Brandi Cowan <brandi@wpa.law>

Thank you for your California Public Records Act inquiry.

Attached for your reference is a scanned copy of the Los Angeles Department of Water and Power's official response to your request.

Should you have any questions, please email cpra@ladwp.com or call the CPRA Clearinghouse at (213) 367-4440.

LADWP CPRA Clearinghouse

-------------------------Confidentiality Notice------------------------- This electronic message transmission contains information from the Los Angeles Department of Water and Power (LADWP), which may be confidential. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the content of this information is prohibited. If you have received this communication in error, please notify us immediately by e-mail and delete the original message and any attachment without reading or saving in any manner.

 **R25-165 DEL.pdf**
243K

# EXHIBIT C



Karen Bass, Mayor

Board of Commissioners
Richard Katz, President
George S. McGraw, Vice President
Nurit D. Katz
Mia Lehrer
Wilma J. Pinder
Chante L. Mitchell, Secretary

Janisse Quiñones, Chief Executive Officer and Chief Engineer

BUILDING A STRONGER L.A.

April 1, 2025

Barbara Cowan
California Employment Lawyers Association
20812 Ventura Blvd., Suite 230
Woodland Hills, CA 91364
chair@cela.org

Dear Ms. Cowan:

Subject:  California Public Records Act Request No. R25-165 – Contract Between the City of Los Angeles and/or the Department of Water and Power and Munger, Tolles, and Olson LLP

This letter is in response to your California Public Records Act (CPRA) Request received on February 21, 2025, seeking records from the Los Angeles Department of Water and Power (LADWP) on the above subject.

The LADWP has completed its search for records, and the records are now available for your review.

Please contact the LADWP CPRA Clearinghouse at cpra@ladwp.com or (213) 367-4440 to schedule a record viewing session for records now available for review. There is no fee if you wish only to review the records. During the review session, you may indicate which records, if any, you wish to have duplicated. In accordance with the Los Angeles Administrative Code, the fee for this duplication service is 10 cents per page for standard 8.5x11 inch or 8.5x14 inch white paper with black ink and 25 cents per 11x17 inch white paper with black ink. Duplication of non-standard items may require additional time. You can request to have these non-standard items mailed at the time your duplication request is placed. Payment, which is due at the time of the duplication request, must be in exact cash or check made payable to the Los Angeles Department of Water and Power.

If you have any additional requests for records, you are encouraged to submit a LADWP CPRA Request.  Submitting your request on the form helps clarify the records being sought and assists in preparing a response.  The LADWP CPRA Request Form is available at www.ladwp.com/cpra, or through the CPRA Clearinghouse at cpra@ladwp.com or (213) 367-4440.

Sincerely,


CPRA Clearinghouse

Brandi Cowan <brandi@wpa.law>

## LADWP Response Letter - CA Public Records Act Request No. R25-165 Barbara E. Cowan, Esq./ California Employment Lawyers Association

**CPRA Shared Mailbox** <CPRA@ladwp.com>    Tue, Apr 1, 2025 at 5:10 PM
To: "chair@cela.org" <chair@cela.org>, Brandi Cowan <brandi@wpa.law>

Thank you for your California Public Records Act inquiry.

Attached for your reference is a scanned copy of the Los Angeles Department of Water and Power's official response to your request.

Should you have any questions, please email cpra@ladwp.com or call the CPRA Clearinghouse at (213) 367-4440.

LADWP CPRA Clearinghouse

--------------------------Confidentiality Notice-------------------------- This electronic message transmission contains information from the Los Angeles Department of Water and Power (LADWP), which may be confidential. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the content of this information is prohibited. If you have received this communication in error, please notify us immediately by e-mail and delete the original message and any attachment without reading or saving in any manner.

 **R25-165 RL.pdf**
208K

# EXHIBIT D

## LADWP Response Letter - CA Public Records Act Request No. R25-165 Barbara E. Cowan, Esq./ California Employment Lawyers Association

**CPRA Shared Mailbox** <CPRA@ladwp.com>                                             Fri, Apr 11, 2025 at 8:03 AM
To: Brandi Cowan <brandi@wpa.law>
Cc: "chair@cela.org" <chair@cela.org>

Hello,

As a courtesy, please see responsive record attached.

CPRA Clearinghouse

---

**From:** Brandi Cowan <brandi@wpa.law>
**Sent:** Monday, April 7, 2025 10:47 AM
**To:** CPRA Shared Mailbox <CPRA@ladwp.com>
**Cc:** chair@cela.org
**Subject:** [EXTERNAL] Re: LADWP Response Letter - CA Public Records Act Request No. R25-165 Barbara E. Cowan, Esq./ California Employment Lawyers Association

---

EXTERNAL EMAIL! This email was generated from a non-LADWP address. If any links exist, do not click/open on them unless you are 100% certain of the associated site or source. ALWAYS hover over the link to preview the actual URL/site and confirm its legitimacy.

---

Good morning,

Thank you for the correspondence.  Can I please request that all responsive documents be sent to me electronically?

Many thanks,

Brandi

On Tue, Apr 1, 2025 at 5:11 PM CPRA Shared Mailbox <CPRA@ladwp.com> wrote:

Thank you for your California Public Records Act inquiry.

Attached, for your reference, is a scanned copy of the Los Angeles Department of Water and Power's official response to your request.

Should you have any questions, please email cpra@ladwp.com or call the CPRA Clearinghouse at (213) 367-4440.

LADWP CPRA Clearinghouse

------------------------Confidentiality Notice------------------------ This electronic message transmission contains information from the Los Angeles Department of Water and Power (LADWP), which may be confidential. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the content of this information is prohibited. If you have received this communication in error, please notify us immediately by e-mail and delete the original message and any attachment without reading or saving in any manner.

------------------------Confidentiality Notice------------------------ This electronic message transmission contains information from the Los Angeles Department of Water and Power (LADWP), which may be confidential. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the content of this information is prohibited. If you have received this communication in error, please notify us immediately by e-mail and delete the original message and any attachment without reading or saving in any manner.

**Munger Tolles & Olson Contract.pdf**
13257K

# EXHIBIT E

AGREEMENT FOR PROFESSIONAL LEGAL SERVICES

BETWEEN

THE CITY OF LOS ANGELES

AND

MUNGER, TOLLES & OLSON LLP

## AGREEMENT FOR PROFESSIONAL LEGAL SERVICES

THIS AGREEMENT, Contract Number 47877, is made and entered into by and between the City of Los Angeles ("City"), a municipal corporation, acting through the Office of the City Attorney ("City Attorney"), and Munger Tolles & Olson LLP, ("Outside Counsel"), with reference to the following:

### RECITALS

**WHEREAS,** the City Attorney and the Board of The Department of Water and Power ("Department") have approved the use of Outside Counsel to assist the City Attorney with legal representation in the investigation, evaluation, management, defense and disposition of claims for damage and lawsuits related to wildfires, including, but not limited to the Palisades Fire that ignited on January 7, 2025, and related matters at the Department; and

**WHEREAS,** Outside Counsel indicates that it has the expertise and competence to perform the professional legal services sought by the City; and

**WHEREAS,** the City Attorney has selected Outside Counsel to provide assistance in such matters. Outside Counsel is willing to provide such assistance and represents to the City that it is able to do so without a conflict of interest; and

**WHEREAS,** the professional legal services to be performed by the Outside Counsel are of an expert and technical nature and are temporary and occasional in character.

**NOW, THEREFORE,** in consideration of the promises, covenants, terms and conditions contained herein, the Parties hereby covenant, agree and represent as follows:

I.    SCOPE OF REPRESENTATION AND PARTNERING

Outside Counsel is retained to assist the City Attorney in providing legal representation for the City and the Department (hereafter the "City") in the investigation, evaluation, management, defense and disposition of claims for damage and lawsuits related wildfires, including but not limited to the Palisades Fire that ignited on January 7, 2025, and related matters. The duties of counsel include, but are not limited to, serving as associated counsel regarding liability and damages issues, expertise in and knowledge of substantive California and Federal law pertaining to wildfire matters, inverse condemnation issues, tort liability issues, California Government Code issues, fire suppression cost issues, environmental issues, the disposition of claims and lawsuits regarding property damages and personal injury, subrogation insurance claims and lawsuits, U.S. Forest Service claims and lawsuits, CalFire claims and lawsuits, expert witness retention and management, court appearances, settlement conference, mediation and trial representation, discovery and related tasks.

Outside Counsel shall at all times work under the direction of the City Attorney. The City and City Attorney shall rely on the competence, expertise and experience of Outside Counsel. At all times, Outside Counsel shall provide professional legal advice and services at the highest level expected of law firms providing legal services in the Los Angeles region. This is a non-exclusive agreement to provide legal services to the City and, at the City Attorney's discretion,

2

the City may augment the services with another law firm or law firms or select to terminate Outside Counsel's services in a manner consistent with this Agreement.

City Attorney and Outside Counsel recognize and agree that an important purpose of this Agreement is to promote effective collaboration between City Attorney and Outside Counsel so that, among other things, City Attorney is able to gain familiarity with the legal issues presented in these matters and for Outside Counsel to impart substantive subject matter knowledge to City Attorney's lawyers. To this end, City Attorney and Outside Counsel both agree to make reasonable efforts to coordinate their efforts and work.

II.    **GENERAL CONDITIONS**

A.    Period of Performance

1.    This Agreement shall begin on January 12, 2025, and shall continue until January 11, 2028, unless terminated earlier under the provisions of this Agreement.

B.    Termination or Suspension of Legal Services

1.    Termination/Suspension For City's Convenience

a)    Services performed under this Agreement may be terminated or suspended in whole or in part at any time by City Attorney. City Attorney shall terminate or suspend services by delivering to Outside Counsel a written notice specifying the extent to which services are terminated or suspended and the effective date of such termination or suspension.

b)    After receiving a notice of termination or suspension, unless otherwise directed by City Attorney, Outside Counsel shall:

1)    Stop services on the date and to the extent specified in the notice; and

2)    Continue to perform services not terminated or suspended by the notice.

c)    After receiving a notice of termination, Outside Counsel shall:

1)    Submit final billing for services rendered through the time of termination no later than thirty (30) calendar days from the effective date of termination; and

2)    If Outside Counsel fails to submit a final billing within the time allowed, City Attorney may determine the amount, if any, to be paid to Outside Counsel. Outside Counsel agrees that City Attorney's determination shall be final.

2.    Termination By Outside Counsel

a)    Outside Counsel may withdraw from representation and terminate this agreement with consent of the City Attorney or for good cause, which includes

3

the City's breach of this agreement or refusal to cooperate with Outside Counsel or follow our Outside Counsel's advice on a material matter, as well as in any other circumstance permitted by applicable rules.   Otherwise, Outside Counsel's representation of the City will terminate upon the earlier of January 11, 2028, or six months of no work recorded by Outside Counsel on the matter.

3.    Termination For Outside Counsel's Default

a)    Services performed under this Agreement may be terminated in whole or in part by City Attorney upon a default by Outside Counsel.  Under this Agreement, Outside Counsel will be deemed in default if Outside Counsel:

1)    Fails to perform the service(s) within the specified time period; or

2)    Fails to perform any of the provisions contained in this Agreement; or

3)    Fails to make adequate progress in the matter and endangers the performance of this Agreement's terms.

b)    If City Attorney wholly or partially terminates services under this Agreement, City Attorney may obtain alternative legal services with terms and in a manner City Attorney deems appropriate.  In addition to any other remedies provided by this Agreement, law or equity, Outside Counsel shall be liable to City for any excess costs associated with obtaining and utilizing alternative legal services.

4.    Closing Report Upon Termination

a)    If requested by City Attorney, Outside Counsel shall deliver a Closing Report within two days of the termination of services.

b)    The Closing Report shall include, but is not limited to:

1)    A brief description of the facts of the case;

2)    A discussion of applicable law;

3)    A description of the status of the case; and

4)    A list and description of future scheduled court appearances.

c)    Outside Counsel shall give City Attorney all evidence, files and attorney work product for every matter in which Outside Counsel is substituted out as attorney of record. This includes any computerized indices, programs and document retrieval systems created or used for the matter. Outside Counsel shall file a Motion for Substitution of Counsel or other necessary pleadings with the court when instructed to do so by City Attorney.

4

C.     Independent Contractor Status

This Agreement is between City and Outside Counsel and is not intended, and shall not be construed, to create, as between City and Outside Counsel, the relationship of agent, servant, employee, partnership, joint venture or association. Outside Counsel understands and agrees that all Outside Counsel personnel furnishing services to City under this Agreement are employees solely of Outside Counsel and not City. Outside Counsel shall bear the sole responsibility and liability for furnishing workers' compensation benefits to any Outside Counsel personnel for injuries arising from services performed under this Agreement.

D.     Governing Law

The parties agree that this Agreement shall be governed by and construed in accordance with the laws of the State of California and any action brought by either party on this Agreement shall be brought in the Los Angeles County Central District Superior Courts.

E.     Validity

The invalidity in whole or in part of any provision of this Agreement shall not void or affect the validity of any other provision.

F.     Waiver

No waiver of a breach of any provision of this Agreement by either party shall constitute a waiver of any future breach of the provision or any breach of any other provision of this Agreement. Failure of either party to enforce any provision of this Agreement at any time shall not be construed as a waiver of that provision.

G.     Remedies Reserved to City

The remedies reserved to City shall be cumulative and additional to any other remedies provided in law or equity.

H.     Authorization for Warranty

Outside Counsel represents and warrants that the signatory(ies) to this Agreement is(are) fully authorized to obligate Outside Counsel and that all corporate acts necessary to the execution of this Agreement have been accomplished.

I.     Changes and Written Amendment of Terms

Material changes to this Agreement shall only be effective upon the execution of a mutually-approved written amendment.

III.  **OUTSIDE COUNSEL'S SERVICES AND RESPONSIBILITIES**

A.   Professional Ethics and Conflicts of Interest

City recognizes that Outside Counsel may have clients that, from time to time, may have interests adverse to City. Any such representation shall be in accordance with the ethical duties of members of the State Bar of California including, without limitation, those established by the Bar's Rules of Professional Conduct. Outside Counsel shall send written notice to City Attorney Conflicts Attorney of any actual or potential conflict of interest that exists during Outside Counsel's engagement under this Agreement. The request for waiver shall describe in detail the nature of the proposed engagement by Outside Counsel, the nature of the conflict, and why Outside Counsel believes a waiver is appropriate. This Agreement shall be effective only upon the City's provision to Outside Counsel of the waiver that Outside Counsel has concurrently requested in the form requested.

Outside Counsel understands and agrees that it shall not apply for, accept or enter into any contract with any City of Los Angeles department or office for any non-outside counsel legal services for the duration of this or any other outside counsel contract with the City, unless Outside Counsel first obtains the written approval of the Chief Deputy of the Office of the City Attorney. This is in addition to the approval by the City awarding authority of the non-outside counsel legal services contract.

Outside Counsel understands and agrees that Outside Counsel may not pay or receive, or agree to pay or receive, any referral fees, remuneration, reciprocal referral or anything else of value as a result of or related to the matters on which Outside Counsel is engaged by the City, other than the fees and costs paid by the City for Outside Counsel's services in these matters. Outside Counsel understands and agrees that no City employee may solicit, agree to accept or receive any referral fees, remuneration or other item of value related to any services rendered to the City, any claim or other matter brought or filed against the City or any settlement, resolution, verdict, or other disposition by or against City. Outside Counsel immediately shall report any such solicitation, agreement or receipt to the City Attorney and to the City Ethics Commission.

B.   Key Outside Counsel Personnel

1.   Outside Counsel's Supervising Attorney for this Agreement shall be Daniel B. Levin. Outside Counsel's Supervising Attorney shall not be changed without City Attorney's written authorization.

2.   Outside Counsel's Supervising Attorney shall have full authority to act for Outside Counsel on all daily operational matters under this Agreement and shall serve as or designate Lead Counsel for all law and motion appearances, pretrial and trial proceeding(s), settlement conference(s) or meetings of counsel for the litigants, depositions, document productions, and all court and other proceedings in which substantive rights of the parties may be determined. Designation of a Lead Counsel other than the Supervising Attorney shall be subject to City Attorney's prior written approval.

D.   Legal Representation

1.   Outside Counsel shall provide City with the necessary representation

6

by qualified staff at the least costly billing category. Partners and associates shall be admitted to practice law before all of the courts of the State of California or of whatever state or district in which Outside Counsel is engaged to represent the City, or shall be admitted pro hac vice in the case in which Outside Counsel is engaged. The names of personnel authorized to provide services under this Agreement and the hourly rates for each staff member are listed in the document entitled, "Hourly Rates," attached hereto and incorporated herein as Exhibit B to this Agreement.

Any use of personnel other than as enumerated shall be subject to the prior written approval of City Attorney's Supervising Attorney. Outside Counsel may hire experts or consultants, but only with the prior written approval of City Attorney's Supervising Attorney. Outside Counsel may retain other law firms or attorneys as subcontractors to provide the legal services covered by this Agreement, but only with the prior written approval of the Chief Deputy City Attorney. Any such written approval of subcontractors must set forth the name of each approved attorney or other personnel and the agreed rate for such individual. To the extent Outside Counsel retains any subcontractors or consultants pursuant to this paragraph, it will require any such subcontractors or consultants to comply with the terms and conditions of this agreement.

      2.    Outside Counsel's legal representation shall include, but is not limited to:

      a)    All settlement negotiations and pretrial proceedings;

      b)    Appearances at all law and motion hearings, discovery proceedings, hearings regarding orders to show cause, writs, trials, and, when applicable, administrative hearings;

      c)    All due diligence, legal research, drafting of pleadings, preparation for hearings, and review of all documents and other evidentiary materials;

      d)    Investigative, secretarial, and clerical support services necessary to perform the legal representation in a professional manner.

      3.    Outside Counsel shall provide all required reports referenced in this Agreement.

      4.    Outside Counsel shall meet with City Attorney as City Attorney requires.

      5.    Outside Counsel shall consult with City Attorney on trial and tactical decisions.

      6.    Outside Counsel shall assist City Attorney's Supervising Attorney in settlement evaluations and negotiations, and shall obtain City Attorney's authority before making any settlement proposal on City's behalf to the Court or any party.

7

7.    Outside Counsel shall immediately notify City Attorney, in writing, when a judgment, verdict or other award is rendered.

8.    Upon City Attorney's request, Outside Counsel shall provide copies of all court rulings and all pleadings filed with the court or other administrative body, including those submitted by other parties.

9.    Outside Counsel shall maintain all backup documentation to support all entries included in its billings.

E.    <u>Reporting Requirements</u>

Depending on the nature of the matter and the benefit derived, City Attorney may request that Outside Counsel provide City Attorney with the following reports:

1.    <u>Case Evaluation and Plan</u>

a)    The Case Evaluation and Plan is a written independent evaluation of the case that can be used to develop City's legal position and strategy. It will also serve to assist in controlling litigation costs. Outside Counsel shall base the Case Evaluation and Plan on a review of the pleadings, discovery, reports and other documents, physical evidence, conversations with City Attorney and any other information Outside Counsel deems appropriate based on Outside Counsel's expertise and experience.

b)    The Case Evaluation and Plan shall include, but is not limited to:

1)    Statement of known facts and identified legal issues, including identities of opposing attorney(s), if known;

2)    Statement of precedent-setting or sensitive issues, if applicable;

3)    Statement of alleged and probable injuries and damages;

4)    Statement of liability exposure;

5)    Statement of recommendation(s) on case strategy, including discovery, motions, extent of legal research, consultants and percipient witnesses, experts to be retained, and the extent of expert services to be performed;

6)    Statement of Outside Counsel's projected costs that can be reasonably anticipated. Costs shall be budgeted on a total, annualized basis and shall include, but are not limited to:

(a)    Attorney fees - an identification of the staffing levels, hourly rates and estimated number of hours for each

8

partner, associate, and/or paralegal;

(b)    Consultant and expert witness rates, and estimated number of hours each will be needed;

(c)    Deposition, transcript and other expenses;

(d)    Fees and expenses for handling the case through each of the following applicable stages:

(1)    Pleadings

(2)    Discovery

(3)    Pretrial conference(s)

(4)    Mediation or Arbitration

(5)    Trial, and

(6)    Any other identified stages.

2.    Proposed Settlement Recommendations

a)    If requested by City Attorney, Outside Counsel shall submit to City Attorney written settlement recommendations that clearly state the reasons supporting a proposed settlement.

3.    Appellate Action

a)    If requested by City Attorney, Outside Counsel shall submit to City Attorney recommendations as to whether to appeal or petition for other review, or defend in the appellate courts. Outside Counsel shall state clearly the reason(s) supporting the recommended action.

b)    Outside Counsel shall list City Attorney as co-counsel with Outside Counsel on all briefs and papers submitted to the appellate courts or other reviewing body.

## IV.    CITY'S DUTIES AND RESPONSIBILITIES

A.    Key City Personnel

1.    City hereby appoints the City Attorney, or his or her designee, to represent the City on all matters related to this Agreement; however, any written amendment to this Agreement requiring additional funds shall be conditioned upon the approval of the additional appropriation of said funds by the Department of Water and Power.  The City Attorney's Supervising Attorneys shall be the member of the City Attorney's serving as the General Counsel of the Department of Water

and Power and the Chief Deputy City Attorney.  On all matters relating to invoices the City Attorney's representative shall be the City Attorney's Chief Financial and Administrative Officer.

      2.    City Attorney's Supervising Attorneys shall have full authority to act for City on all daily operational matters under this Agreement and shall review and approve Outside Counsel's reports, whether written or verbal, and any change in Outside Counsel's designated Lead Counsel.

      3.    Approval of proposed settlement recommendations is subject to City's settlement approval procedures.

## V.   COMPENSATION

### A.   Appropriation of Funds.

      The Los Angeles Department of Water and Power has appropriated Ten Million Dollars ($10,000,000) for this Agreement.  Outside Counsel's work pursuant to this Agreement shall not exceed that amount without the prior approval by the Board of Water and Power Commissioners and written approval of the City Attorney.  The City is not obligated to pay Outside Counsel for any work done and/or costs incurred in excess of the appropriated amount unless additional appropriations are made and a written amendment to this Agreement is executed by the Parties.

### B.   Outside Counsel's Obligation For Continued Performance.

      In the event that Outside Counsel's fees, costs and expenses, in the aggregate, exceed the amount appropriated by City as provided herein, Outside Counsel shall not be obligated to provide services or incur any further costs or expenses on the work required hereunder, and the City shall not be liable for fees or costs in excess of the amount appropriated, unless the appropriated amount is increased as provided herein. Outside Counsel shall be responsible for notifying City Attorney's Supervising Attorneys that the aforesaid appropriated amount will be expended before completion of the work required hereunder and that Outside Counsel will need additional funds if City desires further work. Outside Counsel shall give written notice to City Attorney's Supervising Attorney and to the City Attorney's Chief Financial and Administrative Officer, when Outside Counsel's expenditures under this Agreement are equal to sixty percent (60%) and eighty percent (80%) of the total dollar value appropriated for this Agreement so that City Attorney has sufficient time to consider whether it desires to seek an additional appropriation and written amendment to the Agreement.

### C.   Fees

      1.    The City shall pay Outside Counsel for the services performed by Outside Counsel which are reasonably necessary.  The fees for such services shall be based upon the time expended to render the required services, with fractions thereof being stated to the tenth of an hour, and shall be computed at a rate not to exceed the rates specified for each category of staff as listed in Section B of Exhibit B, Fee Schedule, which is attached hereto and incorporated herein by

reference.

   2. Billing rates may only be increased with the prior written approval of the Chief Deputy City Attorney. Outside Counsel will submit proposed 2027 rates to the City for approval by December 1 of the preceding year.

D. <u>City's Reservation of Rights to Obtain Reimbursement</u>

   City shall pay Outside Counsel based on Outside Counsel's submission of monthly invoices consistent with the provisions of this Agreement. Even though City makes payment pursuant to invoices, City shall have the right to demand reimbursement any time City determines that previously paid costs and expenses where not properly billed by Outside Counsel. Outside Counsel shall promptly reimburse City for such costs and expenses previously paid by City.

E. <u>Expenses</u>

   Absent the express prior written approval of the appropriate City Attorney's Supervising Attorney, the City will not pay for any extraordinary expenses incurred in any legal matter. The City Attorney's Chief Financial and Administrative Office must approve in writing any item of expense that exceeds $5,000. The City Attorney's Supervising Attorney must approve in writing any item of expense that exceeds $1,000. Such expenses include, but are not limited to, expert witnesses, consultant services, investigative services, computer litigation support services, videotaping of depositions, temporary office help, travel expenses, meals as well as other expenses. Travel time is non-reimbursable. The City will not pay for business class or first class airfare or luxury hotels. City shall pay directly or reimburse Outside Counsel for the actual out-of-pocket expenses, enumerated below, but without any additional costs for having advanced the funds. Outside Counsel shall note that City is exempt from all filing fee charges.

   1. Reimbursable ordinary expenses shall include, but are not limited to:

   a) Deposition fees- The City expects Outside Counsel to keep the costs of deposition transcripts to a minimum. When depositions are taken and Outside Counsel receives the original, City shall not pay the court reporter's fee for providing Outside Counsel with an extra photocopy of the deposition transcript. City expects Outside Counsel to make a photocopy of the original at Outside Counsel's office. Likewise, when attending depositions of third parties or third-party witnesses, City requests that, if Outside Counsel believes an additional copy of the deposition transcript is necessary, Outside Counsel agree with opposing counsel or co-counsel to share the costs. Prior written approval from City must be obtained before ordering any expedited original or expedited copy of a deposition transcript.

   b) Deposition summaries, if necessary, should be brief and should be completed by the deposing attorney. The City shall not pay for a paralegal or other lawyer to summarize the deposition transcript unless such a summary is

authorized by the Supervising Attorneys. City shall not pay for summaries that are, in effect, a complete regurgitation of the underlying deposition.

c)    Transcript fees;

d)    Messenger service - where appropriate, documents should be transmitted via email or facsimile/telecopier;

e)    Facsimile/Telecopier (FAX) transmission - Outside Counsel shall not bill the City for any expense related to facsimile charges beyond Outside Counsel's actual net costs for long distance telephone charges actually and reasonably incurred by Outside Counsel for the sending of facsimiles. Outside Counsel shall indicate in its billing statements the number of pages transmitted via facsimile together with the related cost of each charge. Outside Counsel shall attach the appropriate receipts, invoices or proof of any expenditure for your charges for facsimiles.

f)    Process service;

g)    In-house document reproduction. Outside Counsel may charge up to $0.10 cents per page for photocopies. The billing statement shall contain the total number of copies made.

2.    Reimbursable extraordinary expenses shall include charges of which Outside Counsel has obtained City Attorney's prior written approval. Such expenses shall include, but are not limited to:

a)    Consultants;

b)    Expert witnesses;

c)    Investigative services;

3.    Non-reimbursable expenses shall include, but are not limited to:

a)    Staff time or overtime for performing secretarial, clerical, or word processing functions;

b)    Charges for time spent complying with City Attorney audits or billing or budgeting inquiries;

c)    Charges for work performed which City Attorney had not authorized. Such work shall be a gratuitous effort by Outside Counsel; and

d)    Expenses that are considered to be part of general law firm overhead, including but not limited to, administrative time, secretarial time, calendaring, setting up files, indexing, word processing, air conditioning, equipment rental, office supplies, meals, snacks, beverages, seminars, books or association dues, etc.

    e) Travel time and travel expenses are also not reimbursable.

    f) Computer Assisted Legal Research.  Reimbursement for charges like LEXIS and Westlaw are not reimbursable.

## VI.   <u>BILLINGS AND PAYMENTS</u>

A.   <u>Billings</u>

    1.    Outside Counsel shall submit its billing statement monthly in arrears, no later than the twentieth of the month following the month service was rendered.

    2.    Outside Counsel and City Attorney recognize that legal services performed under this Agreement are being paid for with ratepayer money from the citizens of the City of Los Angeles and that, therefore, a heightened duty of care exists in both Outside Counsel and City Attorney to ensure that Outside Counsel scrupulously adheres to principles of moderation, frugality and cost consciousness in carrying out the goals of this Agreement and to the extent consistent therewith. Outside Counsel pledges to observe a duty of reasonableness and cost effective representation in all aspects of this Agreement.  Accordingly, each billing statement shall contain a certification by Outside Counsel's Supervising Attorney that the services performed and the expenses incurred were both reasonable and necessary.

    3.    The City will not pay for more than one attorney doing any particular task unless City Attorney has given its prior written approval.  The City will not pay for two or more attorneys attending the same deposition or court appearance or meet and confer conference or similar telephonic conferences.  The City will pay for the time recorded by more than one attorney for in-office conferences, but only if the conference is an occasional and necessary strategy meeting relating to some significant legal event or proceeding.

    The City shall not pay for duplicative time charges by two or more attorneys, e.g., for legal research, reviewing documents, drafting documents, except as approved in writing by City Attorney.  The City shall not pay for "training" or "apprenticeship" time.  The City shall not pay for the involvement of attorneys who work on the case irregularly or sporadically, unless a particular attorney has a special expertise that substantially advances the prosecution/defense of the case.

    4.    Use of paralegals is encouraged providing they meet the requirements set forth herein.  Assignment of work to paralegals should not result in duplicative activity between attorneys and paralegals, or the reworking or rewriting of paralegals' work product by attorneys where the cost of attorney's creating the work product themselves would have been less that the cost with the involvement of paralegals.  The City will not pay for paralegal time spent performing clerical/secretarial work (e.g., filing, indexing, sorting, organizing, photocopying and bates stamping documents) unless the City has given its prior written approval.  City expects paralegals to perform true paralegal work, e.g., research, document productions, preparing discovery or responses, interviewing witnesses, etc.

5.    Hourly fee billings under this Agreement shall not be made in more than one-tenth of an hour (six minute) increments, and shall represent the devotion of a full six minutes before such an increment is billed. Under no circumstances shall Outside Counsel use "block billing" procedures, wherein a list of series of activities is done each day with only an aggregate amount of time specified. Instead, Outside Counsel shall provide a detailed specific entry for each separate task and sub-task reflecting the time for such task or subtask. All tasks set forth in Outside Counsel's billing documentation shall be highly specific and highly detailed. Overly generalized listings of task descriptions such as "review contract" or "prepare for negotiations" will not be acceptable. Outside Counsel shall provide a detailed description of each action as described below. This requirement shall apply equally to any expert or Consultant retained by Outside Counsel.

6.    Each billing statement shall be identified by a unique number and itemized to include:

a)    Case name, and case number;

b)    Staffing level(s), hourly rates and specific activities for each attorney and/or paralegal;

1)    Each activity shall be billed in a reporting format acceptable to City Attorney.

2)    A detailed description of specific activities for each attorney and/or paralegal shall include, but is not limited to:

(a)    In-person conferences.

(b)    Telephone call(s).

(c)    Correspondence.

(d)    Depositions.

(e)    Case reports.

(f)    Pleading, brief or opinion drafting.

(g)    Hearings.

(h)    Research, including computerized legal research databases.

(i)    Case reviews.

(j)    Trials.

c)    Total current monthly fees billed for each staffing level;

14

d)    Total cumulative fees billed for each staffing level;

e)    Total current monthly expenses billed in the following categories:

1)    Consultant and expert witness expenses;

2)    Deposition and transcript expenses;

3)    Other miscellaneous expenses.

f)    Total cumulative expenses to date billed in (e) above.

B.    <u>Payments</u>

1.    City shall make payment(s) for services rendered under this Agreement based on the monthly, itemized billing statement(s) Outside Counsel submits to City Attorney.

2.    City Attorney's legal and accounting staff shall review all billing statements in accordance with City's review procedures.

3.    City shall make its best effort to process payments promptly after receiving Outside Counsel's monthly billing statement. City shall not pay interest or finance charges on any outstanding balance(s).

C.    <u>Audit</u>

For at least three years after completion of services under this Agreement or termination of this Agreement, Outside Counsel and any third party retained by Outside Counsel to assist in the performance of this Agreement, shall maintain backup documentation to support all entries included in the monthly billing statement. Such backup documentation shall be maintained in an auditable format and in accordance with generally accepted accounting principles. City Attorney, at its sole discretion, may, at any time up to three years beyond the completion of services or termination of this Agreement, audit Outside Counsel and any third party retained by Outside Counsel to assist in the performance of this Agreement. Outside Counsel and any such third parties shall promptly and fully cooperate with the audit, including affording City Attorney and/or its auditors access to records and files maintained by Outside Counsel and the third party.

VII.    <u>NOTICES</u>

All invoices, notices and required reports shall be written and hand-delivered or mailed by first class, postage prepaid, addressed to City Attorney or Outside Counsel at the addresses below, or at any other address City Attorney or Outside Counsel shall provide in writing to each other:

A.    If <u>invoice</u> to City Attorney:

Adriana Blazevic
City of Los Angeles, Office of the City Attorney
221 North Figueroa Street, Suite 1000
Los Angeles, California 90012-4130

If <u>notice or a report</u> to City Attorney:

City of Los Angeles, Office of the City Attorney
221 North Figueroa Street, Suite 1000
Los Angeles, California 90012
Attention: Senior Assistant City Attorney Benjamin Chapman

If notice concerning <u>conflict of interest</u> to City Attorney:

Anne Haley, Assistant City Attorney
City of Los Angeles, Office of the City Attorney
200 North Main Street, 8th Floor, City Hall East
Los Angeles, California 90012-4130

B.    If notice to Outside Counsel:

Munger Tolles & Olson LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071-3426
Attention: Daniel B. Levin

## VIII.    ASSIGNMENT

A.    No part of this Agreement or any right or obligation arising from it is assignable without City's prior written consent.

B.    Any attempt by Outside Counsel to assign or subcontract services relating to this Agreement without City's prior written consent shall constitute a material breach of this Agreement.

## IX.    STANDARD TERMS AND CONDITIONS

### IRAN CONTRACTING ACT OF 2010

In accordance with California Public Contract Code Sections 2200-2208, all bidders submitting proposals for, entering into, or renewing contracts with the City of Los Angeles for goods and services estimated at $1,000,000 or more is required to complete, sign, and submit the "Iran Contracting Act of 2010 Compliance Affidavit."

FIRST SOURCE HIRING ORDINANCE

Unless otherwise exempt in accordance with the provisions of this Ordinance, this Agreement is subject to the applicable provisions of the First Source Hiring Ordinance (FSHO), Section 10.44 et seq. of the Los Angeles Administrative Code, as amended from time to time.

Contractor shall, prior to the execution of the Agreement, provide to the Department of Public Works, Bureau of Contract Administration as the Designated Administrative Agency ("DAA") a list of anticipated employment opportunities that Contractor estimates they will need to fill in order to perform the services under the Agreement.

Contractor further pledges that it will, during the term of the Agreement, a) at least seven business days prior to making an announcement of a specific employment opportunity, provide notifications of that employment opportunity to the Economic and Workforce Development Department ("EWDD"), which will refer individuals for interview; b) interview qualified individuals referred by EWDD; and c) prior to filling any employment opportunity, the Contractor shall inform the DAA of the names of the Referral Resources used, the names of the individuals they referred, the names of the referred individuals who the Contractor interviewed and the reasons why referred individuals were not hired.

Any Subcontract entered into by the Contractor relating to this Agreement, to the extent allowed hereunder, shall be subject to the provisions of FSHO, and shall incorporate the FSHO.

Contractor shall comply with all rules, regulations and policies promulgated by the DAA, which may be amended from time to time.

Where under the provisions of Section 10.44.13 of the Los Angeles Administrative Code the designated administrative agency has determined that the Contractor intentionally violated or used hiring practices for the purpose of avoiding the article, the determination must be documented in the Awarding Authority's Contractor Evaluation, required under Los Angeles Administrative Code Section 10.39 et seq., and must be documented in each of the Contractor's subsequent Contractor Responsibility Questionnaires submitted under Los Angeles Administrative Code Section 10.40 et seq. This measure does not limit the City's authority to act under this article.

Under the provisions of Section 10.44.8 of the Los Angeles Administrative Code, the Awarding Authority shall, under appropriate circumstances, terminate this contract and otherwise pursue legal remedies that may be available if the designated administrative agency determines that the subject Contractor has violated provisions of the FSHO.

DISCLOSURE OF BORDER WALL CONTRACTING

Contractor shall comply with Los Angeles Administrative Code ("LAAC") Section 10.50 et seq., "Disclosure of Border Wall Contracting." City may terminate this Agreement at any time if City determines that Contractor failed to fully and accurately complete the required affidavit and disclose all Border Wall Bids and Border Wall Contracts, as defined in LAAC Section 10.50.1.

COMPLIANCE WITH LOS ANGELES CITY CHARTER SECTION 470(c)(12)

The Contractor, Subcontractors, and their Principals are obligated to fully comply with City of Los Angeles Charter Section 470(c)(12) and related ordinances, regarding limitations on campaign contributions and fundraising for certain elected City officials or candidates for elected City office if the contract is valued at $100,000 or more and requires approval of a City elected official. Additionally, Contractor is required to provide and update certain information to the City as specified by law. Any Contractor subject to Charter Section 470(c)(12), shall include the following notice in any contract with a subcontractor expected to receive at least $100,000 for performance under this contract:

"Notice Regarding City of Los Angeles Campaign Contribution and Fundraising Restrictions

As provided in Charter Section 470(c)(12) and related ordinances, you are a subcontractor on City of Los Angeles contract #. Pursuant to City Charter_ Section 470(c)(12), subcontractor and its principals are prohibited from making campaign contributions and fundraising for certain elected City officials or candidates for elected City office for 12 months after the City contract is signed. Subcontractor is required to provide to contractor names and addresses of the subcontractor's principals and contact information and shall update that information if it changes during the 12 month time period. Subcontractor's information included must be provided to contractor within 10 business days. Failure to comply may result in termination of contract or any other available legal remedies includes fines. Information about the restrictions may be found at the City Ethics Commission's website at http://ethics.lacity.org/ or by calling 213/978-1960."

Contractor, Subcontractors, and their Principals shall comply with these requirements and limitations. Violation of this provision shall entitle the City to terminate this Agreement and pursue any and all legal remedies that may be available.

STANDARD PROVISIONS FOR CITY CONTRACTS

Contractor agrees to comply with the Standard Provisions for City Contracts (Rev. 6/24 [v. 1.]), which are attached hereto as Exhibit A and incorporated herein by reference, except as follows:

PSC-9 shall be amended to add the following at the end of paragraph A:

"CONTRACTOR may maintain its work product for internal use, subject to its confidentiality obligations to the CITY. For the avoidance of doubt, CONTRACTOR does not agree to the attribution to CONTRACTOR of any views or positions, whether through use of CONTRACTOR'S work product or otherwise, without CONTRACTOR'S express prior written approval."

Paragraph B.6. of PSC-9 shall be deleted in its entirety. The parties, however, shall retain all common law contract remedies.

The second paragraph of PSC-11 shall be amended to read:

18

"CONTRACTOR shall not use Subcontractors to assist in performance of this Contract without the prior written approval of CITY. If CITY permits the use of Subcontractors, CONTRACTOR shall remain responsible for performing all aspects of this Contract and paying all Subcontractors. CITY has the right to approve CONTRACTOR'S Subcontractors, and CITY reserves the right to request replacement of any Subcontractor. CITY does not have any obligation to pay CONTRACTOR'S Subcontractors, and nothing herein creates any privity of contract between CITY and any

Subcontractor, provided that, CONTRACTOR may, with consent of the CITY, retain third-party vendors, such as eDiscovery providers, consultants or expert witnesses, specifically to work on behalf of the CITY in conjunction with this matter. The retention agreements with such third-party vendors, consultants, and/or experts shall state that the City shall have sole responsibility for payment of services and shall require invoices to be submitted directly    to    the    CITY."

PSC-16 shall be amended to read:

"<u>Retention of Records. Audit and Reports.</u> CONTRACTOR shall maintain all records, including records of financial transactions, pertaining to the performance of this Contract, in their original form or as otherwise approved by CITY. These records shall be retained as required by law, but in no event for a period of less than three years from the later of the following: (1) final payment made by CITY, (2) the expiration of this Contract or (3) termination of this Contract. The records will be subject to examination and audit by authorized CITY personnel or CITY'S representatives at any time. CONTRACTOR shall provide any reports requested by CITY regarding performance of this Contract. Any subcontract entered into by CONTRACTOR for work to be performed under this Contract must include an identical provision. In lieu of retaining the records for the term as prescribed in this provision, CONTRACTOR may, upon CITY'S written approval, submit the required information to CITY in an electronic format, e.g. USB flash drive, at the expiration or termination of this Contract."

PSC-19 is hereby deleted in its entirety.

PSC-21 is hereby deleted in its entirety.

PSC-22 shall be amended as follows:

"Data Protection.

A. CONTRACTOR shall protect, using the most secure means and technology that is commercially available, CITY-provided data or consumer-provided data acquired in the course and scope of this Contract, including but not limited to customer lists and customer credit card or consumer data, (collectively, the "City Data"). CONTRACTOR shall notify CITY in writing as soon as reasonably feasible, and in any event within forty- eight hours, of CONTRACTOR'S discovery or reasonable belief of any unauthorized access of City Data (a "Data Breach"), or of any incident affecting, or potentially affecting City Data related to cyber security (a "Security Incident"), including, but not limited to, denial of service attack, and system outage,

19

instability or degradation due to computer malware or virus. CONTRACTOR shall begin remediation immediately. CONTRACTOR shall provide daily updates, or more frequently if required by CITY, regarding findings and actions performed by CONTRACTOR until the Data Breach or Security Incident has been effectively resolved to CITY'S satisfaction. CONTRACTOR shall conduct an investigation of the Data Breach or Security Incident and shall share the report of the investigation with CITY. At CITY'S sole discretion, CITY and its authorized agents shall have the right to lead or participate in the investigation. CONTRACTOR shall cooperate fully with CITY, its agents and law enforcement.

B. CONTRACTOR shall fully cooperate with CITY throughout the investigation of a Security Incident and work closely to determine the necessity, extent and timing of remediation responsibilities on a case-by-case basis."

PSC-23 shall be amended to read:

"During the term of this Contract, CONTRACTOR shall provide and maintain at its own expense a program of insurance having the coverages and limits not less than the required amounts and types as determined by the Office of the City Administrative Officer of Los Angeles, Risk Management (template Form General 146 in Exhibit 1 hereto). The insurance must: (1) conform to CITY'S requirements; (2) comply with the Insurance Contractual Requirements (Form General 133 in Exhibit 1 hereto); and (3) otherwise be in a form acceptable to the Office of the City Administrative Officer, Risk Management. CONTRACTOR shall comply with all Insurance Contractual Requirements shown on Exhibit 1 hereto. Exhibit 1 is hereby incorporated by reference and made a part of this Contract. CONTRACTOR understands these requirements to apply to CONTRACTOR'S primary general liability policy and has confirmed that such general liability policy conforms to the requirements of Exhibit 1."

PSC-24 shall be amended as follows:

"Best Terms. While it is not possible to make perfect comparisons between the rates that CONTRACTOR will charge CITY and the rates CONTRACTOR charges other clients in other matters, given the different teams staffed on different matters and different times in which agreements are made, the discounted rates CONTRACTOR will charge CITY will be competitive with the financial arrangements CONTRACTOR has with its other clients that are similarly situated and have received rate discounts."

PSC-32 is hereby deleted in its entirety

## X.    MERGER

This Agreement supersedes all prior communications and all previous written and oral agreements, and shall constitute the complete and exclusive statement of understanding between City, City Attorney and Outside Counsel relating to the subject matter of this Agreement.

XI.   <u>ORDER OF PRECEDENCE</u>

In the event of any inconsistency between the provisions in the body of this Agreement and the attachments, the provisions in the body of this Agreement take precedence, followed by Attachment A, Standard Provisions for City Contracts (Rev. 6/24) [v.1], followed by Attachment B, Fee Schedule, followed by any other exhibits or attachments to this Agreement in the order in which they are attached. This Agreement may be executed in one or more counterparts, and by the parties in separate counterparts, each of which when executed shall be deemed to be an original but all of which taken together shall constitute one and the same agreement. The parties further agree that facsimile signatures or signatures scanned into .pdf (or signatures in another electronic format designated by City) and sent by e-mail shall be deemed original signatures.

IN WITNESS WHEREOF the Parties hereto have caused this Agreement to be executed by their respective duly authorized representatives on the day and year written below. By signing below, the signatories attest that they have no personal, financial, beneficial, or familial interest in this agreement.

DEPARTMENT OF WATER AND POWER OF
THE CITY OF LOS ANGELES BY
BOARD OF WATER AND POWER COMMISSIONERS
OF THE CITY OF LOS ANGELES

Date: Feb 21, 2025

By: _____
JANISSE QUIÑONES
General Manager and Chief Engineer

Date: Feb 21, 2025

And: _____
CHANTE L. MITCHELL
Board Secretary

THE CITY OF LOS ANGELES, a municipal corporation
HYDEE FELDSTEIN SOTO City Attorney

Date 02/25/2025

By _____
VALERIE FLORES
Chief Deputy City Attorney

MUNGER, TOLLES & OLSON LLP

Date 2/5/2025

By _____
DANIEL B. LEVIN

APPROVED AS TO FORM
HYDEE FELDSTEIN SOTO, City Attorney

Date 2/5/25

By _____
BENJAMIN CHAPMAN
Senior Assistant City Attorney

22

STANDARD PROVISIONS FOR CITY CONTRACTS

### TABLE OF CONTENTS

PSC-1    Construction of Provisions and Titles Herein...................................................1

PSC-2    Applicable Law, Interpretation and Enforcement...........................................1

PSC-3    Time of Effectiveness......................................................................................1

PSC-4    Integrated Contract .........................................................................................2

PSC-5    Amendment.....................................................................................................2

PSC-6    Excusable Delays............................................................................................2

PSC-7    Waiver..............................................................................................................2

PSC-8    Suspension .....................................................................................................3

PSC-9    Termination .....................................................................................................3

PSC-10   Independent Contractor .................................................................................5

PSC-11    Contractor's Personnel..................................................................................5

PSC-12   Assignment and Delegation ...........................................................................6

PSC-13   Permits............................................................................................................6

PSC-14   Claims for Labor and Materials ......................................................................6

PSC-15   Current Los Angeles City Business Tax Registration Certificate Required ....6

PSC-16   Retention of Records, Audit and Reports.......................................................6

PSC-17   Bonds..............................................................................................................7

PSC-18   Indemnification ...............................................................................................7

PSC-19   Intellectual Property Indemnification ..............................................................7

PSC-20   Intellectual Property Warranty ........................................................................8

PSC-21   Ownership and License...................................................................................8

PSC-22   Data Protection ...............................................................................................9

STANDARD PROVISIONS
FOR CITY CONTRACTS (Rev. 6/24 [v.1])         i              **ATTACHMENT A**

## TABLE OF CONTENTS (Continued)

PSC-23  Insurance ................................................................................ 9

PSC-24  Best Terms................................................................................ 9

PSC-25  Warranty and Responsibility of Contractor ................................. 10

PSC-26  Mandatory Provisions Pertaining to Non-Discrimination in Employment ...... 10

PSC-27  Child Support Assignment Orders ............................................. 10

PSC-28  Living Wage Ordinance ............................................................ 11

PSC-29  Service Contractor Worker Retention Ordinance ......................... 11

PSC-30  Access and Accommodations .................................................. 11

PSC-31  Contractor Responsibility Ordinance ........................................ 12

PSC-32  Business Inclusion Program ..................................................... 12

PSC-33  Slavery Disclosure Ordinance .................................................. 12

PSC-34  First Source Hiring Ordinance .................................................. 12

PSC-35  Local Business Preference Ordinance ....................................... 12

PSC-36  Iran Contracting Act ................................................................ 12

PSC-37  Restrictions on Campaign Contributions in City Elections............ 12

PSC-38  Contractors' Use of Criminal History for Consideration of Employment Applications ........................................................................... 13

PSC-39  Limitation of City's Obligation to Make Payment to Contractor .................... 13

PSC-40  Compliance with Identity Theft Laws and Payment Card Data Security Standards ............................................................................. 14

PSC-41  Compliance with California Public Resources Code Section 5164 .............. 14

PSC-42  Possessory Interests Tax ......................................................... 14

PSC-43  Confidentiality......................................................................... 15

PSC-44  Contractor Data Reporting........................................................ 15

**Exhibit 1** Insurance Contractual Requirements ............................................................ 16

# STANDARD PROVISIONS FOR CITY CONTRACTS

**PSC-1.** Construction of Provisions and Titles Herein

All titles, subtitles, or headings in this Contract have been inserted for convenience, and shall not be deemed to affect the meaning or construction of any of the terms or provisions of this Contract. The language of this Contract shall be construed according to its fair meaning and not strictly for or against **CITY** or **CONTRACTOR**. The word "**CONTRACTOR**" includes the party or parties identified in this Contract. The singular shall include the plural and if there is more than one **CONTRACTOR**, unless expressly stated otherwise, their obligations and liabilities shall be joint and several. Use of the feminine, masculine, or neuter genders shall be deemed to include the genders not used.

**PSC-2.** Applicable Law, Interpretation and Enforcement

Each party's performance shall comply with all applicable laws of the United States of America, the State of California, and **CITY**, including but not limited to, laws regarding health and safety, labor and employment, wage and hours and licensing. This Contract shall be enforced and interpreted under the laws of the State of California without regard to conflict of law principles. **CONTRACTOR** shall comply with new, amended, or revised laws, regulations, or procedures that apply to the performance of this Contract with no additional compensation paid to **CONTRACTOR**.

In any action arising out of this Contract, **CONTRACTOR** consents to personal jurisdiction, and agrees to bring all such actions, exclusively in state or federal courts located in Los Angeles County, California.

If any part, term or provision of this Contract is held void, illegal, unenforceable, or in conflict with any federal, state or local law or regulation, the validity of the remaining parts, terms or provisions of this Contract shall not be affected.

**PSC-3.** Time of Effectiveness

Unless otherwise provided, this Contract shall take effect when all of the following events have occurred:

A. This Contract has been signed on behalf of **CONTRACTOR** by the person or persons authorized to bind **CONTRACTOR**;

B. This Contract has been approved by the City Council or by the board, officer or employee authorized to give such approval;

C. The Office of the City Attorney has indicated in writing its approval of this Contract as to form; and

D. This Contract has been signed on behalf of **CITY** by the person designated by the City Council, or by the board, officer or employee authorized to enter into this Contract.

**PSC-4.** Integrated Contract

This Contract sets forth all of the rights and duties of the parties with respect to the subject matter of this Contract, and replaces any and all previous Contracts or understandings, whether written or oral, relating thereto. This Contract may be amended only as provided for in the provisions of PSC-5 hereof.

**PSC-5.** Amendment

All amendments to this Contract shall be in writing and signed and approved pursuant to the provisions of PSC-3.

**PSC-6.** Excusable Delays

Neither party shall be liable for its delay or failure to perform any obligation under and in accordance with this Contract, if the delay or failure arises out of fires, floods, earthquakes, epidemics, quarantine restrictions, other natural occurrences, strikes, lockouts (other than a lockout by the party or any of the party's Subcontractors), freight embargoes, terrorist acts, insurrections or other civil disturbances, or other similar events to those described above, but in each case the delay or failure to perform must be beyond the control and without any fault or negligence of the party delayed or failing to perform (these events are referred to in this provision as "Force Majeure Events").

Notwithstanding the foregoing, a delay or failure to perform by a Subcontractor of **CONTRACTOR** shall not constitute a Force Majeure Event, unless the delay or failure arises out of causes beyond the control of both **CONTRACTOR** and Subcontractor, and without any fault or negligence of either of them. In such case, **CONTRACTOR** shall not be liable for the delay or failure to perform, unless the goods or services to be furnished by the Subcontractor were obtainable from other sources in sufficient time to permit **CONTRACTOR** to perform timely. As used in this Contract, the term "Subcontractor" means a subcontractor at any tier.

In the event **CONTRACTOR'S** delay or failure to perform arises out of a Force Majeure Event, **CONTRACTOR** agrees to use commercially reasonable best efforts to obtain the goods or services from other sources, and to otherwise mitigate the damages and reduce the delay caused by the Force Majeure Event.

**PSC-7.** Waiver

A waiver of a default of any part, term or provision of this Contract shall not be construed as a waiver of any succeeding default or as a waiver of the part, term or provision itself. A party's performance after the other party's default shall not be construed as a waiver of that default.

PSC-8. Suspension

At **CITY'S** sole discretion, **CITY** may suspend any or all services provided under this Contract by providing **CONTRACTOR** with written notice of suspension. Upon receipt of the notice of suspension, **CONTRACTOR** shall immediately cease the services suspended and shall not incur any additional obligations, costs or expenses to **CITY** until **CITY** gives written notice to recommence the services.

PSC-9. Termination

A.    Termination for Convenience

**CITY** may terminate this Contract for **CITY'S** convenience at any time by providing **CONTRACTOR** thirty days written notice. Upon receipt of the notice of termination, **CONTRACTOR** shall immediately take action not to incur any additional obligations, costs or expenses, except as may be necessary to terminate its activities. **CITY** shall pay **CONTRACTOR** its reasonable and allowable costs through the effective date of termination and those reasonable and necessary costs incurred by **CONTRACTOR** to effect the termination. Thereafter, **CONTRACTOR** shall have no further claims against **CITY** under this Contract. All finished and unfinished documents and materials procured for or produced under this Contract, including all intellectual property rights **CITY** is entitled to, shall become **CITY** property upon the date of the termination. **CONTRACTOR** agrees to execute any documents necessary for **CITY** to perfect, memorialize, or record **CITY'S** ownership of rights provided herein.

B.    Termination for Breach of Contract

1.    Except as provided in PSC-6, if **CONTRACTOR** fails to perform any of the provisions of this Contract or so fails to make progress as to endanger timely performance of this Contract, **CITY** may give **CONTRACTOR** written notice of the default. **CITY'S** default notice will indicate whether the default may be cured and the time period to cure the default to the sole satisfaction of **CITY**. Additionally, **CITY'S** default notice may offer **CONTRACTOR** an opportunity to provide **CITY** with a plan to cure the default, which shall be submitted to **CITY** within the time period allowed by **CITY**. At **CITY'S** sole discretion, **CITY** may accept or reject **CONTRACTOR'S** plan. If the default cannot be cured or if **CONTRACTOR** fails to cure within the period allowed by **CITY**, then **CITY** may terminate this Contract due to **CONTRACTOR'S** breach of this Contract.

2.    If the default under this Contract is due to **CONTRACTOR'S** failure to maintain the insurance required under this Contract, **CONTRACTOR** shall immediately: (1) suspend performance of any services under this Contract for which insurance was required; and (2) notify its employees and Subcontractors of the loss of insurance coverage and Contractor's obligation to suspend performance of

services. **CONTRACTOR** shall not recommence performance until **CONTRACTOR** is fully insured and in compliance with **CITY'S** requirements.

3.   If a federal or state proceeding for relief of debtors is undertaken by or against **CONTRACTOR**, or if **CONTRACTOR** makes an assignment for the benefit of creditors, then **CITY** may immediately terminate this Contract.

4.   If **CONTRACTOR** engages in any dishonest conduct related to the performance or administration of this Contract or violates **CITY'S** laws, regulations or policies relating to lobbying, then **CITY** may immediately terminate this Contract.

5.   Acts of Moral Turpitude

a.   **CONTRACTOR** shall immediately notify **CITY** if **CONTRACTOR** or any Key Person, as defined below, is charged with, indicted for, convicted of, pleads nolo contendere to, or forfeits bail or fails to appear in court for a hearing related to, any act which constitutes an offense involving moral turpitude under federal, state, or local laws ("Act of Moral Turpitude").

b.   If **CONTRACTOR** or a Key Person is convicted of, pleads nolo contendere to, or forfeits bail or fails to appear in court for a hearing related to, an Act of Moral Turpitude, **CITY** may immediately terminate this Contract.

c.   If **CONTRACTOR** or a Key Person is charged with or indicted for an Act of Moral Turpitude, **CITY** may terminate this Contract after providing **CONTRACTOR** an opportunity to present evidence of **CONTRACTOR'S** ability to perform under the terms of this Contract.

d.   Acts of Moral Turpitude include, but are not limited to: violent felonies as defined by Penal Code Section 667.5, crimes involving weapons, crimes resulting in serious bodily injury or death, serious felonies as defined by Penal Code Section 1192.7, and those crimes referenced in the Penal Code and articulated in California Public Resources Code Section 5164(a)(2); in addition to and including acts of murder, rape, sexual assault, robbery, kidnapping, human trafficking, pimping, voluntary manslaughter, aggravated assault, assault on a peace officer, mayhem, fraud, domestic abuse, elderly abuse, and child abuse, regardless of whether such acts are punishable by felony or misdemeanor conviction.

e.   For the purposes of this provision, a Key Person is a principal, officer, or employee assigned to this Contract, or owner (directly or indirectly, through one or more intermediaries) of ten percent or more of the voting power or equity interests of **CONTRACTOR**.

6.   In the event **CITY** terminates this Contract as provided in this section, **CITY** may procure, upon such terms and in the manner as **CITY** may deem appropriate, services similar in scope and level of effort to those so terminated, and **CONTRACTOR** shall be liable to **CITY** for all of its costs and damages, including, but not limited to, any excess costs for such services.

7.   If, after notice of termination of this Contract under the provisions of this section, it is determined for any reason that **CONTRACTOR** was not in default under the provisions of this section, or that the default was excusable under the terms of this Contract, the rights and obligations of the parties shall be the same as if the notice of termination had been issued pursuant to PSC-9(A) Termination for Convenience.

8.   The rights and remedies of **CITY** provided in this section shall not be exclusive and are in addition to any other rights and remedies provided by law or under this Contract.

C.   In the event that this Contract is terminated, **CONTRACTOR** shall immediately notify all employees and Subcontractors, and shall notify in writing all other parties contracted with under the terms of this Contract within five working days of the termination.

## PSC-10. Independent Contractor

**CONTRACTOR** is an independent contractor and not an agent or employee of **CITY**. **CONTRACTOR** shall not represent or otherwise hold out itself or any of its directors, officers, partners, employees, or agents to be an agent or employee of **CITY**.

## PSC-11. Contractor's Personnel

Unless otherwise approved by **CITY**, **CONTRACTOR** shall use its own employees to perform the services described in this Contract. **CITY** has the right to review and approve any personnel who are assigned to work under this Contract. **CONTRACTOR** shall remove personnel from performing work under this Contract if requested to do so by **CITY**.

**CONTRACTOR** shall not use Subcontractors to assist in performance of this Contract without the prior written approval of **CITY**. If **CITY** permits the use of Subcontractors, **CONTRACTOR** shall remain responsible for performing all aspects of this Contract and paying all Subcontractors. **CITY** has the right to approve **CONTRACTOR'S** Subcontractors, and **CITY** reserves the right to request replacement of any

Subcontractor. **CITY** does not have any obligation to pay **CONTRACTOR'S** Subcontractors, and nothing herein creates any privity of contract between **CITY** and any Subcontractor.

**PSC-12.** Assignment and Delegation

**CONTRACTOR** may not, unless it has first obtained the written permission of **CITY**:

    A.    Assign or otherwise alienate any of its rights under this Contract, including the right to payment; or

    B.    Delegate, subcontract, or otherwise transfer any of its duties under this Contract.

**PSC-13.** Permits

**CONTRACTOR** and its directors, officers, partners, agents, employees, and Subcontractors, shall obtain and maintain all licenses, permits, certifications and other documents necessary for **CONTRACTOR'S** performance of this Contract. **CONTRACTOR** shall immediately notify **CITY** of any suspension, termination, lapses, non-renewals, or restrictions of licenses, permits, certificates, or other documents that relate to **CONTRACTOR'S** performance of this Contract.

**PSC-14.** Claims for Labor and Materials

**CONTRACTOR** shall promptly pay when due all amounts owed for labor and materials furnished in the performance of this Contract so as to prevent any lien or other claim under any provision of law from arising against any **CITY** property (including reports, documents, and other tangible or intangible matter produced by **CONTRACTOR** hereunder), and shall pay all amounts due under the Unemployment Insurance Act or any other applicable law with respect to labor used to perform under this Contract.

**PSC-15.** Current Los Angeles City Business Tax Registration Certificate Required

For the duration of this Contract, **CONTRACTOR** shall maintain valid Business Tax Registration Certificate(s) as required by **CITY'S** Business Tax Ordinance, Section 21.00 *et seq.* of the Los Angeles Municipal Code ("LAMC"), and shall not allow the Certificate to lapse or be revoked or suspended.

**PSC-16.** Retention of Records, Audit and Reports

**CONTRACTOR** shall maintain all records, including records of financial transactions, pertaining to the performance of this Contract, in their original form or as otherwise approved by **CITY.** These records shall be retained for a period of no less than three years from the later of the following: (1) final payment made by **CITY**, (2) the expiration of this Contract or (3) termination of this Contract. The records will be subject to examination and audit by authorized **CITY** personnel or **CITY'S** representatives at any time. **CONTRACTOR** shall provide any reports requested by **CITY** regarding

performance of this Contract. Any subcontract entered into by **CONTRACTOR** for work to be performed under this Contract must include an identical provision.

In lieu of retaining the records for the term as prescribed in this provision, **CONTRACTOR** may, upon **CITY'S** written approval, submit the required information to **CITY** in an electronic format, e.g. USB flash drive, at the expiration or termination of this Contract.

**PSC-17.** Bonds

All bonds required by **CITY** shall be filed with the Office of the City Administrative Officer, Risk Management for its review and acceptance in accordance with Los Angeles Administrative Code ("LAAC") Sections 11.47 *et seq.*, as amended from to time.

**PSC-18.** Indemnification

Except for the active negligence or willful misconduct of **CITY**, or any of its boards, officers, agents, employees, assigns and successors in interest, **CONTRACTOR** shall defend, indemnify and hold harmless **CITY** and any of its boards, officers, agents, employees, assigns, and successors in interest from and against all lawsuits and causes of action, claims, losses, demands and expenses, including, but not limited to, attorney's fees (both in house and outside counsel) and cost of litigation (including all actual litigation costs incurred by **CITY**, including but not limited to, costs of experts and consultants), damages or liability of any nature whatsoever, for death or injury to any person, including **CONTRACTOR'S** employees and agents, or damage or destruction of any property of either party hereto or of third parties, arising in any manner by reason of an act, error, or omission by **CONTRACTOR**, Subcontractors, or their boards, officers, agents, employees, assigns, and successors in interest. The rights and remedies of **CITY** provided in this section shall not be exclusive and are in addition to any other rights and remedies provided by law or under this Contract. This provision will survive expiration or termination of this Contract.

**PSC-19.** Intellectual Property Indemnification

**CONTRACTOR**, at its own expense, shall defend, indemnify, and hold harmless the **CITY**, and any of its boards, officers, agents, employees, assigns, and successors in interest from and against all lawsuits and causes of action, claims, losses, demands and expenses, including, but not limited to, attorney's fees (both in house and outside counsel) and cost of litigation (including all actual litigation costs incurred by **CITY**, including but not limited to, costs of experts and consultants), damages or liability of any nature arising out of the infringement, actual or alleged, direct or contributory, of any intellectual property rights, including, without limitation, patent, copyright, trademark, trade secret, right of publicity, and proprietary information: (1) on or in any design, medium, matter, article, process, method, application, equipment, device, instrumentation, software, hardware, or firmware used by **CONTRACTOR**, or its Subcontractors, in performing the work under this Contract; or (2) as a result of **CITY'S** actual or intended use of any Work Product (as defined in PSC-21) furnished by **CONTRACTOR**, or its Subcontractors, under this Contract. The rights and remedies of **CITY** provided in this section shall not be exclusive

and are in addition to any other rights and remedies provided by law or under this Contract. This provision will survive expiration or termination of this Contract.

**PSC-20.** Intellectual Property Warranty

**CONTRACTOR** represents and warrants that its performance of all obligations under this Contract does not infringe in any way, directly or contributorily, upon any third party's intellectual property rights, including, without limitation, patent, copyright, trademark, trade secret, right of publicity and proprietary information.

**PSC-21.** Ownership and License

Unless otherwise provided for herein, all finished and unfinished works, tangible or not, created under this Contract including, without limitation, documents, materials, data, reports, manuals, specifications, artwork, drawings, sketches, blueprints, studies, memoranda, computation sheets, computer programs and databases, schematics, photographs, video and audiovisual recordings, sound recordings, marks, logos, graphic designs, notes, websites, domain names, inventions, processes, formulas, matters and combinations thereof, and all forms of intellectual property originated and prepared by **CONTRACTOR** or its Subcontractors under this Contract (each a "Work Product"; collectively "Work Products") shall be and remain the exclusive property of **CITY** for its use in any manner **CITY** deems appropriate. **CONTRACTOR** hereby assigns to **CITY** all goodwill, copyright, trademark, patent, trade secret and all other intellectual property rights worldwide in any Work Products originated and prepared under this Contract. **CONTRACTOR** further agrees to execute any documents necessary for **CITY** toperfect, memorialize, or record **CITY'S** ownership of rights provided herein.

**CONTRACTOR** agrees that a monetary remedy for breach of this Contract may be inadequate, impracticable, or difficult to prove and that a breach may cause **CITY** irreparable harm. **CITY** may therefore enforce this requirement by seeking injunctive relief and specific performance, without any necessity of showing actual damage or irreparable harm. Seeking injunctive relief or specific performance does not preclude **CITY** from seeking or obtaining any other relief to which **CITY** may be entitled.

For all Work Products delivered to **CITY** that are not originated or prepared by **CONTRACTOR** or its Subcontractors under this Contract, **CONTRACTOR** shall secure a grant, at no cost to **CITY**, for a non-exclusive perpetual license to use such Work Products for any **CITY** purposes.

**CONTRACTOR** shall not provide or disclose any Work Product to any third party without prior written consent of **CITY**.

Any subcontract entered into by **CONTRACTOR** relating to this Contract shall include this provision to contractually bind its Subcontractors performing work under this Contract such that **CITY'S** ownership and license rights of all Work Products are preserved and protected as intended herein.

**PSC-22.**   Data Protection

    A.    **CONTRACTOR** shall protect, using the most secure means and technology that is commercially available, **CITY**-provided data or consumer-provided data acquired in the course and scope of this Contract, including but not limited to customer lists and customer credit card or consumer data, (collectively, the "City Data"). **CONTRACTOR** shall notify **CITY** in writing as soon as reasonably feasible, and in any event within twenty-four hours, of **CONTRACTOR'S** discovery or reasonable belief of any unauthorized access of City Data (a "Data Breach"), or of any incident affecting, or potentially affecting City Data related to cyber security (a "Security Incident"), including, but not limited to, denial of service attack, and system outage, instability or degradation due to computer malware or virus. **CONTRACTOR** shall begin remediation immediately. **CONTRACTOR** shall provide daily updates, or more frequently if required by **CITY**, regarding findings and actions performed by **CONTRACTOR** until the Data Breach or Security Incident has been effectively resolved to **CITY'S** satisfaction. **CONTRACTOR** shall conduct an investigation of the Data Breach or Security Incident and shall share the report of the investigation with **CITY**. At **CITY'S** sole discretion, **CITY** and its authorized agents shall have the right to lead or participate in the investigation. **CONTRACTOR** shall cooperate fully with **CITY**, its agents and law enforcement.

    B.    If **CITY** is subject to liability for any Data Breach or Security Incident, then **CONTRACTOR** shall fully indemnify and hold harmless **CITY** and defend against any resulting actions.

**PSC-23.**   Insurance

During the term of this Contract and without limiting **CONTRACTOR'S** obligation to indemnify, hold harmless and defend **CITY**, **CONTRACTOR** shall provide and maintain at its own expense a program of insurance having the coverages and limits not less than the required amounts and types as determined by the Office of the City Administrative Officer of Los Angeles, Risk Management (template Form General 146 in Exhibit 1 hereto). The insurance must: (1) conform to **CITY'S** requirements; (2) comply with the Insurance Contractual Requirements (Form General 133 in Exhibit 1 hereto); and (3) otherwise be in a form acceptable to the Office of the City Administrative Officer, Risk Management. **CONTRACTOR** shall comply with all Insurance Contractual Requirements shown on Exhibit 1 hereto. Exhibit 1 is hereby incorporated by reference and made a part of this Contract.

**PSC-24.** Best Terms

Throughout the term of this Contract, **CONTRACTOR**, shall offer **CITY** the best terms, prices, and discounts that are offered to any of **CONTRACTOR'S** customers for similar goods and services provided under this Contract.

**PSC-25.** Warranty and Responsibility of Contractor

**CONTRACTOR** warrants that the work performed hereunder shall be completed in a manner consistent with professional standards practiced among those firms within **CONTRACTOR'S** profession, doing the same or similar work under the same or similar circumstances.

**PSC-26.** Mandatory Provisions Pertaining to Non-Discrimination in Employment

Unless otherwise exempt, this Contract is subject to the applicable non-discrimination, equal benefits, equal employment practices, and affirmative action program provisions in LAAC Section 10.8 et seq., as amended from time to time.

   A.   **CONTRACTOR** shall comply with the applicable non-discrimination and affirmative action provisions of the laws of the United States of America, the State of California, and **CITY**. In performing this Contract, **CONTRACTOR** shall not discriminate in any of its hiring or employment practices against any employee or applicant for employment because of such person's race, color, religion, national origin, ancestry, sex, sexual orientation, gender, gender identity, age, disability, domestic partner status, marital status or medical condition.

   B.   The requirements of Section 10.8.2.1 of the LAAC, the Equal Benefits Ordinance, and the provisions of Section 10.8.2.1(f) are incorporated and made a part of this Contract by reference.

   C.   The provisions of Section 10.8.3 of the LAAC are incorporated and made a part of this Contract by reference and will be known as the "Equal Employment Practices" provisions of this Contract.

   D.   The provisions of Section 10.8.4 of the LAAC are incorporated and made a part of this Contract by reference and will be known as the "Affirmative Action Program" provisions of this Contract.

Any subcontract entered into by **CONTRACTOR** for work to be performed under this Contract must include an identical provision.

**PSC-27.**   Child Support Assignment Orders

**CONTRACTOR** shall comply with the Child Support Assignment Orders Ordinance, Section 10.10 of the LAAC, as amended from time to time. Pursuant to Section 10.10(b) of the LAAC, **CONTRACTOR** shall fully comply with all applicable State and Federal employment reporting requirements. Failure of **CONTRACTOR** to comply with all applicable reporting requirements or to implement lawfully served Wage and Earnings Assignment or Notices of Assignment, or the failure of any principal owner(s) of **CONTRACTOR** to comply with any Wage and Earnings Assignment or Notices of Assignment applicable to them personally, shall constitute a default by the **CONTRACTOR** under this Contract. Failure of **CONTRACTOR** or principal owner to cure

the default within 90 days of the notice of default will subject this Contract to termination for breach. Any subcontract entered into by **CONTRACTOR** for work to be performed under this Contract must include an identical provision.

**PSC-28.** Living Wage Ordinance

**CONTRACTOR** shall comply with the Living Wage Ordinance, LAAC Section 10.37 *et seq.*, as amended from time to time. **CONTRACTOR** further agrees that it shall comply with federal law proscribing retaliation for union organizing. Any subcontract entered into by **CONTRACTOR** for work to be performed under this Contract must include an identical provision.

**PSC-29.** Service Contractor Worker Retention Ordinance

**CONTRACTOR** shall comply with the Service Contractor Worker Retention Ordinance, LAAC Section 10.36 *et seq.*, as amended from time to time. Any subcontract entered into by **CONTRACTOR** for work to be performed under this Contract must include an identical provision.

**PSC-30.** Access and Accommodations

**CONTRACTOR** represents and certifies that:

A.   **CONTRACTOR** shall comply with the Americans with Disabilities Act, as amended, 42 U.S.C. Section 12101 et seq., the Rehabilitation Act of 1973, as amended, 29 U.S.C. Section 701 et seq., the Fair Housing Act, and its implementing regulations and any subsequent amendments, and California Government Code Section 11135;

B.   **CONTRACTOR** shall not discriminate on the basis of disability or on the basis of a person's relationship to, or association with, a person who has a disability;

C.   **CONTRACTOR** shall provide reasonable accommodation upon request to ensure equal access to **CITY**-funded programs, services and activities;

D.   Construction will be performed in accordance with the Uniform Federal Accessibility Standards (UFAS), 24 C.F.R. Part 40; and

E.   The buildings and facilities used to provide services under this Contract are in compliance with the federal and state standards for accessibility as set forth in the 2010 ADA Standards, California Title 24, Chapter 11, or other applicable federal and state law.

**CONTRACTOR** understands that **CITY** is relying upon these certifications and representations as a condition to funding this Contract. Any subcontract entered into by **CONTRACTOR** for work to be performed under this Contract must include an identical provision.

**PSC-31.** Contractor Responsibility Ordinance

**CONTRACTOR** shall comply with the Contractor Responsibility Ordinance, LAAC Section 10.40 *et seq.*, as amended from time to time.

**PSC-32.** Business Inclusion Program

Unless otherwise exempted prior to bid submission, **CONTRACTOR** shall comply with all aspects of the Business Inclusion Program as described in the Request for Proposal/Qualification process, throughout the duration of this Contract. **CONTRACTOR** shall utilize the Business Assistance Virtual Network ("BAVN") at https://www.labavn.org/, to perform and document outreach to Minority, Women, and Other Business Enterprises. **CONTRACTOR** shall perform subcontractor outreach activities through BAVN. **CONTRACTOR** shall not change any of its designated Subcontractors or pledged specific items of work to be performed by these Subcontractors, nor shall **CONTRACTOR** reduce their level of effort, without prior written approval of **CITY**.

**PSC-33.** Slavery Disclosure Ordinance

**CONTRACTOR** shall comply with the Slavery Disclosure Ordinance, LAAC Section 10.41 *et seq.*, as amended from time to time. Any subcontract entered into by **CONTRACTOR** for work to be performed under this Contract must include an identical provision.

**PSC-34.** First Source Hiring Ordinance

**CONTRACTOR** shall comply with the First Source Hiring Ordinance, LAAC Section 10.44 *et seq.*, as amended from time to time. Any subcontract entered into by **CONTRACTOR** for work to be performed under this Contract must include an identical provision.

**PSC-35.** Local Business Preference Ordinance

**CONTRACTOR** shall comply with the Local Business Preference Ordinance, LAAC Section 10.47 *et seq.*, as amended from time to time. Any subcontract entered into by **CONTRACTOR** for work to be performed under this Contract must include an identical provision.

**PSC-36.** Iran Contracting Act

In accordance with California Public Contract Code Sections 2200-2208, all contractors entering into, or renewing contracts with **CITY** for goods and services estimated at $1,000,000 or more are required to complete, sign, and submit the "Iran Contracting Act of 2010 Compliance Affidavit."

**PSC-37.** Restrictions on Campaign Contributions and Fundraising in City Elections

Unless otherwise exempt, if this Contract is valued at $100,000 or more and requires approval by an elected **CITY** office, **CONTRACTOR**, **CONTRACTOR'S** principals, and **CONTRACTOR'S** Subcontractors expected to receive at least $100,000 for performance under the Contract, and the principals of those Subcontractors (the "Restricted Persons")

shall comply with Charter Section 470(c)(12) and LAMC Section 49.7.35. Failure to comply entitles **CITY** to terminate this Contract and to pursue all available legal remedies. Charter Section 470(c)(12) and LAMC Section 49.7.35 limit the ability of the Restricted Persons to make campaign contributions to and engage in fundraising for certain elected **CITY** officials or candidates for elected **CITY** office for twelve months after this Contract is signed. Additionally, a **CONTRACTOR** subject to Charter Section 470(c)(12) is required to comply with disclosure requirements by submitting a completed and signed Ethics Commission Form 55 and to amend the information in that form as specified by law. Any **CONTRACTOR** subject to Charter Section 470(c)(12) shall include the following notice in any contract with any Subcontractor expected to receive at least $100,000 for performance under this Contract:

> "Notice Regarding Restrictions on Campaign Contributions and Fundraising in City Elections
>
> You are a subcontractor on City of Los Angeles Contract # _____. Pursuant to the City of Los Angeles Charter Section 470(c)(12) and related ordinances, you and your principals are prohibited from making campaign contributions to and fundraising for certain elected City of Los Angeles ("**CITY**") officials and candidates for elected **CITY** office for twelve months after the **CITY** contract is signed. You are required to provide the names and contact information of your principals to the **CONTRACTOR** and to amend that information within ten business days if it changes during the twelve month time period. Failure to comply may result in termination of this Contract and any other available legal remedies. Information about the restrictions may be found online at ethics.lacity.org or by calling the Los Angeles City Ethics Commission at (213) 978-1960."

**PSC-38.**   Contractors' Use of Criminal History for Consideration of Employment Applications

**CONTRACTOR** shall comply with the City Contractors' Use of Criminal History for Consideration of Employment Applications Ordinance, LAAC Section 10.48 *et seq.*, as amended from time to time. Any subcontract entered into by **CONTRACTOR** for work to be performed under this Contract must include an identical provision.

**PSC-39.** Limitation of City's Obligation to Make Payment to Contractor

Notwithstanding any other provision of this Contract, including any exhibits or attachments incorporated therein, and in order for **CITY** to comply with its governing legal requirements, **CITY** shall have no obligation to make any payments to **CONTRACTOR** unless **CITY** shall have first made an appropriation of funds equal to or in excess of its obligation to make any payments as provided in this Contract. **CONTRACTOR** agrees that any services provided by **CONTRACTOR**, purchases made by **CONTRACTOR** or expenses incurred by **CONTRACTOR** in excess of the appropriation(s) shall be free and without charge to **CITY** and **CITY** shall have no obligation to pay for the services, purchases or expenses. **CONTRACTOR** shall have no obligation to provide any services,

provide any equipment or incur any expenses in excess of the appropriated amount(s) until **CITY** appropriates additional funds for this Contract.

**PSC-40.**   Compliance with Identity Theft Laws and Payment Card Data Security Standards

**CONTRACTOR** shall comply with all identity theft laws including without limitation, laws related to: (1) payment devices; (2) credit and debit card fraud; and (3) the Fair and Accurate Credit Transactions Act ("FACTA"), including its requirement relating to the content of transaction receipts provided to Customers. **CONTRACTOR** also shall comply with all requirements related to maintaining compliance with Payment Card Industry Data Security Standards ("PCI DSS"). During the performance of any service to install, program or update payment devices equipped to conduct credit or debit card transactions, including PCI DSS services, **CONTRACTOR** shall verify proper truncation of receipts in compliance with FACTA.

**PSC-41.** Compliance with California Public Resources Code Section 5164

California Public Resources Code Section 5164 prohibits a public agency from hiring a person for employment or as a volunteer to perform services at any park, playground, or community center used for recreational purposes in a position that has supervisory or disciplinary authority over any minor, if the person has been convicted of certain crimes as referenced in the Penal Code, and articulated in California Public Resources Code Section 5164(a)(2).

If applicable, **CONTRACTOR** shall comply with California Public Resources Code Section 5164, and shall additionally adhere to all rules and regulations that have been adopted or that may be adopted by **CITY**. **CONTRACTOR** is required to have all employees, volunteers and Subcontractors (including all employees and volunteers of any Subcontractor) of **CONTRACTOR** working on premises to pass a fingerprint and background check through the California Department of Justice at **CONTRACTOR'S** sole expense, indicating that such individuals have never been convicted of certain crimes as referenced in the Penal Code and articulated in California Public Resources Code Section 5164(a)(2), if the individual will have supervisory or disciplinary authority over any minor.

**PSC-42.** Possessory Interests Tax

Rights granted to **CONTRACTOR** by **CITY** may create a possessory interest. **CONTRACTOR** agrees that any possessory interest created may be subject to California Revenue and Taxation Code Section 107.6 and a property tax may be levied on that possessory interest. If applicable, **CONTRACTOR** shall pay the property tax. **CONTRACTOR** acknowledges that the notice required under California Revenue and Taxation Code Section 107.6 has been provided.

**PSC-43.** Confidentiality

All documents, information and materials provided to **CONTRACTOR** by **CITY** or developed by **CONTRACTOR** pursuant to this Contract (collectively "Confidential Information") are confidential. **CONTRACTOR** shall not provide or disclose any Confidential Information or their contents or any information therein, either orally or in writing, to any person or entity, except as authorized by **CITY** or as required by law. **CONTRACTOR** shall immediately notify **CITY** of any attempt by a third party to obtain access to any Confidential Information. This provision will survive expiration or termination of this Contract.

**PSC-44.** Contractor Data Reporting

If Contractor is a for-profit, privately owned business, Contractor shall, within 30 days of the effective date of the Contract and on an annual basis thereafter (i.e., within 30 days of the annual anniversary of the effective date of the Contract), report the following information to City via the Regional Alliance Marketplace for Procurement ("RAMP") or via another method specified by City: Contractor's and any Subcontractor's annual revenue, number of employees, location, industry, race/ethnicity and gender of majority owner ("Contractor/Subcontractor Information"). Contractor shall further request, on an annual basis, that any Subcontractor input or update its business profile, including the Contractor/Subcontractor Information, on RAMP or via another method prescribed by City.

Form Gen. 133 (Rev.10/17)

<u>EXHIBIT 1</u>

INSURANCE CONTRACTUAL REQUIREMENTS

<u>CONTACT</u>  For additional information about compliance with City Insurance and Bond requirements, contact the Office of the City Administrative Officer, Risk Management at (213) 978-RISK (7475) or go online at <u>www.lacity.org/cao/risk</u>. The City approved Bond Assistance Program is available for those contractors who are unable to obtain the City-required performance bonds. A City approved insurance program may be available as a low cost alternative for contractors who are unable to obtain City-required insurance.

CONTRACTUAL REQUIREMENTS

CONTRACTOR AGREES THAT:

1.  **Additional Insured/Loss Payee.** The CITY must be included as an Additional Insured in applicable liability policies to cover the CITY'S liability arising out of the acts or omissions of the named insured. The CITY is to be named as an Additional Named Insured and a Loss Payee As Its Interests May Appear in property insurance in which the CITY has an interest, e.g., as a lien holder.

2.  **Notice of Cancellation.** All required insurance will be maintained in full force for the duration of its business with the CITY. By ordinance, all required insurance must provide at least thirty (30) days' prior written notice (ten (10) days for non-payment of premium) directly to the CITY if your insurance company elects to cancel or materially reduce coverage or limits prior to the policy expiration date, for any reason except impairment of an aggregate limit due to prior claims.

3.  **Primary Coverage.** CONTRACTOR will provide coverage that is primary with respect to any insurance or self-insurance of the CITY. The CITY'S program shall be excess of this insurance and non-contributing.

4.  **Modification of Coverage.** The CITY reserves the right at any time during the term of this Contract to change the amounts and types of insurance required hereunder by giving CONTRACTOR ninety (90) days' advance written notice of such change. If such change should result in substantial additional cost to CONTRACTOR, the CITY agrees to negotiate additional compensation proportional to the increased benefit to the CITY.

5.  **Failure to Procure Insurance.** All required insurance must be submitted and approved by the Office of the City Administrative Officer, Risk Management prior to the inception of any operations by CONTRACTOR.

CONTRACTOR'S failure to procure or maintain required insurance or a self-insurance program during the entire term of this Contract shall constitute a material breach of this Contract under which the CITY may immediately suspend or terminate this Contract or, at its discretion, procure or renew such insurance to protect the CITY'S interests and pay any and all premiums in connection therewith and recover all monies so paid from CONTRACTOR.

6.  **Workers' Compensation.** By signing this Contract, CONTRACTOR hereby certifies that it is aware of the provisions of Section 3700 *et seq.*, of the California Labor Code which require every employer to be insured against liability for Workers' Compensation or to undertake

Form Gen. 133 (Rev. 10/17)

self-insurance in accordance with the provisions of that Code, and that it will comply with such provisions at all time during the performance of the work pursuant to this Contract.

**7. California Licensee.** All insurance must be provided by an insurer <u>admitted</u> to do business in California or written through a California-licensed surplus lines broker or through an insurer otherwise acceptable to the CITY. Non-admitted coverage must contain a **Service of Suit** clause in which the underwriters agree to submit as necessary to the jurisdiction of a California court in the event of a coverage dispute. Service of process for this purpose must be allowed upon an agent in California designated by the insurer or upon the California Insurance Commissioner.

**8. Aggregate Limits/Impairment.** If any of the required insurance coverages contain annual aggregate limits, CONTRACTOR must give the CITY written notice of any pending claim or lawsuit which will materially diminish the aggregate within thirty (30) days of knowledge of same. You must take appropriate steps to restore the impaired aggregates or provide replacement insurance protection within thirty (30) days of knowledge of same. The CITY has the option to specify the minimum acceptable aggregate limit for each line of coverage required. No substantial reductions in scope of coverage which may affect the CITY'S protection are allowed without the CITY'S prior written consent.

**9. Commencement of Work.** For purposes of insurance coverage only, this Contract will be deemed to have been executed immediately upon any party hereto taking any steps that can be considered to be in furtherance of or towards performance of this Contract. The requirements in this Section supersede all other sections and provisions of this Contract, including, but not limited to, PSC-3, to the extent that any other section or provision conflicts with or impairs the provisions of this Section.

## Required Insurance and Minimum Limits

Name: _____    Date: _____

Agreement/Reference: _____

Evidence of coverages checked below, with the specified minimum limits, must be submitted and approved prior to occupancy/start of operations. Amounts shown are Combined Single Limits ("CSLs"). For Automobile Liability, split limits may be substituted for a CSL if the total per occurrence equals or exceeds the CSL amount.

Limits

____ Workers' Compensation (WC) and Employer's Liability (EL)

WC    *Statutory*

EL    _____

☐ Waiver of Subrogation in favor of City            ☐ Longshore & Harbor Workers
☐ Jones Act

____ General Liability _____            _____

☐ Products/Completed Operations            ☐ Sexual Misconduct _____
☐ Fire Legal Liability _____
☐

____ Automobile Liability (for any and all vehicles used for this contract, other than commuting to/from work)            _____

____ Professional Liability (Errors and Omissions)            _____

Discovery Period _____

____ Property Insurance (to cover replacement cost of building - as determined by insurance company)            _____

☐ All Risk Coverage            ☐ Boiler and Machinery
☐ Flood            ☐ Builder's Risk
☐ Earthquake _____            ☐ _____

____ Pollution Liability            _____

☐ _____

____ Surety Bonds - Performance and Payment (Labor and Materials) Bonds            _____
____ Crime Insurance

Other: _____            _____
_____            _____
_____            _____
_____            _____

EXHIBIT B

Hourly Rates for Outside Counsel

A.    The specific hourly rates for each authorized timekeeper shall not exceed the following:

| Authorized Timekeeper | Title | Hourly Rate 2025 and 2026 |
|---|---|---|
| Brad D. Brian | Partner | $1,975 |
| Henry Weissmann | Partner | $1,950 |
| Dan Levin | Partner | $1,800 |
| Lisa Demsky | Partner | $1,730 |
| Craig Lavoie | Partner | $1,580 |
| Nick Fram | Partner | $1,580 |
| Wes Burrell | Partner | $1,580 |

B.    The hourly rate for each timekeeper category shall not exceed the following:

| Title | Hourly Rate 2025 and 2026 |
|---|---|
| Partners (other than Brad Brian and Henry Weissmann) | $1,800 |
| Associate (7th year and above) | $1,180 |
| Associate (6th year) | $1,130 |
| Associate (5th year) | $1,080 |
| Associate (4th year) | $995 |
| Associate (3rd year) | $895 |
| Associate (2nd year) | $820 |
| Associate (1st year) | $745 |
| Litigation Support/E-Discovery | $670 |
| Paralegal | $570 |
| Case Clerk | $165 |

# EXHIBIT 2

**Toni Jaramilla, APLC**

Invoice submitted to:
Mickel Lewis, Jr. Clients

| | |
|---|---|
| Invoice # | N/A |
| Invoice Date | 04/24/2025 |
| For Services Through | 04/24/2025 |

| Date | By | Service Summary | Hours/Rate | Amount |
|---|---|---|---|---|

In Reference To: **Mickel Lewis, Jr. et al. v. Kern County et al. (Labor)**

| Date | By | Service Summary | Hours/Rate | Amount |
|---|---|---|---|---|
| 10/02/2020 | 3105513020 | Speak with mother of clients to represent regarding GAL for Briona. Discuss facts | 1.50 | $1,687.50 |
| 10/05/2020 | 3105513020 | Meet with JBA to discuss new case (1.0) | 1.00 | $1,125.00 |
| 10/06/2020 | 3105513020 | Begin draft of complaint (2.0); research (.75 | 2.75 | $3,093.75 |
| 10/06/2020 | 3105513020 | Strategize (.6); review videos (.8) additional revisions (2.2) | 3.60 | $4,050.00 |
| 10/06/2020 | 3105513020 | Discussion with Mickel re dad's property. | 0.50 | $562.50 |
| 10/07/2020 | 3105513020 | Discussions re own pathologist (.4); discussions with Mickel re autopsy (.75); call to mortuary (.3) | 1.45 | $1,631.25 |
| 10/08/2020 | 3105513020 | Research local businesses to obtain video (.75); calls to local businesses; discussions with Briona re: manager to get video (.75) | 1.50 | $1,687.50 |
| 10/09/2020 | 3105513020 | Draft statement for family and to press, re: shooting of unarmed Black man (.75); discussions with community activists (.75); call with family/clients (1.0) | 2.50 | $2,812.50 |
| 10/10/2020 | 3105513020 | Travel to Mojave to visit scene; assist clients at BLM demonstration at sheriff dept (1.5); Video sheriff's intimidating clients, circling area as visit scene of shooting; meeting with siblings | 8.50 | $9,562.50 |
| 10/11/2020 | 3105513020 | discussion with clients re: harassing incident (1.0); Review photos re: sheriffs harassing clients (.5) | 1.50 | $1,687.50 |
| 10/12/2020 | 3105513020 | Review research on penal code re: seizure of contents of vehicle without warrant | 0.50 | $562.50 |
| 10/12/2020 | 3105513020 | Review research on penal code re: seizure of contents of vehicle without warrant | 0.50 | $562.50 |
| 10/13/2020 | 3105513020 | Discussion re pathologist; decide on using private pathologist | 0.80 | $900.00 |
| 10/14/2020 | 3105513020 | discussions with co-counsel on pathologists (.5); review documents (.5); calls to colleagues re: pathologist (.5) | 1.50 | $1,687.50 |
| 10/14/2020 | 3105513020 | Research expert pathologist; options; discussions with colleagues | 1.20 | $1,350.00 |
| 10/16/2020 | 3105513020 | Review autopsy | 0.75 | $843.75 |
| 10/19/2020 | 3105513020 | Further review of autopsy; discussion on possible ballistic/trajectory expert; | 1.90 | $2,137.50 |
| 10/20/2020 | 3105513020 | Discussion re: number of gunshot wounds | 0.50 | $562.50 |
| 10/26/2020 | 3105513020 | Phone conference with pathologist and co-counsel (.5); discussion with clients (.75) | 1.25 | $1,406.25 |
| 10/28/2020 | 3105513020 | begin draft of tort claim | 1.00 | $1,125.00 |
| 11/02/2020 | 3105513020 | message to all clients (.25) | 0.25 | $281.25 |
| 11/04/2020 | 3105513020 | Discussion with co-counsel re: retainers to additional siblings, possibly another set of kids (.3); Prepare conflict of interest waives (.5) | 0.80 | $900.00 |
| 11/17/2020 | 3105513020 | Discussion re SOL, filing deadlines | 0.40 | $450.00 |
| 11/18/2020 | 3105513020 | Phone messages to Haro, mother of other siblings | 0.25 | $281.25 |
| 11/19/2020 | 3105513020 | Edit and revise tort claim (.5); review video (.5) | 1.00 | $1,125.00 |
| 11/19/2020 | 3105513020 | Discussion with clients re: video in public (.5) ; discussion with JBA re; video and Galipo retained by other siblings (.2); strategize on coordinated efforts (. 50 | 1.20 | $1,350.00 |
| 12/09/2020 | 3105513020 | Phone conference with Galipo; call with JBA | 0.40 | $450.00 |
| 01/05/2021 | 3105513020 | Review/edit joint prosecution agreement | 0.50 | $562.50 |

Case 1:21-cv-00378-KES-CDB   Document 17   Filed 04/25/25   Page 81 of 89

| Date | Matter | Description | Hours | Amount |
|---|---|---|---|---|
| 01/05/2021 | 3105513020 | Research wrongful death damages; survival damages | 2.20 | $2,475.00 |
| 02/05/2021 | 3105513020 | Review coroner's report | 0.50 | $562.50 |
| 02/17/2021 | 3105513020 | Draft Complaint 1.0; discussion with clients (.5); finalize 1.75 | 3.25 | $3,656.25 |
| 03/04/2021 | 3105513020 | strategy discussion with co-counsel; | 1.00 | $1,125.00 |
| 03/04/2021 | 3105513020 | draft/revise GAL (.75) research on GAL (.5); discussion with Briona's mom (.75) | 2.00 | $2,250.00 |
| 03/08/2021 | 3105513020 | discussion with Najee re: case/media (.5); discussions with client (.75) | 1.25 | $1,406.25 |
| 03/09/2021 | 3105513020 | Review latest draft complaint | 0.75 | $843.75 |
| 03/11/2021 | 3105513020 | work up case; follow up re complaint and service | 0.90 | $1,012.50 |
| 03/12/2021 | 3105513020 | Review of video (.4); discussions (.5) public response (.5); discussion with clients (.50) | 1.90 | $2,137.50 |
| 03/16/2021 | 3105513020 | Research similar cases; articles re: 4th Amendment; | 1.50 | $1,687.50 |
| 03/16/2021 | 3105513020 | Discussion with clients (.5) get photos for distribution; .4 | 0.90 | $1,012.50 |
| 03/17/2021 | 3105513020 | Review of bias video issued by Kern; discussion re: same | 1.20 | $1,350.00 |
| 03/18/2021 | 3105513020 | Prepare clients (1.0); prepare statement to press; meet with clients to discuss case filing (1.2); News conference (1.0) review revisions to complaint (.5) | 3.70 | $4,162.50 |
| 03/19/2021 | 3105513020 | Review and input on FAC | 1.00 | $1,125.00 |
| 03/26/2021 | 3105513020 | Review notice of sub service | 0.10 | $112.50 |
| 03/29/2021 | 3105513020 | Research QI issues | 1.00 | $1,125.00 |
| 04/07/2021 | 3105513020 | Review various emails to Galipo | 0.25 | $281.25 |
| 04/12/2021 | 3105513020 | Email to Galipo | 0.20 | $225.00 |
| 04/14/2021 | 3105513020 | Discussion re: Bain Act (.75, remedies; research (.75) | 1.50 | $1,687.50 |
| 04/15/2021 | 3105513020 | Review Answer to FAC | 0.60 | $675.00 |
| 04/20/2021 | 3105513020 | Call with defense | 0.20 | $225.00 |
| 04/22/2021 | 3105513020 | Prepare for Early Meeting of counsel (1.0) attend conference (.6); review worksheet (.4) | 2.00 | $2,250.00 |
| 04/30/2021 | 3105513020 | Meeting with clients | 0.50 | $562.50 |
| 05/07/2021 | 3105513020 | Review article re harassment of victim's family by LA Sheriffs. | 0.50 | $562.50 |
| 05/07/2021 | 3105513020 | Discussion with clients re: experience with Kern deputies flashing lights and waving at them mockingly. | 0.75 | $843.75 |
| 05/24/2021 | 3105513020 | Review JBA's edits, provide input on Stipulated Protective Order | 0.50 | $562.50 |
| 05/24/2021 | 3105513020 | Email exchange re joint report (.3) review email to OC (.1) | 0.40 | $450.00 |
| 06/01/2021 | 3105513020 | Discussion and email exchange re: Joint Report (.2) ; Call re: disclosures (.5) | 0.70 | $787.50 |
| 06/02/2021 | 3105513020 | Review documents re witnesses (.5); discussion on privilege log (.4) | 0.90 | $1,012.50 |
| 06/02/2021 | 3105513020 | Discussion re privilege log *.4) | 0.40 | $450.00 |
| 06/04/2021 | 3105513020 | Review exchange of documents; stipulated order, Prepare for intent to appear | 0.50 | $562.50 |
| 06/07/2021 | 3105513020 | Review defendant's initial disclosure | 0.40 | $450.00 |
| 06/11/2021 | 3105513020 | Research Monell issue | 1.20 | $1,350.00 |
| 06/14/2021 | 3105513020 | Review meet and confer re protective order (.2) discussion re burial expenses (.4) | 0.60 | $675.00 |
| 06/15/2021 | 3105513020 | prep for meet and confer(.4) and attend meet and confer re: protective order , discussion with JBA re: issues (.2) | 0.60 | $675.00 |
| 06/17/2021 | 3105513020 | Review email from OC re: changes to protective order | 0.20 | $225.00 |
| 06/18/2021 | 3105513020 | Review email re: stip | 0.10 | $112.50 |
| 06/28/2021 | 3105513020 | Review email re: stip | 0.30 | $337.50 |
| 07/15/2021 | 3105513020 | Review investigative report (1.2); review incident video (.3); review legal research (.5) | 2.00 | $2,250.00 |
| 07/15/2021 | 3105513020 | Continue review of investigative report (4.5) Discuss with JBA (.4) | 4.90 | $5,512.50 |
| 07/21/2021 | 3105513020 | Review RFP draft (.80) discuss with JBA re: RFP (.2) | 1.00 | $1,125.00 |
| 07/30/2021 | 3105513020 | Review preliminary research re: probable cause | 1.50 | $1,687.50 |
| 08/02/2021 | 3105513020 | Provide input on discovery | 0.75 | $843.75 |
| 08/02/2021 | 3105513020 | Review email exchange re discovery | 0.30 | $337.50 |
| 08/04/2021 | 3105513020 | discussion re discovery needed | 0.50 | $562.50 |
| 09/07/2021 | 3105513020 | Email re Galipo's case | 0.10 | $112.50 |
| 10/05/2021 | 3105513020 | Discussion re confidential informant (.5); discussion with MK re: confidential informant .5 | 1.00 | $1,125.00 |

Case 1:21-cv-00378-KES-CDB   Document 175   Filed 04/25/25   Page 82 of 89

| Date | Code | Description | Hours | Amount |
|------|------|-------------|-------|--------|
| 10/07/2021 | 3105513020 | Meeting with JBA re autopsy report and discovery responses | | $900.00 |
| 10/08/2021 | 3105513020 | Email to SL. | 0.08 | $90.00 |
| 10/26/2021 | 3105513020 | Meeting with JBA re meet and confer on with held discovery (.2) ; email BK re: issues (.1) | 0.30 | $337.50 |
| 10/28/2021 | 3105513020 | Rev'd and resp to email from SL. | 0.08 | $90.00 |
| 10/28/2021 | 3105513020 | Rev'd and resp to email from SL. | 0.08 | $90.00 |
| 10/28/2021 | 3105513020 | discussion with team re: issues with discovery, MTC deadline | 0.50 | $562.50 |
| 11/01/2021 | 3105513020 | Review email and respond to Ranhee Lee (Galipo case) questions. Joint litigation strategy. | 0.50 | $562.50 |
| 11/01/2021 | 3105513020 | Review email re: Galipo and response | 0.50 | $562.50 |
| 11/04/2021 | 3105513020 | Email re MTC deadline (.1) discussion re: discovery and MTC (.5) | 0.60 | $675.00 |
| 11/11/2021 | 3105513020 | Review discovery, provide instructions. | 0.75 | $843.75 |
| 11/23/2021 | 3105513020 | Email exchanges re MTC | 0.40 | $450.00 |
| 11/29/2021 | 3105513020 | Email exchange with team re videos and photos | 0.20 | $225.00 |
| 11/30/2021 | 3105513020 | Email exchange re Galipo case | 0.25 | $281.25 |
| 12/07/2021 | 3105513020 | Email exchange with BK re discovery responses | 0.20 | $225.00 |
| 12/08/2021 | 3105513020 | Email exchange with BK re discovery responses | 0.20 | $225.00 |
| 12/08/2021 | 3105513020 | Discussion with team re discovery responses | 0.50 | $562.50 |
| 12/09/2021 | 3105513020 | Discussion with clients re discovery responses- Mickel (.5); Oriana (.6) Briona (.75) | 1.85 | $2,081.25 |
| 12/13/2021 | 3105513020 | Discussion wtih JBA (.1) call with Galipo re: scheduling conference order (.3) | 0.40 | $450.00 |
| 12/17/2021 | 3105513020 | Review and input on scheduling conference report (.75); review protective order (.25) | 1.00 | $1,125.00 |
| 12/27/2021 | 3105513020 | Discussion with team re; discovery responses. | 1.00 | $1,125.00 |
| 12/27/2021 | 3105513020 | email exchange re: discovery responses and scheduling conference | 0.25 | $281.25 |
| 12/28/2021 | 3105513020 | Discussion re: MTC with co-counsel and upcoming hearing. | 0.30 | $337.50 |
| 12/30/2021 | 3105513020 | Review homicide report | 1.75 | $1,968.75 |
| 01/05/2022 | 3105513020 | Continue review report (.5); review various photos (.5) listen to audio (.75) | 1.75 | $1,968.75 |
| 01/06/2022 | 3105513020 | Review email exchanges re written discovery and depositions | 0.20 | $225.00 |
| 01/06/2022 | 3105513020 | Review email exchanges with Ranhee (Galipo) and BK | 0.30 | $337.50 |
| 01/10/2022 | 3105513020 | Rev'd and resp to email from SL. | 0.08 | $90.00 |
| 01/10/2022 | 3105513020 | Rev'd and resp to email from MM | 0.08 | $90.00 |
| 01/10/2022 | 3105513020 | tcw SL re clients' responses due to discovery. | 0.33 | $371.25 |
| 01/10/2022 | 3105513020 | Discussion re discovery responses (.5); discussion with clients re discovery (.75) | 1.25 | $1,406.25 |
| 01/10/2022 | 3105513020 | Review draft discovery responses | 0.75 | $843.75 |
| 01/11/2022 | 3105513020 | tcw SL. | 0.25 | $281.25 |
| 01/21/2022 | 3105513020 | Rev'd and resp to email from SP. | 0.08 | $90.00 |
| 01/24/2022 | 3105513020 | Rev'd and revised clients' resp. to County's RFP (1). | 1.00 | $1,125.00 |
| 01/24/2022 | 3105513020 | Email to SP. | 0.08 | $90.00 |
| 01/24/2022 | 3105513020 | discussion with team re discovery and joint stip re MTC | 0.60 | $675.00 |
| 01/25/2022 | 3105513020 | Rev'd and revised clients' resp to spec rogs. | 1.00 | $1,125.00 |
| 01/25/2022 | 3105513020 | Email to SP | 0.08 | $90.00 |
| 01/25/2022 | 3105513020 | Email to SP. | 0.08 | $90.00 |
| 01/25/2022 | 3105513020 | Discuss case with SP | 1.20 | $1,350.00 |
| 01/26/2022 | 3105513020 | Email to SL. | 0.08 | $90.00 |
| 01/26/2022 | 3105513020 | Email exchanges re discovery and obtaining verifications | 0.40 | $450.00 |
| 01/26/2022 | 3105513020 | Review standing order (.4), review discovery (.75) and discussion with client (.75) | 1.90 | $2,137.50 |
| 01/26/2022 | 3105513020 | Email exchange re discovery | 0.25 | $281.25 |
| 02/03/2022 | 3105513020 | Review reassignment to Judge Drodz- discussion re new judge | 0.50 | $562.50 |
| 02/07/2022 | 3105513020 | Email to SL. | 0.08 | $90.00 |
| 02/09/2022 | 3105513020 | Email re: upcoming court appearance | 0.20 | $225.00 |
| 02/09/2022 | 3105513020 | Review reassignment to Judge Drodz- discussion re new judge | 0.50 | $562.50 |
| 02/11/2022 | 3105513020 | review protective order ruling (.2); email BK re: same .1 | 0.30 | $337.50 |
| 02/15/2022 | 3105513020 | provide input on amended stipulation (.4) discuss with JBA (.1) | 0.50 | $562.50 |
| 02/16/2022 | 3105513020 | Email to SL. | 0.08 | $90.00 |
| 02/16/2022 | 3105513020 | Review and discuss court ruling on MTC | 0.50 | $562.50 |

| Date | Matter | Description | Hours | Amount |
|---|---|---|---|---|
| 02/17/2022 | 3105513020 | Review depo notice (.5) | | $112.50 |
| 02/24/2022 | 3105513020 | Discussion with SP re: case for project work | 1.20 | $1,350.00 |
| 03/01/2022 | 3105513020 | Review documents re: Ayala | 1.20 | $1,350.00 |
| 03/02/2022 | 3105513020 | review magistrate order re: mid-discovery conference (.1); discussion re same (.4) | 0.50 | $562.50 |
| 04/07/2022 | 3105513020 | discussion re Ayala depo (.4), review calendar (.2) | 0.50 | $562.50 |
| 04/12/2022 | 3105513020 | review supplemental responses from Kern | 0.50 | $562.50 |
| 04/12/2022 | 3105513020 | Discussion with SP re case and status of projects on matter | 0.75 | $843.75 |
| 04/14/2022 | 3105513020 | Discussion with clients re upcoming depo of Ayala | 0.50 | $562.50 |
| 04/15/2022 | 3105513020 | email re upcoming depo of Ayala | 0.20 | $225.00 |
| 04/19/2022 | 3105513020 | Discussion re: deposition of Ayala, provide input, review documents for prep | 2.20 | $2,475.00 |
| 04/22/2022 | 3105513020 | Review discovery responses, documents/video | 1.20 | $1,350.00 |
| 05/05/2022 | 3105513020 | Discussion re RFPs (.75), review supplemental productions (1.0) | 1.75 | $1,968.75 |
| 05/23/2022 | 3105513020 | Discussion with JBA re settlement conference | 0.30 | $337.50 |
| 05/23/2022 | 3105513020 | Email exchange re settlement conference | 0.10 | $112.50 |
| 06/02/2022 | 3105513020 | Strategize | 0.50 | $562.50 |
| 06/02/2022 | 3105513020 | Email re witnesses | 0.10 | $112.50 |
| 06/02/2022 | 3105513020 | Discussion with Marlyn K. | 0.75 | $843.75 |
| 06/02/2022 | 3105513020 | Review stip re: scheduling | 0.25 | $281.25 |
| 06/03/2022 | 3105513020 | Discussion with client (Mickel) re: witness | 0.50 | $562.50 |
| 06/15/2022 | 3105513020 | Strategize on upcoming depo (.2) discussion re: supplemental responses (.75) | 0.85 | $956.25 |
| 06/15/2022 | 3105513020 | Strategize re Ayala depo, provide input | 1.20 | $1,350.00 |
| 06/17/2022 | 3105513020 | Prep call with Galipo re: Ayala depo | 1.00 | $1,125.00 |
| 06/17/2022 | 3105513020 | Deposition of Ayala (3.5) ; post call (.3) | 3.80 | $4,275.00 |
| 06/17/2022 | 3105513020 | Discussion with legal team re depo | 0.50 | $562.50 |
| 06/17/2022 | 3105513020 | Discussion with clients | 0.75 | $843.75 |
| 07/05/2022 | 3105513020 | Email exchange re depo | 0.20 | $225.00 |
| 07/22/2022 | 3105513020 | Review email re: Ayala transcripts | 0.10 | $112.50 |
| 08/02/2022 | 3105513020 | Discussion with Mickel re depo of Marylyn K (decedent's girlfriend) | 0.50 | $562.50 |
| 08/03/2022 | 3105513020 | Phone message to Marlyn | 0.20 | $225.00 |
| 08/05/2022 | 3105513020 | Discussion with witness, MK | 1.20 | $1,350.00 |
| 08/12/2022 | 3105513020 | Discussion with JBA re: representing witness | 0.20 | $225.00 |
| 08/13/2022 | 3105513020 | Review witness recorded statement and written statement (Jessica, Destiny, Jessica) | 1.50 | $1,687.50 |
| 08/13/2022 | 3105513020 | Prepare witnesses for depo (Jessica, Destiny, Marlyn) | 3.20 | $3,600.00 |
| 08/15/2022 | 3105513020 | Deposition of Marlyn Komenus | 2.50 | $2,812.50 |
| 08/15/2022 | 3105513020 | Deposition of Destiny Salcedo. | 1.00 | $1,125.00 |
| 08/15/2022 | 3105513020 | Deposition of Jessica salcedo | 1.20 | $1,350.00 |
| 08/15/2022 | 3105513020 | Attend deposition of Jeremy Terletter | 1.30 | $1,462.50 |
| 08/15/2022 | 3105513020 | Strategizing re depos | 0.75 | $843.75 |
| 08/19/2022 | 3105513020 | attend depo of Montoya (1.5) and Castellanos (.6) | 2.10 | $2,362.50 |
| 08/20/2022 | 3105513020 | Prep clients for Depo: ML (1.0) BL (1.0) OL (1.0) | 3.00 | $3,375.00 |
| 08/22/2022 | 3105513020 | Email re depo link and docs; | 0.20 | $225.00 |
| 08/22/2022 | 3105513020 | Depositions ML (3.0); OL (1.0) BL (1.0); Discussions with clients after (.75) | 5.75 | $6,468.75 |
| 08/25/2022 | 3105513020 | Review new assignment to judge | 0.20 | $225.00 |
| 08/29/2022 | 3105513020 | Review subpoena (.3); draft meet and confer (.50) | 0.80 | $900.00 |
| 08/29/2022 | 3105513020 | Letter to Kathleen re: subpoena | 0.50 | $562.50 |
| 08/31/2022 | 3105513020 | Discussion with Kathleen re: subpoena | 0.40 | $450.00 |
| 08/31/2022 | 3105513020 | Discussion and email with team re initial disclosures and discovery cut-off | 0.50 | $562.50 |
| 08/31/2022 | 3105513020 | Discussion re additional witnesses | 0.40 | $450.00 |
| 08/31/2022 | 3105513020 | Review email re: subpoena (.2) strategy on production. (.5) | 0.70 | $787.50 |
| 09/06/2022 | 3105513020 | email exchanges and discussion re: upcoming depos | 0.40 | $450.00 |
| 09/06/2022 | 3105513020 | Strategize and input on expert- animation of ballistic | 0.75 | $843.75 |
| 09/08/2022 | 3105513020 | Review county's discovery responses | 0.75 | $843.75 |
| 09/08/2022 | 3105513020 | Review summary of deposition AW | 0.30 | $337.50 |
| 09/09/2022 | 3105513020 | Deposition of Roberta Haro | 3.00 | $3,375.00 |

| Date | Code | Description | Hours | Amount |
|---|---|---|---|---|
| 09/13/2022 | NS | Joined virtual meeting with Toni for expert witness on case specifically for bio-mechanical and ballistics experts | 0.75 | $175.50 |
| 09/13/2022 | NS | Toni told me that we will be getting expert witness (ballistic expert) and therefore we will need to gather important documents such as autopsy reports to send | 0.08 | $52.00 |
| 09/13/2022 | 3105513020 | Strategize/discuss with team re: experts (75); prepare responses to animation expert's request re; case (.50) | 1.25 | $1,406.25 |
| 09/13/2022 | 3105513020 | Review notes re: depositions of Galipo clients | 0.75 | $843.75 |
| 09/15/2022 | 3105513020 | Strategize re graphic expert, discuss docs to provide expert | 0.75 | $843.75 |
| 09/28/2022 | 3105513020 | Discussion re: expert cut off (.2); email response re: extension of cut-off (.2) | 0.40 | $450.00 |
| 10/05/2022 | 3105513020 | Coordinate signatures to deposition transcripts from all 3 plaintiffs. | 0.50 | $562.50 |
| 10/10/2022 | 3105513020 | Discussions with clients (.50) Email that plaintiffs signed depo without changes (.1) | 0.60 | $675.00 |
| 10/17/2022 | 3105513020 | Review autopsy to prep with call with biomechanic engineer (.2); discussion with biomechanic engineer (.4) | 0.70 | $787.50 |
| 10/17/2022 | 3105513020 | email re expert disclosure | 0.10 | $112.50 |
| 10/19/2022 | 3105513020 | discussion re pathology report | 0.50 | $562.50 |
| 10/21/2022 | 3105513020 | Review email exchanges re: experts | 0.40 | $450.00 |
| 10/25/2022 | 3105513020 | Numerous email exchanges re expert disclosures, preparing joint designation | 0.50 | $562.50 |
| 10/26/2022 | 3105513020 | Strategize re expert, graphic animation (.5), review documents for expert (.75) email exchanges (.2) | 1.45 | $1,631.25 |
| 10/26/2022 | 3105513020 | Emails re: subpoenas | 0.20 | $225.00 |
| 10/26/2022 | 3105513020 | Review and provide input on subpoenas of med and employment records | 0.40 | $450.00 |
| 11/01/2022 | 3105513020 | Review email exchanges re expert depo, unavailability and objections to subpoenas | 0.40 | $450.00 |
| 11/03/2022 | 3105513020 | Review Dr. Levine report | 0.30 | $337.50 |
| 11/09/2022 | 3105513020 | Review Order, schedule and cut-offs to ensure meeting deadlines. Email team re same | 0.75 | $843.75 |
| 11/11/2022 | 3105513020 | Email re Sheridan depo | 0.10 | $112.50 |
| 11/15/2022 | 3105513020 | Email exchange re animation/graphic expert (.2); discussion re same (.4) | 0.60 | $675.00 |
| 11/16/2022 | 3105513020 | Review Kern expert designation and consider rebuttal expert | 0.40 | $450.00 |
| 11/17/2022 | 3105513020 | Email exchanges with animator | 0.10 | $112.50 |
| 11/22/2022 | 3105513020 | Provide input re stipulation re expert discovery | 0.40 | $450.00 |
| 11/29/2022 | 3105513020 | Depo of Chapman (2.5) discussion re same (.3) | 2.80 | $3,150.00 |
| 11/30/2022 | 3105513020 | Review emails re depositions | 0.10 | $112.50 |
| 12/02/2022 | 3105513020 | Review of expert report (2.0) and strategy discussion (.4) | 2.40 | $2,700.00 |
| 12/05/2022 | 3105513020 | Deposition of Dr. Michael Levine (Defense expert -toxicologist) | 1.40 | $1,575.00 |
| 12/07/2022 | 3105513020 | Deposition of Defense Witness, Parris Ward (video analysis) | 1.50 | $1,687.50 |
| 12/14/2022 | 3105513020 | Discussion regarding animation and expert report. | 0.30 | $337.50 |
| 12/16/2022 | 3105513020 | Review animation report. | 0.75 | $843.75 |
| 12/16/2022 | 3105513020 | Email exchange with animator and co-counsel re animation. | 0.40 | $450.00 |
| 12/20/2022 | 3105513020 | Discussion re expert depo- Kuzel | 0.50 | $562.50 |
| 12/21/2022 | 3105513020 | Review Ayala deposition summary. | 0.75 | $843.75 |
| 12/28/2022 | 3105513020 | email re demonstrative v. expert | 0.20 | $225.00 |
| 01/03/2023 | 3105513020 | Discussion regarding expert depositions. | 0.30 | $337.50 |
| 01/04/2023 | 3105513020 | Meeting with JBA re expert depo prep (.2); assist in prep (.75) | 0.95 | $1,068.75 |
| 01/05/2023 | 3105513020 | Strategy call and discussion re animation retention and defense expert, Rocky Edwards | 0.70 | $787.50 |
| 01/06/2023 | 3105513020 | John Gardner depo | 2.00 | $2,250.00 |
| 01/09/2023 | 3105513020 | discussion re: de-designation of Hiserodt | 0.30 | $337.50 |
| 01/09/2023 | 3105513020 | Review various emails re mediation, | 0.20 | $225.00 |
| 01/11/2023 | 3105513020 | Review re-designation. | 0.50 | $562.50 |
| 01/17/2023 | 3105513020 | discussion re Kern Objections and Gardner as expert | 0.50 | $562.50 |
| 01/17/2023 | 3105513020 | Review objection to Gardiner report (.25). Draft memo re solution. (.25) | 0.50 | $562.50 |
| 01/25/2023 | 3105513020 | Strategy discussion re: waiving claims so no MSJ | 0.30 | $337.50 |
| 01/30/2023 | 3105513020 | Review email exchange re excluding expert | 0.20 | $225.00 |

| Date | Code | Description | Hours | Amount |
|------|------|-------------|-------|--------|
| 01/31/2023 | 3105513020 | Review appropriate expert, provide input | 1.75 | $450.00 |
| 02/01/2023 | 3105513020 | Email exchange re: MSJ | 0.10 | $112.50 |
| 02/08/2023 | 3105513020 | Email exchange re: meet & confer | 0.20 | $225.00 |
| 02/16/2023 | 3105513020 | Call with opposing counsel and co-counsel re: MSJ | 0.50 | $562.50 |
| 02/16/2023 | 3105513020 | Prepare for meet and confer re: MSJ | 0.75 | $843.75 |
| 02/16/2023 | 3105513020 | Discussion with co-counsel re strategy | 0.30 | $337.50 |
| 02/24/2023 | 3105513020 | Discussion re MSJ | 0.20 | $225.00 |
| 03/01/2023 | 3105513020 | Email re waiving MSJ (.2) and conference re IIED claim (.4) | 0.60 | $675.00 |
| 03/14/2023 | 3105513020 | Email re settlement conference | 0.20 | $225.00 |
| 04/27/2023 | 3105513020 | Discussion with RL re upcoming conference with court | 0.25 | $281.25 |
| 04/27/2023 | 3105513020 | Email exchange with opposing counsel re re-scheduling conference (.2); check schedule (.3) | 0.50 | $562.50 |
| 05/01/2023 | 3105513020 | Email exchange with RL re MSC date | 0.10 | $112.50 |
| 05/01/2023 | 3105513020 | Further email exchanges with RL re upcoming settlement conference | 0.25 | $281.25 |
| 05/01/2023 | 3105513020 | Strategize discussions re mediation conference and settlement presentation | 0.75 | $843.75 |
| 05/02/2023 | 3105513020 | Discussions with client re settlement position, damages | 1.20 | $1,350.00 |
| 05/03/2023 | 3105513020 | Email exchanges re upcoming settlement conference | 0.25 | $281.25 |
| 05/04/2023 | 3105513020 | Email from RL re availability of upcoming conference; review calendar for conflict | 0.25 | $281.25 |
| 05/04/2023 | 3105513020 | Review court order re Settlement Conference. | 0.30 | $337.50 |
| 05/05/2023 | 3105513020 | Review email from RL re conference date. | 0.20 | $225.00 |
| 05/08/2023 | 3105513020 | Review email from courtroom deputy re upcoming CMC | 0.30 | $337.50 |
| 05/09/2023 | 3105513020 | Review email exchanges re settlement conference | 0.20 | $225.00 |
| 05/10/2023 | 3105513020 | Discussion with co-counsel re mediation brief | 0.75 | $843.75 |
| 05/10/2023 | 3105513020 | Draft portions of the mediation brief. | 2.20 | $2,475.00 |
| 05/10/2023 | 3105513020 | email re settlement brief | 0.10 | $112.50 |
| 05/11/2023 | 3105513020 | Review deposition of Briona Lewis for mediation brief | 1.00 | $1,125.00 |
| 05/11/2023 | 3105513020 | Review deposition of Oriana Lewis for mediation brief | 1.20 | $1,350.00 |
| 05/11/2023 | 3105513020 | Review deposition of Mickel Lewis for mediation brief | 1.50 | $1,687.50 |
| 05/11/2023 | 3105513020 | Review deposition of Mickel Lewis for mediation brief. | 1.50 | $1,687.50 |
| 05/11/2023 | 3105513020 | Discussion with ML re damages, photos needed. | 0.75 | $843.75 |
| 05/11/2023 | 3105513020 | receive and review electronic filing. | 0.10 | $112.50 |
| 05/11/2023 | 3105513020 | Revisions to mediation brief. | 1.75 | $1,968.75 |
| 05/11/2023 | 3105513020 | Discussions with clients re additional photos (.25); review photos (.20) | 0.45 | $506.25 |
| 05/11/2023 | 3105513020 | Email exchange re photos and brief | 0.20 | $225.00 |
| 05/12/2023 | 3105513020 | Prepare clients and answer questions regarding upcoming settlement conference. | 2.40 | $2,700.00 |
| 05/15/2023 | 3105513020 | Prepare for pre-settlement conference and attend conference. | 0.80 | $900.00 |
| 05/19/2023 | 3105513020 | Settlement Phone conference - Prepare (1.2) and attend conference (3.0) | 4.20 | $4,725.00 |
| 06/14/2023 | 3105513020 | Email exchange with Esteva- MEA Forensic | 0.20 | $225.00 |
| 07/13/2023 | 3105513020 | Review minute order from court. | 0.20 | $225.00 |
| 07/27/2023 | 3105513020 | Discussion with Esteva re forensics | 0.20 | $225.00 |
| 07/27/2023 | 3105513020 | Discussion with co-counsel re pretrial conference | 0.20 | $225.00 |
| 08/14/2023 | 3105513020 | Discussion with Esteva re forensics | 0.50 | $562.50 |
| 09/11/2023 | 3105513020 | Review minute order re pretrial conference (.2) discussion re same (.5) | 0.70 | $787.50 |
| 09/14/2023 | 3105513020 | Discussion re summary of Jason Ayala. | 0.50 | $562.50 |
| 10/10/2023 | 3105513020 | email exchange re Pre Trial Conference | 0.30 | $337.50 |
| 10/12/2023 | 3105513020 | email exchange with RL | 0.25 | $281.25 |
| 10/16/2023 | 3105513020 | Review expert invoice and correspondence | 0.25 | $281.25 |
| 12/04/2023 | 3105513020 | Review Order by judge re reassignment | 0.20 | $225.00 |

Case 3:21-cv-00378-JES-DDL   Document 175   Filed 04/25/25   Page 86 of 89

| Date | Number | Description | Hours | Amount |
|---|---|---|---|---|
| 12/05/2023 | 3105513020 | Review material in qualified immunity | 0.20 | $1,125.00 |
| 01/04/2024 | 3105513020 | Review minute order re reassignment | 0.20 | $225.00 |
| 01/22/2024 | 3105513020 | Discussion with co-counsel re upcoming PTC. | 0.50 | $562.50 |
| 01/22/2024 | 3105513020 | discussion re trial and reassignment | 0.30 | $337.50 |
| 03/05/2024 | 3105513020 | email exchange with forensic expert | 0.20 | $225.00 |
| 03/14/2024 | 3105513020 | Review Order re reassignment to Judge Sherriff | 0.20 | $225.00 |
| 03/14/2024 | 3105513020 | Research for info on Judge Sherriff | 0.75 | $843.75 |
| 03/14/2024 | 3105513020 | Discussion re new judge | 0.50 | $562.50 |
| 03/21/2024 | 3105513020 | Review minute order re pretrial conference and joint status report | 0.20 | $225.00 |
| 04/01/2024 | 3105513020 | email to team re joint status report. | 0.25 | $281.25 |
| 04/01/2024 | 3105513020 | Review and add edits to joint status report | 0.40 | $450.00 |
| 04/03/2024 | 3105513020 | Review various emails re joint status report | 0.40 | $450.00 |
| 04/03/2024 | 3105513020 | review additional emails re joint status report | 0.25 | $281.25 |
| 04/03/2024 | 3105513020 | review calendar and determine available dates | 0.30 | $337.50 |
| 04/05/2024 | 3105513020 | review joint status- trial estimate | 0.30 | $337.50 |
| 04/12/2024 | 3105513020 | Review minute order re joint status conference and order to meet and confer re trial dates | 0.20 | $225.00 |
| 04/15/2024 | 3105513020 | review calendar for possible trial dates | 0.50 | $562.50 |
| 04/18/2024 | 3105513020 | Review joint report | 0.25 | $281.25 |
| 04/18/2024 | 3105513020 | Review notice of filing re change of counsel | 0.20 | $225.00 |
| 04/18/2024 | 3105513020 | Review electronic filing notice- joint status report | 0.20 | $225.00 |
| 04/18/2024 | 3105513020 | Review minute order re pretrial conference (.2) discuss trial date and prep (.5) | 0.70 | $787.50 |
| 04/19/2024 | 3105513020 | discussion with clients re trial date | 0.75 | $843.75 |
| 04/22/2024 | 3105513020 | discussion with clients re case and trial | 0.45 | $506.25 |
| 05/06/2024 | 3105513020 | email exchange with forensic expert | 0.20 | $225.00 |
| 05/16/2024 | 3105513020 | Strategy meeting | 0.75 | $843.75 |
| 09/24/2024 | 3105513020 | Email exchange with expert | 0.25 | $281.25 |
| 12/09/2024 | 3105513020 | Discussion with Mickel re armed services (.50) Draft letter for Mickel re leave to attend trial (.25 | 0.75 | $843.75 |
| 12/11/2024 | 3105513020 | Discussion regarding experts | 0.75 | $843.75 |
| 12/16/2024 | 3105513020 | Email exchange re joint pretrial statement. | 0.20 | $225.00 |
| 12/16/2024 | 3105513020 | Email from Kathleen Rivera re change of counsel | 0.20 | $225.00 |
| 12/16/2024 | 3105513020 | Email exchange re stip for extension on filing joint pretrial statement. | 0.30 | $337.50 |
| 12/19/2024 | 3105513020 | Review electronic feeling notice re change of counsel. | 0.20 | $225.00 |
| 12/19/2024 | 3105513020 | Review electronic filing re Stip and Order- one week extension | 0.20 | $225.00 |
| 12/20/2024 | 3105513020 | Prepare federal stip to remove May Mallari as counsel of record | 0.30 | $337.50 |
| 12/20/2024 | 3105513020 | Review Electronic filing- Notice of appearance | 0.20 | $225.00 |
| 12/27/2024 | 3105513020 | Email exchange re pretrial statement | 0.20 | $225.00 |
| 12/31/2024 | 3105513020 | Email exchange re joint pretrial statement. | 0.20 | $225.00 |
| 01/02/2025 | 3105513020 | Review and revise joint pretrial statement. | 0.35 | $393.75 |
| 01/03/2025 | 3105513020 | Email exchanges (.2) and discussion (.3) re joint statement | 0.50 | $562.50 |
| 01/03/2025 | 3105513020 | Discussion on waiving economics | 0.40 | $450.00 |
| 01/06/2025 | 3105513020 | review and suggest revision on pre-trial conference report | 0.50 | $562.50 |
| 01/10/2025 | 3105513020 | Prep and discussion regarding upcoming pretial conference | 0.75 | $843.75 |
| 01/11/2025 | 3105513020 | Email exchange with JBA re pre-trial conference | 0.10 | $112.50 |
| 01/13/2025 | 3105513020 | Prep for Pre trial conference (.5) and appear at pretrial conference (.5) | 1.00 | $1,125.00 |
| 01/14/2025 | 3105513020 | Email exchange re pre-trial conference | 0.25 | $281.25 |
| 01/14/2025 | 3105513020 | Email exchange re pre-trial conference | 0.25 | $281.25 |
| 01/21/2025 | 3105513020 | review pre-trial documents; | 0.50 | $562.50 |
| 01/21/2025 | 3105513020 | review pre-trial documents; | 0.50 | $562.50 |
| 01/22/2025 | 3105513020 | Email exchanges re: pre-trial documents. | 0.30 | $337.50 |
| 01/24/2025 | 3105513020 | Review pre-trial Order (.2) Discussion on upcoming deadlines (.3) | 0.50 | $562.50 |
| 01/28/2025 | 3105513020 | Review and discuss graphics re: trajectory of bullets | 0.40 | $450.00 |
| 01/28/2025 | 3105513020 | Email with BK re graphics/demonstrative (.2) (review emails re: graphics (.1) | 0.30 | $337.50 |

| Date | Account | Description | Hours | Amount |
|---|---|---|---|---|
| 02/01/2025 | 3105513020 | Email re MIL | | $225.00 |
| 02/04/2025 | 3105513020 | Trial Prep: Review depo transcripts of MK /summary (1.2) Discussion with MK (.5) | 1.70 | $1,912.50 |
| 02/06/2025 | 3105513020 | Trial Prep: Review and summarize Oriona (1.0) and Briona (1.0) - Discussion with OL and BL (.75 | 2.75 | $3,093.75 |
| 02/06/2025 | 3105513020 | Call regarding MIL | 0.80 | $900.00 |
| 02/08/2025 | 3105513020 | Trial Prep: Review Gardner depo summary | 0.75 | $843.75 |
| 02/10/2025 | 3105513020 | Review email exchange re MIL;(.2); Discussion re photos (sheriffs circling) to support Bane Act (.2); | 0.40 | $450.00 |
| 02/10/2025 | 3105513020 | Research evidentiary support needed for Bane Act- threats of violence by sheriffs. | 1.20 | $1,350.00 |
| 02/11/2025 | 3105513020 | Review and assist revisions to MIL re Kuzel (.5); Review exhibit list edits (.5) Review exhibit list (.5) Review Kern's MIL (.6) | 2.10 | $2,362.50 |
| 02/13/2025 | 3105513020 | Review MIL regarding Ayala's facts unaware (.75) review MIL re: human factors (.75) | 1.50 | $1,687.50 |
| 02/14/2025 | 3105513020 | Review final pre-trial order (.25); discussions re order (.5) | 0.75 | $843.75 |
| 02/15/2025 | 3105513020 | Discussion re demonstratives and animation. | 0.20 | $225.00 |
| 02/17/2025 | 3105513020 | Call with biomechanic expert (.5); discussions re: using (.4) | 0.90 | $1,012.50 |
| 02/18/2025 | 3105513020 | Review emails re: pre-trial docs | 0.20 | $225.00 |
| 02/18/2025 | 3105513020 | Review trial exhibits | 0.50 | $562.50 |
| 02/18/2025 | 3105513020 | Review MILs, provide edits | 0.60 | $675.00 |
| 02/20/2025 | 3105513020 | Discussion with BK re witnesses (.2) email exchanges (.2) review jury instructions (.3) | 0.70 | $787.50 |
| 02/20/2025 | 3105513020 | Review verdict form | 0.60 | $675.00 |
| 02/21/2025 | 3105513020 | Address questions from clients. | 0.90 | $1,012.50 |
| 02/21/2025 | 3105513020 | Call to witness | 0.20 | $225.00 |
| 02/21/2025 | 3105513020 | Review verdict forms | 0.40 | $450.00 |
| 02/21/2025 | 3105513020 | discussion re animation with MEA | 0.50 | $562.50 |
| 02/24/2025 | 3105513020 | Review lodging of transcripts (.1); Review deposition summaries (1.2) | 1.30 | $1,462.50 |
| 02/24/2025 | 3105513020 | Review and edit MIL | 0.50 | $562.50 |
| 02/24/2025 | 3105513020 | Review electronic filing- notice of lodging | 0.10 | $112.50 |
| 02/24/2025 | 3105513020 | Review jury instructions | 0.50 | $562.50 |
| 02/25/2025 | 3105513020 | Review email exchange re edits proposed verdict and jury instructions (.4) discussion re same (.5) | 0.90 | $1,012.50 |
| 02/25/2025 | 3105513020 | Edit draft objections to defendants' exhibits | 0.50 | $562.50 |
| 02/25/2025 | 3105513020 | Review various electronic filings | 0.25 | $281.25 |
| 02/25/2025 | 3105513020 | discussion re trial strategy | 0.40 | $450.00 |
| 02/25/2025 | 3105513020 | Email exchange re joint report | 0.20 | $225.00 |
| 02/25/2025 | 3105513020 | Review final joint proposed jury instructions | 0.30 | $337.50 |
| 02/27/2025 | 3105513020 | Strategy discussion (.5) review exhibits (.4) review depo summaries (.5) | 1.40 | $1,575.00 |
| 02/27/2025 | 3105513020 | Discussion re voir dire questions | 0.20 | $225.00 |
| 02/27/2025 | 3105513020 | Discussion re 3rd party witnesses and video | 0.25 | $281.25 |
| 02/28/2025 | 3105513020 | Discussion re 3rd party witnesses and video | 0.20 | $225.00 |
| 02/28/2025 | 3105513020 | Discussions with clients re questions about trial | 0.75 | $843.75 |
| 03/02/2025 | 3105513020 | Review Ayala depo summary | 0.90 | $1,012.50 |
| 03/03/2025 | 3105513020 | email exchange re meeting | 0.20 | $225.00 |
| 03/03/2025 | 3105513020 | Discussion with client re witness, Marylyn Komnenus | 0.50 | $562.50 |
| 03/03/2025 | 3105513020 | Email exchange re expert- Scott Defoe | 0.25 | $281.25 |
| 03/03/2025 | 3105513020 | review electronic filing re order granting withdrawal of MM | 0.10 | $112.50 |
| 03/03/2025 | 3105513020 | Discussion re 3rd party witness- MK | 0.50 | $562.50 |
| 03/03/2025 | 3105513020 | Review trial subpoens | 0.20 | $225.00 |
| 03/03/2025 | 3105513020 | message BK re witnesss | 0.20 | $225.00 |
| 03/03/2025 | 3105513020 | Strategy meeting with team | 0.90 | $1,012.50 |
| 03/03/2025 | 3105513020 | further trial prep- review subpoenas (.25), photo exhibits (.25), discuss with clients (.5); call to witnesses (.3) | 1.30 | $1,462.50 |
| 03/03/2025 | 3105513020 | Further Trial Prep- assist in trial notebook (1.2) prepare for pre-trial conference (.75); strategy team meeting (.7) | 2.65 | $2,981.25 |
| 03/04/2025 | 3105513020 | Trial Prep- review depo summaries, prepare outline questions for clients | 3.50 | $3,937.50 |

| Date | Code | Description | Hours | Amount |
|---|---|---|---|---|
| 03/05/2025 | 3105513020 | Discussion with team re trial (1.0); review statement of facts (.7) | 1.70 | $1,462.50 |
| 03/06/2025 | 3105513020 | Review depo summary -Chapman | 0.75 | $843.75 |
| 03/06/2025 | 3105513020 | texting with Britt re photos | 0.25 | $281.25 |
| 03/06/2025 | 3105513020 | review various pre-trial docs; provide input (trial brief, jury instructions) | 1.70 | $1,912.50 |
| 03/06/2025 | 3105513020 | email exchanges re trial prep, various issues | 0.50 | $562.50 |
| 03/06/2025 | 3105513020 | DM/text to witness- Marlyn K | 0.20 | $225.00 |
| 03/06/2025 | 3105513020 | Review documents (.75); discussion with clients (.90) | 1.65 | $1,856.25 |
| 03/06/2025 | 3105513020 | text discussion with BK re photos to include (.4) | 0.40 | $450.00 |
| 03/07/2025 | 3105513020 | Prepare for meeting with clients ( .90) ; Zoom meeting with Mickel to prepare for trial (1.0); meet with Oriona and Briona (1.0) | 2.90 | $3,262.50 |
| 03/07/2025 | 3105513020 | review subpoenas (.3); email with co-counsel re: travel (.2) | 0.50 | $562.50 |
| 03/09/2025 | 3105513020 | Trial Prep- Answer questions from clients (.75); review list of witnesses, provide input (.50); additional photos and videos to review (.4); review and input on voire dire questions (.75); discussions re: 3rd parties, coordinate (1.0); | 3.40 | $3,825.00 |
| 03/10/2025 | 3105513020 | Email exchange with BK re exhibit (.3); Review docs and finalize exhibits (1.2) | 1.50 | $1,687.50 |
| 03/10/2025 | 3105513020 | Trial prep; discussion with clients re arrival; contact third party witness; coordinate witness travel/hotel; | 3.50 | $3,937.50 |
| 03/11/2025 | 3105513020 | Day 1 trial (voir dire; jury selection; Ayala testimony (8.0); meet with clients after trial; prepare client (2.0); meet with Salcedo for prep (1.5); discussion with clients (.5) | 12.00 | $13,500.00 |
| 03/12/2025 | 3105513020 | Day 2 Trial;morning prep meeting (1.0); trial (8); draft outline of Mickel direct (2.5) ; discussion with Mickel (1.2) | 12.20 | $13,725.00 |
| 03/13/2025 | 3105513020 | Day 3: Morning prep with team (.5); Review outline for Mickel (1.0); Trial (9); post trial meeting with clients (.4); Meet with trial team (.4) | 11.30 | $12,712.50 |
| 03/14/2025 | 3105513020 | Day 4 Trial: Team meeting (2.0) Trial (5.5); flight to LAX (3.0) | 10.50 | $11,812.50 |
| 03/15/2025 | 3105513020 | Assist in prep; review notes for assist in draft of closing; discussion with clients | 5.20 | $5,850.00 |
| 03/16/2025 | 3105513020 | Review jury instruction changes (.5) ; strategy discussions (2.2); address client issues (1.4) | 4.10 | $4,612.50 |
| 03/16/2025 | 3105513020 | Prepare for trial- review notes, strategize, review jury instructions. | 4.00 | $4,500.00 |
| 03/17/2025 | 3105513020 | Team discussions (.6); review notes to assist in closing (1.2); review jury instructions (2.2) | 4.00 | $4,500.00 |
| 03/17/2025 | 3105513020 | LAX to Fresno | 3.00 | $3,375.00 |
| 03/18/2025 | 3105513020 | Morning breakfast meeting with team (.8); court hearing on jury instructions (1.5); trial (8.0) post trial debrief with clients (.6) | 10.90 | $12,262.50 |
| 03/19/2025 | 3105513020 | Pre trial morning meeting (1.0); trial and await jury verdict; address jury question; reading of verdict; post trial discussions with family; | 7.50 | $8,437.50 |
| 03/20/2025 | 3105513020 | Return to LAX (4) | 4.00 | $4,500.00 |
| 03/24/2025 | 3105513020 | email and discussions re post trial motions (1.0); organize files in anticipation for post trial motions (1.2) | 2.20 | $2,475.00 |
| 04/01/2025 | 3105513020 | Review hours; billing | 3.20 | $3,600.00 |
| 04/16/2025 | 3105513020 | review stip to extend stay | 0.25 | $281.25 |
| 04/18/2025 | 3105513020 | Review (cursory) defense motions for new trial, (.5) | 0.50 | $562.50 |
| 04/22/2025 | 3105513020 | Continue editing declaration for fee motion. | 2.30 | $2,587.50 |
| 04/22/2025 | 3105513020 | Review and add to declarations: DeSimone, Dunn, Musell, Stormer | 1.75 | $1,968.75 |
| 04/23/2025 | 3105513020 | Phone message to fee motion declarants to sign | 0.30 | $337.50 |
| 04/23/2025 | 3105513020 | Review time entries for fee motion | 3.20 | $3,600.00 |
| 04/24/2025 | 3105513020 | Final edits to fee motion. | 2.00 | $2,250.00 |

*Total Hours:*    *409.39 hrs*

*Labor:*   $460,397.50

**Total Amount: $460,397.50**

*Total Labor: $460,397.50*

Case 1:21-cv-00378-KES-CDB   Document 175   Filed 04/25/25   Page 89 of 89

**Total Invoice Amount:** $460,397.50
**Previous Balance:** $0.00
**Balance (Amount Due):** $460,397.50