LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Renee V. Masongsong, Esq. (SBN 281819)
rvalentine@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA  91367
Telephone:   (818) 347-3333
Facsimile:    (818) 347-4118

Attorneys for Plaintiffs
R.L., M.L., and H.L., minors, by and through guardian *ad litem* Roberta Haro;
A.W., a minor, by and through guardian *ad litem* Alisha White, ALISHA WHITE

**TONI JARAMILLA, A Professional Law Corp.**
Toni J. Jaramilla, Esq. (SBN 174625)
Toni@tjjlaw.com
1900 Avenue of the Stars, Suite 900
Los Angeles, California 90067
T: (310) 551-3020 | F: (310) 551-3019

**ALEXANDER MORRISON + FEHR LLP**
J. Bernard Alexander, III (SBN 128307)
balexander@amfllp.com
Britt L. Karp (State Bar No. 278623)
bkarp@amfllp.com
1900 Avenue of the Stars, Suite 900
Los Angeles, California 90067
T: (310) 394-0888 | F: (310) 394-0811

Attorneys for Plaintiffs
MICKEL ERICK LEWIS JR, ORIONA LEWIS
and BRIONA LEWIS

---

-1-
DECLARATION OF DAN STORMER, ESQ. IN SUPPORT
OF PLAINTIFFS' MOTION FOR ATTORNEY'S FEES

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

MICKEL ERICK LEWIS JR,
individually and as successor-in-interest
to MICKEL E. LEWIS SR., ORIONA
LEWIS, individually and as successor-
in-interest; and BRIONA LEWIS,
individually and as successor-in-interest,

Plaintiffs,

vs.

KERN COUNTY, Deputy JASON
AYALA, and Does 1–20, inclusive,

Defendants.

---

R.L., M.L., and H.L., minors, by and
through guardian *ad litem* Roberta Haro,
individually and as successors in interest
to Michel Lewis Sr., deceased; A.W., a
minor, by and through her guardian *ad
litem* Alisha White, individually and as a
successor in interest to Mickel Lewis Sr.,
deceased; ALISHA WHITE,
individually and as a successor in
interest to Mickel Lewis Sr.,

Plaintiffs,

vs.

COUNTY OF KERN; JASON AYALA;
and DOES 1-10, inclusive,

Defendants.

---

DECLARATION OF DAN STORMER, ESQ. IN SUPPORT
OF PLAINTIFFS' MOTION FOR ATTORNEY'S FEES

<u>**DECLARATION OF DAN STORMER, ESQ.**</u>

I, DAN STORMER, declare and state as follows:

<u>**BACKGROUND**</u>

1.    I am an attorney licensed to practice law by the State of California. I have personal knowledge of the facts contained in this Declaration and if called to testify, could and would competently testify thereto.

2.    This declaration is based on my personal knowledge unless another source of information or belief clearly appears from the context, and as to all such matters I believe them to be true. If called as a witness, I could and would readily and competently testify to all matters stated in this declaration.

3.    This declaration is submitted in support of Plaintiffs' Motion for Attorneys' Fees and Costs in *Mickel Lewis, Jr. et.al. v Kern County, Deputy Jason Ayala* Case No. 1:21-CV-00378-NONE-JLT.

4.    I am a founding partner of the law firm of Hadsell Stormer Renick & Dai LLP, which practices primarily in the area of employment discrimination, constitutional, civil rights, international human rights, and public interest law. I have been in the practice of law for over five decades and a member of the State Bar of California since 1981, an inactive member of the State Bar of Colorado (1974), and a former member of the State Bar of Washington (1977).

5.    I am "AV Preeminent" rated by Martindale-Hubbell.  For many decades, I have been listed as a "leading" or "top" attorney on the national, state, and local level in many surveys of my peers and in publications, including:  "The Best Lawyers In America" (since 1994), one of the "Top 100 Trial Lawyers" (National Trial Lawyers), one of the "Top 100 Most Influential Lawyers in California" (California Law Business), one of the Top 75 Labor and Employment Lawyers, and as one of the top five (and on other occasions, ten) plaintiff employment lawyers in California (Chambers USA–America's Leading Business Lawyers).  Los Angeles Magazine and

Law & Politics Magazine have selected me as a "Super Lawyer" for every year a survey was done and among the Top 100 Lawyers for more than ten years, as well as in the Top Ten for a number of years. I have been selected as a CLAY (California Attorney of the Year) award winner 3 times. The Governors of The College of Labor and Employment Lawyers inducted me as a Fellow of the College. Recently I was honored as one of only a few attorneys who were listed in the Top Ten and/or Top 100 Lawyers by Super Lawyers for ten years or more. Attached as Exhibit "A" is a true and correct copy of my current list of Awards and Activities.

6.      I have co-authored three law review articles: Stormer and Bernstein, *The Impact of Kolender v. Lawson on Law Enforcement and Minority Groups*, 12 HASTINGS CONSTITUTIONAL LAW QUARTERLY 105 (1984); Stormer and Ferber, *Legal Responses to Unconstitutional Termination of Disability Benefits*, 22 IDAHO LAW REVIEW 201 (1985-1986); and Stormer and Richardson, *The Graying of America: Age Discrimination in the Nineties*, 26 WEST LOS ANGELES LAW REVIEW 189 (1995). I previously wrote a monthly column for the Matthew Bender California Labor and Employment Bulletin. I have contributed to literally dozens of other publications, including a chapter in the James Publications Book: Sexual Harassment.

7.      During the past five decades, I have taught at over 250 legal programs and seminars as well as having been a keynote and graduation speaker. I have been a law school commencement address speaker, including at The Thomas Jefferson School of Law. I have taught at Hastings College of Law (Trial Advocacy, Pre-Trial Criminal Procedure), Loyola College of Law (Prisoners' Rights), San Fernando Valley College of Law (Trial Advocacy), and at Southwestern University College of Law (Political Trials). I have also taught trial advocacy for the National Institute of Trial Advocacy, Hastings College of Trial Advocacy, and California Institute of Trial advocacy. I have lectured extensively on Civil Rights and Harassment to students, bar groups, CEB organizations and community groups.

8.      I have been the subject of numerous Daily Journal profiles (including May 2005, August 14, 1989, and December 1985), numerous Top 100 Lawyer and Top Labor and Employment profiles, as well as one profile in each of the following publications: Los Angeles Lawyer (December 1984), California Lawyer (December 1988), Legal Exchange (May 1990), California Law Business (November 1993) and the Pasadena Star News (April 20, 2005). Several academic institutions have also written profiles on me, including the Wagner College alumni journal (Fall 2008) and the Santa Monica Community College semi-annual publication "Voices on Higher Education" in 1998.

9.      I have been acknowledged internationally as one of the leading civil rights, employment, plaintiff-side labor and constitutional law attorneys, as recognized in "The Best Lawyers in America," Euromoney Publications' "Guide to the Worlds' Leading Labour and Employment Lawyers," "America's Registry of Outstanding Professionals," as well as the National and International "Who's Who of Professionals."

10.      In addition to presenting at academic institutions and community organizations, I am often asked to speak to legal groups on various issues concerning civil rights and trials. I have been a law school commencement address speaker. I have spoken and/or delivered papers in over 250 seminars. For instance, I have spoken to the Los Angeles Trial Lawyers Association on the issue of how to try an employment discrimination case; the Los Angeles County Labor Law Section held a seminar on "The Care and Feeding of Juries" in which I was a primary speaker; the California Employment Law Council presented a program on mediation in which I was one of three speakers; the Trial Lawyers Association presents each year a "Masters Series" involving, as they describe it, "prominent successful attorneys," and I was one of those persons selected to present a closing argument. I have been the key-note speaker at the annual California State Bar Labor and Employment law symposium. I have been the commencement speaker at the graduation for The

Thomas Jefferson School of Law. I have also spoken at seminars on civil rights trials presented by MALDEF, ACLU, Consumer Attorneys of California, Consumer Attorneys Association of Los Angeles, Florida Trial Lawyers, Western Trial Lawyers Association, National Employment Lawyers Association, Los Angeles County Bar, California State Bar, National Lawyers Guild, California Trial Lawyers Association, American Trial Lawyers Association, Association of Business Trial Lawyers, The National Institute of Trial Advocacy and many others. These seminars are only some of the engagements at which I have spoken. I have also spoken at several ABA conventions and at literally hundreds of trial practice workshops and other legal educational seminars.

11.    I have received a number of awards, including: The California Lawyer Attorney of the Year (CLAY) Award in 2006, 2017 and 2024, The Freedom Now Award from the Los Angeles Community Action Network in 2016, the Religious Liberty Award by the ACLU in 2012, Certificate of Special Congressional Recognition (by Congressman Howard L. Berman, in 2012), LGBT Award (the ACLU Foundation of Southern California, in 2007), The Honorable Robert W. Kenny Award (the Los Angeles Chapter of the National Lawyers Guild, in 2005), Los Angeles Regional Social Justice Award (Occidental College - Urban & Environmental Policy Institute, in 2006), Certificate of Recognition for Human Rights Legal Representation (California State Assembly), Joseph Posner Award (California Employment Lawyer's Association, in 2005), Certificate of Recognition for Fighting Discrimination (California State Assembly Resolution), Commendation by the Los Angeles Office of the City Attorney (for outstanding contribution to the citizens of Los Angeles, in 1995), the California Lieutenant Governor's Commendation (for longstanding commitment to ensure equal justice and for service to the community, in 1995), the Pursuit of Justice Award (California Women's Law Center, in 1995), California Assembly Resolution (honoring me for my commitment to civil rights, constitutional law and public interest law, in 1995), the Clarence

Darrow Award (People's College of Law, in 1991), the Hollywood Fair Housing Council Award (1989), Pro Bono Firm of the Year (Public Counsel Law Center, in 1987), and the Pro Bono Service Award (Legal Aid Foundation of Los Angeles, in 1986).

12.    I have co-counseled with many highly regarded organizations, including the American Civil Liberties Union, the Center for Constitutional Rights, the NAACP Legal Defense Fund, the Mexican-American Legal Defense Fund, various legal aid societies, Public Counsel, and the Western Center on Law and Poverty. These co-counseling arrangements have been required because most of the legal work in which I have been involved impacts on diverse interest groups, involves novel and complex issues of fact and law, and demands huge resources to conduct the type of discovery and litigation required.

13.    I have represented a wide range of clients in the civil rights area. I would estimate that I have been co-counsel on at least 40 civil rights class actions. These class actions have involved a wide range of public interest issues including, but not limited to ERISA, 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964, Unfair Business and Practices under California Business & Professions Code § 17200, Immigrants' Rights, Employment Law, Consumer Rights, Welfare Rights and Voting Rights.  Such cases have been litigated against various defendants, including public sector employers such as school districts. (See, e.g., *Motevalli v. Los Angeles Unified School District* (2004) 122 Cal.App.4th 97; *Rosenstock v. Los Angeles Unified School District*, 2009 U.S. -4- 28 1 Dist. LEXIS 108187 (C.D. Cal. 2009); *Melendez v. Los Angeles Unified School District*, Los Angeles Superior Court, Case No. BC 635349).

14.    I have tried many cases to juries. On a number of occasions, I have achieved verdicts of a million dollars or more. Examples are *Martin v. Texaco* ($20 million), *Denise Steffens v. Regus* ($4.6 million); *Schell v. Parks* ($4.31 million), *Zinzun v. City of Los Angeles* ($3.84 million), *Pajas v. County of Monterey* ($1.6 million), *Ruiz v. Jackson* ($1.6 million), *Wysinger v. The Automobile Club of*

*Southern Californi*a ($1.3 million), and *Bonsangue v. ADP* (slightly over $1 million).
I have been co-counsel or lead counsel in scores of cases which have settled for seven
or eight figures (no decimals included).

15.    I have served as lead counsel or co-counsel in a number of class actions
with published opinions including: *McLaughlin v. County of Riverside*, 500 U.S. 44
(1991) (class representing inmates of Riverside and San Bernardino County jail,
including oral argument before the U.S. Supreme Court); *Del Monte v. Wilson*, 1
Cal.4th 1009 (1992) (a class representing disabled veterans); *Leeds v. Watson*, 630
F.2d 674 (9th Cir. 1980) (class consisted of county jail inmates); *Benson v. The
County of Orange*, 788 F.Supp 1123 (C.D.Cal. 1992) (class represented all Orange
County jail inmates); *Lopez v. Heckler*, 572 F.supp. 26 (C.D. Cal. 1983) (class
included Social Security beneficiaries residing in the Ninth Circuit whose benefits
were terminated based on a finding that they were not adequately impaired.); *Pierce
v. County of Orange*, 526 F.3d 1190 (9th Cir. 2008) (class of disabled inmates,
ongoing injunction and court monitoring).

16.    I have also been class counsel in a number of other class actions
including: *Rodriguez v. City of Los Angeles*, CV11-01135 DMG (JEMx) (class of
persons subject to illegal restrictions in a purported "gang injunction"); *Morales v.
Aramark Corporation*, CV09-5565 CBM (MLGx) (class of employees denied meal
and rest breaks under California law); *Paige v. State of California*, CV 94-0083 CBM
(Ctx) (class of State troopers denied promotions based on race); and *Cundiff v.
Verizon*, BC 237806 (class of consumers suing Verizon (formerly GTE California,
Inc.) for unfair business practices) (See also 167 Cal.App.4th 718 (2008) and 101
Cal.App.4th (2002)).

17.    Many of my cases have resulted in published decisions by the United
States Supreme Court, Federal Courts of Appeal, District Courts, and state courts,
including the California, Washington, and Colorado Supreme Courts and the
California Courts of Appeal. A true and correct partial list of these cases is attached

as Exhibit B. As that case list demonstrates, I specialize in a wide range of complex civil and civil rights cases, not all of which are listed. My firm is one of the most highly regarded employment and civil rights litigation firms in California.

18.    Given my level of experience, I am very familiar with the economics of legal practice, especially as it relates to litigation of employment discrimination cases and other civil rights litigation. The availability of current hourly rates directly influences the decisions my firm makes about whether to take or decline cases. If current hourly rates were unavailable in all or a majority of cases, we would not be able to maintain our contingent fee practice in the employment area; it would simply be financially impossible to do so.

19.    Our firm periodically takes on hourly cases. The 2025 rates listed below for the senior attorneys at our firm are the rates clients actually pay for our services. At any given time, including presently, our firm is retained by 3-5 clients who pay our hourly rates on a monthly basis.

20.    The hourly rates charged by my firm are consistent with those of comparable experience, expertise and skill in the community.  The rates for the partners, the more senior associates (and the year of their law school graduation) and paralegals in my firm are as follows:

| Name | Title / Year of Graduation | Rate |
|---|---|---|
| Dan Stormer | Partner, 1974 | $1,550 |
| Barbara Enloe Hadsell | Partner, 1978 | $1,450 |
| Robert Newman | Co-Counsel, 1979 | $1,350 |
| Randy Renick | Partner, 1995 | $1,150 |
| Cornelia Ho-Chin Dai | Partner, 2000 | $1,050 |
| Morgan Ricketts | Partner, 2010 | $1,025 |
| Brian Olney | Partner, 2014 | $925 |
| Nancy Hanna | Partner, 2011 | $850 |
| David Clay Washington | Partner, 2015 | $800 |
| Hanna Chandoo | Partner, 2015 | $800 |

DECLARATION OF DAN STORMER, ESQ. IN SUPPORT OF PLAINTIFFS'
MOTION FOR ATTORNEY'S FEES AND COSTS

| Name | Title / Year of Graduation | Rate |
|------|---------------------------|------|
| Sarah Cayer | Associate, 2021 | $650 |
| Rebecca Brown | Associate, 2021 | $625 |
| Kate McFarlane | Associate, 2021 | $600 |
| Tami Galindo | Paralegal | $300 |
| Karla Jinez | Legal Assistant | $250 |

21.    The hourly rates I set forth above for my firm are the same rates we routinely charge for the clients we represent who are paying their own bills, and therefore are the same rates we charge where full payment is expected promptly upon the rendition of the billing, and without any contingency whatever.  We do have a number of clients who pay an hourly rate.  If any substantial part of the payment were to be deferred for any substantial period of time, or if payment were to be contingent upon outcome or any other factor, the fee arrangement would normally be adjusted upward accordingly to compensate the attorneys for risk and delay in payment.

## MR. ALEXANDER'S REQUESTED RATES ARE REASONABLE

22.    During my 48 years of law practice, I have become familiar with the kinds of fees that are prevalent in successful employment, civil rights and public interest cases in Southern California.  I have gained this knowledge through handling attorneys' fees litigation in the past, discussing fees with other attorneys practicing in these areas of law, reviewing attorneys' fees applications submitted by other firms, and serving as an expert on behalf of persons seeking attorneys' fees before various state and federal courts.

23.    I have known J. Bernard Alexander for approximately twenty (20) years. During that time we have both been continuing members and supporters of the California Employment Lawyers Association ("CELA").  Mr. Alexander completed a two-year term as President of CELA in October 2015.  CELA is a statewide organization and the largest bar association in California for lawyers representing employees, with current membership of over 1,300 attorneys.

DECLARATION OF DAN STORMER, ESQ. IN SUPPORT OF PLAINTIFFS'
MOTION FOR ATTORNEY'S FEES AND COSTS

24.    In 2014, Mr. Alexander created and managed a CELA trial skills college which has convened each year.  I understand that that it has graduated approximately 400 participants.  I have spoken and acted as an instructor at the CELA trial college several times, as have other members of my firm.  During this time he also received the Joe Posner Award, for leadership associated with the Plaintiff employment community.

25.    I am also aware that for the past 10 years, he has been instrumental in giving trial instruction at the bi-annual trial boot camp given by the National Employment Lawyer's Association, of which CELA is a local affiliate.

26.    I have personal knowledge of Mr. Alexander's work as a seasoned trial attorney, and have had occasions to observe and review the quality and type of work performed by him.  Mr. Alexander is viewed as a highly respected member of the legal community and one of the top trial attorneys in California.

27.    I have personal knowledge of Mr. Alexander's work as a seasoned trial attorney, and have had occasions to observe and review the quality and type of work performed by him.  Mr. Alexander is viewed as a highly respected member of the legal community and one of the top trial attorneys in California.

28.    From my observation, Mr. Alexander possess a great deal of skill, knowledge and effectiveness in the area of civil rights.  Mr. Alexander has spent the substantial majority of his legal career litigating the civil rights of individuals.  Based on his years of experience, and particularly his experience as lead trial counsel in numerous seven and eight figure cases, I believe the hourly rate of $1,250 is reasonable and appropriate for Mr. Alexander, and well within the range of market rates charged by attorneys of equivalent experience, skill, and expertise for comparable work in the Southern California area.  These fees fall within the 2024-25 prevailing market rate for similar attorneys and paralegals performing comparable work in Southern California.

/ / /

DECLARATION OF DAN STORMER, ESQ. IN SUPPORT OF PLAINTIFFS'
MOTION FOR ATTORNEY'S FEES AND COSTS

## MS. JARAMILLA'S REQUESTED RATES ARE REASONABLE

29.    I have known Toni Jaramilla for at least twenty-five (25) years.  She, too was previously the Chair of CELA for approximately two years, from approximately 2011-2013.  Ms. Jaramilla has received numerous awards throughout her career including recognition in the 2022 Law Dragon as a Leading Plaintiff Employment and Civil Rights Attorney.

30.    I first met Ms. Jaramilla when she was a relatively new lawyer.  We co-counseled on a sexual harassment case against the U.C. Regents which resulted in a favorable outcome for our client.  Since that first case, we have litigated numerous cases together from inception to trial.

31.    I know Ms. Jaramilla to be an outstanding attorney, and an articulate, bright, tenacious advocate, based on having co-counseled on numerous cases with her over many years, including trying cases in both state in federal court.  Most recently, Ms. Jaramilla and I successfully tried a case, *Melendez v. Los Angeles Unified School District* BC 635349, giving me personal knowledge of her legal and trial skills.  In that case, she delivered the opening statement and direct examined the Plaintiff as well as cross-examined key witnesses.  She also assisted in jury selection, providing helpful input.

32.    Since 2014, Ms. Jaramilla has also been a trial skills instructor for the CELA Trial College.  She and I presented cross-examination skills training at a recent trial college and have spoken on educational panels together before various organizations such as CELA and Consumer Attorneys Association of Los Angeles (CAALA).

33.    I have had the occasion to observe and review the quality and type of work performed by her.  Ms. Jaramilla possess a great deal of skill, knowledge and effectiveness in the area of civil rights, which results in incredibly large verdicts and settlements.  I understand that Ms. Jaramilla obtained one of the largest non-lethal police excessive force settlements against Los Angeles County Sheriff's Department

DECLARATION OF DAN STORMER, ESQ. IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS

1   in 2023 in the amount of $4.75 million for a single plaintiff.

2          34.    Ms. Jaramilla has spent the substantial majority of her legal career

3   litigating the civil rights of individuals in the employment context and now in police

4   misconduct cases.  Based on her years of experience and recognition in the legal

5   community, I believe the hourly rate of $1,125.00 is reasonable and appropriate for

6   Ms. Jaramilla, and well within the range of market rates charged by attorneys of

7   equivalent experience, skill, and expertise for comparable work in the Southern

8   California area.  These fees fall within the 2024-2025 prevailing market rate for

9   similar attorneys and paralegals performing comparable work in Southern California.

10          35.    Based on my experience, I can state that civil rights cases are

11  particularly difficult for plaintiff attorneys to litigate.  Like the Lewis case, I have

12  handled related civil rights cases dealing with wrongful death, police shootings where

13  law enforcement claims that the decedent had a firearm.    I know how challenging

14  these excessive force cases are to win, and that civil rights attorneys take on great

15  risk.  This case was especially challenging, given the conservative jury pool of Kern

16  County.

17          36.    Obtaining a favorable jury verdict of $30.5 million against Kern County

18  is particularly challenging and impressive.  In my opinion, reasonable compensation

19  is necessary for the financial risk assumed by an attorney in taking such a civil rights

20  case.  Current hourly rates should be provided, with an appreciation of the contingent

21  risk and delay in payment that are commonly associated with employment

22  discrimination cases.

23          37.    Based on my experience and belief, I believe that highly qualified firms

24  and individual attorneys to litigate civil rights cases would be unlikely to accept a

25  case without the distinct probability of being awarded their current hourly rates in the

26  event the case is successful. In particular, I believe that, because of the substantial

27  risk involved, such firms and attorneys will generally not accept such cases unless the

28  anticipated fee award, if the case is successful, includes the current hourly rates

DECLARATION OF DAN STORMER, ESQ. IN SUPPORT OF PLAINTIFFS'
MOTION FOR ATTORNEY'S FEES AND COSTS

1  charged by the attorneys for the time spent on the case.

2  ## Work Performed by Counsel in this Case

3  38.    I understand that Plaintiffs' counsel prevailed at trial in *Lewis v Kern*

4  *County,* a police excessive force wrongful death case involving the Kern County

5  Sheriff Department.  I understand that the decedent Mr. Lewis, Sr., was a felon on

6  probation and was killed during a traffic stop at night in Kern County. I also

7  understand that Mr. Alexander and Ms. Jaramilla jointly represented the adult

8  children of the decedent, and that Dale Galipo represented the minor children of the

9  decedent in the joint prosecution of this matter. I also understand that several

10  different women gave birth to the decedent's children, and that all of these

11  complications were factors that this trial team successfully overcame at trial, in order

12  to achieve a verdict of $30.5 million on behalf of the decedent's family.

13  39.    I also understand that Mr. Alexander and Ms. Jaramilla worked on a

14  wholly contingent basis and that the County of Kern and Deputy Jason Ayala were

15  aggressively and diligently defended by their counsel. Based on my experience, I

16  believe that a fee award including Plaintiff counsels' hourly rates for all reasonable

17  time spent is justified.

18  40.    Most hourly rates charged by attorneys are when the full payment is

19  expected promptly upon the rendition of the billing, and without any contingency

20  whatever.  If any substantial part of the payment were to be deferred for any

21  substantial period of time, or if payment were to be contingent upon outcome or any

22  other factor, the fee arrangement would be adjusted accordingly to compensate the

23  attorneys for risk and delay in payment.

24  ## FEE MULTIPLIER

25  41.    Our firm primarily takes cases on a contingency basis. We also regularly

26  encounter long delays in getting paid on such cases. Because of the contingent nature

27  of our practice and the long delay in payment associated with the cases we take, it is

28  necessary that we recover a fee that is substantially more than that which we would

DECLARATION OF DAN STORMER, ESQ. IN SUPPORT OF PLAINTIFFS'
MOTION FOR ATTORNEY'S FEES AND COSTS

1  normally charge paying clients on an hourly basis. In order to attract attorneys to take
2  on such contingent cases and to properly compensate lawyers for this type of
3  litigation it is typically expected that if a case goes to trial there will be a multiplier of
4  approximately 2.0 to 3.0 simply because of the contingent nature of the case. *See,*
5  *e.g., Bouman v. Block*, 940 F.2d 1211, 1236 (9th Cir. 1991) ("Bouman argues that the
6  Los Angeles market is comparable to San Francisco's, and that her attorneys deserve
7  a 2.0 multiplier. Bouman submitted to the trial court a declaration from the attorney
8  in *Fadhl* [*v. City and County of San Francisco*, 859 F. 2d 649 (9th Cir. 1988)], Guy
9  Saperstein, that the market rate is the same in San Francisco and Los Angeles. Based
10 on his experience as a litigator and an expert on attorney's fees, Saperstein concluded
11 that a multiplier of at least 2.0 is necessary to encourage lawyers in Los Angeles to
12 take contingent fee Title VII cases. That argument appears reasonable to us.")

13     42.    It is my understanding that Mr. Alexander and Ms. Jaramilla handled the
14 current case on a full contingency basis and have been on the case since 2020,
15 without payment.  I understand that based on evidence presented by Plaintiffs' trial
16 team, they persuaded the jury to award each of the seven children of the decedent
17 $3.4 million, and to award pre-death pain and suffering of $1,000,000 and Loss of
18 Life damages of $5,000,000, for a total of $30.5 million.

19     43.    The outcome of this difficult public entity case reflects the exceptional
20 legal skills by the coordinated efforts of the Plaintiffs' respective legal teams.
21 Ultimately, the result is evidence of Plaintiffs' counsel's outstanding ability.  It is my
22 opinion that it would be appropriate to apply a multiplier of 2.0 for the work on the
23 case.

        I declare under penalty of perjury under the laws of the State of California that
24
25 the foregoing is true and correct. Executed this April 24, 2025, at Pasadena,
26 California.

27
                                    _____
28                                          DAN STORMER

DECLARATION OF DAN STORMER, ESQ. IN SUPPORT OF PLAINTIFFS'
MOTION FOR ATTORNEY'S FEES AND COSTS

Ex. A

**AWARDS / ACTIVITIES**

| | | |
|---|---|---|
| 2025 AV Preeminent Lawyers.com – Highest Possible Rating in Both Legal Ability & Ethical Standards | Martindale Hubbell | 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, 2011, 2012, 2013, 2014, 2015, 2016, 2017, 2018, 2019, 2020, 2021, 2022, 2023, 2024, 2025 |
| PSIA/AASI Adaptive Education Staff and Examiner | Professional Ski Instructors of America/ American Association of Snowboard Instructors | 2008, 2009, 2010, 2011, 2012, 2013, 2014, 2015, 2016, 2017, 2018, 2019, 2020, 2021, 2022, 2023, 2024, 2025 |
| PSIA/AASI Seniors Task Force Chair and Examiner | Professional Ski Instructors of America/ American Association of Snowboard Instructors | 2023, 2024, 2025 |
| Best Lawyers - Lawyer of the Year | 2024 Edition of The Best Lawyers in America | 2012, 2013, 2019, 2024 |
| Attorney of the Year - CLAY Award – Civil Rights | California Lawyer Magazine | 2006, 2017, 2024 |
| Selected to the Southern California Super Lawyers list | Southern California Super Lawyers Magazine | 2004, 2005, 2006, 2007, 2008, 2009, 2010, 2011, 2012, 2013, 2014, 2015, 2016, 2017, 2018, 2019, 2020, 2021, 2022, 2023, 2024 |
| Top 100 Trial Lawyers – Civil Plaintiff | The National Trial Lawyers | 2010, 2011, 2012, 2013, 2014, 2015, 2016, 2017, 2018, 2019, 2020, 2021, 2022, 2023, 2024 |
| Best Law Firms – Tier 1 Ranking | U.S. News & World Report – Best Lawyers "Best Law Firms" | 2010, 2011, 2012, 2013, 2014, 2015, 2016, 2017, 2018, 2019, 2020, 2021, 2022, 2023, 2024 |

| | | |
|---|---|---|
| 2024 AV Preeminent Attorney - Judicial Edition - Highest Possible Rating in Both Legal Ability & Ethical Standards Reflecting the confidential opinions of members of the Bar and Judiciary | Martindale Hubbell | 2022, 2023, 2024 |
| Guide to the Worlds' Leading Labour and Employment Lawyers | Euromoney Publications | 1999, 2000, 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, 2011, 2012, 2013, 2014, 2015, 2016, 2017, 2018, 2019, 2020, 2021, 2022, 2023, 2024 |
| Lawdragon Hall of Fame | Lawdragon Magazine | 2021, 2022, 2023, 2024 |
| Lawdragon 500 Leading Plaintiff Employment & Civil Rights Lawyers | Lawdragon 500 Leading Plaintiff Employment & Civil Rights Lawyers | 2021, 2022, 2023, 2024 |
| Litigation – Labor and Employment | Best Lawyers in America 30th Edition of The Best Lawyers in America | 2016, 2017, 2018, 2019, 2020, 2021, 2022, 2023, 2024 |
| Fellow | American Society of Legal Advocates | 2013, 2014, 2015, 2016, 2017, 2018, 2019, 2020, 2021, 2022, 2023, 2024 |
| Top 100 Trial Lawyers | American Trial Lawyers Association | 2008, 2009, 2010, 2011, 2012, 2013, 2014, 2015, 2016, 2017, 2018, 2019, 2020, 2021, 2022, 2023, 2024 |
| Employment Law – Individuals | Best Lawyers in America 30th Edition of The Best Lawyers in America | 1994, 1995, 1996, 1997, 1998, 1999, 2000, 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, 2011, 2012, 2013, 2014, 2015, 2016, 2017, 2018, 2019, 2020, 2021, 2022, 2023, 2024 (over 20 years consecutively on list) |

| | | |
|---|---|---|
| Best Lawyers in America | Naifeh & Smith - National Yearly Survey of America's Leading Lawyers | 1994, 1995, 1996, 1997, 1998, 1999, 2000, 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, 2011, 2012, 2013, 2014, 2015, 2016, 2017, 2018, 2019 (Listed in *Best Lawyers* for 10 Years or Longer), 2020, 2021, 2022, 2023, 2024 |
| Robert Tomás Olmos Award | California Rural Legal Assistance, Inc. (CRLA) - 2023 Tardeada | 2023 |
| Maynard Toll Award for Distinguished Public Service | Legal Aid Foundation of Los Angeles (LAFLA) - 25th Access to Justice Gala | 2023 |
| America's Most Honored Lawyers - Top 1% 2023 | The American Registry | 2023 |
| 2022 City of Justice Awards - Hadsell Stormer Renick & Dai LLP, Civil Rights Law Firm | Los Angeles Alliance for a New Economy (LAANE) | 2022 |
| Americas Most Honored Lawyers - Top 1% 2022 - The Best of the Best | The American Registry | 2022 |
| Top Attorneys as Chosen by Their Peers | Pasadena Magazine | 2022 |
| Best Attorneys of America | Rue Ratings' Best Attorneys of America | Lifetime Charter Member |
| Fellow | The Fellows of the American Bar Foundation | Life Fellow |

| 500 Leading National Plaintiff Employment Lawyers | Lawdragon 500 Leading Plaintiff Employment & Civil Rights Lawyers Guide | 2018, 2019, 2020 |
|---|---|---|
| Top 100 Litigation Lawyers in America | American Society of Legal Advocates | 2013, 2014, 2015, 2016, 2017, 2018, 2019, 2020 |
| Top Attorney | Pasadena Magazine | 2010, 2011, 2012, 2013, 2014, 2015, 2016, 2017, 2018, 2019, 2020 |
| Top Attorneys in Southern California | Los Angeles Magazine | 2020 |
| Best Lawyers in Southern California (Selected by Peer Recognition & Professional Achievement) | The Wall Street Journal | 2020 |
| Employment Law – Individuals "Lawyer of the Year" for Pasadena | Best Lawyers in America | 2016, 2019 |
| Decades of Service Award | National Lawyers Guild Los Angeles | 2019 |
| Civil Rights Law - Attorney of the Year in California | 2019 Corporate Intl Magazine Global Award | 2019 |
| Lawyer Of The Year: Southern California | The Wall Street Journal | 2019 |

| America's Most Honored Professionals | The American Registry | 2019 |
|---|---|---|
| America's Top 100 Criminal Defense Attorneys | America's Top 100 Criminal Defense Attorneys | 2017, 2018 |
| Top 100 Trial Lawyers | American Association for Justice | 2007, 2008, 2009, 2010, 2011, 2012, 2013, 2014, 2015, 2016, 2017, 2018 |
| Top 75 Labor & Employment Lawyers | The Daily Journal | 2011, 2012, 2013, 2014, 2015, 2016, 2017 |
| Top 100 Attorneys in Southern California | Southern California Super Lawyers Magazine; Law and Politics Magazine | 2004, 2005, 2006, 2007, 2008, 2009, 2010, 2011, 2012, 2013, 2014, 2015, 2016, 2017 |
| LA CAN Freedom Now Award | The Los Angeles Community Action Network | 2016 |
| Top 10 Attorneys in Southern California | Southern California Super Lawyers Magazine; Law and Politics Magazine | 2005, 2007, 2008, 2009, 2014, 2015 |
| Congressional Award for Outstanding Public Service to the Community | Congressman Howard L. Berman | 2012 |
| Religious Liberty Award | ACLU of Southern California | 2012 |
| Lawyer of the Year – Individuals - Employment Law | Naifeh & Smith – Best Lawyers in America | 2012 |

| | | |
|---|---|---|
| Lawdragon Leading Plaintiff Lawyer | Lawdragon Leading Plaintiff Lawyer Magazine | 2010, 2011 |
| The Top 3000 Lawyers in America | Lawdragon Magazine | 2006, 2010, 2011 |
| 500 Leading National Plaintiff Consumer Lawyers | Lawdragon 500 Leading Plaintiff Consumer Lawyers | 2010 |
| Pro Bono Honor | Chief Judge of the United States District Court for the District of Columbia and The Standing Committee on Pro Bono Legal Services of the Judicial Conference for the District of Columbia Circuit | 2011 |
| Recognized for Distinction in Labor and Employment Law | The American Lawyer | 2011 |
| The 500 Leading Lawyers in America | Lawdragon Magazine | 2006, 2007, 2010 |
| The Top 100 – California's Leading Lawyers - 100 Most Influential Lawyers in California | The Daily Journal | 1998, 1999, 2000, 2001, 2002, 2005, 2006, 2009, 2010 |
| Appellate Lawyer Award | The National Law Journal | 2010 |
| Southern California 50 Leadership Council | RAND Institute for Civil Justice | 2010 |
| Top Lawyers | Labor + Employment | 2010 |

| Honored Member | America's Registry of Outstanding Professionals | 2000, 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008 |
|---|---|---|
| Honored Member | Strathmore's Who's Who | 1996, 1997, 1998, 1999, 2000, 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008 |
| The Wagner Alumni Fellows Award – Law | Wagner College | 2008 |
| Certificate of Recognition | Los Angeles City Council, Eric Garcetti – President | 2007 |
| LGBT Award | ACLU Foundation of Southern California | 2007 |
| Fellow of the Dean's Roundtable | Chapman University School of Law | 2007 |
| The Los Angeles Area's Best Lawyers | Los Angeles Times - West Magazine | 2006 |
| Certificate of Recognition For Outstanding Dedication to the Community | California State Senate | 2006 |
| Certificate of Appreciation In Honor of Dedication to Social Justice in the City of Los Angeles | Los Angeles City Council | 2006 |
| Social Justice Award | Occidental College - Urban & Environmental Policy Institute | 2006 |

| | | |
|---|---|---|
| The 500 Leading Litigators in America | Lawdragon Magazine | 2006 |
| Certificate of Recognition for Human Rights Legal Representation | California State Assembly | 2006 |
| Joseph Posner Award | California Employment Lawyer's Association | 2005 |
| Certificate of Recognition for Fighting Discrimination | California State Assembly Resolution | 2005 |
| Robert Kenny Award | National Lawyers Guild | 2005 |
| Fellow of the College | Governors of The College of Labor and Employment Lawyers | 2004 |
| Top 5 Employment Lawyers in California | Chambers Publishing - America's Leading Business Lawyers | 2003 |
| Los Angeles Office of the City Attorney's Commendation | For outstanding contribution to the citizens of Los Angeles | 1995 |
| California Lt. Governor's Commendation | For longstanding commitment to ensure equal justice and for service to the community | 1995 |
| California Assembly Resolution | Commitment to Civil Rights, Constitutional Law and Public Interest Law | 1995 |

| Pursuit of Justice Award | California Women's Law Center | 1995 |
|---|---|---|
| Top 10 Labor & Employment Lawyers in California | The Daily Journal | 1991 |
| Clarence Darrow Award | People's College of Law | 1991 |
| Hollywood Fair Housing Council Award | Hollywood Fair Housing Council | 1989 |
| Pro Bono Firm of the Year | Public Counsel | 1987 |
| Pro Bono Service Award | Legal Aid Foundation of Los Angeles | 1986 |

**Other Activities**

- Rim of the World Special Athletes – Board of Directors
- Adaptive Recreation Center's Foundation – Board of Directors
- Professional Ski Instructors of America/American Association of Snowboard Instructors
  - Adaptive Committee – Western Region – Chair
  - Adaptive Committee – National
  - Seniors Committee – Western Region – Chair
  - Seniors Committee – National
  - Ed Staff – Western Division Adaptive/Seniors
- Board of Directors – Big Bear Therapeutic Riding Center
- Adaptive Adventures Unlimited – Board of Directors
- Tahoe Adaptive Competition Center – Founding Member
- Silverlake Parks and Recreation - Sports Board
- Echo Park/Silverlake People's Child Care Center
- Volunteer Coaching
- John Marshall High School – Assistant Tennis Coach – Boys & Girls Varsity
- Various Youth Sports Leagues – Baseball (ages 6-adult), Soccer (ages 6-15), and Basketball (ages 6-15)
- Professional Ski Instructors of America (Focusing on teaching persons with disabilities, as well as Seniors, Alpine and Children's instruction)
- "The Edge" – Professional Ski Instructors of America Magazine

Ex. B

# PUBLISHED CASES

***United States Supreme Court:***

1.      In National Aeronautics and Space Administration (NASA) v. Nelson, 131 S. Ct. 1755 (2010), I co-counseled for respondent scientists, engineers, and administrative personnel contract employees working for California Institute of Technology (Caltech) at the Jet Propulsion Laboratory (JPL).  We urged the Supreme Court to hold that NASA's background investigation into confidential medical treatment or counseling for drug use and adverse information including private sexual matters of low-risk, long-time employees, violated the employees' Constitutional right to informational privacy.

2.      In County of Riverside v. McLaughlin, 111 S.Ct. 1661 (1991), I argued before the Supreme Court that the County of Riverside's practice of exceeding a 48-hour period in making probable cause determinations of arrested individuals was unconstitutional.  The Supreme Court held that the County of Riverside was not immune from systemic challenges such as this class action.

3.      In the matter of Wayte v. United States, 105 S.Ct. 1524 (1985), I was co-counsel for David Wayte.  We urged the Supreme Court to hold the Government's passive enforcement system for Selective Service nonregistrants and its policy to persuade nonregistrants to change their minds violated the First and Fifth Amendment.

4.      I filed an amicus brief in Heckler v. Campbell, 103 S.Ct. 1952 (1983), urging the Supreme Court to affirm the decision of the Court of Appeals which held the Secretary of Health and Human Services' guidelines setting forth rules to determine whether a job existed for a disability benefits claimant did not provide adequate evidence of specific alternative jobs that respondent could perform.

5.      In Kolender v. Lawson, 103 S.Ct. 1855 (1983), I filed an amicus brief

urging the Supreme Court to affirm the decision of the Court of Appeals, which held that a California statute requiring persons who loiter or wander on the streets to identify themselves when requested by a peace officer was constitutionally vague on its face because it encouraged arbitrary enforcement.

6.      In <u>Youngberg v. Romeo</u>, 102 S.Ct. 2452 (1982), I filed an amicus brief on behalf of Mental Health Advocacy Services <u>et al.</u> urging the Supreme Court to protect respondent's constitutional right to safe conditions of confinement and freedom from unreasonable bodily restraints.

7.      In <u>Cabell v. Chavez-Salido</u>, 102 S.Ct. 735 (1982), I was co-counsel on appellees' brief arguing that a California statute that required probation officers to be United States citizens was unconstitutional.

***Federal Courts of Appeal:***

8.      In <u>Obaydullah v. Obama</u>, 609 F.3d 444 (2010), I was co-counsel for a Guantanamo Bay inmate.  We successfully obtained a trial on his petition for writ of habeas corpus.

9.      In <u>Doe v. Wal-Mart Stores, Inc.</u>, 572 F.3d 677 (9th Cir. 2009), I was co-counsel for workers in defendant's suppliers' garment factories in China, Bangladesh, Indonesia, Swaziland, and Nicaragua, as well as in California.  We argued that defendant was negligent in undertaking and retaining control of contracts with its suppliers, and breached these supply contracts by failing to adequately monitor suppliers' factories to ensure compliance with basic labor standards that suppliers were required to meet.  Moreover, we argued that defendant imposed difficult time and price requirements on suppliers to force suppliers to violate the standards. We argued defendant's breach resulted in harm to plaintiffs, who were third party beneficiaries to the contract, including lost pay and benefits for California workers due to unfair competitive disadvantage, and various poor working conditions for foreign workers, including excessive hours or

days of work, withheld pay, confiscation of withheld pay, overtime without pay, less than minimum-wage pay, denial of overtime pay, less than required rest periods, lack of safety equipment, denial of maternity benefits, discrimination because of union activities, and physical abuse.

10.    In the United States Court of Appeals for the Ninth Circuit in the matter of Boyd v. City of Hermosa Beach, 321 Fed. Appx. 584 (9th Cir. 2009), I was co-counsel for citizens subjected to police force while exercising their First Amendment rights.  I successfully urged the court to uphold the lower courts denial of qualified immunity to one defendant sergeant for his unlawful and excessive use of force against one plaintiff picketer when he pushed her twice though she was not committing any dangerous crime, did not pose any threat to the officer, was not resisting arrest, and was not attempting to flee.

11.    In the United States Court of Appeals for the Ninth Circuit in the matter of Nelson v. NASA, 530 F.3d 865 (9th Cir. 2008), we were counsel for JPL employees in non-sensitive "low risk" positions who were subjected to defendant NASA's extensive and unlawful background investigation of appellants.  We successfully argued that questionnaires that asked low risk contract employees to disclose information considering financial integrity, abuse of alcohol and/or drug abuse, any treatment or counseling received for drug abuse, mental or emotional stability, and to sign an open-ended waiver authorizing the government to collect "*any* information ... from schools, residential management agents, employers, criminal justice agencies, retail business establishments, or other sources of information" "includ[ing], but ... not limited to ... academic, residential, performance, attendance, disciplinary, employment history, and criminal history record information" implicated a constitutional right to informational privacy, and the government failed to demonstrate the questions were narrowly tailored to meet legitimate government interests.  I also successfully moved for denial of rehearing

*en banc*.  See Nelson v. NASA, 568 F.3d 1028, 1029 (9th Cir. 2009).

12.     I was co-counsel in Paige v. California, 233 Fed. Appx. 646 (9th Cir. 2007), where we represented a minority employee and similarly situated minority employees in the California Highway Patrol (CHP).  Using statistical evidence of disparate treatment to support a claim that plaintiffs were excluded for promotions under Title VII through the to use of CHP promotional examinations for a particular period of time, I successfully urged the court to find error in the district court's rejection as insignificant any of the statistical results we offered on behalf of our clients showing a disparity of greater than 1.96 standard deviations.  The court rejected the district courts use of a threshold higher than 1.96 standard deviation as a result of our work.

13.     In Merritt v. Am. Stores Co., 154 Fed. Appx. 637 (9th Cir. 2005), I was co-counsel for employees who sued defendant Lucky Stores for hostile work environment.  We successfully appealed the district courts motion for summary judgment against our clients due to their erroneous finding that the incidents alleged were not serious enough to overlook their infrequency and not severe enough to change the conditions of employment.  In fact, we presented evidence sufficient to reverse the district courts finding and remand for further consideration.

14.     As co-counsel for a flight attendant with a disability in Salisbury v. Delta Air Lines, Inc., 126 Fed. Appx. 368 (9th Cir. 2005), we argued defendant employer failed to reasonably accommodate plaintiff's disability, discriminated against due to her disability, subjected her to adverse employment action when it demoted her from flight attendant to a clerical position, and failed to engage plaintiff in a good faith interactive process to reasonably accommodate her as required by California's Fair Employment and Housing Act.

15.     In the case of John Doe v. Unocal Corp., 2002 U.S. App. LEXIS

19263, at *1 (9th Cir. Dec. 3, 2001), I was co-counsel for plaintiffs who were workers from Myanmar, formerly Burma. We argued that the Myanmar government, in joint venture with UNOCAL Corp. and other entities had perpetrated numerous human rights violations including forced labor, physical violence, and forced relocation. The Ninth Circuit held that there was sufficient evidence to preclude summary judgment on whether the defendants aided and abetted the Myanmar military in subjecting the workers to forced labor, murder, and rape. The case was remanded to the district court.

16.     Standing Committee on Discipline of U.S. Dist. Court for Cent. Dist. Of California v. Yagman, 55 F.3d 1430 (9th Cir. 1995), I filed an amicus brief in support of an attorney against whom disciplinary proceedings were brought for exercising his First Amendment rights by making statements criticizing a judge.

17.     In the United States Court of Appeals for the Ninth Circuit in the matter of American-Arab Anti-Discrimination Committee v. Reno, 70 F.3d 1045 (9th Cir. 1995), I was co-counsel for appellants who claimed that the Immigration and Naturalization Service had selectively enforced immigration laws in violation of appellants' First Amendment rights. The Court of Appeals for the Ninth Circuit affirmed the United States District Court for the Central District in California's decision to grant a preliminary injunction against the INS in the proceedings to deport six of the plaintiffs, and vacated the decision that the District Court lacked jurisdiction to consider the selective enforcement claim of the two remaining plaintiffs.

18.     In Stewart v. Gates, 987 F.2d 1450 (9th Cir. 1993), I argued the district court's award of attorneys' fees in an underlying civil rights litigation concerning prison conditions in Orange County, California should not be reversed because the fees were "reasonable" in light of the Kerr factors – novelty or difficulty of the case, the preclusion of other employment, time limitations, the

amount at stake, the results attained and the undesirability of the case – and a fee enhancement was necessary to the determination of a reasonable fee.

19.    In <u>McLaughlin v. County of Riverside</u>, 888 F.2d 1276 (9th Cir. 1989), I successfully argued before the Ninth Circuit Court of Appeals on behalf of a claim of detainees seeking to enjoin the County of Riverside's practice of exceeding a 48-hour period while making probable cause determinations of arrested individuals.

20.    In <u>Martinez v. Winner</u>, 771 F.2d 424 (10th Cir. 1985), I participated in Appellant's brief claiming that defendants deprived plaintiff of his civil and constitutional rights and conspired to get plaintiff into prison on unsubstantiated criminal charges.

21.    In the matter of <u>Morales-Alvarado v. INS</u>, 655 F.2d 172 (9th Cir. 1981), I was counsel for petitioner and argued that the Board of Immigration Appeals improperly considered petitioner's criminal conviction in exercising its decision to deny petitioner's application for voluntary departure.

22.    In <u>Leeds v. Watson</u>, 630 F.2d 674 (9th Cir. 1980), I successfully argued for appellants before the Ninth Circuit Court of Appeals that conditions in the Kootenai County Jail (Idaho) were not fit for the confinement of prisoners.

23.    I was counsel in <u>Hooker v. United States Department of Health and Human Services</u>, 858 F.2d 525 (9th Cir. 1988), and argued that plaintiff's husband's disability benefits had been wrongfully terminated in a manner which should allow Tort liability.

***Federal District Courts***:

24.    In <u>Pierce v. County of Orange</u>, —F. Supp.2d—, 2011 WL 68843 (C.D. Cal.), I was co-counsel in a class action representing pretrial detainees in the county jail.  We successfully argued that physical barriers to accessibility of jail facilities and certain categories of programs, services, and activities which were

not available to the mobility-impaired and dexterity-impaired sub-class of detainees, violated the Americans with Disabilities Act (ADA).

25.     In <u>Rosenstock v. L.A. Unified Sch. Dist.</u>, 2009 U.S. Dist. LEXIS 108187 (C.D. Cal. 2009), I was counsel for an employee of Millikan Middle School under the Los Angeles Unified School District and successfully presented evidence sufficient to withstand summary judgment of plaintiff's hostile work environment, sexual harassment, and retaliation claims, and defeated the defendant's argument that plaintiff failed to exhaust her administrative remedies because she only alleged "harassment" in her DFEH/EEOC charge.  In addition to arguing that my client was subjected to unwelcome sexual advances by her supervisor both inside and outside the workplace that were "sufficiently work-related", which constituted sexual harassment within the meaning of the Title VII, I also successfully argued that the test to determine whether a plaintiff exhausted administrative remedies is whether the discriminatory acts in the lawsuit are likely or reasonably related to the allegations in the administrative charge, rather than simply observing which box was checked off on behalf of the plaintiff in the DFEH/EEOC forms, as defendants argued.

26.     In <u>Bardzik v. County of Orange</u>, 605 F. Supp. 2d 1076 (C.D. Cal. 2009), I was co-counsel for a police lieutenant who, in retaliation for the exercise of his First Amendment rights in supporting the political challenger of Sheriff Corona, the County of Orange County and the Orange County Sheriff Department rescinded a promised promotion, denied pay raises, prevented further promotion, transferred the lieutenant to a less prestigious position, and fabricated wrongdoing by the lieutenant, which resulted in an internal investigation.  I argued that the lieutenant's duties and role were not that of a policy-making position where political affiliation was a reasonably appropriate requirement for the job, and even if they were, the retaliation against him exceeded the scope of the policymaker

7

exception; that defendants engaged in unnecessary harassment against the lieutenant, that the retaliation was motivated to further a scheme of corrupt activities, and that the lieutenant's claims were not barred by qualified immunity. The court denied the defendant's motion for summary judgment on my client's First Amendment claim.

27.     In Wang v. Chinese Daily News, Inc., 2008 U.S. Dist. LEXIS 82538 (C.D. Cal. 2008), I was co-counsel for a class consisting of former and current employees of a newspaper based in Los Angeles which was found by a jury to have violated the Fair Labor Standards Act (FLSA), the California Business and Professions Code, and sections of the California Labor Code.  We successfully argued the newspaper failed to give plaintiffs meal and rest breaks, to pay overtime, and to pay for vacations, resulting in a jury verdict in favor of plaintiffs on all causes of action and an award of over $5.2 million in employment law and wage and hour damages, which was upheld by the United States District Court for the Central District of California.

28.     In Nguon v. Wolf, 517 F. Supp. 2d 1177 (C.D. Cal. 2007), I was co-counsel for a female high school student who was suspended for "inappropriate public display of affection" due to kissing another female student on campus.  I argued that the defendant school officials violated the student's right to equal protection and her First Amendment right to freedom of expression by disciplining her, and her privacy right under the California Constitution when the principal disclosed to the student's mother, who was unaware of her daughter's sexual orientation until the disclosure, that she had been kissing another girl.

29.     In Fitzgerald v. City of Los Angeles, 485 F. Supp. 2d 1137 (C.D. Cal. 2007), I was co-counsel for residents of a city who, after initially filing suit against defendant law enforcement officials alleging that the officials' policy of arbitrarily stopping, detaining and searching individuals or groups of individuals who

appeared to be homeless, or appeared to be residents of the area in question, violated their Fourth Amendment rights, entered into a settlement agreement with law enforcement, which included a permanent injunction prohibiting searches in question.  I argued for the extension of the injunction, which the court granted for a period of four months, holding that arbitrary, capricious or harassing searches of all individuals, regardless of their probation or parole status, violated both federal and California law.

30.    In C.N. v. Wolf, 2006 U.S. Dist. LEXIS 97121 (C.D. Cal.2006), I filed a Motion *in Limine* to exclude the testimony of the School defendant's expert on the grounds that his testimony was not within the ken of expert testimony and that he was not timely designated.  I also successfully defeated several Motions *in Limine* filed by defendant, including a motion to exclude evidence of a 2001 disciplining of a same-sex female couple at the school, as it was evidence relevant to plaintiff's showing of disparate treatment; a motion to exclude evidence of emotional or psychological injury sustained by plaintiff as part of pain and suffering; and a motion to exclude three photographs that depicted heterosexual students engaging in inappropriate public displays of affection, or "PDA", because the court recognized that a high prevalence of PDA may have been sufficient to establish that administrators saw, or ignored, PDA among heterosexual couples.

31.    In Wang v. Chinese Daily News, Inc., 236 F.R.D. 485 (C.D. Cal 2006), after the court issued an order approving class notice, and after plaintiffs mailed notice to putative class members and defendants provided notice and opt-out forms in its workplace, we filed a motion to invalidate the returned opt-outs, to restrict defendants' communications with the class, and for post-judgment curative notice, due to circumstances surrounding the opt out period.  The court found that the opt-outs submitted in the lawsuit were a product of a coercive environment that pressured employees to opt out lest they risk losing their jobs, and coupled

with the ongoing employer-employee relationship between the class and defendants, were not a product of independent decision-making and thus invalid. The court also granted our remaining motions, sustained our objections to the statements of four employees because they were members of the class for purposes of injunctive and declarative relief, and overruled several of defendants' objections to statements by four employees and other witnesses.

32.     In the matter of Bowoto v. Chevron, 2004 U.S. Dist. LEXIS 4603 (2004), I was co-counsel for plaintiffs who were Nigerian workers.  We argued that Chevron, along with its foreign subsidiaries in Nigeria, and in joint venture with the Nigerian government, perpetrated numerous human rights violations. The violations included firing live ammunition at workers staging a protest on Chevron Texaco Corporation's subsidiary Chevron Nigeria Limited's oil platform, killing two workers.  The defendants filed motions for summary judgment on all plaintiffs' federal claims and pendent state law claims.  The Court determined that the plaintiffs' claims as to Chevron Nigeria Limited's liability based on an agency, aiding and abetting, and ratification theory would proceed forward.  The District Court granted defendants' motion for summary judgment as to Chevron's direct liability and alter-ego liability.

33.     In the matter of Cummings v. Western Trial Lawyers Ass'n, 133 F. Supp.2d 1144 (D. Ariz. 2001), I was co-counsel on behalf of defendants in an action brought by a former full-time executive director who alleged causes of action for defamation, breach of contract, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, intentional interference with a business relationship, false light, and quantum meruit.  The court granted our motion to dismiss as to plaintiff's intentional interference with business relationship claim.

34.     In the case of York v. County of El Dorado, 119 F. Supp. 2d 1106

(E.D. Cal. 2000), I was co-counsel for a class of plaintiff prisoners who sued the defendant county over conditions at the county's jails, such as the overcrowded jail populations at the Placerville and South Lake Tahoe jail facilities. By formal agreement, the plaintiff class and defendant county agreed to a limit on jail population. The stipulation and order of the court approving the settlement agreement had no provision for the court's retention of jurisdiction for enforcement. The defendant county moved to terminate the injunctive or prospective relief contained in the settlement. The court denied the defendant's motion for lack of jurisdiction.

35.    In the case of John Doe v. Unocal Corp, 110 F. Supp. 2d 1294 (C.D. Cal. 2000), I was co-counsel for plaintiffs who were workers from Myanmar, formerly Burma. We argued that the Myanmar government, in joint venture with UNOCAL corp. and other entities had perpetrated numerous human rights violations including forced labor, physical violence, and forced relocation. The defendant filed motions for summary judgment on all plaintiffs' federal claims and pendent state law claims. The District Court granted defendant's motion for summary judgment as to plaintiffs' federal claims and remanded the pendent claims back to state court.

36.    In the case of John Doe v. Unocal Corp., 67 F. Supp. 2d 1140 (C.D. Cal. 1999), I was co-counsel for plaintiffs who were workers and residents of Myanmar, formerly Burma. We argued that plaintiffs should be granted class certification on the grounds that plaintiffs faced future injury based on defendant's conduct. The District Court denied our motion for class certification but held that plaintiffs could assert their individual claims because they faced a substantial probability of forced repatriation.

37.    In the case of John Doe v. Unocal Corp., 27 F. Supp. 2d 1174 (C.D. Cal. 1998), I was co-counsel for plaintiffs who were farmers and residents of

Myanmar, formerly Burma.  We argued that UNOCAL Corp., along with the Myanmar government, and Total S.A., a French Corporation, had perpetrated human rights violations in furtherance of defendants joint venture.  Defendant Total S.A. filed a motion to dismiss for lack of personal jurisdiction.  The District Court granted Total S.A.'s motion.

38.     In the case of <u>John Doe v. UNOCAL Corp</u>., 963 F. Supp. 880 (C.D. Cal. 1997), I was co-counsel for plaintiffs who were workers and residents of Myanmar, formerly Burma.  We argued that UNOCAL, in a joint venture with the Myanmar government and other entities had perpetrated numerous human rights violations including but not limited to physical violence, forced labor, forced relocation, false imprisonment, rape, and murder.  Defendant filed a motion to dismiss plaintiffs' complaint. The District Court denied the motion in part and granted in part.  The court denied defendant UNOCAL's Fed. R. Civ. P 12(b)(6) motion.  The court held that SLORC (the Myanmar government), and MOGE, were entitled to sovereign immunity and were not indispensable parties under Fed. R. Civ. P. 19.  The District Court further held that subject matter jurisdiction over the remaining plaintiffs was available under the Alien Tort Claims Act.  The District Court granted plaintiffs' leave to amend on the issues of continuing violations and a claim brought under the California Business and Professions Code.

39.     In the matter of <u>Bureerong v. Uvawas</u>, 922 F. Supp. 1450 (C.D. Cal. 1996), I was counsel for plaintiffs who were workers from Thailand and argued that plaintiffs had been falsely imprisoned and employed in a system of involuntary servitude.  The common law claims and the FLSA claims were presented in a unique fashion.  The court ruled that we had properly stated a cause of action.  See also <u>Bureerong v. Uvawas</u>, 167 F.R.D. 83 (C.D. Cal. 1996) and <u>Bureerong v. Uvawas</u>, 959 F.Supp. 1231 (C.D. Cal. 1997).

40.    In the case of <u>Richard v. City of Pasadena</u>, 889 F. Supp. 384 (C.D. Cal. 1995), I was counsel for plaintiff whom the court determined to be the prevailing party and awarded plaintiff attorneys' fees against the City of Pasadena.

41.    In <u>American-Arab Anti-Discrimination Committee v. Reno</u>, 883 F. Supp. 1365 (C.D. Cal. 1995), the District Court had granted a preliminary injunction against the selective enforcement of immigration laws and had issued a permanent injunction against the use of undisclosed information to adjudicate appellants' legalization applications.

42.    In the matter of <u>Ragge v. MCA/Universal Studios</u>, 165 F.R.D. 601 (C.D. Cal. 1995), I was counsel for plaintiff and filed a successful Motion to Compel Production of resumes and job applications in the personnel files of named defendants.

43.    In another Federal Rules Decision, <u>Ragge v. MCA/Universal Studios</u>, 165 F.R.D. 605 (C.D. Cal. 1995), I argued that two conditions be attached to the mental examination of my client.  First, that the tests to be conducted be disclosed in advance of the examination and second, that a third party observer be present at the examination.

44.    In <u>Bullfrog Films v. Catto</u>, 815 F. Supp. 338 (C.D. Cal. 1993), I was counsel for plaintiffs who were granted attorneys' fees, costs, and expenses against the United States.

45.    In the matter of <u>Benson v. County of Orange</u>, 788 F. Supp. 1123 (C.D. Cal. 1992), I was counsel for plaintiffs and argued for an injunction against the County's reduction of jail visitation times.

46.    I was counsel for plaintiff in <u>Kaiser v. County of Sacramento</u>, 780 F. Supp. 1309 (E.D. Cal. 1991), and argued for a preliminary injunction to provide adequate legal access to law books and legal assistance.

47.    In the matter of <u>Lopez v. Heckler</u>, 572 F. Supp. 26 (C.D. Cal. 1983), I

was counsel for a class of plaintiffs that were challenging the procedure used to terminate Social Security disability benefits.

48.     In the case of U.S. v. Wayte, 549 F. Supp. 1376 (C.D. Cal. 1982), I was co-counsel for a defendant who had been indicted for failing to register for the draft under § 3 of the Military Selective Service Act.  We filed a motion to dismiss the indictment on the grounds that the United States failed to rebut the court's prima facie finding of selective prosecution.  The court granted defendant's motion and dismissed the indictment because defendant showed that the United States could have located non-vocal non-registrants but chose not to and that defendant was singled out for prosecution because he exercised his right to free speech under the First Amendment of the United States Constitution.

49.     In Champagne v. Hygrade Food Products, Inc., 79 F.R.D. 671 (E.D. Wash. 1978), I was counsel for plaintiff and submitted a motion to take oral depositions by non-stenographic means and to record the proceedings by a separate tape recorder.  Plaintiffs' motion was granted.

**California Supreme Court**:

50.     Rosenthal v. Great Western Financial Securities Corp. (1996) 14 Cal.4th 394.  This was an action in which the Supreme Court of the State of California interpreted, among other things, the applicability of the United States Arbitration Act to California courts.  The Court also determined what the standards were for setting aside an arbitration agreement.  I argued this matter before the Court.

51.     I was counsel for appellants in Del Monte v. Wilson (1992) 1 Cal.4th 1009, and argued before the Supreme Court of California that a statute that conditioned the distribution of veterans' benefits on California residency violated appellants' constitutional right to equal protection of the laws.  The court affirmed the decision of the Court of Appeals in Del Monte v. Deukmejian (1991) 1

Cal.App.4th 1213, and found the statute violative of the equal protection clause of the Fourteenth Amendment of the United States Constitution. I argued this matter before the California Supreme Court.

52. In the matter of City of Torrance v. Transitional Living Centers for Los Angeles, Inc. (1982) 30 Cal.3d 516, I filed an amicus brief on behalf of Respondent urging the court to affirm the trial court's decision to deny a preliminary injunction that would prevent the Defendant from maintaining a facility for mental patients in a classified zone of the Appellant City of Torrance. **California Courts of Appeal**:

53. In Grobeson v. City of Los Angeles, 190 Cal.App. 4th 778 (2d Dist. 2010), as co-counsel for appellant in his discrimination, retaliation and constructive discharge case, we were successful in upholding the trial court's order granting a motion for a new trial on the ground of juror misconduct.

54. In the education-rights action of Coachella Valley Unified School Dist. v. State of California (2009), 176 Cal. App. 4th 93, I was co-counsel to nine public school districts challenging California's failure to comply with the No Child Left Behind Act with respect to students who are not yet proficient in English. We challenged defendant's refusal to provide reasonable accommodations on assessments of students with limited English proficiency, and explained how California, unlike fourteen other states, refuses to utilize a Spanish-language test or a modified-English language test that reduces unnecessary linguistic complexity. See also Coachella Valley Unified Sch. Dist v. California, 2005 U.S. Dist. LEXIS 44825 (N.D. Cal. 2005).

55. In Cundiff v. Verizon, California, Inc. (2008), 167 Cal. App. 4th 718, after securing a settlement for three main sub-classes of consumers of a 170,000-member class who were wrongfully charged for obsolete or nonexistent telephones for fifteen years without their knowledge by the defendant telephone

companies, we filed a motion to amend the judgment in order to direct the settlement administrator to pay approximately $414,000 in unclaimed funds on a pro rata basis to the charities named in the settlement agreement.  While the trial court rejected the motion, the Court of Appeals reversed and remanded, finding that the definition of "unpaid residue" under section 384 of the Code of Civil Procedure accurately described the unclaimed funds at issue in our case, as indicated by the plain meaning of the words of the statute and its legislative history.

56.     In the matter of <u>Wysinger v. Automobile Club of Southern California</u> (2007), 157 Cal. App. 4th 413, I represented an employee under FEHA who contended he had been unlawfully discriminated and retaliated against by his employer.  I successfully argued that the court uphold the jury's verdict that found that the employer retaliated against my client because he filed an age discrimination claim, and the employer failed to engage in an interactive process regarding his disability, the latter finding which I argued was not inconsistent with the jury's finding that the employer did not fail to provide a required reasonable accommodation to my client for his disability.  The court also found in our favor that the jury award of $1million in punitive damage was not excessive because the employer's conduct supported these damages when a supervisor threatened to "crush managers" who opposed a new compensation plan that disproportionately reduced the compensation of older workers.

57.     In <u>Motevalli v. Los Angeles Unified School District</u>, (2004) 122 Cal.App.4th 97, I represented an LAUSD school teacher who was not rehired because of her political activities.  The court set the standards by which such non-renewal can take place.

58.     In <u>Cundiff v. Bell Atlantic Corp.</u> (2002) 101 Cal.App.4th 1395, I represented a class of consumers who contended that defendant telephone

companies charged them for obsolete or nonexistent telephones for fifteen years without their knowledge.  The trial court sustained defendants' demurrer on the ground that the Public Utilities Commission had primary jurisdiction over the matter alleged in the complaint.  The appellate court disagreed and reversed, holding that the consumers stated facts sufficient to constitute multiple causes of action.

59.    Beyda v. City of Los Angeles (1998) 65 Cal.App.4th 511.  The Court of Appeals on this matter determined the admissibility of evidence of defendant's harassment of other employees.  There had been, prior to this case, questions about whether such evidence was admissible.  The Court in Beyda determined that such evidence is, in fact, admissible under Government Code § 12940 and Title VII of the Civil Rights Act of 1964.  The Court determined that harassment of other individuals was admissible even if the acts were not committed in the presence of the plaintiff.

60.    I represented Appellants before the California Court of Appeals in Planned Parenthood v. City of Santa Maria (1993) 16 Cal.App.4th 685, and argued that the Respondent City of Santa Maria could not condition the receipt of public funds upon the recipient's agreement not to provide abortion services.  The Court of Appeals agreed and affirmed the trial court's decision that a government entity may not offer a grant of public funds on condition that the recipient waive the constitutional right to privacy.

61.    In the matter of Martin v. Fisher (1992) 11 Cal.App.4th 118, I was counsel for Appellant and argued successfully before the Court of Appeals of California that the trial court erred in dismissing appellant's claims against respondent for failure to exhaust administrative remedies.

62.    I was counsel for appellants in Castro v. Los Angeles City Board of Supervisors (1991) 232 Cal.App.3d 1432, and sought a preliminary injunction

against a nonprofit corporation that provided legal services in dependency court because the representation of multiple parties with potentially adverse interests created a conflict of interest within the corporation and among its attorneys.

63.    In the matter of <u>Smith v. State Bar of California</u> (1989) 212 Cal.App.3d 971, I was co-counsel for Appellant and argued that the trial court erred in sustaining the State Bar's demurrer and dismissing appellant's action. Appellant was unable to take the bar examination for which he was registered and sued to compel the State Bar to transfer his fees to a subsequent test.

64.    I have also represented plaintiffs in taxpayer suits.  For instance, in the case of <u>Gates v. Superior Court</u> (1986) 178 Cal.App.3d 301 [prohibition], I was co-counsel on behalf of plaintiff to recover money allegedly spent illegally by defendants.

65.    I was counsel for Appellants in <u>Mental Health Association in California v. Deukmejian</u> (1986) 186 Cal.App.3d 1531, and sought declaratory and injunctive relief to require respondents to create rehabilitative programs for gravely disabled persons as alternatives to treatment at Metropolitan and Camarillo State Hospitals.

66.    In the matter of <u>In re Lambert</u> (1983) 143 Cal.App.3d 239, I was counsel for Appellants and argued that a court order awarding conservator's costs and attorneys' fees from an estate that consists solely of Social Security income violated a federal statute that immunized Social Security benefits from garnishment or other legal process.

***Colorado Supreme Court***:

67.    I argued for appellant in the matter of <u>Augustino v. Colorado Dept. of Revenue</u>, 193 Colo. 273 (1977), that the district court's revocation of appellant's driver's license was a violation of his right to equal protection.

***Washington Supreme Court***:

68.    In the matter of <u>In re Harris</u>, 94 Wash.2d 430 (1980), I represented petitioners before the Supreme Court of Washington.  Petitioners had been committed to state mental institutions under the criminal commitment statue and claimed that they should have been committed under the civil commitment statute.

69.    I was counsel for respondent David Fry in <u>Stack v. Chicago, Milwaukee, St. Paul & Pacific Railroad Company</u>, 94 Wash.2d 155 (1980), and argued before the Supreme Court of Washington that Respondent Chicago, Milwaukee, St. Paul & Pacific Railroad Company could not counterclaim against its injured respondent employees or pursue a third party claim against other employee crew members for property damage allegedly caused by their negligence.  The Supreme Court of Washington affirmed the trial court's dismissal of Milwaukee's counterclaim and third party actions.

70.    In the matter of <u>Brooks v. Rhay</u>, 92 Wash.2d 876 (1979), I represented petitioner before the Supreme Court of Washington.  Petitioner sought relief by writ of habeas corpus challenging the action of the Board of Prisons and Paroles ("Board") that changed the sentencing judge's decision that petitioner's sentence for second-degree assault run concurrently with a sentence for a prior conviction.  The Board changed petitioner's sentence to run consecutively with his prior sentence.  The case was remanded to the trial court for re-sentencing.

71.    I was counsel for appellant in <u>Dawson v. Hearing Committee</u>, Washington State Penitentiary, 92 Wash.2d 391 (1979), and argued before the Supreme Court of Washington that disciplinary hearings in our state prisons are subject to judicial review under the Administrative Procedures Act.

72.    In the matter of <u>In re Myers</u>, 92 Wash.2d 113 (1979), I was counsel for appellant whose husband had taken their children out of Washington and argued that the trial court in Washington had jurisdiction to make child custody

determinations.  The Supreme Court of Washington concluded that the trial court had personal jurisdiction over the parents and subject jurisdiction to decide questions of child custody, support and visitation.

***Washington Courts of Appeal***:

73.     I represented appellant in the Court of Appeals of Washington in Toulou v. Department of Social & Health Services, 27 Wash.App.137 (1980), and argued that the Department of Social & Health Services' rule allowing the department to withhold public assistance payments for two months denied appellant equal protection of the laws.

74.     In the matter of In re Bush, 26 Wash.App.486 (1980), I was counsel for petitioner and challenged the mandatory minimum sentence fixed by the Board of Prison Terms and Paroles.  The Court of Appeals of Washington held that the setting of the minimum term did not comport with procedural due process and remanded to the Parole Board for further proceedings.

75.     I was counsel for appellants in the matter of Rice v. Department of Social & Health Services, 26 Wash.App. 32 (1980), and challenged the validity of a regulation that provides that a person in need of non-continuing general medical assistance must notify the Department of Social & Health Services of that fact within 7 days of the date medical care is begun in order to receive coverage from the onset of care.  The Court of Appeals of Washington ruled that the trial court erred in upholding the 7-day rule.

76.     I was counsel for appellant in the matter of In re Reuben Hernandez, 25 Wash.App. 447 (1980), and sought to revoke an order that relinquished appellant's child to a private agency for adoption because appellant was mentally incompetent when she agreed to give up her child and her consent was procured by fraud.  The Court of Appeal of Washington found insufficient evidence to prove that appellant was mentally incompetent when she agreed to give up her

child or that her consent was procured by fraud.

77.    In the matter of <u>In re Williams</u>, 21 Wash.App. 238 (1978), I was counsel for petitioner who sought relief after consecutive sentences for burglary and possession of stolen property were imposed by the Board of Prison Terms and Paroles ("Board").  I argued before the Washington Court of Appeals that petitioner had entered a guilty plea with the understanding that concurrent sentences would be imposed.  The Court of Appeals held that petitioner was entitled to specific performance of his plea bargain and remanded the case to the Board for resentencing in accordance with the plea agreement.

78.    I represented appellant in the matter of <u>State v. Miller</u>, 22 Wash.App. 960 (1979), and argued that appellant's plea bargain was involuntary induced by the prosecutor.

79.    I was counsel for petitioners in the matter of <u>In re McCoy</u>, 22 Wash.App. 7 (1978), where petitioners sought resentencing after the Board of Prison Terms and Paroles set petitioners' sentences on two convictions to run consecutively.  The court held that resentencing was not required.

80.    After the decision in <u>Brooks v. Rhay</u>, 92 Wash.2d 876 (1979), which overruled <u>McCoy</u>, petitioners in <u>McCoy</u>, <u>supra</u>, sought reconsideration, in the matter of <u>In re McCoy</u>, 25 Wash.App. 600 (1980), I was again counsel for petitioners.  The Washington Court of Appeals ordered that petitioners be returned to Spokane County Superior Court for resentencing.

81.    As this case list demonstrates, I specialize in a wide range of complex civil and civil rights cases, not all of which are listed in the foregoing paragraphs.  My firm is one of the most highly regarded civil rights litigation firms in California.