LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Renee V. Masongsong, Esq. (SBN 281819)
rvalentine@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Telephone: (818) 347-3333
Facsimile: (818) 347-4118

Attorneys for Plaintiffs
R.L., M.L., and H.L., minors, by and through guardian *ad litem* Roberta Haro;
A.W., a minor, by and through guardian *ad litem* Alisha White, ALISHA WHITE

**TONI JARAMILLA, A Professional Law Corp.**
Toni J. Jaramilla, Esq. (SBN 174625)
Toni@tjjlaw.com
1900 Avenue of the Stars, Suite 900
Los Angeles, California 90067
T: (310) 551-3020 | F: (310) 551-3019

**ALEXANDER MORRISON + FEHR LLP**
J. Bernard Alexander, III (SBN 128307)
balexander@amfllp.com
Britt L. Karp (State Bar No. 278623)
bkarp@amfllp.com
1900 Avenue of the Stars, Suite 900
Los Angeles, California 90067
T: (310) 394-0888 | F: (310) 394-0811

Attorneys for Plaintiffs
MICKEL ERICK LEWIS JR, ORIONA LEWIS
and BRIONA LEWIS

-1-
DECLARATION OF V. JAMES DESIMONE, ESQ. IN SUPPORT OF PLAINTIFS' MOTION FOR ATTORNEY'S FEES

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICKEL ERICK LEWIS JR, individually and as successor-in-interest to MICKEL E. LEWIS SR., ORIONA LEWIS, individually and as successor-in-interest; and BRIONA LEWIS, individually and as successor-in-interest,<br><br>　　　　　　Plaintiffs,<br>　　vs.<br>KERN COUNTY, Deputy JASON AYALA, and Does 1–20, inclusive,<br><br>　　　　　　Defendants. | |
| R.L., M.L., and H.L., minors, by and through guardian *ad litem* Roberta Haro, individually and as successors in interest to Michel Lewis Sr., deceased; A.W., a minor, by and through her guardian *ad litem* Alisha White, individually and as a successor in interest to Mickel Lewis Sr., deceased; ALISHA WHITE, individually and as a successor in interest to Mickel Lewis Sr.,<br><br>　　　　　　Plaintiffs,<br>　　vs.<br><br>COUNTY OF KERN; JASON AYALA; and DOES 1-10, inclusive,<br><br>　　　　　　Defendants. | |

-2-
DECLARATION OF V. JAMES DESIMONE, ESQ. IN SUPPORT OF
PLAINTIFS' MOTION FOR ATTORNEY'S FEES

# **DECLARATION OF V. JAMES DESIMONE**

I, V. James, DeSimone, declare as follows:

1. I make this declaration under penalty of perjury and under the laws of the State of California and under the laws of the United States of America. The information contained within this declaration is of my own personal knowledge, and if called upon to do so, I am competent to testify truthfully to the matters stated herein. This declaration is made in support of Plaintiffs' Motion for Reasonable Attorneys' Fees and Costs in the case *of Mickel Lewis, Jr., et.al. v. Kern County et. al.* Case No. 1:21-CV-00378-NONE-JLT.

2. I am the principal attorney and owner of V. James DeSimone Law which opened its doors on October 1, 2015. Prior to opening my own firm, for twenty-five years from 1990 through 2015, I was a partner in the civil rights and employment law firm of Schonbrun DeSimone Seplow Harris & Hoffman LLP. I graduated from Johns Hopkins University in 1981 with a B.A. degree in Political Science. I graduated from UCLA School of Law in 1985 and was admitted to the California Bar that same year. I joined the Law Firm of Beck and DeCorso in 1985, practicing civil litigation and white-collar criminal defense. From 1987 to 1990, I was a staff attorney at Westside Legal Services, in Santa Monica, California, where I was the lead trial lawyer representing lower-income families and individuals who could not afford a lawyer.

3. In 1990, I joined Benjamin Schonbrun to form Schonbrun DeSimone LLP, where I concentrated primarily on the representation of individuals in employment and civil rights matters. In 1999, the firm expanded to add Paul Hoffman as a partner and the name of the firm was changed to Schonbrun DeSimone Seplow Harris & Hoffman, LLP ("SDSHH"). I have tried many cases to verdict over the years. For example, in November of 2007, I was lead trial counsel in the case of *Benham v. Walgreens et al.* in which the jury awarded $2,100,000.00


to the Plaintiff for violation of California's Ralph Civil Rights Act and False Arrest. In October of 2010, I was lead trial counsel in the case of *Taylor-Ewing v. City of Los Angeles*, a jury trial which resulted in a $500,000 judgment in favor of my client in a case involving an LAPD Officer's use of excessively tight handcuffs. In November of 2012, I was lead counsel on the case of *Harris v. City of Los Angeles*, where the jury awarded $1,686,000 to the Plaintiff for violations of Civil Code Section 52.1 and false arrest. In March of 2013, I was lead counsel in the case of *Xue Lu et al. v. United States America* and achieved a $1,200,000 trial verdict on behalf of the two plaintiffs. In January of 2014, I was lead counsel in the case *of Roozrokh v. Loma Linda University Medical Center*, venued in San Bernardino, where the jury awarded $1,500,000 in a defamation action. In March of 2016, I was lead counsel in the case of *Yang v. ActioNet*, a workplace violence and wrongful termination case resulting in a $7,394,000 judgment, including $5,000,000.00 in punitive damages. In May of 2017, I was lead counsel in the case of *Garza v. City of Los Angeles* and achieved a $210,000 verdict, with a finding that the off-duty police officer was acting under Color of Law and in the course and scope of employment when he assaulted plaintiff while arresting him for an alleged kidnapping. In December of 2018, I was lead counsel in *Lopez v. Wheel Group Holdings Inc.* and achieved a $515,000 verdict in a wrongful termination in violation of public policy case, including $500,000.00 in punitive damages. In August of 2019, I was lead trial counsel in the case of *Birden v. UC Regents* where the jury awarded $1.58 million based on racial harassment in violation of the Fair Employment & Housing Act. In April of 2022, in *Kerrigan & Meikle v. Orange County Coroner's Office*, I achieved justice for a family that experienced trauma, pain, and suffering over the Orange County Coroner's misidentification of the body of a deceased homeless person by securing a $1.5 million jury verdict based on negligence and intentional misrepresentation.

4. I was lead counsel for the plaintiff in the precedent-setting case of

*Mogilefsky v. Silver Pictures,* 20 Cal App. 4th 409 (1993), which was the first published California decision to recognize that same-sex harassment violated California's Fair Employment & Housing Act. I was also lead counsel in the reported case of *Griffith v. Davis*, 161 F.R.D. 687 (1995) which held that the plaintiff could discover documents which pertained to the IRS investigation of the shooting death of a young man killed by an IRS special agent, which included the recorded statement of the IRS special agent. Additionally, I was lead appellate counsel in the case of *Johnson v. United Cerebral Palsy et. al*., 173 Cal.App.4th 740 (2009), a precedent-setting case in which the Court of Appeal reversed a summary judgment and directed the trial court to admit evidence of other employees who contended they were subjected to discriminatory conduct similar to that alleged by the Plaintiff (commonly known as "me too" evidence). I was lead appellate attorney and obtained a 9th Circuit published opinion in the case of *Xue Lu et al. v. United States of America,* 621 F.3d 944 (9th Cir. 2010) reversing dismissal of the case against the United States of America while holding an asylum officer was acting in the course and scope of employment when he demanded sexual favors and money in return for approving asylum applications. In or about April 2012, I was lead counsel in the case of *Charlebois v. Angels Baseball*, Case No.SACV10-853-DOC (ANx) a class action case, where we represented a class seeking wheelchair access for disabled persons attending Los Angeles Angels of Anaheim games at Edison Field and prevailed on a contested Motion for Class Certification. Ruling on a contested fee motion after the granting of class certification and beneficial changes for wheelchair users, Judge David O. Carter, in awarding the full fees requested, stated in a written opinion: "Moreover, Class Counsel's firm reputation is prestigious and thus on par with its comparator firms. Class Counsel's firm is a major player in litigating cutting edge international human rights cases. One of the members of Class Counsel, DeSimone, has been named by the Daily Journal among the Top 50 Employment Lawyers in the State of California, inclusive of lawyers

from top international law firms, for three years in a row."

5. I have authored numerous articles on employment and civil rights matters and speak often at bar association events and seminars on these topics. I have taught legal seminars on Trial Tactics & Techniques, Discovery in Police Misconduct Cases, Nuts and Bolts of Settlement Agreements in Employment Law Cases, and Current Trends in California Employment Litigation. Here are some of the continuing education seminars and conferences at which I have spoken: In June of 2007, I taught trial techniques at a seminar hosted by the Los Angeles County Bar on Successful Trial Techniques in Employment Law Litigation. In September of 2007, I was one of the featured speakers at the California Employment Lawyers Association Annual Employment Law Conference on the topic of Winning Don't Come Easy, Tales from Trial Lawyers in the Trenches. In January of 2010, I spoke on a panel hosted by the Los Angeles County Bar Association on the topic of Mastering the Mediation Process, Strategies and Secrets to Maximize Results. In September of 2010, I spoke at a meeting of the Orange County Employment Lawyers Association on the topic of Maximizing Emotional Distress Damages in Mediation and Arbitration. In March of 2011, I was a panelist for the National Employment Lawyer's Association's Seminar on Trial Advocacy for the Plaintiff's Employment Lawyer on the topic of Direct Examination. In September of 2011, I was a featured speaker at the Consumer Attorney Association of Los Angeles Annual Conference on Hot Topics in Employment Law. In October of 2011, I spoke at the California Employment Lawyer's Association's Annual Conference on the topic of Social Media for Employment Law Firms. In February of 2013, I spoke at the Los Angeles County Bar's seminar on the topic of employment law torts and contract causes of action. In May of 2013, I was a panelist at an event hosted by the Santa Monica Bar Association on the Secrets to Success at Trial. In February 2014, I was on a panel sponsored by the National Employment Lawyers Association Los Angeles Chapter speaking on trial tactics. In January of 2015, I was a panelist on

the topic of civil rights trials in State and Federal Court hosted by the Mexican American Bar Association. I was a Speaker and Instructor at CELA Trial Lawyer College every year from 2015 to 2019. In October of 2016, I was a panelist at the Disability Rights Bar Association on the topic of Disability Rights and Gun Violence. In September of 2017, I was a panelist on an expert witness panel on the topic of Federal Expert Witness Discovery at the Consumer Attorneys Association of Los Angeles' annual convention. In March of 2018, I was on a panel on the topic of Focus Groups for the Los Angeles County Bar's Annual Employment Law Symposium. In October of 2019, I spoke on Consumer Attorneys Association of California's Employment Law Panel on the topic of value of employment cases.  In September of 2020, I was a panelist on the topic of Discovery in Disability cases at the annual California Employment Lawyers Association annual conference. In August of 2021, I was a panelist on the topic of prosecuting race discrimination cases for the Alameda Bar Association.  In December of 2021, I was a panelist on the topic of Opening Statements and Closing Arguments sponsored by the Los Angeles County Bar Association. In October of 2022, I was a speaker at the California Employment Lawyer's Association annual conference on the topic of juror voir dire in employment cases.  In February 2023, I was a panelist on CAALA's webinar titled: Keys to Successfully Litigating and Trying Civil Rights Cases.  In May of 2023 and 2024, I was a teacher at the Dordick Trial Lawyer College on the topic of Litigating Civil Rights Cases. In September of 2023, I was a panelist at the annual CELA conference on the topic of "Getting the Full Value Your Clients Deserve.  In November of 2023, I was a panelist at the Consumer Attorneys of California annual conference on the topic of Litigating Civil Rights Cases.  I have been Speaker and Instructor at CELA Trial Lawyer College every year it has been held from 2015 to 2024.   In September of 2023 and 2024, I was a panelist at CAALA's annual convention on the topic of Employment Law Trials. In November 2024, I was a panelist at CAOC's annual convention on the topic of

Civil Rights and Immunities in Civil Rights Law.

6. In 2008, I was one of the finalists for Trial Lawyer of the Year for the Consumer Attorneys Association of Los Angeles. In 2009 to 2011 and from 2013 through 2024, I was honored by the Daily Journal as one of the Top Employment Lawyers in California. In 2022 and 2024, I was honored as a Top Plaintiff Lawyer in the State of California by the Daily Journal. From 2009 through 2024, I have been designated as a Super Lawyer in the area of Employment Attorneys. In 2013 and in 2017 through 2024, I was honored as one of the Top 100 lawyers in Southern California by Super Lawyers. In 2014, I received a CLAY Award as Civil Rights Lawyer of the Year. In 2017, I was a nominee for Trial Lawyer of the Year for CAALA and was honored as a Best Lawyer in America in Employment and civil rights law in 2017 through 2024. In 2017, I was honored as the Westside Bar Association's Trial Lawyer of the Year.  In 2023 and 2024, my law firm was honored as Best Civil Rights Law Firm in Los Angeles by Best Lawyer in America.

7. I am a member of the California Employment Lawyers Association (CELA). Through CELA, I meet or confer with numerous California employment lawyers on a daily basis on a variety of issues in employment cases, including their standard hourly rates. Through my own experience and through my contacts with other attorneys in CELA and the California legal community I am very familiar with the community standards for attorney fees awards in California.

8. I am familiar with the rates charged by plaintiff-side attorneys throughout California as I have had to survey them in connection with fee applications each year, which include requests for myself and also our associates with less experience. I find the requested rates here to be reasonable in part because I am a thirty-five-year lawyer and currently charge $1,200.00 an hour for my services. In 2010, I was awarded attorneys' fees by Judge Carolyn Kuehl where my requested hourly rate was $650.00. Judge Kuehl stated as follows, "With respect to the reasonableness of the attorneys' fees, I looked at this on the basis of the lodestar,

which is the primary way under California state law that we're to look at fee requests. This Court has been aware of the scope of the litigation, which has been extensive and hard fought. The amounts of time that have been required for this litigation have been substantial and the hours requested by counsel reflect that, and so I have no doubt here, looking at reasonable fees in the community, that an appropriate lodestar for this case would be substantially higher than what has been requested by Plaintiffs' counsel and so the fees are reasonable."

9. In 2011, Judge Bernard Zimmerman, in *Waters et al. v. AT&T et al.*, Case No. C 09 03983 BZ, stated with regard to a fee petition my firm submitted, "[a]fter reviewing Plaintiffs' motion for fees and the attached declarations, I find that both the hours expended and the individual billing rates are reasonable." Judge Zimmerman approved my requested hourly rate of $650. In 2011, United States District Court Judge George King approved my rate of $650.00 per hour in an attorneys' fee award after a jury verdict in Plaintiff's favor in the case of *Tesha Taylor Ewing v. City of Los Angeles*, Case No. CV 07 5556 GHK. In 2012, Judge David Carter awarded me $695.00 per hour for a case involving injunctive relief on behalf of wheelchair users in the case of *Charlebois v. Angels Baseball,* Case No. SACV 10-0853 DOC(ANx). The opinion provides persuasive authority that fees to small firms in case involving employment and civil rights issues, including those seeking primarily injunctive relief should be the same as those awarded to larger law firms. In May of 2014, Judge Marshall awarded me $725.00 per hour for work done in 2013 on the *Xue Lu v. United States of America* matter, stating with approval her agreement with expert witness Carol Sobel's Declaration stating, "all the Attorneys at SDSHH are 'exceptionally skilled and experienced and enjoy excellent reputations as civil rights litigators.' Sobel opines that the $725 rate for Mr. DeSimone is well within the market rates …" In October of 2014, Judge Wiley approved my fees at the rate of $750 an hour, in the case of *Meneses et al. v. CVS,* Case No. BC 489739, stating in his Order, "the hourly rates of Class Counsel are

reasonable and in keeping with market rates for comparably complex litigation in Southern California." In 2015, I was awarded $825.00 in several companion cases against CVS. In 2016, Judge Marshall once again awarded attorneys' fees in the *Xue Lu* matter and affirmed the hourly requested rate of $825.00 for me, finding that all requested hours were reasonably expended. In August of 2018, Judge Stephen Wilson, of the United States District Court approved my requested fee of $875.00 an hour in the case of *Garza v. City of Los Angeles*, Case No. CV-03579-SVW(AFM) for work performed in 2017.

10. In February of 2020, Judge Michael L. Stern awarded attorneys' fees in the *Birden v. UC Regents* matter, Case No. BC 663189, and affirmed the hourly requested rate of $1,000.00 for me stating, "[t]he Court agrees that attorney DeSimone's trial experience which were demonstrated in this trial and demonstrated by the awards of attorneys' fees he has received in other cases, merit an hourly rate for compensation in this case commensurate with his trial skills, the risks taken by plaintiff's counsel in a contingent fee case and comparable attorneys' fees awarded by skilled trial attorneys in the legal community."

11. In the case of *Caldera v. Department of Corrections and Rehabilitation,* 48 Cal. App. 5th 601 (2020), the Court cited my declaration with approval while directing the trial court to award market rates and utilize a multiplier in an employment discrimination case. The Court affirmed the rates requested by plaintiff's counsel reversing the trial court's decision to arbitrarily reduce market rates. The Court stated: "In further support of the 2.0 multiplier, attorney DeSimone averred: 'Given the challenges faced on this case, few attorneys would have risked advancing litigation, expert, and trial costs, to say nothing of 'loaning' the plaintiff thousands of attorney hours. …DeSimone went on to opine that the 'published opinion ... will benefit thousands of victims of employment discrimination. Again, the verdict obtained by Mr. Nevell and Mr. Sheldon not only helps the plaintiff in this case, it will also serve to protect thousands of State employees of the CDCR

who have been, or may be in the future, discriminated against and harassed based on a disability or other protected right.'" (*Id*. at 608-609.)

12. The critical importance of having civil rights law firms dedicated to achieving justice in employment cases is well-recognized by the Ninth Circuit as reflected by the Court's opinion in *Moreno v. City of Sacramento*: "'If private citizens are to be able to assert their civil rights, and if those who violate the Nation['s] fundamental laws are not to proceed with impunity, then citizens must have the opportunity to recover what it costs them to vindicate these rights in court.'" *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008), quoting S.Rep. No. 94-1011, at 2 (1976), as reprinted in 1976 U.S.C.C.A.N. 5908, 5910.

13. In my experience in litigation on behalf of plaintiffs on a contingency fee arrangement, the chances of success involve a substantial risk of time, effort, and costs. The nature of this case required a very extensive commitment of time and litigation costs. The challenges faced by attorneys in these kinds of cases, and the risk of loss and delay in payment, is a further basis for the full award of Plaintiff's rates and fees.

14. It is extremely difficult to run a contingency fee practice. Cases frequently take three or more years to settle – longer for trial. Even longer if there is an appeal. In addition to the customary expenses of running a consumer-oriented law practice – staff salaries, office rent, utilities, research services, marketing, insurance, etc. – contingency fee lawyers must advance tens of thousands of dollars on behalf of their clients for litigation costs. Because a contingency fee law practice is so capital intensive – and the income stream is so sporadic and unpredictable – private attorney generals who enforce employment laws is one of the ways the firms stay in business by being compensated with a multiplier on the lodestar fees to adequately compensate for the long delay in payment and risk in not being paid at all.

15. Our civil rights rely almost entirely on private enforcement by private lawyers. While there are government agencies to enforce some (but not all) civil rights laws, they tend to be underfunded and overworked. The average worker cannot afford an attorney. Contingency fee attorneys are therefore critical to enforcing some of our most important laws. Fair attorney fee awards are critical to encouraging attorneys to incur the considerable risk of enforcing civil rights laws.

16. I am familiar with hourly rates charged by attorneys throughout California whose training and experience are similar to mine, and my rate is competitive in the market. Generally, rates of similarly trained attorneys for complex civil litigation, such as employment law cases, vary from $350.00 to $1500.00 an hour. There are exceptions and both ends of that range. My current hourly rate is $1200, which is based on my results and years of experience.

17. I understand that the verdict was $30.5 million total. Plaintiffs' attorneys achieved an outstanding result on a difficult case. Many contingency fee lawyers will not take cases and/or continue with cases against a public entity due to the complexity of litigation and the fact that they will not reasonably settle. It may take years to get paid because cases against public entities usually end up in a trial.

## MS. JARAMILLA'S REQUESTED RATES ARE REASONABLE

18. I understand that Ms. Jaramilla is seeking attorneys' fees in this case at an hourly rate of $1,125.00 per hour. This is in line with fees being charged by trial attorneys in civil rights cases at her skill and experience level.

19. I have personal knowledge of Ms. Jaramilla's litigation skills and tenacity in difficult cases, such as wrongful death claims. Typically, in the Southern California area, attorneys with Ms. Jaramilla's skills, experience and abilities charge anywhere from $1000 to $1,500 per hour, if not more. Therefore, I fully support her claim for fees at $1,125 per hour.

20. I have known Ms. Jaramilla for over fifteen (15) years. She and I were instructors in the annual Trial College by the California Employment Lawyers

Association (CELA). In addition, Ms. Jaramilla and I co-counseled on numerous cases together, including a wrongful death case which was set for jury trial in Riverside. After over 4 years of litigation, the case ultimately settled for over $2,000,000, in large part due to Ms. Jaramilla's litigation skills and attention to the case and our two clients. I can attest to the high level of skill, knowledge, and strategical thinking that Ms. Jaramilla exemplifies.

21. Ms. Jaramilla's reputation in the community is outstanding. She is known to take on difficult cases against large and powerful defendants and litigates tenaciously to a successful outcome, whether by a favorable jury verdict, award, or large settlement. She achieved a $4.75 million settlement, one of the largest for a single plaintiff, non-lethal police excessive force case in 2023.

22. Ms. Jaramilla is a frequent speaker at seminars before the legal community and has taken on leadership positions former Chair of the California Employment Lawyers Association (CELA) and is a board member of the National Employment Lawyers Association (NELA). She has also served as a CELA Trial College instructor for the past several years, as I have.

## MR. ALEXANDER'S REQUESTED RATES ARE REASONABLE

23. I understand that J. Bernard Alexander, III is seeking attorneys' fees in this case at an hourly rate of $1,250.00 per hour. This is in line with fees being charged by trial attorneys in civil rights cases at his skill and experience level.

24. I have known Mr. Alexander for over sixteen (16) years and am very familiar with his reputation in the legal community. I know him to be one of the best trial attorneys in California and has been given numerous Trial Lawyer of the Year awards by the San Francisco Trial Lawyers Association (2024), Langston Bar Association (2023) and Consumer Attorneys Association of Los Angeles (2022).

25. Mr. Alexander is a frequent speaker at legal seminars and started the California Employment Lawyers Association, Trial College which I served as an instructor and presenter on trial skills. I have observed him in trial and speaking

and teaching at numerous legal education events. His skill, knowledge, and dedication are unparalleled and he is truly one of the best trial lawyers in California.

## NECESSITY FOR A MULTIPLIER

26. I understand that Plaintiffs' counsel took this case on a purely contingent fee basis against Defendants.

27. I understand that Defendants aggressively defended the case and forced the Plaintiffs to trial. I understand that based on evidence presented by Plaintiffs' trial team, they persuaded the jury to award each of the seven children of the decedent $3.4 million, and to award pre-death pain and suffering of $1,000,000 and Loss of Life damages of $5,000,000, for a total of $30.5 million. This is one of the largest awards for a single plaintiff, wrongful death by police shooting case in California.

28. The outcome of this difficult public entity case reflects the exceptional legal skills by the coordinated efforts of the Plaintiffs' respective legal teams. Ultimately, the result is evidence of Plaintiffs' counsel's outstanding ability. In purely contingency fee cases, such as this one, the attorney must pay careful attention to the economics involved because they are carrying the costs, usually on a line of credit or out of their bottom line. This can significantly affect the financial health of the entire firm. A bad outcome could result in hundreds of thousands of dollars of loss, which can never be recouped since most plaintiffs can never afford to repay the costs expended. Thus, attorneys taking on the enormous risk of contingent cases anticipate that they will, if successful, receive a fee that well exceeds their normal hourly rate; otherwise, the risk is often too great to bear. Contingent cases also present the very real risk of working hundreds if not thousands of hours that may never be entirely compensated. Moreover, while the case is being litigated, counsel must pay overhead (salaries, rent, etc.) and provide for their own expenses while waiting for a case to resolve which usually takes years.

29. In my experience, an enhancement of the hourly rate by a factor of at least 2.0 is necessary to make the fee in such contingent cases reasonable, and to make it feasible for attorneys to continue taking such cases of public importance.

30. Based on my discussions with other attorneys who represent plaintiffs in contingent civil rights/employment litigation, it is the expectation within the community that a multiplier or enhancement will be awarded when a plaintiff prevails given the real risk of that representation, *e.g.* outright loss, a less than fully compensatory result, preclusion of other work, or delay in payment. An award of the lodestar amount without an enhancement does not adequately compensate the attorney for this contingent risk. Given the contingent nature of this representation, the preclusion of other work that necessarily results from a trial, the outstanding result obtained, and the excellence the lawyers exhibited in trying and litigating this matter, I believe that a multiplier of 2.0 or more of the lodestar is reasonable and necessary in this case.

I declare under penalty of perjury under the laws of the State of California and under the laws of the United States of America that the foregoing is true and correct.

Executed this 24th day of April, 2025, in Marina del Rey, California.

_____
V. JAMES DESIMONE, ESQ.