10/23/19
Dept. 73 (Hearing held at Spring Street Courthouse, Dept. 11)
Rafael Ongkeko, Judge presiding

**HAROLD CARTER v. FEDERAL EXPRESS CORPORATION** (BC658923)

Counsel for plaintiff: J. Bernard Alexander, III (Alexander Krakow Glick, "AKG"); Natasha Chesler (Chesler McCaffrey)
Counsel for defendant: Charles Matheis; Stephanie Stroup

**Matter:**

Plaintiff's motion for attorney and expert fees (filed 7/26/19)

**TENTATIVE RULING:**

**Plaintiff's motion for attorneys' fees**: Grant in part; deny in part. Reasonable attorneys' fees are awarded in favor of plaintiff and plaintiff's counsel, and against defendant Federal Express Corporation in the amount of **$957,076.50**.

**Plaintiff's motion for expert fees**: Denied as moot. These cost items were itemized in Plaintiff's memorandum of costs (filed 5/9/19). These items and the total for such items sought here ($38,461) are identical and have already been included in the amended judgment. Defendant did not file a motion to tax costs and approved the amended judgment as to form.

**DISCUSSION**

After eight trial days between March 12-22, 2019, on March 25, 2019 the jury rendered its special verdict in favor of Plaintiff, awarding compensatory damages in the amount of $5,317,162 against Defendant. After the court ruled on Defendant's motion for new trial, Plaintiff accepted a remittitur in lieu of a new trial on damages. On July 30, 2019, the court entered the amended judgment in favor of Plaintiff against FedEx in the amount of $3,515,000.

Plaintiff timely[1] seeks an attorney fee award based on the following:

- Approximately 1174 hours of attorney time at four different billing rates;
- Approximately 112 hours of paralegal time at two different billing rates;
- A lodestar amount of $874,586.50;
- A requested multiplier of 2.0;
- For a total fee award requested in the amount of $1,749,173.

---

[1] Although filed before entry of the amended judgment, the motion remains timely under CRC 3.1702(b). Timeliness is not in dispute.

1

Plaintiff itemizes the proposed lodestar with the following table:[2]

| Attorney/Staff | Hourly Rate | Hours Spent | Total |
|---|---|---|---|
| J. Bernard Alexander, III | $850 | 360.8 | $ 306,680 |
| Natasha Chesler | $675 | 741.5 | $ 500,512.50 |
| Timothy McCaffrey | $700 | 46.9 | $ 32,830 |
| Tracy L. Fehr | $610 | 25.3 | $ 15,433 |
| Gustin Ham | $210 | 38.6 | $ 8,106 |
| Noah Longo | $150 | 73.5 | $ 11,025 |
| **TOTAL** | | | **$874,586.50** |

Plaintiff then requests a 2.0 multiplier, or a total award of $1,749,173.

Defendant proposes $326,972.31, based entirely on the declaration of David Paige, FedEx's proffered expert "in the standards and practices of legal billing." (Opp., 2:22)

Plaintiff's reply was served by mail on 8/30/19 but does not show it has been entered in the court's register as of this date. The court considers the reply, but orders Plaintiff to contact the clerk forthwith to assure its entry for a proper record.

<u>Entitlement to statutory attorney's fees and the lodestar method</u>:

In this FEHA action, plaintiff's statutory entitlement to a discretionary award of reasonable fees pursuant to Govt. Code § 12965(b) is not disputed. Although discretionary in language, in the absence of special circumstances rendering a fee award unjust, a prevailing party in a FEHA action should ordinarily recover attorney's fees. *(Cummings v. Benco Bldg. Services* (1992) 11 Cal. App. 4th 1383, 1387.)

As in other fee-shifting statutes, "The objective starting point in the attorney fee analysis is the lodestar figure. (Citation omitted.) The lodestar figure is calculated using the reasonable rate for comparable legal services in *the local community* for noncontingent litigation of the same type, multiplied by the reasonable number of hours spent on the case..."[t]he reasonable hourly rate is that prevailing in the community for similar work". (Citations omitted) *(Nichols v. City of Taft* (2007) 155 Cal.App.4th 1233, 1242-1243 (Italics in original).)

---

[2] The itemized billing for Timothy McCaffrey shows erroneous totals of 50.9 hours and, at $700/hr., $35,630. (Ex. 6) When compared to the actual numbers requested in the motion (46.9 and $32,8930, respectively), this was an obvious four-hour ($2800) error on its face, but Defendant's fee expert, David Paige, said "I am unable to determine what the $2,800 discrepancy relates to…" (Paige declaration, Ex. 3, p.3, fn.1)

2

The trial court "has discretion to make upward or downward adjustments" to the lodestar. *(Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 58.) "[T]he lodestar is the basic fee for comparable legal services in the community; it may be adjusted by the court based on factors including, as relevant herein, (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award...." *(Graciano v. Robinson Ford Sales, Inc.* (2006) 144 Cal.App.4th 140, 154.)

Hours. Time records have been provided. While it is true that the court may disregard counsel's time records if they are "padded and vague and therefore noncredible" and include "entries inflated with noncompensable hours [that] destroy an attorney's credibility with the trial court" [*Christian Research Institute v. Alnor* (2008) 165 Cal.App.4th 1315, 1324-1326], such is not the case here. The work performed has been sufficiently described, particularly those offered in support of the Alexander firm. Moreover, the court does not see evidence of padding in the Chesler billings based on the liberal use of .1 increments throughout her work. However, "[t]he trial court is not bound by an attorney's evidence in support of his [or her] requested fee." *(Vella v. Hudgins* (1984) 151 Cal.App.3d 515, 524.)

"'[A]bsent circumstances rendering the award unjust, an attorney fee award should ordinarily include compensation for *all* the hours *reasonably spent*' in litigating the action to a successful conclusion. [Citation; emphasis in orig.]" *(Horsford v. Bd. Of Trustees, etc.*(2005) 132 Cal.App.4th 359, 394); see also *Vo v. Las Virgenes MWD* (2000) 79 Cal.App.4th 440, 446 ["[u]nder the lodestar method, a party who qualifies for a fee should recover for all hours reasonably spent unless special circumstances would render an award unjust"].)

Having reviewed Plaintiff's detailed time entries, the court finds that all of the hours expended by Plaintiff's counsel are reasonable and were necessary to the prosecution of this case except for the following special circumstances:

- Duplication of effort. The court finds it would be unjust to award the full amount requested. There was duplicate work approximating 25 hours to familiarize the AKG firm with the case in its role as lead trial counsel (such as reviewing past pleadings and motions, depositions, and the like) and earlier work summarizing depositions, for which the court deducts 8.3 hours from Chesler's work (summaries by paralegal specifically for trial preparation and use by Mr. Alexander are compensable); and
- Another is an area loosely described as requiring billing judgment, where there are various dual billings by both the Alexander firm and attorney Chesler for consulting and corresponding with each other, approximately 15 hours, to be deducted from the Chesler total (in recognition of Mr. Alexander's retention as lead trial counsel).

Plaintiff requests the Paige declaration be stricken for various reasons. The court declines to do so. At the same time, however, the court finds this declaration lacks even minimal persuasive weight. There is no solid or credible evidence of Paige's personal work undertaken in California fee motions, much less contingency work in employment discrimination cases. He applies across-the-board percentage deductions based on unfounded billing analysis and speculation: blockbilling (AKG firms clearly did not blockbill; Chesler bills are concise, but generally

3

sufficiently described; actual trial days are by nature patent and self-defining without need for repeating known trial events); administrative, clerical, overhead (yes, but minimal and not abusive); legal research over 3 hours (disability law is not cookie-cutter and can be problematic; here, entries are acceptable to the court given the issues in the case); overqualified staffing (not applicable in the court's opinion). Redactions appear generally appropriate, selective, and often self-explanatory based on context, the events in the case, and dates involved. Because the court accepts Plaintiff's hourly rates (discussed below), even if the court were to accept Paige's "Step 1" and "Step 3" analyses (Paige decl., Ex. 3, p.5-6, 21), the court calculates a lodestar at the requested hourly rates would be $653,038.94.

FedEx vigorously defended this case with at least two, and, later, three, attorneys handling the case from its inception through post-trial. As Plaintiff points out, FedEx has not submitted their own time spent conducting FedEx's defense to provide some measure of comparison to Plaintiff's own time record. Paige did not consider defense costs in his own analysis.

The adjusted lodestar hours (deducting 25 hours from AKG and 23.3 from Chesler) are 1126.2 attorney hours and 112.1 paralegal hours. These hours represent a reasonable number of hours that "an attorney might reasonably expect to spend in litigating [plaintiff's] claim." *(Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970, 991.) Plaintiff was a long-term employee whose 25-year employment, complicated by a serious industrial injury and several job performance reviews over time, required the kind of work that his attorneys expended in the face of a strong defense. The time spent reflects a plaintiff's case that was well-prepared and presented in an organized, efficient, and competent fashion in the face of a defense determined to proceed to trial.

Apportionment of Fees is Impractical Because Carter's Claims are Intertwined

Defendant argues fees should be reduced based on Plaintiff's losing his claims of disability discrimination, wrongful termination, and punitive damages, and the adverse finding on the same decision defense. Apportionment is not required when the claims for relief are so intertwined that it would be impracticable, if not impossible, to separate the attorney's time into compensable and noncompensable units. *(Akins v. Enterprise Rent–A–Car Co. of San Francisco* (2000) 79 Cal.App.4th 1127, 1133-1134.) The court rejects FedEx's narrow view of the case and the litigation success achieved here. "[F]ees are not reduced when a plaintiff prevails on only one of several factually related and closely intertwined claims. *(Wysinger v. Automobile Club of Southern California* (2007) 157 Cal.App.4th 413, 431)." *Chavez, supra,* at 989.) Whether plaintiff prevailed or not on each, or only some, of the causes of action, facts common to all of them were necessarily investigated, covered in discovery, and litigated at trial. This was not a case that had several independent moving parts, one wholly distinct and separable from the other. In this FEHA disability discrimination action, the disability and notice prongs had to be proven as predicates to the FEHA violations ultimately established, a point FedEx must necessarily concede. All the facts were relevant to plaintiff's on-the-job injury, his disability-related claims, such as the accommodation requests, FedEx's failure to engage in the interactive process, and retaliation. For example, one could not discuss Cooper's and Wipf's involvement or the progressive discipline issues without discussing all of these overlapping issues, including those on which the jury eventually ruled in favor of FedEx. True, the jury did not conclude that FedEx

discriminated against Plaintiff or wrongfully terminated him. However, Plaintiffs' counsel adroitly established the key chronological events and disability predicates through skillful use of discovery, direct testimony, exhibits, impeachment, and argument. Were it not for such effort, the FEHA violations found here would not have materialized. "…[L]itigation may involve a series of attacks on an opponent's case. The final ground of resolution may become clear only after a series of unsuccessful attacks. Compensation is ordinarily warranted even for those unsuccessful attacks, to the extent that those attacks led to a successful claim. (Citation omitted.)" *(Akins, supra,* at 1133.) Here, all of Plaintiff's claims are supported by the same underlying conduct and cannot be distinguished and apportioned. The court finds the claims are so intertwined that apportionment would be impractical, if not impossible.

Hourly rate. "The reasonable hourly rate is that prevailing in the community for similar work." (*PLCM Group v. Drexler* (2000) 22 Cal.4th 1084, 1095.) Having over 40 years of experience in the local legal community, the last 17 as a judge, and the last 10 in family and civil division courts deciding many attorney fee motions, the court is very familiar with hourly rates for attorneys in the local community, and, particularly in employment litigation. Here, the court finds that each attorney's hourly rate is a reasonable rate for comparable legal services in the L.A. metro area for noncontingent employment litigation and is adequately supported by the evidence each provides. In particular, Plaintiff's lead trial counsel, Mr. Alexander has shown that his thorough trial preparation, coming to the case three months before trial, and superb trial advocacy merit his $850/hour rate. The court does not find the Paige hourly rate analysis realistic, helpful or credible.

Lodestar. In accordance with the hours claimed (reduced as explained above) at the hourly rates the court has found as reasonable, the court calculates the lodestar amount at **$837,609**.

Multiplier. Once a reasonable lodestar is determined, the trial court, if requested, must consider whether to increase or decrease the award through a multiplier. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1134.) In the leading case of *Serrano v. Priest*, the California Supreme Court approved a multiplier based on, among other factors: (1) the novelty and difficulty of the questions involved, and the skill displayed in presenting them; (2) the extent to which the nature of the litigation precluded other employment by the attorneys; (3) the contingent nature of the fee award, both from the point of view of eventual victory on the merits and the point of view of establishing eligibility for an award; (4) the fact that an award against the state would ultimately fall upon the taxpayers; (5) the fact that the attorneys in question received public and charitable funding for the purpose of bringing lawsuits of the character here involved; and (6) the fact that the monies awarded would inure not to the individual benefit of the attorneys involved but the organizations by which they are employed." (*Serrano v. Priest* (1977) 20 Cal.3d 25, 49.)

The court finds that a multiplier of 1.5 is reasonable and should be awarded to plaintiff's counsel. However, the court limits the multiplier award to Mr. Alexander's pre-trial and trial-related work only, between 12/16/18 and 3/25/19 (i.e., 281.1 hours at $850/hr., or $238,935), resulting in an additional award of **$119,467.50**. Without duplicating the factors that are necessarily already included in the lodestar, the court finds that the following factors warrant this multiplier: the exceptional success achieved despite not prevailing on plaintiff's wrongful termination, disability discrimination and punitive damage claims; the unique complexity of explaining the

5

==job performance issues and the disability discrimination and retaliation claims==; the contingency risk, and lost opportunities from taking on other matters on short notice. ==In the court's view, Mr. Alexander's trial advocacy cannot be understated and was a key factor in Plaintiff's prevailing on the three claims upon which he did prevail. Plaintiff's success on three claims and the quality of trial representation in achieving that success are reflected in the jury's acknowledgment of Plaintiff's damages case as presented and argued by Mr. Alexander, even if ultimately reduced by accepting the court's remittitur.== The court rejects a higher multiplier given Mr. Alexander's brief involvement with the case and the absence of a complete victory. The court also rejects a multiplier as to the balance of work performed by all counsel given the relatively short time of two years from complaint to verdict; the sufficiency of the base fee award; and only partial success (failing to persuade the jury that Plaintiff was a competent employee who should not have been terminated or that FedEx acted with malice).

The total attorneys' fee award under Government Code § 12965(b) which the court finds as reasonable is **$957,076.50**.

The clerk shall make the necessary interlineations and insertions on the amended judgment filed herein on 7/30/19.

Unless waived, notice of ruling by moving party.