Cross-Defendants' demurrer to the second cause of action is therefore OVERRULED.

---

**Case Number:** BC657320    **Hearing Date:** January 14, 2019    **Dept:** 34

**SUBJECT:**    (1) Motion for Attorney's Fees

(2) Motion for an Order Awarding Prejudgment Interest

**Moving Party**: Plaintiff Daryl Kunga

**Resp. Party:**    Defendant American Guard Service, Inc.

The motion is GRANTED in part.  Plaintiff is awarded attorney's fees in the amount of $533,182.50.

The motion for prejudgment interest is DENIED.

## BACKGROUND:

Plaintiff Daryl Kunga brought suit against his former employer, Defendant American Guard Services, Inc., on April 11, 2017, alleging causes of action for (1) Disability Discrimination; (2) Failure to Prevent Discrimination; (3) Failure to Engage in Good Faith Interactive Process; (4) Failure to Accommodate; (5) Retaliation; (6) Violation of the California Family Rights Act; (7) Retaliation in Violation of the California Family Rights Act; and (8) Wrongful Termination.

On July 26, 2018, a jury returned a verdict in Plaintiff's favor, finding: (1) Defendant failed to take reasonable steps to prevent retaliation; (2) Defendant failed to engage in the good faith interactive process; (3) Defendant failed to provide accommodations; (4) Defendant violated the California Family Rights Act; and (5) Defendant retaliated against Plaintiff in violation of the California Family Rights Act. The jury awarded Plaintiff $2,000,000 in compensatory damages and $1,000,000 in punitive damages. Judgment was entered on September 18, 2018.

On November 1, 2018, Defendant's motion for judgment notwithstanding the verdict and motion for new trial were both denied.

An appeal was filed on November 9, 2018.

Plaintiff now seeks attorney's fees and prejudgment interest.

## I. MOTION FOR ATTORNEY'S FEES

As the prevailing party on his FEHA claims, Plaintiff moves the Court for an award of attorney's fees against Defendant American Guard Service in the amount of $758,795.00. (See Motion, p. 1:19-20.) This sum includes a lodestar figure of $379,397.50 and a 2.0 multiplier. (*Id.* at p. 1:17-20.) Plaintiff also seeks an additional $13,650 in expert fees, since the Court has not yet awarded costs. (See *Id.* at p. 1:20-21.)

### ANALYSIS:

### A. Relevant Law

"[A]s a general rule, attorney fees are not recoverable as costs unless they are authorized by statute or agreement." (*People ex rel. Dept. of Corporations v. Speedee Oil Change Systems, Inc.* (2007) 147 Cal.App.4th 424, 429.)

Attorney's fees may be recovered by a prevailing plaintiff in a FEHA action. (See Gov. Code, § 12965(b); *Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970, 984.) "[A] prevailing *plaintiff* should ordinarily receive his or her costs and attorney fees unless special circumstances would render such an award unjust." (*Williams v. Chino Valley Independent Fire Dist.* (2015) 61 Cal.4th 97, 115 [citing *Christiansburg Garment Co. v. EEOC* (1978) 434 U.S. 412] [italics in original].)

The trial court has broad authority to determine the amount of a reasonable fee. (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095; *Ghanooni v. Super Shuttle of Los Angeles* (1993) 20 Cal.App.4th 256, 262.) In determining the reasonable value of the attorney services, "the court does not need separate evidence to establish the reasonable value of whatever should be justly awarded, the theory being that the trial judge is competent from his own knowledge of legal practice to fix the amount of the fees. [Citations.]" (*Spencer v. Harmon Enterprises* (1965) 234 Cal.App.2d 614, 621 [internal citations omitted].)

The attorney bears the burden of proof as to "reasonableness" of any fee claim. (Code Civ. Proc., § 1033.5(c)(5).) This burden requires competent evidence as to the nature and value of the services rendered. (*Martino v. Denevi* (1986) 182 Cal.App.3d 553, 559.) "Testimony of an attorney as to the number of hours worked on a particular case is sufficient evidence to support an award of attorney fees, even in the absence of detailed time records." (*Martino*, 182 Cal.App.3d at 559.)

A plaintiff's verified billing invoices are prima facie evidence that the costs, expenses, and services listed were necessarily incurred. (See *Hadley v. Krepel* (1985) 167 Cal.App.3d 677, 682.) "In challenging attorney fees as excessive because too many hours of work are claimed, it is the burden of the challenging party to point to the specific items challenged, with a sufficient argument and citations to the evidence. General arguments that fees claimed are excessive, duplicative, or unrelated to not suffice." (*Lunada Biomedical v. Nunez* (2014) 230 Cal.App.4th 459, 488, quoting *Premier Med. Mgmt. Sys., Inc. v. California Ins. Guarantee Ass'n* (2008) 163 Cal.App.4th 550, 564.)

In determining whether the requested attorney's fees are "reasonable," the Court's

first step involves the lodestar figure—a calculation based on the number of hours reasonably expended multiplied by the lawyer's hourly rate. The lodestar figure may then be adjusted, based on consideration of facts specific to the case, in order to fix the fee at the fair market value for the legal services provided.

(*Gorman v. Tassajara Development Corp.* (2008) 162 Cal.App.4th 770, 774 [internal citations omitted].) In determining whether to adjust the lodestar figure, the Court may consider the nature and difficulty of the litigation, the amount of money involved, the skill required and employed to handle the case, the attention given, the success or failure, and other circumstances in the case. (*EnPalm LLC v. Teitler* (2008) 162 Cal.App.4th 770, 774; *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095.)

"'The reasonable market value of the attorney's services is the measure of a reasonable hourly rate. [Citations.] This standard applies regardless of whether the attorneys claiming fees charge nothing for their services, charge at below-market or discounted rates, represent the client on a straight contingent fee basis, or are in-house counsel. [Citations.]'"

(*Center For Biological Diversity v. County of San Bernardino* (2010) 188 Cal.App.4th 603, 619.)

"The trial courts, of course, should be allowed the discretion to exclude from a fee award the fees incurred by a prevailing party in making frivolous procedural maneuvers, the primary concern in setting rules for attorney fee awards must be the encouragement of efficient litigation." (*Presley of Southern California v. Whelan* (1983) 146 Cal.App.3d 959, 963.)

"Parties who litigate with no holds barred in cases such as this, in which the prevailing party is entitled to a fee award, assume the risk they will have to reimburse the excessive expenses they force upon their adversaries." (*Stokus v. Marsh* (1990) 217 Cal.App.3d 647, 653-654.)

## B. Discussion

### i. Request for Stay

On January 4, 2019 Plaintiff's ex parte application to advance the hearing date on Plaintiff's motion for prejudgment interest to be heard with Plaintiff's motion for attorney's fees came on for hearing. Defendant did not appear to oppose the ex parte application, which was granted.

Defendant did, however, file a request for a stay that same day, asking that both the motion for attorney's fees and motion for prejudgment interest be stayed, pending the outcome of Defendant's appeal. (The request for stay also included, in the alternative, an opposition to the motion for attorney's fees. It did not address the merits of the prejudgment interest request.)

Defendant does not cite any authority requiring that the court stay the motions. On the contrary, courts often approve attorney's fee motions while appeals are pending. (*Bankes v. Lucas* (1992) 9 Cal.App.4th 365, 368-69 ["the filing of a notice of appeal does not deprive the trial court of jurisdiction to award attorney fees as costs post trial"]; *Grant v. List & Lathrop* (1992) 2 Cal.App.4th 993 [court's order setting attorney fee award entered after notice of appeal filed].)

Accordingly, Defendant's requests for stays of both motions are denied.

### ii. Attorney's fees

Plaintiff seeks an award of attorney's fees in the total amount of $758,795.00. This sum consists of $177,990.00 for the services of Moon and Yang, APC, and $201,407.50 for the services of associated trial counsel, Alexander, Krakow, and Glick, LLP. The lodestar requested is $379,397.50, representing 672.6 hours spent by counsel in litigating this matter for over a year and a half. (See Motion, p. 1:17-20.) Plaintiff also seeks a 2.0 lodestar multiplier on the grounds that such an enhancement will account for the contingent nature and complexity of the litigation as well as the "'phenomenal'" result obtained despite the "challenges of the case." (*Id.* pp. 8:14-11:11.)

Plaintiff has submitted declarations and detailed billing records for each of the five attorneys and the paralegal who worked on this matter. (See Compendium of Evid., Yang Decl., ¶¶ 10, 20; Garcia Decl., ¶¶ 9, 21; Marquez Decl., ¶¶ 7, 9; Alexander Decl., ¶¶ 25, 33; Fehr Decl., ¶¶ 10, 13; Ham Decl. ¶¶ 5, 13; and Exhs. 1-2, 7.) The declarations and billing records submitted by Plaintiff are sufficient to satisfy the requirement of competent evidence as to the nature and value of the services rendered. (See *Martino*, *supra*, at p. 559.)

### A. Hourly Rates

Plaintiff's five attorneys billed at rates from $375 to $815 per hour. (See Motion, p. 8.) Moreover, the firm Alexander, Krakow, and Glick, LLP has a set hourly rate of $195 charged for paralegal work performed by Mr. Ham.

Defendants argue that Plaintiff did not meet his burden of proof to establish counsel's hourly rates were reasonable. Defendants particularly take issue with the fact that Mr. "Yang provides no proof that he has ever been awarded $600 an hour by any Judge or arbitrator. Moreover, Mr. Yang apparently has never tried a case, at least he did not state that he has in his Declaration. As such a rate of $600 per hour is unreasonable." (Opposition, pp. 5:5, 6:13-15.)

Plaintiff declares that Mr. Alexander's hourly rate of $815 (as well as the hourly rates of Ms. Fehr and Mr. Ham) has been approved by Judge Latin (retired) in the binding arbitration of *Campbell v. Fuse, LLC, et al..* as recently as March 2017. (See Alexander Decl., ¶ 27, Exhs. 5-5a, 6.) Plaintiff also declares that Mr. Marquez's rate of $600 per hour has been court-approved "twice within the past few months." (Motion, p. 5; Marquez Decl., ¶ 7c-d.) Plaintiff has also provided three declarations from comparable local attorneys to demonstrate the reasonableness of the requested rates. (See generally George Decl.; DeSimone Decl.; Feldman Decl.)

In *Chodos v. Borman* (2014) 227 Cal.App.4th 76 the Court of Appeal upheld a jury's finding that $1,000/hour was, in the circumstances of that case, a reasonable hourly rate. It is not clear to the court what the limit is on an attorney's hourly rate. As of 2018, David Boies, one of the nation's premier attorneys, charged $1,875/hour. (See "David Boies pleads Not Guilty, *New York Times,* Sept. 21, 2018, available at https://www.nytimes.com/2018/09/21/business/david-boies-pleads-not-guilty.html.)

The Court finds the hourly rates of attorneys J. Bernard Alexander ($815 per hour), Seung Yang ($600 per hour), Justin Marquez ($600 per hour), Tracy L. Fehr ($595 hour), and Christopher Garcia ($375 hour) are reasonable considering the complexity of the issues involved in a FEHA case, the level of experience of the particular attorneys, the contingent nature of the litigation, and the current market rates of comparable employment attorneys in Southern California. Moreover, the court finds that it was reasonable for counsel to reduce Plaintiff's attorney's fees by billing at a lower rate for the services of an experienced paralegal.

### B. Hours Expended

Plaintiff argues that his attorneys reasonably spent 672.6 hours working on this case over the last year and a half. This amount of work was necessitated by the complexity of the issues, defendant's dilatory tactics, the vast quantity of discovery, a five-day trial, and responding to post-trial motions. (See Yang Decl., ¶¶ 10-

14; see Exhs. F, 7; see generally, Motion, p. 6-8.) For example, multiple depositions were taken in this case by Moon and Yang, APC, which later had to be reviewed by associated trial counsel Alexander, Krakow, and Glick, LLP in preparation for trial.

A table of hours expended by each firm is provided below.

Moon and Yang, APC

| Attorney/Staff | Hourly Rate | Hours Spent | Total |
|---|---|---|---|
| Seung Yang | $600 | 82.4 | $49,440.00 |
| Justin Marquez | $600 | 42.5 | $25,500.00 |
| Christopher Garcia | $375 | 274.8 | $103,050.00 |
| Total | | | $177,990.00 |

Alexander, Krakow, and Glick, LLP

| Attorney/Staff | Hourly Rate | Hours Spent | Total |
|---|---|---|---|
| J. Bernard Alexander, III | $815 | 221.6 | $180,604.00 |
| Tracy L. Fehr | $595 | 27.0 | $16,065.00 |
| Gustin Ham (paralegal) | $195 | 24.3 | $4,738.50 |
| Total | | | $201,407.50 |

Defendant argues that Plaintiff's counsel engaged in unreasonable billing practices. For example, Mr. Alexander employed his partner, Tracy L. Fehr, to prepare the instant attorney's fee motion in this matter because she has 14 years' experience preparing prevailing party attorney's fee motions and would therefore minimize the expense associated with preparing the detailed motion. (Alexander Decl., ¶ 21.) Despite her years of experience, Ms. Fehr billed 27 hours for preparation of the instant motion. The Court finds this excessive considering Ms. Fehr's 14 years' experience drafting such motions. Thus, Ms. Fehr's billable hours are reduced to 10.

Defendant also argues that Plaintiff's counsel unnecessarily staffed three attorneys to attend the trial in this matter. (Opposition, pp. 5-6.) Mr. Yang associated with Mr. Alexander because he believed the case would be best served by an "expert employment trial attorney." (Motion, p. 7:6-8.) Though Mr. Alexander was lead trial counsel, Mr. Garcia and Mr. Yang billed 36.9 hours for a total of $13,800 and 29 hours for a total of $17,400, respectively. (*Id.* at p. 7:7; see Compendium of Evid., Exh. 1.)

The Court agrees that having a third attorney at trial was unnecessary and duplicative. Thus, Mr. Garcia's billable hours are reduced to 237.9 (representing 274.8 minus 36.9).

Next, Defendant asserts that Mr. Alexander billed for his law clerks' parking and travel expenses for attending the trial. Defendant argues such expenses were entirely unnecessary to the trial and thus Plaintiff's counsel should not be allowed to bill for them. (*Id.* at p., 6.) Plaintiff's counsel is not billing for these expenses. Though these expenses are itemized in counsel's billing records, they are not included in the fees requested by this motion. (See Compendium of Evid., Exh. 7; Motion, p. 8.) (The Court notes that the law clerks' parking and travel expenses were itemized in the billing records (Exh. 7) as hourly fees incurred. The total number of hours billed by Mr. Alexander's firm was 279.5. (See Exh. 7.) However, only Mr. Alexander, Ms. Fehr's and Mr. Ham's hours, totaling 272.9, were requested in the motion. Thus it appears to the Court that the additional hours were excluded.)

With the above exceptions, the Court finds the amount of hours requested to be reasonable. Therefore, the total amount requested is reduced from $379,397.50 to $355,445.00.

## C. Apportionment

Defendant also contends that the request for attorney's fees should be apportioned between the eight causes of action, only four of which are FEHA causes of action permitting the collection of attorney's fees. (Opposition p., 3:4-11.)

The general rule is that attorney's fees must be apportioned between causes of action that allow for attorney's fees and causes of action that do not allow for attorney's fees, unless the issues in the various causes of action are too interrelated for apportionment to occur.

"When a cause of action for which attorney fees are provided by statute is joined with other causes of action for which attorney fees are not permitted, the prevailing party may recover only on the statutory cause of action. However, the joinder of causes of action should not dilute the right to attorney fees. Such fees need not be apportioned when incurred for representation of an issue common to both a cause of action for which fees are permitted and one for which they are not. All expenses incurred on the common issues qualify for an award. [Citation.] When the liability issues are so interrelated that it would have been impossible to separate them into claims for which attorney fees are properly awarded and claims for which they are not, then allocation is not required. [Citation.]" (*Akins v. Enterprise Rent-A-Car Co. of San Francisco* (2000) 79 Cal.App.4th 1127, 1133.)

More recently, our Courts have reiterated this principal:

"'Attorneys fees need not be apportioned between distinct causes of action where plaintiff's various claims involve a common core of facts or are based on related legal theories.' [Citation.]" (*Taylor v. Nabors Drilling USA, LP* (2014) 222 Cal.App.4th 1228, 1251, quoting *Graciano v. Robinson Ford Sales, Inc.* (2006) 144 Cal.App.4th 140, 158–159.)

Here, counsel represented Plaintiff regarding an issue common to all of Plaintiff's causes of action — Defendant's conduct in response to Plaintiff's request for time off to care for his daughter during a medical emergency. Reviewing the causes of action, the Court concludes liability issues for the FEHA causes of action were so interrelated with those causes of action for which fees are not permitted that it would have been impossible to sever them. Therefore, apportionment is neither necessary nor possible.

The Court therefore determines the lodestar attorney's fees as indicated below:

## ATTORNEYS FEES

| A orney's Name | Rate Requested | Hours Requested | Total Requested | Rate Granted | Hours Granted | Total Granted |
|---|---|---|---|---|---|---|
| Seung Yang | $600.00 | 82.40 | $49,440.00 | $600.00 | 82.40 | $49,440.00 |
| Jus n Marquez | $600.00 | 42.50 | $25,500.00 | $600.00 | 42.50 | $25,500.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Christopher Garcia | $379.00 | 274.80 | $103,050.00 | $375.00 | 237.90 | $89,212.50 |
| | | | $0.00 | | $0.00 | $0.00 |
| J. Bernard Alexander, III | $815.00 | 221.60 | $180,604.00 | $815.00 | 221.60 | $180,604.00 |
| Tracy L. Fehr | $595.00 | 27.00 | $16,065.00 | $595.00 | 10.00 | $5,950.00 |
| Gus n Ham (paralegal) | $195.00 | 24.30 | $4,738.50 | $195.00 | 24.30 | $4,738.50 |
| | | | $0.00 | | $0.00 | $0.00 |
| | | | $0.00 | | $0.00 | $0.00 |
| | | | $0.00 | | $0.00 | $0.00 |
| | | | $0.00 | | $0.00 | $0.00 |
| | | | $0.00 | | $0.00 | $0.00 |
| | | Total Requested | $379,397.50 | | Total Fees Granted | $355,445.00 |

### D. Lodestar Multiplier

"The award of a multiplier is in the end a discretionary matter largely left to the trial court." (*Hogar v. Community Development Com'n of City of Escondido* (2007) 157 Cal.App.4th 1358, 1371. See also *Rey v. Madera Unif. Sch. Dist*. (2012) 203 Cal.App.4th 1223, 1242.) A court may enhance the lodestar figure in appropriate cases. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1138.) The court in *Ketchum* provided an explanation of the rationale behind contingent fee enhancements: "'A contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services. The implicit interest rate on such a loan is

higher because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of conventional loans.'" (*Id*. at pp. 1132-1133 [quoting Posner, Economic Analysis of Law (4th ed. 1992) pp. 534, 567].) "A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases." (*Id*. at p. 1133 [internal citations and quotations omitted].) The following factors may be considered in deciding whether to apply a multiplier: "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award." (*Id*. at p. 1032.)

Defendant argues that a negative multiplier is justified because the "extent of success and the plaintiff's failure to disclose the hours spent on non-FEHA claims require a negative multiplier." (Opposition, p. 8:24-25.) As previously discussed, the liability issues for the FEHA causes of action were interrelated with and inseparable from the non-FEHA causes of action. Defendant does not explain why it believes Plaintiff was unsuccessful. In fact, this assertion directly contradicts defendant's position in its Motion for a New Trial, where defendants argued that plaintiff's award of damages was excessive. (See Notice re Motion for New Trial, p. 2:1-5.)

Plaintiff, on the other hand, contends that "an award [of $3,000,000.00] for a low-wage employee, after waiving economic damages, is extraordinary." (Motion, p. 11:7-9.)

The Court finds Defendant's request for a reduction in the lodestar figure to be without merit.

Plaintiff requests a 2.0 lodestar multiplier as compensation for the contingent risk of this case and on the grounds that this case presented difficult questions, precluded her counsel from taking on other work, and that her counsel displayed extraordinary skill in obtaining the verdict. (See Motion, pp. 8-11.) He explains that his counsel took this case on an entirely contingent basis and that "counsel has been working on this matter for almost two years without payment." (*Id*. at p. 10:10-11.) Even after the verdict, "Defendant has already filed a notice of appeal, indicating that payment is not forthcoming." (*Id*.at p. 10:11-12.)

Plaintiff also argues that a multiplier is warranted based on the "skill factor" because "Plaintiff's counsel persevered in obtaining an outstanding verdict of $3,000,000 (Exh. 4)" despite "the disparity in resources, and the challenges of the case." (Motion, p. 11:7-9.). Plaintiff asserts that this case was especially difficult, given that "(a) Mr. Kunga's wages were low, leaving him with relatively low economic damages; (b) juries often tie emotional distress damages to economic damages, resulting in lower emotional distress awards for low-wage workers; (c) Plaintiff took the risk of waiving economic damages to focus on Kunga's considerable emotional distress; (d) Mr. Kunga speaks broken English, which could have been a large disadvantage in connecting with the jury; (e) Defendants initially refused to appear for deposition and forced Plaintiff to appear ex parte to secure depositions." (*Id*. p. 10:15-23.) Plaintiff contends that "[s]uch an award for a low-wage employee, after waiving economic damages, is extraordinary." (*Id*., p. 11:7-9.)

The Court agrees that plaintiff's counsel displayed unusual skill in obtaining a substantial recovery for plaintiff. This is particularly true given the size of the

jury's award compared to the economic damages suffered by Plaintiff – who, as a security guard was basically earning the minimum wage.

This case took 1½ years and some 650 hours of attorney's time. For a small firm – or even two small firms – this is a substantial commitment of time. The fact that the first devoted 650 hours to this case precluded the firms from taking other contingent clients.

Further, although defense counsel gets paid monthly, plaintiff's counsel has not been paid for the 20 months that this case has been pending. "The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services. . . . '"(*Amaral v. Cintas Corp. No. 2* (2008) 163 Cal.App.4th 1157, 1217-1218.)

> "The market value of the services provided by [respondent's] counsel in a case of this magnitude must take into consideration that any compensation has been deferred ... from the time an hourly fee attorney would begin collecting fees from his or her client . . . " (*Taylor v. Nabors Drilling USA, LP* (2014) 222 Cal.App.4th 1228, 1252.)

Considering the skill shown by counsel in obtaining an extraordinary recovery for Plaintiff, the fact that plaintiff's counsel has not been paid for close to two years, and the extent to which taking this case precluded counsel from taking other cases, the Court finds that a multiplier of 1.5 is appropriate.

"The trial court is not required to issue a statement of decision regarding a fee award." (Stratton v. Beck (2019) ___ Cal.App.5th __, ___, citing *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140.) Nonetheless, for purposes of completeness, the Court wishes to indicate that it considered – and rejected – a multiplier of 2.0. .

This court is unaware of any empirical data as to the percentage of FEHA retaliation cases that are won by plaintiffs. However, it is the experience of this court that approximately 50% of such cases that go to trial are won by plaintiffs and 50% are won by defendants. Further, given the lack of any empirical data to the contrary, the Court would normally assume such a 50/50 split. This would seem to indicate that a 2.0 multiplier would be appropriate, since "a contingent fee in a case with a 50 percent chance of success should be twice the amount of a non-contingent fee for the same case . . ." (*Cezares v. Saenz* (1989) 208 Cal.App.3d 279, 288.)

This method of applying a multiplier has been explicitly adopted by other states. For instance, the Florida Supreme Court has offered the following guidance to its courts: "If the trial court determines that success was more likely than not at the outset, it may apply a multiplier of 1 to 1.5; if the trial court determines that the likelihood of success was approximately even at the outset, the trial judge may apply a multiplier of 1.5 to 2.0; and if the trial court determines that success was unlikely at the outset, it may apply a multiplier of 2.0 to 2.5." (*Standard Guar. Ins. Co. v. Quanstrom* (Fla. 1990), 555 So.2d 828, 834.) The Florida Supreme Court thus recognized that "[a] 2.0 multiplier is appropriate where 'the likelihood of success

was approximately even at the outset." (*McCarthy Bros. Co. v. Tilbury Const., Inc.* (Fla. Ct. App. 2003) 849 So.2d 7, 10.)

Other courts have similarly concluded that, at least in labor and employment cases, it is reasonable to assume that plaintiffs' counsel will win approximately half the time, and hence a hence "a multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fees" in these cases. (*Fujiwara v. Sushi Yasuda, Ltd.* (S.D.N.Y. 2014) 58 F. Supp. 3d 424, 329.)

However, California courts have not been so rigid or so mathematical in their application of a multiplier. The *Ketchum* factors are not inflexible rules with definable boundaries, but broad classes of issues to be considered by the trial court in ascertaining a reasonable fee award. Quite simply, "there is no hard-and-fast rule limiting the factors that may justify an exercise of judicial discretion to increase or decrease a lodestar calculation. (See *Center for Biological Diversity v. County of San Bernardino* (2010) 185 Cal.App.4th 866, 901.) "There are numerous such factors, and their evaluation is entrusted to a trial court's sound discretion; any one of those factors may be responsible for enhancing or reducing the lodestar." (*Krumme v. Mercury Ins. Co*. (2004) 123 Cal.App.4th 924, 947.)

The Court has not applied a 2.0 multiplier because, at least in part, the Court finds that the hourly rates the Court has found reasonable are based, at least in part, on the contingent nature of plaintiff's counsels' practice.

Applying a 1.5 multiplier to the lodestar, the Court will award attorney's fees in the amount of 1.5 x $355,445.00 = $533,182.50.

### E. Conclusion

The motion is GRANTED in part. Plaintiff is awarded attorney's fees in the amount of $533,182.50.

### iii. Costs

Plaintiff also seeks expert witness fees, arguing that he filed a memorandum of costs, and that Defendant never responded by filing a motion to tax or strike those costs. But the Court has no record of a memorandum of costs being filed. Thus, to the extent Plaintiff seeks an award of costs, he should submit a memorandum of costs.

## II. MOTION FOR PREJUDGMENT INTEREST

Plaintiff requests an order awarding prejudgment interest of 10% per year, running from June 5, 2018 through September 18, 2018, pursuant to Civ. Code § 3291. Plaintiff does not request prejudgment interest for the $1,000,000 punitive damages award.

Relevant Law

Pursuant to Civ. Code § 3291:

In any action brought to recover damages for personal injury sustained by any person resulting from or occasioned by the tort of any other person, corporation, association, or partnership, whether by negligence or by willful intent of the other person, corporation, association, or partnership, and whether the injury was fatal or otherwise, it is lawful for the plaintiff in the complaint to claim interest on the damages alleged as provided in this section.

If the plaintiff makes an offer pursuant to Section 998 of the Code of Civil Procedure which the defendant does not accept prior to trial or within 30 days, whichever occurs first, and the plaintiff obtains a more favorable judgment, the judgment shall bear interest at the legal rate of 10 percent per annum calculated from the date of the plaintiff's first offer pursuant to Section 998 of the Code of Civil Procedure which is exceeded by the judgment, and interest shall accrue until the satisfaction of judgment.

Whether a defendant is liable for prejudgment interest under Civil Code § 3921 depends on whether the action is one "to recover damages for *personal injury*" "resulting from or occasioned by the tort" of another. (Civ. Code § 3921 [emphasis added].)

Discussion

Plaintiff cites *Bihun v. AT&T Information Systems, Inc.* (1993) 13 Cal.App.4th 976, 1001-1002, for the proposition that FEHA claims are categorized as torts for purposes of prejudgment interest and therefore he is entitled to prejudgment interest. (Motion for Prejudgment Interest, p. 1.) Plaintiff is mistaken.

The *Bihun* court held a *sexual harassment* action brought under FEHA is "an action brought to recover damages for *personal injury*" within the meaning of Civil Code § 3291. (*Bihun*, *supra*, at p. 1004-1005.) The court focused on "the nature of the action" rather than the damages sought, reasoning that sexual harassment has the primary effect of impairing the personal well-being of the victim and finding that "a claim [of sexual harassment] under FEHA seeks to vindicate decidedly personal rights." (*Id.*) Here, by contrast, "it is the employer's violation of a *public* policy resulting in the loss of a tangible *economic* benefit (a job), rather than the invasion of a personal freedom interest, which primarily defines the action." (*Holmes v. General Dynamics*

*Corp.* (1993) 17 Cal.App.4th 1418, 1436-1437, fn. 15 [wrongful termination action held not to be a "personal injury" within the meaning of Civ. Code § 3291, explicitly distinguishing *Bihun*].)

Thus, Plaintiff's motion for an order awarding prejudgment interest is DENIED.

