LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Renee V. Masongsong, Esq. (SBN 281819)
rvalentine@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA  91367
Tel: (818) 347-3333 / Fax: (818) 347-4118

Attorneys for Plaintiffs
R.L., M.L., H.L., and A.W.

TONI JARAMILLA, A Professional Law Corp.
Toni J. Jaramilla, Esq. (SBN 174625)
Toni@tjjlaw.com
1900 Avenue of the Stars, Suite 900
Los Angeles, California 90067
T: (310) 551-3020 | F: (310) 551-3019

ALEXANDER MORRISON + FEHR LLP
J. Bernard Alexander, III (State Bar No. 128307)
balexander@amfllp.com
Britt L. Karp (State Bar No. 278623)
bkarp@amfllp.com
1900 Avenue of the Stars, Suite 900
Los Angeles, California 90067
T: (310) 394-0888 | F: (310) 394-0811

Attorneys for Plaintiffs, MICKEL E. LEWIS JR, ORIONA LEWIS and BRIONA LEWIS

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICKEL ERICK LEWIS JR, et al., | Case No: 1:21−CV−00378−KES−CDB |
| Plaintiffs, | Assigned to: |
| vs. | Hon. District Judge Kirk E. Sherriff<br>Hon. Magistrate Charles D. Breyer |
| COUNTY OF KERN and JASON AYALA, | **PLAINTIFFS' OPPOSITION TO DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW (RULE 50b)** |
| Defendants. | |
| R.L., et al., | |
| Plaintiffs, | Date:   June 16, 2025<br>Time:  1:30 p.m.<br>Dept.:  6 |
| vs. | |
| COUNTY OF KERN and JASON AYALA, | |
| Defendants. | |

1

## <u>TABLE OF CONTENTS</u>

2   MEMORANDUM OF POINTS AND AUTHORITIES ............................................................ 1

3   I.     INTRODUCTION................................................................................................................ 1

4   II.    BRIEF STATEMENT OF FACTS AT TRIAL ................................................................ 3

5          A.     Lewis Was Visibly Unarmed at the Time of the Shooting ...................................... 3

6          B.     Ayala's Credibility is at Issue .................................................................................. 5

7   III.   LEGAL STANDARD ......................................................................................................... 7

8   IV.    ARGUMENT ...................................................................................................................... 7

9          A.     Plaintiffs Presented Sufficient Evidence to Support a Fourth Amendment
                  Claim for Excessive Force Against Deputy Ayala................................................... 7
10

11         B.     Deputy Ayala is Not Entitled to Qualified Immunity ............................................ 11

12                1.     Ayala's Shooting Violated Clearly Established Law .................................... 11

13                2.     Deputy Ayala's Failure to Warn Weighs Against Granting Qualified
                         Immunity....................................................................................................... 14

14                3.     A Case with Identical Facts is Not Required for this Court to Deny
                         Qualified Immunity ...................................................................................... 15
15

16                4.     Deputy Ayala's Police Training Weighs Against Granting Qualified
                         Immunity ...................................................................................................... 16

17         C.     Plaintiffs Presented Sufficient Evidence to Support a State Law Claim for
                  Battery Against Ayala ............................................................................................ 16
18

19         D.     Plaintiffs Presented Sufficient Evidence to Support a State Law Claim for
                  Negligence Against Ayala...................................................................................... 17

20         E.     Plaintiffs Established a Bane Act Claim ................................................................ 18

21         F.     No State Law Defenses or Immunities Protect Defendants from Liability............. 20

22  V.     CONCLUSION ................................................................................................................. 21

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW (RULE 50b)

1

# **TABLE OF AUTHORITIES**

2

3

Cases

*A.D. v. Cal. Highway Patrol*,
    712 F.3d 446 (9th Cir. 2013).................................................................................. 7

*A.K.H. v. City of Tustin*,
    837 F.3d 1005 (9th Cir. 2016) ............................................................................ 12

*Adams v. Speers*,
    473 F.3d 989 (9th Cir. 2007) .............................................................................. 12

*Ashcroft v. al-Kidd*,
    563 U.S. 731 (2011) ........................................................................................... 13

*Blankenhorn v. City of Orange*,
    485 F.3d 463 (9th Cir. 2007).............................................................................. 20

*Bowles v. City of San Jose*,
    Case No. 19-cv-01027-NC ................................................................................. 15

*Brosseau v. Haugen*,
    543 U.S. 194, 197–99 (2004) ............................................................................ 12

*Bryan v. McPherson*,
    630 F.3d 805 (9th Cir. 2010).......................................................................... 8, 9

*Clark v. Wilson*,
    625 F.3d 686 (10th Cir. 2010)........................................................................... 16

*Collender v. City of Brea*,
    605 F. App'x 624 (9th Cir. 2015)...................................................................... 13

*Cornell v. City and County of San Francisco*,
    17 Cal. App. 5th 766 (2017).............................................................................. 18

*Costa v. Desert Palace, Inc.*,
    299 F.3d 838 (9th Cir. 2002).............................................................................. 7

*Cruz v. City of Anaheim*,
    765 F.3d 1076 (9th Cir. 2014) ........................................................................... 13

*Curnow v. Ridgecrest Police*,
    952 F.2d 321 (9th Cir. 1991) ............................................................................. 13

*Edson v. City of Anaheim*,
    63 Cal. App. 4th 1269 (1998)............................................................................ 17

*Espinosa v. City & Cnty. of San Francisco*,
    598 F.3d 528 (9th Cir. 2010).............................................................................. 8

*Estate of Lopez by & through Lopez v. Gelhaus*,
    871 F.3d 998 (9th Cir. 2017)............................................................................. 12

*Estate of Lopez v. Gelhaus*,
    149 F. Supp. 3d 1154 (N.D. Cal. 2016) ........................................................... 12

*Estate of Najera Aguirre v. Cnty. of Riverside*,
    29 F.4th 624 (9th Cir. 2022).............................................................................. 12

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW (RULE 50b)

*Forrett v. Richardson*,
    112 F.3d 416 (9th Cir. 1997) ................................................................. 14

*Garcia v. City of Merced*,
    637 F. Supp.2d 731 (E.D. Cal. 2008) .................................................... 20

*George v. Morris*,
    736 F.3d 829 (9th Cir. 2013) ................................................................. 12

*Glenn v. Washington Cnty.*,
    673 F.3d 864 (9th Cir. 2011) ............................................................. 8, 13

*Gonzalez v. City of Anaheim*,
    747 F.3d 789 (9th Cir. 2014) ............................................................. 9, 14

*Graham v. Connor*,
    490 U.S. 386 (1989) ........................................................................... 8, 16

*Gravelet-Blondin v. Shelton*,
    728 F.3d 1086, 1093 (9th Cir. 2013) ..................................................... 15

*Harris v. Roderick*,
    126 F.3d 1189 (9th Cir. 1997) ................................................. 8, 9, 12, 14

*Headwaters v. County of Humboldt*,
    240 F.3d 1185 (9th Cir. 2000) ................................................................. 9

*Jacquez v. City of San Jose*,
    Case No. 16-cv-05330-NC ..................................................................... 15

*Johnson v. Paradise Valley Unified Sch. Dist.*,
    215 F.3d 1222 (9th Cir. 2001) ................................................................. 7

*Josephs v. Pac. Bell*,
    443 F.3d 1050 (9th Cir. 2006) ................................................................. 7

*K.H. Through Murphy v. Morgan*,
    914 F.2d 846 (7th Cir. 1990) ................................................................. 12

*Knapps v. City of Oakland*,
    2009 WL 2390262. (N.D. Cal. 2009) ..................................................... 20

*Lal v. California*,
    746 F.3d 112 (9th Cir. 2014) ................................................................. 13

*Longoria v. Pinal County*,
    873 F.3d 699 (9th Cir. 2017) ................................................................. 12

*Mattos v. Agarano*,
    661 F.3d 433 (9th Cir. 2011) ................................................................. 15

*Munoz v. City of Union City*,
    120 Cal. App. 4th 1077 (2004) .............................................................. 16

*Nelson v. City of Davis*,
    685 F.3d 867 (9th Cir. 2012) ................................................................... 9

*Pavao v. Pagay*,
    307 F.3d 915 (9th Cir. 2002) ................................................................... 7

*Price v. County of San Diego*,
    990 F. Supp. 1230 (S.D. Cal.1998) ....................................................... 20

*Reese v. County of Sacramento*,
    888 F.3d 1030 (9th Cir. 2018) ............................................................... 19

PLAINTIFFS' OPPOSITION TO DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW (RULE 50b)

1

*Reeves v. Sanderson Plumbing Prods., Inc.,*
    530 U.S. 133 (2000) ................................................................................. 7

2

*Rivas-Villegas v. Cortesluna,*
    595 U.S. 1 (2021) ................................................................................... 12

3

*Robinson v. Solano Cnty.,*
    278 F.3d 1007 (9th Cir. 2002) ............................................................... 20

4

5

*Scott v. Harris,*
    550 U.S. 372 (2007) ........................................................................... 9, 14

6

*Sharp v. County of Orange,*
    871 F.3d 901 (9th Cir. 2017) ................................................................. 20

7

*Smith v. City of Hemet,*
    394 F.3d 689 (2005) ............................................................................... 9

8

*Tennessee v. Garner,*
    471 U.S. 1 (1985) ............................................................................. 12, 14

9

10

*Torres v. City of Madera,*
    648 F.3d 1119 (9th Cir. 2011) ................................................................. 8

11

*United States v. Lanier,*
    520 U.S. 259 (1997) ............................................................................. 12

12

*United States v. Reese,*
    2 F. 3d 870 (9th Cir. 1993) ................................................................... 19

13

14

*Warren v. Marcus,*
    78 F. Supp. 3d 1228 (N.D. Cal. 2015) .................................................. 20

<u>Statutes</u>

15

California Government Code § 815.2 ........................................................ 21

16

California Government Code § 845.8 ........................................................ 21

17

California Penal Code § 835 ..................................................................... 22

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF
LAW (RULE 50b)

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.    INTRODUCTION**

3        Defendants' post-verdict motion made pursuant to Federal Rules of Civil Procedure, Rule

4    50(b), for judgment as a matter of law, should be denied in full. Under any objective standard of

5    review, but particularly when viewing the facts and reasonable inferences in the light most

6    favorable to Plaintiffs as this Court must, the jury's verdict must stand. This Court has already

7    correctly denied Defendants' Rule 50(a) motion, and the same result is mandated here. As

8    discussed in detail below, Plaintiffs presented substantial evidence at trial supporting the jury's

9    finding that Defendant Deputy Jason Ayala's ("Ayala") use of deadly force against Mickel Lewis,

10    Sr. ("Lewis") violated Lewis' right to be free from excessive and unreasonable force under federal

11    and state law. Ayala's self-serving claims that Lewis made a "deep reach" under the seat of his

12    vehicle, verbally threatened to kill him, charged toward him with his right hand needlessly hidden

13    behind his back, and was face-to-face with the decedent when he initiated all five shots, two of

14    which resulted in entry wounds to the decedent's back, were refuted by contradictory evidence and

15    Ayala's general lack of credibility. The overwhelming evidence at trial indicated that, despite the

16    presence of other witnesses, no witnesses confirmed that (1) Lewis was bent over reaching for

17    something underneath his seat, but was instead simply reaching for keys in the ignition, not

18    realizing they weren't there; (2) Lewis never made any verbal threats toward Ayala; (3) both of

19    Lewis' hands were reaching forward and visibly empty at the time of the shooting; and (4) Lewis'

20    back was turned away from Ayala during at least two of the shots. Additionally, it is undisputed

21    that Lewis was unarmed at the time of the shooting, that Lewis never reached for Ayala's gun,

22    Ayala never saw a gun on Lewis' person or in the vehicle, Ayala did not give Lewis a verbal

23    warning or further commands prior to shooting, that two of the shots struck Lewis in the back, and

24    that Ayala elected to initiate the stop alone, without requesting backup, despite having received

25    information that Lewis was armed and in violation of his probation.

26        At trial, Ayala gave three main reasons for shooting, each of which were contradicted by

27    the evidence. First, Ayala testified that Lewis made a "deep reach" with both hands under the seat,

28    leading to Ayala's subjective fear that Lewis was reaching for a weapon. However, Jessica

PLAINTIFFS' OPPOSITION TO DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF
LAW (RULE 50b)

Salcedo testified that she did not see Lewisreach under the seat, and no other witness—inside or outside of Lewis' vehicle—saw Lewis reaching under the seat. Rather, while sitting directly behind the driver's seat, J. Salsedo testified to observing Lewis reach for the ignition and seeing both of Lewis's hands at that time. Likewise, witness Jeremy Terletter observed Lewis reenter the vehicle as if Lewis was attempting to drive away, and from Terletter's vantage point looking into Lewis's vehicle, gave no indication of seeing Lewis reached under the seat. Second, Alaya testified at trial that when he was halfway in and out of the vehicle, Lewis threatened Ayala by stating something to the effect of, "You're going to have to f---ing kill me" or "You're gonna die." However, J. Salcedo denied that Lewis ever made any verbal threats, and Defendants called no witnesses to contradict this testimony.

Third, Ayala testified that Lewis "charged" at him with his right hand behind his back. However, three witnesses testified that both of Lewis' hands were visible at the time of the shooting. J. Salcedo testified that Lewis' hands were to the sides of his body, and both Terletter and Nicolas Montoya testified that both of Lewis' hands were outstretched in front of him toward Ayala. Only Ayala testified that Lewis' right hand was inexplicably positioned behind his back, invisible to Ayala. Ayala admitted that *if* he could have seen both of Lewis' hands with nothing in them, it would have been inappropriate to shoot, based on his police training. Further, the "charging" action Ayala attributes to Lewis allegedly all took place in the short distance that separated the driver's side door and the rear of the vehicle. But, forensic evidence shows that two of the five shots struck Lewis in the back, which belies Ayala's claim that Lewis was charging directly toward Ayala during all of the shots.

As this Court correctly held in denying Defendants' Rule 50(a) motion, it was clearly established at the time of the shooting that deadly force is not justified where the suspect poses no immediate threat of death or serious bodily injury, particularly under this set of facts, where it is undisputed that Lewis held nothing in his hands at the time of the shooting and Ayala gave Lewis no verbal warning prior to shooting. RT 745:4-24. Therefore, qualified immunity is not available. Qualified immunity does not apply to Plaintiffs' state law claims, and the state law defenses and immunities cited by Defendants do not preclude Plaintiffs' state law claims. Whether this was a

situation of "reasonable mistake" as argued by Defendants in their motion is a question of fact for the jury, and the reasonable inference is that the jury followed the law and considered the "reasonable mistake" factor articulated in Ninth Circuit Jury Instruction No. 9.25 in reaching their verdict against Ayala.

For these reasons, the reasons set forth below, and for all other reasons anticipated to be raised during the oral argument to this Court on June 16, 2025, or as soon thereafter as Defendants' motions are heard, this Court should deny Defendants' Rule 50(b) motion.

## II.    BRIEF STATEMENT OF FACTS AT TRIAL

### A.  Lewis Was Visibly Unarmed at the Time of the Shooting

Lewis was cooperative with Ayala during his initial contact with him days before, and also on the date of the incident when Ayala first pulled Lewis over. RT 65:15-25, 208:16-18, 209:16-25. Lewis complied by pulling over when Ayala flashed his lights. RT 250:23-251. Prior to the stop on the date of the incident, Ayala had no information that Lewis had ever physically injured anyone, pointed a weapon at anyone, shot anyone, or committed any prior act of violence or a violent felony. RT 65:22-66:12, 207:2-208:3. Ayala elected not to wait for backup prior to stopping Lewis' vehicle. RT 70:17-23. Lewis continued to be compliant when Ayala stopped the vehicle. RT 76:20-21. When Lewis exited the vehicle, as instructed, he did not have a gun and did not verbally threaten Ayala. RT 76:20-77:3. Ayala physically searched Lewis and did not observe or feel any weapons. RT 77:17-78:2.

Later, Lewis ran from Ayala. RT 211:5-9. Prior to running from Ayala, Lewis did not swing, punch, kick, tackle, or verbally threaten Ayala. RT 79:3-16, 79:23-80:3. After Lewis ran away but before he reentered his vehicle, when Lewis moved in Ayala's direction from behind the truck, Ayala did not see anything in Lewis' hands. RT 85:12-23. Before Lewis reentered his vehicle, Lewis did not try to assault, punch, or tackle Ayala, nor did he verbally threaten Ayala or simulate having a weapon. RT 86:3-12, 90:4-7.

When Lewis reentered the vehicle, he sat in the driver's seat for approximately one or two seconds. RT 87:5-7, 122:12-22. J. Salcedo denied seeing Lewis reach under the seat, but testified that he was reaching for the ignition, and that she could see both of his hands at that time. RT

265:17-20, 270:4-12. J. Salcedo could see Lewis reach for the ignition because she was seated directly behind the driver's seat, and leaning around the back seat to see what Lewis was doing in the front seat. RT 254:10-255:20. J. Salcedo was not afraid of Lewis when he reentered the vehicle. RT 263:5-10. Consistent with J. Salcedo testimony, the jury heard Terletter's deposition testimony that he observed Lewis reentering the vehicle as if he intended to drive away. RT 472:9-19, 475:22-476:1.

When Lewis realized the keys were no longer in the ignition, he stepped back out of the vehicle. RT 256:14-24. Ayala did not see Lewis pull a gun out from under the driver's seat and did not see Lewis exit the vehicle with a gun. RT 89:10-16. Ayala also never saw a gun in the vehicle at any point. RT 201:20-202:5. Ayala shot Lewis almost immediately after Lewis exited the vehicle. RT 134:18-24. Prior to Ayala firing his first shot, he gave Lewis no commands or a verbal warning that he was going to shoot him, although Ayala has been trained to give a verbal warning before shooting, when feasible. RT 94:2-18, 149:1-4, 204:25-205:2.

When Lewis exited the vehicle, Ayala could see that Lewis' left hand was visibly empty. RT 94:19-24. When Ayala first fired his shots, he either couldn't see or wasn't looking at Lewis' hands, even though officers are trained to observe the hands. RT 146:9-147:1. According to J. Salcedo, Lewis' hands were on the side of his body at the time of the shots. RT 258:9-21. Montoya also observed the shooting, and testified that Lewis moved toward Ayala with both hands outstretched. RT 720:3-9. Likewise, Terletter testified that he observed Lewis with both hands outstretched toward Ayala, and never saw Lewis with one hand hidden behind his back. RT 477:20-479:23. Ayala agreed that if he could see both of Lewis' hands and they were visibly empty, it would have been inappropriate to shoot Lewis. RT 95:19-22. Ayala never saw a gun at any time prior to shooting Lewis. RT 96:2-9, 144:19-145:23.

After the shooting, before Lewis fell to the ground, Ayala observed Lewis standing still. RT 152:19-24, 153:17-22. When Ayala did look at Lewis' hands after the shooting, he saw that there was nothing in them. RT 147:19-22. After the shooting, when Ayala searched Lewis, he did not see any guns in Lewis' hands or around him. RT 149:8-16. Ayala admitted that Lewis never reached for Ayala's gun. RT 94:25-95:7.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW (RULE 50b)

1      **B. Ayala's Credibility is at Issue**

2          Ayala testified that he pulled the vehicle over because he thought Lewis had a gun, and yet

3   he never checked the backseat to see if there were passengers in the vehicle. RT 208:19-209:15.

4   Ayala was trained to take cover and call for backup if he thinks someone has a gun. RT 202:23-

5   203:6. Even though Ayala knew that backup was on the way, he failed to tell them beforehand that

6   he suspected Lewis could be armed or that he suspected Lewis could be on drugs. RT 203:16-24,

7   212:11-14.

8          Ayala claimed that, during the approximate one to two seconds that Lewis reentered his

9   vehicle, while Lewis was halfway in and halfway out of the vehicle, Lewis threatened Ayala. Yet

10  Ayala did not take a position of cover or tactically reposition when he allegedly heard the verbal

11  threat from Lewis. RT 127:12-128:21. Ayala was unable to state exactly what Lewis said and

12  whether Lewis was inside or outside of the vehicle when Lewis allegedly threatened him. RT

13  124:17-125:16, 128:18-129:1. Ayala testified that occupants of the vehicle presumably would

14  have been able to hear any statements made by Lewis when he reentered the vehicle. RT 81:10-16.

15  J. Salcedo, who was sitting directly behind Lewis during this incident, testified that she never

16  heard Lewis threaten to kill Ayala, or say "you're going to have to kill me" or words to that effect.

17  RT 251:2-23, 256:2-20, 265:3-20.

18         While Ayala testified that Lewis made a "deep reach" under the seat, J. Salcedo testified

19  that when Lewis reentered the vehicle, he reached both his hand toward the ignition in an effort to

20  drive away. RT 254:10-255:20. One of the main reasons Ayala offers for shooting Lewis is that he

21  observed Lewis with his right hand behind his back during his shots. RT 139:1-16. However, at

22  trial and at deposition, Ayala testified that he could only see Lewis' face during the shots. RT

23  135:4-136:9, 144:8-15.

24         After the shooting, Ayala never told anyone at the scene that he saw Lewis reaching under

25  the seat of the vehicle; or that he believed Lewis was looking for a gun; or that Lewis verbally

26  threatened him; or that Lewis' right hand was behind his back and he believed there was a gun in

27  Lewis' right hand. RT 99:3-15. When backup arrived after the shooting, Lewis never told

28  responding officers to be careful because he suspected there could be a gun under the seat. RT

212:21-25. The first time Ayala told anyone that Lewis' right hand was behind his back during the shooting, or that Lewis verbally threatened Ayala, or that Lewis made a "deep reach" under the seat of the vehicle was five days later when he gave a statement with his attorney present. RT 99:16-100:3, 216:3-10. No witness corroborated Ayala's claims that Lewis reached under the seat, that Lewis made threatening statements to Ayala, or that Lewis was rushing forward toward Ayala with his right hand behind his back. RT 505:15-25, 506:23-507:4, 516:4-17 (DeFoe).

Lewis was struck by five gunshots: one on the upper side of the right arm with a right-to-left and downward trajectory; two to the front central chest with a downward right trajectory, and two to the back. RT 423:2-4, 424-425:22, 430:3, 431:2-10, 433-434:2. Dr. Eugene Carpenter, who performed Lewis' autopsy, testified that in order to get a gunshot wound to the back, Lewis' back would need to be exposed to Ayala. RT 436:9-24, 443. At least one of the shots to the back had a lethal path of travel. RT 436:22-438, 453:5-9. Dr. Carpenter testified that the trajectory of the gunshots was consistent with Lewis getting out of the vehicle, turning counterclockwise to his left, continuing to turn counterclockwise to face Ayala, having been struck in the left back by the first shot, starting to bend forward toward Ayala where he sustains shots 2 and 3 to the chest, continuing to rotate so his right shoulder is exposed to Ayala, and then finally rotating so his back is again to Ayala, where he falls backward and sustains a second shot to the back. RT 447:3-450:12. Consistent with this hypothetical, Terletter testified that he observed Lewis spin to his left when he exited the vehicle, prior to the shooting. RT 476:11-14. Alternatively, Lewis could have sustained the shots to the back if he turned after the shots to the chest, and was then struck in the back. RT 461:3-13. Either way, Dr. Carpenter testified that the trajectory of the bullet wounds is inconsistent with Lewis facing front to front with Ayala for all five shots. RT 461:15-22.

By contrast, Ayala testified that Lewis was facing directly toward him for all five shots, and he cannot explain how two of his shots ended up in Lewis' back. RT 97:22-98:8, 148:9-25. Also dubious, the "charging" action by Lewis, which Ayala vaguely describes, allegedly all took place somewhere between the driver's side door and the rear of the vehicle. RT 217:12-16.

-6-

### III.  <u>LEGAL STANDARD</u>

A party seeking judgment as a matter of law under Rule 50(b) has a "very high" standard to meet. This "high hurdle recognizes that credibility, inferences and factfinding are the province of the jury[.]" *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 859 (9th Cir. 2002). "A jury's verdict must be upheld if it is supported by substantial evidence, which is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion." *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002). A court ruling on a Rule 50(b) motion may not substitute its own view of evidence for that of a jury. *Johnson v. Paradise Valley Unified Sch. Dist.*, 215 F.3d 1222 (9th Cir. 2001). "[I]n entertaining a motion for judgment as a matter of law, the court . . . may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000). Rather, the Court "must view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." *Josephs v. Pac. Bell*, 443 F.3d 1050, 1062 (9th Cir. 2006). "The test applied is whether the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Id.* "Further, unlike a motion to dismiss or motion for summary judgment, [the court] must defer to the facts as they were reasonably found by the jury[.]" *A.D. v. Cal. Highway Patrol*, 712 F.3d 446, 459 (9th Cir. 2013).

### IV.  ARGUMENT

**A.  Plaintiffs Presented Sufficient Evidence to Support a Fourth Amendment Claim for Excessive Force Against Deputy Ayala.**

As set forth above and as reflected in relevant portions of the trial transcripts filed concurrently, Plaintiffs presented more than sufficient evidence at trial to support the jury's finding that Ayala violated Lewis' right to be free from excessive force under the Fourth Amendment. This includes the undisputed evidence that: Lewis was initially cooperative when Ayala stopped the vehicle; Lewis was unarmed at the time of the shooting; Lewis never reached for Ayala's gun; Ayala never saw a gun on Lewis' person or in the vehicle; Ayala did not give Lewis a verbal warning that deadly force would be used or further commands prior to shooting him; and Lewis sustained two gun shots to the back. The evidence also includes witness testimony

-7-

1   confirming that Lewis never reached under the seat, never verbally threatened Ayala, and that both

2   of Lewis' hands were visible and empty at the time of the shooting.

3        Fourth Amendment claims of excessive force are analyzed under an objective

4   reasonableness standard." *Espinosa v. City & Cnty. of San Francisco*, 598 F.3d 528, 537 (9th Cir.

5   2010). When evaluating a claim of excessive force, the inquiry is whether the deputy's actions are

6   "objectively reasonable" in light of the facts and circumstances confronting him. *Glenn v.*

7   *Washington Cnty.*, 673 F.3d 864, 871 (9th Cir. 2011) (quoting *Graham v. Connor*, 490 U.S. 386,

8   397 (1989)). "This inquiry requires a careful balancing of the nature and quality of the intrusion on

9   the individual's Fourth Amendment interests against the countervailing governmental interest at

10   stake." *Id.* (quoting *Graham*, 490 U.S. at 396). The Court must "balance the amount of force

11   applied against the need for that force." *Bryan v. McPherson*, 630 F.3d 805, 823-24 (9th Cir. 2010)

12   (cleaned up). "Certain principles are clearly established . . . that implement the fundamental rules

13   regarding the use of deadly force." *Harris v. Roderick*, 126 F.3d 1189, 1201 (9th Cir. 1997).

14   Because Ayala's shots fired at Lewis constitute the greatest possible amount of force, they require

15   the highest justification. "The intrusiveness of a seizure by means of deadly force is unmatched.

16   The suspect's fundamental interest in his own life need not be elaborated upon. The use of deadly

17   force also frustrates the interest of the individual, and of society, in judicial determination of guilt

18   and punishment." *Garner*, 471 U.S. at 9. "Law enforcement deputies may not shoot to kill unless,

19   at a minimum, the suspect presents an immediate threat to the officer or others or is fleeing and his

20   escape will result in serious threat of injury to persons." *Harris*, 126 F.3d at 1201.

21        Governmental interests to balance against the type of force used include the following

22   factors identified in *Graham*: "(1) the severity of the crime; (2) whether the suspect posed an

23   immediate threat to the deputies' or public's safety; and (3) whether the suspect was resisting

24   arrest or attempting to escape." *Espinosa*, 598 F.3d at 537. The inquiry is "highly fact-intensive"

25   and involves "no *per se* rules." *Torres v. City of Madera*, 648 F.3d 1119, 1124 (9th Cir. 2011).

26   Courts do "recognize that 'police officers are often forced to make split-second judgments . . .'"

27   *Id.* at 1124 (quoting *Graham*, 490 U.S. at 397). "Not all errors in perception or judgment,

28   however, are reasonable," and while courts "do not judge the reasonableness of an officer's

1  actions 'with the 20/20 vision of hindsight,' nor does the Constitution forgive an officer's every

2  mistake." *Id.* (quoting *Graham*, 490 U.S. at 396).

3      Other significant factors to consider are the availability of alternative methods to effectuate

4  an arrest or overcome resistance and whether the officer gave a warning that deadly force would

5  be used. *Smith v. City of Hemet*, 394 F.3d 689, 701 (2005) (en banc); *Gonzalez v. City of Anaheim*,

6  747 F.3d 789, 797 (9th Cir. 2014) (holding jury could find officer had failed to warn suspect, and

7  while "[t]he absence of a warning does not necessarily mean that [the] use of deadly force was

8  unreasonable [,] . . . . [a] rational jury may find . . . a warning was practicable and the failure to

9  give one might weigh against reasonableness") (citing *Scott v. Harris*, 550 U.S. 372, 383 (2007));

10  *Nelson v. City of Davis*, 685 F.3d 867, 882 (9th Cir. 2012); *Deorle v. Rutherford*, 272 F.3d 1272,

11  1283-84 (2001); *Harris*, 126 F.3d at 1201 ("whenever practicable, a warning must be given before

12  deadly force is employed"); *Bryan,* 630 F.3d at 831; *Headwaters v. County of Humboldt*, 240 F.3d

13  1185, 1204 (9th Cir. 2000) ("[P]olice are 'required to consider what other tactics if any were

14  available to effect the arrest.'"). Here, it is undisputed that Ayala did not give Lewis a verbal

15  warning that deadly force would be used and did not give Lewis any further commands prior to

16  firing his first shot.

17      Under the facts of this case, the most important *Graham* factor is whether Lewis posed an

18  immediate threat of death or serious bodily injury to Ayala at the time of the shooting. *Bryan*, 630

19  F.3d at 826. As Plaintiffs' police practices expert, Scott DeFoe, testified at trial, pursuant to basic

20  police training and California Penal Code § 835(a), a potential threat or fear of future harm does

21  not rise to the level of an immediate threat. RT 511:14-512:3. Along these lines, "[a] simple

22  statement by an officer that he fears for his safety or the safety of others is not enough; there must

23  be objective factors to justify such a concern." *Deorle*, 272 F.3d at 1281. An officer's "desire to

24  resolve quickly a potentially dangerous situation" does not, on its own, justify the use of deadly

25  force. *Id.*

26      Viewing the facts in the light most favorable to Plaintiffs, and drawing all reasonable

27  inferences in their favor, as this Court must do in deciding a motion for judgment as a matter of

28  law, substantial evidence was presented at trial to support the jury's conclusion that Ayala used

excessive force when he shot and killed Lewis, who posed no immediate threat of death or serious

bodily injury to Ayala or any other person at the time of the shots. The jury could easily have

found that the incident did not happen as Ayala described.

First, although the evidence established that Ayala received information from a

confidential informant that Lewis was on probation and possessed firearms, Ayala admitted that

he never saw a gun or anything that looked like a gun, either on Lewis' person or in the vehicle at

any time. At trial, police practices expert Mr. DeFoe testified that even if the incident happened as

Ayala described (that Ayala feared that Lewis was reaching under the seat, and that Lewis had

verbally threatened to kill Ayala), those facts still would not be enough to justify shooting Lewis,

based on police training and standards, because Lewis' actions were not life threatening. RT

506:1-22. As Mr. DeFoe explained to the jury, under police training and standards, in order to

justify the use of deadly force the person making the threat must have the present ability,

opportunity, and apparent intent to immediately cause death or serious bodily injury, which in this

case means that Lewis would need to have been armed with a firearm. RT 506:18-22, 507:5-508:7,

514:11-516:3. Here, Ayala has admitted, and it is undisputed that Decedent was unarmed at the

time of the shooting.

Second, Plaintiffs presented evidence that Lewis never made a "deep reach" under the seat

for a gun. J. Salcedo testified that Lewis was reaching for the ignition, and Terletter testified that

Lewis appeared to be attempting to drive away. Third, the jury heard testimony from J. Salcedo

that she did not hear Lewis verbally threaten Ayala, even though she was seated directly behind

Lewis at the time when Ayala asserts that Lewis threatened to kill him. Fourth, Plaintiffs presented

evidence that both of Lewis' hands were visible at the time of the shooting, including testimony by

Terletter that he saw Lewis approaching Ayala with both hands outstretched in front of him, and

never saw Lewis' hands in his waistband or behind his back. RT 516:18-517:16. The jury also

heard Montoya's testimony that Lewis had both hands in front of him, without any object in his

hands, at the time of the shooting. Ayala admits that Lewis never reached for his gun.

Finally, the medical examiner, Dr. Carpenter, testified that two of the gunshots struck

Lewis in the back, undisputed forensic evidence showing that Lewis' back was facing Ayala when

two shots struck Lewis in the back. This physical evidence belies Ayala's assertion that Lewis was facing Ayala during all of the shots, and calls Ayala's credibility into question, to the extent that he claims not to remember how the shots to the back occurred.  This evidence more than supports the jury's finding that Ayala's use of deadly force was excessive, where he shot an unarmed man in the back without seeing any object in his hands and without giving Lewis a verbal warning or further commands prior to shooting him.

### B. Deputy Ayala is Not Entitled to Qualified Immunity

#### 1. Ayala's Shooting Violated Clearly Established Law

As explained above, the first prong of qualified immunity is easily satisfied here, where the evidence overwhelmingly supports the jury's verdict that Ayala violated Lewis' constitutional right to be free from excessive force in the manner that Lewis was shot by Ayala. The second prong of qualified immunity is also satisfied in this case because, as this Court correctly found in denying Defendants' Rule 50(a) motion, at the time of the shooting the law was clearly established that the use of deadly force would not be justified under this set of facts. RT 745:4-17 (citing *Graham v. Connor, supra*, and *Hayes v. County of San Diego*, 736 F.3d 1223, 1233-34 (9th Cir. 2013) [finding the force excessive where the officer shot without first issuing a warning, where there was evidence that the decedent was not charging at deputies and did not threaten to harm anyone]).

In determining which cases "clearly establish" Lewis' right to be free from excessive force in this case, this Court must accept Plaintiffs' facts as true and assume that the jury did the same in reaching its verdict in Plaintiffs' favor.  On Plaintiffs' facts, which are supported by the evidence described above: Lewis never reached for a weapon, never threatened Ayala, and had his back facing Ayala during two of the shots.  Both of Lewis' hands were visible when Ayala took the shots, immediately after Lewis exited the vehicle, without giving Lewis a warning or further commands and without seeing a weapon (or anything that looked like a weapon) in his hands, on his person, or in the vehicle.

Viewing the facts in the light most favorable to Plaintiffs, this is an "obvious case" of being a constitutional violation. *Estate of Najera Aguirre v. Cnty. of Riverside*, 29 F.4th 624, 629

1  (9th Cir. 2022) ("no 'body of relevant case law' is necessary in an 'obvious case' like this one")

2  (citing *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 6 (2021)); *Adams v. Speers*, 473 F.3d 989, 994 (9th

3  Cir. 2007) (denying qualified immunity where suspect's non-dangerousness and officer's failure to

4  warn before shooting placed the case squarely "within the obvious"); *Brosseau v. Haugen* 543 U.S.

5  194, 197–99 (2004) (reaffirming the rule of *Tennessee v. Garner*, 471 U.S. 1, 11 (1985) and

6  explaining that it provides sufficient "fair warning" of a constitutional violation in "obvious" cases);

7  *Harris*, 126 F.3d at 1204 ("a general constitutional rule already identified in the decisional law

8  may apply with obvious clarity to the specific conduct in question.") (quoting *United States v.*

9  *Lanier*, 520 U.S. 259, 271 (1997)); *K.H. Through Murphy v. Morgan*, 914 F.2d 846 (7th Cir.

10  1990) ("The easiest cases don't even arise."). Courts have repeatedly held that officers are not

11  entitled to qualified immunity in cases where suspects did not have weapons on their persons,

12  brandish weapons, or threaten to use them—even if the officer believed the suspect was

13  armed.  *See, e.g.*, *Estate of Lopez v. Gelhaus*, 149 F. Supp. 3d 1154, 1160 (N.D. Cal. 2016), *aff'd*

14  *and remanded sub nom. Estate of Lopez by & through Lopez v. Gelhaus*, 871 F.3d 998 (9th Cir.

15  2017) (holding that it was clearly established that an officer would know that deadly force was

16  unreasonable where the suspect appears to have a weapon such as a replica gun but officers have

17  no reports of the suspect using the weapon and the suspect made no threats or sudden moves);

18  *A.K.H. v. City of Tustin*, 837 F.3d 1005 (9th Cir. 2016) (holding that an officer who shot a suspect

19  was not entitled to qualified immunity when "[the officer] never saw a gun" and "could provide no

20  basis for his belief that [the suspect] was armed").

21      Even assuming that it was reasonable for Deputy Ayala to believe that Lewis potentially

22  had a gun hidden behind his back in his right hand, the Ninth Circuit has repeatedly emphasized

23  that the mere fact that a suspect is armed with a deadly weapon does not render an officer's use of

24  deadly force *per se* reasonable under the Fourth Amendment. *See, e.g.*, *Longoria v. Pinal County*,

25  873 F.3d 699, 706-07 (9th Cir. 2017) (dispute of fact regarding whether suspect assumed a

26  threatening "shooter's stance" in interaction with officers precluded summary judgment); *George v.*

27  *Morris*, 736 F.3d 829, 838-39 (9th Cir. 2013) (holding that a reasonable jury could find a

28  constitutional violation where it was disputed whether the suspect ever raised his gun); *Hayes v.*

1  *County of San Diego*, supra (finding the force excessive where the suspect produced a knife within

2  6-8 feet of officers); *Glenn v. Washington Cnty.*, 673 F.3d 864, 872-73 (9th Cir. (2011) (holding

3  that a totality of the circumstances analysis does not end in a determination that the suspect was

4  armed with a deadly weapon.); *Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991)

5  (finding that the defendants were not entitled to qualified immunity where, in one witness' version of

6  the shooting, "Curnow did not point the gun at the officers and apparently was not facing them when

7  they shot him the first time"); *S.T. v. City of Ceres*, 327 F. Supp. 3d 1261, 1277 (E.D. Cal. 2018) ("A

8  reasonable jury could infer from the fact that he was shot in the back that the Decedent was facing

9  away from the officers at the time that they fired and therefore did not pose an imminent threat to

10  officer safety."); *Collender v. City of Brea*, 605 F. App'x 624, 628-29 (9th Cir. 2015) (holding that

11  a jury could find the unarmed suspect posed no immediate threat when he ran toward an officer

12  with his arms outstretched and then lowered his left arm towards his left front pocket, at which

13  point an officer shot and killed him).

14      Defendants rely on dicta in *Cruz v. City of Anaheim*, 765 F.3d 1076 (9th Cir. 2014), to argue

15  that it would be "unquestionably reasonable for police to shoot a suspect in [the decedent's] position

16  if he reaches for a gun in his waistband, or even if he reaches there for some other reason." *Id.* at

17  1078.  This type of dicta cannot be invoked to establish the law for qualified immunity purposes. *See*

18  *Ashcroft v. al-Kidd*, 563 U.S. 731, 741–42 (2011) (finding dicta to fall short of clearly establishing the

19  law). Regardless, *Cruz* is distinguishable. There, officers knew the suspect was armed, had a felony

20  firearm conviction, and was a gang member. The confidential informant in *Cruz* also warned that the

21  suspect said he "was not going back to prison."  During a traffic stop, Cruz struck a patrol car while

22  backing up and attempting to flee, then exited and allegedly reached for his waistband. *Id.* at 1077–

23  78. Here, Lewis engaged in no such violence and Ayala's claim that Lewis verbally threatened him is

24  contradicted by witness testimony.  At trial, the jury heard evidence that Lewis did not have a weapon

25  on his person, did not brandish a weapon, did not reach for a weapon, did not reach for his waistband,

26  and made no verbal threats. Rather, the jury heard evidence that both of Lewis' hands were visible

27  and empty at the time of the shooting, and that Lewis's back was facing Ayala during at least two of

28  the shots.  Likewise, *Lal v. California*, 746 F.3d 112, 117 (9th Cir. 2014), where the decedent was

PLAINTIFFS' OPPOSITION TO DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF
LAW (RULE 50b)

1   advancing toward officers while threatening them with a large rock held above his head, after already

2   having thrown rocks at officers, is inapplicable to this case.

3          Defendants' argument that qualified immunity should be granted because Ayala made a

4   "reasonable mistake" of fact or law is unavailing. (Def. Mot. at 12:9-21, 14:4-5). Under Plaintiffs'

5   facts, which the jury presumably adopted in rendering their verdict for Plaintiffs, Ayala could not

6   have believed that shooting Lewis was objectively reasonable in light of the above-cited clearly

7   established law and the information known to Ayala at the time of the shooting. Further, whether

8   Ayala made a "mistake of fact as to whether or not Lewis truly had a gun in his hand" is an element

9   of Ninth Circuit Jury Instruction No. 9.25. (Def. Mot. at 14:4-5). The reasonable inference is that the

10  jury followed the law, including Instruction No. 9.25 as given by this Court, and determined that

11  Ayala's subjective belief or fear that Lewis could be armed with a gun was not objectively

12  reasonable.

13          **2.   Deputy Ayala's Failure to Warn Weighs Against Granting Qualified Immunity**

14          This Court should also deny the request for qualified immunity because Deputy Ayala's

15  failure to give Lewis a verbal warning, before shooting, that deadly force would be used, violated

16  clearly established law. *Garner*'s broad contours of deadly force principles were well established

17  at the time of this incident, including the notion that deadly force may be used only after a warning

18  has been given, if it is feasible to do so. *Garner*, 490 U.S. at 397; *see also Gonzalez v. City of*

19  *Anaheim*, 747 F.3d 789, 797 (9th Cir. 2014) (holding that that a jury could find the officer had

20  failed to warn the suspect, and that while "[t]he absence of a warning does not necessarily mean

21  that [the officer's] use of deadly force was unreasonable [,] . . . . [a] rational jury may find . . .

22  [that] a warning was practicable and the failure to give one might weigh against reasonableness.")

23  (citing *Scott*, 550 U.S. at 383); *Deorle*, 272 F.3d at 1283–84; *Harris*, 126 F.3d at 1201 ("whenever

24  practicable, a warning must be given before deadly force is employed."); *Forrett v. Richardson*,

25  112 F.3d 416, 420 (9th Cir. 1997).[1]

26  ───────────────

27         [1] Even though *Forrett* ultimately found no constitutional violation, it put the defendant officers
    on notice that warnings, or lack thereof, factor into the reasonableness of the use of deadly force.

28      (footnote continued)

1

2

3

4

> To the extent earlier precedent does not clearly establish the need to warn (if feasible) in circumstances perfectly matching with those here, it is still acceptable to hold [the defendant officers] to this standard because factual flexibility is built in. The rule is warn *if feasible*. By its nature, this general rule can rightly be applied to most uses of deadly force, because it accounts for on-the-ground challenges officers may encounter in legally novel scenarios. Moreover, no unusual circumstances existed here to override this default expectation.

5    *Jacquez v. City of San Jose*, Case No. 16-cv-05330-NC, Doc. No. 84 at pp. 12:20-28 (denying

6    qualified immunity); *see also Bowles v. City of San Jose*, Case No. 19-cv-01027-NC, Doc. No. 53

7    at pp. 10:24-11:4, 14:26-15:1 (denying qualified immunity and holding that it was clearly

8    established at the time of the shooting that an officer should give a warning before using deadly

9    force, and that whether it was feasible to give a warning before shooting is for the jury to decide).

10    In this case, a reasonable jury could easily find that it was feasible for Deputy Ayala to give

11    Decedent a verbal warning that deadly force would be used prior to shooting him.

12 **3. A Case with Identical Facts is Not Required for this Court to Deny Qualified**

13 **Immunity**

14    Finally, the United States Supreme Court "has firmly rejected the notion that 'an official

15    action is protected by qualified immunity unless the very action in question has previously been

16    held unlawful.'" *Brosseau*, 543 U.S. at 205 (2004) (Stevens, J., dissenting) ("The Court's search

17    for relevant case law applying the *Garner* standard to materially similar facts is both unnecessary

18    and ill advised) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d

19    523 (1987)). The Ninth Circuit has likewise acknowledged that qualified immunity may be denied in

20    novel circumstances. *See, e.g., Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1093 (9th Cir. 2013)

21    ("We are particularly mindful of this principle in the context of Fourth Amendment cases, where the

22    constitutional standard—reasonableness—is always a very fact-specific inquiry."); *Mattos v.*

23    *Agarano*, 661 F.3d 433, 442 (9th Cir. 2011); *Hope v. Pelzer*, 536 U.S. 730,754 (2002). "Otherwise,

24    officers would escape responsibility for the most egregious forms of conduct simply because there

25    was no case on all fours prohibiting that particular manifestation of unconstitutional conduct."

26

27    ───────────────

28    *See Hope*, 536 U.S. at 743 (finding "[t]he reasoning, though not the holding" of a case put reasonable officers on notice).

1  *Deorle*, 272 F.3d at 1286 ("When the defendant's conduct is so patently violative of the

2  constitutional right that reasonable officials would know without guidance from the courts that the

3  action was unconstitutional, closely analogous pre-existing case law is not required to show that

4  the law is clearly established."); *see also Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010) ("We

5  do not engage in 'a scavenger hunt for prior cases with precisely the same facts' but examine

6  'whether the law put officials on fair notice that the described conduct was unconstitutional.'").

7        **4.  Deputy Ayala's Police Training Weighs Against Granting Qualified Immunity**

8        This Court should also deny Ayala's request for qualified immunity because it is well

9  established that a violation of officer training weighs against granting qualified immunity. *See*

10  *Drummond v. City of Anaheim*, 343 F.3d 1052 1062 (9th Cir. 2004) ("training materials are

11  relevant not only to whether the force employed in this case was objectively unreasonable . . . but

12  also to whether reasonable officers would have been on *notice* that the force employed was

13  objectively unreasonable."). Officers' training, internal polices, and Peace Officer Standards and

14  Training are important factors to consider in the context of qualified immunity.  An officer who

15  makes a conscious decision to violate basic training guidelines, designed to safeguard the subject,

16  should not subsequently be heard to claim to have made a reasonable mistake, or to have

17  reasonably believed his or her decision to be lawful. Here, Ayala violated basic police training on

18  the use of deadly force when he shot Lewis when there was no immediate threat of death or

19  serious bodily injury, and without giving a verbal warning, before shooting, that deadly force

20  would be used.

21        **C.  Plaintiffs Presented Sufficient Evidence to Support a State Law Claim for Battery**

22             **Against Ayala**

23        Under California law, battery and negligence claims arising out of excessive force by a

24  peace officer are evaluated by way of traditional Fourth Amendment analysis under *Graham*,

25  *supra*. *See Munoz v. City of Union City*, 120 Cal. App. 4th 1077, 1121 n.6 (2004) ("Federal civil

26  rights claims of excessive force are the federal counterpart to state battery and wrongful death

27  claims; in both, the plaintiff must prove the unreasonableness of the officer's conduct. Accordingly,

28  federal cases are instructive."); *see also Hayes*, 736 F.3d at 1232; *Edson v. City of Anaheim*, 63 Cal.

-16-

App. 4th 1269, 1274 (1998). The evidence set forth above (in Sections II and IV(A) above) supports not only the jury's finding in Plaintiffs' favor on Plaintiffs' excessive force claim, but also supports the jury's finding in Plaintiffs' favor on Plaintiffs' claims for battery, negligence, and violation of the Bane Act. This includes the following evidence presented at trial: (1) Ayala's own testimony that he never saw a gun on Lewis' person, in his hands, or in the vehicle; (2) the undisputed fact that Lewis was unarmed at the time of the shooting; (3) J. Salcedo's testimony that Lewis reached for the ignition and never reached under the seat for a weapon, confirmed by Terletter's testimony that Lewis appeared to be attempting to drive away; (4) J. Salcedo's testimony that Lewis did not verbally threaten Ayala; (5) testimony by Terletter, Montoya, and J. Salcedo that both of Lewis' hands were visible at the time of the shooting; (6) Ayala's admissions that Lewis never reached for Ayala's weapon and that Ayala did not give Lewis a verbal warning or further commands prior to shooting him; (7) Dr. Carpenter's testimony, as the medical examiner, that two of the shots struck Lewis in the back; (8) Scott DeFoe's testimony that even if the shooting occurred as Ayala described, Ayala's use of deadly force still would not be justified because Lewis was unarmed and posed no immediate threat of death or serious bodily injury.

### D. Plaintiffs Presented Sufficient Evidence to Support a State Law Claim for Negligence Against Ayala

With respect to Plaintiffs' negligence claim, the California Supreme Court has clarified that in police shooting cases, the negligence analysis is even broader than a typical Fourth Amendment analysis because state law specifically considers negligent "pre-shooting" tactics as part of the "totality of the circumstances" evaluation. *Hayes v. County of San Diego*, 57 Cal. 4th 622, 639 (2013) (an officer's tactical conduct and decisions preceding the use of deadly force are relevant considerations in determining whether the use of deadly force gives rise to negligence liability, which "can arise, for example, if the tactical conduct and decisions show, as part of the totality of circumstances, that the use of deadly force was unreasonable"). Contrary to Defendants' Motion, Plaintiffs' negligence claim does not hinge solely on Ayala's pre-shooting negligent tactics. In addition to the evidence of Ayala's pre-shooting negligence, as described below, the evidence set forth above in conjunction with Plaintiffs' claims for excessive force and battery supports

PLAINTIFFS' OPPOSITION TO DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW (RULE 50b)

1    Plaintiffs' claim that Ayala's use of deadly force against Lewis was negligent. In this case, the jury

2    heard evidence of Ayala's pre-shooting negligent tactics during the trial, including through

3    testimony by Mr. DeFoe, as follows.

4         First, Mr. DeFoe testified that from a police practices perspective, it was inappropriate for

5    Ayala to attempt to make contact with Lewis' vehicle as a solo officer, if Ayala reasonably

6    believed he had credible information that Lewis could be armed, particularly where there was no

7    sense of urgency and Ayala had no first-hand information that Lewis was armed. RT 496:18-497:5,

8    497:20-498:2. The jury heard evidence that officer and citizen safety is paramount. Ayala had

9    Lewis' information, including the license plate number, and could have avoided putting himself in

10   a poor tactical position by waiting for backup officers with whom he could formulate a plan. RT

11   498:3-17. Rather than pulling Lewis over as a solo officer and then pursuing him alone on foot,

12   Ayala should have waited for backup to take Lewis into custody, clear and search the vehicle, and

13   set up a perimeter, in case Lewis ran. RT 502:1-21.

14        Second, if Ayala actually observed Lewis reaching under the seat or actually heard Lewis

15   verbally threaten to kill him, then Ayala engaged in poor tactics by failing to take a position of

16   cover and failing to give Lewis commands. RT 504:5-505:5. If Ayala reasonably believed that

17   Lewis was reaching for a weapon, then he should not have been standing out in the open; rather, a

18   reasonable police officer in his position would have created time and distance to deescalate the

19   situation and would have put a barrier between himself and Lewis, including a ballistic door panel.

20   RT 505:1-5. Ayala also engaged in negligent pre-shooting tactics when he failed to give Lewis a

21   verbal warning that he would be shot, as trained, and when he failed to use the less-lethal options

22   available to him, including a Taser, a police baton, or OC spray. RT 509:17-20.

23        **E.  Plaintiffs Established a Bane Act Claim**

24        Plaintiffs' Bane Act claim arises from Ayala's excessive use of deadly force. Contrary to

25   Defendants' arguments, Plaintiffs need not show that Ayala intended to violate Lewis'

26   constitutional rights and need not show "threat, intimidation or coercion" separate from the use of

27   excessive force in order to establish a Bane Act claim. *Cornell v. City and County of San*

28   *Francisco*, 17 Cal. App. 5th 766 (2017), cited by Defendants, does not stand for the proposition

1    that the Bane Act requires specific intent as an element of an excessive force claim. (Def. Mot. at p.

2    22). If *Cornell* contained such a holding, it would be inconsistent with sections of the *Cornell*

3    opinion wherein the *Cornell* court agrees that the standard for excessive force claims under §1983

4    is the same as the standard for excessive force claims under the Bane Act. Importantly, *Cornell* was

5    a false arrest case that merely highlighted that in the context of an unlawful arrest there must be

6    something more than mere negligence. Nothing in *Cornell* requires an element of "scienter"

7    beyond that of the use of excessive force. *See Cornell*, 17 Cal. App. 5th at 799 ("the use of

8    excessive force can be enough to satisfy the 'threat, intimidation or coercion' element of Section

9    52.1.").

10           Further, the Ninth Circuit in interpreting *Cornell* stated, "it is not necessary for the

11   defendants to have been 'thinking in constitutional *or legal terms* at the time of the incident[],

12   because a reckless disregard for a person's constitutional rights is evidence of a specific intent to

13   deprive that person of those rights.'" *Reese v. County of Sacramento*, 888 F.3d 1030 (9th Cir. 2018)

14   (quoting *United States v. Reese*, 2 F.3d 870 (9th Cir. 1993). As discussed in detail above, Ayala's

15   shooting demonstrated a reckless disregard for Lewis' safety and his constitutional right to be free

16   from excessive force. Ayala testified that he intentionally pressed the trigger five times when he

17   fatally shot Lewis without first giving him a verbal warning that deadly force would be used and

18   without seeing a weapon or anything that looked like a weapon in Lewis' hands, on his person, or

19   in the vehicle. On Plaintiffs' facts, Ayala shot Lewis even though both of his hands were visible

20   and there was nothing in his hands, and even though Lewis made no verbal threats and never

21   reached for a weapon. The reasonable inference is that the jury heard this evidence and determined

22   that the evidence established that Ayala acted with a reckless disregard for Lewis' life when he shot

23   and killed him, consistent with the appropriate jury instruction read by this Court.

24           Defendant County of Kern is vicariously liable for Ayala's conduct on all of Plaintiffs' state

25   law claims. Cal. Gov. Code § 815.2(a) ("A public entity is liable for injury proximately caused by

26   an act or omission of an employee of the public entity within the scope of his employment if the act

27   or omission would, apart from this section, have given rise to a cause of action against that

28   employee or his personal representative.")  The jury was instructed that Ayala was acting within

1  the course and scope of his employment at the time of the shooting.

2  **F.  No State Law Defenses or Immunities Protect Defendants from Liability**

3       Qualified immunity does not apply to Plaintiff's state law claims, and the state law

4  provisions cited by Defendants do not confer immunity on peace officers for discretionary acts

5  involving the unreasonable use of force. *See, e.g.*, *Sharp v. County of Orange*, 871 F.3d 901, 920–

6  21 (9th Cir. 2017) (§821.6 "is limited to malicious-prosecution claims"); *Blankenhorn v. City of*

7  *Orange*, 485 F.3d 463 (9th Cir. 2007) (denying immunity under California law where the

8  arrestee's claims arose from excessive force and were not based on acts taking place during an

9  investigation); *Robinson v. Solano Cnty.*, 278 F.3d 1007, 1016 (9th Cir. 2002); *Warren v. Marcus*,

10  78 F. Supp. 3d 1228, 1249 (N.D. Cal. 2015) ("Defendant's conduct at issue in this case—alleged

11  excessive force and unlawful seizure—is 'not the sort of conduct to which section 821.6 immunity

12  has been held to apply.'") (citing *Blankenhorn*, 485 F.3d at 488); *Knapps v. City of Oakland*, 2009

13  WL 2390262. (N.D. Cal. 2009); *Garcia v. City of Merced*, 637 F. Supp.2d 731 (E.D. Cal. 2008)

14  (declining to grant immunity under California's discretionary immunity statute where arrestee

15  alleged the force was unreasonable); *Price v. County of San Diego*, 990 F. Supp. 1230 (S.D.

16  Cal.1998) (California statute does not confer immunity upon peace officer for discretionary acts if

17  officer uses unreasonable force). Cal. Gov. Code § 845.8 (immunity clearly limited to damages

18  caused by "a person resisting arrest," not caused by an officer).

19       Defendants' reference to California Penal Code Sections 835(a) and 196 is unavailing.

20  Police training and standards instruct that deadly force can only be used based on an objectively

21  reasonably belief that the person has the present ability, opportunity, and apparent intent to

22  immediately cause death or serious bodily injury to the peace officer or another person.  Cal. Penal

23  Code §835(a).  An imminent harm is not merely a fear of future harm, no matter how great the

24  fear and no matter how great the likelihood of the harm, but is one that from appearances must be

25  instantly confronted and addressed.  *Id*.  The jury heard overwhelming evidence to support its

26  verdict that Lewis did not have the present ability, opportunity, and apparent intent to immediately

27  cause death or serious bodily injury to Ayala or anyone else.

28

1

## V.    <u>CONCLUSION</u>

2    For the reasons set forth above, this Court should deny Defendants' Motion for Judgment

3   as a Matter of Law in its entirety.

4

5    Respectfully submitted,

6

7   DATED: May 2, 2025                         LAW OFFICES OF DALE K. GALIPO

8

9                                    By:  *s/ Renee V. Masongsong*
                                        _____
10                                       Dale K. Galipo
                                        Renee V. Masongsong
11                                       Attorneys for Plaintiffs R.L., M.L., H.L.,
                                        and A.W.
12

13  DATED: May 2, 2025                         ALEXANDER MORRISON + FEHR LLP
                                            TONI JARAMILLA, A Professional Law Corp.
14

15                                   By:  *s/ J. Bernard Alexander, III*
                                        _____
16                                       J. Bernard Alexander, III
                                        Toni Jaramilla
17                                       Britt L. Karp
                                        Counsel for Plaintiffs MICKEL ERICK LEWIS
18                                       JR, ORIONA LEWIS and BRIONA LEWIS

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF
LAW (RULE 50b)