1   LAW OFFICES OF DALE K. GALIPO
    Dale K. Galipo, Esq. (SBN 144074)
2   dalekgalipo@yahoo.com
    Renee V. Masongsong, Esq. (SBN 281819)
3   rvalentine@galipolaw.com
    21800 Burbank Boulevard, Suite 310
4   Woodland Hills, CA 91367
    Tel: (818) 347-3333 / Fax: (818) 347-4118
5
    Attorneys for Plaintiffs
6   R.L., M.L., H.L., and A.W.

7   TONI JARAMILLA, A Professional Law Corp.
    Toni J. Jaramilla, Esq. (SBN 174625)
8   Toni@tjjlaw.com
    1900 Avenue of the Stars, Suite 900
9   Los Angeles, California 90067
    T: (310) 551-3020 | F: (310) 551-3019
10
    ALEXANDER MORRISON + FEHR LLP
11  J. Bernard Alexander, III (State Bar No. 128307)
    balexander@amfllp.com
12  Britt L. Karp (State Bar No. 278623)
    bkarp@amfllp.com
13  1900 Avenue of the Stars, Suite 900
    Los Angeles, California 90067
14  T: (310) 394-0888 | F: (310) 394-0811

15  Attorneys for Plaintiffs, MICKEL E. LEWIS JR, ORIONA LEWIS and BRIONA LEWIS

16              **UNITED STATES DISTRICT COURT**
              **EASTERN DISTRICT OF CALIFORNIA**
17

18  MICKEL ERICK LEWIS JR, et al.,          Case No: 1:21−CV−00378−KES-CDB

19              Plaintiffs,                 Assigned to:
                                            Hon. District Judge Kirk E. Sherriff
20        vs.                               Hon. Magistrate Charles D. Breyer

21  COUNTY OF KERN and JASON AYALA,         **PLAINTIFFS' OPPOSITION TO**
                                            **DEFENDANTS' MOTION FOR NEW**
22              Defendants.                 **TRIAL**

23  R.L., et al.,

24              Plaintiffs,                 Date:     June 16, 2025
                                            Time:     1:30 p.m.
25        vs.                               Dept.:    6

26  COUNTY OF KERN and JASON AYALA,

27              Defendants.

28

# <u>TABLE OF CONTENTS</u>

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 1

I.    INTRODUCTION ................................................................................................................. 1

II.   LEGAL STANDARD ON A MOTION FOR A NEW TRIAL ............................................. 2

III.  ARGUMENT ........................................................................................................................ 2

    A.   The Verdict Should Not be Set Aside ........................................................................ 2

    B.   A New Trial is Not Warranted Because This Court's Exclusion of Evidence
       of the Handgun and Drug Use Was Neither Erroneous Nor Substantially
       Prejudicial to Defendants. ........................................................................................... 4

        *1.   This Court Properly Excluded Evidence of the Handgun* ............................ 6

        *2.   This Court Properly Excluded Drug Evidence* ............................................. 9

    C.   This Court Properly Excluded Evidence of Lewis' History of Drug Use and
       Criminal History as to Damages Under Rules 401, 402, 403, 404 ......................... 10

    D.   The Court Properly Denied Defendant's Request to Submit Special
       Interrogatories Regarding Qualified Immunity ........................................................ 13

    E.   The Court Did Not Violate the Lump-Sum Rule; In the Alternative, A New
       Trial is Not Required to Remedy a Violation of the Lump-Sum Rule ................... 15

    F.   The Court Properly Excluded So-Called Impeachment Evidence in
       Connection with Plaintiffs' Police Practices Expert, Scott DeFoe ........................ 17

    G.   The Court Properly Excluded Defendants' Human Factors Expert ....................... 18

    I.    The Jury's Award Was Not Excessive ..................................................................... 21

        *1.   The Jury's Award for Pre-Death Pain and Suffering Was Not
            Excessive and Was Supported by Evidence* ................................................. 21

        *2.   The Jury's Award for Wrongful Death Damages Was Not Excessive
            and Was Not the Result of Confusion or an Improper Basis* ..................... 22

IV.   CONCLUSION ................................................................................................................... 24

1

## **TABLE OF AUTHORITIES**

2

### Cases

3

*Acosta v. City and Cnty. of San Francisco,*
  83 F.3d 1143 (9th Cir. 1996) ............................................................................ 15

4

*Barillas v. City of Los Angeles,*
  No. CV1808740CJCASX, 2021 WL 4434977 (C.D. Cal. Apr. 12, 2021) ........................ 12

5

*Barranco v. 3D Sys. Corp.,*
  No. CV 13-00412 LEK-RLP, 2018 WL 4323895 (D. Haw. Sept. 10, 2018) ..................... 6

6

*Bowen v. Kizirian,*
  105 Cal. App. 286 (1930) ............................................................................... 19

7

*Boyd v. City & Cnty. of San Francisco,*
  576 F.3d 938 (9th Cir. 2009) ......................................................................... 6, 9

8

*Canavin v. Pac. Sw. Airlines,*
  148 Cal. App. 3d 512 (Ct. App. 1983) ............................................................... 19

9

*Cate v. Fresno Traction Co.,*
  213 Cal. 190 (1931) ..................................................................................... 19

10

*Conan v. City of Fontana,*
  2017 WL 8941499 (C.D. Cal. Oct. 6, 2017) ........................................................ 11

11

*Crawford v. Tribeca Lending,*
  815 F.3d 121 (2d Cir. 2016) ............................................................................ 2

12

*Cruz v. City of Anaheim,*
  765 F.3d 1076 (9th Cir. 2014) .......................................................................... 9

13

*Cunning v. Skye Bioscience, Inc.,*
  No. 821CV00710DOCKES, 2023 WL 6370931 (C.D. Cal. Aug. 21, 2023) ...................... 6

14

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
  509 U.S. 579 (1993) ..................................................................................... 22

15

*Dominguez v. City of Los Angeles,*
  No. CV174557DMGPLAX, 2018 WL 6164278 (C.D. Cal. Oct. 9, 2018) ...................... 12

16

*Estate of Aguirre v. County of Riverside,*
  131 F.4th 702 (9th Cir. 2025) .......................................................................... 16

17

*Estate of Diaz v. City of Anaheim,*
  840 F.3d 592 (9th Cir. 2016) ...................................................................... 11, 12

18

*Estate of Tindle v. Mateu,*
  No. 18-CV-05755-YGR, 2020 WL 5760287 (N.D. Cal. Sept. 28, 2020) ...................... 10

19

*Floyd v. Laws,*
  929 F.2d 1390, 1394 (9th Cir. 1991) ................................................................. 23

20

*Glenn v. Washington Cnty.,*
  673 F.3d 864 (9th Cir. 2011) ....................................................................... 5, 10

21

*Graham v. Connor,*
  490 U.S. 386 (1989) ................................................................................... 5, 8

22

*Gregory v. Oliver,*
  2003 WL 1860270 (N.D. Ill. Apr. 9, 2003) .......................................................... 11

23

*Griffey v. Pacific Electric Ry. Co.,*
  58 Cal. App. 509 (1922) ................................................................................. 19

24

*Hana Fin., Inc. v. Hana Bank,*
  735 F.3d 1158 (9th Cir. 2013) ........................................................................... 6

25

*Harper v. City of Los Angeles,*
  533 F.3d 1010 (9th Cir. 2008) ..................................................................... 3, 28

26

27

28

*Hayes v. Cnty. of San Diego*,
    736 F.3d 1223 (9th Cir. 2013) ............................................................................... 10

*Hung Lam v. City of San Jose*,
    869 F.3d 1077 (9th Cir. 2017) ............................................................................... 16

*Image Tech. Services, Inc. v. Eastman Kodak Co.*,
    125 F.3d 1195 (9th Cir. 1997) ............................................................................... 23

*In re Toyota Motor Corp. Prods. Liab. Litig.*,
    978 F. Supp. 2d 1053 (C.D. Cal. 2013) .................................................................. 22

*Jackson v. Cnty. of San Bernardino*,
    194 F. Supp. 3d 1004 (C.D. Cal. 2016) .................................................................. 10

*Landes Construction v. Royal Bank of Canada*,
    833 F.2d 1365 (9th Cir. 1987) ................................................................................. 2

*Larez v. City of Los Angeles*,
    946 F.2d 630 (9th Cir. 1991) ................................................................................... 8

*Luce v. United States*,
    469 U.S. 38 (1984) ................................................................................................... 5

*Mateyko v. Felix*,
    924 F.2d 824, 827 (9th Cir.1991) .......................................................................... 15

*Medina v. Pile Trucking, Inc.*,
    594 F. App'x 358 (9th Cir. 2015) .......................................................................... 20

*Merrick v. Farmers Ins. Group*,
    892 F.2d 1434 (9th Cir. 1990) ............................................................................... 23

*Morad v. City of Long Beach*,
    No. CV166785MWFAJWX, 2018 WL 11352372 (C.D. Cal. June 15, 2018) ........... 10

*Morales v. Fry*,
    873 F.3d 817 (9th Cir. 2017) ................................................................................. 16

*Mukhtar v. Cal. State Univ.*,
    299 F.3d 1053 (9th Cir. 2002) ............................................................................... 23

*Ohler v. United States*,
    529 U.S. 753 (2000) ................................................................................................. 7

*Reese v. Cnty. of Sacramento*,
    888 F.3d 1030 (9th Cir. 2018) ............................................................................... 24

*Rickards v. Noonan*,
    40 Cal. App. 2d 266 (1940) ................................................................................... 19

*Robinson v. Western States Gas etc. Co.*,
    184 Cal. 401 (1920) ......................................................................................... 19, 20

*Rubalcava v. City of Los Angeles*,
    64 F.3d 1323 (9th Cir. 1995) ................................................................................... 2

*Ruvalcaba v. City of Los Angeles*,
    167 F.3d 514 (9th Cir. 1999) ................................................................................. 15

*Ruvalcaba v. City of Los Angeles*,
    No. 2:12-CV-06683-ODW, 2014 WL 4426303 (C.D. Cal. Sept. 8, 2014) ................ 10

*Saucier v. Katz*,
    533 U.S. 194 (2001) ............................................................................................... 15

*Simmons v. Superior Court*,
    7 Cal. App. 5th 1113 (2016) .................................................................................. 24

*Soto v. BorgWarner Morse TEC, Inc.*,
    239 Cal. App. 4th 165 (2015) ................................................................................ 26

*Stringer v. City of Pablo*,
    No. C 07–03544 MEJ, 2009 WL 5215396 (N.D. Cal. Dec. 28, 2009) .................... 10

-iii-

*Stroh v. Saturna Capital Corp.*,
    746 Fed. App'x 639 (9th Cir. 2018)...........................................................................6

*United States v. 4.0 Acres of Land*,
    175 F.3d 1133 (9th Cir. 1999)..................................................................................2

*United States v. Aims Back*,
    588 F.2d 1283 (9th Cir. 1986)................................................................................13

*United States v. Hankey*,
    203 F.3d 1160 (9th Cir. 2000)..................................................................................8

*United States v. Reese*,
    2 F.3d 870 (9th Cir. 1993)......................................................................................24

*V.V. v. City of Los Angeles*,
    No. 2:21-cv-01889-MCS-PD, 2022 WL 3598167 (C.D. Cal. July 6, 2022).......11

*Van Cleef v. Aeroflex Corp.*,
    657 F.2d 1094, 1099 (9th Cir. 1981)......................................................................23

*Wallace v. City of San Diego*,
    479 F.3d 616 (9th Cir. 2007)....................................................................................2

*White v. Ford Motor Co.*,
    312 F.3d 998, 1012 (9th Cir. 2002)........................................................................23

*Willis v. City of Fresno*,
    No. 1:09–CV–01766–BAM, 2013 WL 6145232 (E.D. Cal. Nov. 21, 2013)........11

*Wisler v. City of Fresno*,
    2008 WL 2954179 (E.D. Cal. 2008)........................................................................11

*Wright v. City of Los Angeles*,
    219 Cal. App. 3d 318 (Ct. App. 1990)...................................................................28

*Zerby v. City of Long Beach*,
    637 F. App'x 1008 (9th Cir. 2016).........................................................................20

*Zivkovic v. S. Cal. Edison Co.*,
    302 F.3d 1080 (9th Cir. 2002)..................................................................................5

## Rules

Federal Rule of Civil Procedure 61 .................................................................................2

Federal Rule of Evidence 403 ........................................................................................15

Federal Rule of Evidence 404 ........................................................................................15

Federal Rule of Evidence 702 ........................................................................................22

Federal Rule of Evidence 801 ........................................................................................15

Federal Rule of Evidence 802 ........................................................................................15

## Other

9 C. Wright & A. Miller, Federal Practice and Procedure: Civil, § 2505 (1971) ..........13

Moore's Federal Practice (2d ed.1989)..........................................................................13

1

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2

## **I.    INTRODUCTION**

3        This Court should deny Defendants' Motion for a New Trial in full. First, this Court

4    properly excluded information unknown to Defendant Deputy Jason Ayala ("Ayala") at the time

5    of the shooting under Federal Rules of Evidence 402, 403, and 404, including evidence of a

6    handgun Ayala never saw was in Lewis' vehicle at some point and evidence of Lewis' criminal

7    history and drug use. Even if this hindsight evidence had been admitted, it would not have any

8    impact on the jury's verdict or the damages award. The jury heard testimony that Ayala received

9    information from a confidential information that Lewis (1) had a gun just hours before the

10   incident, (2) was on felony probation and therefore subject to being searched, and (3) based on

11   Ayala's observations, he had formed the impression that Lewis was high on methamphetamine.

12   Second, this Court properly excluded Destiny Salcedo's double hearsay statement, that was

13   allegedly captured on a recording, but which was purportedly "lost" by Ayala's employer and

14   never produced to Plaintiffs during discovery. Third, this Court properly excluded Defendants'

15   human factors expert. Fourth, this Court appropriately determined that special interrogatories

16   would not be helpful in this case. Fifth, the Bane Act instruction issued by this Court was not

17   erroneous and is an accurate statement of the law.

18        Finally, the jury's damages award was not excessive. Overwhelming evidence supported

19   the jury's award of $3.5 million in wrongful death damages to each of the decedent's seven

20   children, and $1million for Lewis' pre-death pain and suffering following this five-day trial.

21   Importantly, recent verdicts and settlements in comparable cases support these findings and the

22   jury's damage awards as well. In their argument, Defendants even cite to Plaintiffs' counsel's own

23   case, *Archibald v. County of San Bernardino*, in asserting that the damages in this case were

24   excessive, though the cited cases clearly show otherwise and actually support the jury's damages

25   award in this case. Even outside the context of Section 1983 civil rights, damage awards routinely

26   exceed $30.5 million, and $3.5 million per plaintiff in wrongful death damages, and $1million in

27   pre-death pain and suffering damages specifically. For the foregoing reasons, and the reasons set

28

forth by Plaintiffs' counsel at the hearing on this motion, Defendants' Rule 59 Motion for a New Trial should be denied in its entirety.

## II.      LEGAL STANDARD ON A MOTION FOR A NEW TRIAL

The Court may grant a new trial if "the verdict is contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent…a miscarriage of justice." *United States v. 4.0 Acres of Land*, 175 F.3d 1133, 1139 (9th Cir. 1999). A verdict may be set aside only where, after giving full respect to the jury's findings, the judge "is left with the definite and firm conviction that a mistake has been committed by the jury." *Landes Construction v. Royal Bank of Canada*, 833 F.2d 1365, 1371-72 (9th Cir. 1987). Courts "should not be quick to revisit a jury's credibility determinations, and must proceed with caution and great restraint when asked to do so." *Crawford v. Tribeca Lending*, 815 F.3d 121, 128 (2d Cir. 2016). A court may not grant a new trial simply because it would have arrived at a different verdict. *Wallace v. City of San Diego*, 479 F.3d 616, 630 (9th Cir. 2007).

 "Unless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the court or a party—is grounds for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order." Fed. R. Civ. P. 61. "[T]he court must disregard all errors and defects that do not affect any party's substantial rights." *Id.* "A new trial is only warranted when an erroneous evidentiary ruling 'substantially prejudiced' a party." *Rubalcava v. City of Los Angeles*, 64 F.3d 1323, 1328 (9th Cir. 1995) (internal citations omitted). Prejudice is found only if the error "more probably than not…tainted the verdict." *Harper v. City of Los Angeles*, 533 F.3d 1010, 1030 (9th Cir. 2008).

## III.      ARGUMENT

### A.  The Verdict Should Not be Set Aside

This Court should not set aside the jury's verdict in this case because the verdict is not against the clear weight of evidence, is not based on false evidence, and allowing the verdict to stand will not result in a miscarriage of justice. As explained in Plaintiffs' opposition to Defendants' renewed motion for judgment as a matter of law, the jury's verdict is supported by substantial evidence presented at trial. In determining whether to set aside the jury's verdict, this

Court can and should assess the credibility of witnesses, including Ayala specifically. Giving full respect to the jury's findings, it is highly likely that the jury found issues with Ayala's credibility and determined that Ayala fabricated his version of events, including his assertions that Lewis made a "deep reach" under the seat, verbally threatened to kill him, advanced toward him with his right hand hidden behind his back, and was facing Ayala during all five shots, as well as Ayala's selective memory of details and events leading up to the shooting. The jury could reasonably conclude that all of these fabrications, coupled with his selective memory, were offered by Ayala to justify his shooting of an unarmed man.

Ayala claimed that Lewis verbally threatened him when he was halfway in and out of the vehicle during the approximate one to two seconds that Lewis reentered the vehicle. Yet Ayala elected not to take a position of cover or tactically reposition himself in response to allegedly hearing the verbal threat. RT 127:12-128:21. Ayala was unable to state exactly what Lewis said and whether Lewis was in or outside of the vehicle when Lewis allegedly verbally threatened Ayala. RT 124:17-125:16, 128:18-129:1. In testimony, Ayala conceded that occupants of the vehicle presumably would have been able to hear any statements made by Lewis upon his reentering the vehicle. RT 81:10-16. J. Salcedo, who was sitting directly behind Lewis during this incident, testified that she never heard Lewis threaten to kill Ayala or say "you're going to have to kill me" or words to that effect. RT 251:2-23, 256:2-20, 265:3-20.

Whereas Ayala testified to Lewis making a "deep reach" under the seat of the vehicle, J. Salcedo testified that when Lewis reentered the vehicle, he moved his hand toward the ignition in an effort to drive away. RT 254:10-255:20. J. Salcedo's testimony is corroborated by Terletter's testimony, that it appeared Lewis was attempting to drive away. RT 472:9-19, 475:22-476:1.

One of the main reasons Ayala gave for shooting Lewis is Ayala's observation of Lewis having his right hand hidden behind his back during the shots. RT 139:1-16. However, at trial and deposition, Ayala testified that he could only see Lewis' face during the shots. RT 135:4-136:9, 144:8-15. And claimed that Lewis was facing him during all five shots. However, Dr. Eugene Carpenter, the medical examiner who performed Lewis' autopsy, testified that Lewis was struck by two shots to the back, and that the trajectory of the bullet wounds is inconsistent with Lewis

facing front to front with Ayala for all five shots. RT 423:2-4, 424-425:22, 430:3, 431:2-10, 433-434:2, 461:15-22. At trial, Ayala insisted that he could not remember any of Lewis' body movements during his shots, in order to explain bullet entry wounds to Lewis' back.[1]

Immediately after the shooting, Ayala never told anyone at the scene that he saw Lewis reaching under the seat of the vehicle; or that he believed Lewis was looking for a gun; or that Lewis had verbally threatened to kill him, or words to that effort; or that Lewis' right hand was behind his back, causing Ayala to believe there was a gun in Lewis' right hand. RT 99:3-15. When backup arrived after the shooting, Lewis never warned responding officers to be careful because there could be a gun under the seat. RT 212:21-25. The *first time* Ayala told anyone that Lewis' right hand was behind his back during the shooting, that Lewis had verbally threatened Ayala, and that Lewis made a "deep reach" under the seat, was five (5) days later when he gave a statement with his attorney present. RT 99:16-100:3, 216:3-10. No witness corroborated Ayala's claims that Lewis reached under the seat, verbally threatened Ayala, or was advancing toward Ayala with his right hand behind his back when Ayala shot Lewis. RT 505:15-25, 506:23-507:4, 516:4-17 (DeFoe).

**B.   A New Trial is Not Warranted Because This Court's Exclusion of Evidence of the Handgun and Drug Use Was Neither Erroneous Nor Substantially Prejudicial to Defendants.**

This Court's evidentiary ruling excluding information unknown to Ayala at the time of the shooting, including evidence of the existence of a handgun and Lewis' history of drug use and

---

[1] RT 1:92:18-93:9 [time passing from final exit of vehicle to first short]; RT 93:17-94:7 [my definition of "immediate" is the fluid — or fluid motion of how everything occurred…"]; RT 115:14-116:3 [same]; RT 95:8-22 [never saw his right hand visible before he started shooting]; RT 96:10-17 ["I don't remember saying "turn around." I was thinking maybe that wa possibly a typo in the transcript."; RT 97:20-98:17 [Don't remember his back ever facing him, during any of the shots]; RT 116:4-17 [don't recall where the gun specifically was pointed, "didn't bring [the gun] up"]; RT 117:2-7 [no estimate of how many steps decedent took before he starting firing]; RT 117:8-11 [the distance the decedent covered]; RT 124:12-24, 126:3-12, 126:20-127:11; 128:18-129:1 [threat half in half out of the car]; RT 129:2-18 [don't know movement of Lewis while charging forward]; RT 134:5-17, 134:22-136:15 [could only see decedent's face during every shot, don't remember seeing anything else when firing]; RT 140:6-25 [during shots 1,2 and 3, could not see right hand, behind his back]; RT 141:8-142:21 [cannot break down the sequence].

sales, was appropriate under Federal Rules of Evidence 401, 402, 403 and 404, as well as Ninth Circuit case law. The Supreme Court has held that, in an excessive force case, the inquiry "is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). The reasonableness of the shooting must be judged from the perspective of a reasonable officer on scene, "rather than with 20/20 vision of hindsight," and the Court "cannot consider evidence of which [Ayala was] unaware" at the time of the shooting. *Graham*, 490 U.S. at 396; *Glenn v. Washington Cnty.*, 673 F.3d 864, 873 n.8 (9th Cir. 2011).

Judges have wide latitude in conducting their trials. *See, e.g.*, *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002). This includes the authority to determine the admissibility of evidence via motions *in limine* prior to trial pursuant to its ability to manage trials. *Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984); *Hana Fin., Inc. v. Hana Bank*, 735 F.3d 1158, n. 4 (9th Cir. 2013), aff'd, 574 U.S. 418, 135 S. Ct. 907, 190 L. Ed. 2d 800 (2015). In terms of evidentiary error at trial, the Ninth Circuit has stated:

> The decision to admit potentially prejudicial evidence under Rule 403 is committed to the sound discretion of the trial court. Proof the evidence was prejudicial to one party is insufficient to establish that the prejudice was unfair, or that the trial court abused its discretion in weighing that prejudice against the evidence's probative value. As long as it appears from the record as a whole that the trial judge adequately weighed the probative value and prejudicial effect of proffered evidence before its admission, we conclude that the demands of Rule 403 have been met.

*Boyd v. City & Cnty. of San Francisco*, 576 F.3d 938, 948 (9th Cir. 2009) (cleaned up). Even if the exclusion of evidence at trial was an abuse of discretion, a new trial should not be granted if the exclusion of evidence was harmless. *See Stroh v. Saturna Capital Corp.*, 746 Fed. App'x 639, 640 (9th Cir. 2018) (Mem.) (citing *Rubalcava*, 64 F.3d at 1328). In this case, a new trial is not appropriate because, based on the totality of the evidence presented at trial, it is highly unlikely that admission of the evidence at issue would have changed the jury's verdict.

Moreover, it is not appropriate to relitigate the Court's rulings on motions in *limine* in a Rule 59 motion. *Cunning v. Skye Bioscience, Inc.*, No. 821CV00710DOCKES, 2023 WL 6370931 at *5 (C.D. Cal. Aug. 21, 2023) (citing *Barranco v. 3D Sys. Corp.*, No. CV 13-00412 LEK-RLP,

2018 WL 4323895 at *6 (D. Haw. Sept. 10, 2018) (holding that a decision on a motion *in limine* created law of the case that would not be revisited on a Rule 59 motion for a new trial)). Additionally, as this Court noted, a court's rulings on motions *in limine* "are not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n. 3 (2000); RT 50:13-51:1.

### 1. This Court Properly Excluded Evidence of the Handgun

This Court's order excluding evidence of the handgun was not erroneous. First, under Federal Rules of Evidence 401, 402, 403 and 404, this Court appropriately determined to exclude evidence that a handgun was in Lewis' vehicle at some point. There is no evidence that Lewis had the handgun on his person, in his hands or otherwise in his possession at the time Ayala determined to shoot Lewis, and no evidence that Ayala ever saw Lewis with a gun or anything that looked like a gun. Ayala testified at trial that he searched Lewis when he first stepped out of the vehicle, and did not observe or feel any weapons. RT 77:17-78:2. When Lewis exited the vehicle the second time, Ayala did not see Lewis pull a gun out from under the driver's seat, nor did Ayala see Lewis exit the vehicle with a gun. RT 89:10-16. Ayala testified that he *never* saw a gun at any time prior to shooting Lewis. RT 96:2-9, 144:19-145:23. After the shooting, Ayala physically searched Lewis again, and found no guns in Lewis' hands or around him. RT 149:8-16. This evidence corroborates the undisputed fact that Lewis was unarmed at the time Ayala shot Lewis.

Whether, at some point, a handgun may have been present somewhere inside the vehicle at the time of the shooting is wholly irrelevant to whether a reasonably well-trained officer in Ayala's position would have formed the objectively reasonable belief that Lewis posed an immediate threat of death or serious bodily injury at the time of the shooting. Ayala had no knowledge of the handgun in the vehicle at the time of the shooting, and never saw, felt or found a gun (in contradiction to the informant's tip), even after twice searching Lewis. A handgun was later found long after the shooting, in a field some distance away from Lewis' vehicle. The front-seat passenger, Marlyn Komenenus, who did not testify at trial, testified at her deposition that she had possession of the gun hidden in her shirt at the time of the shooting, and then later discarded the gun in the field after the shooting. Ayala had no knowledge of the above facts regarding the

presence of the gun in the car on Komenenus' person.  Thus, neither the presence of the gun in the vehicle, nor its later discovery in a nearby field have any bearing on the reasonableness of Ayala's five shots – because Ayala's decision to shoot Lewis was not based on any of these considerations. As such, this Court appropriately excluded the evidence of Komenenus having the gun and disposing of the gun as irrelevant and unduly prejudicial. RT 54:8-14.

Federal Rule of Evidence 403 requires exclusion even of relevant evidence "if its probative value is substantially outweighed by the danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Unfair prejudice" means an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000); *see Larez v. City of Los Angeles*, 946 F.2d 630, 641 n.5 (9th Cir. 1991) (noting that evidence is likely to inflame the jury if it tends to evoke a juror's anger or punitive impulses). This Court correctly excluded evidence of the handgun under Rule 403. Not only is the probative value of this evidence outweighed by the danger of unfair prejudice, but this evidence confuses the facts and the issues, given that the presence of the handgun was unknown to Ayala at the time of the shooting and had no part in any consideration of why Ayala shot Lewis. RT 54:8-14.

Second, in light of the totality of the evidence presented at trial, it is highly unlikely that admission of evidence of the handgun would have changed the jury's verdict. The issue is whether Lewis was armed at the time of the shooting. Whether or not there was a gun somewhere in the vicinity is irrelevant to Ayala's decision-making in deciding to shoot Lewis ("…evidence of which [Ayala was] unaware" at the time of the shooting. *Graham*, 490 U.S. at 396; *Glenn v. Washington Cnty.*, 673 F.3d 864, 873 n.8 (9th Cir. 2011).

At trial, Plaintiffs did not present testimony or argument that there was no handgun in Lewis' vehicle. The jury heard sufficient information regarding the handgun throughout the trial. R.T. 69:11-13, 164:14-22, 165:16-166:7. During opening statements, counsel told the jury that Ayala approached Lewis' vehicle with the belief and understanding that Lewis could be armed, having received information from a confidential informant that Lewis was armed. RT 22:23-25,

23:9-24:6, 25:16-19, 50:8-16. Ayala testified that he had some information from the informant that Lewis had a gun and that if he did have a gun, it would be a violation of his probation. RT 65:10-11, 69:7-16, 208:1-3.

Third, contrary to Defendants' argument, *Cruz v. City of Anaheim*, 765 F.3d 1076 (9th Cir. 2014), is not analogous to the instant case. The Ninth Circuit in *Cruz* reversed the district court's grant of summary judgment to the officers and did not address the admissibility of gun evidence at trial. *Id*. Rather than holding that evidence of Cruz's gun found after the shooting was relevant or admissible, as Defendants suggest, the *Cruz* court held that the district court inappropriately accepted the officers' self-serving statements and failed to consider evidence in Cruz's favor that would contradict the officers' version of events. *Id*. at 1079; (Def. Mot. at p. 4). Unlike Lewis, the officers had specific information that Cruz had a weapon in his waistband, and had committed a felony with a firearm, and stated that "he was not going back to prison." *Id*. at 1078.  Cruz had also exhibited "dangerous and erratic behavior" prior to the shooting, including backing into a patrol car. Further, Cruz was shot while he was inside his vehicle, and a gun was found on the passenger seat of the vehicle after the shooting. *Id*. at 1079-80. By contrast, here, it is undisputed that Lewis was not within reach of the handgun at the time of the shooting.

Defendants' reference to *Boyd* is also unavailing. In *Boyd*, officers alleged that the decedent was acting erratically after attempting to kidnap two women and leading police on a high-speed pursuit, taunting police and goading them to shoot him instead of following commands. Thus, the Ninth Circuit found that the district court did not abuse its discretion in admitting evidence that the decedent was on drugs and had kidnapped two women, in order to corroborate the officers' observations of his alleged erratic behavior in relation to the defense's 'suicide by cop' theory that was disputed by the plaintiffs. *Boyd*, 576 F.3d at 944, 949. None of these factors are present in the instant case, where Defendants never argued that Lewis was attempting to commit suicide by cop, and Lewis' purported motivation is based solely on Ayala's uncorroborated statements, which are clearly at issue.

"Since *Boyd*, the Ninth Circuit appears to have retreated somewhat from its holding." *Estate of Tindle v. Mateu*, No. 18-CV-05755-YGR, 2020 WL 5760287, at *11 (N.D. Cal. Sept. 28,

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR A NEW TRIAL

2020) (citing *Hayes v. Cnty. of San Diego*, 736 F.3d 1223, 1232-33 (9th Cir. 2013); *Glenn.*, 673

F.3d at 873 n.8; *see Morad v. City of Long Beach*, No. CV166785MWFAJWX, 2018 WL

11352372, at *6 (C.D. Cal. June 15, 2018) (recognizing that it was "apparent that the Ninth Circuit

has clarified its position on unknown, preshooting knowledge, holding that it is inadmissible to

establish the reasonableness of an officer's conduct."); *Ruvalcaba v. City of Los Angeles*, No.

2:12-CV-06683-ODW, 2014 WL 4426303, at *2 (C.D. Cal. Sept. 8, 2014) (same). Subsequently,

courts have limited *Boyd*'s holding to cases where the suspect's intent or motive is clearly at issue.

*See, e.g., Jackson v. Cnty. of San Bernardino*, 194 F. Supp. 3d 1004, 1009 (C.D. Cal. 2016)

(declining to apply *Boyd* where the plaintiff's motive or intent was not at issue); *Stringer v. City of*

*Pablo*, No. C 07–03544 MEJ, 2009 WL 5215396, at *3 (N.D. Cal. Dec. 28, 2009) (finding *Boyd*

inapposite where the decedent's motivation or intention to provoke the officers to shoot him is not

at issue); *Willis v. City of Fresno*, No. 1:09–CV–01766–BAM, 2013 WL 6145232, at *4 (E.D.

Cal. Nov. 21, 2013) (declining to admit evidence of prior acts under *Boyd* where the plaintiff's

"motive or intent [was] not at issue, as it was in *Boyd*").

### 2. *This Court Properly Excluded Drug Evidence*

This Court properly excluded hindsight evidence of Lewis' history of drug use and sales.

This evidence was unknown to Ayala at the time of the shooting, and its probative value was

outweighed by its prejudicial effect. *See V.V. v. City of Los Angeles*, No. 2:21-cv-01889-MCS-PD,

2022 WL 3598167, at *4 (C.D. Cal. July 6, 2022) (excluding toxicology report and evidence of

prior drug use as information unknown to officers at time of shooting under FRE 403, and

explaining, that "[t]he Ninth Circuit has set a high bar for the admissibility of intoxication

evidence in the liability phase of an excessive force case") (citing *Estate of Diaz v. City of*

*Anaheim*, 840 F.3d 592, 603 (9th Cir. 2016)); *Conan v. City of Fontana*, 2017 WL 8941499, at *8

(C.D. Cal. Oct. 6, 2017) (excluding evidence of drug use under FRE 403); *Gregory v. Oliver*, 2003

WL 1860270 at *2 (N.D. Ill. Apr. 9, 2003) (granting motion *in limine* to exclude drug evidence

officers discovered after use of force as irrelevant and unduly prejudicial under FRE 403); *Wisler*

*v. City of Fresno*, 2008 WL 2954179 at *5 (E.D. Cal. 2008) (excluding evidence of marijuana use

on grounds it was unduly prejudicial and was not known by defendants). Ayala had no specific

1   information that Lewis was under the influence at the time of the incident, and he obviously could

2   not have seen the post-mortem toxicology results prior to shooting Lewis. Further, Ayala never

3   asked Lewis if he was on drugs. RT 212:7-10.

4          In *Estate of Diaz*, the Ninth Circuit held that evidence of a suspect's drug use is unduly

5   prejudicial if there is no evidence that the officer believed the plaintiff was acting erratically

6   because he was under the influence. 840 F.3d at 602, n.11; *see Barillas v. City of Los Angeles*, No.

7   CV1808740CJCASX, 2021 WL 4434977, at *4–5 (C.D. Cal. Apr. 12, 2021) (excluding evidence

8   of decedent's drug use because defendants did not present evidence of erratic behavior to be

9   corroborated other than decedent's "threatening movements" that immediately preceded the

10  shooting, which they did not contend was due to drugs); *Dominguez v. City of Los Angeles*, No.

11  CV174557DMGPLAX, 2018 WL 6164278, at *2 (C.D. Cal. Oct. 9, 2018) (excluding evidence of

12  drug use on the day of the incident because the decedent's behavior during the incident was "not

13  the sort of 'erratic' behavior that makes the toxicology report so probative as to overcome the high

14  risk of unfair prejudice."). Here, Defendants have not presented any evidence that Lewis acted

15  erratically or that Ayala perceived Lewis to be acting erratically because he was under the

16  influence.

17         Even assuming *arguendo* that exclusion of the drug evidence was erroneous, a new trial is

18  not warranted because the error was harmless and had the unknown information been introduced

19  at trial, it would not have changed the jury's verdict in light of the totality of the evidence

20  presented at trial. As with the evidence of the handgun, Plaintiffs did not present testimony or

21  argument that Lewis was not on drugs, and the jury heard testimony by Ayala that he formed the

22  impression that Lewis was under the influence of methamphetamine. RT 218:1-4.

23         **C. This Court Properly Excluded Evidence of Lewis' History of Drug Use and**

24             **Criminal History as to Damages Under Rules 401, 402, 403, 404**

25         In the Ninth Circuit, "[e]vidence of other crimes or wrong acts is not looked upon with

26  favor and must be carefully scrutinized to determine probative value." *United States v. Aims Back,*

27  588 F.2d 1283, 1287 (9th Cir. 1986). This Court properly exercised its discretion to exclude

28  evidence of Lewis' history of drug use and criminal history as to damages under Rule 403, finding

1  that the prejudicial effect outweighed any probative value. As this Court reasoned, this is not a case

2  where the decedent had an extensive criminal history or was incarcerated for 25 years where the

3  plaintiffs claimed loss of consortium. Rather, Lewis had spent approximately two years in custody,

4  which was a very limited amount of time relative to his lengthy relationship with Plaintiffs, his

5  children, who did not claim loss of consortium. Pretrial Conf. Trn. 38:7-15, 39:11-22. This Court

6  also correctly determined that whether Lewis would have been incarcerated in the future were he

7  convicted on a pending charge was highly speculative, raising significant Rule 403 concerns. *Id*. at

8  39:11-40:8. This properly-excluded information was therefore irrelevant.

9          Defendants argue that Lewis' incarceration impacted his ability to financially provide for

10  his children or pursue gainful employment. However, Plaintiffs did not seek economic damages for

11  past or future loss of Lewis' financial support. (Def. Mot. at 16:26-28). Defendants also argue that

12  Lewis' history of drug use and criminal history were relevant to his own (survival) damages.

13  However, this is purely speculative and lacks foundation, as Defendants did not retain expert to

14  testify about how Lewis' drug use or criminal history could have potentially impacted his life

15  expectancy. (Def. Mot. at 17:11-17). Defendants' argument that Lewis' criminal history was

16  relevant to the nature and degree of the wrongful death damages suffered by Plaintiffs is also

17  speculative and lacks foundation. At trial, Plaintiffs presented strong testimony, supported by

18  numerous family photographs substantiating the close, life-long relationships Lewis had built with

19  his children, and the value of Lewis' life, as further delineated below.

20          Collectively and individually, Plaintiffs all generally testified that they had a close, loving

21  relationships with their father, who was always laughing; and despite the children having different

22  mothers, Lewis and his children enjoyed life as one big family, as seen in group photographs of

23  multiple different children over their lifetimes, as shown to the jury. RT 275-313, 317:5-12,

24  318:12-21, 569, 572, 576; Plaintiffs' Trial Exhibit 10.

25          The adult children, Mickel, Briona and Oriona, testified that their father Lewis visited them

26  in Las Vegas multiple times and once took them to Arizona with him for an entire summer, where

27  he took them swimming and cooked for them. RT 274:2-14, 309:23-310:3-9. Briona, Mickel, and

28  Oriona also testified that their father often took them and the other children from other mothers

1  (R.L., H.L., and M.L.) camping multiple times, took them fishing, taught them to swim and work

2  on cars and gave them advice. RT 275:5-277:19, 279:24-25, 282, 305:21-22, 313:18-22, 380:21-15,

3  385, 386:5-11. Oriona testified that Lewis bought her a car and frequently took all of his children,

4  including M.L., R.L., and H.L., to the beach together. RT 214:1-4, 319:12-20. When Briona,

5  Mickel, and Oriona moved back to California, the children spent almost every weekend with their

6  father, going swimming, bowling, boating, eating out, or visiting the mountains. 278:11-279:23,

7  311:20-312:16. All of the children, including Briona, Oriona, Mickel, R.L. H.L., and M.L., spent

8  holidays with Lewis, and Lewis went to watch his children's sporting events. RT 280:1-20, 312:4-

9  9, 312:17-313:1 (Oriona), 380:13-18 (Mickel), 384:8-25, 562:3-16 (A.W.). Mickel testified that

10  Lewis worked as a grip in the entertainment industry, where his father took him to watch filming

11  on the set of "The Voice." RT 389:30-391:11.

12      Thus, evidence of Lewis' history of drug use and criminal history, if admitted, would not

13  have changed the jury's verdict or award, in light of the substantial evidence presented through

14  Plaintiffs' testimonies, which detailed the profound, strong and life-long relationships each one of

15  the children shared with their father, and the loving relationship they enjoyed with their farther

16  prior to his death. The Court's rulings on Plaintiffs' motion *in limine* to exclude this hindsight

17  evidence did not deprive the jury of important evidence to consider with regards to liability or

18  damages.

19      As indicated above, evidence of Lewis' criminal history was not completely concealed from

20  the jury; rather, the jury heard testimony that Lewis was on felony probation at the time of the

21  incident. Defendants complain that they were precluded from eliciting testimony about Lewis'

22  history of drug use and criminal history from Plaintiffs. However, this Court correctly precluded

23  Defendants from making such inquiries because there was no foundation for such questions, where

24  there was no evidence that Plaintiffs had any first-hand knowledge of Lewis' history of drug use or

25  criminal history, and questions regarding this evidence would have violated the prohibition against

26  hearsay evidence. Fed. R. Evid. 801, 802. Moreover, the trial court had discretion to exclude this

27  evidence under Fed. R. Evid. 403 and 404 as set forth above. In appropriately exercising its

28  discretion and gate-keeping function, the Court allowed into evidence all of the facts known by

1    Ayala at the time he shot Lewis. And there is no evidence to suggest that the decedent's children

2    had personal knowledge of Lewis' purported drug history and drug use, to the extent that it might

3    have affected their damages. Therefore, this information is irrelevant as to damages.

4    **D. The Court Properly Denied Defendant's Request to Submit Special Interrogatories**

5    **Regarding Qualified Immunity**

6        This Court properly exercised its discretion not to issue special interrogatories to the jury.

7    "The decision 'whether to submit special interrogatories to the jury is a matter committed to the

8    discretion of the district court." *Ruvalcaba v. City of Los Angeles*, 167 F.3d 514, 521 (9th Cir.

9    1999) (alteration omitted) (quoting *Acosta v. City and Cnty. of San Francisco*, 83 F.3d 1143, 1149

10   (9th Cir. 1996), *abrogated on other grounds by Saucier v. Katz*, 533 U.S. 194 (2001). As a general

11   rule, a trial court has complete discretion whether to have the jury return a special verdict or a

12   general verdict. *Mateyko v. Felix,* 924 F.2d 824, 827 (9th Cir. 1991); 5A Moore, ¶

13   49.03[1]; Moore's Federal Practice ¶ 49.02 (2d ed.1989), 9 C. Wright & A. Miller, Federal Practice

14   and Procedure: Civil, § 2505 (1971). This discretion extends to determining the form of

15   the special verdict, provided the questions asked are "adequate to obtain a jury determination of the

16   factual issues essential to judgment." *Mateyko,* at 827. In *Hung Lam v. City of San Jose*, 869 F.3d

17   1077 (9th Cir. 2017), the Ninth Circuit held that the district court's declination to give special

18   interrogatories to a jury for the purposes of qualified immunity was not an abuse of discretion. 869

19   F.3d at 1068. In finding special interrogatories unnecessary in *Hung Lam*, the district court

20   reasoned that if the jury found a witness' versions of the facts to be true, then the officer would not

21   be entitled to qualified immunity because his conduct would be a violation of clearly established

22   law. *Id.*

23       Courts have frequently evaluated qualified immunity claims asserted in post-trial motions,

24   where no special interrogatories were issued. *See, e.g.*, *Estate of Aguirre v. County of Riverside*,

25   131 F.4th 702, 707 (9th Cir. 2025) ("Assessing qualified immunity after a jury verdict turns on the

26   second, "clearly established" prong, which requires deference to the jury's view of the facts.")

27   (citation omitted) The *Aguirre* court addressed the controlling law for the second prong of qualified

28   immunity and analyzed how the evidence presented at trial, viewed in the light most favorable to

-13-

the prevailing party at trial, aligned with that law, even though no special interrogatories to resolve factual issues were issued. *See* 131 F.4th at 707-09; *see also Morales v. Fry*, 873 F.3d 817, 826 n.8 (9th Cir. 2017) (in a case where a general verdict is employed, the Court "can still decide the clearly established issue on a Rule 50(b) motion by resolving all factual disputes in favor of the prevailing party"). Notably, Defendants rely only on out-of-circuit precedent to support their argument that "many circuit courts now require (or strongly prefer) that juries return special verdicts pinpointing their resolution of the factual disputes necessary to allow district courts to answer the ultimate legal question of qualified immunity," and none of Defendants' cited cases establish that special interrogatories are necessary in any circuit, let alone the Ninth Circuit.

In this case, the Court carefully reviewed the special interrogatories proposed by Defendants and identified its concerns. RT 748:8-22. The Court articulated that Defendants' proposed special interrogatories were inappropriately worded and presumed that certain facts were in dispute. *Id*. Given the factual scenario of the instant case, it is highly likely that the jury was either going to accept Ayala's version of the events or, alternatively, question Ayala's credibility and accept Plaintiffs' version of the events. RT 438:24-439:9.

The majority of Defendants' proposed special interrogatories asked the jury to determine the reasonableness of Ayala's beliefs, including: whether it was reasonable for Ayala to believe that Lewis had a gun in his car; whether it was reasonable for Ayala to believe that Lewis had a gun in one of his hands; whether it was reasonable for Ayala to believe that Lewis was charging at him; whether it was reasonable for Ayala to believe that he needed to use some force to protect himself from Lewis. (Def. Mot. at 21:23-22:6). The phrasing of Defendants' proposed special interrogatories suggest Ayala's purported beliefs to the jury, making them unduly prejudicial. In reality, the jury was tasked with determining what a reasonable officer in Ayala's position would have believed, based on the information known to Ayala at the time he started shooting, and whether his use of deadly force was necessary to defend human life. Under this set of facts, the Court correctly allowed the jury to deliberate without preposing or attributing beliefs to Ayala in interrogatory form, and allowing the jury to determine whether any one of these beliefs was reasonable. Thus, this Court was correct in declining to issue Defendants' proposed special

1    interrogatories, particularly where Defendants' request placed a burden on this Court to craft more

2    appropriately worded questions while the jury was waiting. This Court did give Defendants an

3    opportunity to propose revised special interrogatories, but Defendants submitted no further

4    proposals.

5         Further, in this case, Plaintiffs presented undisputed evidence at trial to show that Ayala's

6    conduct was a violation of clearly established law, as discussed above. The undisputed evidence is

7    that Lewis was unarmed at the time of the shooting, that Ayala never saw a gun or anything

8    resembling a gun in Lewis' hands, and that Ayala shot Lewis twice in the back, without first

9    issuing a verbal warning. The special interrogatories submitted by Defendants were also vague and

10   confusing and not sufficiently tailored to the facts of this case. Defendants do not explain which of

11   the several cases cited by Plaintiffs in their opposition to Defendants' Rule 50(b) motion, filed

12   concurrently herewith, would not be sufficient to put Ayala on notice that his use of deadly force

13   against Lewis would be excessive and unreasonable based on these undisputed facts alone; or if the

14   jury found in Defendants' favor on any one of their proposed special interrogatories. Based on the

15   foregoing, Plaintiffs have shouldered any burden of proof showing that the jury would, more

16   probably than not, have answered in their favor interrogatories pertaining to qualified immunity.

17   Indeed, the key question for the jury was whether, under the totality of the circumstances—as

18   opposed to any one proposed specific consideration—a reasonable officer in Ayala's position

19   would have used deadly force against Lewis.

20        **E. The Court Did Not Violate the Lump-Sum Rule; In the Alternative, A New Trial is**

21            **Not Required to Remedy a Violation of the Lump-Sum Rule**

22        This Court did not violate the lump sum rule. This issue was raised before this Court prior

23   to trial. RT 750. Although some California law suggests that the jury must calculate wrongful

24   death damages suffered by all heirs and return a verdict for one sum, there is no federal case

25   mandating that a federal court cannot provide separate lines for multiple plaintiffs on the verdict

26   form. Rather, a federal court has discretion to allow separate lines on the verdict form for each

27   plaintiff's wrongful death damages, particularly where, as here, each Plaintiff had a different

28   relationship with the decedent, as several Plaintiffs testified at trial, and between Lewis' seven

-15-

1   children, there were three different mothers, and the jury may find that certain plaintiffs should get

2   more or less.

3        Based on Plaintiffs' counsel's experience in trying over 50 wrongful death cases in federal

4   court, federal courts routinely allow a separate line for each plaintiff on the verdict form.

5   (Masongsong Decl. at ¶ 19; *see* "Ex. 9" to Masongsong Decl. at p. 2, "Ex. 14" at p. 2; "Ex. 16" at

6   2:26-3:3; "Ex. 15 at pp. 9-10). Further, under *Canavin v. Pac. Sw. Airlines*, 148 Cal. App. 3d 512,

7   536–37 (Ct. App. 1983), even a state court has discretion to ask the jury to return special findings

8   in regards to wrongful death damages for each heir, so long as each heir is represented by counsel

9   and they have waived special apportionment by the court. The *Canavin* court held:

> Assuming valid stipulations, [there is] no potential conflict of interest among the plaintiffs and their respective counsel who may ethically argue each client's cause in an attempt to maximize the size of the lump-sum award. Further, "[t]he defendant has no interest in the division which the plaintiffs may make among themselves, or which may be made for them, of the damages recovered. The statute contemplates a single recovery for the benefit of the family of the deceased to those of his heirs who are dependent upon him for support. Whether it is divided among them after recovery or not, or how it is divided, are matters of no concern to the defendant. Special findings would promote the allocation of the total award in a manner consistent with the jury's intent as to those issues of fact before them regarding the heirs' respective interests in that portion of the lump-sum award relating to the loss of nonmonetary support in accordance with an approved general practice in this state

17   *Id*. at 98-99 (citing *Robinson v. Western States Gas etc. Co.*, 184 Cal. 401, 410–411 (1920); *Cate*

18   *v. Fresno Traction Co.*, 213 Cal. 190, 203–204 (1931); *Rickards v. Noonan*, 40 Cal. App. 2d 266,

19   271 (1940); *Griffey v. Pacific Electric Ry. Co.,* 58 Cal. App. 509, 523 (1922); *Bowen v.*

20   *Kizirian,* 105 Cal. App. 286, 289 (1930)). Here, all Plaintiffs jointly requested, through their

21   counsel, a verdict form that requested special findings on wrongful death damages.

22        Even if allowing Plaintiffs to present separate lines for the wrongful death damages on the

23   verdict form was erroneous—which Plaintiffs do not concede—any error was harmless and not

24   prejudicial to Defendants. *Medina v. Pile Trucking, Inc.*, 594 F. App'x 358, 359 (9th Cir. 2015)

25   ("[Defendant] has not cited to any case law or presented any evidence in support of its contention

26   that a jury supplied with two blank lines is likely to award greater damages than a jury supplied

27   with only one blank line. Because the purpose of the lump-sum rule is to protect plaintiffs, not

28   defendants, we do not presume prejudice.") (quoting *Robinson v. W. States Gas & Elec. Co.*, 184

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR A NEW TRIAL

1   Cal. 401 (1920); *see also Zerby v. City of Long Beach*, 637 F. App'x 1008 (9th Cir. 2016)

2   (indicating that the defendant has no interest in the division of wrongful death damages as among

3   the plaintiffs). At the end of the day, the total wrongful death damages awarded would presumably

4   reflect the separate damages to each Plaintiff. RT 750:24-751:9. The jury presumably followed the

5   jury instructions issued, and whether the jury provided a lump sum or individual amounts would

6   not affect the total amount awarded. *Id*. Defendants' argument to the contrary is highly

7   speculative. Asking the trial court to later decide whether the total should be divided equally or in

8   some other manner places an unfair and unreasonable burden on the trial court. *Id*. Even if this

9   Court were to divide the total sum equally, it would be confusing to determine percentage amounts

10  between seven individual plaintiffs.

11          The fact that the jury awarded each Plaintiff an amount consistent with the amounts

12  suggested by Plaintiffs' counsel in their closing arguments supports that there was no prejudicial

13  error (if any error) in allowing the jury to provide a separate amount of wrongful death damages

14  for each Plaintiff. Counsel for the minor Plaintiffs suggested that the jury award each Plaintiff at

15  least $3 million in wrongful death damages, and counsel for the decedent's adult children

16  suggested that the jury award each Plaintiff at least $5 million in wrongful death damages. RT

17  921:19-22, 938:17-24.

18          **F.    The Court Properly Excluded So-Called Impeachment Evidence in Connection**

19          **with Plaintiffs' Police Practices Expert, Scott DeFoe**

20          This Court correctly excluded Destiny Salcedo's double hearsay statement, "I guess my

21  stepdad said he was going to shoot him," which was not captured on any available recording, but

22  was simply contained in a narrative. RT 522:11-13. The audio-recorded interview of D. Salcedo

23  produced during discovery did not include this statement allegedly made by D. Salcedo.

24  Defendants sought to use this non-produced statement to impeach DeFoe at trial. RT 523-525. This

25  Court correctly determined that it would be unfair to admit the hearsay statement at trial, where

26  Defendants previously deposed D. Salcedo, never questioned her about the purported statement,

27  then later claimed that the recording of the statement had been lost by the Sheriff's department,

28  Ayala's employer. RT 525:527. As this Court noted, it was unclear from the narrative summary

1   whether D. Salcedo was simply agreeing with information supplied by a hearsay source when she

2   said, "I guess he said he was going to shoot him," and without the recording, there was no basis to

3   support that she actually made this statement, which was a Rule 403 issue. RT 526:23-527:5-529.

4   Admission of this double hearsay narrative would have misled the jury to believe that D. Salcedo

5   actually made this statement and actually heard Lewis verbally threaten Ayala. As this Court stated,

6   the actual context of this apparent double hearsay statement would have been clear if the actual

7   recording were available. But regardless, the purported statement did not corroborate Ayala's

8   assertion that Lewis verbally threatened him. RT 529:13-18. Thus, neither this Court's exclusion of

9   this evidence nor this Court's refusal to issue a corrective instruction was prejudicial to Defendants.

10       **G.  The Court Properly Excluded Defendants' Human Factors Expert**

11          This Court did not err in excluding Defendants' human factors expert, Michael Kuzel, and

12   this Court's ruling was not unduly restrictive or prejudicial. This Court carefully considered this

13   issue during the March 3, 2025, oral argument on the parties' motions in limine on, and then issued

14   a thorough and well-reasoned March 13, 2025, order granting Plaintiffs' motion in limine to

15   exclude Kuzel. (Dkt. No. 134). Although Defendants asserted that Kuzel's opinions would be

16   limited to matters relating to human perceptions and reaction time, this Court correctly held that

17   "[e]ven in the area of "human factors" concerning perceptions and reaction time under stress,

18   defendants have not met their burden to establish Kuzel's relevant qualifications and experience to

19   provide such testimony in the context of this case." (*Id*. at 5:13-17). This Court continued, "[w]hile

20   defendants proffer that Kuzel has served as a human factors expert in police officer use of force

21   events, defendants do not indicate whether any such use of force events concerned officer involved

22   shootings." (*Id*.).

23          Federal Rule of Evidence 702 provides that an expert may testify in the form of an opinion

24   if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to

25   understand the evidence or to determine a fact in issue; (b) the testimony is based on scientific facts

26   or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has

27   reliably applied the principles and methods to the facts of the case." In *Daubert v. Merrell Dow*

28   *Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993), the Supreme Court held that Rule 702 poses a

1  special gate-keeping obligation upon a trial judge to make a preliminary assessment of the

2  admissibility of expert scientific testimony. Specifically, the Court held that under Rule 702, "the

3  trial judge must ensure that any and all scientific testimony or evidence admitted is not only

4  relevant, but reliable." *Id*. at 589.

5      As part of the trial court's gate-keeping function, the trial court must analyze the foundation

6  of an expert's opinions to ensure that the testimony rests on a reliable footing and is relevant to the

7  task at hand. *In re Toyota Motor Corp. Prods. Liab. Litig.*, 978 F. Supp. 2d 1053, 1064 (C.D. Cal.

8  2013). A trial court's gatekeeping function to admit only expert testimony that is both reliable and

9  relevant is especially important "considering the aura of authority experts often exude, which can

10  lead juries to give more weight to their testimony." *Id.* (quoting *Mukhtar v. Cal. State Univ.*, 299

11  F.3d 1053, 1063-64 (9th Cir. 2002)). Under these standards, this Court appropriately held, "The

12  opinions set forth in Kuzel's expert report are . . . insufficiently supported by reliable scientific

13  methodology. . . and "Kuzel fails to explain how he reached these conclusions and fails to provide

14  any supporting methodology." (Dkt. No. 134 at 5:24-6:2). Kuzel's testimony was appropriately

15  excluded because "[w]ithout any methodology or reasoning in [Kuzel's] expert report, th[is] Court

16  [was unable to] adequately assess the basis for Kuzel's opinions or conclusions as to any "human

17  factors" that may have influenced Ayala's decision. (Id. at 6:16-18).

18      **H.  The Bane Act Instruction was Not Erroneous**

19      The Bane Act instruction issued by this Court was not erroneous. Even if it were—which

20  Plaintiffs disagree—errors in jury instructions warrant a new trial only when they "fail to fairly and

21  correctly cover the substance of the applicable law." *White v. Ford Motor Co*., 312 F.3d 998, 1012

22  (9th Cir. 2002). Trial courts thus enjoy "substantial latitude in tailoring the instructions." *Id.*

23  (quotations and citations omitted). If an error is "more probable than not, harmless," the verdict

24  must stand. *Floyd v. Laws*, 929 F.2d 1390, 1394 (9th Cir. 1991). Error is harmless where the

25  aggrieved party is nevertheless able to use the instruction to argue its theory of the case to the jury.

26  *See Image Tech. Services, Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1218-20 (9th Cir. 1997);

27  *Merrick v. Farmers Ins. Group*, 892 F.2d 1434, 1442 (9th Cir. 1990). "The test is not whether the

28  charge was faultless in every particular but whether the jury was misled in any way and whether it

-19-

had (an) understanding of the issues and its duty to determine those issues." *Van Cleef v. Aeroflex Corp.*, 657 F.2d 1094, 1099 (9th Cir. 1981) (citations omitted).

This Court accurately and fully instructed the jury with respect to the Bane Act. California Civil Code Section 52.1 provides a civil cause of action for plaintiffs whose rights secured by the Constitution or laws of the United States of California have been interfered with. "[T]he Bane Act requires that the challenged conduct be intentional." *Simmons v. Superior Court*, 7 Cal. App. 5th 1113, 1125 (2016). However, the Ninth Circuit in *Reese* specifically held that "reckless disregard" was sufficient to satisfy the Bane Act's intent requirement — "it is not necessary for the defendants to have been thinking in constitutional or legal terms at the time of the incidents, because a reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights." *Id.* at 1045. *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1045 (9th Cir. 2018) (quoting *United States v. Reese*, 2 F.3d 870, 885 (9th Cir. 1993)). Further, Ayala testified during trial that he intentionally pressed the trigger five times when he shot Lewis, and he had been trained that shooting a person at center mass is likely to cause death or serious bodily injury RT 60:12-15, 61:18-62:3.

Therefore, the Bane Act instruction issued by this Court was an accurate statement of the law and was not prejudicial to Defendants. Defendants' suggestion that Plaintiffs' counsel's closing argument indicated that an overreaction alone satisfies the Bane Act is uncompelling. (Def. Mot. at 29:15-19). This Court must assume that the jury listened to the court's instructions and followed the law as given by the Court. Contrary to Defendants' motion, Plaintiffs' counsel in closing argument specifically stated that a Bane Act claim requires an officer's use of excessive force plus that the officer acted with a reckless disregard. RT 910:23-911:12. Plaintiffs' counsel also emphasized that shooting someone in the back, without seeing a gun and without issuing a verbal warning that deadly force would be used, supports a reckless disregard for that person's rights. And, when an officer shoots a person with a lethal firearm, the expectation is that the officer will cause death or serious bodily injury. RT 911:3-12.

**I.   The Jury's Award Was Not Excessive**

Defendants argue that the jury's award was excessive. However, it is crucial to remember that there were seven young Plaintiffs in this case, each of whom lost their father.

*1.   The Jury's Award for Pre-Death Pain and Suffering Was Not Excessive and Was Supported by Evidence*

The jury's award of $1 million for Lewis' pre-death pain and suffering is not excessive as a matter of law. Defendants do not dispute that Plaintiffs are entitled to damages for Lewis' pre-death pain and suffering. Nor do Defendants challenge the jury's $5 million damage award for Lewis' loss of life. The $1 million award for Lewis' pre-death pain and suffering is consistent with awards in similar cases, demonstrating that it is not "grossly excessive or monstrous." For example, in the 2023 police shooting case *Murillo v. City of Los Angeles*, No. 21-cv-08738-FMO-AGR, the jury awarded $6.5 million for the decedent's pre-death pain and suffering. ("Ex. 7" to Masongsong Decl. at 4:3-8). In *Murillo*, the medical examiner testified that the decedent was struck by gunshots and died within minutes. (Masongsong Decl. at ¶ 8). In the 2021 police shooting case *French v. City of Los Angeles*, No. 20-cv-00416-JGB-SP, the jury awarded $1 million for the decedent's pre-death pain and suffering. ("Ex. 8" to Masongsong Decl. at 5:2-5). In *French*, the evidence showed that the decedent died at the scene almost immediately after he was struck by shots. (Masongsong Decl. at ¶ 9). In the 2018 police shooting case *Archibald v. County of San Bernardino*, No. 5:16-cv-01128-AB, the jury awarded a combined total of $7 million for the decedent's pre-death pain and suffering and loss of life, even when presented with evidence that the decedent was mentally ill and living in a motel. ("Ex. 9" to Masongsong Decl. at 2:4-6). In the 2023 police shooting case *Salgado v. Ponder*, No. 18-cv-00762-DMG-SP, the jury awarded $10 million in survival damages. ("Ex. 10" to Masongsong Decl. at 2:1-4). A reasonable assumption is that the $10 million survival damage award in *Salgado* included approximately $5 million for the decedent's pre-death pain and suffering, where although he did not survive for a significant period of time after the shooting, he was a 32-year-old semi-homeless laborer. (Masongsong Decl. at ¶ 11).

In the 2019 police use-of-force case *Valenzuela v. City of Anaheim*, Case No. 17-cv-00278-CJC-DFM, the jury awarded $6 million for the decedent's pre-death pain and suffering. ("Ex. 11"

to Masongsong Decl. at 2:8-14). In the 2023 police use-of-force case *Zelaya v. City of Los Angeles*, Case No. 20-cv-08382-ODW, the jury awarded $6 million for the decedent's pre-death pain and suffering. ("Ex. 12" to Masongsong Decl. at 5:5-11). Although *Valenzuela* and *Zelaya* arose from incidents involving prolonged prone restraint, the pre-death pain and suffering awards in those cases were significantly higher than the $1 million award for Lewis' pre-death pain and suffering, reflecting the duration of the decedents' pre-death pain and suffering in *Valenzuela* and *Zelaya*. On appeal, the Ninth Circuit rejected the defendants' contention that the damages were too speculative, holding that it is "better for juries to decide whether a plaintiff has received sufficient compensation." *Valenzuela v. City of Anaheim*, 6 F. 4th 1098, 1103 (9th Cir. 2021). Likewise, this Court should reject Defendants' argument that the damages for Lewis' pain and suffering were speculative. One can endure pain and suffering separately from dying, while another can die painlessly and instantly. "[T]o further the purpose of § 1983, the rules governing compensation for injuries caused by the deprivation of constitutional rights should be tailored to the interests protected by the particular right in question." *Id*. (citing *Carey v. Piphus*, 435 U.S. 247, 258–59 (1978)).

   In addition to the foregoing verdicts in similar cases, the evidence at trial supports the jury's $1 million award for Lewis' pre-death pain and suffering. Dr. Carpenter testified that Lewis likely survived for minutes after sustaining even the most immediately lethal of the five gunshots. RT 438:8-11, 462:1-12, 464:11-14. It is common sense that gunshots are extremely painful. Lewis died alone on the ground. The jury's $1 million award reflects the extreme pain and suffering that Lewis endured for minutes after being struck by five gunshots. This amount is also consistent with the amount suggested by Plaintiffs' counsel during closing argument. RT 918:10-14.

### 2. *The Jury's Award for Wrongful Death Damages Was Not Excessive and Was Not the Result of Confusion or an Improper Basis*

   The jury's award of $3.5 million in wrongful death damages to each Plaintiff was also consistent with the evidence presented at trial and consistent with other wrongful death awards in similar cases. *See Soto v. BorgWarner Morse TEC, Inc.*, 239 Cal. App. 4th 165, 199 (2015) (holding that a court may "consider amounts awarded in similar cases."). In the police shooting

case *Murillo v. City of Los Angeles*, the jury awarded $12 million in wrongful death damages to only one plaintiff for the loss of her adult son, which is almost four times more than the wrongful death damages awarded to each *Lewis* Plaintiff. ("Ex. 7" to Masongsong Decl. at 4:3-8). In the police shooting case *Archibald v. County of San Bernardino*, the jury awarded the decedent's two parents a total of $8.5 million in wrongful death damages for the loss of their adult son, which is more than twice as much per plaintiff compared to each *Lewis* Plaintiff. In the 2023 police shooting case *Alves v. Riverside County, et al.*, No. 5:19-cv-02083-JGB, the jury awarded $7.5 million in wrongful death damages to the decedent's one sister, which is also more than twice as much per plaintiff compared to each *Lewis* Plaintiff ("Ex. 13" to Masongsong Decl. at p. 9). If a reasonable jury can award $7.5 million to a decedent's one sibling, then certainly a reasonable jury can award $3.5 million to a child who lost their father. In the police use-of-force case *Zelaya v. City of Los Angeles*, the jury awarded $1.5 million in wrongful death damages to one adult daughter of the decedent. ("Ex. 12" to Masongsong Decl. at 5:5-11). In *Zelaya*, the one plaintiff had not seen her father, the decedent, for over ten years. (Masongsong Decl. at ¶ 13). In the 2013 police shooting case R.S. v. City of Long Beach, No. 11-cv-00536-AG-RNB, the jury awarded $3.5 million in wrongful death damages to one of the plaintiffs, which is higher than the wrongful death damages awarded to the Lewis Plaintiffs when adjusting for inflation. ("Ex. 17" to Masongsong Decl.).

In the 2020 police use-of-force case *L.D. v. City of Los Angeles*, No. 16-cv-04626-PSG-SK, the jury awarded $2 million in wrongful death damages to the daughter of the decedent, who was not even born at the time that her father was shot and killed. (Masongsong Decl. at ¶ 16; Ex. 15 to Masongsong Decl. at 9:21-24). In the 2017 police shooting case *Rose v. City of Sacramento*, No. 23-cv-01339-TLN-EFB, the jury awarded $2 million in wrongful death damages to the father of the decedent and $2.5 million to the mother of the decedent. ("Ex. 16" to Masongsong Decl. at 2:26-3:3). In the 2013 police shooting case *Dajyne G., et al. v. Culver City*, No. 10-cv-09497-MWF-MAN, the jury awarded $2 million in wrongful death damages to each of the decedent's four children. ("Ex. 14" to Masongsong Decl. at p. 2). The awards in *Dajyne*, *Rose*, and *L.D.* are similar when accounting for inflation many years later.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR A NEW TRIAL

1    Additionally, the wrongful death damages are supported by the Plaintiffs' own testimonies

2   and photographic exhibits establishing that they had close, loving relationships with their father, as

3   set forth in detail above in Section III(C) of this brief. RT 275-313, 317:5-12, 318:12-21, 569, 572,

4   576; Plaintiffs' Trial Exhibit 10; *See Harper v. City of Los Angeles*, 533 F.3d 1010, 1029 (9th Cir.

5   2008) (holding that testimony of the plaintiff alone can substantiate a jury's damages award).

6   Given these comparable and significantly higher damages awards in recent similar cases,

7   particularly when adjusting for inflation, this Court should not disturb the jury's verdicts of $3.5

8   million per Plaintiff in wrongful death damages and $6 million in survival damages, as neither was

9   excessive. The court's power to curtail excessive damages exists only when the facts are such

10  where the excess appears as a matter of law. *Wright v. City of Los Angeles*, 219 Cal. App. 3d 318,

11  354 (Ct. App. 1990). The mere fact that a judgment is large does not validate the losing party's

12  claim that a new trial or remittitur is warranted. *Id.* If the jury's verdict is supported by substantial

13  evidence, it must be upheld. *Id.* Finally, as set forth in detail above in Section III(E) of this brief,

14  there is no evidence that the jury intended to award Plaintiffs a total of $3.5 million as opposed to

15  $3.5 million per Plaintiff. This federal Court was well within its discretion to allow Plaintiffs to

16  present separate lines on the verdict form, and the assumption is that the jury followed the law and

17  intended to award $3.5 million to each Plaintiff, consistent with the amounts suggested by

18  Plaintiffs' counsel in their closing arguments.

19  **IV.    CONCLUSION**

20    For each of these reasons, this Court should deny Defendants' Motion for a New Trial in its

21  entirety.

22

23  Respectfully submitted,

24   DATED: May 2, 2025                    LAW OFFICES OF DALE K. GALIPO

25                                   By:  *s/ Renee V. Masongsong*

26                                        Dale K. Galipo
                                          Renee V. Masongsong
27                                        Attorneys for Plaintiffs R.L., M.L., H.L. and A.W.

28

1  DATED: May 2, 2025                    ALEXANDER MORRISON + FEHR LLP

2                                        TONI JARAMILLA, A Professional Law Corp.

3                             By:   *s/ J. Bernard Alexander, III*

4                                   J. Bernard Alexander, III
                                    Toni Jaramilla
5                                   Britt L. Karp
                                    Attorneys for Plaintiffs Mickel Erick Lewis, Jr.,
6                                   Oriona Lewis and Briona Lewis

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR A NEW TRIAL