| | |
|---|---|
| James D. Weakley, Esq. (SBN 082853) | MARGO A. RAISON, COUNTY COUNSEL |
| Brande L. Gustafson, Esq. (SBN 267130) | Kimberly L. Marshall, Deputy (SBN 186838) |
| **WEAKLEY & ARENDT** | Andrew C. Hamilton, Deputy (SBN 299877) |
| A Professional Corporation | Kern County Administrative Center |
| 5200 N. Palm Avenue, Suite 211 | 1115 Truxtun Avenue, Fourth Floor |
| Fresno, California 93704 | Bakersfield, CA 93301 |
| Telephone: (559) 221-5256 | Telephone: (661) 868-3800 |
| Facsimile: (559) 221-5262 | Facsimile: (661) 868-3805 |
| Jim@walaw-fresno.com | ahamilton@kerncounty.com |
| Brande@walaw-fresno.com | marshallkim@kercounty.com |
| Attorneys for Defendant, Deputy Jason Ayala | Attorneys for Defendant County of Kern |

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICKEL ERICK LEWIS JR., individually and as successor-in-interest to MICKEL E. LEWIS, SR., ORIONA LEWIS; and BRIONA LEWIS, individually and as successor-in-interest,<br><br>    Plaintiff,<br><br>  vs.<br><br>KERN COUNTY, Deputy JASON AYALA, and DOES 1-20, inclusive,<br><br>    Defendant. | Case No. 1:21-CV-00378-KES-CDB<br>*Consolidated with Case No.*<br>*1:21−CV−01352−DAD−JLT*<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO STAY ENFORCEMENT OF JUDGMENT AND WAIVE BOND** |
| R.L., M.L., and H.L., minors, by and through guardian *ad litem* Roberta Haro, individually and as successors in interest to Michel Lewis Sr., deceased; A.W., a minor, by and through her guardian *ad litem* Alisha White, individually and as a successor in interest to Michel Lewis Sr., deceased; ALISHA WHITE, individually and as a successor in interest to Mickel Lewis Sr.,<br><br>    Plaintiffs,<br>  vs.<br><br>COUNTY OF KERN; JASON AYALA; and DOES 1-10, inclusive,<br>    Defendants. | Date: June 16, 2025<br>Time: 1:30 p.m.<br>Ctrm: 6 (7th Floor)<br>Judge: Hon. District Judge Kirk E. Sherriff |

/ / /

/ / /

Defendants County of Kern ("County")—erroneously sued as Kern County—and Deputy Jason Ayala ("Deputy Ayala") (collectively "Defendants") hereby present the following motion to stay enforcement of judgment and waiver of bond.

## I.

## INTRODUCTION

Defendants have filed motions pursuant to Rules 50(b) and 59 of the Federal Rules of Civil Procedure in relation to the judgment exceeding $30 million in this action. Doc. No. 154, 165-168. Plaintiffs have also filed a motion for attorney's fees and bills of costs that total up to $3,915,739.50. Doc. Nos. 173-181. While Defendants contest Plaintiffs' entitlement to this amount, if Plaintiffs are awarded the full amount requested, the total judgment would be closer to $34 million. Defendants now request a stay of enforcement of the judgment, including any attorney's fees or costs awarded, pending resolution of Defendants' post-trial motions and appeal, if necessary.

As explained below, under the substantive law of California, a municipality is entitled to a stay of enforcement of a money judgment pending appeal without having to provide a bond or other security. Cal. Civ. Proc. Code § 995.220(b). And the Federal Rules of Civil Procedure direct this Court to apply state law respecting the enforcement of money judgments. Fed. R. Civ. P. 69(a)(1). This Court need merely recognize that a stay of enforcement has arisen by operation of law. Defendants filed this motion because Plaintiffs do not agree that Defendants are entitled to a continued stay or a waiver of the bond, necessitating this Court's involvement.

If, for any reason, this Court does not acknowledge the stay of enforcement arising under state substantive law, Defendants are prepared to post a bond to effectuate a stay of enforcement. But the Court should not require Defendants to provide a bond in an amount equal to 125% of the immense judgment here. *See* E.D. Cal. L.R. 151(d). There is no doubt the County has adequate resources to pay the judgment in the event Defendants' post-trial motions—or an appeal if necessary—are unsuccessful. The County's ready ability to pay is based in part on its ability to plan for the future and reserve funds while the post-trial motions and possible appeal are pending for the next two to three years. But the County has not been able to plan ahead for incurring the

near-term cost of obtaining a bond—the expensive annual bond premiums—as part of its 2024-25 fiscal year budget. And, if the County were forced to incur those sums now (without the benefit of budgetary planning), the County would likely need to divert funds from important and deserving programs that benefit the residents of the County. For these reasons, a bond amount no greater than a fraction of the judgment would be appropriate here.

Under either rationale, this Court should now stay enforcement of the judgment pending resolution of the post-trial motions and appeal, if necessary.

## II.

## AUTHORITY FOR MOTION

**A.    A Stay of Enforcement of Judgment Pending Appeal Has Arisen By Operation of Law**

    **1.    Under the Substantive Law of California, Defendants Are Entitled to a Stay of Enforcement**

"[F]ederal courts are to apply state substantive law and federal procedural law." *Vacation Vill., Inc. v. Clark Cty., Nev*, 497 F.3d 902, 913 (9th Cir. 2007) (*quoting Hanna v. Plumer*, 380 U.S. 460, 465 (1965)); *cf.* 19 Charles Alan Wright et al., Federal Practice & Procedure § 4520 (2d ed. 1996) ("The Erie case and the Supreme Court decisions following it apply in federal question cases as well."). State statutes fall on the substantive side of this substance/procedure divide when they furnish immunities, and when they afford procedural opportunities closely connected to important public policies. *See, e.g.,* Walker v. Armco Steel Corp., 446 U.S. 740, 751–52 (1980) (applying a state statute requiring actual service of a summons—not Fed. R. Civ. P. 3—because of that statute's close relationship to calculating the statute of limitations); *DC Comics v. Pac. Pictures Corp.,* 706 F.3d 1009, 1015 (9th Cir. 2013) ("California's anti-SLAPP statute functions as an immunity from suit . . . .").

While California law generally requires a defendant to post a bond or undertaking to stay enforcement of a money judgment pending appeal, *see* Cal. Civ. Proc. Code § 917.1(a)(1), the Legislature has immunized government entities and their officials from that requirement:

/ / /

> Notwithstanding any other statute, if a statute provides for a bond in an action or proceeding, including but not limited to a bond for issuance of a restraining order or injunction, appointment of a receiver, or stay of enforcement of a judgment on appeal, *the following public entities and officers are not required to give the bond* and shall have the same rights, remedies, and benefits as if the bond were given:
>
> (a) The State of California . . . .
>
> (b) A county, city, or district, or public authority, public agency, or other political subdivision in the state, or an officer of the local public entity in an official capacity or on behalf of the local public entity.

Cal. Civ. Proc. Code § 995.220 (emphasis added).

Section 995.220 is a substantive aspect of California law for two reasons. First, the statute affords government entities a discrete form of immunity, one that "clearly reflects the deliberate conclusion of the Legislature that the public good is best served by excusing governmental entities from the security requirements otherwise imposed on litigants." *City of S. San Francisco v. Cypress Lawn Cemetery Assn.*, 11 Cal. App. 4th 916, 922 (1992). The statute works to "supplement[ ]" other immunity statutes found in California's Government Code that protect governments and government officials from various forms of liability. *Id.*

Second, section 995.220 embodies the Legislature's substantive judgments about appropriate public policy. Section 995.220 was "[e]nacted for the public good"; the Legislature intended to confer on municipalities and their officials a "privilege." *City of South San Francisco*, 11 Cal. App. 4th at 924. The statute prioritizes "the reduction of public funds expended in furnishing undertakings, defending against efforts to recover, and responding in damages like private parties." *Id*. "Another advantage promoted is that those responsible for vigorous law enforcement and public administration are not inhibited by fears of personal and institutional liability." *Id.*

These features of section 995.220 render it fundamentally substantive, not procedural. And they help to explain why other federal district courts have ruled that this statute relieves municipalities of the obligation to post bonds to obtain stays of enforcement. E.g., *Cotton ex rel.*

*McClure v. City of Eureka, Cal.,* 860 F. Supp. 2d 999, 1026 (N.D. Cal. 2012) ("Defendants are correct that § 995.220(b) relieves the City of the requirement to post a bond to secure a stay of a money judgment.") (42 U.S.C. § 1983 action).[1] Federal courts in other states with comparable statutes have come to the same conclusion. *See Castillo v. Montelepre, Inc.*, 999 F.2d 931, 942 (5th Cir. 1993) ("[W]e find the Fund to be entitled to a stay without bond under Louisiana law."); *Munoz v. City of Philadelphia*, 537 F. Supp. 2d 749, 750–51 (E.D. Pa. 2008) (granting a stay pending appeal without a supersedeas bond because Pennsylvania law exempts cities from furnishing security); *Urban Developers, LLC v. City of Jackson, Miss.*, 227 F.R.D. 464, 466 (S.D. Miss. 2005) ("[Under Mississippi law,] the City is entitled to a stay of the subject Judgment on appeal without the posting of a supersedeas bond.").

While Judge Armstrong ruled that Rule 62(b) "preempts" section 995.220 in *Leuzinger v. Cty. of Lake*, 253 F.R.D. 469 (N.D. Cal. 2008), four years later Judge Armstrong took precisely the opposite position in *Cotton* stating that "Defendants are correct that § 995.220(b) relieves the City of the requirement to post a bond to secure a stay of a money judgment." *Cotton ex rel. McClure*, 860 F. Supp. 2d at 1026. Judge Armstrong took the trouble to submit her ruling in *Cotton* for publication in the Federal Supplement, a signal that she no longer adheres to the views expressed in *Leuzinger*.

It was prudent for Judge Armstrong to supplant *Leuzinger* with *Cotton*. The reasoning in *Leuzinger* is simply wrong. A key element of the analysis in *Leuzinger* was that Rule 62(b) occupies the field and preempts state laws that might allow unsecured stays. *Leuzinger*, 253 F.R.D. at 474–75. *Leuzinger* rested this sweeping view of Rule 62(b) on little more than the Ninth Circuit's decision in *Geddes v. United Fin. Grp.*, 559 F.2d 557 (9th Cir. 1977) (per curiam). *Geddes*, however, involved a district court stay of enforcement of a judgment for one year without requiring a bond, which was reversed by the Ninth Circuit stating that Rule 62 "is very explicit concerning the protection afforded to litigants who seek a stay at various stages of the

---

[1] A few district courts have disagreed, but they have either done so based on arguments we rebut below, such as the misperceived primacy of Fed. R. Civ. P. 62(b), or they have done so without articulating a reason for disregarding state law. *E.g., In re Hassan Imports P'ship*, No. 2:13-CV-07532-CAS, 2013 WL 6384649 (C.D. Cal. Nov. 5, 2013). The Ninth Circuit has never addressed or cited section 995.220.

1  proceedings." *Geddes*, 559 F.2d at 560–61. *Geddes* is distinguishable from the instant case as the
2  judgment-creditor defendants were not pursuing post-trial motions or an appeal; they were the
3  appellees. *Id.* The prevailing plaintiffs had appealed and the district court stayed enforcement "as
4  accommodations to appellees after the court had examined their abilities to pay the judgments."
5  *Id.*, at 561. Affording a defendant an unsecured stay of enforcement untethered to an appeal is
6  obviously an abuse of discretion, and that is all that Geddes holds.

Overall, the Ninth Circuit has emphasized the breadth of a district court's discretion to enter stays and to accept bonds notwithstanding Rule 62(b). *Leuzinger* is therefore incompatible with the language of Rule 62(b) and circuit decisions interpreting the limited scope of that Rule. For all of these reasons, this Court should apply section 995.220 and recognize the stay of enforcement to which Defendants are entitled.

    **2.**    **Rule 62 Allows for Court Discretion in Extending a Stay or Allowing a Reduced or Unsecured Bond**

Under Rule 62(a) of the Federal Rules of Civil Procedure "execution on a judgment and proceedings to enforce it are stayed for 30 days after its entry, *unless the court orders otherwise*." Fed. R. Civ. P. 62(a) (emphasis added). Rule 62(b) further provides that, "At any time after judgment is entered, a party may obtain a stay by providing a bond or other security. The stay takes effect when the court approves the bond or other security and remains in effect for the time specified in the bond or other security."

The 30-day automatic stay provided by Rule 62(a), has already been extended by stipulation and order of this court (Doc. No. 170) to allow the parties to brief and be heard on the issue of whether to continue the stay of the judgment and/or waiver or reduction of the bond requirement. Rule 62(a), plainly allows a court to extend the initial automatic 30 day stay on execution of a judgment. *See* Appendix C. Federal Rules of Civil Procedure for the United States District Courts, with Advisory Committee Notes, 12A Fed. Prac. & Proc. Civ. App. C (2025 ed.) ("Amended Rule 62(a) expressly recognizes the court's authority to dissolve the automatic stay or supersede it by a court-ordered stay.")

/ / /

1    Otherwise, the plain terms of Rule 62(b) provide that a defendant is entitled to a stay when
2    the court approves a bond or other security. It does not follow (logically or legally) that a district
3    court may not enter a stay unless a bond is posted. Rule 62(b)[2] "only operates to provide that an
4    appellant in all cases may obtain a stay as a matter of right by filing a supersedeas bond, and does
5    not prohibit the district court from exercising a sound discretion to authorize unsecured stays in
6    cases it considers appropriate." *Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n,* 636 F.2d 755,
7    757–58 & n.3 (D.C. Cir. 1980); *accord, e.g., N. Indiana Pub. Serv. Co. v. Carbon Cty. Coal Co.*,
8    799 F.2d 265, 281 (7th Cir. 1986) ("[I]t is a misreading of Rule 62(d) of the Federal Rules of
9    Civil Procedure to suggest that an appellant who wants to stay execution pending appeal must
10   post a bond."); 11 Charles Alan Wright et al., Federal Practice & Procedure § 2905 (3d ed. 2012)
11   ("Many courts have ruled that they have the power to waive the bond requirement entirely.").

12   The Ninth Circuit has emphasized the wide scope of a district court's discretion in
13   evaluating stay and bond issues. For example, a district court has "inherent discretionary
14   authority" in setting the amount of a bond. *Rachel v. Banana Republic*, Inc., 831 F.2d 1503, 1505
15   n.1 (9th Cir. 1987). A district court likewise has discretion to accept alternative forms of security
16   and "judgment guarantee" besides a bond. *Int'l Telemeter Corp. v. Hamlin Int'l Corp.*, 754 F.2d
17   1492, 1495 (9th Cir. 1985). Finally—of principal importance here—a district court may entirely
18   "waive the bond requirement if it sees fit." *Townsend v. Holman Consulting Corp.*, 881 F.2d 788,
19   796-97 (9th Cir. 1989), *vacated on reh'g on other grounds*, 929 F.2d 1358 (9th Cir. 1990) (en
20   banc). This Court's own local rules anticipate that, sometimes, no bond will be required. E.D.
21   Cal. L.R. 151(d) ("*When required*, a supersedeas bond shall be 125 percent of the amount of the
22   judgment unless the Court otherwise orders.") (emphasis added).

**B.    Alternatively, This Court Should Exercise its Discretion to Enter a Stay of Enforcement Without Requiring a Full Supersedeas Bond**

25   Defendants have asked this Court to recognize that a stay of enforcement arose
26   automatically by operation of section 995.220 directly as a matter of substantive law or by virtue

---

[2] Fed. R. Civ. P. 62 was amended April 26, 2018, effective December 1, 2018. What was substantively Rule 62(d) is now labeled Rule 62(b). *See* Fed. R. Civ. P. advisory committee note to 2018 amendment ("Subdivision 62(b) carries forward in modified form the supersedeas bond provisions of former Rule 62(d) . . . .").

of inherent authority provided by Rule 62. Even if the Court does not accept those arguments, the Court may and should exercise its inherent discretion to enter an unsecured stay of enforcement (or a stay with less than a full bond) pending ruling on Defendants post-trial motions and if necessary, appeal. Rule 62(b) does not foreclose that exercise of discretion. The Court's rules allow it. E.D. Cal. L.R. 151(d) ("When required, a supersedeas bond shall be 125 percent of the amount of the judgment *unless the Court otherwise orders*.") (emphasis added). "Courts often grant unbonded stays in cases involving 'demonstrably solvent government entities.' " *Hackworth v. Arevalos*, No. 1:19-CV-01362-KES-CDB, 2025 WL 240832, at *4 (E.D. Cal. Jan. 17, 2025, *quoting Edmo v. Idaho Dep't of Corr.*, 2022 WL 17975984, at *6 n.9 (D. Idaho Dec. 28, 2022) (surveying cases).

Courts look to several factors from *Dillon v. City of Chicago*, 866 F.2d 902, 904–905 (7th Cir. 1988) in evaluating whether to waive the bond require. "Courts in the Ninth Circuit regularly use the *Dillon* factors in determining whether to waive the bond requirement." *Hackworth v. Arevalos*, No. 1:19-CV-01362-KES-CDB, 2025 WL 240832, at *2 (E.D. Cal. Jan. 17, 2025), *quoting Kranson v. Fed. Express Corp.*, No. 11-cv-05826-YGR, 2013 WL 6872495, at *1 (N.D. Cal. Dec. 31, 2013).

The Dillon factors include: (1) the complexity of the collection process; (2) the amount of time required to obtain a judgment after it is affirmed on appeal; (3) the degree of confidence that the district court has in the availability of funds to pay the judgment; (4) whether the defendant's ability to pay the judgment is so plain that the cost of a bond would be a waste of money; and (5) whether the defendant is in such a precarious financial situation that the requirement to post a bond would place creditors of the defendant in an insecure position. *Dillon v. City of Chicago*, 866 F.2d 902, 904–905 (7th Cir. 1988) (internal citations and quotation marks omitted).

Not only is the County[3] financial stable with the financial ability to pay the judgment that would make the cost of a bond a waste of money, but it also has the funds available through insurance and self-insurance to pay the judgment, should Defendants be unsuccessful in their

---

[3] County is obligated to indemnify the judgment against Deputy Ayala pursuant to California Government Codes section 825.

post-trial motions and any appeal. Furthermore, entering a stay pursuant to an unsecured or reduced bond in favor of the Defendants would serve the public interest and would not harm Plaintiffs.

In the current fiscal year, the County's total revenues are projected to be $4.4 billion, with a fraction of that available for discretionary use. Declaration of Elsa Martinez ("Martinez Decl.") in Support of Motion for Stay of Enforcement of Judgment, para. 4. The County's bond ratings—an important measure of municipal financial health—is Aa3 (Moodys). This rating has been the same since at least September 2017. *Id.*, para. 13.

The County, moreover, has sufficient financial resources to cover the settlement obligation, with excess insurance anticipated to cover $12.5 million, thereby leaving the County responsible for $21.9 million if Defendants are not successful in their post-trial motions or possible appeal and would have to pay the Judgment and any attorney fees and costs awarded the Plaintiffs. *Id.*, para. 8. As of June 30, 2025, the estimated retained earning balance of County's self-insurance program is $19 million. *Id.,* at para. 5. Although the County's self-insurance fund has the capacity to cover this amount, using these funds at this time would have financial implications for County programs and services, as premium rates for Fiscal Year 2025-26 have been established, distributing costs across County departments. *Id.,* at para. 8. However, if needed, the County can utilize Budget Stabilization reserves to cover the one-time motion for attorney fees, to ensure minimal disruption to departmental operations. *Id.*

Thus, while the County is vigorously pursuing its post-trial motions, and where necessary an appeal, there is no room for reasonable doubt that it can pay the judgment later if necessary. And for that reason, Plaintiffs do not need the extra security that a bond is designed to provide. If the Court is inclined to require a bond, however, the bond should be set at a modest amount that reflects the County's ability to pay the judgment.

Setting a high bond amount (such as 125% of the judgment) would require the County to incur significant near-term costs in obtaining a bond. Annual premiums for appeal bonds are often 2-3% of the face value of the bond, and often require partial or complete collateralization, a considerable imposition in this case. The County's investigation suggests that at least one surety

would charge the County less, and would not require collateralization. But this surety has a number of questions it would need answered before issuing a bond, including most notably whether California statutes[4] allowing for judgments to be paid over ten years would be applied in this case. Declaration of Lisa Dearmore in Support of Motion to Stay Enforcement of Judgment, paras. 3-5.

Regardless of the amount of the premiums County would have to pay, because the County has not been able to plan ahead for incurring the expense of annual bond premiums, the County would be required to fund those premiums by diverting funds from important and deserving programs that benefit County residents. Martinez Decl., paras. 11-12. For these reasons, while procuring a sizeable bond would impose immediate (and unnecessary) costs on the County, Plaintiffs have no reasonable cause for concern that the judgment would go unpaid unless a bond were posted.

In *Lewis v. Cty. of San Diego*, No. 13-CV-02818-H-JMA, 2018 WL 1071704 (S.D. Cal. Feb. 27, 2018), the County of San Diego "submitted a declaration by the County's Assistant Auditor and Controller, explaining that the County has the highest possible financial rating with three of the major credit rating agencies, that the County has an operating budget of $5.79 billion, and that the County has funds set aside for future liability and judgments sufficient to cover the attorneys' fees and costs awards in this case." *Id*. at *2. San Diego County also demonstrated, through the declaration of an official "familiar with the County's financial situation . . . that she is unaware of any instance in which the County has defaulted on a court judgment." *Id*. These points gave the district court "confiden[ce] that the County has funds available to pay the judgment and that, given the County's evident ability to pay, the cost of a bond would be a waste of money." *Id.*; *accord Ramirez v. Escondido Unified Sch. Dist*., No. 11CV1823 DMS (BGS), 2014 WL 12675341, at *2 (S.D. Cal. Apr. 17, 2014) ("Because the evidence shows that the school district has access to more than sufficient funds to satisfy the judgment against all Defendants, posting a supersedeas bond is unnecessary to secure payment of judgment to Plaintiffs.").

///

---

[4] *See* Cal. Civ. Proc. Code §§ 984, 970.6.

The Court should therefore grant a stay of enforcement of judgment unsecured by a bond, or a stay based on a reduced bond amount that would not interfere with the County's ability to provide programs and services to the taxpayers in the County of Kern.

## III.

## CONCLUSION

This Court should recognize that a stay of enforcement of judgment pending appeal arose by operation of state law when the County and the individual defendants appealed from the judgment. Alternatively, the Court should exercise its discretion to enter an unsecured stay of enforcement, or a stay of enforcement based on a reduced bond amount, until Defendants have exhausted their appellate remedies.

Dated: May 12, 2025

WEAKLEY & ARENDT
A Professional Corporation

By: */s/ Brande L. Gustafson*
James D. Weakley
Brande L. Gustafson
Attorneys for Defendant,
Deputy Jason Ayala

MARGO A. RAISON, COUNTY COUNSEL

By: */s/ Andrew C. Hamilton*
Marshall S. Fontes, Chief Deputy
Andrew C. Hamilton, Deputy
Kimberly L. Marshall, Deputy
Attorneys for Defendant County of Kern,
("erroneously sued as Kern County")