1  LAW OFFICES OF DALE K. GALIPO
2  Dale K. Galipo, Esq. (SBN 144074)
   dalekgalipo@yahoo.com
3  Renee V. Masongsong, Esq. (SBN 281819)
   rvalentine@galipolaw.com
4  21800 Burbank Boulevard, Suite 310
   Woodland Hills, CA  91367
5  Telephone:     (818) 347-3333
   Facsimile:     (818) 347-4118
6
   Attorneys for Plaintiffs
7  R.L., M.L., H.L., and A.W.

8                    UNITED STATES DISTRICT COURT

9                FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  MICKEL ERICK LEWIS JR, et al.,         Case No: 1:21-CV-00378-KES-CDB

12                    Plaintiffs,          Assigned to:
                                           Hon. District Judge Kirk E. Sherriff
13              vs.
                                           **PLAINTIFFS' REPLY IN SUPPORT OF**
14  COUNTY OF KERN and JASON AYALA,        **PLAINTIFFS' MOTION FOR**
                                           **ATTORNEYS' FEES**
15
                    Defendants.            *Filed Concurrently with Supporting*
16                                         *Declarations and Exhibits*
17  R.L., et al.,
                                           Date: June 16, 2025
18                    Plaintiffs,          Time: 1:30 p.m.
                                           Dept: 6
19              vs.

20  COUNTY OF KERN and JASON AYALA,

21                    Defendants.
22

23

24

25

26

27

28
                                                    1:21-CV-00378-KES-CDB

## <u>TABLE OF CONTENTS</u>

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 1

I.    INTRODUCTION .......................................................................................................... 1

II.   ARGUMENT ................................................................................................................. 2

    A.    Defendants Have Failed to Rebut Plaintiffs' Evidence Supporting the
        Requested Hourly Rates ..................................................................................... 2

    B.    Plaintiffs' Counsels' Billing Is Not Inflated and Should Not be Reduced ............... 6

        1.    Block Billing ........................................................................................ 6

        2.    Duplicative Billing .............................................................................. 7

        3.    Vague Billing ....................................................................................... 9

        4.    Intra-Office Conferencing .................................................................. 9

        5.    Fees for Dismissed Claims .................................................................. 9

        6.    Clerical Work .................................................................................... 10

    C.    This Is an Exceptional Case That Warrants a 2.0 Loadstar Enhancement ............. 11

    D.    Plaintiffs' Counsel Should be Compensated for their Work on this Reply
        and Any Other Post-Trial Work ......................................................................... 12

III.  CONCLUSION ............................................................................................................ 13

1

## **TABLE OF AUTHORITIES**

2

### Cases

*Arroyo v. U.S. Dep't of Homeland Sec.*
    No. 19-cv-00815-JGB-SHK, 2020 WL 1228665 (C.D. Cal. Jan. 2, 2020)...................... 8

3

*Barjon v. Dalton*
    132 F.3d 496 (9th Cir. 1997)............................................................................................ 2

4

*Bucci v. Chromalloy Am. Corp.*
    927 F.2d 608 (9th Cir. 1991)......................................................................................... 12

5

*Castillo v. Nielsen*
    No. 5:18-cv-01317-ODW-KES, 2020 WL 2840065 (C.D. Cal. June 1, 2020) .................. 8

6

*Chaudry v. City of Los Angeles*
    751 F.3d 1096 (9th Cir. 2014)........................................................................................ 7

7

*Clark v. City of Los Angeles*
    803 F.2d 987 (9th Cir. 1986)........................................................................................ 12

8

*Craig et al. v. Cnty. of Orange*
    8:17-cv-00491-CJC-KES, Doc. No. 290 (C.D. Cal. Feb. 21, 2023)................................. 4

9

*Cruz ex rel. Cruz v. Alhambra Sch. Dist.*
    601 F. Supp. 2d 1183 (C.D. Cal. 2009)........................................................................... 9

10

*Dang v. Cross*
    422 F.3d 800 (9th Cir. 2005)........................................................................................... 2

11

*Donastorg v. City of Ontario*
    Case No. EDCV 18-992 JGB (SPx), 2021 WL 6103545 (C.D. Cal. Sept. 23, 2021)........ 13

12

*Est. of Aguirre v. Cnty. of Riverside*
    No. 18-cv-00762-DMG-SP, WL 2107727  (C.D. Cal. Mar. 29, 2024) ............................ 4

13

*Estate of Casillas v. City of Fresno*
    116CV01042AWISABWL 869117 (E.D. Cal. Feb. 21, 2020) ........................................ 3

14

*French v. City of Los Angeles*
    20-cv-00416-JGB-SP, Doc. No. 188 (C.D. Cal. Feb. 21, 2024) ..................................... 4

15

*Frias v. City of Los Angeles*
    Case No. CV 16-4626 PSG (SKx), 2020 WL 4001620 (C.D. Cal. Apr. 23, 2020) ............. 6

16

*Gates v. Deukmjian*
    987 F.2d 1392 (9th Cir. 1992)................................................................................... 2, 3

17

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ............................................................................................... 9, 10

18

*Horsford v. Board of Trustees of California State University*
    132 Cal. App. 4th 359 (2005) ....................................................................................... 7

19

*Hurtado v. State of California*
    Case No. 2:19-cv-02343-DAD-AC ............................................................................ 1, 3

20

*Ibrahim v. U.S. Dep't of Homeland Sec.*
    912 F.3d 1147 (9th Cir. 2019)...................................................................................... 10

21

*Kelly v. Wengler*
    822 F.3d 1085 (9th Cir. 2016)...................................................................................... 11

22

*Ketchum v. Moses*
    24 Cal.4th 1122 (2001) ................................................................................................ 11

23

*Kim v. Fujikawa*
    871 F.2d 1427 (9th Cir. 1989)........................................................................................ 7

24

*McCown v. City of Fontana*
    565 F.3d 1097 (9th Cir. 2009)...................................................................................... 11

25

*McKenzie v. Kennickell*
    645 F. Supp. 437 (D.D.C.1986) ..................................................................................... 8

26

27

28

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

*Missouri v. Jenkins*
 491 U.S. 274 (1989) ...................................................................................... 10

*Morales v. City of San Rafael*
 96 F.3d 359 (9th Cir. 1996)........................................................................... 11

*Moreno v. City of Sacramento*
 534 F.3d 1106 (9th Cir. 2008)................................................................. 6, 7, 8

*Orr v. Brame*
 727 F.App'x 265 (9th Cir. 2018)................................................................... 11

*Parsons v. Ryan*
 949 F.3d 443 (9th Cir. 2020) .......................................................................... 7

*Perdue v. Kenny A.*,
 559 U.S. 542 (2010) ...................................................................................... 11

*Perez v. Cate*
 632 F.3d 553 (9th Cir. 2011) ........................................................................ 10

*Polee v. Cent. Contra Costa Transit Auth.*,
 516 F. Supp. 3d 993 (N.D. Cal. 2021) .......................................................... 11

*Pollinator Stewardship Council v. U.S. EPA*
 No. 13-72346, 2017 WL 3096105 (9th Cir. June 27, 2017) ............................ 7

*Probe v. State Teachers' Ret. Sys.*,
 780 F.2d 776 (9th Cir. 1986)........................................................................... 7

*PSM Holding Corp. v. Nat'l Farm Fin. Corp.*
 743 F. Supp. 2d 1136 (C.D. Cal. 2010) .......................................................... 8

*Rodriguez v. Cnty. of Los Angeles*,
 96 F. Supp. 3d 1012 (C.D. Cal. 2014) ............................................................ 8

*Schmidt v. City of Modesto*
 117CV01411DADMJS WL 6593362 (E.D. Cal. Dec. 14, 2018) .................... 2

*Schwarz v. Sec'y of Health & Human Servs.*,
 73 F.3d 895, 903 (9th Cir. 1995)................................................................... 10

*True Health Chiropractic Inc. v. McKesson Corp.*, No. 13CV02219HSGDMR, 2015, WL
 3453459  (N.D. Cal. May 29, 2015)............................................................... 12

*United Steelworkers of Am. v. Phelps Dodge Corp.*
 896 F.2d 403 (9th Cir. 1990).......................................................................... 2

*Valenzuela v. City of Anaheim*
 17-cv-00278-CJC-DFM  WL 2249178 (C.D. Cal. Feb. 23, 2023) .................... 4

*Webb v. Sloan*
 330 F.3d 1158 (9th Cir. 2003)....................................................................... 10

*Williamsburg Fair Hous. Comm. v. Ross–Rodney Hous. Corp.*
 599 F. Supp. 509 (S.D.N.Y.1984)................................................................... 8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1    <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2    **I.    <u>INTRODUCTION</u>**

3         Defendants do not dispute that Plaintiffs are the prevailing parties or that they achieved a

4    significant measure of success. (Def. Opp. at 2:9-10, Dkt. No. 189). Rather, Defendants challenge

5    Plaintiffs' counsels' claimed hourly rates, arguing that Plaintiffs are not entitled to Los Angeles

6    area rates. Contrary to Defendants' opposition, Plaintiffs have presented satisfactory evidence

7    supporting their requested out-of-forum hourly rates, including Judge Dale Drozd's recent

8    decision in the case *Hurtado v. State of California*, Case No. 2:19-cv-02343-DAD-AC. As set

9    forth in Plaintiffs' attorney fee motion and accompanying declarations, there are few or no

10   attorneys in the Fresno area who could or would have taken this difficult civil rights case, and

11   certainly no attorneys who could have achieved the $30.5 million verdict Plaintiffs' counsels

12   achieved in this case, which is believed to be the highest jury verdict in a police shooting case in

13   the history of Fresno, and the second highest verdict in a police shooting case in federal court in

14   California history.

15        Declarations submitted by Defendants on this point generally state that they have handled

16   the defense in other civil rights cases in the Fresno area and that Fresno area attorneys handled

17   those cases on behalf of the Plaintiffs.  However, Defendants identify only one civil rights case

18   where the plaintiffs prevailed. (Gustafson Decl. at 6, Dkt. No. 189-1; Hamilton Decl. at 2-4, Dkt.

19   No. 189-3; Weakley Decl. at 2-6, Dkt. No. 189-2; Arendt Decl. at 2, Dkt. No. 189-4). The

20   experienced Judge Drozd's well-reasoned opinion is the current persuasive authority, explaining

21   why attorneys should be awarded their normal rates when they prevail in cases in other

22   jurisdictions. This Court should also be cautious not to create precedent that would discourage

23   attorneys from taking important, difficult civil rights cases in other forums. Rather, this Court

24   should encourage the best lawyers to take cases in the Fresno area to provide the best

25   representation to civil rights litigants in Fresno.

26        Given that this Court presided over the trial, this Court is in the best position to decide the

27   quality of the trial lawyers and the legal work performed in the case, where it is difficult to dispute

28   the quality of the lawyering, given the $30.5 million jury verdict. Defendants forced this case to

trial by offering an extremely low settlement amount. Defense counsel knew or should have known that the resulting attorney fees would be significant if Plaintiffs prevailed. Notably, in many jurisdictions where Plaintiffs' counsel Dale K. Galipo has tried cases, he has achieved the highest verdict ever in a police shooting case. Mr. Alexander also has a well know reputation for achieving seven and eight figure verdicts in civil rights cases. These facts further support Plaintiffs' counsel's requested hourly rate in this case.

## II.     ARGUMENT

### A.  Defendants Have Failed to Rebut Plaintiffs' Evidence Supporting the Requested Hourly Rates

To determine whether hourly rates are reasonable under § 1988, fees "are calculated according to the prevailing market rates in the relevant community, taking into consideration the experience, skill and reputation of the attorney." *Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005). However, market rates outside of the district in which this court sits are permitted if there is proof that "[Fresno] firms could not successfully have provided the expert representation required to effectively represent litigants in this matter." *Gates v. Deukmjian*, 987 F.2d 1392, 1405 (9th Cir. 1992). "District courts in the Eastern District of California have permitted the use of out-of-forum hourly rates where…there are a lack of attorneys who handle the particular type of case being brought[] or [] plaintiff demonstrates that they made an affirmative attempt to secure local counsel and were unable to do so, for varying reasons." *Schmidt v. City of Modesto*, No. 117CV01411DADMJS, 2018 WL 6593362, at *5 (E.D. Cal. Dec. 14, 2018) (collecting cases). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). The Ninth Circuit has made clear "that the failure to solicit local counsel is not necessarily fatal to proving unavailability." *Barjon v. Dalton*, 132 F.3d 496, 501–02 (9th Cir. 1997) ("Barjon and Duran admit that they never solicited other attorneys before hiring Wallace. . . . . In establishing unavailability, *Gates* allows proof of either unwillingness or inability due to lack of experience, expertise, or specialization. There is no

1 | requirement that plaintiffs prove both.").

2 |       Once the party claiming fees presents evidence supporting the claimed rate, the burden

3 | shifts to the party opposing fees to present equally specific countervailing evidence. *See Gates*,

4 | 987 F.2d at 1405; *Davis v. City & Cnty. of San Francisco*, 976 F.2d 1536, 1546-47 (9th Cir.

5 | 1992), *modified on other grounds*, 984 F.2d 335 (9th Cir. 1993). Defendants have provided no

6 | evidence to rebut Plaintiffs' submitted proof that Fresno attorneys could not have successfully

7 | provided the expert representation required to effectively represent Plaintiffs in this matter, nor

8 | have Defendants provided any evidence to rebut Plaintiffs' submitted proof that the requested

9 | rates are the prevailing hourly rates in the Los Angles legal community. Defendants only argue, in

10 | a conclusory manner, that Plaintiffs have provided insufficient evidence' and rely on *Estate of*

11 | *Casillas v. City of Fresno*, No. 116CV01042AWISAB, 2020 WL 869117 (E.D. Cal. Feb. 21,

12 | 2020), to argue that local forum rates should apply. However, *Estate of Casillas* is inapposite.

13 |       In *Estate of Casillas*, the district court found that plaintiffs had failed to show that local

14 | forum rates of the Eastern District should not apply to the attorneys.  Unlike here, the plaintiffs in

15 | *Casillas* failed to submit any evidence that local counsel was unavailable, either because they were

16 | unwilling or unable to perform due to lack of experience, expertise, or specialization required to

17 | properly handle the case, as local counsel William L. Schmidt also worked on the case. 2020 WL

18 | 869117, at *9. The *Casillas* plaintiffs merely asserted that "it is unlikely there were any attorneys

19 | who were available in the Fresno area (or any other area for that matter) with the skill, experience

20 | and reputation comparable to that of Mr. Galipo," but failed to support their claim with actual

21 | evidence supporting their assertion. *Id.* To the contrary, in this case, Plaintiffs have submitted

22 | evidence, including the Declarations of Mickel Lewis, Jr., and attorney Mark Merrin.

23 |      Judge Dale Drozd's recent decision in *Hurtado v. State of California*, Case No. 2:19-cv-

24 | 02343-DAD-AC, is the current persuasive authority on this issue. In awarding Los Angeles area

25 | rates in the *Hurtado* case, which was tried in Sacramento, Judge Drozd stated:

26 |     Mr. Galipo bases his rate on his thirty-four years of civil rights practice experience,
   |     his track record of success, and his numerous recognitions for his work in civil rights.
27 |     . . . The Court agrees that Mr. Galipo is unquestionably at the top of his field and
   |     finds Mr. Galipo's requested rate is appropriate given his experience, skill, and
28 |

reputation.); *Valenzuela v. City of Anaheim*, No. 17-cv-00278-CJC-DFM, 2023 WL 2249178, at *3 (C.D. Cal. Feb. 23, 2023) (noting "Mr. Galipo's strong reputation within the legal community, his continued consistent record of success with over $85 million in recovery in civil rights cases since 2019, and multiple courts [] awarded him $1,100 hourly rates as early as 2020" in concluding that "$1,200 is a reasonable hourly rate for Mr. Galipo"); *Craig et al. v. Cnty. of Orange*, No. 8:17-cv-00491-CJC-KES, Doc. No. 290, at *4–6 (C.D. Cal. Feb. 21, 2023) ("The Court finds that a $1,200 hourly rate is reasonable for Mr. Galipo's work over the past three years. Mr. Galipo has continued to demonstrate the value of his advocacy with over $85 million in recovery in civil rights cases in just a few years. Although this rate is high, it reflects Mr. Galipo's strong reputation within the legal community and his continued consistent record of success. It is also consistent with the prevailing rate of other attorneys who practice civil rights litigation in the Central District who graduated law school when Mr. Galipo did."); (Doc. No. 263-1 at ¶ 25) (citing *French v. City of Los Angeles*, No. 20-cv-00416-JGB-SP, Doc. No. 188, at *6 (C.D. Cal. Feb. 21, 2024) (wherein the court concluded that Mr. Galipo's requested rate of $1,400 is reasonable)).

Here, attorney Galipo bases his requested rate on his thirty-six years of civil rights practice experience, his track record of success, and the numerous recognitions for his work in civil rights. (Doc. No. 263 at 20–22.) Attorney Galipo has managed his own litigation firm since 1991 and regularly handles civil rights cases, especially ones involving alleged police misconduct. (Doc. No. 263-1 at ¶ 4.) He has received several accolades over the years, including being selected to give the UCLA Law Irving H. Green Memorial Lecture in 2019 and for the "Trial Lawyer of the Year" award from the Consumer Attorneys Association of Los Angeles in 2020. (*Id.* at ¶¶ 9, 10.) He is also a member of the Inner Circle of Advocates, a group considered to represent the top one hundred plaintiffs' attorneys in the United States. (*Id.* at ¶ 8.) He has tried more than one hundred civil cases through to verdict, has won the majority of those cases, and has secured numerous seven and eight-figure verdicts on behalf of his clients. (*Id.* at 4–8.) Attorney Galipo represents that the going hourly rate that top litigators at top law firms bill their clients is between $1,200 and $1,800 per hour, and that he has more trial experience and expertise than most major law firm partners. (*Id.* at ¶ 30.) He also indicates that this was a particularly difficult case given Hurtado's reckless driving and possession of a gun at the time of the shooting, warranting an hourly rate of $1,400 due to the skill, experience and ability necessary to prevail at trial. (*Id.* at ¶¶ 28, 29.) . . .

Based on attorney Galipo's experience, the result he obtained in this action, the nature and difficulty of this case, his previously awarded rates in other federal courts, and the lack of any persuasive opposition from defendants, the court finds that $1,300 is a reasonable hourly rate for attorney Galipo's work performed on behalf of the plaintiffs. *See Est. of Aguirre v. Cnty. of Riverside*, No. 18-cv-00762-DMG-SP, 2024 WL 2107727, at *3 (C.D. Cal. Mar. 29, 2024) (awarding attorney Galipo an hourly rate of $1,250 following a jury trial in an officer-involved death case).

(Dkt. 176-11, filed concurrently with Plaintiffs' Motion for Attorneys' Fees as "Exhibit 11" to the Declaration of Dale K. Galipo).

The only case Defendants cite where a local (Eastern District) attorney achieved a plaintiff's verdict in a civil rights case (a case involving a shooting of a dog), is *Veronica Ordaz Gonzalez v. County of Fresno, et al.*, Fresno County Superior Court Case No. 18CECG03672. In that case, the plaintiff's attorneys referenced Mr. Galipo's fee award in *Schroeder v. County of San Bernardino*. (Dkt. 189-2 at 14:1-7, p. 31) in support of their attorney fee motion. In that case, Central District Judge Dolly Gee awarded Mr. Galipo $1,200 an hour for work performed in 2018 and 2019. (Dkt. 189-2 at p. 31). Since Judge Gee's 2019 order in *Schroeder*, Mr. Galipo has achieved multiple eight figure verdicts, including: a $13.2 million jury verdict in *Valenzuela v. City of Anaheim* in December 2019; a $17,002,00 jury verdict in *French v. City of Los Angeles* in October 2021; a $10 million jury verdict in *Najera v. County of Riverside* in April 2023; a $23.8 million jury verdict in *Murillo v. City of Los Angeles* in August 2023; and a $13.5 million jury verdict in *Zelaya v. City of Los Angeles* in October 2023. Also since Judge Gee's 2019 order in *Schroeder*, Mr. Galipo has achieved the following: he was selected to the Inner Circle of Advocates, which is considered to represent the top one hundred civil plaintiff's attorneys in the United States; he was elected as a Fellow of the American College of Trial Lawyers, which is recognized as the preeminent organization of trial lawyers in North America; he received the "Trial Lawyer of the Year" award from the Consumer Attorneys Association of Los Angeles; he received the "2020 Consumer Attorney of the Year" award from the Consumer Attorneys of California.

Similarly, Mr. Alexander's fee declaration delineates multiple seven and nine figure verdicts in the last two years alone. (Alexander Decl. ¶13). Mr. Alexander was just selected to receive the 2025 Southwestern University School of Law, Alumnus of the Year, and was recently designated 2022 CAALA Trial Lawyer of the Year, 2023 Langston Trial Lawyer of the Year, and 2024 San Francisco Trial Lawyer of the Year. (Alexander Decl. ¶12). He is also a fellow of the prestigious American College of Trial Lawyers (2021), College of Labor & Employment Lawyers (2020) and ABOTA (2013). (*Id.)*.

Likewise, as reflected in her declaration, Ms. Jaramilla is an award-winning attorney, a fellow of the College of Labor & Employment Lawyers (2023), and for the past five years has

1  been ranked as one of the Top 75 Employment Lawyers in the State of California by the Daily

2  Journal.  The quality of her legal skills and reputation is likewise reflected in the multi-million

3  dollars of settlements she has achieved in the last 30 years of representing civil rights clients in

4  both employment and police excessive force cases.

**B. Plaintiffs' Counsels' Billing Is Not Inflated and Should Not be Reduced**

> It must [] be kept in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee. It would therefore be the highly atypical civil rights case where plaintiff's lawyer engages in churning. By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker.

10  *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

**1. Block Billing**

12  "Although courts can reduce fees due to block-billing when it hinders their ability to

13  discern the reasonable hours worked, block billing is not per se objectionable." *Frias v. City of Los*

14  *Angeles*, Case No. CV 16-4626 PSG (SKx), 2020 WL 4001620, at *4 (C.D. Cal. Apr. 23, 2020)

15  (internal citations omitted). Here, the entries Defendants identify as "block billing" provide

16  enough clarity for the Court to discern the reasonable hours worked. Most of these are entries of

17  pre-trial preparation or time spent in trial. The nature of those tasks generally lend themselves to

18  block-billing. For example, Defendants identify the following as "block billing" on Ms.

19  Masongsong's timesheet: (1)  "Review proposed edits by co-Plaintiffs' counsel to Plaintiffs'

20  motion in limine No. 1 to exclude information unknown, make further edits to the motion" (all of

21  which clearly relate to work performed on Plaintiffs' motion in limine No. 1); (2) "Trial

22  preparation, including discussion of demonstratives and tech conference with Mr. Galipo and Ms.

23  Karp, further analysis of exhibits and transmission of exhibits to defense counsel"; (3) "Trial

24  preparation, including work on Plaintiffs' amended exhibit list, consider objections to Defendants'

25  exhibits, discussions with Ms. Karp re: witness availability and subpoenas"; (4) Compare

26  Defendants' draft of the joint proposed jury instructions with the model instructions and Plaintiffs'

27  version of those instructions, confer with co-Plaintiffs' counsel re: same, email defense counsel re:

28  further" (all of which clearly relate to work performed on the jury instructions). (Gustafson Decl.

at Ex. 2, pp. 2-4). These entries all clearly describe the work performed in detail and are not "block billing."

Defendants make the generalized accusation that Plaintiffs' counsel has engaged in "block billing" but fails to specifically identify which entries are inadequate for describing the tasks performed, and apparently expects the Court to perform a detailed review for the Defendants. Based on this generalized objection, Defendants seek a 30% reduction of time.  Defendants' "kitchen sink" approach to attacking Plaintiffs' billing perhaps serves the objective of advancing their argument to reduce Plaintiffs' fees by 30%, but reflects obtuse reasoning, where the entries in fact describe necessary work performed. As reflected by their respective declarations and the exhibits thereto, each of Plaintiffs' counsel made efforts to specifically and concisely account for their billing over years of litigating this matter.

"Counsel is not required to record in great detail how each minute of [their] time was expended.'" *Pollinator Stewardship Council v. U.S. EPA*, No. 13-72346, 2017 WL 3096105, at *7 (9th Cir. June 27, 2017) (internal quotations and citations omitted). "[A]ttorneys need only keep records in sufficient detail that a neutral judge can make a fair evaluation of the time expended, the nature and need for the service, and the reasonable fees to be allowed." *Parsons v. Ryan*, 949 F.3d 443, 462 (9th Cir. 2020) (internal quotations and citations omitted).

### 2. Duplicative Billing

The Ninth Circuit has recognized that duplication is necessary and inherent in the process of litigation over time. *Moreno*, 534 F.3d at 1112. The participation of more than one attorney does not *per se* constitute an unnecessary duplication of effort. *See Probe v. State Teachers' Ret. Sys.*, 780 F.2d 776, 785 (9th Cir. 1986), *cert. denied*, 476 U.S. 1170 (1986). Instead, participation of more than one attorney can constitute a reasonable necessity given the complexity of legal issues and the breadth of factual evidence involved. *Kim v. Fujikawa*, 871 F.2d 1427, 1435 n.9 (9th Cir. 1989). Numerous cases hold that the work of multiple attorneys on the same task is not inherently duplicative. *See Chaudry v. City of Los Angeles*, 751 F.3d 1096, 1111-12 (9th Cir. 2014); *Horsford v. Board of Trustees of California State University*, 132 Cal. App. 4th 359, 396 (2005) (trial court's determination that it was unnecessary for the plaintiff to have three attorneys

1  at trial and two attorneys at depositions reversed).  Likewise, the presence of several attorneys at

2  strategy sessions for complex civil rights cases may be crucial to the case. *See McKenzie v.*

3  *Kennickell*, 645 F. Supp. 437, 450 (D.D.C.1986); *Williamsburg Fair Hous. Comm. v. Ross–*

4  *Rodney Hous. Corp*., 599 F. Supp. 509, 518 (S.D.N.Y.1984).

5        Here, Defendants misleadingly raise the non-issue of Plaintiffs having multiple attorneys at

6  deposition while ignoring the actual facts. Defendants fail to acknowledge that Mr. Galipo and his

7  office represented one sub-group of Plaintiffs while Mr. Alexander and Ms. Jaramilla represented

8  a second sub-group of Plaintiffs. Collaboration between representatives of co-plaintiffs did not

9  obviate the needs for representatives of each of the Plaintiffs to be present at depositions and

10 hearings.

11       Given the nature of the lengthy litigation and the issues and evidence in this case, as well

12 as the participation of two different attorneys on behalf of Defendants, it is not unreasonable for

13 Plaintiffs to have more than one attorney present at the same deposition or conference. *See*

14 *Castillo v. Nielsen*, No. 5:18-cv-01317-ODW-KES, 2020 WL 2840065, at *7 (C.D. Cal. June 1,

15 2020) (finding that defendants' argument that the presence of two attorneys for the plaintiff was

16 unnecessary was "unfounded" and "undermined by the presence of its own two attorneys at the

17 same proceeding"); *Arroyo v. U.S. Dep't of Homeland Sec.*, No. 19-cv-00815-JGB-SHK, 2020

18 WL 1228665, at *5 (C.D. Cal. Jan. 2, 2020) (finding no redundancies in the plaintiffs' hour

19 calculation where the plaintiffs had two attorneys present for a hearing because the defendants

20 "had three attorneys present at the hearing").

21       Additionally, "employing multiple attorneys or firms is per se not unreasonable, and

22 multiple attorneys may be essential for planning strategy, eliciting testimony, or evaluating facts

23 or law, including at trial." *Id.* (cleaned up) (citing *PSM Holding Corp. v. Nat'l Farm Fin. Corp.*,

24 743 F. Supp. 2d 1136, 1157 (C.D. Cal. 2010)); *see also Moreno*, 534 F.3d at 1112 (noting that the

25 "district court may not set the fee based on speculation as to how other firms would have staffed

26 the case"). "Indeed, division of responsibility may make it necessary for more than one attorney to

27 attend activities such as depositions and hearings." *PSM Holding Corp.*, 743 F. Supp. 2d at 1157.

28 *see Rodriguez v. Cnty. of Los Angeles*, 96 F. Supp. 3d 1012,1024 (C.D. Cal. 2014) (declining to

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

1   reduce plaintiffs' requested fee based on duplicative attendance at depositions). Here, while

2   multiple attorneys did participate in trial, strategy meetings, and depositions, this work was

3   necessary to strategize, ensure that relevant and important testimony was elicited at depositions

4   and trial, and to serve as sounding boards.

5               **3. Vague Billing**

6        Similar to Defendants' assertion that Plaintiffs' counsel engaged in "block billing," a

7   review of the entries Defendants contend are vague reveals that a large bulk of those entries are

8   not vague at all. For example, a significant number of entries dealt with trial days, during which

9   Plaintiffs' attorneys spent preparing for trial, spent in trial, and debriefing and strategizing during

10  breaks and after the day concluded. The Court was able to observe firsthand the level and quality

11  of Plaintiffs' counsel's work on the case, including the preparedness and presentation at both

12  trials. Thus, Plaintiffs' attorneys' description of such are sufficiently detailed to enable the court to

13  determine the reasonableness of the hours expended.

14              **4. Intra-Office Conferencing**

15       "Time billed for internal conferencing is recoverable to the extent it is reasonably

16  necessary to conducting the litigation." *Cruz ex rel. Cruz v. Alhambra Sch. Dist.*, 601 F. Supp. 2d

17  1183, 1192 (C.D. Cal. 2009) (citing *Davis*, 976 F.2d at 1545). Plaintiffs' attorneys and staff only

18  put in the amount of work that was necessary as they had zero incentive to overstaff or overbill

19  due to the contingency-based compensation and difficulty in winning police excessive force cases.

20  As set forth above, Mr. Galipo and his office represented one sub-group of Plaintiffs while Mr.

21  Alexander and Ms. Jaramilla represented a second sub-group of Plaintiffs. Therefore, conferences

22  between Plaintiffs' counsel to coordinate discovery, litigation, and trial preparation without

23  duplicating efforts was necessary to the success of the case.

24              **5. Fees for Dismissed Claims**

25       The Supreme Court has recognized that in civil rights litigation, "[l]itigants in good faith

26  may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to

27  reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters."

28  *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). The Supreme Court went on to state, "the fee

1    award should not be reduced simply because the plaintiff failed to prevail on every contention

2    raised in the lawsuit." *Id.* In agreeing with its sister circuits, the Ninth Circuit stated, "a district

3    court's 'failure to reach' certain grounds does not make those grounds 'unsuccessful[.]'" *Ibrahim*

4    *v. U.S. Dep't of Homeland Sec.*, 912 F.3d 1147, 1173 (9th Cir. 2019).

5          The *Hensley* Court elucidated a two-prong approach for determining the amount of fees to

6    award a plaintiff if the plaintiff prevails on only some of his claims for relief. First, the Court must

7    ask, "did the plaintiff fail to prevail on claims that were unrelated to the claims on which he

8    succeeded?" *Hensley*, 461 U.S. at 434. The Ninth Circuit has held that "related claims involve a

9    common core of facts *or* are based on related legal theories." *Webb v. Sloan*, 330 F.3d 1158, 1168

10   (9th Cir. 2003) (citations omitted). The focus is on "whether the unsuccessful and successful

11   claims arose out of the same 'course of conduct.' If they didn't, they are unrelated under *Hensley*."

12   *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 903 (9th Cir. 1995). Second, the Court

13   asks whether "the plaintiff achieve[d] a level of success that makes the hours reasonably expended

14   a satisfactory basis for making a fee award?" *Hensley*, 461 U.S. at 434. If the Court concludes the

15   prevailing party achieved "excellent results," it may permit a full fee award. *Id.* at 435.

16         Here, all of Plaintiffs' claims and damages generally arose from a "common course of

17   conduct" and are therefore related under *Hensley*. Further, the Plaintiffs achieved "excellent

18   results," supporting a full fee award.

19                **6.   Clerical Work**

20         Defendants argue that neither Plaintiffs' counsel nor their legal staff may bill for clerical

21   work.  This is not accurate. The Supreme Court in *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10

22   (1989) noted that while purely clerical or secretarial tasks could not be billed at a paralegal rate or

23   at an attorney rate, "[s]uch non-legal work may command a lesser rate." 491 U.S. at 288 n.10.

24   Indeed, "[r]easonable attorney's fee refers to a reasonable fee for the work product of an attorney,"

25   including work of secretaries, messengers, librarians, janitors and others whose labor contributes

26   to the work product for which an attorney bills her client." *Perez v. Cate*, 632 F.3d 553, 556 (9th

27   Cir. 2011) (citing *Missouri*, 491 U.S. at 285) (internal quotation marks omitted).  Accordingly,

28   Plaintiffs may recover for the time spent by their legal assistants and for the limited time that

1  Plaintiffs' counsel spent on "clerical" tasks.

2  **C. This Is an Exceptional Case That Warrants a 2.0 Loadstar Enhancement**

3      A court may enhance the lodestar figure when "'the method used in determining the hourly

4  rate employed in the lodestar calculation does not adequately measure the attorney's true market

5  value, as demonstrated in part during the litigation.'" *Kelly v. Wengler*, 822 F.3d 1085, 1102 (9th

6  Cir. 2016) (quoting *Perdue v. Kenny A.*, 559 U.S. 542, 554-55 (2010)). In this case, a Fresno jury

7  awarded $30.5 million to the children of the decedent, whom Deputy Ayala shot and killed based

8  on his claim that the decedent charged at him after reaching under the driver's seat of his vehicle,

9  verbally threatened to kill him and advanced toward the deputy with his right hand behind his

10  back. It is incredulous that Defendants argue that "this is not a rare or exceptional case . . . "  (Def.

11  Opp. p. 13:3-5)

12      The degree of Plaintiffs' success is not encompassed by the lodestar:  "[T]he unadorned

13  lodestar reflects the general local hourly rate for a fee-bearing case; it does <u>not</u> include any

14  compensation for contingent risk, extraordinary skill, or any other factors a trial court may

15  consider." *Ketchum v. Moses*, 24 Cal.4th 1122, 1138 (2001) (emphasis added); *see also Polee v.*

16  *Cent. Contra Costa Transit Auth.*, 516 F. Supp. 3d 993, 1002 (N.D. Cal. 2021).

17      This is precisely the type of extraordinary case that warrants a 2.0 multiplier. In this case,

18  Plaintiffs' counsel achieved excellent results for Plaintiffs despite negative evidence presented

19  against the decedent and despite Defendants' low valuation of the damages at stake. It is well-

20  established that excessive force cases inure "a public benefit of deterring unconstitutional conduct

21  by law enforcement officials." *Orr v. Brame*, 727 F.App'x 265, 269 (9th Cir. 2018) (holding that

22  the district court abused its discretion where it reduced an attorney fee award and disregarded a

23  long line of case law that fee awards have deterrent effects) (*citing McCown v. City of Fontana*,

24  565 F.3d 1097, 1105 (9th Cir. 2009); *Morales v. City of San Rafael*, 96 F.3d 359, 364 (9th Cir.

25  1996). Nevertheless, these cases are extremely difficult to win and require plaintiffs' lawyers to

26  take significant risks. In the legal marketplace, law firms simply do not commit thousands of hours

27  of uncompensated time to such a highly risky case without the expectation that, if they are

28  successful, they will be compensated for their risk with a fee that is significantly greater than if

1    they had been paid hourly rates, win or lose.

2         Although Plaintiffs argue that this Court should award Los Angeles area rates in this case

3    and also apply a multiplier, at minimum, if this Court is not inclined to award Los Angeles area

4    rates, then this Court should apply a 2.0 loadstar enhancement to "adequately measure the

5    attorney's true market value."

6    **D.  Plaintiffs' Counsel Should be Compensated for their Work on this Reply and Any**

7          **Other Post-Trial Work**

8         Plaintiffs are entitled to fees for the time Plaintiffs' counsel spend in establishing their

9    right to attorneys' fees. *See Clark v. City of Los Angeles*, 803 F.2d 987, 992 (9th Cir. 1986). In

10   *Bucci v. Chromalloy Am. Corp.*, 927 F.2d 608 (9th Cir. 1991), for example, the Ninth Circuit

11   upheld the decision of the Northern District to award a lodestar amount of $23,128, representing

12   110.8 hours of attorney time at varying rates and 18 hours of paralegal and secretarial time at

13   varying rates for preparing the fee application. Plaintiffs are also entitled to fees for the time their

14   counsel spend opposing Defendants' post-trial motions and preparing for and attending the

15   hearing on all post-trial motions. *See*, *True Health Chiropractic Inc. v. McKesson Corp.*, No.

16   13CV02219HSGDMR, 2015, WL 3453459 at *4 (N.D. Cal. May 29, 2015. Plaintiffs' counsels

17   are submitting declarations concurrently herewith reflecting the additional work performed since

18   the filing of Plaintiffs' attorney fee motion. The total hours up to the time of the filing of the

19   instant Reply brief are set forth in the table below.

20        Ms. Masongsong spent an additional 70 hours for work on the post-trial motions as set

21   forth in her declaration filed concurrently herewith, including: reviewing trial transcripts,

22   researching case law; drafting Plaintiffs' Opposition to Defendants' Motions for New Trial, for

23   Judgment as a Matter of Law, and for a Stay of Enforcement of Judgment; and drafting the instant

24   Reply brief and accompanying declaration. Mr. Alexander spent an additional 4.5 hours reviewing

25   defendants' post-trial motions and revising the draft oppositions thereto, as well as the instant

26   Reply. Mr. Galipo spent a total of eight hours reviewing Defendants' post-trial motions and the

27   drafts of the oppositions thereto, as well as the instant Reply. Thus, Plaintiffs request that the

28   Court award additional attorneys' fees in the amount of $76,325 ($850 x 70 + $1,250 x 4.5 +

1  $1,400 x 8) for additional post-trial work performed, plus a 2.0 multiplier, bringing this additional

2  total to $152,650. *See Donastorg v. City of Ontario*, Case No. EDCV 18-992 JGB (SPx), 2021

3  WL 6103545, at *12 (C.D. Cal. Sept. 23, 2021) (awarding time spent on drafting the motion for

4  attorneys' fees and reply).

5  **III.    CONCLUSION**

6          For the reasons set forth above and in Plaintiffs' Motion for Attorney's Fees and

7  accompanying declarations, this Court should grant Plaintiffs' counsel their full requested fees in

8  the updated amounts in the below chart.

| Attorney/Biller | Yrs. Practice | Rate | Hours | Total |
|---|---|---|---|---|
| **Law Offices of Dale K. Galipo** | | | | |
| Dale K. Galipo | 36 | $1,400 | 402.15 | $563,010 |
| Renee V. Masongsong | 14 | $850 | 204.4 | $173,740 |
| Ranhee Lee | 5 | $500 | 265.5 | $132,750 |
| Santiago Laurel | Leg. Assist. | $220 | 8.2 | $1,804 |
| Stefany Anderson | Leg. Assist. | $220 | 11.6 | $2,552 |
| **Alexander Morrison + Fehr** | | | | |
| J. Bernard Alexander, III | 38 | $1,250 | 410.5 | $507,500 |
| Britt L. Karp | 14 | $750 | 168.2 | $126,150 |
| Natalie Khoury | 4 | $525 | 5.2 | $2,730 |
| Gustin Ham | Paralegal | $275 | 64.3 | $17,862.50 |
| Alicia Billalobos | Paralegal | $250 | 31.2 | $7,800 |
| **Toni J. Jaramilla** | | | | |
| Toni Jaramilla | 30 | $1,125 | 409.04 | $460,170 |
| **Subtotal:** | | | | $1,996,069 |
| **TOTAL with 2.0 Multiplier:** | | | | **$3,992,138** |

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

1  DATED:  May 30, 2025              LAW OFFICES OF DALE K. GALIPO

2

3                                    By_____/s/ Dale K. Galipo_____
                                         Dale K. Galipo
4                                        Renee V. Masongsong
                                         Attorneys for Plaintiffs R.L., M.L., H.L., A.W.
5

6

7  DATED:  May 30, 2025              ALEXANDER MORRISON + FEHR LLP
                                     TONI HARAMILLA, APC
8

9                                    By_____/s/ J. Bernard Alexander, III_____
10                                       J. Bernard Alexander, III
                                         Toni Jaramilla
11                                       Attorneys for Plaintiffs MICKEL ERICK LEWIS
                                         JIR, ORIANA LEWIS, BRIONA LEWIS
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28