| | |
|---|---|
| 1 | James D. Weakley, Esq.     Bar No. 082853 |
| 2 | Brande L. Gustafson, Esq.   Bar No. 267130<br>**WEAKLEY & ARENDT** |
| 3 | A Professional Corporation<br>5200 N. Palm Avenue, Suite 211 |
| 4 | Fresno, California 93704<br>Telephone: (559) 221-5256 |
| 5 | Facsimile: (559) 221-5262<br>Jim@walaw-fresno.com |
| 6 | Brande@walaw-fresno.com |
| 7 | Attorneys for Defendant, Deputy Jason Ayala |

### UNITED STATES DISTRICT COURT

### FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICKEL ERICK LEWIS JR., individually and as successor-in-interest to MICKEL E. LEWIS, SR., ORIONA LEWIS; and BRIONA LEWIS, individually and as successor-in-interest,<br><br>            Plaintiff,<br><br>vs.<br><br>KERN COUNTY, Deputy JASON AYALA, and DOES 1-20, inclusive,<br><br>            Defendant. | Case No. 1:21-CV-00378-KES-CDB<br>*Consolidated with Case No.*<br>*1:21–CV–01352–DAD–JLT*<br><br>**DECLARATION OF ELSA MARTINEZ IN SUPPORT OF REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY ENFORCEMENT OF JUDGMENT AND WAIVE BOND** |
| R.L., M.L., and H.L., minors, by and through guardian *ad litem* Roberta Haro, individually and as successors in interest to Michel Lewis Sr., deceased; A.W., a minor, by and through her guardian *ad litem* Alisha White, individually and as a successor in interest to Michel Lewis Sr., deceased; ALISHA WHITE, individually and as a successor in interest to Mickel Lewis Sr.,<br><br>            Plaintiffs,<br>vs.<br><br>COUNTY OF KERN; JASON AYALA; and DOES 1-10, inclusive,<br>            Defendants. | Date: June 16, 2025<br>Time: 1:30 p.m.<br>Ctrm: 6 (7th Floor)<br>Judge: Hon. District Judge Kirk E. Sherriff |

///

///

---

1

Decl. of Elsa Martinez in Support of Reply to Plaintiffs' Opp. to Defendants' Motion to Stay Enforcement of Judgment and Waive Bond

I, Elsa Martinez, declare as follows:

1. I am the Assistant Chief Administrative Officer for Defendant County of Kern ("County"). I give this declaration in support of the Reply to Plaintiffs' Opposition to Defendants' Motion to Stay Enforcement of Judgment and Waive Bond. I have personal knowledge of the facts described within and if called to testify, would testify as follows.

2. I currently serve as the Assistant Chief Administrative Officer. Prior to serving in this position, I served as the Chief Financial Officer for the County of Kern as well as other fiscal positions for over 24 years.

3. The Assistant Chief Administrative Officer plays a key role in supporting the County Administrative Officer, overseeing the preparation, adoption, and management of the County's $4.4 billion budget. This position ensures that various county departments align with the Board's directives and policies, facilitating coordinated efforts for effective governance. The County Administrative Office is responsible for monitoring the County's financial health, preparing and administering the annual budget, and managing all County debt issuance. Additionally, this office leads or directs special projects and conducts analyses on complex and sensitive public policy issues. Beyond policy and fiscal responsibilities, the Assistant County Administrative Officer provides operational support to county departments and agencies while also sharing oversight of the County Administrator's Budget and Finance team, led by the County Budget and Finance Director.

4. Once the County receives confirmation of the judgment amount and the method of payment, a request can be made to add the item to the agenda for the Board of Supervisors. The Board meets a minimum of twice a month and the request to add the item to the agenda must be submitted 10 days prior to the Board meeting. The Board would have to approve a budget amendment to reappropriate the funds necessary to pay the judgment at that board meeting. Once approved, it could take up to 30 days to process payment.

5. While the County has the resources to deposit the current judgement amount into the Court in lieu of posting a bond, this unexpected payment diverts resources from budgeted services and operations, potentially leading to program cuts or service delays if the County must

make this payment immediately before strategic planning and prioritization of resources is made for the payment.

6. The County will need to post a formal budget amendment to authorize this large unbudgeted expenditure. While the County maintains contingencies and rainy-day funds (General Fund Reserve of $53.5 million), an immediate use of these resources for a legal settlement weakens the County's financial safety net. Bond rating agencies may downgrade the County's credit rating due to reduced reserves or fiscal stress, raising future borrowing costs.

7. To prioritize this immediate payment, the County would have to postpone or delay capital projects including the Public Safety Communication Project (currently budgeted at $16.1 million) that supports public safety response through the 911 system. Additionally, we would implement an immediate hiring freeze to preserve resources in the existing budget. If the County must process the payment without adjusting the insurance rates in its General Liability Internal Service Fund, the immediate payment can only be made using discretionary resources (property tax and sales taxes). This restriction further impacts the County as most of those resources are used to meet mandates such as jail operations, criminal justice system costs such as District Attorney, Public Defender, and Indigent Defense. In order to fund a $30.5 million payment solely with budgetary reductions, it would require 6% reduction across all programs funded with discretionary resources.

8. The County will immediately begin a fiscal mitigation strategy for this unbudgeted legal judgment to mitigate impacts to our community. Such a strategy will include conducing a financial assessment to determine the amount from contingencies (current balance of $5 million), General Reserve ($53.5 million), and unrestricted balances (to be determined at June 30, 2025 when the fiscal year closes) for this payment. We will then proceed to adjust insurance premiums across multiple fiscal years to mitigate impacts in department operations. This approach will prioritize risk mitigation insurance premiums and dedicated resources to be included in the County's budget ensuring that the funds are approved and budgeted. Furthermore, the County staff will work with the Treasury Tax Collector to ensure that the cash flow is available. Investments will be evaluated strategically to ensure that selling does not

1 | forfeit future interest earnings prematurely, that penalties or fees are not incurred for early
2 | withdrawals and that transaction costs are kept at a minimum. This process can take up to 18
3 | months to ensure that impacts are mitigated.
4 |     9.    If the County has to deposit the amount of $43,428,962.22 as proposed by the
5 | plaintiffs while the post-trial motions, and any appeal are pending, without the benefit of being
6 | able to put in place mitigating measures, that would further exacerbate the impacts to citizens in
7 | the County of Kern through additional reductions across all programs funded with discretionary
8 | resources, further impacts to the jail operations and the criminal justice system, and additional
9 | hiring freezes for positions across various departments.
10 |     I declare under penalty of perjury under the laws of the United States that the foregoing
11 | is true and correct to the best of my knowledge and belief and that this declaration was executed
12 | in Bakersfield, California on June 6, 2025.

_____
Elsa Martinez

---

4
Decl. of Elsa Martinez in Support of Reply to Plaintiffs' Opp. to Defendants' Motion to Stay Enforcement of Judgment and Waive Bond