UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICKEL ERICK LEWIS JR, individually and as successor-in-interest to MICKEL E. LEWIS SR., ORIONA LEWIS, individually and as successor-in-interest; and BRIONA LEWIS, individually and as successor-in-interest, <br><br> Plaintiffs, <br><br> v. <br><br> KERN COUNTY; Deputy JASON AYALA, <br><br> Defendants. | No. 1:21-cv-00378-KES-CDB <br><br> ORDER REGARDING DEFENDANTS' MOTION TO STAY JUDGMENT AND GRANTING TEMPORARY STAY TO ALLOW FOR POSTING OF BOND <br><br> (Doc. 187) |
| R.L., M.L., and H.L., minors, by and through guardian *ad litem* Roberta Haro, individually and as successors in interest to Michel Lewis Sr., deceased; A.W., a minor, by and through her guardian *ad litem* Alisha White, individually and as a successor in interest to Michel Lewis Sr., deceased, <br><br> Plaintiffs, <br><br> v. <br><br> KERN COUNTY; Deputy JASON AYALA, <br><br> Defendants. | |

1

This civil rights and state tort action was brought in connection with the October 2, 2020, fatal officer-involved shooting of plaintiffs' father, Mickel E. Lewis, Sr. The action proceeded to trial and the jury returned a verdict for plaintiffs on (1) their 42 U.S.C. § 1983 claim against defendant Jason Ayala for excessive force in violation of the Fourth Amendment, and on state law claims against defendants Ayala and the County of Kern for (2) battery, (3) negligence, and (4) violation of the Bane Act, Cal. Civ. Code § 52.1. Doc. 153. The jury awarded plaintiffs a total of $30.5 million in damages.[1]  *Id.*

Plaintiffs and defendants County of Kern and Jason Ayala have filed post-trial motions. Docs. 165, 166, 172, 187. Defendants filed motions under Federal Rules of Civil Procedure 50(b) and 59(a) for judgment notwithstanding the verdict and for a new trial. Docs. 165, 166. Plaintiffs filed a motion for attorneys' fees requesting fees in the amount of $3,850,738. Doc. 172. The parties filed a stipulation to stay execution of the judgment through July 7, 2025, to allow for briefing on the motion to further stay enforcement of the judgment. Doc. 170.

On May 12, 2025, defendants filed a motion to stay enforcement of the judgment pending the resolution of their Rule 50(b) and Rule 59 motions and pending appeal. Doc. 187. The County has provided the declarations of Elsa Martinez, the County's Assistant Chief Administrative Officer, and Lisa Dearmore, the County's Risk Manager, in support of defendants' motion to stay. *See* Docs. 187-2, 187-3, 193-2, 193-3. Defendants argue that a stay of enforcement arose by operation of state law, and, in the alternative, argue that a stay should be granted without a bond or with a reduced bond. *Id.* For the reasons discussed below, defendants request for a stay of enforcement without a bond is denied but the request for a reduced bond amount is granted. The enforcement of judgment is stayed for 45 days to allow defendants to post a bond as set forth below.

I.  **LEGAL STANDARD**

Rule 62(a) provides that "execution on a judgment and proceedings to enforce it are

---

[1] The damages award was as follows: $1 million for Mickel Lewis, Sr.'s pre-death pain and suffering; $5 million for Mickel Lewis, Sr.'s loss of life; and $24.5 million for plaintiffs' wrongful death damages. Doc. 153.

2

stayed for 30 days after its entry, unless the court orders otherwise." Fed. R. Civ. P. 62(a). Rule 62(a) contemplates that a district court may issue an order modifying or extending the stay. "Amended Rule 62(a) expressly recognizes the court's authority to dissolve the automatic stay or supersede it by a court-ordered stay." Fed. R. Civ. P. 62(a) advisory committee's note to 2018 amendments; *see also Rebarber-Ocasio v. Feliciano-Munoz*, No. 3:18-cv-01218-JAW, 2022 WL 17813005, at *1-2 (D.P.R. Nov. 2, 2022) (addressing the 2018 amendments to Rule 62 and quoting the 2018 Advisory Committee Notes).

Under Rule 62(b), "[a]t any time after judgment is entered, a party may obtain a stay by providing a bond or other security. The stay takes effect when the court approves the bond or other security and remains in effect for the time specified in the bond or other security." Fed. R. Civ. P. 62(b); *see Vacation Village, Inc. v. Clark Cnty., Nev.*, 497 F.3d 902 (9th Cir. 2007). Upon posting a supersedeas bond acceptable to the Court, the moving party receives a stay "as a matter of right." *In re Matter of Combined Metals Reduction Co.*, 557 F.2d 179, 193 (9th Cir. 1977); *Hardesty v. Sacramento Metro. Air Quality Mgmt. Dist.*, No. 2:10-cv-02414-KJM-KJN, 2019 WL 2715616, at *3 (E.D. Cal. June 28, 2019).

## II. ANALYSIS

Defendants seek to stay the judgment on the grounds that they are entitled to a stay under California Code of Civil Procedure § 995.220 ("Section 995.220"). Alternatively, defendants seek a waiver of the bond or a reduced bond to effectuate a stay of enforcement of the judgment. Doc. 187-1 ("Motion") at 2.

### A. California Civil Procedure Code Section 995.220

Defendants argue they are entitled to a stay of enforcement under Section 995.220. Section 995.220 provides that "[n]otwithstanding any other statute, if a statute provides for a bond in an action or proceeding, including but not limited to a bond for . . . stay of enforcement of a judgment on appeal" a county or an officer of the local public entity in an official capacity are not required to "give the bond and shall have the same rights, remedies, and benefits as if the bond were given[.]" Cal. Civ. Proc. Code § 995.220. However, Section 995.220 does not apply as it is a procedural rule and the applicable procedural mechanisms at Federal Rule of Civil

Procedure 62 apply instead. *See Hardesty*, 2019 WL 2715616, at *2 (E.D. Cal. June 28, 2019) (holding that section 995.220(b) is a procedural rule that does not apply because Rule 62 covers the issue); *see also Vacation Village,* 497 F.3d at 913-14 ("[Rule 62(b)] is a purely procedural mechanism to preserve the status quo during a stay pending appeal of a district court decision[.]") (internal quotation marks and citation omitted).[2]

Defendants' argument that Section 995.220 is a substantive law provision, and applies notwithstanding Rule 62, is unpersuasive. While Section 995.220 supplements statutory immunity provided to governmental entities and serves a policy purpose of reducing the amount expended in furnishing bonds, *see City of S. San Francisco v. Cypress Lawn Cemetery Assn.*, 11 Cal. App. 4th 916, 921-22 (1992), it does not supplant Rule 62's procedural provisions regarding bond setting. In *Vacation Village*, the Ninth Circuit held that a county's "monetary obligations on appeal is a situation 'covered by'" Rule 62(b). *Vacation Village,* 497 F.3d at 914. In holding that the county in that case complied with its monetary obligations by posting a supersedeas bond under Rule 62 rather than depositing the full amount of the judgment as required by state law, the *Vacation Village* court reasoned that Rule 62(b) applied as it "is a purely procedural mechanism to preserve the status quo during a stay pending appeal of a district court decision and creates no choice of law concerns." *Id.* at 913-14 (internal quotation marks and citation omitted). As the "'situation is covered by one of the Federal Rules [of Civil Procedure] ... the court has been instructed to apply the Federal Rule,' even [if] it 'is in direct collision with the law of the relevant State.'" *Id.* (quoting *Hanna v. Plumer,* 380 U.S. 460, 471-72 (1965).[3]

Moreover, even if Section 995.220 provided a statutory stay for the County, the judgment

---

[2] Rule 62 was amended in 2018, and the current "[s]ubdivision 62(b) carries forward in modified form the supersedeas bond provisions of former Rule 62(d)." Fed. R. Civ. P. 62 advisory committee note to 2018 amendment; *see also Hardesty*, 2019 WL 2715616, at *2 n.2.

[3] To the extent that defendants assert that Rule 69(a)(1) directs the Court to apply state law with respect to the stay of a judgment, *see* Motion at 2, they are incorrect. Rule 69(a)(1) concerns the execution of a judgment, not stay procedures, and provides that procedures to execute a money judgment must generally accord with the procedure of the state where the court is located. Fed. R. Civ. P. 69(a)(1). Defendants' motion requests a post-judgment stay of the judgment, and Rule 62 is the applicable procedural rule. *See Hardesty*, 2019 WL 2715616, at *2.

4

against defendant Ayala was in his individual capacity under 42 U.S.C. § 1983 and is therefore outside the purview of Section 995.220.  *See* Cal. Civ. Proc. Code § 995.220(b).  The County acknowledges that it is obligated to indemnify the judgment against Ayala.  Motion at 8 & n.3.  "Nothing in § 995.220(b) states or suggests that its provisions may be extended to a non-enumerated party who has been represented and may be indemnified by a covered entity." *Cotton ex rel. McClure v. City of Eureka, Cal.*, 860 F. Supp. 2d 999, 1027 (N.D. Cal. 2012) (officer defendants sued in their individual capacities were outside the purview of Section 995.220).  Rather, the plain language of the statute specifies that only individuals sued in their official capacities are relieved of the bond requirement.

Accordingly, defendants are not entitled to a stay of enforcement of judgment pursuant to Section 995.220.

### B. Stay of Enforcement of Judgment Pursuant to Rule 62

Under this district's local rules, a supersedes bond is presumptively 125 percent of the amount of the judgment unless the Court orders otherwise.  E.D. Cal. L.R. 151(d).  The County requests that the supersedeas bond requirement be waived entirely or that the amount of the bond be reduced.  Motion at 6-11.  Defendants acknowledge that the County is obligated to indemnify Ayala pursuant to California Government Code section 825 and they request that the stay of enforcement of the judgment apply to Ayala as well.[4]  Motion at 8 & n.3.

The purpose of a supersedeas bond under Rule 62(b) is to secure the judgment holder from the "risk of a later uncollectible judgment" and to "compensate[ ] him for delay in the entry of the final judgment."  *NLRB v. Westphal*, 859 F.2d 818, 819 (9th Cir. 1988).  "While parties have a right to a stay obtained through a supersedeas bond, an unsecured stay is reserved for 'unusual circumstances' and awarded at the district court's discretion."  *Bolt v. Merrimack Pharm., Inc.*, No. S-04-0893 WBS DAD, 2005 WL 2298423, at *2 (E.D. Cal. Sept. 20, 2005) (citations omitted).  "A party seeking a departure from the normal requirement of a full security

---

[4] California Government Code section 825 provides that, with some exceptions, "[i]f the public entity conducts the defense of an employee or former employee against any claim or action with his or her reasonable good-faith cooperation, the public entity shall pay any judgment based thereon or any compromise or settlement of the claim or action to which the public entity has agreed."  Cal. Gov't Code § 825(a).

5

supersedeas bond bears the burden of showing reasons for such a departure." *Lewis v. Cty. of San Diego*, No. 13-CV-02818-H-JMA, 2018 WL 1071704, at *2 (S.D. Cal. Feb. 27, 2018) (citations omitted).

Plaintiffs argue that the Court should apply the four-factor test from *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987), rather than the factors from *Dillon v. City of Chicago*, 866 F.2d 902, 904-05 (7th Cir. 1988), in evaluating whether to reduce or waive the bond requirement. Doc. 190 at 8-9. However, the *Hilton* factors are typically applied in deciding whether to grant a stay of an injunction under Rule 62(d), rather than a stay of judgment under Rule 62(b). *See United States v. Schoenfeld*, No. 2:21-MC-0076 KJM DB, 2023 WL 170019, at *2 (E.D. Cal. Jan. 12, 2023); *Pac. Rim Land Dev., LLC v. Imperial Pac. Int'l (CNMI), LLC*, No. 19-cv-00016, 2020 WL 4361150, at *2 (D. N. Mariana Islands June 4, 2020) (collecting cases) ("the *Hilton* test, while applicable to appeals involving injunctive relief, does not apply to motions to stay money judgments."). Courts in the Ninth Circuit have frequently applied the *Dillon* factors when considering whether to grant an unsecured stay under Rule 62(b). "Courts in the Ninth Circuit regularly use the *Dillon* factors in determining whether to waive the bond requirement." *Kranson v. Fed. Express Corp.*, No. 11-cv-05826-YGR, 2013 WL 6872495, at *1 (N.D. Cal. Dec. 31, 2013); *see also United States v. Moyer*, No. 07-CV000510 SBA, 2008 WL 3478063, at *12 (N.D. Cal. Aug. 12, 2008) (noting "Ninth Circuit courts regularly use these factors"); *Schoenfeld*, 2023 WL 170019, at *2 (applying factors set forth by *Dillon* to determine whether to waive supersedeas bond and grant unsecured stay).

The *Dillon* factors provide an appropriate framework to evaluate whether a district court should exercise its discretion to waive or reduce the amount of a bond to stay a judgment. The "criteria in *Dillon*, 'in contrast to the traditional stay factors, more directly address the primary purpose [of former Rule 62(d), now Rule 62(b)]: to ensure recovery for a party who ultimately prevails on appeal, and to protect the judgment debtor from the risk of losing the money if the decision is reversed." *Pac. Rim Land Dev.*, 2020 WL 4361150, at *2 (internal citations omitted). The *Dillon* factors focus on the judgment debtor's ability to pay, the ease of the process for the judgment holder to obtain the judgment, and prejudice caused by the posting of a bond. As such,

6

the *Dillon* factors address the concerns of staying a monetary judgment under Rule 62(b), whereas the *Hilton* factors are more appropriately applied to stays of injunctive relief under Rule 62(d). *See Bolt*, 2005 WL 2298423, at *2 & n.4 (noting test for evaluating motion to stay injunctive relief pending appeal is "irrelevant in a case controlled by Rule 62[b]"); *Burris v. JPMorgan Chase & Co.*, No. 18-03012, 2022 WL 3285441, at *3 (D. Ariz. Aug. 11, 2022) ("[W]hen a judgment-debtor requests a stay of enforcement of a money judgment under Rule 62(b) without a bond, the request is not evaluated under the traditional four-factor test for evaluating a request for a preliminary injunction but under an entirely different standard with different considerations.").

### 1.     The *Dillon* Factors

The *Dillon* factors include: (1) the complexity of the collection process; (2) the amount of time required to obtain a judgment after it is affirmed on appeal; (3) the degree of confidence that the district court has in the availability of funds to pay the judgment; (4) whether the defendant's ability to pay the judgment is so plain that the cost of a bond would be a waste of money; and (5) whether the defendant is in such a precarious financial situation that the requirement to post a bond would place creditors of the defendant in an insecure position. *Dillon*, 866 F.2d at 904-905 (internal citations and quotation marks omitted). Upon a satisfactory showing of the *Dillon* factors, the Court may exercise its inherent discretionary authority over supersedeas bonds to waive the bond requirement. *Rachel v. Banana Republic, Inc.*, 831 F.2d 1503, 1505 n.1 (9th Cir. 1987) (discussing the court's inherent authority over supersedeas bonds).

Although defendants argue generally that the *Dillon* factors support a waiver of the bond requirement, their motion fails to address all the *Dillon* factors. To begin, they do not address the first *Dillon* factor, regarding the complexity of the collection process. *See* Motion. Defendants assert in their reply that the process for payment of the judgment would be "relatively straightforward," and that the County could make payment within 40 to 60 days from its funds, with insurance covering up to $12.5 million. *See* Doc. 193 at 8-9; Doc. 193-2 ("Martinez Reply Decl.") ¶ 4 (describing process through which the funds would be appropriated to pay the judgment). To the extent the County relies on new factual assertions submitted with its reply

7

1   brief, that is improper. *Cotton*, 860 F. Supp. 2d 999, 1028 & n.16; *see also Tovar v. U.S. Postal*
2   *Serv.*, 3 F.3d 1271, 1273 n. 3 (9th Cir.1993) ("To the extent that the [reply] brief presents new
3   information, it is improper.").

4         Even considering the additional information the County submitted with its reply, the first
5   *Dillon* factor weighs against the County.[5] The County's declarations reflect that the County has
6   yet to appropriate or approve any such use of funds. *See* Doc. 193–2 at ¶ 4. Rather, the County
7   indicates generally that, once it receives confirmation of the judgment amount and method of
8   payment, a request can be made to add the item to the Board of Supervisors' agenda. Martinez
9   Reply Decl. ¶ 4. The request to add the item to the agenda must be submitted 10 days prior to
10  one of two monthly Board meetings. *Id.* The Board would then have to approve the budget
11  amendment to reappropriate the funds necessary to pay the judgment. *Id.* However, none of
12  these steps have occurred. Nor does the County set out any specific timeline in which it intends
13  to carry them out. As the Board needs to appropriate the funds through a budgetary amendment,
14  the process is not necessarily straightforward and would require a future Board's approval for
15  payment of the judgment. *See Contreras v. City of Los Angeles*, No. 2:11-CV-1480-SVW-SH,
16  2013 WL 12474477, at *3 (C.D. Cal. May 20, 2013) (noting concerns about collection process
17  that required City Council and Mayor to appropriate funds to pay judgment); *see also Lightfoot v.*
18  *Walker*, 797 F.2d 505, 506 (7th Cir. 1986) (state procedure for collecting a judgment was "not
19  only cumbersome and time-consuming, but uncertain in outcome, since the judgment cannot be
20  paid unless and until the state legislature votes to appropriate the money necessary to pay for it.").
21  As such, the first *Dillon* factor weighs against defendants.

22        Defendants' motion also failed to address the second *Dillon* factor. In their reply,
23  defendants argue that the judgment could be satisfied within a reasonable time because the
24  County has the funds necessary to satisfy the judgment through its general liability fund,
25  insurance proceeds, and its self-insurance fund, and the County claims it could make payment

---

[5] *See Lampkin v. Cnty. of Sacramento*, No. 2:20-cv-01204-JAM-JDP, 2022 WL 17348378, at *2 (E.D. Cal. Nov. 30, 2022) (considering arguments improperly raised for the first time in reply because doing so would not prejudice the opposing party).

within 40 to 60 days of receiving all the necessary information. Doc. 193 at 8-9; Martinez Reply Decl. ¶ 4. Given that the time to satisfy the judgment presumes prior Board approval and appropriation of the necessary funds, the Court is not persuaded that this factor weighs in favor of waiving the bond in its entirety. Moreover, as addressed below, the judgment significantly exceeds the $19 million in the County's self-insurance fund, and the County has confirmation from an insurer as to only $2.5 million in insurance proceeds out of the $12.5 million in insurance proceeds that it claims. The County also indicates it would face negative financial consequences if it were to pay the judgment out of its general reserves. This factor does not support waiver of the bond requirement in its entirety.

As to the third *Dillon* factor, defendants argue that the County would have sufficient funds to pay the judgment from its general liability fund, insurance proceeds, and its self-insurance fund, and considering its revenue, credit agency rating, and mitigation strategies. *See* Motion. Since September 2017, the County has received a bond rating of Aa3 from the credit rating agency Moody's. Motion at 9; Doc. 187-2 ("Martinez Decl.") ¶ 13. The County also argues that it can utilize budget stabilization reserves to cover the one-time motion for attorneys' fees. Motion at 9; Martinez Decl. ¶ 8. The County further argues that it is currently putting into place a fiscal mitigation strategy dedicated to ensuring that the funds necessary to satisfy the judgment are approved and budgeted to minimize the impact on the County's residents. Doc. 193 at 8-9; Martinez Reply Decl. ¶¶ 6-9.

Although the County has presented evidence of different sources it could potentially draw from to satisfy the judgment, the County's evidence does not rise to the level of certainty required to justify a complete waiver of the bond requirement. The County identifies revenue as projected to be $4.4 billion for 2024-2025 fiscal year, but the County does not identify its projected discretionary revenue. Motion at 9; Martinez Decl. ¶¶ 3-4; *see also Hardesty*, 2019 WL 2715616, at *4 (noting that county had not shown it had a large discretionary budget such that its ability to pay the judgment was certain when declining to waive the bond requirement). Moreover, the County's argument that the annual bond premiums would require the County to divert funds from important and deserving programs because it had not planned for incurring the near-term cost of

9

obtaining a bond, Motion at 2-3, "creates at least a shadow of doubt as to the County's ability to pay a multi-million-dollar judgment," *Hardesty*, 2019 WL 2715616, at *4.

The County argues that it could satisfy the full judgment from its general liability fund, if needed, and that it has $12.5 million in excess insurance and $19 million in its self-insurance program. Doc. 193 at 8; Martinez Decl. ¶¶ 5, 8; Martinez Reply Decl. ¶¶ 5-6. However, the size of the judgment is more than half of the County's general fund reserve and defendants acknowledge that the immediate use of such funds would weaken the County's financial safety net, cause it to delay important public projects, and create other financial risks. *See* Martinez Reply Decl. ¶¶ 6-7. The judgment is also significantly larger than the entire $19 million currently in the County's self-insurance fund. Further, while the County claims $12.5 million in insurance funds are available, it has documented only $2.5 million of such funds from one insurer. The County provides no evidence that its insurer has confirmed it will disburse the other $10 million in insurance proceeds to cover this judgment. *See* Martinez Decl. ¶¶ 3-4; *see also Cotton*, 860 F. Supp. 2d 999, 1028 (statement that there was no insurance coverage issues insufficient because there was no representation that the insurance funds would unconditionally satisfy the judgment).

Even if the County had the full $12.5 million in insurance funds available, those funds and its self-insurance fund combined would not cover the full judgment including attorneys' fees and interest. *See Lewis*, 2018 WL 1071704, at *2 (supersedeas bond waived because, in part, the county had set aside funds for future liability and judgments sufficient to cover the judgment); *see also Est. of Casillas v. City of Fresno*, 471 F. Supp. 3d 1035, 1038 (E.D. Cal. 2020) (bond waived because city had $34.8 million in emergency reserve that could be applied to litigation obligations, a $10 million insurance policy, and the City's exposure was a small fraction of the combined total of its reserves and insurance policy). The third *Dillon* factor thus also weighs against waiving the supersedeas bond in its entirety.

As to the fourth factor, the County argues that requiring a sizeable bond would be a waste of public funds and that the annual bond premiums would impose immediate and unnecessary costs on the County that would be paid by diverting funds from important programs because the County has not planned for this expense. Motion at 9-10. The County indicates that, assuming a

$43 million bond requirement, its bond premium costs would be an estimated $430,000 to $650,000 over the course of a projected two-to-three-year appeal process. Doc. 193 at 10. While this concern and the resources available to the County weigh in favor of reducing the required bond amount, they do not eliminate the need for a bond. As the County's evidence supporting its ability to pay the judgment does not rise to the level of certainty needed to waive the bond requirement in full, the cost of bond premiums for a reduced bond is a necessary expense.

The County has not presented evidence of any other creditors and the Court declines to address the fifth factor sua sponte. *See Cotton*, 860 F. Supp. 2d 999, 1028-29 (declining to address sua sponte the *Dillon* factors not addressed by the moving party).

In sum, the *Dillon* factors weigh against waiving the supersedeas bond in its entirety but warrant a reduction in the total bond amount.

### 2. The Bond Amount

The Court has discretion to set the bond amount. *See Rachel*, 831 F.2d at 1505 n.1 (court has "inherent discretionary authority in setting supersedeas bonds"); E.D. Cal. R. 151(d) ("a supersedeas bond shall be 125 percent of the amount of the judgment unless the Court otherwise orders").

Given the self-insurance funds, insurance funds, and other financial resources available to the County, the Court finds that a bond in the amount of 50 percent of the judgment, including estimated attorneys' fees and interest, is sufficient to protect the plaintiffs' interests. *See Hardesty*, 2019 WL 2715616, at *5 (bond in the amount of 50% of the total judgment of $100 million was sufficient to protect plaintiffs' interests in collecting the judgment). A bond in the amount of 50% of the judgment also serves to protect the County from the risk of losing money or expending public funds unnecessarily if the judgment is reversed or reduced. *See Pac. Rim Land Dev.*, 2020 WL 4361150, at *2 (primary purpose of Rule 62(b) is to ensure the recovery of the prevailing party and protect the judgment debtor from the risk of losing money if the decision is reversed).

When setting the amount at 50% of the judgment, the Court also takes into account the public policy implications of requiring the County to post a larger bond. *See Hardesty*, 2019 WL

11

2715616, at *5. The County represents that it would expend more than $430,000 to $650,0000 over the course of an expected two- or three-year appeal process if the bond is set at $43,428,962.22, which is the amount plaintiffs calculate is 125% of the judgment including attorneys' fees and accrued interest. Doc. 193 at 10. Setting a reduced bond protects against the waste of public funds and prevents large sums from being diverted from public programs to pay for the expense of annual bond premiums. *See Hardesty*, 2019 WL 2715616, at *5.

Plaintiffs request that the supersedes bond be calculated using a judgment amount of $34,743,169.78 to reflect the damages awarded, interest, and requested attorneys' fees and costs. Doc. 190 at 6. Defendants argue that, because plaintiffs have not yet been awarded attorneys' fees and costs, the current judgment is $30.5 million, with the possibility that the Court will increase that amount. Doc. 193 at 2. However, defendants acknowledge that, if plaintiffs are awarded the full of amount of the requested attorneys' fees and costs, the total judgment amount would be closer to $34 million. Motion at 2; *see also* Doc. 187-3 ¶ 3 (when calculating the cost of annual bond premiums, Dearmore assumes a bonding obligation of $34,415,739). "Generally, the amount of the bond should be sufficient to pay the judgment *plus* interest, costs and any other relief (e.g. attorney fees) the appellate court may award." *Cotton*, 860 F. Supp. 2d at 1027 (internal quotation marks and citation omitted) (emphasis in original). Given the size of the damages award and the pending post-trial motions and bill of costs, the Court is inclined to utilize the $34 million as its baseline when assessing the amount of the bond. A bond at a reduced rate of 50% of $34 million, combined with the County's other available resources, captures the damages award and provides protection for potential attorneys' fees and costs and any applicable interest that may accrue through the pendency of the stay. *See WB Music Corp. v. Royce Int'l Broad.,* No. EDCV 16-600 JGB (DTBx), 2018 WL 6265000, at *3 (C.D. Cal. Oct. 4, 2018) (amount of the supersedeas bond should take into account the amount of the final judgment as well as any applicable interest or costs, including additional attorneys' fees appellate court may award, to "fully protect" plaintiffs).

Ayala, as an individual defendant, would generally be required to post a bond. *See Luckert v. Dodge Cty.*, No. 8:07CV5010, 2011 WL 13128689, at *2 (D. Neb. Jan. 11, 2011)

(individual defendants sued in their individual capacities required to post an appropriate cash or surety bond). However, the County acknowledges that it is obligated to indemnify Ayala pursuant to California Government Code section 825. Motion at 8 & n.3. As such, Ayala need not post a separate bond because a bond posted by the County would be sufficient to protect the plaintiffs' interests. *See Hardesty*, 2019 WL 2715616, at *5 (individual defendants not required to post separate bond because the County represented that it would fully indemnify the individual defendants); *see also Luckert*, 2011 WL 13128689, at *2 ("individual defendants must post a supersedeas bond to obtain a stay of execution pending appeal, unless [county defendant] either posts a bond for them or agrees to indemnify them for the judgment.").

## III. CONCLUSION

For the foregoing reasons:

1. Defendants' motion to stay enforcement of the judgment (Doc. 187) is granted in part and denied in part, as set forth above.
2. Upon defendant County's posting of a $17 million supersedeas bond with the Clerk of Court, the judgment in this case will be stayed as to the County and Ayala during the pendency of the post-trial motions and pending appeal; and
3. A temporary stay of the judgment is granted, until 45 days from the date of entry of this Order, for defendants to post the bond.

IT IS SO ORDERED.

Dated: July 6, 2025

                                              UNITED STATES DISTRICT JUDGE